Venkat Balasubramani, OSB #180446
venkat@focallaw.com
Stacia N. Lay, WSBA #30594 (*Pro Hac Vice*)
stacia@focallaw.com
Kimberlee Gunning, WSBA #35366 (*Pro Hac Vice*)
kim@focallaw.com
**FOCAL PLLC**
900 1st Avenue S., Suite 201
Seattle, Washington 98134
Telephone: (206) 529-4827

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| A.M., an individual,<br><br>               Plaintiff,<br><br>v.<br><br><br>OMEGLE.COM LLC,<br><br>               Defendant. | Case No. 3:21-cv-01674-MO<br><br><br>**DEFENDANT OMEGLE.COM LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

# TABLE OF CONTENTS

L.R. 7-1(a) Certification ........................................................................................... 1

MOTION ................................................................................................................... 1

FACTUAL ALLEGATIONS ..................................................................................... 1

DISCUSSION ............................................................................................................ 2

I.      Plaintiff's Complaint Cannot Withstand Rule 12(b)(6) Scrutiny ..................... 2

II.     Omegle is Entitled to Immunity Under CDA 230 and No Exception Applies ................. 3

        A.      All the Elements of CDA 230 Immunity Are Satisfied ......................... 4

                1.      Omegle is an ICS .................................................................... 4

                2.      The claims treat Omegle as the publisher/speaker of user content ............ 4

                        a.      Plaintiff's claims are inextricably linked to user content ................ 4

                        b.      Product liability and defective warning or failure to warn
                                claims are not excluded from CDA immunity ............................. 10

        B.      The Complaint Does Not State a Plausible Claim for Violation of
                Section 1591 and Thus CDA 230(e)(5)(A)'s Exception Does Not Apply ........... 14

                1.      To overcome CDA immunity, the Complaint must plausibly allege
                        that Omegle violated Section 1591 ......................................... 14

                2.      The Complaint is devoid of allegations that Omegle knowingly
                        engaged in conduct with respect to Plaintiff prohibited by
                        Section 1591 ......................................................................... 18

                        a.      No plausible allegation that Omegle engaged in the alleged
                                sex trafficking of Plaintiff. ................................................ 19

                        b.      No plausible allegation that Omegle knowingly benefited
                                from knowingly participating in a venture involving
                                Plaintiff ............................................................................ 20

        C.      The State Civil Claim for Alleged Sex Trafficking is Not Excluded From
                CDA 230 Immunity ................................................................................ 23

III.    Plaintiff's Section 2421A Claim Fails Because the Alleged Violations Occurred
        Before the Statute's Enactment ....................................................................... 24

IV.    Even Absent CDA 230 Immunity, the Negligent Misrepresentation Claim Fails on the Merits as a Matter of Law .......................................................................................... 28

        A.    The Complaint Relies on Terms of Service Implemented Years After the Activities Alleged in the Complaint .................................................................. 28

        B.    The Complaint Does Not, and Cannot, Plausibly Allege Any Special Relationship Between Plaintiff and Omegle ........................................................ 29

        C.    The Terms of Service Unambiguously and Expressly Disclaim Any Representation Upon Which the Negligent Misrepresentation Claim is Based ............................................................................................................... 32

V.    Leave to Amend Should Not Be Granted ...................................................................... 34

CONCLUSION ............................................................................................................................ 35

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................2, 3, 22, 31

*Ave. Lofts Condos. Owners' Ass'n v. Victaulic Co.*, 24 F. Supp. 3d 1010 (D. Or. 2014).........29, 30

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009)................................................................ 8

*Beckman v. Match.com, LLC*, No. 2:13-CV-97 JCM (NJK),
    2017 U.S. Dist. LEXIS 35562 (D. Nev. Mar. 10, 2017)......................................................32

*Black v. Google Inc.*, No. 10-02381 CW,
    2010 U.S. Dist. LEXIS 82905 (N.D. Cal. Aug. 13, 2010).............................................11, 35

*Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016) .........................................34

*Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140 (E.D.N.Y. 2017) .................................................. 8

*Daniel v. Armslist, LLC*, 926 N.W.2d 710 (Wis. 2019).....................................................7, 12, 13

*Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011) .....................................................................27

*Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242 (S.D. Fla. 2020)...................................passim

*Doe v. Mindgeek USA Inc.*, No. SACV 21-00338-CJC (ADSx),
    2021 U.S. Dist. LEXIS 176833 (C.D. Cal. Sept. 3, 2021)..................................................18

*Doe v. Mindgeek USA Inc.*, No. SACV 21-00338-CJC (ADSx),
    2021 U.S. Dist. LEXIS 236874 (C.D. Cal. Dec. 2, 2021) ..................................................18

*Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843 (W.D. Tex. 2007) .....................................................32

*Doe v. MySpace Inc.*, 528 F.3d 413 (5th Cir. 2008) ..................................................................... 9

*Doe II v. MySpace Inc.*, 96 Cal. Rptr. 3d 148 (Cal. Ct. App. 2009) ..........................................9, 10

*Doe v. Reddit*, No. SACV 21-768 JVS (KESx),
    2021 U.S. Dist. LEXIS 129876 (C.D. Cal. July 12, 2021).................................................24

*Doe v. Reddit, Inc.*, No. SACV 21-00768 JVS (KESx),
    2021 U.S. Dist. LEXIS 235993 (C.D. Cal. Oct. 7, 2021)...........................................passim

*Doe v. Rickey Patel, LLC*, No. 0:20-60683-WPD-CIV-DIMITROULEAS,
    2020 U.S. Dist. LEXIS 195811 (S.D. Fla. Sept. 30, 2020) ...............................................21

*Doe v. SexSearch.com*, 502 F. Supp. 2d 719 (N.D. Ohio 2007) .................................................... 32

*Doe v. Twitter, Inc.*, No. 21-cv-00485-JCS,
2021 U.S. Dist. LEXIS 157158 (N.D. Cal. Aug. 19, 2021) ....................................... passim

*Doe v. Twitter, Inc.*, No. 21-cv-00485-JCS,
2021 U.S. Dist. LEXIS 237096 (N.D. Cal. Oct. 26, 2021) ................................................. 17

*Doe No. 14 v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) ........................................ 11, 12

*Dyroff v. Ultimate Software Group, Inc.*, No. 17-cv-05359-LB,
2017 U.S. Dist. LEXIS 194524 (N.D. Cal. Nov. 26, 2017) ...................................... 6, 7, 31

*Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019) .......................... 9, 10, 31

*Edmondson v. Thrifty Payless, Inc.*, No. 6:17-cv-1090-MC,
2018 U.S. Dist. LEXIS 160030 (D. Or. Sept. 19, 2018) ....................................... 29, 30, 31

*Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971 (D. Or. 2016) .................................. 2, 3

*Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116 (N.D. Cal. 2016) ................................................. 6, 7

*Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019) .............................. 23

*Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021) ..................................................................... 4

*Green v. Am. Online*, 318 F.3d 465 (3d Cir. 2003) ................................................................ 5, 8, 33

*Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018) ........................................... passim

*Herrick v. Grindr, LLC*, 765 F. App'x 586 (2d Cir. 2019) ............................................................ 32

*Hinton v. Amazon.com.DEDC, LLC*, 72 F. Supp. 3d 685 (S.D. Miss. 2014) ............................... 34

*Hopkins v. Doe*, No. 2:11-CV-100-RWS,
2011 U.S. Dist. LEXIS 136038 (N.D. Ga. Nov. 28, 2011) ............................................... 34

*Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997) ............................... 26

*In re JUUL Labs, Inc.*, No. 19-md-02913-WHO,
2021 U.S. Dist. LEXIS 137078 (N.D. Cal. July 22, 2021) .......................................... 29, 30

*Jabagat v. Lombardi*, No. 1:14CV89-HSO-RHW,
2015 U.S. Dist. LEXIS 178762 (S.D. Miss. Jan. 30, 2015) ............................................... 23

*J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG,
    2020 U.S. Dist. LEXIS 151213 (N.D. Cal. Aug. 20, 2020)....................................4, 22, 24

*J.B. v G6 Hosp., LLC*, No. 19-cv-07848-HSG,
    2021 U.S. Dist. LEXIS 170338 (N.D. Cal. Sept. 8, 2021) ..............................15, 16, 17, 18

*Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014) ............................................................33

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994).....................................................24, 25, 27, 28

*La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981 (S.D. Tex. 2017) .............................................5

*Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021).............................................................13, 14

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019) .......................21

*Marfione v. Kai U.S.A., Ltd.*, No. 17-70,
    2018 U.S. Dist. LEXIS 51066 (W.D. Pa. Mar. 27, 2018) ...................................................9

*M.H. v. Omegle.com LLC*, No. 8:21-cv-814-VMC-TGW,
    2022 U.S. Dist. LEXIS 4543 (M.D. Fla. Jan. 10, 2022)...........................................passim

*M.L. v. craigslist Inc.*, No. C19-6153 BHS-TLF,
    2020 U.S. Dist. LEXIS 166836 (W.D. Wash. Apr. 17, 2020)...........................................24

*M.L. v. craigslist Inc.*, No. C19-6153 BHS-TLF,
    2020 U.S. Dist. LEXIS 166334 (W.D. Wash. Sept. 11, 2020)..........................................15

*Morton v. Twitter, Inc.*, No. CV 20-10434-GW-JEMx,
    2021 U.S. Dist. LEXIS 66897 (C.D. Cal. Feb. 19, 2021)...................................................3

*Onita Pac. Corp. v. Trs. of Bronson*, 315 Or. 149, 843 P.2d 890 (1992) ......................................29

*Quantum Tech. Partners II, L.P. v. Altman Browning & Co.*, No. 08-CV-376-BR,
    2009 U.S. Dist. LEXIS 53672 (D. Or. June 24, 2009) .......................................................3

*Reddy v. Litton Indus., Inc.*, 912 F.2d 291 (9th Cir. 1990) ...........................................................35

*Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319 (D.N.J. 2015)........................................5, 10, 11, 34

*Stokinger v. Armslist, LLC*, No. 1884CV03236-F,
    2020 Mass. Super. LEXIS 69 (Mass. Super. Ct. Apr. 28, 2020)........................................7

*Tibbets v. Athene Annuity & Life Assurance Co.*, No. 3:19-cv-00796-BR,
    2020 U.S. Dist. LEXIS 4488 (D. Or. Jan. 10, 2020) ........................................................30

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007) ...............................5, 7

*Velez v. Sanchez*, 693 F.3d 308 (2d Cir. 2012) ........................................................................27

*Winter v. Facebook, Inc.*, No. 4:21-CV-01046 JAR,
    2021 U.S. Dist. LEXIS 224836 (E.D. Mo. Nov. 22, 2021) ................................................34

## **Statutes and Rules**

18 U.S.C. § 1591 ................................................................................................................passim

18 U.S.C. § 1591(a)(1) .................................................................................................18, 19

18 U.S.C. § 1591(a)(2) .............................................................................................16, 19, 20

18 U.S.C. § 1591(e)(4) ...........................................................................................................20

18 U.S.C. § 1591(e)(6) ...........................................................................................................20

18 U.S.C. § 1595 ................................................................................................................passim

18 U.S.C. § 2421A ............................................................................................................passim

18 U.S.C. § 2421A(b) .............................................................................................................25

18 U.S.C. § 2421A(c) .............................................................................................................25

47 U.S.C. § 230 ................................................................................................................passim

47 U.S.C. § 230(c)(1) ..........................................................................................................3, 8

47 U.S.C. § 230(e)(3) .................................................................................................................3

47 U.S.C. § 230(e)(5) .............................................................................................................24

47 U.S.C. § 230(e)(5)(A) ...................................................................................................passim

47 U.S.C. § 230(e)(5)(B) .........................................................................................................26

47 U.S.C. § 230(e)(5)(C) .........................................................................................................26

47 U.S.C. § 230(f)(2) ................................................................................................................4

FED. R. CIV. P. 8(a)(2) .............................................................................................................2

FED. R. CIV. P. 12(b)(6) .......................................................................................................1, 2

OR. REV. STAT. § 30.867 ................................................................................................23

OR. REV. STAT. § 163.266 ........................................................................................23, 24

**<u>Other Authority</u>**

Pub. L. No. 115-164, 132 Stat. 1253 (2018) ................................................................25

Pub. L. No. 115-164 at Sec. 4(b), 132 Stat. 1253 (2018) ............................................26

## L.R. 7-1(a) Certification

In compliance with Local Rule 7-1(a), undersigned counsel for Defendant Omegle.com LLC certifies that they conferred in good faith with Plaintiff's counsel via telephone conference prior to filing this Motion but the parties were unable to agree on the relief requested.

## MOTION

In this Motion, Defendant Omegle.com LLC ("Omegle") seeks dismissal of Plaintiff A.M.'s Complaint in its entirety for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). Furthermore, because any amendment would be futile, Omegle respectfully requests that dismissal be without leave to amend.

## MEMORANDUM OF LAW

Plaintiff attempts to cast her case as a product liability action. But, at its core, the Complaint seeks to hold Omegle liable as the publisher or speaker of third-party content – specifically, that of the perpetrator of the actions taken against Plaintiff, Ryan Fordyce – on Omegle's chat service. Such an attempt to shift liability to Omegle for the user's actions is contrary to the immunity afforded by Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("CDA 230"). Additionally, even ignoring CDA 230, certain of Plaintiff's claims fail on their own merits as a matter of law. Therefore, for the reasons stated herein, the Complaint should be dismissed with prejudice.

## FACTUAL ALLEGATIONS

The Complaint alleges that "[i]n or about 2014," Plaintiff – who was 11 years old and living in Michigan – used the Omegle text chat service to chat with another user, who was later identified as Ryan Fordyce, for 15 minutes. (Dkt. 1 at ¶¶ 7, 39, 41, 50.) Plaintiff alleges she had previously used Omegle's chat service "to have age-appropriate video chats at sleepovers." (Id.

at ¶ 39.) The Complaint alleges that during the chat, Fordyce asked for, and Plaintiff apparently provided, "her contact information" so they could be in contact after the chat ended. (Id. at ¶ 42.) The Complaint alleges that after the chat, Fordyce induced Plaintiff to send him photos of herself, including various parts of her body. (Id. at ¶¶ 43-46.) The Complaint further alleges that Omegle "factor[ed] heavily into the abuse" perpetrated by Fordyce, including by Fordyce forcing Plaintiff "to go onto Omegle to recruit other children for him to exploit." (Id. at ¶ 48.) The Complaint alleges that Fordyce "abuse[d] and traffick[ed]" Plaintiff "between the ages of eleven and fifteen." (Id. at ¶ 49.) But on January 12, 2018, when Plaintiff was 15, Canadian law enforcement contacted Plaintiff's parents, notifying them that they had raided Fordyce's home and recovered numerous files of child pornography, including images and videos of Plaintiff. (Id. at ¶ 50.) The Complaint alleges that Fordyce pled guilty to possession of child pornography and is awaiting sentencing. (Id. at ¶¶ 11, 51.)

## DISCUSSION

## I.   Plaintiff's Complaint Cannot Withstand Rule 12(b)(6) Scrutiny

Although FED. R. CIV. P. 8(a)(2) only requires that a pleading provide a "short and plain statement of the claim showing that the pleader is entitled to relief," that standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). *See also Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 974-75 (D. Or. 2016) (noting that the complaint must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery

and continued litigation") (internal quotation marks omitted).

A complaint has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. But no such assumption of veracity applies to legal conclusions nor must a court "credit a complaint's conclusory statements without reference to its factual context." *Id.* at 678, 686; *see also Egbukichi*, 184 F. Supp. 3d at 974. The court also "need not accept as true . . . allegations that contradict facts that may be judicially noticed by the court, and may consider documents that are referred to in the complaint whose authenticity no party questions." *Quantum Tech. Partners II, L.P. v. Altman Browning & Co.*, No. 08-CV-376-BR, 2009 U.S. Dist. LEXIS 53672, *3 (D. Or. June 24, 2009) (internal quotation marks omitted).

## II.    Omegle is Entitled to Immunity Under CDA 230 and No Exception Applies

CDA 230 provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It preempts any contrary state law, 47 U.S.C. § 230(e)(3), and generally provides "broad federal immunity to *any cause of action* that would make service providers liable for information originating with a third-party user of the service." *Morton v. Twitter, Inc.*, No. CV 20-10434-GW-JEMx, 2021 U.S. Dist. LEXIS 66897, *5-6 (C.D. Cal. Feb. 19, 2021) (internal quotation marks omitted). With the exception of the claim under Section 2421A,[1] CDA 230 bars each of Plaintiff's claims and no exception to immunity applies.

---

[1] The 2018 Fight Online Sex Trafficking Act ("FOSTA") added limited carve outs to CDA immunity. A civil action under Section 2421A is not included within those carve outs. But, at least one court has noted that because Section 2421A was enacted at the same time as the carve

## A.    All the Elements of CDA 230 Immunity Are Satisfied

A defendant is immune under CDA 230 if: (1) it is the provider of an "interactive computer service" ("ICS"); (2) the asserted claims treat it as the publisher or speaker of the information; and (3) the information is provided by another information content provider. *Gonzalez v. Google LLC*, 2 F.4th 871, 891 (9th Cir. 2021).

### 1.    *Omegle is an ICS*

Omegle is indisputably an ICS, which is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]" 47 U.S.C. § 230(f)(2). Omegle is a website that enables users to communicate with other users via text and video. *M.H. v. Omegle.com LLC*, No. 8:21-cv-814-VMC-TGW, 2022 U.S. Dist. LEXIS 4543, *9 (M.D. Fla. Jan. 10, 2022) (finding that Omegle is an ICS as it is "a system that allows multiple users to connect to a computer server via the Internet"). Plaintiff herself asserts that Omegle is an ICS. (Dkt. 1 at ¶ 104.)

### 2.    *The claims treat Omegle as the publisher/speaker of user content*

As to the second and third elements, Plaintiff's claims seek to treat Omegle as the publisher or speaker of content, specifically video and/or text communications of another information content provider, namely, Fordyce.

#### a.    Plaintiff's claims are inextricably linked to user content

As to the second and third elements, courts have held that they are satisfied where a plaintiff alleges that an ICS published offending third-party content that it should have filtered.

---

out, the new civil action it created was not excluded from FOSTA's limited carve outs to CDA immunity. *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 U.S. Dist. LEXIS 151213, *17-19 (N.D. Cal. Aug. 20, 2020) ("*J.B. I*"). Because, as discussed below, Section 2421A cannot be applied retroactively and therefore Plaintiff's claim based on that statute should be dismissed, solely for purposes of this motion, Omegle does not argue that the claim is barred by CDA 230.

*See, e.g.*, *Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003) (element satisfied where plaintiff "attempt[ed] to hold [defendant] liable for decisions relating to the monitoring, screening, and deletion of content"); *M.H.*, 2022 U.S. Dist. LEXIS 4543 at *11 ("Courts will find this element to be satisfied where a plaintiff's claim alleges that an ICS provider should have screened or filtered information provided by their users."). Courts have also found these elements satisfied where a plaintiff's claims are based on an offending interaction which occurs through the site, which are ultimately based on content posted by third parties, and an alleged failure to monitor or supervise the site. *See, e.g.*, *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015) (claim of failure to monitor and supervise site users was an attempt to treat defendant as a publisher of information provided by a third party); *see also Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 590 (S.D.N.Y. 2018) (claim that ICS failed to "incorporate adequate protections against impersonating or fake accounts is just another way of asserting that Grindr is liable because it fails to police and remove" content), *aff'd*, 765 F. App'x 586 (2d Cir. 2019). Nor does an allegation that the ICS received notice of the alleged unlawful nature of the content negate CDA 230 immunity. *See, e.g.*, *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 994 (S.D. Tex. 2017).

At its core, the Complaint alleges that Omegle failed to adequately monitor or police the content or interactions of its users, including by allegedly failing to enforce its user policies and implement safety measures that would have prevented Plaintiff's communication with Fordyce. (*See, e.g.*, Dkt. 1 at ¶¶ 35-36, 38, 63, 73.) Those allegations underlie each of Plaintiff's claims. For instance, in the allegations supporting the defective design, defect in warning, negligent design, failure to warn/inadequate instruction, and negligent misrepresentation claims, the Complaint focuses on the alleged lack of safety features, Omegle's "content moderation

practices", Omegle's "ability to ban or deny access to offending" users, and the alleged lack of

Omegle's "effort to screen and monitor the activities" of its users, all of which Plaintiff alleges

led to her interactions with Fordyce for which she seeks to hold Omegle liable. (*See, e.g.*, Dkt. 1

at ¶¶ 27-30, 35-38, 52, 63, 68, 71, 73.) In other words, each of the claims are based on Fordyce's

misuse of the chat service and therefore seeks to shift liability to Omegle for Fordyce's unlawful

actions. *See M.H.*, 2022 U.S. Dist. LEXIS 4543 at *11-13 (finding similar claims against Omegle

barred by CDA 230 because they sought to hold Omegle liable for the conduct of users "who

criminally misappropriate the site").

Indeed, in paragraph 73 of the Complaint (incorporated into all of the common law

claims), Plaintiff relies on specific monitoring and policing actions Omegle allegedly failed to

take, which courts have held are core publisher functions, such as monitoring language used in

chats to identify and ban "predatory users" and to "flag specific phrases used repeatedly by

offenders," policing users by "enabling users to report offending users" via a report button, and

requiring user registration so "user misconduct" can be "traced". *See, e.g.*, *Doe v. Twitter, Inc.*,

No. 21-cv-00485-JCS, 2021 U.S. Dist. LEXIS 157158, *89, 92-93 (N.D. Cal. Aug. 19, 2021)

(finding CDA 230 barred claim alleging that Twitter had not designed its platform "to enable its

users to easily report CSAM [child sexual abuse material]"); *Herrick*, 306 F. Supp. 3d at 588

(finding claims alleging that Grindr failed to incorporate means to "flag and detect abusive

accounts" was "inextricably related to Grindr's role in editing or removing offensive content");

*Dyroff v. Ultimate Software Grp., Inc.*, No. 17-cv-05359-LB, 2017 U.S. Dist. LEXIS 194524,

*26 (N.D. Cal. Nov. 26, 2017) (finding that a "website's alleged functionalities – including its

user anonymity" were content neutral tools and therefore claims based on them were barred by

CDA 230), *aff'd*, 934 F.3d 1093 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020); *Fields v.*

*Twitter, Inc.*, 217 F. Supp. 3d 1116, 1123 (N.D. Cal. 2016) (stating that "providing accounts . . . is publishing activity, just like monitoring, reviewing, and editing content"), *aff'd on other grounds*, 881 F.3d 739 (9th Cir. 2018); *Daniel v. Armslist, LLC*, 926 N.W.2d 710, 722 (Wis. 2019) (claims alleging website failed to offer an option to flag illegal activity and to require users to create accounts were barred by CDA 230). Similarly, the Complaint's statutory claims also rely on allegations that focus on Omegle's alleged lack of safety features and/or policy measures or enforcement with respect to the conduct or content of its users, and specifically Fordyce. (*See, e.g.*, Dkt. 1 at ¶¶ 29, 48, 52, 80-81.)

Moreover, Plaintiff's reliance on what are effectively the policies or operation of the website, such as the anonymity of users, also implicates the publisher role:

> If the cause of action is one that would treat the service provider as the publisher of a particular posting, immunity applies not only for the service provider's decisions with respect to that posting, but also for its inherent decisions about how to treat postings generally. [Plaintiff] is ultimately alleging that the construct and operation of Lycos's web sites contributed to the proliferation of misinformation; Lycos's decision not to reduce misinformation by changing its web site policies was as much an editorial decision with respect to that misinformation as a decision not to delete a particular posting. Section 230 immunity does not depend on the form that decision takes.

*Universal Commc'n*, 478 F.3d at 422. *See also Dyroff*, 2017 U.S. Dist. LEXIS 194524 at *28 ("Ultimate Software's policy about anonymity may have allowed illegal conduct, and the neutral tools facilitated user communications, but these website functionalities do not 'create' or 'develop' information, even in part."); *Stokinger v. Armslist, LLC*, No. 1884CV03236-F, 2020 Mass. Super. LEXIS 69, *12-13 (Mass. Super. Ct. Apr. 28, 2020) ("The Stokingers' claim that Armslist could have done more to discourage or delete the offending or unlawful content or changed its policies so as to reduce the harmful content posted on its website is merely another way of stating that Armslist is liable for publishing the third-party content.").

Plaintiff's characterization of these functions or policies as "design" defects of Omegle's

chat service does not change their basic nature. No matter the labels applied, each of the claims are based on the core premise that Omegle allegedly failed to monitor the interactions of its users and police their content or, stated differently, failed to incorporate adequate protections against the improper content or conduct of its users. But the "existence *vel non* of safety features is meaningless in a vacuum, and their existence is only relevant to [Plaintiff's] injury to the extent that such features would make it more difficult" for Fordyce to have communicated with Plaintiff. *Herrick*, 306 F. Supp. 3d at 590-91. *See also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101-02 (9th Cir. 2009) ("[W]hat matters is not the name of the cause of action . . . what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another."). "In other words, the duty [Plaintiff] claims [Omegle] violated derives from [Omegle's] conduct as a publisher" – the steps it did or did not take to monitor the interactions and content of its users. *Id.* at 1103. *See also Green*, 318 F.3d at 471 (an ICS's "decisions relating to the monitoring, screening, and deletion of content" from its service are "actions quintessentially related to a publisher's role" and CDA 230 proscribes liability in such circumstances); *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 156 (E.D.N.Y. 2017) ("Section 230(c)(1) is implicated not only by claims that explicitly point to third party content but also by claims which, though artfully pleaded to avoid direct reference, implicitly require recourse to that content to establish liability or implicate a defendant's role, broadly defined, in publishing or excluding third party communications."), *aff'd sub nom.*, *Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020).

Nor does the Complaint plausibly allege that Omegle "created or authored" the allegedly offensive communications or content involving Plaintiff and Fordyce. A plaintiff who claims a defendant "created or developed" allegedly offensive content must do so based on "well-pleaded

facts [that] permit the court to infer more than the mere possibility" of such creation and development. *Marfione v. Kai U.S.A., Ltd.*, No. 17-70, 2018 U.S. Dist. LEXIS 51066, *18-19 (W.D. Pa. Mar. 27, 2018); *see also Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019) ("When a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed."). Plaintiff has not satisfied that standard.

The Fifth Circuit's conclusion in a factually similar case is on point. In *Doe v. MySpace Inc.*, the mother of a 13-year-old girl sued MySpace for allowing her daughter to use the site and meet a 19 year old, who communicated with her via the site to arrange a meeting and assault her. 528 F.3d 413, 416 (5th Cir. 2008). Similar to the allegations here, the mother argued the site was liable for failing to implement proper safeguards but the court rejected the argument:

> Their claims are barred by the CDA, notwithstanding their assertion that they only seek to hold MySpace liable for its failure to implement measures that would have prevented Julie Doe from communicating with [the other user]. Their allegations are merely another way of claiming that MySpace was liable for publishing the communications and they speak to MySpace's role as a publisher of online third-party-generated content.

*Id.* at 420.

A California appellate court reached a similar conclusion in another case against MySpace in which minors were assaulted by men they met on the platform. *Doe II v. MySpace Inc.*, 96 Cal. Rptr. 3d 148 (Cal. Ct. App. 2009). In *Doe II*, the plaintiffs argued that their claims were based on MySpace's alleged failure to "implement reasonable, basic safety precautions with regard to protecting young children from sexual predators," not on third-party content. *Id.* at 151. But the court rejected this argument:

> That appellants characterize their complaint as one for failure to adopt reasonable safety measures does not avoid the immunity granted by section 230. It is undeniable that appellants seek to hold MySpace responsible for the communications between the Julie Does and their assailants. At its core, appellants want MySpace to regulate what appears on its Web site. . . . [T]hat is, they want MySpace to ensure that sexual predators do not gain access to (i.e.,

DEFENDANT'S MOTION TO DISMISS        9

> communicate with) minors on its Web site. That type of activity – to restrict or make available certain material – is expressly covered by section 230.

*Id.* at 156-57. Moreover, the court rejected plaintiffs' attempt to distinguish their claims from other cases where CDA 230 applied by arguing that it was the assaults rather than the communications between the Julie Does and their assailants that were at issue. The court concluded that the cases did not support the proffered distinction; rather, in those cases, "the harm actually resulted from conduct that occurred outside of the information exchanged, whether that information was actionable or not." *Id.* at 157. In other words, the "incidents [in the other cases] all occurred offline, just as the sexual assaults against the Julie Does occurred offline," but that did not preclude CDA 230 immunity. *Id.*

The claims alleged by Plaintiff are no different than the claims alleged in these other cases; namely, that Omegle allegedly failed to implement adequate measures to protect users from the inappropriate content of, or offensive interactions with, other users. As a result, Plaintiff's claims, no matter their label, seek to treat Omegle as the publisher or speaker of third-party content and are therefore barred by CDA 230.

**b.    Product liability and defective warning or failure to warn claims are not excluded from CDA immunity**

Nor are product liability, design defect, or defective warning/failure to warn claims uniquely exempted from CDA 230 immunity. Labeling claims as product liability or warning-based claims does not alter the conclusion that Plaintiff seeks to hold Omegle liable as the publisher or speaker of third-party content. Courts have rejected such claims where neutral tools like Omegle's chat service that "are not intrinsically offensive or unlawful" are used by a third party to harass another user. *Herrick*, 306 F. Supp. 3d at 589-90; *see also Dyroff*, 934 F.3d at 1098 (rejecting argument that website's offering of "tools meant to facilitate the communication and content of others" made it an information content provider); *Saponaro*, 93 F. Supp. 3d at

324; *Black v. Google Inc.*, No. 10-02381 CW, 2010 U.S. Dist. LEXIS 82905, *7-8 (N.D. Cal.

Aug. 13, 2010) (noting that "courts have considered and rejected theories that an [ICS] could be

held liable merely because its programming facilitated the creation of the content at issue"),

*aff'd*, 457 F. App'x 622 (9th Cir. 2011). Indeed, in a recent decision in a case involving similar

allegations, a court dismissed with prejudice claims against Omegle, stating that "[m]erely

providing the forum where harmful conduct took place cannot otherwise serve to impose liability

onto Omegle." *M.H.*, 2022 U.S. Dist. LEXIS 4543 at *15.

      For example, in *Herrick*, plaintiff also alleged product liability, negligent design, and

warning-based claims that alleged, like the allegations here, that (1) Grindr's software was

"defectively and negligently designed" because it did not incorporate means to "flag and detect

abusive accounts," and (2) Grindr failed to warn that its "app can be used as a tool for

harassment and that Grindr has limited ability to stop abuse." 306 F. Supp. 3d at 588. But the

court found that, "[t]o the extent Herrick has identified a defect in Grindr's design or

manufacture or a failure to warn, it is inextricably related to Grindr's role in editing or removing

offensive content – precisely the role for which Section 230 provides immunity." *Id.* Nor could

an ICS "be held liable for so-called 'neutral assistance,' or tools and functionality that are

available equally to bad actors and the app's intended users." *Id.* at 589 (internal citation

omitted). In dismissing the same type of warning-based claims alleged here, the court also

specifically rejected the plaintiff's reliance on *Doe No. 14 v. Internet Brands, Inc.*, 824 F.3d 846

(9th Cir. 2016) to avoid CDA immunity. *See Herrick*, 306 F. Supp. 3d at 592.

      In *Internet Brands*, the defendant offered a website on which aspiring models could post

profiles. 824 F.3d at 848. Two individuals used the website to identify targets for a scheme under

which they would pose as talent scouts and lure the models to a fake audition where they were

drugged and assaulted. Defendant learned that these individuals were using the website to

identify targets for their scheme and plaintiff subsequently became a victim of it. *Id.* at 848-49.

Plaintiff sued the website alleging a negligent failure to warn claim, which the court initially

dismissed based on CDA 230. *Id.* at 849. The Ninth Circuit reversed, however, concluding that,

unlike here, the claim was not based on any user content on the website or the website's failure

to monitor and police users of the website: "Jane Doe does not claim to have been lured by any

posting that Internet Brands failed to remove. Internet Brands is also not alleged to have learned

of the predators' activity from any monitoring of postings on the website, nor is its failure to

monitor postings at issue." *Id.* at 851-52 (stating that the claim did not have anything to do with

the website's "efforts, or lack thereof, to edit, monitor, or remove user generated content"). But

unlike *Internet Brands* and like *Herrick*, Plaintiff's warning claims are based entirely on user-

generated content and an alleged failure to police such content:

> By contrast, the proposed warning in this case would be about user-generated
> content itself – the impersonating profiles or the risk that Grindr could be used to
> post impersonating or false profiles. Unlike in *Internet Brands*, Herrick's failure-
> to-warn claim depends on a close connection between the proposed warning and
> user-generated content. Additionally, Herrick's proposed warning is about
> Grindr's publishing functions. He proposes that Grindr should warn users that the
> app can be used to impersonate or harass individuals, that the "features on the
> interface to report abusive accounts are merely decorative" and that Grindr
> "shun[s] the basic technology widely used in their industry to prevent or stop
> known abuse." . . . Because Herrick's proposed warning is about user-generated
> content and goes to Grindr's publishing functions, *Internet Brands* does not apply.

*Herrick*, 306 F. Supp. 3d at 592 (footnotes omitted).

The Supreme Court of Wisconsin rejected similar attempts to avoid CDA 230 by

plaintiff's reliance on design features of the Armslist website that allegedly made "it easier for

prohibited purchasers to illegally obtain firearms" and that "Armslist should have known,

actually knew, or even intended that its website would facilitate illegal firearm sales to

dangerous persons." *Daniel*, 926 N.W.2d at 722. The court concluded that the various design

DEFENDANT'S MOTION TO DISMISS        12

features alleged by plaintiff were neutral tools that did not negate CDA 230 immunity. *Id.* (design features such as "lack of a 'flag' option for illegal activity, failing to require users to create an account, and failure to create restrictions on who may post or view advertisements" were "voluntary precautions that the CDA permits but does not require").

Similarly, in *Doe v. Twitter*, the court found that CDA 230 barred product liability claims similar to those here. Plaintiff alleged that Twitter was unreasonably dangerous and defectively designed because it made "it easy for child predators and sex traffickers to quickly disseminate CSAM on a wide scale" while conversely not being "'designed to enable its users to easily report CSAM." *Twitter*, 2021 U.S. Dist. LEXIS 157158 at *89, 93. The court found the claim barred by CDA 230 because "the nature of the alleged design flaw in this case – and the harm that is alleged to flow from that flaw – is directly related to the posting of third-party content." *Id.* at *92. In so holding, the *Twitter* court distinguished *Lemmon v. Snap*, where the Ninth Circuit held that CDA 230 did not bar the product liability claim. *Id.* at *90-93.

In *Lemmon v. Snap*, the plaintiffs were parents of boys who were killed in a car accident in which a filter for Snap's messaging app, Snapchat, was alleged to play a role. 995 F.3d 1085, 1088-89 (9th Cir. 2021). Specifically, the "Speed Filter" offered for use with Snapchat allowed users to record their real-life speed and superimpose it over images and videos they captured. *Id*. Plaintiffs also alleged that Snapchat incentivized its users to send messages by rewarding them with trophies and other social recognitions. *Id.* at 1088. Plaintiffs alleged that the combination of the Speed Filter and Snapchat's rewards incentivized users to drive at high speeds because it was suspected that Snapchat would reward them for recording speeds of 100 MPH or faster. *Id.* at 1089. The Ninth Circuit held that CDA 230 did not bar plaintiffs' negligent design claim because the claim did not treat Snap as the publisher or speaker of third-party content. More specifically,

the court held that the claim had "nothing to do with its editing, monitoring, or removing of the content that its users generate through Snapchat." *Id.* at 1092 (internal quotation marks omitted). Rather, the claim alleged that it was the combination of the Speed Filter and the incentive system – both created by Snapchat – and not any specific user content that "supposedly worked in tandem to entice young Snapchat users to drive at speeds exceeding 100 MPH." *Id.* at 1091-92.

But, as in *Twitter*, the facts differ here. Unlike *Lemmon* (but similar to *Twitter*), the alleged flaws in this case are inextricably tied to, and based on, third-party content, namely, Fordyce's communications with Plaintiff:

> These flaws, in essence, seek to impose liability on Twitter based on how well Twitter has designed its platform to prevent the posting of third-party content containing child pornography and to remove that content after it is posted. . . . Therefore, the Court concludes that *Lemmon* is not on point and that Plaintiffs' products liability claim fails on the basis that Twitter is entitled to immunity as to that claim under [CDA 230].

*Twitter*, 2021 U.S. Dist. LEXIS 157158 at *93.

As a result, CDA 230 bars Plaintiff's claims against Omegle.

### B.    The Complaint Does Not State a Plausible Claim for Violation of Section 1591 and Thus CDA 230(e)(5)(A)'s Exception Does Not Apply

In 2018, in FOSTA, Congress added a limited carve-out from CDA immunity for civil actions against ICS providers for violations of the federal sex trafficking criminal statute, 18 U.S.C. § 1591. 47 U.S.C. § 230(e)(5)(A). That limited carve out does not apply here, however.

#### 1.    *To overcome CDA immunity, the Complaint must plausibly allege that Omegle violated Section 1591*

FOSTA removed CDA immunity for civil sex trafficking claims ***only*** where the ICS's conduct constitutes a violation of 18 U.S.C. § 1591, which imposes an actual knowledge standard. *See* 47 U.S.C. § 230(e)(5)(A) (exempting a claim under Section 1595 but only "if the conduct underlying the claim constitutes a violation of section 1591"). The growing weight of

authority – relying on CDA 230(e)(5)(A)'s plain meaning, contextual analysis, and legislative history – holds that "the most straightforward reading" of that section is that it means what it says, namely, it "provides an exemption from CDA immunity for a section 1595 claim if the civil defendant's conduct amounts to a violation of section 1591." *J.B. v G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2021 U.S. Dist. LEXIS 170338, *18 (N.D. Cal. Sept. 8, 2021) ("*J.B. II*"). Notably, in reaching that conclusion, the *J.B.* court reversed its prior decision that reached a contrary conclusion. The court, "[h]aving closely reexamined the issue," concluded that the plain language of CDA 230(e)(5)(A) "withdraws immunity only for claims asserting that the defendant's own conduct amounts to a violation of section 1591." *Id.* at *14.

The *J.B.* court's conclusion is consistent with that reached in the earlier case, *Doe v. Kik Interactive, Inc.*, where the court similarly held that the "plain language of the statute removes [CDA 230] immunity only for conduct that violates 18 U.S.C. § 1591." 482 F. Supp. 3d 1242, 1249 (S.D. Fla. 2020). The Middle District of Florida also recently joined the *Kik* court in concluding that "the legislative history of the CDA confirms that generalized knowledge that sex trafficking occurs on a website is insufficient to maintain a plausible [Section 1591] claim that survives CDA immunity." *M.H.*, 2022 U.S. Dist. LEXIS 4543 at *16-17. The Central District of California also agreed with both the *J.B.* and *Kik* courts that the civil defendant's conduct must constitute a violation of Section 1591 to fall within CDA 230(e)(5)(A)'s narrow exception to immunity. *Doe v. Reddit, Inc.*, No. SACV 21-00768 JVS (KESx), 2021 U.S. Dist. LEXIS 235993, *17-18 (C.D. Cal. Oct. 7, 2021). *See also M.L. v. craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334, *12-14 (W.D. Wash. Sept. 11, 2020) (agreeing that "FOSTA does not create an exemption for all § 1595 claims" but concluding that CDA immunity may not apply as well-pleaded allegations indicated that craigslist may have materially

contributed to the ads that allegedly trafficked plaintiff).

In reaching its conclusion, the *J.B.* court examined FOSTA's legislative history and found nothing that ran counter to the plain language reading:

> Ultimately, Congress passed a bill incorporating the provision that . . . presented a narrowed federal civil carve-out that is subject to a heightened pleading standard. Notwithstanding the well-understood challenges inherent in showing a website's knowledge, it thus appears that Congress reached a compromise by including a narrowed federal civil sex trafficking carve-out that requires plaintiffs to show the civil defendant's knowing assistance, support or facilitation[.]

2021 U.S. Dist. LEXIS 170338 at *37 (internal quotation marks and citation omitted); *see also Reddit*, 2021 U.S. Dist. LEXIS 235993 at *19 (stating that the "legislative history comports with the [c]ourt's reading of the plain text"). The *Kik* court likewise looked to the language of CDA 230(e)(5)(A) and FOSTA's legislative history and reached the conclusion that the *J.B.*, *Reddit*, and *M.H.* courts would later agree with:

> By its terms, FOSTA did not abrogate CDA immunity for all claims arising from sex trafficking; FOSTA permits civil liability for websites only "if the conduct underlying the claim constitutes a violation of section 1591." ***And section 1591 requires knowing and active participation in sex trafficking by the defendants.***

*Kik*, 482 F. Supp. 3d at 1251 (emphasis added); *see also M.H.*, 2022 U.S. Dist. LEXIS 4543 at *8 (Section 1591 "require[s] actual knowledge and overt participation in a sex trafficking venture by the ICS provider – generalized knowledge without active participation is insufficient.").

The *Doe v. Twitter* decision from the Northern District of California reached the opposite conclusion to that of the *Kik*, *J.B.*, and *Reddit* courts. But, although the *Twitter* court engaged in some analysis in concluding that the plaintiffs' claim against Twitter "based on alleged violation of Section 1591(a)(2) is not subject to the more stringent requirements that apply to criminal

violations of that provision," 2021 U.S. Dist. LEXIS 157158 at *72,[2] little of the analysis was relevant to interpreting CDA 230(e)(5)(A) and the little that was relevant was conclusory.

For example, the court spent considerable time discussing a line of cases involving sex trafficking claims against hotel defendants. *Id.* at *58-65. But as the court itself recognized, because those cases did not involve ICS providers and therefore did not implicate CDA 230 or FOSTA, they did not answer the question before the court. *Id.* at *65. The court then discussed the *Kik* decision but simply stated that it disagreed with that court's analysis, apparently largely relying on the principle that FOSTA is a remedial statute. *Id.* at 65-69. Relying on its "natural reading" of CDA 230(e)(5)(A), the *Twitter* court then concluded that this exception to immunity does not require proof that the ICS defendant's conduct violated Section 1591. *Id.* at *70-72. The court's plain language reading was based on the premise that FOSTA intended ICS defendants to be treated no differently than other defendants to whom CDA 230 does not apply. *See id.* at *70-71. But that premise is faulty as Congress recognized the distinct circumstances and challenges presented by ICS defendants, as the *J.B.* court acknowledged in its extensive discussion of FOSTA's legislative history. 2021 U.S. Dist. LEXIS 170338 at *23-39. As a result, the *Twitter* court's alleged plain language reading is fatally undermined by the faulty premise that FOSTA – despite all evidence to the contrary – intended to treat ICS defendants no different than, for example, the hotel defendants in the cases that the court had recognized did not answer the question before it. Additionally, the remedial nature of FOSTA cannot "overcome the plain language of the statute, especially given that section 230 as a whole is designed to provide immunity to [ICS] providers." *Reddit*, 2021 U.S. Dist. LEXIS 235993 at *19.

---

[2] The court subsequently granted Twitter's motion for an interlocutory appeal of its decision and stayed the proceeding pending appeal. *Doe v. Twitter, Inc.*, No. 21-cv-00485-JCS, 2021 U.S. Dist. LEXIS 237096 (N.D. Cal. Oct. 26, 2021).

The Central District of California issued a decision agreeing with the *Twitter* court's conclusion but did not engage in its own analysis. *See Doe v. Mindgeek USA Inc.*, No. SACV 21-00338-CJC (ADSx), 2021 U.S. Dist. LEXIS 176833, *14 (C.D. Cal. Sept. 3, 2021). The *Mindgeek* court also relied on the earlier decision by the *J.B.* court, which that court has since reconsidered and reached the opposite conclusion. *See id.* Only upon Mindgeek's motion for reconsideration or interlocutory appeal did the court engage in some more analysis, though it largely relies on the reasoning of the *Twitter* court and distances itself from the *J.B.* court's reconsideration of its prior decision. *See Doe v. Mindgeek USA Inc.*, No. SACV 21-00338-CJC (ADSx), 2021 U.S. Dist. LEXIS 236874, *25-31 (C.D. Cal. Dec. 2, 2021).

In contrast, each of the *Kik*, *J.B.*, *Reddit*, and *M.H.* courts correctly recognized FOSTA's limited carve out to CDA immunity in concluding that the carve out applies "**if, but only if,** the [ICS] defendant's conduct amounts to a violation of section 1591." *J.B. II*, 2021 U.S. Dist. LEXIS 170338 at *39 (emphasis added); *see also M.H.*, 2022 U.S. Dist. LEXIS 4543 at *8, 16-17; *Reddit*, 2021 U.S. Dist. LEXIS 235993 at *18; *Kik*, 482 F. Supp. 3d at 1250-51.

### 2. The Complaint is devoid of allegations that Omegle knowingly engaged in conduct with respect to Plaintiff prohibited by Section 1591

Thus, to overcome CDA immunity, the Complaint must plausibly allege that Omegle's conduct constitutes a violation of Section 1591. But the Complaint is devoid of facts showing that Omegle either (1) directly engaged in the alleged sex trafficking of Plaintiff, *see* 18 U.S.C. § 1591(a)(1),[3] or (2) **knowingly** "benefit[ed], financially or by receiving anything of value, from

---

[3] As relevant here, Section 1591(a)(1) criminalizes the following conduct:
(a) Whoever **knowingly** –
    (1) . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . .
    . . .
    knowing, or . . . in reckless disregard of the fact, . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act[.]

participation in a venture" which engaged in the alleged sex trafficking of Plaintiff, *see* 18 U.S.C. § 1591(a)(2).

###### a. No plausible allegation that Omegle engaged in the alleged sex trafficking of Plaintiff

As to any claim that Omegle itself engaged in the alleged sex trafficking of Plaintiff, there are no allegations to support such a claim. To the contrary, the Complaint contains no facts showing that Omegle had any knowledge whatsoever of Plaintiff or her interaction with the other user, Fordyce, much less that Omegle knowingly recruited, obtained, provided or maintained Plaintiff knowing that she was under 18 and would be caused to engage in a commercial sex act. Instead, the Complaint asserts generally that "Omegle is aware of the risk" that *users* may use its chat service to exploit and/or traffic children, citing to media reports. (*See, e.g.*, Dkt. 1 at ¶¶ 64, 130.) The Complaint contains no allegations that Omegle itself knowingly engaged in any of the acts prohibited by Section 1591. Rather, it simply repeats the statutory language, claiming that Omegle "knowingly . . . recruits, entices, harbors, advertises, maintains, patronizes, and solicits **persons** under the age of 18 knowing and causing them to be used in commercial sex acts." (Dkt. 1 at ¶ 125 (emphasis added).) At no point does the Complaint allege any facts showing that *Omegle* knowingly engaged in the alleged sex trafficking of Plaintiff. *See Kik*, 482 F. Supp. 3d at 1251 (rejecting general allegation that Kik knew of other sex trafficking incidents occurring on its platform as "section 1591 requires knowing and active participation in sex trafficking by the defendants"). The Complaint, therefore, fails to plausibly allege a claim against Omegle for a primary sex trafficking violation under Section 1591(a)(1).

---

18 U.S.C. § 1591(a)(1) (emphasis added).

> **b.    No plausible allegation that Omegle knowingly benefited from knowingly participating in a venture involving Plaintiff**

Plaintiff's claim that Omegle knowingly benefited from knowingly participating in the alleged sex trafficking venture of her under Section 1591(a)(2) is similarly deficient. To state a claim under that section, the Complaint must allege that Omegle "**knowingly** . . . benefit[ed], financially or by receiving anything of value, from participation in a venture" that engaged in the alleged sex trafficking of Plaintiff. 18 U.S.C. § 1591(a)(2) (emphasis added). "Participation in a venture" is defined as "**knowingly** assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4) (emphasis added). A "venture" is defined as "any group of two or more individuals **associated in fact**, whether or not a legal entity." 18 U.S.C. § 1591(e)(6) (emphasis added). The Complaint fails to plausibly allege that there was a venture of any kind between Omegle and the other user, Fordyce, much less that Omegle knowingly assisted, supported or facilitated that user's alleged sex trafficking venture involving *Plaintiff*.

First, Plaintiff's theory of beneficiary liability under Section 1591(a)(2) is defective for the same reason that the direct violation claim under subsection (a)(1) is fatally flawed. Specifically, the Complaint does not allege any facts that Omegle *knowingly* benefited from *knowingly* participating with Fordyce in the alleged sex trafficking venture of Plaintiff. The Complaint simply quotes the statutory language and asserts generally that Omegle "knowingly benefits" from participation in "a venture" which engages in sex trafficking of "*persons*". (Dkt. 1 at ¶ 126 (emphasis added).) This general claim is supported by equally general allegations that Omegle is aware of alleged past incidents unrelated to Plaintiff occurring on its chat service. But such general awareness does not – and cannot – establish that Omegle "knowingly" participated in and "knowingly" benefited from the alleged sex trafficking venture *of Plaintiff*. To conclude otherwise would improperly sever the actual knowledge standard from Section 1591. As in *Kik*,

Plaintiff's allegation that Omegle allegedly "knew that other sex trafficking incidents occurred" on its real-time chat platform fails to "plausibly establish that [Omegle] knowingly participated in the sex trafficking venture involving [Plaintiff]." 482 F. Supp. 3d at 1251; *see also M.H.*, 2022 U.S. Dist. LEXIS 4543 at *17-18 ("The generalized knowledge of past instances of sex trafficking are not enough to satisfy an exception to immunity.").

Second, even under courts' interpretation of "participation in a venture" under Section 1595 – which has a lower *mens rea* standard than that applicable here under Section 1591 – the Complaint fails to plausibly allege a sex trafficking venture between Omegle and Fordyce involving Plaintiff.[4] A plaintiff must either allege a "direct association" between the defendant and the trafficker or make "a showing of a continuous business relationship between the trafficker and the defendant such that it would appear that the trafficker and the defendant have established a pattern of conduct or could be said to have a tacit agreement." *Reddit*, 2021 U.S. Dist. LEXIS 235993 at *20-21 (internal quotation marks omitted); *see also Doe v. Rickey Patel, LLC*, No. 0:20-60683-WPD-CIV-DIMITROULEAS, 2020 U.S. Dist. LEXIS 195811, *13-14 (S.D. Fla. Sept. 30, 2020) (same). This requires "at least a showing of a continuous business relationship between the trafficker and [defendant]". *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019).

But any such allegation is critically lacking here. The Complaint fails to allege a single fact showing either a "direct association" or "continuous business relationship" between Fordyce – the user who allegedly engaged in the sex trafficking of Plaintiff – and Omegle that would support the existence of a "venture." The Complaint makes conclusory statements based on the

---

[4] Therefore, even in the absence of CDA immunity, Plaintiff's claim for violation of Sections 1591 and 1595 would fail as the Complaint fails to plausibly allege that Omegle participated in a "venture" under either section.

language of Section 1591 but fails to establish any relationship between Omegle and Fordyce, much less a business relationship involving the sex trafficking of Plaintiff. (*See, e.g.*, Dkt. 1 at ¶¶ 125-127, 130-132.) Such conclusory assertions are insufficient to state a plausible claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Therefore, there can be no plausible allegation that Omegle had any knowledge of Plaintiff, Fordyce, or Fordyce's actions towards Plaintiff at the time of the events alleged in the Complaint, much less that Omegle had any prior or continuous business (or any other form of) relationship with Fordyce.

The *J.B.* court found generalized allegations like Plaintiff's – such as that craigslist knew its erotic services section was well known "as a place to easily locate victims" – were insufficient to establish that "Craigslist tacitly agreed to the sex trafficking of Plaintiff or others." *J.B. I*, 2020 U.S. Dist. LEXIS 151213 at *26-27. To conclude otherwise would result in the implausible suggestion "that Craigslist enters into tacit agreements with all traffickers (or even all posters) that use its website." *Id.* at 27. Thus, "[b]ecause Craigslist cannot be deemed to have participated in all ventures arising out of each post on its site, Plaintiff must [but did not] allege facts supporting the inference that Craigslist made a tacit agreement with the sex traffickers who victimized Plaintiff." *Id.* at 28. The *Reddit* court – agreeing with the *J.B.* court's analysis on the same question – similarly found that allegations that "Reddit has 'affiliations with sex traffickers by enabling the posting of child pornography on its websites'" and by "'making it easier to connect traffickers with those who want to view'" such content were "not sufficient to show 'a continuous business relationship between' Reddit and traffickers." *Reddit*, 2021 U.S. Dist. LEXIS 235993 at *21. The Complaint's allegations are even weaker than those in *J.B.* and *Reddit* given the lack of allegations of any relationship, much less a continuous business

relationship, between Omegle and Fordyce involving the alleged sex trafficking of Plaintiff. Even the *Twitter* decision is distinguishable on its facts. That court agreed with the "continuous business relationship" standard but found it was satisfied in part because of allegations that Twitter was notified on several occasions of the nature of the content involving the plaintiffs but either refused or failed to take action. *Twitter*, 2021 U.S. Dist. LEXIS 157158 at *73-77. No such allegation of any relationship between Omegle and Fordyce has been nor could be made here that could plausibly support a tacit agreement between Omegle and Fordyce with respect to the alleged sex trafficking of Plaintiff.

Third, Section 1591 requires a "causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with . . . knowledge of that causal relationship." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). But the Complaint alleges no facts demonstrating Omegle's receipt of a benefit causally related to any affirmative conduct that furthered the alleged sex trafficking venture of Plaintiff. To the contrary, it simply repeats the statutory language, stating without factual support that Omegle "knowingly" benefited from the alleged sex trafficking venture involving "persons." (Dkt. 1 at ¶ 126.) Such conclusory statements that merely parrot the statutory language are insufficient to state a claim for relief. *Jabagat v. Lombardi*, No. 1:14CV89-HSO-RHW, 2015 U.S. Dist. LEXIS 178762, *11 (S.D. Miss. Jan. 30, 2015) (plaintiff's "conclusory allegation[] that 'Defendants knowingly benefitted financially' [was a] mere recitation of the elements of the cause of action" and insufficient to state a claim).

### C. The State Civil Claim for Alleged Sex Trafficking is Not Excluded From CDA 230 Immunity

In the seventh cause of action, Plaintiff alleges that Omegle is liable under OR. REV. STAT. § 30.867 for violation of the Oregon criminal sex trafficking statute, OR. REV.

STAT. § 163.266, based on the same allegations underlying the federal claims. However, although FOSTA amended CDA 230 to include a specific (and limited) carve out from immunity for *federal* civil sex trafficking claims, *see* 47 U.S.C. § 230(e)(5)(A), there was no similar exclusion for *state* law civil claims based on sex trafficking. Numerous courts have reached that conclusion based on the unambiguous language of Section 230(e)(5). *See, e.g.*, *J.B. I*, 2020 U.S. Dist. LEXIS 151213 at *15-16, 20 (concluding that, based on the plain language of the statute, "state civil claims are not carved out from the immunity provided by Section 230, even in sex trafficking cases"); *M.L. v. craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166836, *27-29 (W.D. Wash. Apr. 17, 2020) (noting that "FOSTA contains no language about whether it amends the CDA to preclude immunity for state law civil actions" and therefore concluding that it did not preclude immunity for such claims), *adopted by* 2020 U.S. Dist. LEXIS 166334 (W.D. Wash. Sept. 11, 2020); *see also Twitter*, 2021 U.S. Dist. LEXIS 157158 at *82-83 (agreeing that FOSTA limited exclusion to immunity to *federal* sex trafficking claims under Sections 1591 and 1595); *Doe v. Reddit*, No. SACV 21-768 JVS (KESx), 2021 U.S. Dist. LEXIS 129876, *19 (C.D. Cal. July 12, 2021) (stating that "§ 230(e)(5) does not provide an exception to § 230 immunity for civil suits brought under state sex trafficking laws").

Plaintiff's seventh cause of action is thus also barred by CDA 230 and should be dismissed with prejudice.

## III.    Plaintiff's Section 2421A Claim Fails Because the Alleged Violations Occurred Before the Statute's Enactment

There is a "deeply rooted" presumption against retroactive legislation." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). However, Plaintiff seeks to hold Omegle liable under Section 2421A—a new federal criminal statute that also created a new civil cause of action that was only enacted on April 11, 2018—based on alleged conduct that pre-dates the statute's

enactment. Because such a result would violate the presumption against retroactive legislation, Plaintiff's claim for alleged violation of Section 2421A should be dismissed with prejudice.

Consistent with the well-established maxim that "retroactivity is not favored in the law," the Supreme Court has applied the "interpretive corollary that congressional enactments . . . will not be construed to have retroactive effect unless their language requires this result." *Landgraf*, 511 U.S. at 264 (internal quotation marks omitted). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly[.]" *Id.* at 265. Based on those considerations, "the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." *Id.* (internal quotation marks omitted). This well-established "antiretroactivity principle" is also reflected in the Constitution, including the *Ex Post Facto* clause and the Due Process Clause. *Id.* at 266.

In 2018, as part of FOSTA, Congress enacted a new federal criminal offense codified at 18 U.S.C. § 2421A, which also created a new civil cause of action allowing persons injured by an aggravated violation of that section to recover damages and attorneys' fees.[5] FOSTA, including Section 2421A, was enacted on April 11, 2018. *See* Pub. L. No. 115-164, 132 Stat. 1253 (2018). The Supreme Court has repeatedly reaffirmed the "time-honored presumption"

---

[5] The civil remedy provision in the new criminal statute, Section 2421A provides in relevant part that "[a]ny person injured by reason of a violation of section 2421A(b) may recover damages and reasonable attorneys' fees[.]" 18 U.S.C. § 2421A(c). Section 2421A(b), in turn, provides:

> (b) Aggravated violation. Whoever owns, manages, or operates an interactive computer service [as defined by CDA 230], or conspires or attempts to do so with the intent to promote or facilitate the prostitution of another person and—
> (1) promotes or facilitates the prostitution of 5 or more persons; or
> (2) acts in reckless disregard of the fact that such conduct contributed to sex trafficking, in violation of 1591(a)
> shall be fined under this title, imprisoned for not more than 25 years, or both.

18 U.S.C. § 2421A(b).

against retroactive effect of legislation "unless Congress has clearly manifested its intent to the contrary." *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946 (1997). Here, Congress made no such clear manifestation of any intent that the new federal criminal statute, Section 2421A, and its civil remedy provision, be applied retroactively to conduct occurring prior to its enactment.

In contrast, the FOSTA amendments to CDA 230, enacted at the same time as Section 2421A, included the following directive from Congress regarding the effective date of a portion of the CDA amendments:

> (b) EFFECTIVE DATE.—The amendments made by this section shall take effect on the date of the enactment of this Act, and the amendment made by subsection (a) shall apply regardless of whether the conduct alleged occurred, or is alleged to have occurred, before, on, or after such date of enactment.

Pub. L. No. 115-164 at Sec. 4(b), 132 Stat. 1253 (2018). The subsection (a) referenced in that paragraph were the exclusions to CDA 230 immunity codified at 47 U.S.C. § 230(e)(5)(A)-(C).

Thus, with respect to 18 U.S.C. § 2421A – the new federal criminal statute and its civil remedy provision upon which Plaintiff's fifth cause of action is based – Congress has not "clearly manifested [an] intent" contrary to the deeply-rooted presumption against retroactive legislation. Therefore, if Section 2421A "has a retroactive effect, then [the court] presume[s] it will not apply to the conduct alleged in this case, which occurred prior to its effective date." *Hughes*, 520 U.S. at 946. Here, because applying Section 2421A to the conduct alleged in this case would have a retroactive effect, the presumption against retroactivity applies and Plaintiff's fifth cause of action should be dismissed with prejudice.

On the face of the Complaint, all of the alleged acts or omissions of Omegle with respect to Plaintiff and her interactions with the other user, Ryan Fordyce, were complete at the latest by January 2018, when she alleges law enforcement contacted her parents about the raid on

Fordyce's home that had occurred on some earlier date. (Dkt. 1 at ¶ 50.) Although Plaintiff

makes general allegations about the alleged trafficking of children and/or "***persons*** under the age

of 18, including Plaintiff" (Dkt. 1 at ¶¶ 108, 111, 112 (emphasis added)), A.M. is the only

plaintiff seeking relief in this action. Therefore, there can be no dispute that based on Plaintiff's

own allegations, the alleged acts or omissions of Omegle with respect to Plaintiff and her

interactions with Fordyce pre-dated the enactment of the new federal criminal statute and the

civil cause of action it created.

    Nor can there be any dispute that Section 2421A "attaches new legal consequences to

events completed before its enactment." *Landgraf*, 511 U.S. at 270. Section 2421A both created

a new criminal statute and provided for a civil cause of action whereby persons injured by an

aggravated violation may recover damages and attorneys' fees. Omegle is not aware of any

decision explicitly holding that Section 2421A's civil remedy provision may be applied

retroactively. However, in an analogous case, the Ninth Circuit held that 18 U.S.C. § 1595 –

which created a civil cause of action allowing victims of sex trafficking under the Trafficking

Victims Protection Act ("TVPA") to recover damages – "changed substantive law and attached

new legal burdens to violations of the TVPA." *Ditullio v. Boehm*, 662 F.3d 1091, 1100 (9th Cir.

2011). As a result, the court held that "section 1595 cannot apply retroactively to conduct that

occurred before its effective date." *Id. See also Velez v. Sanchez*, 693 F.3d 308, 325 (2d Cir.

2012) (finding that even though criminal liability may have existed previously, the creation of a

civil remedy was impermissible retroactive legislation "because it increases a party's liability for

previously occurring conduct"). Similarly here, because Section 2421A "creat[es] a new cause of

action, . . . its impact on parties' rights is especially pronounced." *Landgraf*, 511 U.S. at 283-84

(stating that absent a clear indication from Congress, in no case had the Court "read a statute

substantially increasing the monetary liability of a private party to apply to conduct occurring before the statute's enactment"). Additionally, the fact that retroactive application may "vindicate [the statute's] purpose . . . is not sufficient to rebut the presumption against retroactivity." *Id.* at 285-86.

Therefore, because Section 2421A cannot be applied retroactively to the conduct alleged in the Complaint (all of which pre-dates the statute's enactment), Plaintiff's fifth cause of action should be dismissed with prejudice.

## IV. Even Absent CDA 230 Immunity, the Negligent Misrepresentation Claim Fails on the Merits As a Matter of Law

### A. The Complaint Relies on Terms of Service Implemented Years After the Activities Alleged in the Complaint

The Complaint quotes from Omegle's current Terms of Service extensively (*see, e.g.*, Dkt. 1 at ¶ 36), and relies on those Terms of Service as a, if not the, basis for Plaintiff's negligent misrepresentation claim (*see, e.g.*, Dkt. 1 at ¶ 144). However, the Complaint fails to note that the Terms of Service quoted and relied upon were not in effect during the time period alleged in the Complaint (approximately 2014 to 2018 (*see* Dkt. 1 at ¶¶ 7, 11, 39, 50)). This is demonstrated by (1) the Terms of Service themselves posted on the publicly-available Omegle website, which indicate they were updated on June 1, 2021, and (2) archived copies of the Omegle website from the Internet Archive's Wayback Machine.[6]

In the negligent misrepresentation claim, the Complaint alleges that "Omegle made statements in its Terms of Service" that Plaintiff alleges were misstatements upon which she relied. (*See* Dkt. 1 at ¶¶ 144, 151.) Although the Complaint is vague about the precise dates at issue, even based on the minimal allegations, Plaintiff alleges that the alleged conduct occurred

---

[6] Omegle has concurrently filed a request for judicial notice of these materials.

between "[i]n or about 2014" when she first engaged in a chat with Fordyce on the Omegle website (id. at ¶ 39) and January 12, 2018 at the latest, when Plaintiff's parents were contacted about the earlier raid on Fordyce's home (id. at ¶ 50). However, the Terms of Service quoted at length in the Complaint and upon which Plaintiff claimed to have relied identify a last update date of June 1, 2021, some 7 years after Plaintiff alleges she met Fordyce via Omegle's chat service and some 3 years after Plaintiff's parents were notified of the raid on Fordyce's home. (Declaration of Stacia N. Lay in Support of Defendant Omegle.com LLC's Request for Judicial Notice ("Lay Decl.") ¶¶ 2-3, Ex. A.) Additionally, archived copies of the Omegle website from the Wayback Machine demonstrate that the Terms of Service quoted in the Complaint were not published until June 2021, and certainly were not in effect between 2014 and 2018, the time period encompassing the alleged activities at issue. (Lay Decl. ¶¶ 6-15, Exs. D-M.)

As a result, Plaintiff necessarily could not have relied upon Terms of Service that were not published during the relevant time period. Therefore, even absent the CDA 230 bar, Plaintiff's negligent misrepresentation claim fails on this ground alone.

### B.     The Complaint Does Not, and Cannot, Plausibly Allege Any Special Relationship Between Plaintiff and Omegle

"The Oregon Supreme Court has held claims for negligent misrepresentation 'must be predicated on some duty of the negligent actor to the injured party *beyond* the common law duty to exercise reasonable care to prevent foreseeable harm.'" *Ave. Lofts Condos. Owners' Ass'n v. Victaulic Co.*, 24 F. Supp. 3d 1010, 1018 (D. Or. 2014) (quoting *Onita Pac. Corp. v. Trs. of Bronson*, 315 Or. 149, 159, 843 P.2d 890 (1992)); *see also Edmondson v. Thrifty Payless, Inc.*, No. 6:17-cv-1090-MC, 2018 U.S. Dist. LEXIS 160030, *8 (D. Or. Sept. 19, 2018). Some cases have stated that such a special relationship is required only for negligent misrepresentation claims seeking economic losses. *See, e.g.*, *In re JUUL Labs, Inc.*, No. 19-md-02913-WHO, 2021

U.S. Dist. LEXIS 137078, *223-24 (N.D. Cal. July 22, 2021); *but see Tibbets v. Athene Annuity & Life Assurance Co.*, No. 3:19-cv-00796-BR, 2020 U.S. Dist. LEXIS 4488, *18, 19 (D. Or. Jan. 10, 2020) (stating, without qualification, that to state a negligent misrepresentation claim under Oregon law, a plaintiff must allege a special relationship but also later stating that such claims for "economic losses" must be based on a duty beyond the common law duty of reasonable care). In any event, Plaintiff appears to acknowledge an obligation to allege a special relationship by purporting to allege that "Omegle is bound to Plaintiff by a relation or duty of care beyond a mere contract" and that "Omegle is in a special position of confidence and trust in relation to Plaintiff." (Dkt. 1 at ¶¶ 149-150.) But these conclusory assertions do not, and cannot, plausibly allege any such special relationship or duty between Omegle and a user of its website.

"The defining feature of such a special relationship is that one party has ceded to another decision-making authority with the expectation that decisions will be made in the best interests of the ceding party." *Edmondson*, 2018 U.S. Dist. LEXIS 160030 at *8; *see also Ave. Lofts*, 24 F. Supp. 3d at 1018 (stating that for a negligent misrepresentation claim, "the parties must be in a special relationship, in which the party sought to be held liable had some obligation to pursue the interests of the other party") (internal quotation marks omitted). Examples of cases in which such a special relationship was found to exist involved markedly distinct relationships such as "attorneys, physicians, principals in an agent relationship, trustees, pledgees, and liability insurers[.]" *Id.* (internal quotation marks omitted).

The Complaint, however, is devoid of any well-plead allegations that Omegle – the operator of a website that offers a text and video chat service – had an "obligation to pursue the interests of" Plaintiff, *id.*, or that Plaintiff "ceded to [Omegle] decision-making authority with the expectation that decisions will be made in [her] best interests," *Edmondson*, 2018 U.S. Dist.

LEXIS 160030 at *8. To the contrary, the Complaint makes only conclusory assertions that "Omegle is bound to Plaintiff by a relation or duty of care beyond a mere contract between the parties" and "is in a special position of confidence and trust in relation to Plaintiff." (Dkt. 1 at ¶¶ 149-150.) Such "naked assertion[s] devoid of further factual enhancement" are insufficient to state a claim for relief. *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

Nor could Plaintiff plausibly allege a special relationship with Omegle. Numerous courts have rejected the assertion of a special relationship between a website and its users in analogous circumstances. For example, in *Dyroff*, plaintiff alleged that a website had a duty to warn her son who died from an overdose of fentanyl-laced heroin purchased from a dealer he met on the site. 2017 U.S. Dist. LEXIS 194524 at *1, 30. The district court found that there was no special relationship between a website and its users that would support imposing a duty to warn and no other ground to impose an ordinary duty of care. *Id.* at *36-40. The Ninth Circuit affirmed, noting that "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content." *Dyroff*, 934 F.3d at 1101.

Similarly, in *Herrick*, the plaintiff was a victim of "malicious catfishing" by his former boyfriend who impersonated plaintiff by posting fake profiles to Grindr, a web-based dating app. 306 F. Supp. 3d at 584. Herrick sued Grindr alleging numerous claims:

> the gist of which is that Grindr is a defectively designed and manufactured product because it lacks built-in safety features; that Grindr misled Herrick into believing it could interdict impersonating profiles or other unpermitted content; and that Grindr has wrongfully refused to search for and remove the impersonating profiles.

*Id.* at 584. The court found that Herrick's negligent misrepresentation claim failed on the merits because, among other things, it did not allege a sufficient "special relationship." *Id.* at 598. The court held that Herrick had not alleged "a special relationship of trust or confidence"; rather, "the

relationship between the parties was typical of an arm's length transaction."[7] *Id.* at 599. *See also Beckman v. Match.com, LLC*, No. 2:13-CV-97 JCM (NJK), 2017 U.S. Dist. LEXIS 35562, *1, 6-9 (D. Nev. Mar. 10, 2017) (finding no special relationship between dating website and user sufficient to support a negligence claim where user was attacked offline by another user she was matched with on the site), *aff'd*, 743 F. App'x 142 (9th Cir. 2018); *Doe v. SexSearch.com*, 502 F. Supp. 2d 719, 722-23, 731 (N.D. Ohio 2007) (finding no special relationship to support a negligent misrepresentation claim where plaintiff alleged that defendants – operators of an adult dating website – negligently misrepresented that all members on the site were adults but failed to remove the profile of a minor); *Doe v. MySpace, Inc.*, 474 F. Supp. 2d 843, 850-52 (W.D. Tex. 2007) (finding no special relationship between a social networking website and a user to support a legal duty to protect the user from the criminal acts of another user she met on the website), *aff'd*, 528 F.3d 413 (5th Cir. 2008).

Consistent with these and other cases, Plaintiff does not and cannot allege that a special relationship exists between a website and its users where the website simply facilitates users' communications. Therefore, Plaintiff's negligent misrepresentation claim also fails on this independent ground, in addition to being barred by CDA 230.

### C.    The Terms of Service Unambiguously and Expressly Disclaim Any Representation Upon Which the Negligent Misrepresentation Claim is Based

Even if Plaintiff were able to surmount the hurdles of (1) CDA 230 immunity, (2) reliance on Terms of Service that post-date the alleged activities at issue, and (3) the lack of a special relationship, the negligent misrepresentation claim would still fail as the terms did not confer any rights or obligations with respect to Omegle's policies relating to user content and

---

[7] The Second Circuit affirmed dismissal of the claim on the ground that Herrick failed to plausibly allege causation. *Herrick*, 765 F. App'x at 592.

actions. Moreover, this flaw is fatal to the negligent misrepresentation claim regardless of which version of the terms Plaintiff attempts to rely on.

The Terms of Service quoted at length in the Complaint explicitly disclaim the creation of any enforceable rights by users or obligations imposed on Omegle to "enforce its user policies" (Dkt. 1 at ¶ 145):

> Neither the above restrictions [on a user's use of Omegle's chat service], nor the Community Guidelines, the Rules, or anything else in the Terms, shall be construed to create any rights enforceable by users, whether as to third-party beneficiaries or otherwise. Omegle has the right, but not the obligation, to enforce any of the foregoing.

(Lay Decl. Ex. A at p. 3.) Omegle further disclaimed any obligation to monitor user communications and any liability for user content or activity within its chat service. (Id. Ex. A at pp. 3, 4-6; *see also* Id. Ex. B at p. 1.) Similarly, the terms in effect during the period of time alleged in the Complaint (2014 – 2018), prior to the updated June 2021 terms, unambiguously stated that Omegle was not responsible for other users' behavior, that no moderation is perfect, and that users are solely responsible for their own behavior. (*See* Lay Decl. Exs. D-K.)

Courts have rejected claims relying on terms of service or similar website policies that explicitly disclaim the rights or obligations alleged. For example, in *Green v. America Online*, the Third Circuit rejected a breach of contract claim where plaintiff claimed that AOL breached its Community Guidelines by failing to take action against other users who transmitted harmful messages. 318 F.3d at 468, 472. The court concluded that "by their terms, the Member Agreement and Community Guidelines were not intended to confer any rights on Green and AOL did not promise to protect Green from the acts of other subscribers." *Id.* at 472. *See also Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014) (rejecting argument that Facebook's Statement of Rights and Responsibilities created duties where the "plain text of the Statement" expressly stated that Facebook "is not responsible for the actions, content,

information, or data of third parties") (emphasis omitted); *Herrick*, 306 F. Supp. 3d at 595-99

(rejecting fraud, promissory estoppel and negligent misrepresentation claims where Grindr's

terms of service and community values disclaimed any obligation to monitor or remove user

content); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016) (stating that

the court does not presume the truth of allegations that contradict the terms on which plaintiff

relied that "clarif[ied] that Facebook is not responsible for content shared by other users"), *aff'd*,

700 F. App'x 588 (9th Cir. 2017); *Hopkins v. Doe*, No. 2:11-CV-100-RWS, 2011 U.S. Dist.

LEXIS 136038, *4-6 (N.D. Ga. Nov. 28, 2011) (rejecting plaintiff's argument that website

"fraudulently violated its own policies by not policing its content" where website "expressly

disclaimed liability 'for any content that is provided or posted by you or others'").

Therefore, because the unambiguous language of Omegle's terms – regardless of which

version Plaintiff relies on – disclaims an obligation to monitor and police the content and

conduct of the users of its chat service, Plaintiff's claim alleging that Omegle misrepresented that

it would enforce its policies regarding user conduct fails on this separate ground.

## V.    Leave to Amend Should Not Be Granted

Notwithstanding the liberal standard for pleading amendments, courts deny leave to

amend when CDA 230 bars the claims because amendment would be futile. *See, e.g.*, *Winter v.*

*Facebook, Inc.*, No. 4:21-CV-01046 JAR, 2021 U.S. Dist. LEXIS 224836, *15-16 (E.D. Mo.

Nov. 22, 2021) (finding amendment futile because claim was barred by CDA 230); *Kik*, 482 F.

Supp. 3d at 1251-52 (amendment futile as CDA 230 would also bar the proposed new claims);

*Saponaro*, 93 F. Supp. 3d at 322 (dismissing complaint with prejudice based in part on CDA

230); *Hinton v. Amazon.com.DEDC, LLC*, 72 F. Supp. 3d 685, 692 (S.D. Miss. 2014) (claims

dismissed with prejudice where plaintiff "presented no plausible basis for avoiding the CDA's

immunity bar"); *Black*, 2010 U.S. Dist. LEXIS 82905 at *9 (dismissing complaint with prejudice as amendment would be futile because it was clear the action was based on third-party content). This case is no different.

Similarly, because Plaintiff can allege no facts consistent with her original complaint that would not require an impermissible retroactive application of Section 2421A, any attempt to amend that claim would be futile. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (dismissal with prejudice appropriate where amendment would be futile and any amendment "may only allege other facts consistent with the challenged pleading") (internal quotation marks omitted). And even ignoring the CDA 230 bar, any attempt to amend the negligent misrepresentation claim would be futile as it relies on Terms of Service that were not published until years after the conduct alleged in the Complaint and any version of the terms disclaims the rights or obligations alleged in that claim.

Thus, because amendment would be futile, the Complaint should be dismissed with prejudice.

## CONCLUSION

Therefore, for the foregoing reasons, Omegle respectfully requests that the Complaint be dismissed in its entirety and without leave to amend.

Dated this 18th day of January, 2022.    Respectfully submitted,

FOCAL PLLC

By:    s/ *Stacia N. Lay*
Venkat Balasubramani, OSB #180446
Stacia N. Lay, WSBA #30594 (*Pro Hac Vice*)
Kimberlee Gunning, WSBA #35366 (*Pro Hac Vice*)
900 1st Avenue S., Suite 201
Seattle, Washington 98134
Telephone: (206) 529-4827
venkat@focallaw.com

stacia@focallaw.com
kim@focallaw.com

*Attorneys for Defendant Omegle.com LLC*