Barbara C. Long, OSB No. 122428
barb@vogtlong.com
VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
Telephone: (503) 228-9858

Carrie Goldberg (*pro hac vice*)
carrie@cagoldberglaw.com
Naomi Leeds (*pro hac vice*)
naomi@cagoldberglaw.com
C.A. GOLDBERG PLLC
16  Court Street
Brooklyn, NY 11241
Telephone: (646) 666-8908

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| A.M., an individual, | Case No. 3:21-cv-01674-MO |
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT** |
| v. | |
| OMEGLE.COM LLC, | Judge: Hon. Michael W. Mosman |
| Defendant. | Date: February 15, 2022 |

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

<u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................... 1

FACTUAL ALLEGATIONS ...................................................................................... 3

LEGAL STANDARD ................................................................................................. 4

I.     A.M's claims are sufficiently pleaded and Omegle fails to show that Plaintiff's complaint cannot withstand Rule 12(b)(6) scrutiny. ............................................. 4

ARGUMENT ............................................................................................................... 6

I.     Omegle is not entitled to immunity under Section 230. ..................................... 6

        A.     Omegle does not qualify for Section 230 immunity because two of the three necessary factors are unmet. ......................................................... 8

              1.     Plaintiff's claims do not treat Omegle as the publisher or speaker of third-party content. ................................................ 8

                     a.     Plaintiff's claims do not treat Omegle as a "publisher or speaker" of third-party content. ......................................... 9

                     b.     Plaintiff's product liability, defective warning, and failure to warn claims treat Omegle as a products manufacturer, rather than an ISP publisher. ............................................ 15

                     c.     Omegle materially contributes to its own dangerous product, trafficking and sexual abuse of children, including Plaintiff. ................................................................... 18

II.    Omegle doesn't qualify for 230 Immunity because A.M.'s allegations stem from the sexual abuse of a child ............................................................................. 20

III.   Omegle forces users into experiencing unlawful conduct. ............................. 22

IV.   Plaintiff's claim for violation of Section 1595 is proper. ............................... 23

        A.     Courts don't give ISPs Section 230 immunity for trafficking claims. ............... 24

        B.     Omegle is in violation of 18 U.S.C. § 1595. ......................................... 24

V.    Plaintiff's Section 2421A claim is permissible where the violations occurred before the amendment's enactment. ................................................................. 27

VI.   Plaintiff's negligent misrepresentation claim is proper. .................................. 29

CONCLUSION ......................................................................................................... 31

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

## <u>Table of Authorities</u>

<u>Cases</u>

*A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921 (D. Or. 2020) .........................25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................5, 6

*Barnes v. Yahoo!, Inc.* 570 F.3d 1096 (9th Cir. 2009) ........................................................8, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................5

*B.M. v. Wyndham Hotels*, No. 20-CV-00656-BLF,
    2020 U.S. Dist. LEXIS 135494 (N.D. Cal. July 30, 2020) ....................................25, 26

*Daniel v. Armslist, LLC*, 926 N.W.2d 710 (Wis. 2019) ............................................................18

*Doe No. 14 v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) .............................16, 17, 18

*Doe v. MG Freesites, Ltd.*, 7:21-cv-00220-LSC
    2022 U.S. Dist. LEXIS 23199 (N.D. Ala. Feb. 9, 2022).......................................passim

*Doe v. Mindgeek USA Inc.*, No. SACV 21-00338-CJC (ADSx),
    2021 U.S. Dist. LEXIS 176833 (C.D. Cal. Sept. 3, 2021)...........................................19

*Doe v. Mindgeek USA Inc.*, No. SACV 21-00338-CJC (ADSx),
    2021 U.S. Dist. LEXIS 236874 (C.D. Cal. Dec. 2, 2021)...........................................19

*Doe v. Twitter, Inc.*, No. 21-CV-00485-JCS,
    2021 U.S. Dist. LEXIS 157158 (N.D. Cal. Aug. 19, 2021)......................17, 23, 24, 25

*Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093 (9th Cir. 2019)...................................10

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC,*
    521 F. 3d 1157 (9th Cir. 2008)...............................................................................passim

*F.T.C. v. Accusearch, Inc.*, 570 F. 3d 1187 (10th Cir. 2009)................................................ 7-8

*F.T.C. v. LeadClick Media, LLC*, 838 F.3d 158 (2d Cir. 2016)...............................................22

*Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021) ........................................................8, 19

*Herrick v. Grindr, LLC*, 765 Fed. App'x 586 (2d Cir. 2019) ...........................................7, 17

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

*In re Facebook, Inc.,* 625 S.W.3d 80 (Tex. 2021) ........................................................ 23, 27-29

*In re Juul Labs, Inc.*, No. 19-md-02913-WHO,
    2021 U.S. Dist. LEXIS 137078 (N.D. Cal. July 22, 2021) ........................................30

*J.B. v. G6 Hosp. LLC,* No. 19-cv-07848-HSG,
    2021 U.S. Dist. LEXIS 170338 (N.D. Cal. Sept. 8, 2021)...........................................27

*Jewel v. NSA*, 673 F.3d 902 (9th Cir. 2011)............................................................. 4-5

*Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021) ........................................................passim

*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC,* 141 S. Ct. 13, 14, (2020) .........passim

*M.A. v. Wyndham Hotels and Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019)...............26

*M.H. v. Omegle.com LLC*, No. 8:21-cv-814-VMC-TGW,
    2022 U.S. Dist. LEXIS 4543 (M.D. Fla. Jan. 10, 2022) ........................................ 13-14

*M.L. v. Craigslist Inc.*, No. C19-6153 BHS-TLF,
    2020 U.S. Dist. LEXIS 166334 (W.D. Wash. Sept. 11, 2020) ...................................20

*Onita Pac. Corp. v. Trs. of Bronson*, 315 Or 149 P.2d 890 (1992) ........................................30

*Sheppard v. David Evans & Assoc.*, 694 F.3d 1045 (9th Cir. 2012).........................................6

*Williams v. Gerber Prods.*, 523 F.3d 934 (9th Cir. 2008).........................................................5

## Statutes and Rules

18 U.S.C. § 1591 ...........................................................................................................8, 24

18 U.S.C. § 1591(a)(2) ........................................................................................................24

18 U.S.C. § 1591(e)(6) ........................................................................................................26

18 U.S.C. § 1595 ........................................................................................................passim

18 U.S.C. § 2251 ................................................................................................... 22-23

18 U.S.C. § 2251A ................................................................................................. 22-23

18 U.S.C. § 2252 ................................................................................................... 22-23

18 U.S.C. § 2252A ................................................................................................ 22-23

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

18 U.S.C. § 2252B ................................................................................................... 22-23

18 U.S.C. § 2252C ................................................................................................... 22-23

18 U.S.C. § 2260 ..................................................................................................... 22-23

18 U.S.C. § 2421A ..............................................................................................8, 12, 27

47 U.S.C. § 230 ........................................................................................................passim

47 U.S.C. § 230(c)(1) ................................................................................ 6, 8, 15-16, 28

47 U.S.C. § 230 (e)(3) ............................................................................................15, 17

47 U.S.C. § 230(f)(5) .....................................................................................................24

FED. R. CIV. P. 8(a) ........................................................................................................4

FED. R. CIV. P. 12(b)(6) ............................................................................................4, 30

OR. REV. STAT. 30.867 ............................................................................................8, 12

## **Other Authority**

Dan D. Dobbs, *Dobbs' Law of Torts* § 478 (2d ed.) .................................................13

Pub. L. No. 115-164, 132 Stat. 1253 (2018) ............................................................28

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

## <u>INTRODUCTION</u>

The Court should deny Omegle's motion to dismiss. Plaintiff has brought a civil action against Omegle based on injuries she sustained from its product defects and its sex trafficking. Omegle seeks dismissal based on Omegle's purported immunity as a publisher of third-party content pursuant to Section 230 of the Communications Decency Act. However, none of Plaintiff's eight causes of action treat Omegle as a publisher and certainly not as a publisher of third-party content. The Ninth Circuit has unequivocally determined that internet companies are not entitled to Section 230 immunity for claims pertaining to product liability. *See Lemmon v. Snap, Inc.,* 995 F.3d 1085, 1087 (9th Cir. 2021)*.* Moreover, Section 230 immunity contains an explicit exception for claims pertaining to sex trafficking.

Omegle is a live-streaming video site that matches users of all ages for private, anonymous one-on-one experiences with strangers. The typical use of Omegle is for users to engage in sexual and masturbatory performances with the user with whom Omegle matches them. Omegle is welcoming to children and adults alike. Omegle does not restrict user-to-user matches based on age. Rather it matches adults with adults, adults with children, and children with children. Predators are known to use Omegle because of its product design which liberates and facilitates child predation. This product's sole function runs counter to the social goal of protecting children by putting them in direct contact with predatory adults in private chatrooms absent any form of identity or age verification.

Omegle is not an internet publishing business. Unlike platforms that would not exist without publishing user content, such as, Snap, Facebook, Instagram, TikTok, or a dating app, Omegle's main role is to facilitate matches between users so they can privately perform for one

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

another. Publication of content does not factor in because there's nowhere on the platform to publish it. There is no forum, bulletin board, wiki, feed or other mechanism for users to publish content. Nevertheless, Omegle insists in its motion that it is a publisher – of child pornography, at that! – in its bid for immunity from liability.

The Omegle product is inherently defective. There is no way to use Omegle without either committing, witnessing, or falling victim to violations of federal criminal law. Children are all but guaranteed to be exposed to adult nudity and pressure to perform sex acts and adults are guaranteed to either view child sexual abuse materials ("CSAM"), if they are not there to expose themselves to children. Sexual voyeurism, exhibitionism, and masturbation are the primary – not the exceptional – usage of the product. The product is marketed to people aged 13 and older, but is an attractive nuisance for children even younger.

The key aspect of Omegle's conduct is the pairing of minors with adults for sex acts. This conduct occurs before any content is created. To the extent that any of the allegations underlying Plaintiff's facts amount to content, it is not eligible for Section 230 immunity because it is either content that Omegle materially contributed to or it is illegal and the basis of child sexual abuse injuries.

The matter at hand is a product liability and trafficking case about Omegle's own design features and failures to warn. However, Omegle attempts to reframe the issue as one of content moderation so that Plaintiff's claims fall prey to Section 230 immunity. Even then, Omegle relies almost exclusively on an overbroad reading of the CDA in a familiar attempt to dodge liability under the guise of statutory immunity so that it may continue to expose children to cruel and permanently damaging abuse. To dismiss Plaintiff's serious and legitimate claims would be an

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

extravagant and overreaching interpretation of Section 230, even in the context of its bloated 26-year history. As such, this Court should deny Omegle's motion to dismiss and give Plaintiff's claims the opportunity to be heard.

## FACTUAL ALLEGATIONS

Omegle is a free online website that randomly pairs strangers for livestream video chats (Compl. at ¶ 17). Omegle's tag line is "Talk to strangers!" (Compl. at 22). Omegle's primary use is for individuals seeking immediate online sexual connections with strangers. (Compl. at 24). Omegle receives an estimated 66 million monthly visits; and at any one time, there are about 50,000 individuals using the product (Compl. at 18). Omegle's homepage admits that "[p]redators have been known to use Omegle." Omegle allows anybody to use its product and requires no registration, name, or age verification. (Compl. at 27) Omegle also does not use the industry-standard verifiers that disincentivize abusive conduct by users, such as requiring users to provide name, email, phone number or social media accounts or that access of the product be through the App Store or Google Play. (Compl. at 27, 30). Omegle's revenue comes from advertisements for pornography and adult cam sites displayed on its site (Compl. at 31)

Omegle invites kids as young as thirteen to use its product (Compl. at 29). Omegle knowingly pairs children and adults for online sex acts. A BBC investigation revealed that in ten hours, journalists were paired with dozens of minors, some appearing as young as seven or eight and in a two-hour period Omegle also paired them with 12 masturbating men, 8 naked men, and seven porn advertisements (Compl. at 33). Twice journalists were paired with prepubescent boys masturbating (Compl. at 33). Omegle simply has no mechanism to prevent children and adults from being paired with one another and thus it is a playground for predators to find children.

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

(Compl. at 4-5)

In about 2014, Omegle matched then 11-year-old A.M. with a predator ("Omegle Predator") (Compl. at 39-43). On Omegle, the Omegle Predator gained A.M.'s trust and then went on to elicit intimate images of A.M. (Compl. at 43). The Omegle Predator blackmailed A.M. for three years to send him more intimate images, masturbate for him, and be available at his beck and call for online sexual performances for him and his friends. (Compl. at 44-47).

The Omegle Predator forced A.M. to sex traffic other children on Omegle by making her recruit other children for him to exploit (Compl. at 48). A.M.'s abuse eventually ended when in 2018 she was contacted by Canadian law enforcers after they had done a raid on the man's home and found images of her and other children. (Compl. at 50). A.M. suffers extreme emotional distress and trauma as a result of Omegle's defective and dangerous product and the sex trafficking she was coerced into. (Compl. at 52-60)

A.M.'s injuries were the predictable consequences of the regular, intended, and known use of Omegle. (Compl. at 63-64, 71)

## LEGAL STANDARD

I.  **A.M's claims are sufficiently pleaded and Omegle fails to show that Plaintiff's complaint cannot withstand Rule 12(b)(6) scrutiny.**

Plaintiff's claims are sufficiently stated to withstand Rule 12(b)(6) based on the standards set forth in Defendant's Motion to Dismiss.

Federal Rules of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8. Courts "must accept all factual allegations of the complaint as true" and "draw all reasonable inferences in favor" of the

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

complaint. *Jewel v. NSA*, 673 F.3d 902, 907 (9th Cir. 2011). As such, this Court must also

"'presume that general allegations embrace those specific facts that are necessary to support the

claim.'" *Id.*

To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009). A.M. alleges that Defendant on its own created Omegle, a dangerous product,

that was used as intended to cause her harm, and, as such, she is entitled to relief. A complaint is

facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. On the

pleadings, A.M. has alleged that Defendant created Omegle, a defective and dangerous product,

and that Defendant is liable for the harms caused by its technology that introduced her to a child

predator. "When there are well-pleaded factual allegations, a court should assume their veracity

and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The

factual allegations within A.M.'s complaint do not rest on legal conclusions or conclusory

statements, but instead focus on factual context and, as such, this Court should assume their

veracity. *See id.* 556 U.S. at 678-9, 686.

Defendant conflates its objection to liability with its argument that Plaintiff's complaint is

insufficiently pled. "The motion to dismiss is not a procedure for resolving a contest between

parties about the facts or the substantive merits of plaintiff's case." *Williams v. Gerber Prods.*,

523 F.3d 934, 938 (9th Cir. 2008) (internal citations and quotation marks omitted) (quoting 5

Fed. Prac. & Proc. 1356); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (noting that

courts may not dismiss claims because they believe "the [claimant] will fail to find evidentiary

support"). "[A] claim [need only] be 'plausible,'" and "even a 'short and plain' statement can

state a claim." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1048-49 (9th Cir. 2012). Even

allegations of "extravagantly fanciful nature" are entitled to "the presumption of truth." *Iqbal*,

556 U.S. at 681; *Twombly*, 550 U.S. at 556. Twombly does not require courts at the motion-to-

dismiss stage to consider the likelihood that the allegations are true; instead, it requires courts to

proceed on the assumption that all facts alleged are true. *Iqbal*, 556 U.S. at 681.

Plaintiff's claims are based in fact and Defendant has not shown otherwise. Regardless of

Defendant's position that it is immune to Plaintiff's claims, Omegle harms children by providing

a safe haven for predators to meet their prey—an issue only a jury can resolve. At the core of its

motion to dismiss, Omegle is disputing the allegations and seeking to skirt liability through a

misapplication of 12(b)(6).

## **ARGUMENT**

### I.      **Omegle is not entitled to immunity under Section 230.**

Under Section 230, "[n]o provider or user of an interactive computer service shall be

treated as the publisher or speaker of any information provided by another information content

provider." 47 U.S.C. 230(c)(1). The Ninth Circuit concluded that:

> Section 230 of the CDA immunizes providers of interactive computer services
> against liability arising from content created by third parties: 'No provider ... of an
> interactive computer service shall be treated as the publisher or speaker of any
> information provided by another information content provider.' This grant of
> immunity applies only if the interactive computer service provider is not also an
> 'information content provider,' which is defined as someone who is 'responsible,
> in whole or in part, for the creation or development of' the offending content.*Fair
> Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157,
> 1162 (9th Cir. 2008).

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

In this case, no such immunity can be bestowed upon Omegle where third-party users are not the subject of Plaintiff's causes of action. Rather, Omegle's own content is in question. Omegle is wholly responsible for the creation of a product that matches children with adults for sex acts.

This Court is bound by the Ninth Circuit precedent in *Lemmon v. Snap* which ruled that where, as here, a defendant's duty arises from its role as a manufacturer – and not a publisher – the defendant does not qualify for the exceptional privilege of immunity from liability for injuries it caused. 995 F.3d 1085, 1092-1094 (9th Cir. 2021).

The *Lemmon v. Snap* decision exemplifies the direction of Section 230 jurisprudence. Supreme Court Justice Clarence Thomas has expressed his intent to overturn extravagant interpretations of Section 230 that go beyond the text of the law and the legislative history that foresaw Section 230 applying to strictly content-based claims such as defamation. *See Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 14, (2020). In the Supreme Court's denial of certiorari in *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC* , Justice Clarence Thomas specifically cited product liability claims as a class for which platforms should not be entitled to immunity. *Id. at 17.* In so doing, he pointed to the unpublished Second Circuit decision of *Herrick v. Grindr LLC,* an out-of-circuit case that defendant clings dearly to, as an atextual reading of Section 230. ("One court granted immunity on a design-defect claim concerning a dating application that allegedly lacked basic safety features to prevent harassment and impersonation."). *Id.* Thomas further implored courts to stop broadening the text of Section 230 and to resist granting immunity when claims rest on product design flaws and cautioned extending immunity when plaintiffs are suing over a defendant's *conduct* versus a user's *content*. *Id.* ("[C]laims rested instead alleged product design flaws – that is the defendant's own

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

misconduct. Cf. F.T.C. v. *Accusearch, Inc.* 570 F. 3d 1187, 1204 (10th Cir. 2009) (Tymkovich, J.,

concurring) (stating that 230 should not apply when the plaintiff sues over a defendant's

'*conduct* rather than for the *content* of the information.")). More than any other circuit, the Ninth

Circuit has recognized that product liability cases like Plaintiff's are not dumped out of court on

Section 230 grounds.

> **A. Omegle does not qualify for Section 230 immunity because two of the three necessary factors are unmet.**

Plaintiff does not dispute Defendant's recapitulation of the three elements of 47 U.S.C. §

230(c)(1). A defendant is considered immune under Section 230 if: (1) it is the provider of an

"interactive computer service" ("ICS"); (2) the asserted claims treat it as the publisher or speaker

of the information; and (3) the information is provided by another information content provider.

*Gonzalez v. Google LLC*, 2 F.4th 871, 891 (9th Cir. 2021); *Barnes v. Yahoo!, Inc.* 570 F.3d 1096

(9th Cir. 2009).

> ***1. Plaintiff's claims do not treat Omegle as the publisher or speaker of third-party content.***

Plaintiff pleads eight causes of action against Omegle: (1) Product liability – defect in

design, (2) Product liability – defect in warning, (3) Negligent design, (4) Negligence – failure to

warn, (5) 18 U.S.C. 2421A Promotion or Facilitation of Prostitution and Reckless Disregard of

Sex Trafficking, (6) 18 U.S.C. § 1595 Civil Remedy for 1591 Sex Trafficking of Children or by

Force, Fraud or Coercion, (7) O.R.S. 30.867 for violation of Criminal Laws relating to

involuntary servitude or Trafficking over persons, (8) Negligent Misrepresentation.

All of Plaintiff's claims turn on Omegle's product design or sex trafficking claims, the

latter for which there's an explicit CDA exception.

Page 8 –PLAINTIFF'S RESPONSE
IN OPPOSITION TO MOTION TO
DISMISS

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

Publication of information plays no role whatsoever in any of Plaintiff's claims. That's because Omegle is a product for livestreaming video. Plaintiff presents no facts pertaining to Omegle reviewing, editing, or deciding whether to publish or not publish third-party content, and indeed Plaintiff has no knowledge and makes no claims pertaining to Omegle publishing or possessing information. Rather, Plaintiff alleges that the manner in which the product was designed and available for *use* – not publication – that hurt her.

Plaintiff thus seeks to hold Omegle liable for its own conduct – the design of its product, compliance with its own regulations, and sex trafficking -- and, as such, CDA immunity does not apply. The key aspect of Omegle's conduct is the pairing of minors with adults for sex acts. This conduct occurs before any content is created. Plaintiff's claims are not inextricably linked to user-generated content protected by Section 230 because Omegle created its own software that randomly pairs children with adults. By its own design, Omegle functions for the sole purpose introducing children to strangers. There is no conceivable way to use this product without committing, witnessing, or being exposed to criminal conduct. On Omegle, child users are exposed to child or adult nudity and sex acts and pressured to perform for adults; adult users are exposed to child nudity if they're not themselves exposing their genitals to children. Plaintiff was an unsuspecting child Omegle paired her with an adult stranger. Although Omegle may dispute some of these facts, those disputes are not properly before the Court on a Rule 12(b)(6) Motion. All well pleaded allegations must be taken as true.

> a. **Plaintiff's claims do not treat Omegle as a "publisher or speaker" of third-party content.**

The Ninth Circuit in *Lemmon v. Snap* concluded an ISP does not qualify for immunity when a plaintiff's claim do not seek to treat defendant as a "publisher or speaker" of third-party

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

content. *Lemmon,* 995 F.3d at 1087. Specifically, the Court said when, as here, the claims pertain

to design and manufacturing defects, defendants are not immune from suit. Instead, the Courts

are to look at "the duty the plaintiff alleges" and whether it stems from the defendant's status as a

publisher or speaker. *Lemmon,* 995 F.3d at 1087; *see also Dyroff v. Ultimate Software Grp., Inc.*,

934 F.3d 1093, 1097 (9th Cir. 2019); *Barnes*, 570 F.3d at 1100.

    The Ninth Circuit in *Lemmon* reasoned:

> In this particular context, "publication" generally "involve[s] reviewing, editing,
> and deciding whether to publish or to withdraw from publication third-party
> content." HomeAway, 918 F.3d at 681 (citation omitted). A defamation claim is
> perhaps the most obvious example of a claim that seeks to treat a website or
> smartphone application provider as a publisher or speaker, but it is by no means the
> only type of claim that does so. *Barnes*, 570 F.3d at 1101–02; see also Doe v.
> Internet Brands, Inc., 824 F.3d 846, 851 (9th Cir. 2016). Thus, regardless of the
> type of claim brought, we focus on whether "the duty the plaintiff alleges" stems
> "from the defendant's status or conduct as a publisher or speaker." *Barnes*, 570
> F.3d at 1107. Here, the Parents seek to hold Snap liable for its allegedly
> "unreasonable and negligent" design decisions regarding Snapchat. They allege
> that Snap created: (1) Snapchat; (2) Snapchat's Speed Filter; and (3) an incentive
> system within Snapchat that encouraged its users to pursue certain unknown
> achievements and rewards. The Speed Filter and the incentive system then
> supposedly worked in tandem *1092 to entice young Snapchat users to drive at
> speeds exceeding 100 MPH. *Lemmon,* 995 F.3d at 1091.

    Here, the duties Plaintiff alleges do not stem from Omegle's status or conduct as a

publisher or speaker but from Omegle's status as the manufacturer of a product which must

neither harm consumers nor violate sex trafficking laws. Omegle created: (1) Omegle.com; (2) a

product that randomly pairs adults and children for private and anonymous video chats; and (3)

an environment that encourages, condones, and profits from sexual activity between adults and

minors. The random pairing function of adults and children and the service's accessibility to both

adults and children work in tandem. Plaintiff's claims thus have nothing to do with information

provided by a user. It is the website's sole function of randomly matching children with adults

Page 10 –PLAINTIFF'S RESPONSE
IN OPPOSITION TO MOTION TO
DISMISS

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

that causes the danger. This function occurs *before* content occurs.

That Omegle's duty does not derive from its role as a publisher or speaker is apparent from looking at the eight causes of action:

1) Product Liability – Defect in Design: Plaintiff sues Omegle for creating "the predictable consequence of attracting both unsuspecting children and predatory adults, thereby facilitating and encouraging dangerous behavior and harm to children using the product" and how the matching feature makes it statistically unlikely that a person could use the product without breaking the law or being victimized (Compl. at 78-85)

2) Product Liability – Defect in warning: Omegle fails to effectively warn users of the high risk of injury and crime to child users and that it has no mechanism to ban abusive users even if it wanted to (Compl. at 86-91)

3) Negligent design – Omegle creates an unreasonable risk of injury to users by failing to properly design, manufacture, and communicate the defects. "Omegle owed a duty to Plaintiff to design the server-side software in such a way that made it safe for its intended use." A reasonable person would conclude that the reasonably foreseeable harm of Omegle, manufactured in accordance with its design outweighs the utility of the product. (Compl. at 92-97)

4) Negligence – Failure to Warn or Provide Adequate Instruction – The product was defective and unreasonably dangerous because it had no mechanism to prevent pairings between users of any age, Omegle is negligent for not warning that the

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

product is for adults aged 18 or older and for not warning that there is no mechanism to report abusers. (Compl. at 98-101)

5) 18 USC § 2421A Promotion or Facilitation of Prostitution and Reckless Disregard of Sex Trafficking – Omegle acts in reckless disregard of the fact that its conduct contributes to sex trafficking of persons under the age of 18 by conducting, recruiting, enticing, harboring, advertising to, patronizing and soliciting children. (Compl. at 102-123)

6) 18 USC § 1595 Civil Remedy for 1591 Sex Trafficking of Children by Force, Fraud or Coercion – Omegle profits from the routine violation of sex trafficking criminal laws that occur on its platform at any minute of any day. It admits that "[p]redators have been known to use Omegle…" and randomly matches users to "Talk to Strangers!" without age constraints (Compl. at 124-134)

7) Violation of ORS 30.867 (Violation of Criminal laws relating to involuntary servitude or trafficking of persons) – Omegle knew or should have known that it was benefitting financially and receiving value in the form of increased web traffic from trafficking children, including Plaintiff. (Compl. at 135-142)

8) Negligent Misrepresentation – Omegle's own statements in its Terms of Service exaggerated and misstated certain facts including those relating to the oversight of its product and safety of its users. Omegle was negligent and/or lacking in due diligence for making misstatements about the safety features of its product when in fact it does not enforce safety measures. (Compl. at 143-152)

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

Like in *Lemmon,* the majority of Plaintiff's claims are common product liability torts that rest on the premise that manufacturers have a duty to exercise due care in supplying products that do not present an unreasonable risk of injury or harm to the public. *Lemmon,* citing *Barnes* and *Dobbs' Law of Torts* § 478 (2d ed.), goes to great length to show that the duty underlying product liability claims such as against Snap and here are "markedly different from the duties of publishers as defined in the CDA" which "review[] material submitted for publication, perhaps edit[] it for style or technical fluency, and then decide[] whether to publish it." *Dobbs' Law of Torts* § 478 (2d ed.)

The Ninth Circuit created the Reasonable Design Measures test to determine when a defendant's duty springs from its role as a manufacturer and not a publisher. The test is whether the defendant could have taken "reasonable measures to design a product more useful than it was foreseeably dangerous – without altering that content that [its] users generate." *Lemmon* 995 F.3d at 1092 (citing to *Internet Brands,* 824 F.3d at 851). Certainly, Omegle could take reasonable measures to design a product more useful than it was foreseeably dangerous without altering user-generated content or monitoring users' content. Specifically, Omegle could have made to sure to match adults with adults – a not adults with children.

In *M.H. v. Omegle.com, LLC,* the Florida court concluded that the plaintiff's claims were inextricably linked to user content where they alleged that an ICS provider should have screened or filtered information provided by users. *M.H. v. Omegle.com LLC*, No. 8:21-cv-814-VMC-TGW, 2022 U.S. Dist. LEXIS 4543, *11 (M.D. Fla. Jan. 10, 2022). However, this Florida state court decision is inapposite to the instant case, the latter of which makes no such allegations about screening or filtering. *Id*. While it would be beneficial to Omegle users for screening and

Page 13 –PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

filtering to be better implemented, Plaintiff's lawsuit centers around Omegle's product design. Omegle thus tries, but fails, to shoehorn this case in with *M.H.* by drawing upon Plaintiff's description of Omegle's pornographic advertisements. However, Plaintiff is not suing for her exposure to pornographic advertisements. Plaintiff mentions Omegle's pornography advertisements to illustrate that Omegle is cultivating a sex and masturbation environment; a fact that undercuts Omegle's insistence that it is a wholesome platform for making new friends of all ages.

Omegle also sweats to distort Plaintiff's claims into centering around Omegle's failures to adequately monitor or police content or ban predators. While it is true that Omegle does fail to adequately do these things, none of those failures underpin the causes of action for which Plaintiff sues. Rather, these facts illustrate Omegle's noncompliance with its own promises to consumers and the industry safety standards Omegle is far beneath. Plaintiff is not suing for how Omegle could have fixed its product or stopped abusers. After all, Plaintiff comes before the court as a litigant – not a computer scientist. Rather, she is suing because Omegle released into the marketplace a product foreseeably designed to injure her. Her lawsuit is not about the many safety features Omegle *omitted*. It is about the hazardous product design and trafficking it *committed*.

Omegle attempts to distract the Court by saying Plaintiff does not "plausibly allege that Omegle 'created or authored' the allegedly offensive communications or content involving Plaintiff and the [Omegle Offender]." (Motion to Dismiss at 8). Plaintiff agrees. She does not allege – plausibly or implausibly – that Omegle created or authored any content between she and the Omegle offender. Once again, Plaintiff is not suing Omegle for content.

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

### b. Plaintiff's product liability, defective warning, and failure to warn claims treat Omegle as a products manufacturer, rather than an ISP publisher.

The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230 (c)(1). It further provides that "[n]o liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230 (e)(3). However, nothing shall "prevent any State from enforcing any State law that is consistent with this section." *Id*. In *Malwarebytes,* the court denied Section 230 immunity based on Congress's purpose and policy for enacting the statute because, courts have "extended the immunity in § 230 far beyond anything that plausibly could have been intended by Congress." *Malwarebytes*, 141 S. Ct. 13208141 at 208, *cert. denied*, *citing* 1 R. Smolla, Law of Defamation § 4:86, p. 4–380 (2d ed. 2019). In denying cert. in *Malware*, Justice Thomas elaborates that plaintiffs deserve their day in court and still face the high burden of proving their case:

> Paring back the sweeping immunity courts have read into § 230 would not necessarily render defendants liable for online misconduct. It simply would give plaintiffs a chance to raise their claims in the first place. Plaintiffs still must prove the merits of their cases, and some claims will undoubtedly fail. Moreover, States and the Federal Government are free to update their liability laws to make them more appropriate for an Internet-driven society. *Malwarebytes*, 141 S. Ct. at 208.

The Ninth Circuit's decision in *Lemmon v. Snap* is both consistent with SCOTUS' attitude about Section 230 and dictates the precedent in the instant case. Section 230 immunity does not extend to claims which neither treat the ISP as a "publisher or speaker" nor rely on information provided by another information content provider. *Lemmon,* 995 F.3d at 1087 ("[B]ecause the Parents' claim neither treats Snap as a publisher or speaker nor relies on information provided by another information content provider, Snap does not enjoy immunity

Page 15 –PLAINTIFF'S RESPONSE
IN OPPOSITION TO MOTION TO
DISMISS

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

from this suit under § 230(c)(1).") (internal quotation marks omitted). The Ninth Circuit ruled

specifically on the issue of whether the CDA protects against failure to warn claims. In *Doe v.*

*Internet Brands, Inc,.* the court held that the CDA is not a valid basis to dismiss plaintiff's failure

to warn claim. 824 F.3d 846, 854 (9th Cir. 2016). The plaintiff in *Doe v. Internet Brands* "[did]

not seek to hold Internet Brands liable as a "publisher or speaker" of content someone posted on

the Model Mayhem website, or for Internet Brands' failure to remove content posted on the

website." *Id.* at 851. Doe's claims sought to hold Internet Brands liable for failing to warn about

information it had in its possession. *Id.* As such, Doe's claims were not barred by Section 230.

*Id.*

      While Plaintiff does not contest Omegle's status as an ISP, the product liability, defective

warning, and failure to warn claims are filed not to hold Omegle liable as a speaker creator, or

moderator of Predator's messages. Rather, Plaintiff holds Omegle liable for its failure to warn

child users of adult sexual predators on Omegle based on its knowledge of child sexual abuse on

its site. Plaintiff also seeks to hold omegle liable for its role as a products manufacturer that has

negligently designed a product with a defect. In this light, Plaintiff's claims are analogous to

those in *Lemmon,* where "Parents seek to hold Snap liable for its allegedly unreasonable and

negligent design decisions." 995 F.3d at 1087 (internal quotation marks omitted); *see also*

*Malwarebytes,* 141 S. Ct. at 208 ("the plaintiffs were not necessarily trying to hold the

defendants liable as the publisher or speaker of third-party content.").

      In asserting CDA immunity from this product liability claim, Omegle attempts to adopt

"the too-common practice of reading extra immunity into statutes where it does not belong."

*Malwarebytes,* 141 S. Ct. at 208. No provision of Section 230 explicitly or implicitly bars

Page 16 –PLAINTIFF'S RESPONSE
IN OPPOSITION TO MOTION TO
DISMISS

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

product liability suits against ISP. 47 U.S.C. § 230 (e)(3) guarantees "no liability may be imposed under any state or local law that is inconsistent with this section;" Plaintiff's claim, consistent with Section 230, therefore, can be brought forward.

Plaintiff attempts to dodge liability by citing at length to the unpublished decision in the Second Circuit, *Herrick v. Grindr*. 765 Fed. Appx. at 591. However, in that case which is neither published nor precedential in the Ninth Circuit, the court determined that at the heart of all of Herrick's claims was Grindr's repeated failure to ban his malicious ex-boyfriend who, even during the litigation, was actively creating accounts and soliciting men to go to Herrick's home. In that case, which Justice Thomas specifically cited in *Malwarebytes* as a decision that too broadly interpreted Section 230 and deserved to be overturned, the court deemed the decision of whether to ban a user as a content moderation decision, and thus Grindr was acting in its editorial function by letting the malicious user stay on the platform. Again, Plaintiff here is not suing Omegle for its failure to ban her abuser. She's suing because Omegle designed a product where abusers run rampant, and abuse is totally foreseeable because it matches adults and children for private anonymous videostreaming.

The Ninth Circuit has consistently found that failure to warn claims are not immune under Section 230. *Internet Brands,* 824 F.3d at 854. In *Internet Brands* plaintiff alleged that ModelMayhem.com, a site where models and photographers create and publish profiles to find one another, failed to warn her about a serial predator they knew had abused other users and that they possessed requisite knowledge to avoid future victimization of future modelmayhem.com users by warning them of online predators. *Id*. The Ninth Circuit took painstaking effort, withdrawing a decision and reasserting it, in determining that platforms do not qualify for

Section 230 immunity for failure to warn causes of action. *Id.* Plaintiff's failure to warn claims in this case survive for two reasons – Omegle is not being sued for duties derived from being a publisher and the Ninth Circuit gives no immunity to failure to warn claims. Like in *Internet Brands,* Omegle had requisite knowledge at the time of A.M.'s use that child predators run rampant on the app.

Another one of Omegle's go-to cases, *Daniel v. Armslist*, also does not apply. 926 N.W.2d 710 (Wis. 2019). This Wisconsin state claim against an online marketplace, at heart treats the plaintiff's claims as content-based. *Id.* That plaintiff alleged that the defendant partially developed an ad that resulted in an injury. Unlike in the present case, the defendant in Armslist was being held liable for the content in an ad and that plaintiff's claims were not based on product defects. *Id.* Likewise, *Doe v. Twitter* doesn't apply because Twitter is a third-party-content-based publishing platform which is not an inherently dangerous product. *Doe v. Twitter, Inc.*, No. 21-CV-00485-JCS, 2021 U.S. Dist. LEXIS 157158 (N.D. Cal. Aug. 19, 2021). While Omegle's main use is to match adults and children for private and anonymous video-screening, Twitter is a broadcasting platform for people to publicly publish their own content in 280 characters or less. Predation of children is foreseeable on Omegle more so than on Twitter. The types of injuries in *Daniel v Armslist* and  in *Doe v. Twitter* could have been avoided through content moderation instead of product design.

### c. Omegle materially contributes to its own dangerous product, trafficking and sexual abuse of children, including Plaintiff.

Defendants cannot avail themselves of Section 230 because they "materially contribute" to the conduct at issue by matching children with adults for live, private, and anonymous videostreaming. *See Doe v. MG Freesites, LTD,* 7:21-cv-00220-LSC, 17 (N.D. Ala. Feb. 9,

2022) (order denying defendant's motion to dismiss). The Ninth Circuit in *Roommates* articulated the following test, which other circuits have adopted as well: "[a] website helps to develop unlawful content, and thus falls within the exception to Section 230, if it *contributes materially* to the alleged illegality of the conduct." *Roommates*, 521 F.3d at 1164, 1168. The Ninth Circuit more recently reiterated that "[a] 'material contribution' does not refer to 'merely . . . augmenting the content generally, but to materially contributing *to its alleged unlawfulness*.'" *Gonzalez v. Google*, 2 F.4th 871, 892 (9th Cir. 2021) (quoting *Roommates*, 521 F.3d at 1167–68) (emphasis in original). In other words, this test acknowledges that "making a material contribution does not mean 'merely taking action that is necessary to the display of the allegedly illegal content,' but rather, 'being responsible for what makes the displayed content allegedly unlawful.'" *Id*. (quoting *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 410 (6th Cir. 2014)).

In *Doe v. Mindgeek*, the California Southern District Court, in addition to finding that FOSTA applied to bar the defendants' Section 230 immunity to the plaintiff's Trafficking Victims Protection Reauthorization Act ("TVPRA") claim, also found that the defendants "materially contributed to" the development of illegal child pornography on Pornhub. *Doe v. Mindgeek USA Inc.,* 2021 U.S. Dist. LEXIS 176833, at *9 (C.D. Cal. Sept. 3, 2021), adhered to on denial of reconsideration, 2021 U.S. Dist LEXIS 236874 (C.D. Cal. Dec. 2, 2021). The district court relied on *Roommates* and the other Ninth Circuit cases discussed above, concluding that those cases stand for the proposition that a website's tools are neutral only when they do not *encourage* the creation of illegal content. *Id*. *See also Doe v. Mindgeek*, 2021 U.S. Dist. LEXIS 236874, at *26-28 (C.D. Cal. Dec. 2, 2021) (order denying motion for reconsideration of denial

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

of motion to dismiss and discussing *Roommates*, *Carafano*, *Dyroff*, and *Gonzalez* in greater

detail).

       In *M.L. v. Craigslist*, a Washington district court ruled that Craigslist could not claim

Section 230 immunity when the plaintiff plausibly alleged that it materially contributed to the

creation of advertisements that sex traffickers used to sell their victims on its platform. *M.L. v.*

*Craigslist*, 2020 U.S. Dist. LEXIS 166334 (W.D. Wash. Sept. 11, 2020).

       Omegle materially contributes to the conduct at issue by matching adults with children

for private, anonymous video livestraming which foreseeably results in the sexual performances

demanded of children on the site and outside of it. Additionally, Omegle materially contributes

to the content and enforcement of its terms of service, its product design, the content of its user

warnings, its algorithm and software that is involved in matching users, its policy allowing

children and adults to be matched, the types of ads it shows, the ages of users it allows, and the

lack of user and age verifications.

## II.    Omegle doesn't qualify for 230 Immunity because A.M.'s allegations stem from the sexual abuse of a child

       On February 9, 2022, Alabama Northern District Court ruled that Section 230 does not

apply to situations involving claims "stemming from the sexual abuse of a child." *MG Freesites,*

*Ltd.* 7:21-cv-00220-LSC at 68 (order denying defendant's motion to dismiss). The court

reasoned that child trafficking and depictions of child sexual abuse are something different than

"information content." *Id.* The court unequivocally determined that such content is beyond the

coverage of the First Amendment and "wholly outside any other protection or immunity under

the law, including Section 230." *Id.* This is true of child pornography, and as here, claims of sex

trafficking. *See id.*

Omegle may try to claim that the disqualification of immunity is limited solely to situations where victims sue specifically under child pornography statutes. However, such argument should be to no avail because the Alabama court found no CDA immunity for *all* sexual abuse claims against children, including sex trafficking claims.

Omegle may also try to claim that the eradication of immunity only applies to defendants who are alleged to be publishers/speakers of child pornography and thereby receivers and possessors of it. This argument too should be of no avail. Omegle, by seeking the privilege of Section 230 immunity as a publisher/speaker forfeits any denials that it is in fact a publisher/speaker. Omegle can't have it both ways by saying it is being treated by plaintiff as a publisher or speaker of the information (it's strategy for availing itself of Section 230 immunity) and then denying that it is in fact a distributor, publisher or speaker. We are, after all, talking about child pornography and child sexual performances – not material most respectable businesses would dare admit to. The extent to which Omegle is in actual possession and receipt of child pornography and child sexual performances is an issue of fact. As Omegle's CEO's testimony in criminal cases shows, Omegle possesses and retains at least some child pornography. But not even receipt and possession are necessary criteria for removing Omegle's immunity. It is enough that they are involved in the "criminal acts" of matching children with predators for purposes of sexual performances and illegal trafficking. "Receipt and possession of child pornography, **alone, are criminal acts, and are not shielded by Section 230 immunity.**" [bold added]. *Id* at 69.

*Doe v. MG Freesites, LTD,* goes on to say that, as a category, conduct that harms children should not be immunized because the very reason Congress enacted Section 230 is to incentivize

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

platforms to protect children – not platforms. *Id.* At 69. ("Second, Congress enacted Section 230 of the CDA to incentivize ICSs to protect children, not immunize them for intentionally or recklessly harming them.")

### III.    Omegle forces users into experiencing unlawful conduct.

In *Fair Housing Council of San Fernando Valley v. Roommates.com,* the Ninth Circuit, sitting en banc, held that Section 230 immunity does not apply to ISPs where ordinary use requires the violation of federal law, in that case the Fair Housing Act. *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC,* (521 F. 3d 1157 (9th Cir. 2008). Defendant Roommates.com was a website where people created profiles to match tenants with subtenants. Users were required to answer questionnaires about what they sought in their roommate – including sexual orientation and number of children. The Ninth Circuit found there was no way to use the website without the user indulging in discrimination. The court determined that defendant's violation of federal law and that it by design required users to violate federal law transformed any derivative third-party content into first-party content. The court took a similar approach in the Second Circuit case *FTC v. LeadClick* where the defendant's development of a platform where unlawfulness could thrive converted third-party content into the platform's own content. *Fed. Trade Comm'n v. LeadClick Media, LLC*, 838 F.3d 158 (2d Cir. 2016).

Similarly, BBC and other media sources have reported that just by using Omegle for a couple hours, they were matched with children and grown men in all stages of undress and masturbating in real time. The obvious extrapolation is that children and adults are also matched. Thus, the regular and intended use of Omegle forces users to become victims and witnesses to the violations of federal criminal laws. If users are not violating the laws, they're being victim of

them, including various provisions of child pornography and trafficking laws (e.g. 18 U.S. Code §§ 2251, 2251A, 2252, 2252A, 2252B, 2252C, 2260, 1591). Even if one were to take Omegle's word for it that it markets itself as a wholesome platform where well-meaning adults and children can have meaningful and fun connections, those well-meaning people become victims of Omegle's violations of criminal laws 18 USC §§ 2252B and 2252C which applies when people are misled into consuming child sex acts.

### IV.        Plaintiff's claim for violation of Section 1595 is proper.

Defendant's argument relies on a fundamental misunderstanding of the Fighting Online Sex Trafficking Act ("FOSTA"). Claims brought pursuant to 18 U.S.C. § 1595 are outside the scope of Section 230 immunity. Claims pertaining to sex trafficking was never subject to Section 230 dismissal, and Defendant is under the false impression that the CDA at one point did protect ICS providers for federal sex trafficking. This is not the case, and Plaintiff's claim that Omegle violated 18 U.S.C. § 1595 is not barred by the CDA.

*In re Facebook* clarifies that FOSTA is not an exception to 230 as much as it is Congress's method of communicating that human-trafficking claims, such as claims made under Section 1595, are not and were never covered by Section 230. *In re Facebook, Inc.,* 625 S.W.3d 80, 99 (Tex. 2021) (reasoning "what Facebook calls FOSTA's "exceptions" to Section 230 are not introduced with statutory language denoting carve-outs (such as "notwithstanding" or "except that ..."). Instead, Congress instructed that "[n]*othing in* [Section 230] ... *shall be construed* to impair" certain claims. The U.S. Supreme Court, in interpreting a materially identical proviso, declined to view it "as establishing an exception to a prohibition that would otherwise reach the conduct excepted.").

Page 23 –PLAINTIFF'S RESPONSE
IN OPPOSITION TO MOTION TO
DISMISS

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

### A.  Courts don't give ISPs Section 230 immunity for trafficking claims.

As discussed above, the court in *Doe v. MG Freesites, LTD* said ISPs categorically do not qualify for immunity in child sex trafficking claims or any other claims where child sexual abuse are central to the harms alleged by the plaintiff. *MG Freesites*, Ltd. 7:21-cv-00220-LSC (order denying defendant's motion to dismiss).

Furthermore, trafficking is not information content. *Id* at 68. It is not possible to treat an ISP as a publisher or speaker of trafficking because trafficking is conduct – not content. For Omegle to say that they are being treated as the publisher or speaker of Plaintiff's trafficking claims is a concession that trafficking, if proven, occurs on its platform.

### B.  Omegle is in violation of 18 U.S.C. § 1595.

Defendant characterizes this issue as though a civil claim of sex trafficking under Section 1591 must *overcome* CDA immunity. This, however, is an inaccurate framing of the interplay between 18 U.S.C. §§ 1591, 1595 and CDA § 230 because the CDA does not affect sex trafficking laws. Moreover, plaintiffs need not meet the stringent *mens rea* requirements set forth by the criminal statute to prevail on a claim of child sex trafficking under Section 1591. The Northern District of California Court clarified this issue in *Doe v. Twitter, Inc.,* stating:

> The CDA had no effect on sex trafficking laws and did not impair or limit claims brought under the TVPRA, civil liability standards for mens rea, or the "knew or should have known" test, apply to defendant's knowledge that human trafficking activity occurred, rather than actual knowledge required to prove a criminal violation, and plaintiffs do not have to prove an overt act by the defendant that furthered sex trafficking. 18 U.S.C.A. §§ 1591(a)(2), 1595; Communications Act of 1934 §§ 230, 230, 47 U.S.C.A. §§ 230, 230(f)(5); 18 U.S.C.A. §§ 1591, 1595. *Doe v. Twitter, Inc.,* No. 21-CV-00485-JCS, 2021 WL 3675207 (N.D. Cal. Aug. 19, 2021).

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

In *A.B. v. Hilton Worldwide Holdings, Inc*, this Court articulated the full standard for stating a trafficking claim under the financial beneficiary prong, To state a financial beneficiary claim under Trafficking Victims Protection Reauthorization Act (TVPRA), Plaintiff must allege facts from which this Court can reasonably infer that Defendant: (1) knowingly benefited financially or by receiving anything of value from; and (2) there was participation in a venture they knew or should have known has engaged in sex trafficking. 18 U.S.C. § 1595. *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921 (D. Or. 2020). In *A.B.,* the hotel chain operators' rental of a hotel room in which trafficking occurred, or royalties generated from that rental, constituted a financial benefit sufficient to meet "knowingly benefits financially" element of the TVPRA. 18 U.S.C.A. § 1595; *A.B.*, 484 F. Supp. 3d at 921.

In *Doe v. Twitter*, the Court similarly held that to establish a civil claim for sex trafficking based on the theory that a defendant is the beneficiary of a venture, a plaintiff must allege that defendant knew or should have known that it benefited financially or by receiving anything of value. *Doe v. Twitter, Inc.*, No. 21-CV-00485-JCS, 2021 U.S. Dist. LEXIS 157158 (N.D. Cal. Aug. 19, 2021). In this case, Plaintiff alleges that Omegle knew that predators use their site and continued to allow children and predators to be paired, and that Omegle admits as much on its homepage by stating: "Predators have been known to use Omegle, so please be careful." Plaintiff has thus successfully alleged that Defendant has knowledge that its service is used for sex trafficking and continues reaping the benefits of allowing predatory adult users while simultaneously allowing child users.

In *B.M.v. Wyndham Hotels*, the California Northern District Court rejected the defendant's argument that the "'benefit' must derive directly from, and be knowingly received in

Page 25 –PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

exchange for, participating in a sex-trafficking venture." No. 20-CV-00656-BLF, 2020 U.S. Dist. LEXIS 135494, at *21 (N.D. Cal. July 30, 2020). Ultimately, the *B.M.* court found that this would improperly read in "a requirement for 'actual knowledge' of criminal sex trafficking" and "read out the 'should have known' language." *Id.* This prompted the court to rule that the benefit element of section 1595 "merely requires that Defendant knowingly receive a financial benefit from its participation in a venture with a sex trafficker. *Id.* (citing *H.H. v. G6 Hosp.*, LLC, No. 2:19-CV-755, 2019 U.S. Dist. LEXIS 211090, at *10-11 (S.D. Ohio Dec. 6, 2019)).

With respect to the second element of a TVPRA claim, a "venture" is defined as "any group of two or more individuals associated in fact." 18 U.S.C. § 1591(e)(6). Plaintiff is not required to show there was any overt act of participation in the trafficking itself. Similarly, "participation" under the statute does not require actual knowledge of participation in the sex trafficking itself." *M.A.*, 425 F. Supp. 3d at 970. Plaintiffs must rather make a showing of a continuous business relationship between the trafficker and Omegle that evokes an established pattern of conduct or a tacit agreement between the same. *Id.* In *M.A.,* this element was met where the plaintiff alleged that defendants rented rooms to people it knew or should have known were engaged in sex trafficking." *Id.* Similarly, Omegle has knowledge that predators flock to its site and derives a benefit from this illicit use through increased web traffic (leading to increased advertising proceeds) ultimately allowing for the sexual exploitation of child users. *Doe v. Twitter, Inc.,* No. 21-CV-00485-JCS, 2021 U.S. Dist. LEXIS 157158 (N.D. Cal. Aug. 19, 2021).

The court in *Doe v. MG Freesites, LTD* determined it is not necessary to determine whether to interpret FOSTA as requiring a plaintiff to plead the platform had actual knowledge of the sex trafficking at issue. That court determined that by allowing minors' images to be

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

featured on its pornography platform, defendants materially contributed to the creation of illegal

content and therefore do not qualify for Section 230 immunity. As a result of not having

immunity, plaintiffs thus need only establish the elements of their civil trafficking claim and not

the element of a criminal violation. (*See J.B.,* 2021 U.S. Dist. LEXIS 170338 at *20-21 ("[A]

plaintiff can bring a [section 1595] claim against. . . websites that are ineligible for immunity

because they create or materially contribute to the content at issue.").

**V.    Plaintiff's Section 2421A claim is permissible where the violations occurred before the amendment's enactment.**

Defendant argues that Plaintiff's Section 2421A claim fails because the alleged violations

occurred before the statute's enactment, violating the presumption against retroactive legislation.

This is a mischaracterization of the standard because FOSTA reflects Congress's determination

that such claims were never barred by Section 230 in the first place. *In re Facebook, Inc.,* 625

S.W.3d 80, 99.

The Ninth Circuit in *In re Facebook, Inc.,* did not understand Section 230 to "create a

lawless no-man's-land on the Internet" in which states are powerless to impose liability on

websites that knowingly or intentionally participate in the evil of online human trafficking. *Id*.

Section 230, as amended, "does not withdraw from the states the authority to protect their

citizens from internet companies whose own actions—as opposed to those of their users—

amount to knowing or intentional participation in human trafficking." *Id.* at 83 (holding the

plaintiffs' statutory human-trafficking claims may proceed, but their common-law claims for

negligence, gross negligence, negligent undertaking, and products liability must be dismissed.).

The Ninth Circuit agreed with Plaintiff's argument that although "FOSTA does not

explicitly except civil human-trafficking claims under state statutes from Section 230's reach. . . .

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

FOSTA's silence in that regard does not answer whether such claims fell under Section 230 to begin with." *Id.* The court provided two reasons to support this argument.

First, "the effect of FOSTA was not, as Facebook assumes, to carve out discrete claims that would otherwise have been barred by Section 230." *Id.* at 99 (reasoning "what Facebook calls FOSTA's "exceptions" to Section 230 are not introduced with statutory language denoting carve-outs (such as "notwithstanding" or "except that ...")). Instead, Congress instructed that "[*n*]*othing in* [Section 230] ... *shall be construed* to impair" certain claims. The U.S. Supreme Court, in interpreting a materially identical provision, declined to view it "as establishing an exception to a prohibition that would otherwise reach the conduct excepted."). Under this reading, "FOSTA's 'exception' to Section 230 immunity for federal section 1595 claims is not merely an exception. Instead, it is Congress's announcement of a rule of construction for Section 230(c), under which human-trafficking claims like those found in section 1595 were never covered by Section 230." *Id.* "Congress's mandate that Section 230 not "be construed" to bar federal civil statutory human-trafficking claims necessarily dictates that Section 230 must not be construed to bar materially indistinguishable state civil claims either." *Id.* at 100.

Second, the "Sense of Congress," enacted as part of FOSTA's text, was that "Section 230 of the [CDA] was never intended to provide legal protection to ... websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims." Pub. L. No. 115–164, § 2, "It is the sense of Congress that—(1) Section 230 of the Communications Act of 1934 (47 U.S.C. 230; commonly known as the "Communications Decency Act of 1996") was never intended to provide legal protection to websites that unlawfully promote and facilitate prostitution and websites that facilitate traffickers in advertising the sale of unlawful sex acts

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

with sex trafficking victims; (2) websites that promote and facilitate prostitution have been reckless in allowing the sale of sex trafficking victims and have done nothing to prevent the trafficking of children and victims of force, fraud, and coercion; and (3) clarification of such section is warranted to ensure that such section does not provide such protection to such websites." The court reasoned, although the "Sense of Congress" is merely a declaratory rather than an operative provision . . . . there is widespread agreement that "[a] preamble, purpose clause, or recital is a permissible indicator of meaning." *In re Facebook, Inc*., 625 S.W.3d at 100. "When the text itself is indeterminate, such a provision 'is a key to open the mind of the makers, as to ... the objects, which are to be accomplished by ... [a] statute.'" *Id.* (quoting 1 JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES § 459 (1833)). The Ninth Circuit concluded "if the parties advance[d] two competing understandings of FOSTA's impact on Section 230. If both are plausible, courts are justified in consulting the enacted "Sense of Congress" when choosing between them." *In re Facebook, Inc*., 625 S.W.3d at 101.

The presumption against retroactive legislation fails because FOSTA reflects Congress's judgment that such claims were never barred by Section 230 in the first place. *Id.* at 99.

### VI.    Plaintiff's negligent misrepresentation claim is proper.

Plaintiff concedes that the Terms of Service cited in her complaint were not in use during the relevant time period in this case, and requests leave to amend her complaint accordingly. However, Plaintiff's claim is not futile because similar terms or service were in use during the relevant time period that fairly represented (or misrepresented) Omegle's ability to ban or deny access to offending or unauthorized accounts. For example, even in 2014, Omegle represented its

ability to ban or deny access to users, stating: "Do not use Omegle if you are under 13. If you are under 18, use it only with a parent/guardian's permission. Do not transmit nudity, sexually harass anyone, publicize other people's private information" and so forth. See Def. Motion for Judicial Notice, Ex. D.

Defendant also argues that Plaintiff has not successfully alleged a special relationship in alleging that "Omegle is bound to Plaintiff by a relation or duty of care beyond a mere contract" and that "Omegle is in a special position of confidence and trust in relation to Plaintiff." Def. Mtn. at p. 29. Plaintiff disagrees, given the federal notice pleading standard which only requires a "short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8.

Moreover, a special relationship is not necessarily required to establish a negligent misrepresentation claim in this case because Plaintiff is not seeking to recover an economic loss. As the court in *Onita Pac. Corp. v. Trustees of Bronson*, 315 Or 149, 159 (1992) noted, "many American courts recognize the tort of negligent misrepresentation, but the scope of recovery for economic loss varies widely." *Id.* The Court went on to hold that a heightened duty was required to establish a claim for economic losses, but declined to adopt a black letter rule in favor of developing the scope of the duty and the scope of recovery on a "case-by-case basis." *Id.*

That Oregon's law is unsettled on this question was noted by the court in *In re Juul Labs, Inc.*, No. 19-md-02913-WHO, 2021 U.S. Dist. LEXIS 137078, *223-224 (N.D. Cal. July 22, 2021), which acknowledged *Onita* and the requirement of a special relationship for economic loss claims but noted the "absence of authority" on the topic of other negligent misrepresentation claims. Because of this absence of authority, the court held that the plaintiff's claims were not foreclosed. *Id.* The court should similarly hold in this case, where Plaintiff has alleged the

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

existence of a dangerous product coupled with allegations regarding its representations overstating its safety. That Omegle disputes the safety of the product or the import of those statements is an improper ground upon which to dismiss Plaintiff's complaint on a Rule 12(b)(6) Motion. Therefore, Defendant's Motion should be denied.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff A.M. respectfully requests that this Court deny Omegle's Motion to Dismiss pursuant to FRCP Rule 12(b)(6) or, in the alternative, granting Plaintiff leave to amend its complaint together with such other appropriate relief it deems just and proper.

Dated: February 15, 2022

Respectfully submitted,

*/s/ Carrie Goldberg*

Carrie Goldberg #4542411 (*Pro Hac Vice*)
Naomi Leeds #5835962 (*Pro Hac Vice*)
C.A. Goldberg, PLLC
16 Court Street, 33rd Fl.
Brooklyn, NY 11241
Tel: (646) 666-8908
carrie@goldberglaw.com
naomi@goldberglaw.com


*/s/ Barbara Long*

Barbara C. Long, OSB #122428
Vogt & Long PC
101 SW Main Street, Suite 1900
Portland, OR 97204
Tel: (503) 228-9858
barb@vogtlong.com

*Attorneys for Plaintiff A.M.*

Page 31 –PLAINTIFF'S RESPONSE
IN OPPOSITION TO MOTION TO
DISMISS

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858