Venkat Balasubramani, OSB #180446
venkat@focallaw.com
Stacia N. Lay, WSBA #30594 (*Pro Hac Vice*)
stacia@focallaw.com
Kimberlee Gunning, WSBA #35366 (*Pro Hac Vice*)
kim@focallaw.com
**FOCAL PLLC**
900 1st Avenue S., Suite 201
Seattle, Washington 98134
Telephone: (206) 529-4827

Clifford S. Davidson, OSB #125378
csdavidson@swlaw.com
**SNELL & WILMER, LLP**
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
Telephone: (503) 624-6800

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| A.M., an individual, | Case No. 3:21-cv-01674-MO |
| Plaintiff, | |
| v. | **DEFENDANT OMEGLE.COM LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| OMEGLE.COM LLC, | |
| Defendant. | |

**TABLE OF CONTENTS**

DISCUSSION ........................................................................................................ 1

I.     Plaintiff's Claims Necessarily Treat Omegle As The Publisher/Speaker Of
       Fordyce's Communications And Are Therefore Barred By CDA 230 ............................. 1

       A.     CDA 230 Immunity Is Properly Addressed On A Motion to Dismiss .................. 1

       B.     Employing "Products Liability" And "Failure To Warn" Labels Does Not
              Change The Nature Of Plaintiff's Claims ................................................. 2

       C.     Omegle Did Not Materially Contribute To The Relevant Content –
              Fordyce's Communications – By Providing A Neutral Tool .............................. 10

              1.     Omegle did not materially contribute to Fordyce's allegedly
                     unlawful communications ........................................................ 10

              2.     Plaintiff's assertion that Omegle "forced" users to "experience"
                     unlawful content is unsupported and implausible .................................... 14

       D.     Plaintiff's Reliance On An Alabama District Court's Decision – Which Is
              Inconsistent With Ninth Circuit Caselaw – Is Misplaced .................................... 18

II.    Plaintiff Fails To Refute Omegle's Showing That Actual Knowledge Is Required
       For The Sections 1591 And 1595 Claim ............................................................ 21

       A.     The Weight Of Authority – Which Plaintiff Ignores – Requires Actual
              Knowledge For Sections 1591 And 1595 Claims Against ICS Providers ........... 23

       B.     Plaintiff Implicitly Acknowledges She Does Not And Cannot Satisfy The
              Required Actual Knowledge Standard ................................................... 24

       C.     Additionally, Plaintiff Does Not And Cannot Allege A "Venture" Between
              Fordyce And Omegle ...................................................................... 25

III.   Plaintiff Offers No Defense Of Her Seventh Claim Based On Oregon State Law .......... 26

IV.    Plaintiff Fails To Rebut The Strong Presumption Against Applying
       Section 2421A Retroactively To Alleged Conduct She Concedes Occurred Prior
       To Its Enactment ...................................................................................... 26

V.     Plaintiff Concedes The Negligent Misrepresentation Claim Must Be Dismissed
       But Fails To Show That Amendment Would Not Be Futile .................................... 28

CONCLUSION ................................................................................................ 30

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009)....................................................21

*Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056 (N.D. Cal. 2016) .........................29

*Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003)........................12, 17

*Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140 (E.D.N.Y. 2017) ...................................5

*Dart v. craigslist, Inc.*, 665 F. Supp. 2d 961 (N.D. Ill. 2009) .......................................16

*Doe v. Bates*, No. 5:05-cv-91-DF-CMC,
2006 U.S. Dist. LEXIS 93348 (E.D. Tex. Dec. 27, 2006)................................................19

*Doe v. Facebook, Inc.*, No. 21-459, 2022 U.S. LEXIS 1407 (Mar. 7, 2022) .................6

*Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242 (S.D. Fla. 2020) ....................passim

*Doe v. MG Freesites, Ltd.*, No. 7:21-cv-00220-LSC,
2022 U.S. Dist. LEXIS 23199 (N.D. Ala. Feb. 9, 2022) ...........................................passim

*Doe v. Mindgeek USA Inc.*, No. SACV 21-00338-CJC (ADSx),
2021 U.S. Dist. LEXIS 176833 (C.D. Cal. Sept. 3, 2021)................................................13

*Doe v. MySpace Inc.*, 528 F.3d 413 (5th Cir. 2008) .......................................................5

*Doe II v. MySpace Inc.*, 96 Cal. Rptr. 3d 148 (Cal. Ct. App. 2009) ........................5, 17

*Doe v. Reddit*, No. SACV 21-768 JVS (KESx),
2021 U.S. Dist. LEXIS 129876 (C.D. Cal. July 12, 2021) .........................................21, 26

*Doe v. Reddit, Inc.*, No. SACV 21-00768 JVS (KESx),
2021 U.S. Dist. LEXIS 235993 (C.D. Cal. Oct. 7, 2021).........................................passim

*Doe v. Twitter, Inc.*, No. 21-cv-00485-JCS,
2021 U.S. Dist. LEXIS 157158 (N.D. Cal. Aug. 19, 2021)......................................passim

*Doe No. 14 v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) ...........................7, 8

*Doe No. 14 v. Internet Brands, Inc.*, No. CV 12-3626-JFW (PJWx),
2016 U.S. Dist. LEXIS 192144 (C.D. Cal. Nov. 14, 2016)...............................................7

*Dyroff v. Ultimate Software Grp., Inc.*, No. 17-cv-05359-LB,
2017 U.S. Dist. LEXIS 194524 (N.D. Cal. Nov. 26, 2017)................................17

*Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019) .............................passim

*Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044 (E.D. Cal. 2008)..........................................4

*Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ......................passim

*FTC v. LeadClick Media, LLC*, 838 F.3d 158 (2d Cir. 2016)..........................................................15

*Fyk v. Facebook, Inc.*, No. 18-cv-05159-JSW,
2021 U.S. Dist. LEXIS 235965 (N.D. Cal. Nov. 1, 2021)................................................10

*Ginsberg v. Google Inc.*, No. 21-cv-00570-BLF,
2022 U.S. Dist. LEXIS 30166 (N.D. Cal. Feb. 18, 2022) ...................................................2

*GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752 (Tex. App. 2014)................................................19

*Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021)..........................................................passim

*Herrick v. Grindr LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018) .................................................9, 13

*Herrick v. Grindr LLC*, 765 F. App'x 586 (2d Cir. 2019)....................................................8, 9, 14

*In re Facebook, Inc.*, 625 S.W.3d 80 (Tex. 2021) .................................................................passim

*J.B. v. craigslist Inc.*, No. 21-80133,
2022 U.S. App. LEXIS 5281 (9th Cir. Feb. 28, 2022) ......................................................22

*J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG,
2020 U.S. Dist. LEXIS 151213 (N.D. Cal. Aug. 20, 2020)................................................24

*J.B. v G6 Hosp., LLC*, No. 19-cv-07848-HSG,
2021 U.S. Dist. LEXIS 170338 (N.D. Cal. Sept. 8, 2021) ..........................................22, 27

*Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398 (6th Cir. 2014)...............................12

*Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014) ...........................................................12

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994).....................................................................27

*Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021)............................................................2, 3, 4

*Lewis v. Google, Inc.*, No. 20-1784,
2021 U.S. Dist. LEXIS 11609 (W.D. Pa. Jan. 21, 2021)................................................10

*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13 (2020)....................passim

*Maryland v. Wilson*, 519 U.S. 408 (1997) ................................................................10

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049 (9th Cir. 2008)..............................7

*M.H. v. Omegle.com LLC*, No. 8:21-cv-814-VMC-TGW,
    2022 U.S. Dist. LEXIS 4543 (M.D. Fla. Jan. 10, 2022)............................................passim

*M.L. v. craigslist Inc.*, No. C19-6153 BHS-TLF,
    2020 U.S. Dist. LEXIS 166334 (W.D. Wash. Sept. 11, 2020)....................................13, 14

*Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319 (D.N.J. 2015).........................................13

*Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194 (9th Cir. 1998)................................3

*Turner v. City & Cty. of San Francisco*, 788 F.3d 1206 (9th Cir. 2015) ........................7

*Woodhull Freedom Found. v. U.S.*, 948 F.3d 363 (D.C. Cir. 2020)...............................27

## Statutes and Rules

18 U.S.C. § 1591.................................................................................passim

18 U.S.C. § 1591(a)(2).............................................................................23

18 U.S.C. § 1595.............................................................................21, 23, 26

18 U.S.C. § 2421A.................................................................................passim

47 U.S.C. § 230.................................................................................passim

47 U.S.C. § 230(c)(1)..............................................................................19

47 U.S.C. § 230(e)(5)(A) .........................................................................passim

47 U.S.C. § 230(f)(3)..............................................................................19

Fᴇᴅ. R. Cɪᴠ. P. 8 ................................................................................29

Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6) ........................................................................1, 2, 4

## Other Authority

H.R. Rᴇᴘ. No. 115-572, pt. 1 (2018)................................................................27

In her opposition to Omegle's motion to dismiss, Plaintiff asks the Court to look no further than the labels she has chosen to affix to her causes of action and to turn a blind eye to the true nature of her claims. But the Ninth Circuit has explicitly rejected such a narrow, superficial review when determining whether Section 230 of the Communications Decency Act ("CDA 230") bars claims against an interactive computer service ("ICS") such as Omegle. Specifically, the Ninth Circuit directs courts to look beyond the labels to determine whether the substance of the claims seeks to treat Omegle as the publisher or speaker of content created by third parties (i.e., the users of the text and video chat features on Omegle's website). Plaintiff's claims do just that and are therefore barred by CDA 230. Additionally, Plaintiff fails to refute Omegle's showing that 18 U.S.C. § 2421A – a new criminal statute with a civil remedy provision upon which Plaintiff's fifth cause of action is based – cannot be applied retroactively to alleged conduct that Plaintiff admits occurred before the statute was even enacted. Finally, Plaintiff admits that her negligent misrepresentation claim is based on terms of service that were not in effect at the time of the alleged actions; but she also fails to rebut Omegle's showing that *any* version of the terms of service on their face bars her claim.

As a result, Omegle respectfully requests that Plaintiff's Complaint be dismissed in its entirety, without leave to amend.

## DISCUSSION

### I.    Plaintiff's Claims Necessarily Treat Omegle As The Publisher/Speaker Of Fordyce's Communications And Are Therefore Barred By CDA 230

#### A.    CDA 230 Immunity Is Properly Addressed On A Motion to Dismiss

As an initial procedural matter, Plaintiff appears to assert that the Court cannot determine the applicability of CDA 230 immunity on a Rule 12(b)(6) motion to dismiss. (Dkt. 23 at 11.)

Plaintiff is wrong. Courts in the Ninth Circuit routinely resolve the question of CDA 230 immunity at the motion to dismiss stage (as do other federal courts). *See, e.g.*, *Ginsberg v. Google Inc.*, No. 21-cv-00570-BLF, 2022 U.S. Dist. LEXIS 30166, *2, 7, 23-24 (N.D. Cal. Feb. 18, 2022) (finding claims barred by CDA 230 on a Rule 12(b)(6) motion to dismiss and dismissing complaint with prejudice); *Doe v. Reddit, Inc.*, No. SACV 21-00768 JVS (KESx), 2021 U.S. Dist. LEXIS 235993, *8 n.1 (C.D. Cal. Oct. 7, 2021) (rejecting argument that court could not consider CDA 230 immunity on a motion to dismiss), *appeal docketed*, No. 21-56293 (9th Cir. Nov. 30, 2021). The Ninth Circuit itself recently rejected the argument that it was "improper for the district court to consider the application of § 230 on a motion to dismiss." *Gonzalez v. Google LLC*, 2 F.4th 871, 890 n.8 (9th Cir. 2021). Where, as here, "the allegations in the complaint suffice to establish the defense," the court properly considers the applicability of CDA 230 on a motion to dismiss. *Gonzalez*, 2 F.4th at 890 n.8 (internal quotation marks omitted). Thus, "[w]hen a plaintiff cannot allege enough facts to overcome Section 230 immunity, a plaintiff's claims should be dismissed." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020).

> **B.**     **Employing "Products Liability" And "Failure To Warn" Labels Does Not Change The Nature Of Plaintiff's Claims**

Distilled to its essence, Plaintiff's core assertion is that CDA 230 immunity does not apply because she asserts "products liability" and "failure to warn" claims.[1] Plaintiff primarily relies on the *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021) decision and Justice Thomas's statement on the denial of certiorari in *Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*,

---

[1] Plaintiff also incorrectly asserts that sex trafficking claims are "categorically" excluded from CDA 230 immunity. That is not the case, as discussed below. (*See infra* at pp. 21-23.)

141 S. Ct. 13 (2020). However, neither the *Lemmon* decision nor Justice Thomas's statement demonstrates that Plaintiff's claims – which treat Omegle as the publisher or speaker of Fordyce's communications with Plaintiff and the alleged harms that resulted – fall outside the scope of CDA 230 immunity.

Omegle addressed the *Lemmon* decision in its opening brief, demonstrating why it does not save Plaintiff's claims from CDA 230's bar. (*See* Dkt. 17 at 21-22.) In *Lemmon*, the plaintiffs alleged design flaws in Snapchat's "Speed Filter" – which users can overlay onto images and videos – and its incentive system that allegedly enticed Snapchat users to drive at excessive speeds. 995 F.3d at 1088-89, 1091-92. Because the "Speed Filter" and the incentive system – both of which were created by Snapchat – together were alleged to have caused the harm, the claim did not involve Snapchat's monitoring of the content of its users; therefore, the Ninth Circuit concluded that CDA 230 did not bar the claim. *Lemmon*, 995 F.3d at 1092.

By contrast here, Plaintiff's claims at their core are based on Omegle's alleged failure to adequately monitor or police the communications of its users occurring on its website, including by failing to implement safety measures that allegedly would have prevented Fordyce's communications with Plaintiff. (*See, e.g.*, Dkt. 1 at ¶¶ 35-38, 63, 73.) In her opposition, Plaintiff attempts to distance herself from these allegations by asserting that the alleged failure to monitor Omegle's users and their content, or enforce Omegle's policies, merely "illustrate" Omegle's alleged "noncompliance with its own promises to consumers and the industry safety standards Omegle is far beneath."[2] (Dkt. 23 at 19.) But this strained reasoning only reinforces the fact that

---

[2] In opposition to this Motion, Plaintiff offers a reformulation of the allegations underlying her claims. (*See* Dkt. 23 at 16-17.) However, it is the allegations in the Complaint that must be assessed, not any reformulation or amendment of the allegations contained in an opposition to a motion to dismiss. *See, e.g.*, *Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (allegations contained in an opposition to a motion to dismiss "are irrelevant for

– as the allegations of the Complaint "illustrate" – Plaintiff's claims directly implicate: "Omegle's content moderation practices" (Dkt. 1 at ¶ 28); Omegle's ability to "protect[] users" (Dkt. 1 at ¶ 35); Omegle's "ability to ban or deny access" to offending users (Dkt. 1 at ¶ 36); the alleged "little to no effort [Omegle makes] to screen and monitor the activities" of its users (Dkt. 1 at ¶ 38); and Omegle's alleged failure to take "ameliorative actions" such as monitoring its text and video chat to identify and ban users (Dkt. 1 at ¶ 73). Thus, as these allegations demonstrate, Omegle's alleged failure to adequately monitor the activities of its users (specifically, the communications between Fordyce and Plaintiff) and implement safety features that allegedly would have prevented those communications are central to Plaintiff's claims, not merely "illustrations" that can be disowned in response to a dispositive motion.

As Omegle demonstrated (*see* Dkt. 17 at 21-22), this case is more akin to the *Twitter* case where the court held – distinguishing the *Lemmon* decision – that the alleged flaws in Twitter's platform were inextricably linked to third-party content. *See Doe v. Twitter, Inc.*, No. 21-cv-00485-JCS, 2021 U.S. Dist. LEXIS 157158, *90-93 (N.D. Cal. Aug. 19, 2021), *appeals docketed*, Nos. 22-15103 and 22-15104 (9th Cir. Jan. 25, 2022). Plaintiff attempts to distinguish the *Twitter* case by asserting vaguely that Twitter "is a third-party-content-based publishing platform" and that, in some unexplained way, the "types of injuries" in Twitter "could have been avoided through content moderation instead of product design." (Dkt. 23 at 23.) But not only is Omegle also a "third-party-content-based publishing platform" – specifically, text and video chats between users – the allegations discussed above, among others, show that Plaintiff is likewise alleging content-moderation based flaws in this case. Thus, Plaintiff's attempt to

Rule 12(b)(6) purposes"); *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050 (E.D. Cal. 2008) (statements in opposition brief cannot amend the complaint). But even the reformulated "allegations" cannot save Plaintiff's claims.

distinguish the *Twitter* court's rejection of a products liability claim similar to that alleged here falls far short.

CDA 230 "is implicated not only by claims that explicitly point to third party content but also by claims which, though artfully pleaded to avoid direct reference, implicitly require recourse to that content to establish liability or implicate a defendant's role, broadly defined, in publishing or excluding third party communications." *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 156 (E.D.N.Y. 2017), *aff'd sub nom.*, *Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020). *See also Doe v. MySpace Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (concluding that allegation that website failed "to implement measures that would have prevented [the minor] from communicating with" the person who assaulted her was "merely another way of claiming that MySpace was liable for publishing the communications"); *Doe II v. MySpace Inc.*, 96 Cal. Rptr. 3d 148, 156-57 (Cal. Ct. App. 2009) (finding that allegations of a "failure to adopt reasonable safety measures" does not avoid CDA 230 immunity because it was undeniable that plaintiffs "seek to hold MySpace responsible for the communications between the Julie Does and their assailants").

Indeed, even the Texas Supreme Court's *In re Facebook* decision – upon which Plaintiff mistakenly relies for its incorrect characterization of FOSTA as a rule of construction rather than an exception to CDA 230 – undercuts her assertion that her claims do not treat Omegle as the publisher or speaker of Fordyce's communications with her and the alleged harms that flowed from them:

> The essence of Plaintiffs' negligence, gross-negligence, negligent-undertaking, and products-liability claims is that, because Plaintiffs were users of Facebook or Instagram, the company owed them a duty to warn them or otherwise protect them against recruitment into sex trafficking by other users. Facebook violated that duty, Plaintiffs contend, by its failures to "implement any safeguards to prevent adults from contacting minors," "report suspicious messages," "warn[] of

the dangers posed by sex traffickers," or "identify[] sex traffickers on its Platforms." ***Under the view of section 230 adopted in every published decision of which we are aware, these claims "treat[]" Facebook "as the publisher or speaker" of third-party communication and are therefore barred.***

*In re Facebook, Inc.*, 625 S.W.3d 80, 93 (Tex. 2021) (emphasis added) (also noting that the claims "seek to impose liability on Facebook for harm caused by malicious users of its platforms solely because Facebook failed to adequately protect the innocent users from the malicious ones"), *cert. denied*, 2022 U.S. LEXIS 1407 (2022).[3] Moreover, in case it was not clear that this conclusion also applied to the claims labeled as "products-liability" claims, the Texas Supreme Court specifically stated that it did:

> Plaintiffs' products-liability claims are likewise premised on the alleged failure by Facebook to "provid[e] adequate warnings and/or instructions regarding the dangers of 'grooming' and human trafficking" on its platforms. Like Plaintiffs' other common-law claims, these claims seek to hold Facebook liable for failing to protect Plaintiffs from third-party users on the site. ***For that reason, courts have consistently held that such claims are barred by section 230. This has been the unanimous view of other courts confronted with claims alleging that defectively designed internet products allowed for transmission of harmful third-party communications.***

*In re Facebook*, 625 S.W.3d at 94 (emphasis added) (citing cases).

In her opposition, Plaintiff ratchets up the hyperbole by asserting – without any support – that "Omegle functions for the sole purpose [sic] introducing children to strangers" and that there is "no conceivable way" the text and video chat can be used without committing or experiencing criminal conduct. (Dkt. 23 at 14.) Plaintiff points to no allegations in the Complaint to support such an accusation (nor could she – indeed, her opposition is replete with unsupported assertions and accusations). In fact, the allegations in the Complaint contradict the accusation as Plaintiff

---

[3] As in the *Malwarebytes* case, Justice Thomas made a similar statement regarding CDA 230 in concurring in the denial of certiorari in the *Facebook* case (on jurisdictional grounds). But also like the statement in the *Malwarebytes* case, Justice Thomas's comments in the *Facebook* case confirm that caselaw provides broad immunity to ICS providers in cases such as this. *See Doe v. Facebook, Inc.*, No. 21-459, 2022 U.S. LEXIS 1407, *1-2 (Mar. 7, 2022).

alleges that "she and her friends had used [Omegle] to have age-appropriate video chats at sleepovers." (Dkt. 1 at ¶ 39.) Nor is the Court "required to indulge unwarranted inferences in order to save a complaint from dismissal." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064-65 (9th Cir. 2008); *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (same). *See also Dyroff*, 934 F.3d at 1100 (rejecting as implausible plaintiff's allegation that "user anonymity equals promoting drug transactions"). Plaintiff's accusation is just such an unwarranted inference that is both unsupported and unsupportable.

Nor is there support for Plaintiff's assertion that the Ninth Circuit "consistently" excludes failure to warn claims from CDA 230 immunity. (*See* Dkt. 23 at 21, 22.) Plaintiff cites only a single case – *Doe No. 14 v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016) – to support her assertion. But *Internet Brands* neither establishes a categorical exemption for claims labeled as "failure to warn" nor presents an analogous factual situation. As Omegle explained in its opening brief, the claim in *Internet Brands* was not based on any user content or communications transmitted via the website or the website's failure to monitor users of the website. (Dkt. 17 at 19-20.) Therefore, the website was not an "intermediary" with respect to third-party information that would be shielded from liability by CDA 230. *See Internet Brands*, 824 F.3d at 852 (noting that there were no allegations of harmful messages exchanged on the website between the plaintiff and the perpetrators of the assault).[4]

By contrast, here, Plaintiff's claims are inextricably linked to users' communications – those between Fordyce and Plaintiff – that allegedly occurred using the text and video chat

---

[4] Notably, on remand, the court again dismissed the plaintiff's failure to warn claim, finding that there was no special relationship between plaintiff and the website that would give rise to a duty to warn. *Doe No. 14 v. Internet Brands, Inc.*, No. CV 12-3626-JFW (PJWx), 2016 U.S. Dist. LEXIS 192144, *11-14 (C.D. Cal. Nov. 14, 2016).

features on Omegle's website, as well as Omegle's alleged failure to adequately monitor or police its users' communications or implement safety features that allegedly would have prevented those communications. As a result, Plaintiff's claims – including the "failure to warn" claims – are more closely analogous to, for example, *Herrick* and *Kik*. In those cases, the courts found similar claims were "inextricably linked to [the ICS provider's] alleged failure to edit, monitor, or remove the offensive content." *Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019) (finding similar failure to warn claim barred by CDA 230 and distinguishing *Internet Brands*), *cert. denied*, 140 S. Ct. 221 (2019); *see also Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1251-52 (S.D. Fla. 2020) (denying leave to add failure to warn claim because it would be barred by CDA 230 and distinguishing *Internet Brands*). Thus, *Internet Brands* is of no assistance to Plaintiff.

Plaintiff also proffers a number of straw man arguments, none of which refute Omegle's showing that the claims – whatever their labels – seek to hold Omegle liable for the communications of a user (Fordyce) who misused its text and video chat tools, and for the alleged harms that resulted from those communications.

For example, Plaintiff attempts to discount the recent decision of the Middle District of Florida – which Plaintiff incorrectly identifies as a "Florida state court decision" (Dkt. 23 at 18) – which concluded that claims against Omegle, similar to those alleged here, were barred by CDA 230. *See M.H. v. Omegle.com LLC*, No. 8:21-cv-814-VMC-TGW, 2022 U.S. Dist. LEXIS 4543, *10-18 (M.D. Fla. Jan. 10, 2022), *appeal docketed*, No. 22-10338 (11th Cir. Jan. 31, 2022). In attempting to somehow distinguish that case, Plaintiff asserts that Omegle purportedly "draw[s] upon Plaintiff's description of Omegle's pornographic advertisements" but that her claims are not based on those advertisements. (Dkt. 23 at 18-19.) As Plaintiff provides no

citations to support these assertions it is unclear how Omegle purportedly "drew" upon the allegation about alleged pornographic advertisements. In any event, Plaintiff's non sequitur is of no import; the *M.H.* decision is directly on point as there, like here, the plaintiffs' claims were barred by CDA 230 because they sought to hold Omegle liable for users "who criminally misappropriate the site." 2022 U.S. Dist. LEXIS 4543 at *10-13.

Plaintiff's attempt to minimize the relevance of the *Herrick* decision is also unavailing. In *Herrick*, the plaintiff made allegations and asserted claims remarkably similar to the allegations and claims in this case. For example, in purported support of products liability, negligent design, and warning-based claims, the plaintiff alleged that Grindr's app failed to flag and detect abusive accounts, and that Grindr failed to warn users that its app could be misused and that it had limited ability to stop misuse. *Herrick v. Grindr LLC*, 306 F. Supp. 3d 579, 588 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 221 (2019). The court concluded that, as is the case here, these alleged "defects" or failures to warn were "inextricably linked to Grindr's role" in monitoring content, "precisely the role for which Section 230 provides immunity." *Herrick*, 306 F. Supp. 3d at 588; *Herrick*, 765 F. App'x at 590-91. The court similarly concluded that ICS providers cannot be held liable for neutral assistance or tools "that are available equally to bad actors and the app's intended users." *Herrick*, 306 F. Supp. 3d at 589; *Herrick*, 765 F. App'x at 591. Although Plaintiff attempts to dismiss the *Herrick* decisions as non-binding precedent from the Second Circuit, the conclusions on CDA 230 are entirely consistent with authority from the Ninth Circuit and other federal courts. *See, e.g.*, *Gonzalez*, 2 F.4th at 893-96; *Dyroff*, 934 F.3d at 1098-99; *M.H.*, 2022 U.S. Dist. LEXIS 4543 at *10-15.

Plaintiff also relies heavily on Justice Thomas's statement concurring in the denial of certiorari in the *Malwarebytes* case. Plaintiff even appears to suggest that the statement – or

comments contained therein – are opinions of the Supreme Court. (*See* Dkt. 23 at 20 (suggesting that Justice Thomas's statement represents "SCOTUS' attitude about Section 230").) But of course, "Justice Thomas's statement, made 'respecting the denial of certiorari' . . ., is not the holding of the Supreme Court and it therefore does not 'constitute[] binding precedent.'" *Fyk v. Facebook, Inc.*, No. 18-cv-05159-JSW, 2021 U.S. Dist. LEXIS 235965, *2-3 (N.D. Cal. Nov. 1, 2021) (quoting *Maryland v. Wilson*, 519 U.S. 408, 412-13 (1997)). Regardless, Justice Thomas's statement recognizes that CDA 230, and more specifically the caselaw interpreting and applying it, provides broad immunity to ICS providers, notwithstanding Plaintiff's assertion to the contrary. *Malwarebytes*, 141 S. Ct. at 13; *see also Lewis v. Google, Inc.*, No. 20-1784, 2021 U.S. Dist. LEXIS 11609, *4 (W.D. Pa. Jan. 21, 2021) (noting that "Justice Thomas . . . acknowledged the 'sweeping protection' courts have afforded to internet platforms in cases like this").

In sum, Plaintiff fails to refute Omegle's showing that all of her claims – whatever their labels – seek to treat Omegle as the publisher or speaker of Fordyce's alleged communications with her via Omegle's text and video chat tools and the harms that allegedly resulted from those communications.

## C. Omegle Did Not Materially Contribute To The Relevant Content – Fordyce's Communications – By Providing A Neutral Tool

### 1. Omegle did not materially contribute to Fordyce's allegedly unlawful communications

Plaintiff distorts the standard used to determine whether CDA 230 bars a claim by arguing that Omegle materially contributed to the content at issue – and thereby became an information content provider that is not entitled to CDA 230 protection – by creating the neutral chat tool that Fordyce allegedly used to communicate with Plaintiff. (*See* Dkt. 23 at 23, 25.) But

as the Complaint makes clear, the "content" at issue is Fordyce's communications with Plaintiff on the Omegle website and the alleged harms that resulted from the communications. The Complaint contains no allegations – nor could it – demonstrating that Omegle contributed at all, much less materially, to what made Fordyce's alleged communications unlawful. Moreover, Plaintiff cannot circumvent this conclusion by attempting to recast Omegle's neutral tools – the text and video chat features of its website – that facilitate communications between users as "content" for purposes of CDA 230.

The relevant question is whether Omegle materially contributed to the unlawful content at issue, namely, Fordyce's communications with Plaintiff on the Omegle website; the incontrovertible answer to that question is that Omegle did not. *See Dyroff*, 934 F.3d at 1099 (to create or develop content, the ICS provider must have "materially contribute[d] . . . to the alleged unlawfulness of the content"); *Fair Hous. Council v. Roommates.com, LLC*, 521 F.3d 1157, 1167-68 (9th Cir. 2008) (en banc) ("*Roommates.com*") ("[A] website helps to develop unlawful content . . . if it contributes materially to the alleged illegality of the conduct."). In fact, Plaintiff's own articulation of the "materially contribute" standard demonstrates that she has not shown, and cannot show, that Omegle met it by "merely taking action that is necessary to the display of the allegedly illegal content." (Dkt. 23 at 24 (internal quotation marks omitted).)

Federal courts – including courts in the Ninth Circuit – routinely hold that merely providing a neutral tool to facilitate communications, like Omegle's text and video chat features, is not sufficient to show that the ICS provider materially contributed to what made the content at issue unlawful. *See, e.g.*, *Gonzalez*, 2 F.4th at 893, 896 (supplying neutral tools to deliver content, including "content-neutral algorithms," does not make an ICS provider an information content provider); *Dyroff*, 934 F.3d at 1098 (stating that plaintiff cannot "plead around

Section 230" by framing website features as content where such features are "tools meant to facilitate the communication and content of others" and "are not content in and of themselves"); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 416 (6th Cir. 2014) (finding that various website features, including a website submission form and labels to categorize submissions, were tools that were "neutral (both in orientation and design) as to what third parties submit" and did not constitute material contribution to what made the content unlawful); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014) (holding that a "website does not create or develop content when it merely provides a neutral means by which third parties can post information of their own independent choosing online"); *Roommates.com*, 521 F.3d at 1169 ("providing *neutral* tools to carry out what may be unlawful or illicit . . . does not amount to 'development' for purposes of the [CDA 230] immunity exception").

Indeed, courts have found that neutral tools that are far more involved than Omegle's text and video chat features did not make the ICS provider an information content provider. For example, in *Carafano v. Metrosplash.com, Inc.*, the website – an online dating service – required users to complete a detailed questionnaire that included, in part, multiple choice questions that were used to create and "match" user profiles. 339 F.3d 1119, 1121, 1124-25 (9th Cir. 2003). The Ninth Circuit held that these functions or features did not transform the website into an information content provider and it was therefore entitled to CDA 230 immunity. *Carafano*, 339 F.3d at 1124-25.

Similarly, in *Reddit*, the plaintiffs alleged Reddit was an information content provider because of its alleged "refusal to enforce its policies," its "pseudonymous, private messaging system that allows evasion of law enforcement," and "use of barely-trained moderators who failed to enforce its policies and propagated the spread of CSEM." 2021 U.S. Dist. LEXIS

235993 at *10 (internal quotation marks omitted). The court concluded that these allegations were insufficient to find that Reddit was an information content provider as they did "not speak to whether Reddit 'materially contributed' to the CSEM because the allegations relate to 'neutral tools.'" *Reddit*, 2021 U.S. Dist. LEXIS 235993 at *11. *See also Herrick*, 306 F. Supp. 3d at 589 (finding categorization, algorithmic filtering, aggregation and display features of app were neutral tools in that they are "available equally to all users and are not intrinsically offensive or unlawful"); *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 324 (D.N.J. 2015) (finding that questionnaire asking users to provide information about themselves did not make Grindr an information content provider and that Grindr "merely 'provid[ed] *neutral* tools to carry out what may be unlawful or illicit [conduct]'") (quoting *Roommates.com*, 521 F.3d at 1169).

In short, "[p]lainly, an [ICS] does not create or develop content by merely providing the public with access to its platform." *Gonzalez*, 2 F.4th at 893. *See also M.H.*, 2022 U.S. Dist. LEXIS 4543 at *15 ("Merely providing the forum where harmful conduct took place cannot otherwise serve to impose liability onto Omegle.").

Nor do the *Doe v. Mindgeek* or the *M.L. v. craigslist* decisions support Plaintiff's assertion (*see* Dkt. 23 at 23-25) that Omegle materially contributed to what made the content at issue (Fordyce's communications with Plaintiff using the Omegle website) unlawful. Unlike here, the defendant in *Mindgeek* allegedly took a number of steps to contribute to the unlawful content (child pornography) including "direct[ing] users to complete preference surveys, categorize their videos using coded language for child pornography to ensure that content is visible to the 'right fans,' and instruct users how to title their videos to target individuals interested in child pornography." *Doe v. Mindgeek USA Inc.*, No. SACV 21-00338-CJC (ADSx), 2021 U.S. Dist. LEXIS 176833, *26-27 (C.D. Cal. Sept. 3, 2021). Similarly, in *M.L. v. craigslist*

*Inc.*, the court found that the plaintiff plausibly alleged that craigslist was involved in materially contributing to the development of the ads that allegedly trafficked the plaintiff. No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334, *10-11 (W.D. Wash. Sept. 11, 2020). Notably, the court stated that the allegations went beyond "a mere assertion that craigslist contributed materially to Plaintiff's trafficking by having an 'erotic services' section," suggesting that such an assertion would be insufficient. *M.L.*, 2020 U.S. Dist. LEXIS 166334 at *11.

In contrast here, the only alleged contribution Omegle could plausibly be said to have to Fordyce's alleged communications with Plaintiff and the alleged harms that resulted from them is a neutral chat tool that is "available equally to bad actors and the [website's] intended users." *Herrick*, 765 F. App'x at 591; *see also Dyroff*, 934 F.3d at 1098-99 (discussing *Roommates.com* and stating that "a website does not become a developer of content when it provides neutral tools that a user exploits"). As discussed above, such an alleged contribution (e.g., a neutral tool that facilitates communications) is insufficient to find that Omegle materially contributed to the illegality of Fordyce's alleged communications or the harms that allegedly resulted from them. Thus, Omegle, "as the operator of [its random text and video chat website], is immune from liability under the CDA because its functions . . . were content-neutral tools used to facilitate communications." *Dyroff*, 934 F.3d at 1096.

## 2. Plaintiff's assertion that Omegle "forced" users to "experience" unlawful content is unsupported and implausible

In her opposition, Plaintiff asserts that Omegle is not entitled to CDA 230 immunity because it purportedly "forces" users into "experiencing" unlawful content or communications. But that assertion is entirely unsupported and misapprehends the relevant standard for determining when an ICS provider may also be an information content provider.

As an initial matter, Plaintiff points to no allegations in the Complaint supporting this new theory that Omegle in some unexplained way "forced" users into experiencing unlawful communications with other users. As discussed above and in Omegle's opening brief, Omegle provides a neutral tool (an online text and video chat in which users are randomly connected) that is equally available to users who use it for lawful purposes – such as the "age-appropriate video chats" Plaintiff had with friends (Dkt. 1 at ¶ 39) – and those who misappropriate the chat tool for unlawful purposes – such as Fordyce through his alleged communications with Plaintiff. Such a neutral tool neither transforms Omegle into an information content provider nor divests it of CDA 230's protection.

Also, the cases Plaintiff relies upon for this theory do not support it. Both of the cases – *Roommates.com* and *FTC v. LeadClick Media, LLC*, 838 F.3d 158 (2d Cir. 2016) – addressed the question whether the defendants were "information content providers" and therefore not entitled to the protections of CDA 230. In both cases, the courts found that defendants had materially contributed to the development of content that was unlawful and therefore were information content providers for purposes of CDA 230. For example, in *Roommates.com*, the court found the website created both (1) questions that users must answer to use its service and (2) answers that expressed illegal (discriminatory) preferences that users must choose from. 521 F.3d at 1164-67. Similarly, in *LeadClick*, the court found that defendant "participated in the development of the deceptive content posted on fake news pages," including by, among other things, "providing edits to affiliate webpages" and "purchasing media space on real news sites with the intent to resell that space to its affiliates using fake news sites." 838 F.3d at 176-77.

Here, there simply are no comparable allegations – nor could there be – that Omegle either requires its users in general, or required Fordyce in particular, to engage in unlawful

communications. Nor does Plaintiff allege that Omegle in any material way contributes to allegedly unlawful communications that may occur between users on its website. Instead, Plaintiff asserts that merely because there are news reports of **_users_** misusing Omegle's chat service, Omegle is – in some unexplained way – the creator or developer of all user communications occurring on its website. (*See* Dkt. 23 at 27-28.) But that proposition is both illogical and unsupported by the caselaw applying the material contribution standard, as discussed herein. *See also Dart v. craigslist, Inc.*, 665 F. Supp. 2d 961, 969 (N.D. Ill. 2009) (relying in part on *Roommates.com* in concluding that allegation that users flouted craigslist's guidelines prohibiting illegal content did not support argument that craigslist materially contributed to content at issue).

Indeed, as courts have held, an ICS provider does not become an information content provider by offering a neutral tool to facilitate communications and does not require the user to provide unlawful information. For example, in *Roommates.com*, the Ninth Circuit held that the website did not materially contribute to discriminatory statements made in the "Additional Comments" section of user profile pages. 521 F.3d at 1173-75. In contrast to the mandatory questions and answers that elicited discriminatory preferences (discussed above), the website did "not provide any specific guidance as to what" the "Additional Comments" section should contain, users were presented with a blank text box, and the website published the comments as written by the users. *Roommates.com*, 521 F.3d at 1173-74 (noting that the fact that the website "encourages subscribers to provide *something* in response to the prompt is not enough to make it a 'develop[er] of the information'"). The Ninth Circuit thus concluded that "[t]his is precisely the kind of situation for which section 230 was designed to provide immunity." *Roommates.com*, 521 F.3d at 1174.

Similarly, in *Dyroff*, the Ninth Circuit found the website's features to be similar to the "Additional Comments" section in *Roommates.com*, in that users were given "blank text boxes in which they could post and share experiences, questions, and answers." *Dyroff*, 934 F.3d at 1099. The court held that the plaintiff "cannot and does not plead that [the website] required users to post specific content, made suggestions regarding the content of potential user posts, or contributed to making unlawful or objectionable user posts." *Dyroff*, 934 F.3d at 1099. *See also Carafano*, 339 F.3d at 1124-25 (questionnaire presented to users did not make dating website an information content provider where "the selection of the content was left exclusively to the user" and no user profile had any content "until a user actively creates it"); *MySpace*, 96 Cal. Rptr. 3d at 158 (relying on *Roommates.com* and *Carafano* in concluding that MySpace's profile questions did not make it an information content provider because the questions were not "discriminatory or otherwise illegal" and users were not required to answer the questions to use the site).

Based on these cases, Omegle is manifestly *not* an information content provider with respect to the allegedly unlawful information at issue, namely, Fordyce's alleged communications with Plaintiff via Omegle's website. Omegle simply provides a text and video chat tool; it does not require users to provide any specific information in the chats, much less require illegal or otherwise unlawful information. Nor does or could Plaintiff allege to the contrary. Rather, Plaintiff's allegations assert only that **users** allegedly misuse the chat tools to engage in unlawful communications. *See, e.g.*, *Dyroff v. Ultimate Software Grp., Inc.*, No. 17-cv-05359-LB, 2017 U.S. Dist. LEXIS 194524, *28 (N.D. Cal. Nov. 26, 2017) (finding that website's "policy about anonymity may have allowed illegal conduct, and the neutral tools facilitated user communications, but these website functionalities do not 'create' or 'develop' information, even in part"), *aff'd*, 934 F.3d 1093 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761

(2020). Thus, Omegle is not an information content provider with respect to Fordyce's allegedly unlawful communications and is therefore shielded by CDA 230.

### D. Plaintiff's Reliance On An Alabama District Court's Decision – Which Is Inconsistent With Ninth Circuit Caselaw – Is Misplaced

Relying on a decision from the Northern District of Alabama, Plaintiff contends that the court held that "Section 230 does not apply to situations involving claims 'stemming from the sexual abuse of a child.'" (Dkt. 23 at 25 (quoting *Doe v. MG Freesites, Ltd.*, No. 7:21-cv-00220-LSC, 2022 U.S. Dist. LEXIS 23199, \*76 (N.D. Ala. Feb. 9, 2022)).) However, that is not the clear holding of the court and even if it were, such a holding would be wholly inconsistent with Ninth Circuit caselaw (and that of other federal circuits) interpreting and applying CDA 230.

The Alabama District Court's discussion of the applicability of CDA 230 to claims involving child pornography was not necessary to its decision because it concluded that defendants materially contributed to the creation of such material and indeed created new child pornography themselves. *See MG Freesites*, 2022 U.S. Dist. LEXIS 23199 at \*71, 78, 81. Additionally, the court spent considerable time discussing the limited carveout to CDA 230 immunity made by FOSTA. *See MG Freesites*, 2022 U.S. Dist. LEXIS 23199 at \*31-47. Although the court determined that it need not resolve the issues involving FOSTA's carveout because it concluded defendants were information content providers, *see id.* at \*47, its discussion illustrates that it did not hold that *all* claims involving the alleged exploitation of children are categorically excluded from CDA 230's scope. Moreover, even if the Northern District of Alabama had made such a holding, it of course would not be binding on this Court, particularly as it is inconsistent with Ninth Circuit CDA 230 jurisprudence.

More importantly, however, the Alabama District Court's statements about the alleged

inapplicability of CDA 230 to claims involving child pornography or other "illegal contraband" find no support in the statutory language. Specifically, the court appears to limit the scope of protection for ICS providers for claims based on third-party content to such content that is "lawful." *MG Freesites*, 2022 U.S. Dist. LEXIS 23199 at \*76 (stating that child pornography is not "lawful" information and such "illegal contraband" is "wholly outside any other protection or immunity under the law, including Section 230"). But CDA 230 contains no such limitation; to the contrary, it shields ICS providers from being treated as the publisher or speaker of "***any*** information provided by another information content provider." 47 U.S.C. § 230(c)(1) (emphasis added); *see also* 47 U.S.C. § 230(f)(3) (defining "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other [ICS]"). The statutory language neither limits the scope of immunity to "lawful" content provided by another information content provider nor scales the scope of protection based on the degree of offensiveness of the content at issue.

Courts have likewise *explicitly* recognized that CDA 230 immunity is not limited to "lawful" information or content provided by users. *See, e.g.*, *Twitter*, 2021 U.S. Dist. LEXIS 157158 at \*89 (concluding that "immunity under Section 230 is not defeated by the fact that the third-party content at issue is illegal child pornography"); *Doe v. Bates*, No. 5:05-cv-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348, \*10 (E.D. Tex. Dec. 27, 2006) (noting that principles underlying CDA 230 immunity "are equally applicable in the context of illegal pornography"); *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 759 (Tex. App. 2014) ("There is no provision in the CDA that limits its application to suits involving constitutionally protected material. Reading such an exception into the statute would undermine its purpose.") (internal citation omitted). Similarly, courts have *implicitly* recognized that there is no such "lawful" or other similar

limitation on the type of user content that comes within CDA 230's scope in cases involving child pornography or other "illegal contraband." *See, e.g.*, *Dyroff*, 934 F.3d at 1095, 1099 (finding CDA 230 barred claims relating to plaintiff's son's purchase of fentanyl-laced heroin purchased from another user in a "heroin-related group" on the website); *M.H.*, 2022 U.S. Dist. LEXIS 4543 at *11-12, 15 (finding CDA 230 barred civil cause of action against Omegle under federal child pornography statute for CSAM allegedly created by user); *Reddit*, 2021 U.S. Dist. LEXIS 235993 at *16-17 (finding CDA 230 barred claims seeking to hold Reddit liable for child sexual exploitation materials posted by users). Limiting CDA 230 protection only to situations involving "lawful" user content would eviscerate the intent of CDA 230.

These cases demonstrate – as does the Alabama District Court's failure to cite a single case supporting denying CDA 230 immunity to situations involving "illegal contraband" – that neither the unlawful nature nor the degree of offensiveness of the user content at issue has any bearing on the existence of CDA 230 immunity. Plaintiff appears to recognize that the Alabama District Court's decision is not in accord with CDA 230 jurisprudence by noting that the court stated that certain categories of information "*should* not be" immunized under CDA 230, rather than stating that such information "*is* not" immunized. (*See* Dkt. 23 at 26 (emphasis added).)

Plaintiff also proffers a vague argument that Omegle has "admitted" to being the publisher or speaker of child pornography by asserting that Plaintiff's claims seek to treat it as such for purposes of CDA 230 immunity. (*See* Dkt. 23 at 26.) But there has been no such admission. To the contrary, it is *Plaintiff* who has *alleged* that Omegle is the publisher or speaker of Fordyce's communications with her that she alleges constitutes child sexual exploitation; Omegle has made no such admission. In any event, Plaintiff's argument is irrelevant as there is

no support for the Alabama District Court's proposition that an ICS provider is shielded from liability under CDA 230 only for claims based on "lawful" user content.

## II. Plaintiff Fails To Refute Omegle's Showing That Actual Knowledge Is Required For The Sections 1591 And 1595 Claim

As an initial matter, Plaintiff – contrary to the plain language of CDA 230 and federal caselaw interpreting and applying CDA 230 – incorrectly argues that federal civil sex trafficking claims are "categorically" excluded from CDA 230 immunity. (Dkt. 23 at 28-29.) The only authority Plaintiff proffers in support of this inaccurate assertion is the Texas Supreme Court's *In re Facebook* decision and the Northern District of Alabama's *MG Freesites* decision. (Id.)

One need only look to the plain language of CDA 230 to demonstrate the fallacy of Plaintiff's assertion. Specifically, Section 230(e)(5)(A) – added by FOSTA – states that a federal civil sex trafficking claim is excluded from the scope of CDA 230 immunity only "if the conduct underlying the claim constitutes a violation of section 1591," the federal sex trafficking criminal statute. 47 U.S.C. § 230(e)(5)(A). Neither the decision from the Texas Supreme Court nor the opinion from the Northern District of Alabama can trump the unambiguous language of the statute. *See Doe v. Reddit, Inc.*, No. SACV 21-768 JVS (KESx), 2021 U.S. Dist. LEXIS 129876, *13-19 (C.D. Cal. July 12, 2021) (rejecting argument that FOSTA amendment removed CDA 230 immunity for all civil sex trafficking claims and "firmly disagree[ing] with the Supreme Court of Texas's reading of § 230(e)(5)" in the *In re Facebook* decision); *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009) (amended) (stating, on appeal from this District, that the parties "make a lot of sound and fury on the congressional intent" of CDA 230 immunity but such "noise ultimately signifies nothing" as it is "the language of the statute that defines and enacts the concerns and aims of Congress"). Moreover, as discussed

above (*see supra* at p. 18), the Northern District of Alabama recognized that only certain federal civil sex trafficking claims are excluded from CDA 230 immunity in discussing – but ultimately not deciding – what is required to fall within that exclusion. *See MG Freesites*, 2022 U.S. Dist. LEXIS 23199 at *31-47.

Further, Plaintiff ignores the numerous cases explicitly recognizing that the carveout from CDA 230 immunity for federal civil sex trafficking claims is limited; if there were a categorical exclusion for *all* federal sex trafficking claims as Plaintiff suggests, then there would have been no need for courts to analyze what types of such claims fall outside the scope of CDA 230 immunity. *See, e.g.*, *M.H.*, 2022 U.S. Dist. LEXIS 4543 at *16-18 (stating that CDA 230 permits federal civil sex trafficking claims against ICS providers "under narrow circumstances" and concluding that plaintiffs failed "to state a plausible sex trafficking claim that would escape CDA 230 immunity"); *Reddit*, 2021 U.S. Dist. LEXIS 235993 at *17-20 (discussing limited carveout from CDA 230 immunity for federal civil sex trafficking claims that state a violation of Section 1591); *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2021 U.S. Dist. LEXIS 170338, *14-17 (N.D. Cal. Sept. 8, 2021) ("*J.B. II*")[5] (discussing FOSTA and concluding that its amendment to CDA 230 limited "the scope of civil sex trafficking claims against [ICS providers] that otherwise meet the requirements for CDA immunity to circumstances in which the defendant's conduct amounts to a violation of section 1591"). The court in *Kik* stated it succinctly: "Had Congress intended to revoke CDA immunity for all claims involving sex trafficking on websites (as argued by Plaintiff), it could have done so; but it did not. The plain

_____

[5] On February 28, 2022, the Ninth Circuit granted the plaintiff's petition for permission to appeal the order dismissing the claim against craigslist. *J.B. v. craigslist Inc.*, No. 21-80133, 2022 U.S. App. LEXIS 5281 (9th Cir. Feb. 28, 2022).

language of the statute removes immunity only for conduct that violates 18 U.S.C. § 1591." *Kik*, 482 F. Supp. 3d at 1249.

A.      **The Weight Of Authority – Which Plaintiff Ignores – Requires Actual Knowledge For Sections 1591 And 1595 Claims Against ICS Providers**

In its opening brief, Omegle showed that the growing weight of authority has concluded that – consistent with the language of Section 230(e)(5)(A) – federal civil sex trafficking claims against ICS providers fall outside the scope of CDA 230 immunity only where the conduct violates 18 U.S.C. § 1591, which in turn imposes an actual knowledge standard. (Dkt. 17 at 22-26.) Plaintiff does not rebut this showing.

Instead, Plaintiff relies on the *Doe v. Twitter* decision, as well as several cases involving civil sex trafficking claims against hotels, to assert that the actual knowledge standard does not apply. (Dkt. 23 at 29-31.) Plaintiff's singular reliance on the *Twitter* decision, while ignoring the number of other decisions concluding to the contrary in the online context, is unpersuasive. Similarly, the cases involving federal civil sex trafficking claims against hotels – which necessarily did not involve CDA 230 and its limited carveout for such claims – are of no assistance to Plaintiff. Notably, even the *Twitter* court recognized that these hotel cases "do[] not answer the question of whether the same standards apply where a civil claim is asserted under Section 1591(a)(2) against an ICS provider and thus (arguably) falls within the ambit of Section 230 immunity." *Twitter*, 2021 U.S. Dist. LEXIS 157158 at *65. And the Alabama District Court's decision in *MG Freesites* does not support Plaintiff's assertion with respect to the actual knowledge standard; even Plaintiff recognizes that the court did not reach the question because it concluded that the ICS provider materially contributed to the unlawful content at issue and therefore was not entitled to CDA 230 immunity in the first instance.

**B.** **Plaintiff Implicitly Acknowledges She Does Not And Cannot Satisfy The Required Actual Knowledge Standard**

By failing to refute Omegle's showing that she is required to meet the actual knowledge standard of Section 1591 to fall within the limited carveout to immunity in Section 230(e)(5)(A) and arguing for the "knew or should have known" standard, Plaintiff implicitly acknowledges that the Complaint fails to contain any allegations demonstrating actual knowledge on Omegle's part. Instead, she relies on allegations of purported generalized knowledge that some users have allegedly misused Omegle's text and video chat tools for sex trafficking. (*See* Dkt. 23 at 30.)

But as Omegle demonstrated (*see* Dkt. 17 at 28-29) – and Plaintiff fails to refute – such "generalized knowledge of past instances of sex trafficking are not enough to satisfy an exception to [CDA 230] immunity." *M.H.*, 2022 U.S. Dist. LEXIS 4543 at *17-18; *see also Kik*, 482 F. Supp. 3d at 1251 ("FOSTA permits civil liability for websites only if the conduct underlying the claim constitutes a violation of section 1591" which "requires knowing and active participation in sex trafficking by the defendants.") (internal quotation marks omitted). "'To conclude otherwise would mean that all web-based communications platforms have a legal duty to inspect every single user-generated message before it is communicated to a single person or displayed to the public, lest such platforms be deemed to have participated in the venture.'" *Reddit*, 2021 U.S. Dist. LEXIS 235993 at *21 (quoting *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 U.S. Dist. LEXIS 151213, * 9 (N.D. Cal. Aug. 20, 2020)).

Therefore, the Complaint indisputably fails to plausibly allege the actual knowledge required to fall within the exception to CDA 230 immunity in Section 230(e)(5)(A).

**C.**     **Additionally, Plaintiff Does Not And Cannot Allege A "Venture" Between Fordyce And Omegle**

Plaintiff also fails to show that the Complaint plausibly alleges that Omegle participated in a "venture" with Fordyce. Plaintiff acknowledges that the Complaint must contain allegations showing a "continuous business relationship between **the** trafficker [Fordyce] and Omegle" such that it appears there is a pattern of conduct between them or that it could be said they have a tacit agreement regarding the alleged sex trafficking of Plaintiff. (Dkt. 23 at 31 (emphasis added).)

Despite acknowledging the applicable standard, Plaintiff fails to point to any allegations in the Complaint showing a "continuous business relationship" between Fordyce and Omegle with respect to the sex trafficking of Plaintiff that would support the existence of a "venture." Instead, Plaintiff merely repeats generalized allegations that some users have misused Omegle's website to engage in sex trafficking. Omegle demonstrated that such generalized allegations are wholly insufficient to establish either a direct association or a continuous business relationship between Fordyce and Omegle. (*See* Dkt. 17 at 29-31.) There is no allegation (nor could there be) that Omegle had any relationship, business or otherwise, with Fordyce or that Omegle had any contemporaneous knowledge of Plaintiff, Fordyce, or Fordyce's actions toward Plaintiff. *See M.H.*, 2022 U.S. Dist. LEXIS 4543 at *18 ("Without allegations that Omegle had actual knowledge of, or overtly participated in the sex trafficking venture by John Doe, Plaintiffs fail to state a plausible sex trafficking claim that would escape CDA 230 immunity.").

Therefore, the Complaint fails to state a claim under Section 1591 that would overcome CDA 230 immunity under Section 230(e)(5)(A).

III.     **Plaintiff Offers No Defense Of Her Seventh Claim Based On Oregon State Law**

As Omegle established in its opening brief, FOSTA did not carve out *state law* civil sex

trafficking claims from CDA 230 immunity. (Dkt. 17 at 31-32.) Consequently, because Omegle

demonstrated that CDA 230 bars Plaintiff's claims – all of which are based on Fordyce's alleged

communications with Plaintiff and the alleged harms that resulted from them – and no exclusion

from immunity applies, Plaintiff's civil claim for alleged violation of Oregon's criminal sex

trafficking statute must be dismissed. Plaintiff offers no specific response to this showing.

IV.     **Plaintiff Fails To Rebut The Strong Presumption Against Applying Section 2421A**

        **Retroactively To Alleged Conduct She Concedes Occurred Prior To Its Enactment**

Plaintiff offers no counter to Omegle's showing that her claim under Section 2421A – a

***new*** federal criminal statute that included a ***new*** civil remedy provision that was enacted in April

2018 – impermissibly seeks to impose liability on Omegle for alleged conduct that occurred prior

to the statute's enactment. (*See* Dkt. 17 at 32-36.) Instead, ignoring the statutory basis for her

fifth cause of action (namely, 18 U.S.C. § 2421A), Plaintiff argues that the amendments to

*Section 230* made by FOSTA purportedly reflected Congress's opinion that sex trafficking

claims under Section 1595 were "never barred by Section 230."[6] (Dkt. 23 at 34.)

But Plaintiff's assertion about what claims may or may not have been barred prior to

FOSTA's amendment to CDA 230 (whether accurate or not) has no relevance to whether

---

[6] In Plaintiff's discussion of this issue, she repeatedly asserts that the Ninth Circuit reached certain conclusions in the *In re Facebook* case, presumably to suggest that it is precedent binding on this Court. (*See* Dkt. 23 at 32, 34.) However, the citations make it clear that Plaintiff is actually citing to the decision of the ***Texas State Supreme Court***, not the Ninth Circuit. Moreover, far from accurately reflecting Ninth Circuit interpretation of Section 230, the Texas Supreme Court's decision in the *Facebook* case is recognized as an outlier in Section 230 jurisprudence. *See, e.g.*, *Reddit*, 2021 U.S. Dist. LEXIS 129876 at *13-19 (noting that the court "firmly disagrees with the Supreme Court of Texas's reading" of Section 230 and that the "Texas Supreme Court's interpretation of § 230 undermines Congress's clear intent").

Plaintiff's claim *under Section 2421A* violates the rule against retroactive legislation. Plaintiff bases her fifth cause of action on the new civil remedy provision included in the new criminal offense created by 18 U.S.C. § 2421A. There can be no dispute – and indeed Plaintiff does not challenge Omegle's showing – that *Section 2421A* created a new civil claim. The legislative history relating to FOSTA unambiguously references the "new federal criminal statute" that "[c]reates a civil remedy mechanism," namely, Section 2421A. H.R. REP. No. 115-572, pt. 1, at 3, 6, 9, 10 (2018) (also referring to Section 2421A as "the creation of a new federal law," adding "a new statute" within the Mann Act, and "the newly created law"). Cases discussing FOSTA also recognize that, separate from and in addition to the amendments to CDA 230, it enacted "a new offense" codified at 18 U.S.C. § 2421A. *See J.B. II*, 2021 U.S. Dist. LEXIS 170338 at *15, 37-38; *see also Woodhull Freedom Found. v. U.S.*, 948 F.3d 363, 368, 373 (D.C. Cir. 2020) (referring to the "new provision" – Section 2421A – added by FOSTA and the private right of action it created). Moreover, Plaintiff notably does not dispute that the alleged conduct underlying her Section 2421A claim occurred prior to the statute's enactment. (*See, e.g.*, Dkt. 23 at 32 (referring to alleged "violations [that] occurred before" Section 2421A's enactment).)

Therefore, Plaintiff does not dispute that Congress expressed no clear manifestation of its intent that the new civil cause of action created by Section 2421A applies retroactively to alleged conduct Plaintiff concedes occurred prior to that statute's enactment. Nor does Plaintiff challenge Omegle's showing that Section 2421A – by creating a new criminal statute that includes a new civil remedy provision for aggravated violations of the statute – indisputably "attache[d] new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994). As a result, Section 2421A – the statute upon which Plaintiff's fifth cause of action is based – cannot apply retroactively to alleged conduct that

Plaintiff admits occurred before the statute's enactment. That cause of action therefore must be dismissed. Moreover, because Plaintiff concedes that the only alleged conduct occurred before Section 2421A's enactment, any amendment of this claim would be futile. Therefore, the Section 2421A claim should be dismissed with prejudice.

## V.     Plaintiff Concedes The Negligent Misrepresentation Claim Must Be Dismissed But Fails To Show That Amendment Would Not Be Futile

Plaintiff concedes that the negligent misrepresentation claim is properly dismissed because it is based on terms of service that were not in effect during the time period alleged in the Complaint. (Dkt. 23 at 34.) Although Plaintiff requests leave to amend the claim "accordingly" (Dkt. 23 at 34), she fails to explain with even a modicum of specificity (1) what amendments she could make or (2) why those amendments would not be futile.

Specifically, as Omegle demonstrated (*see* Dkt. 17 at 40-42), regardless of whether Plaintiff relies on the current or prior version of the terms of service, her claim fails because both versions disclaimed responsibility for other users' behavior, and stated that users were responsible for their own behavior and that no moderation is perfect.[7] (*See* Dkt. 17 at 41.) Plaintiff offers no response to that fatal flaw in her claim that renders any amendment futile. Instead, Plaintiff asserts vaguely that the 2014 version of the terms of service included a purported representation as to Omegle's "ability to ban or deny access to users." (Dkt. 23 at 34-35.) But Plaintiff then quotes an excerpt that says no such thing. (*See* Dkt. 23 at 35.) Therefore, on this ground alone Plaintiff's negligent misrepresentation claim should be dismissed; and

---

[7] Omegle requested that the Court take judicial notice of the current and prior versions of its terms of service. (Dkt. 18.) Neither in the response to that judicial notice request (*see* Dkt. 22), nor in the opposition to this Motion (*see* Dkt. 23) does Plaintiff offer any specific objection to the Court's consideration of the terms of service.

dismissal should be with prejudice based on the futility of amendment as the terms, on their face, expressly disclaim the purported obligations underlying Plaintiff's claim. *See Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016) (declining to presume the truth of allegations that contradicted the terms on which plaintiff relied that "clarif[ied] that Facebook is not responsible for content shared by other users"), *aff'd*, 700 F. App'x 588 (9th Cir. 2017).

Although the Court need not reach the issue to dismiss the negligent misrepresentation claim, Plaintiff's failure (and inability) to plausibly allege any special relationship between her and Omegle provides a separate ground for dismissal. First, Plaintiff makes no meaningful attempt to defend the adequacy of her allegation of a purported special relationship. Though presented as factual allegations, Plaintiff's statements that "Omegle is bound to Plaintiff by a relation or duty of care beyond a mere contract between the parties" and "is in a special position of confidence and trust in relation to Plaintiff" (Dkt. 1 at ¶¶ 149-150), are in reality legal conclusions. Even under the "short and plain statement" standard of FED. R. CIV. P. 8 on which Plaintiff relies, these allegations are manifestly inadequate. Second, and more substantively, Plaintiff offers no response to Omegle's showing that courts routinely reject claims asserting a special relationship between a website and its users relating to harm caused by other users. (*See* Dkt. 17 at 39-40.) Instead, relying on a single case from the Northern District of California discussing Oregon law, Plaintiff asserts that the law is "unsettled" on the necessity of a special relationship and that therefore her inadequately-pled claim should be allowed to proceed.

However, as discussed above, Plaintiff's negligent misrepresentation claim is properly dismissed with prejudice because the terms of service on their face foreclose her claim. Therefore, even ignoring CDA 230 and without addressing the necessity of alleging the existence of a special relationship, Plaintiff's negligent misrepresentation claim should be dismissed.

## CONCLUSION

Therefore, for the foregoing reasons, Omegle respectfully requests that the Complaint be dismissed in its entirety and without leave to amend.

Dated this 8th day of March, 2022.                 Respectfully submitted,

FOCAL PLLC                                          SNELL & WILMER, LLP

By: s/ *Stacia N. Lay*                              By: s/ *Clifford S. Davidson*
    Venkat Balasubramani, OSB #180446           Clifford S. Davidson, OSB #125378
    Stacia N. Lay, WSBA #30594 (PHV)            1455 SW Broadway, Suite 1750
    Kimberlee Gunning, WSBA #35366 (PHV)        Portland, Oregon 97201
    900 1st Avenue S., Suite 201                Telephone: (503) 624-6800
    Seattle, Washington 98134                   csdavidson@swlaw.com
    Telephone: (206) 529-4827
    venkat@focallaw.com
    stacia@focallaw.com
    kim@focallaw.com

*Attorneys for Defendant Omegle.com LLC*