```
 1              IN THE UNITED STATES DISTRICT COURT

 2                FOR THE DISTRICT OF OREGON

 3   A.M., an individual,        )
                                 )
 4            Plaintiff,         )  Case No. 3:21-cv-01674-MO
                                 )
 5       v.                      )
                                 )
 6   OMEGLE.COM LLC,             )  May 3, 2022
                                 )
 7            Defendant.         )  Portland, Oregon
     _____)

 8

 9

10

11

12

13

14                    Oral Argument

15             TRANSCRIPT OF PROCEEDINGS

16       BEFORE THE HONORABLE MICHAEL W. MOSMAN

17         UNITED STATES DISTRICT COURT JUDGE

18

19

20

21

22

23

24

25
```

```
 1

 2                          APPEARANCES

 3

 4   FOR THE PLAINTIFF:      Ms. Carrie Goldberg
                            Ms. Naomi E. Leeds
 5                          C.A. Goldberg, PLLC
                            16 Court Street, 33rd Floor
 6                          Brooklyn, NY 11241

 7

 8                          Ms. Barbara C. Long
                            Vogt & Long PC
 9                          101 S.W. Main Street, Suite 1900
                            Portland, OR 97204
10

11

12   FOR THE DEFENDANT:     Ms. Kimberlee Gunning
                            Ms. Stacia Lay
13                          Mr. Venkat Balasubramani
                            Focal PLLC
14                          900 First Avenue South, Suite 201
                            Seattle, WA 98134
15

16

17

18   COURT REPORTER:        Bonita J. Shumway, CSR, RMR, CRR
                            United States District Courthouse
19                          1000 S.W. Third Avenue, Room 301
                            Portland, OR 97204
20                          (503)326-8188
                            bonita_shumway@ord.uscourts.gov
21

22

23

24

25
```

(P R O C E E D I N G S)

(May 3, 2022; 9:03 a.m.)

* * * * *

THE COURTROOM DEPUTY:  We are here today for the oral argument in Case No. 3:21-cv-1674-MO, A.M. versus Omegle.com LLC.

Counsel, please state your name for the record.

MS. LONG:  Barbara Long on behalf of the plaintiff.

MS. LEEDS:  Naomi Leeds on behalf of the plaintiff.

MS. GOLDBERG:  Carrie Goldberg for Plaintiff A.M. Good morning.

MR. BALASUBRAMANI:  Venkat Balasubramani on behalf of defendant.

MS. LAY:  Stacia Lay on behalf of defendant.

MS. GUNNING:  Kimberlee Gunning on behalf of defendant.

THE COURT:  Thank you all very much.  Although I know it's against all of your training and instincts, let's stay seated during oral argument going forward, just so I'll hear you a little better.

Thank you all for briefing this question.  I thought it might be helpful if I gave you my tentative thoughts first, and then that would help you understand where we're headed with oral argument.  And I want to emphasize the word "tentative." We're not here for some sort of empty show exercise.  I'll be

1   interested to hear what you have to say at oral argument.

2          I'm going to divide these out into subgroups, and the

3   first subgroup I'm going to create is Claims 1 through 4,

4   because the only real issue on those claims is do they come

5   under the rubric of or outside the rubric of Section 230's --

6   well, Section 230.  So, as you know, they are the two product

7   liability claims and the two negligence claims for design and

8   for warning.

9          So Section 230 precludes liability in a way that

10  raises, I think, three questions.  One is is the defendant a

11  provider or user of an interactive computer service -- here a

12  provider.  And there's no real debate about that question in

13  this case.  The answer is yes.

14         And the second is liability is precluded when someone

15  who qualifies under point one, and the plaintiff seeks to treat

16  that defendant as a publisher or speaker.

17         And the third is of information that comes from a

18  third party, from another content provider.

19         So the key prong in all of this, since number one is

20  agreed to, is the second prong, because if the plaintiff is not

21  suing Omegle as a publisher or speaker, then it really doesn't

22  much matter where the information came from.

23         So it's easy to come up with what I say are easy

24  hypotheticals about the sorts of claims that you could bring

25  against a provider of an interactive computer service that

1    don't come under Section 230.  I'm just trying to make the

2    point that they exist.  So, for example, we have some sort of

3    Google farm out near The Dalles, and out there in that massive

4    facility, you brought an environmental claim or, you know, an

5    employment discrimination claim.  Then the mere fact that it's

6    an interactive computer service company wouldn't shield them

7    from liability.  You're not suing them in that capacity.

8         I guess the other point to make about that is any

9    complaint in this arena has to be looked at claim by claim.  In

10   one claim you might be suing them in their capacity as an

11   internet service provider, and in another you might not be.

12   That's why I've separated out Claims 1 through 4.

13        So on the second point, the key case that both

14   parties have dealt with is *Lemmon v. Snap*.  It's key because

15   it's on point and it's key because it's from the Ninth Circuit,

16   so controlling for me.

17        And the key distinction in a product liability case

18   like this is is the plaintiff suing for some sort of design

19   defect or for inadequate warnings, for causal factors that are

20   a priori to or at least partly independent of content.  And

21   here my tentative answer is I think the answer is yes, with the

22   sole exception of paragraph 72, which is sort of an ill-advised

23   outlier.  The complaint doesn't describe a causal chain here as

24   a failure to monitor or supervise content.  Instead, it gets at

25   other things like warning and design.

1        So that's the debate, and that's where my tentative

2    views like.  In fact, rather than make you keep all of my

3    tentative thoughts held in your head, let's just do this group

4    by group.  So since my tentative thoughts sort of run against

5    the defendant here, I'll start with you.

6        MS. GUNNING:  Thank you, Your Honor.

7        Do you have a specific question or would you just

8    like me to address the points you made in your tentative

9    thoughts?

10        THE COURT:  Well, let's apply *Lemmon v. Snap* to this

11    idea that -- I guess I'd just ask what I think I know the

12    answer to, is that you agree that *Lemmon v. Snap* stands for the

13    proposition that if you bring a products liability claim or a

14    negligence claim against an internet service provider that

15    doesn't seek to require that defendant to monitor content or

16    supervise content, it simply seeks to have them, you know, redo

17    their infrastructure or place different warnings, do you agree

18    that that then takes the case outside of Section 230?

19        MS. GUNNING:  Yes, if when we look at the actual

20    allegations in the complaint and look at what allegedly led to

21    the harm, and if, in fact, that is not content.  I think the

22    thing about *Lemmon* that's really important is this question of

23    would there be liability without the content.  And, you know --

24        THE COURT:  Where are you getting that from *Lemmon*?

25    So that's one of your key points.  And, again, I'm setting to

1    one side for a moment paragraph 72, which I think cuts your

2    way.  But you have suggested that if the case -- that if there

3    isn't harm without the particular content in the case, that

4    Section 230 must apply, right?

5        MS. GUNNING:  I guess I'd refine that a bit.  I'm

6    looking at the language from *Snap* -- from *Lemmon*, which is Snap

7    could have satisfied its obligation to take more reasonable

8    measures, design a product more useful than dangerous without

9    altering the content that users generate.

10       THE COURT:  So take the warnings here, for example.

11   Why isn't that true in this case?  Why isn't it true that you

12   could modify the warnings without even knowing what the content

13   is?  The idea is that the warnings were negligently created or

14   that they're bad warnings for product liability purposes.  Why

15   can't you work on the warnings, change them in a way that

16   satisfies what's alleged here without even knowing about the

17   content?

18       MS. GUNNING:  Well, in this case I don't think you

19   can separate the warnings from the reasons why the plaintiffs

20   are alleging there needs to be a warning, which is this

21   question of who is participating on the platform, who is banned

22   from the platform, who was allowed to access the platform.  I

23   think this case is actually much more like *Doe v. Twitter*,

24   which came after the *Lemmon* case, which made these distinctions

25   and looked at the fact that, in fact, the nature of the flaw is

1  related to the posting of third-party content.  This question

2  of, you know, blocking, how well the product is designed to

3  prevent the posting of content, that's obviously a way to

4  distinguish this from *Lemmon*.  And with respect to the failure

5  to warn, again that all goes to who is on the platform, what

6  decisions has the platform made about who to let on to create

7  content and who not.

8          THE COURT:  Would those same things be true of

9  *Lemmon*?  That is, that the whole reason the plaintiff in *Lemmon*

10  would even care or be concerned about warnings or design is

11  because of the overarching question of who is involved and what

12  sort of content is involved, but nevertheless, if all you're

13  suing over is the warning or the design, then you step outside

14  230.  In other words, why isn't what you're saying equally true

15  of *Lemmon*?

16          MS. GUNNING:  I'm sorry, I didn't hear the last.

17          THE COURT:  Why isn't what you're suggesting

18  distinguishes *Twitter* from *Lemmon* actually true of *Lemmon*?

19  That is, that content in *Lemmon* is in the background, it's just

20  not the nature of the particular claim.

21          MS. GUNNING:  There wasn't a third-party content in

22  *Lemmon*.  It's just the difference here, right?  It's a very

23  different situation because you have this filter that these

24  users are using, and the Court concluded it was a dangerous

25  product, whereas here, it's very much about the content that

1    Mr. Fordyce created, posted those communications.  Without

2    that --

3               THE COURT:  All right.  Thank you.

4               Do you wish to respond?

5               MS. GOLDBERG:  Sure.

6               What distinguishes our case from I think any case

7    that -- besides *Lemmon v. Snap* is that there's no content that

8    is discussed.  I don't even know what the content is in this

9    case.  Our client was matched with a pedophile, and the product

10   was working exactly as it was intended to work: to match

11   strangers, to talk to strangers.  And, I mean, it was as if --

12   there was no content created.  So platforms like Twitter and

13   Facebook and Google, those are all content-based platforms

14   where users are creating the content and the harms are derived

15   ultimately from the content.

16              Omegle's a matching platform.  There's no

17   publication, there's no --

18              THE COURT:  Omegle lives or dies on whether third

19   parties are actually creating content, right?

20              MS. GOLDBERG:  Well, it's in real time.  Content is

21   not recorded, it's not uploaded.

22              THE COURT:  Content doesn't fail to become content if

23   it's not recorded, right?  There's no requirement that content

24   be recorded.  I mean, if you tap a phone, you're obtaining

25   content but it's in real time.

1          MS. GOLDBERG:  I just haven't seen a case like this

2   where there's not actually that kind of level of interaction

3   between users.  But at any rate --

4          THE COURT:  Thank you.  I'll stop you there.

5          MS. GOLDBERG:  Okay.

6          THE COURT:  In my view, I'm holding that Claims 1

7   through 4 are in a case in which content is there.  I disagree

8   with the proposition that what distinguishes this case from

9   other cases is that there's no content in this case.  Very

10  clearly, even from the four corners of the complaint, it's

11  clear that content was created.  It's just that the claims

12  aren't suing about content, and there is an important

13  distinction here.  And I think *Lemmon* applies even in cases

14  where there is content and where the content can be important

15  but the claim is not suing over content.  The claim is suing

16  over the warnings or the design.  And so if that's what's

17  happening in a claim, in a particular claim, then in my view,

18  Section 230 does not apply.

19          And it's actually fairly straightforward in many

20  products liability cases.  In my view, in a products liability

21  case if what you're suing over is an inadequate warning, then

22  one of ways that you can know the warning is inadequate is what

23  happens out in real life because of the inadequacies of the

24  warning.  And that will be -- that will involve a knowledge of

25  content.  But if you're not suing over the content itself but

1  the inadequacy of the warning, then you're stepping outside

2  Section 230.

3          In other words, to look at it the other way, what I

4  think Section 230 does not permit is a claim that to answer it

5  or to avoid it would require a defendant to supervise or

6  monitor content as opposed to do something it can unilaterally

7  do to its own platform regardless of content.  And that's our

8  case.

9          Claim 5 is brought under 18 U.S.C. 2421A, which is

10 part of FOSTA, and which partially abrogated Section 230

11 immunity.  The real question here, the only one defendant

12 really raises is is this retroactively, because it became law

13 on April 11, 2018, and our case ends with a police raid in

14 January of 2018.  So typically new criminal charges are not

15 retroactive.  I mean, that's right in the Constitution, of

16 course.  This is related but not quite there.  It's a new

17 federal criminal offense that also created a new civil cause of

18 action allowing recovery of damages and attorney fees.

19          So because of that, I'd be looking for some textual

20 evidence of retroactivity, and here what plaintiff offers is

21 text and an argument.  The text they offer is the declaration

22 of Congress from FOSTA, which is helpful to plaintiff, I think,

23 in a sort of a hortatory way, but it's not an operative

24 provision of the law.  At best, it would support the

25 proposition that Section 230 was never intended to preclude

1    preexisting sex trafficking charges, but that wouldn't help us

2    here with the new one.  So the idea that Section 230 sort of

3    has been explained in the preamble of the declaration as never

4    intending to limit earlier charges wouldn't help you where the

5    two causes of action, criminal and relatedly civil, are new.

6            The defendant, by contrast, offers Section 4 of

7    FOSTA, the section that actually abrogates Section 230 here.

8    And that says that the effective date of that section, Section

9    4, shall be the date of enactment.  That's pretty

10   straightforward.  That's just there it is, date of enactment.

11   It gives a different take on, quote, subsection A, close quote,

12   which is not the one that concerns us here.

13           So what I have really, sort of bared down to its

14   minimum, is, one, a declaration of Congress on one side, and

15   two, the actual text stating the date of enactment on the

16   other, and in that battle, the text of the statute wins.

17           Since my remarks now cut against plaintiff, I'll hear

18   from you first.

19           MS. GOLDBERG:  So the -- there is language about the

20   effective date of FOSTA that defendant supplied in their brief,

21   and it says that it shall apply regardless of whether the

22   conduct alleged occurred or is alleged to have occurred before,

23   on or after such date of enactment.  To us, this clearly says

24   that 2421A applies to cases so long as they're brought within

25   the statute of limitations, which our client's case is.

1          THE COURT:  Well, I think you're reading from the

2    section I just mentioned, which has really two thoughts in it.

3    I'm trying to just get to that quote you just read.

4          So what you're reading starts out saying, "The

5    amendments" -- it's Section B, "effective date."

6          "The amendments made by this section" -- the one that

7    includes the Section 4 that I just discussed -- "shall take

8    effect on the date of enactment of this act."  That's thought

9    one.

10          And then we turn to a different thought:  -- "and the

11   amendment made by Subsection A" -- which is a different

12   subsection -- "shall apply regardless," as you read.

13          So I don't know how the explanation of Congress here

14   about the effective date of Subsection A helps you in this

15   case.  Can you explain?

16          MS. GOLDBERG:  The most instructive language that I

17   have is just the effective date that I read.  I don't think

18   that there's been any interpretation in case law yet about

19   claims.

20          THE COURT:  All right.  Thank you very much.

21          Do you wish to respond?

22          MS. GUNNING:  I think it's a pretty clear question

23   based on the plain language of that section.  You know,

24   Congress knows how to -- usually, hopefully, knows how to tell

25   us when something is retroactive and when it's not, and if it's

1    a law that involves several different claims parsed out, if

2    there's a different, you know, retroactivity principle.  And

3    here in that second sentence, you know, Congress is telling us

4    that the amendment made by this particular section applies

5    regardless of whether the conduct occurred, you know, before or

6    after, whereas other types of claims, you know, that were

7    changed in FOSTA took effect on the date of the enactment.  It

8    could have been cleaner if there were separate sentences rather

9    than a comma.

10          THE COURT:  All right.  Thank you very much.

11          I agree.  I think Claim 5 here involves a statute

12   that is not retroactive, so I dismiss it with prejudice.

13          Claim 6 is brought under 1595.  It raises really

14   three questions.  One is what is the mens rea.  Defendant

15   argues that plaintiff has failed to allege the correct mens rea

16   in the complaint.  FOSTA only abrogates Section 230 immunity

17   for claims brought under this Section 1595, but with the sort

18   of a subreference or an adoption.  So you can sue under Section

19   1595 and not run afoul of Section 230 immunity "if the conduct

20   underlying the claim constitutes a violation of Section 1591."

21          So the real question is does that sort of

22   cross-reference import all of Section 1591, including its

23   higher mens rea or not?  And typically when these

24   cross-references occur, it's the whole thing.  So, for example,

25   just only by way of analogy, if you have a RICO case, then RICO

1    will say, for example, that you've got to commit certain

2    violent crimes, including, say, state law murder.  If you bring

3    a RICO case in Oregon and you allege an Oregon murder, then one

4    of the things you're going to have to prove is all of the

5    elements of Oregon murder, including its mens rea.

6            So I only use that analogy just to say that in my

7    experience, this sort of legislative chain or link is not

8    uncommon, and then when I see it, it's almost always the case

9    to my knowledge that the whole thing is imported, all of

10   Section 1591.  In other words, you have to show that under

11   1591, the conduct would violate -- excuse me, under 1595 you

12   have to show that the conduct would violate Section 1591.

13           Now, *Doe v. Twitter* picks up this question and it

14   employs what I think is a standard textual methodology, which

15   is, well, that's superficially the right result but sometimes

16   as a matter of not just wishful thinking but textual

17   interpretation, we say as judges, that just can't be right.  It

18   just can't be right.

19           And the question is, well, to what level?  Because in

20   my view, if what you're saying is it can't be right because

21   that's not the optimal result, then you've strayed from

22   analyzing text.  Now you're saying, I don't like the text

23   because there's a better way to do this.

24           Really the way this principle, this axiom of textual

25   interpretation works is it can't be right because it's

1   ridiculous, it's nonsensical in some way, not just not the best

2   result.

3          And so here I differ from *Doe v. Twitter*.  I don't

4   see this -- that is, I don't see the wholesale importation of

5   1591 into 1595 with 1591's higher mens rea as not making any

6   sense.  It's just one of several policy choices you would make

7   in creating 1595.  And the text makes pretty clear to me that

8   that's what's textually intended, and that result is not so

9   silly as to make interpreting the text that way irrational.

10          So there are two other points to talk about very

11   briefly:  venture and profit, but let's start with just mens

12   rea.  And again I'll turn to plaintiff, since I'm suggesting

13   that 1591's mens rea is imported and therefore you didn't

14   allege it here.

15          Any contrary thoughts other than what you've briefed?

16          MS. GOLDBERG:  Certainly we didn't allege that Omegle

17   knew specifically about Mr. Fordyce and his proclivities for

18   children.  However, we do allege that Omegle very much knew

19   about its product being used by predators.  I mean, on its --

20          THE COURT:  Is your argument that you meet the higher

21   mens rea or that you don't need to meet it?

22          MS. GOLDBERG:  Our argument is that we don't need to

23   meet the -- that plaintiff doesn't need to allege that Omegle

24   had specific knowledge of the harm that was being caused to

25   her.

1       THE COURT:  You allege that that's what the higher

2   mens rea requires is specific knowledge of the harm to your

3   client?

4       MS. GOLDBERG:  I think that that's what defendant is

5   alleging.

6       THE COURT:  Right, I know that they are.  They're

7   saying that the higher mens rea in 1591 would require you to

8   allege that Omegle knew of the harm to this individual.  If

9   1591 has that higher mens rea, then what I'm asking you is do

10  you agree with defendant that the higher mens rea would require

11  you to allege that Omegle knew about your client's individual

12  harm or is it something different than that?

13      MS. GOLDBERG:  No, I think that Omegle would just

14  need to know that this category of harm was happening, and

15  that's the highest mens rea required.

16      THE COURT:  That's one question.  The other question

17  is I thought your position from your briefing was the higher

18  mens rea does not apply here, citing *Doe v. Twitter*.  Is that

19  your position?

20      MS. GOLDBERG:  Yes.  We're citing *Doe v. Twitter* and

21  *Doe v. MG Freesites*, where the defendant in a FOSTA case does

22  not need to know about the specific incidents.

23      THE COURT:  All right.  Thank you.

24      Anything you wish to add?

25      MS. GUNNING:  I would add that, you know, as is clear

1  from the Ninth Circuit cases, I mean, reasonable minds differ

2  on this.  That's why we have three cases currently on appeal to

3  the Ninth Circuit that are addressing this very issue about the

4  mens rea, *Twitter*, which went plaintiff's way, and then *Reddit*

5  and *J.B.*  And we would submit that a very careful analysis in

6  J.B., which interestingly -- right? -- the Court reconsidered

7  its previous decision and decided that the higher mens rea was

8  required, walking through the language of the statute, walking

9  through the legislative history, which was contentious but

10 ultimately, you know, resulted in what we have.

11          THE COURT:  Are you suggesting in any way that I

12 ought to, since we're all aware this is on appeal, that I ought

13 to do anything in this case that waits for an answer there or

14 not?

15          MS. GUNNING:  If the Court is asking about whether a

16 stay might be warranted, that's entirely within the Court's

17 discretion.  I mean, this issue of mens rea is, you know, the

18 issue of law that determines whether the allegations in the

19 complaint are sufficient to survive a motion to dismiss.

20          THE COURT:  I don't really think that's -- well, I

21 guess I'd say that I don't see this as being anywhere closer

22 than maybe a year away from an answer, so I don't see a good

23 mechanism for carving this case out and waiting.

24          All right.  Thank you.

25          Is it your position that this mens rea from 1591

1  imported into 1595 would require plaintiff to allege that your

2  client knew of -- knew about plaintiff and plaintiff's

3  interactions with Fordyce here?  Does it have that degree of

4  specific knowledge?

5  MS. GUNNING:  There would need to be less than --

6  generalized knowledge -- generalized knowledge would not

7  suffice, whether you're looking at the benefit element or the

8  participation in a venture.  So facts more similar to something

9  like *Freesites* or *Mindgeek*, where you have this website

10  Pornhub, which is similar to the hotel cases, where you do

11  have, you know, the platform is very much involved in creating

12  content.  In the case of the *Pornhub* cases, it's actually

13  advising these folks that are posting how to do it, what key

14  words to post, and are intimately aware of what's going on,

15  even with specific -- specific bad actors.  And the same with

16  *Twitter*.  Of course with *Twitter*, you know, the specific posts

17  were brought to Twitter's attention that were inappropriate

18  posting of --

19  THE COURT:  With *Twitter* you have contact between the

20  defendant and the victim specific to the content.  So a showing

21  of the higher mens rea there, if not before the harm -- well,

22  if not at the start of the complaint, somewhere very soon after

23  that, you have direct communication between the victims in

24  *Twitter*, right?

25  In *Pornhub* you have, as you say, enough of a sort of

1  a venture that you get presumably mens rea even if Pornhub

2  isn't specifically aware of the actual name and problem with a

3  particular victim, right?  In other words, I guess what I'm

4  asking is there are sets of facts by which you could have the

5  mens rea for 1591 satisfied without showing that this platform

6  knew my victim's name.

7         MS. GUNNING:  You know, one set of facts that I'm

8  thinking about is -- while it's not a Section 1591 claim, is

9  the *Internet Brands* case, because that is a situation where the

10 platform didn't know the victim's name but knew before that

11 contact happened on the Model Mayhem website that these bad

12 actors were subject to criminal sanctions.  I mean, their

13 specific names were out there and they didn't warn, they didn't

14 ban them.

15        THE COURT:  All right.  Thank you.

16        So it's my view, just to formalize my tentative

17 thoughts for Claim 6, that Section 1595 imports all of 1591,

18 including the mens rea requirement of 1591, and it's my view

19 that this complaint inadequately alleges that mens rea.

20        On venture and profit, I don't need to hear oral

21 argument.  It's -- those two are related, they're tied up to

22 some at least small degree, maybe more with the mens rea

23 requirement.  And in any event, they are also inadequate here.

24 And so Claim 6 I dismiss without prejudice, and so mens rea and

25 venture and profit have to be realleged with the higher mens

1    rea involved.

2         I don't know, nor am I ruling in any way whether that

3    mens rea requires alleging that Omegle knew about this

4    particular set of facts or something else.  I will say that in

5    my view, in the abstract, there are cases out there where that

6    mens rea requirement can be satisfied without the platform

7    knowing the individual actions that harm a particular victim,

8    but I don't -- I don't know whether this case satisfies this.

9    That is on plaintiff to try to figure out what the mens rea

10   requires here in a case like this, along with venture and

11   profit, and then we may have to litigate this again.

12        Yes?

13        MS. GOLDBERG:  Can I have one more thought, Your

14   Honor?

15        THE COURT:  Yes.

16        MS. GOLDBERG:  Omegle is product that deliberately is

17   anonymous.  It doesn't ask users for their name or any

18   verification or have any way to find out if a predator is using

19   its product.  And so I don't know if Omegle should benefit from

20   its willful blindness to moderate -- to basically protect its

21   platform from users.  If the founder were to get the name of

22   Mr. Fordyce, he would have no way to protect users from that

23   person because they don't ask users their name or for any

24   identifying information.  And the same is true of the victims.

25   And so I think that the product itself has been designed to

1    keep everybody's head in the sand when it comes to satisfying

2    the issue of mens rea.

3         THE COURT:  All right.  So what you're telling me is

4    you may have an argument at a future date that justifies the

5    allegations you're going to try to make to satisfy this mens

6    rea, and we'll take up those arguments on that future date.

7         MS. GOLDBERG:  Okay.

8         THE COURT:  Claim 7 is grounded in ORS 30.867.  I

9    don't need to hear oral argument on this one.  Nowhere does

10   FOSTA or Section 230 or anything else carve out from Section

11   230 immunity an exception for state criminal laws.  There's

12   just no such exception.  So I dismiss that with prejudice.

13        Claim 8 has two problems:  One is it's alleging the

14   wrong terms of service; and two is there's no special

15   relationship pled.  So I dismiss it without prejudice.  I do

16   think it has a chance, at least, of -- like Claims 1 through 4,

17   standing outside Section 230, although I'll pick that up after

18   I see the renewed or revised version of Claim 8 that

19   incorporates the correct terms of service and does what it can,

20   if it can, to allege a special relationship.

21        So we're moving forward on the case with some claims.

22   Some need to be repled with careful thought.  How long does

23   plaintiff need to replead the claims I dismissed without

24   prejudice?

25        MS. GOLDBERG:  May we have two weeks, Your Honor?

```
 1              THE COURT:  Are there any deadlines currently
 2     standing in this case right now that we're running up against?
 3              MS. GOLDBERG:  There are not.
 4              MS. LONG:  Your Honor, there were some discovery
 5     deadlines that had been kind of set, I believe, automatically
 6     by the Court that I think may have predated this hearing, but
 7     there's no additional deadlines.  No discovery has been
 8     conducted.
 9              THE COURT:  So you need an extension of those
10     deadlines?
11              MS. LONG:  Both sides will, Your Honor.
12              THE COURT:  All right.  I'll wait to get that joint
13     request for an extension of deadlines soon.  So I'll also
14     request in two weeks a revised complaint.
15              Anything further from defendants today?
16              MS. GUNNING:  No, thank you, Your Honor.
17              THE COURT:  We'll be in recess.
18              THE COURTROOM DEPUTY:  This court is now in recess.
19              (Proceedings concluded at 9:39 a.m.)
20
21
22
23
24
25
```

1

2                              --o0o--

3

4        I certify, by signing below, that the foregoing is a

5    correct transcript of the record of proceedings in the

6    above-entitled cause.  A transcript without an original

7    signature or conformed signature is not certified.

8

9

   /s/Bonita J. Shumway                  May 8, 2022
10   _____          _____
   BONITA J. SHUMWAY, CSR, RMR, CRR      DATE
11   Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MR. BALASUBRAMANI: [1]  3/12
MS. GOLDBERG: [17]  3/10 9/5 9/20 10/1 10/5 12/19 13/16 16/16 16/22 17/4 17/13 17/20 21/13 21/16 22/7 22/25 23/3
MS. GUNNING: [13]  3/15 6/6 6/19 7/5 7/18 8/16 8/21 13/22 17/25 18/15 19/5 20/7 23/16
MS. LAY: [1]  3/14
MS. LEEDS: [1]  3/9
MS. LONG: [3]  3/8 23/4 23/11
THE COURT: [30]
THE COURTROOM DEPUTY: [2]  3/4 23/18

-

--o0o [1]  24/2

/

/s/Bonita [1]  24/9

1

1000 [1]  2/19
101 [1]  2/9
11 [1]  11/13
11241 [1]  2/6
1591 [13]  14/20 14/22 15/10 15/11 15/12 16/5 17/7 17/9 18/25 20/5 20/8 20/17 20/18
1591's [2]  16/5 16/13
1595 [8]  14/13 14/17 14/19 15/11 16/5 16/7 19/1 20/17
16 [1]  2/5
18 [1]  11/9
1900 [1]  2/9

2

201 [1]  2/14
2018 [2]  11/13 11/14
2022 [3]  1/6 3/2 24/9
230 [18]  4/6 4/9 5/1 6/18 7/4 8/14 10/18 11/2 11/4 11/10 11/25 12/2 12/7 14/16 14/19 22/10 22/11 22/17
230's [1]  4/5
2421A [2]  11/9 12/24

3

30.867 [1]  22/8
301 [1]  2/19
326-8188 [1]  2/20
33rd [1]  2/5
3:21-cv-01674-MO [1]  1/4

5

503 [1]  2/20

7

72 [2]  5/22 7/1

8

8188 [1]  2/20

9

900 [1]  2/14
97204 [2]  2/9 2/19
98134 [1]  2/14
9:03 [1]  3/2
9:39 [1]  23/19

A

a.m [5]  1/3 3/2 3/5 3/10 23/19
about [22]  4/12 4/24 5/8 6/22 7/16 8/6 8/10 8/25 10/12 12/19 13/14 13/18 16/10 16/17 16/19 17/11 17/22 18/3 18/15 19/2 20/8 21/3
above [1]  24/6
above-entitled [1]  24/6
abrogated [1]  11/10
abrogates [2]  12/7 14/16
abstract [1]  21/5
access [1]  7/22
act [1]  13/8
action [2]  11/18 12/5
actions [1]  21/7
actors [2]  19/15 20/12
actual [3]  6/19 12/15 20/2
actually [7]  7/23 8/18 9/19 10/2 10/19 12/7 19/12
add [2]  17/24 17/25
additional [1]  23/7
address [1]  6/8
addressing [1]  18/3
adoption [1]  14/18
advised [1]  5/22
advising [1]  19/13
afoul [1]  14/19
after [5]  7/24 12/23 14/6 19/22 22/17
again [4]  6/25 8/5 16/12 21/11
against [6]  3/18 4/25 6/4 6/14 12/17 23/2
agree [4]  6/12 6/17 14/11 17/10
agreed [1]  4/20
all [21]  3/17 3/18 3/21 4/19 6/2 8/5 8/12 9/3 9/13 13/20 14/10

allegations [3]  6/20 18/18 22/5
allege [11]  14/15 15/3 16/14 16/16 16/18 16/23 17/1 17/8 17/11 19/1 22/20
alleged [3]  7/16 12/22 12/22
allegedly [1]  6/20
alleges [1]  20/19
alleging [4]  7/20 17/5 21/3 22/13
allowed [1]  7/22
allowing [1]  11/18
almost [1]  15/8
along [1]  21/10
also [3]  11/17 20/23 23/13
altering [1]  7/9
although [3]  3/17 22/17
always [1]  15/8
am [1]  21/2
amendment [2]  13/11 14/4
amendments [2]  13/5 13/6
analogy [1]  14/25 15/6
analysis [1]  18/5
analyzing [1]  15/22
anonymous [1]  21/17
another [2]  4/18 5/11
answer [7]  4/13 5/21 5/21 6/12 11/4 18/13 18/22
any [13]  5/8 9/6 10/3 13/18 16/5 16/15 18/11 20/23 21/2 21/17 21/18 21/23 23/1
anything [4]  17/24 18/13 22/10 23/15
anywhere [1]  18/21
appeal [2]  18/2 18/12
APPEARANCES [1]  2/2
applies [3]  10/13 12/24 14/4
apply [6]  6/10 7/4 10/18 12/21 13/12 17/18
April [1]  11/13
April 11 [1]  11/13
are [27]
aren't [1]  10/12
arena [1]  5/9
argues [1]  14/15
argument [11]  1/14 3/5 3/19 3/24 4/1 11/21 16/20 16/22 20/21 22/4 22/9
arguments [1]  22/6
as [18]  4/6 4/16 4/21 5/10 5/23 9/10 9/11 11/6 12/3 12/24 13/12 15/16 15/17 16/5 16/9 17/25 18/21 19/25
ask [3]  6/11 21/17 21/23

## A

**asking [3]** 17/9 18/15 20/4
**attention [1]** 19/17
**attorney [1]** 11/18
**automatically [1]** 23/5
**Avenue [2]** 2/14 2/19
**avoid [1]** 11/5
**aware [3]** 18/12 19/14 20/2
**away [1]** 18/22
**axiom [1]** 15/24

## B

**background [1]** 8/19
**bad [3]** 7/14 19/15 20/11
**Balasubramani [2]** 2/13 3/12
**ban [1]** 20/14
**banned [1]** 7/21
**Barbara [2]** 2/8 3/8
**bared [1]** 12/13
**based [2]** 9/13 13/23
**basically [1]** 21/20
**battle [1]** 12/16
**be [24]** 3/22 3/25 5/9 5/10 5/11 6/23 7/20 8/8 8/10 9/24 10/14 10/24 11/19 12/9 15/17 15/18 15/20 15/25 18/16 19/5 20/25 21/6 22/22 23/17
**became [1]** 11/12
**because [15]** 4/4 4/20 5/14 5/15 8/11 8/23 10/23 11/12 11/19 15/19 15/20 15/23 15/25 20/9 21/23
**become [1]** 9/22
**been [6]** 12/3 13/18 14/8 21/25 23/5 23/7
**before [5]** 1/16 12/22 14/5 19/21 20/10
**behalf [5]** 3/8 3/9 3/12 3/14 3/15
**being [3]** 16/19 16/24 18/21
**believe [1]** 23/5
**below [1]** 24/4
**benefit [2]** 19/7 21/19
**besides [1]** 9/7
**best [2]** 11/24 16/1
**better [2]** 3/20 15/23
**between [3]** 10/3 19/19 19/23
**bit [1]** 7/5
**blindness [1]** 21/20
**blocking [1]** 8/2
**bonita [4]** 2/18 2/20 24/9 24/10
**Brands [1]** 20/9
**brief [1]** 12/20

**briefed [1]** 16/15
**briefing [2]** 3/21 17/17
**briefly: [1]** 16/11
**briefly:  venture [1]** 16/11
**bring [3]** 4/24 6/13 15/2
**Brooklyn [1]** 2/6
**brought [6]** 5/4 11/9 12/24 14/13 14/17 19/17

## C

**C.A [1]** 2/5
**came [2]** 4/22 7/24
**can [10]** 7/19 10/14 10/22 11/6 13/15 14/18 21/6 21/13 22/19 22/20
**can't [5]** 7/15 15/17 15/18 15/20 15/25
**capacity [2]** 5/7 5/10
**care [1]** 8/10
**careful [2]** 18/5 22/22
**Carrie [2]** 2/4 3/10
**carve [1]** 22/10
**carving [1]** 18/23
**case [37]**
**cases [9]** 10/9 10/13 10/20 12/24 18/1 18/2 19/10 19/12 21/5
**category [1]** 17/14
**causal [2]** 5/19 5/23
**cause [2]** 11/17 24/6
**caused [1]** 16/24
**causes [1]** 12/5
**certain [1]** 15/1
**Certainly [1]** 16/16
**certified [1]** 24/7
**certify [1]** 24/4
**chain [2]** 5/23 15/7
**chance [1]** 22/16
**change [1]** 7/15
**changed [1]** 14/7
**charges [3]** 11/14 12/1 12/4
**children [1]** 16/18
**choices [1]** 16/6
**Circuit [3]** 17/18 17/20
**citing [2]** 17/18 17/20
**civil [2]** 11/17 12/5
**claim [23]** 5/4 5/5 5/9 5/9 5/10 6/13 6/14 8/20 10/15 10/15 10/17 10/17 11/4 11/9 14/1 14/13 14/20 20/8 20/17 20/24 22/8 22/13 22/18
**claims [15]** 4/3 4/4 4/7 4/7 4/24 5/12 10/6 10/11 13/19 14/1 14/6 14/17 22/16 22/21 22/23
**cleaner [1]** 14/8

**clear [4]** 10/11 13/22 16/7 17/25
**clearly [1]** 10/10 12/23
**client [3]** 9/9 17/3 19/2
**client's [2]** 12/25 17/11
**close [1]** 12/11
**closer [1]** 18/21
**come [3]** 4/4 4/23 5/1
**comes [2]** 4/17 22/1
**comma [1]** 14/9
**commit [1]** 15/1
**communication [1]** 19/23
**communications [1]** 9/1
**company [1]** 5/6
**complaint [9]** 5/9 5/23 6/20 10/10 14/16 18/19 19/22 20/19 23/14
**computer [3]** 4/11 4/25 5/6
**concerned [1]** 8/10
**concerns [1]** 12/12
**concluded [2]** 8/24 23/19
**conduct [5]** 12/22 14/5 14/19 15/11 15/12
**conducted [1]** 23/8
**conformed [1]** 24/7
**Congress [5]** 11/22 12/14 13/13 13/24 14/3
**constitutes [1]** 14/20
**Constitution [1]** 11/15
**contact [2]** 19/19 20/11
**content [43]**
**content-based [1]** 9/13
**contentious [1]** 18/9
**contrary [1]** 16/15
**contrast [1]** 12/6
**controlling [1]** 5/16
**corners [1]** 10/10
**correct [3]** 14/15 22/19 24/5
**could [5]** 4/24 7/7 7/12 14/8 20/4
**Counsel [1]** 3/7
**course [2]** 11/16 19/16
**court [10]** 1/1 1/17 2/5 2/18 8/24 18/6 18/15 23/6 23/18 24/11
**Court's [1]** 18/16
**Courthouse [1]** 2/18
**create [2]** 4/3 8/6
**created [5]** 7/13 9/1 9/12 10/11 11/17
**creating [4]** 9/14 9/19 16/7 19/11
**crimes [1]** 15/2
**criminal [5]** 11/14 11/17 12/5 20/12 22/11

## C

cross **[2]** 14/22 14/24
cross-reference **[1]** 14/22
cross-references **[1]** 14/24
CRR **[2]** 2/18 24/10
CSR **[2]** 2/18 24/10
currently **[2]** 18/2 23/1
cut **[1]** 12/17
cuts **[1]** 7/1
cv **[2]** 1/4 3/5

## D

Dalles **[1]** 5/3
damages **[1]** 11/18
dangerous **[2]** 7/8 8/24
date **[14]** 12/8 12/9 12/10 12/15
12/20 12/23 13/5 13/8 13/14
13/17 14/7 22/4 22/6 24/10
deadlines **[5]** 23/1 23/5 23/7
23/10 23/13
dealt **[1]** 5/14
debate **[2]** 4/12 6/1
decided **[1]** 18/7
decision **[1]** 18/7
decisions **[1]** 8/6
declaration **[3]** 11/21 12/3
12/14
defect **[1]** 5/19
defendant **[18]** 1/7 2/12 3/13
3/14 3/16 4/10 4/16 6/5 6/15
11/5 11/11 12/6 12/20 14/14
17/4 17/10 17/21 19/20
defendants **[1]** 23/15
degree **[2]** 19/3 20/22
deliberately **[1]** 21/16
derived **[1]** 9/14
describe **[1]** 5/23
design **[7]** 4/7 5/18 5/25 7/8
8/10 8/13 10/16
designed **[2]** 8/2 21/25
determines **[1]** 18/18
didn't **[6]** 8/16 16/13 16/16
20/10 20/13 20/13
dies **[1]** 9/18
differ **[2]** 16/3 18/1
difference **[1]** 8/22
different **[8]** 6/17 8/23 12/11
13/10 13/11 14/1 14/2 17/12
direct **[1]** 19/23
disagree **[1]** 10/7
discovery **[2]** 23/4 23/7
discretion **[1]** 18/17
discrimination **[1]** 5/5
discussed **[2]** 9/8 13/7

dismiss **[5]** 14/12 18/19 20/24
22/12 22/15
dismissed **[1]** 22/23
distinction **[2]** 5/17 10/13
distinctions **[1]** 7/24
distinguish **[1]** 8/4
distinguishes **[3]** 8/18 9/6 10/8
DISTRICT **[4]** 1/1 1/2 1/17 2/18
divide **[1]** 4/2
do **[15]** 4/4 6/3 6/7 6/17 9/4
11/6 11/7 13/21 15/23 16/18
17/9 18/13 19/10 19/13 22/15
Doe **[6]** 7/23 15/13 16/3 17/18
17/20 17/21
does **[9]** 10/18 11/4 14/21
17/18 17/21 19/3 22/9 22/19
22/22
doesn't **[6]** 4/21 5/23 6/15 9/22
16/23 21/17
don't **[20]** 5/1 7/18 9/8 13/13
13/17 15/22 16/3 16/4 16/21
16/22 18/20 18/21 18/22 20/20
21/2 21/8 21/8 21/19 21/23
22/9
down **[1]** 12/13
during **[1]** 3/19

## E

earlier **[1]** 12/4
easy **[2]** 4/23 4/23
effect **[2]** 13/8 14/7
effective **[5]** 12/8 12/20 13/5
13/14 13/17
element **[1]** 19/7
elements **[1]** 15/5
else **[2]** 21/4 22/10
emphasize **[1]** 3/24
employment **[1]** 5/5
employs **[1]** 15/14
empty **[1]** 3/25
enactment **[6]** 12/9 12/10
12/15 12/23 13/8 14/7
ends **[1]** 11/13
enough **[1]** 19/25
entirely **[1]** 18/16
entitled **[1]** 24/6
environmental **[1]** 5/4
equally **[1]** 8/14
even **[8]** 7/12 7/16 8/10 9/8
10/10 10/13 19/15 20/1
event **[1]** 20/23
everybody's **[1]** 22/1
evidence **[1]** 11/20
exactly **[1]** 9/10
example **[4]** 5/2 7/10 14/24

15/4
exception **[3]** 5/22 22/11 22/12
excuse **[1]** 15/11
exercise **[1]** 3/25
exist **[1]** 5/2
experience **[1]** 15/7
explain **[1]** 13/15
explained **[1]** 12/3
explanation **[1]** 13/13
extension **[2]** 23/9 23/13

## F

Facebook **[1]** 9/13
facility **[1]** 5/4
fact **[5]** 5/5 6/2 6/21 7/25 7/25
factors **[1]** 5/19
facts **[4]** 19/8 20/4 20/7 21/4
fail **[1]** 9/22
failed **[1]** 14/15
failure **[2]** 5/24 8/4
fairly **[1]** 10/19
farm **[1]** 5/3
federal **[1]** 11/17
fees **[1]** 11/18
figure **[1]** 21/9
filter **[1]** 8/23
find **[1]** 21/18
first **[4]** 2/14 3/22 4/3 12/18
flaw **[1]** 7/25
Floor **[1]** 2/5
Focal **[1]** 2/13
folks **[1]** 19/13
Fordyce **[4]** 9/1 16/17 19/3
21/22
foregoing **[1]** 24/4
formalize **[1]** 20/16
forward **[2]** 3/19 22/21
FOSTA **[8]** 11/10 11/22 12/7
12/20 14/7 14/16 17/21 22/10
founder **[1]** 21/21
four **[1]** 10/10
Freesites **[2]** 17/21 19/9
further **[1]** 23/15
future **[2]** 22/4 22/6

## G

gave **[1]** 3/22
generalized **[2]** 19/6 19/6
generate **[1]** 7/9
get **[4]** 13/3 20/1 21/21 23/12
gets **[1]** 5/24
getting **[1]** 6/24
gives **[1]** 12/11
goes **[1]** 8/5
going **[6]** 3/19 4/2 4/3 15/4

## G

**going... [2]** 19/14 22/5
**Goldberg [3]** 2/4 2/5 3/10
**good [2]** 3/11 18/22
**Google [2]** 5/3 9/13
**got [1]** 15/1
**grounded [1]** 22/8
**group [2]** 6/3 6/4
**guess [5]** 5/8 6/11 7/5 18/21
20/3
**Gunning [2]** 2/12 3/15

## H

**had [2]** 16/24 23/5
**happened [1]** 20/11
**happening [2]** 10/17 17/14
**happens [1]** 10/23
**harm [9]** 6/21 7/3 16/24 17/2
17/8 17/12 17/14 19/21 21/7
**harms [1]** 9/14
**has [10]** 5/9 8/6 12/3 13/2
14/15 17/9 21/25 22/13 22/16
23/7
**have [33]**
**haven't [1]** 10/1
**he [1]** 21/22
**head [2]** 6/3 22/1
**headed [1]** 3/23
**hear [6]** 3/19 4/1 8/16 12/17
20/20 22/9
**hearing [1]** 23/6
**held [1]** 6/3
**help [3]** 3/23 12/1 12/4
**helpful [2]** 3/22 11/22
**helps [1]** 13/14
**her [1]** 16/25
**here [25]**
**higher [11]** 14/23 16/5 16/20
17/1 17/7 17/9 17/10 17/17
18/7 19/21 20/25
**highest [1]** 17/15
**his [1]** 16/17
**history [1]** 18/9
**holding [1]** 10/6
**Honor [6]** 6/6 21/14 22/25 23/4
23/11 23/16
**HONORABLE [1]** 1/16
**hopefully [1]** 13/24
**hortatory [1]** 11/23
**hotel [1]** 19/10
**how [6]** 8/2 13/13 13/24 13/24
19/13 22/22
**However [1]** 16/18
**hypotheticals [1]** 4/24

## I

**I'd [4]** 6/11 7/5 11/19 18/21
**I'll [9]** 3/19 3/25 6/5 10/4 12/17
16/12 22/17 23/12 23/13
**I'm [12]** 4/2 4/3 5/1 6/25 7/5
8/16 10/6 13/3 16/12 17/9 20/3
20/7
**I've [1]** 5/12
**idea [3]** 6/11 7/13 12/2
**identifying [1]** 21/24
**ill [1]** 5/22
**ill-advised [1]** 5/22
**immunity [4]** 11/11 14/16
14/19 22/11
**import [1]** 14/22
**important [3]** 6/22 10/12 10/14
**importation [1]** 16/4
**imported [3]** 15/9 16/13 19/1
**imports [1]** 20/17
**inadequacies [1]** 10/23
**inadequacy [1]** 11/1
**inadequate [4]** 5/19 10/21
10/22 20/23
**inadequately [1]** 20/19
**inappropriate [1]** 19/17
**incidents [1]** 17/22
**includes [1]** 13/7
**including [4]** 14/22 15/2 15/5
20/18
**incorporates [1]** 22/19
**independent [1]** 5/20
**individual [4]** 1/3 17/8 17/11
21/7
**information [3]** 4/17 4/22
21/24
**infrastructure [1]** 6/17
**Instead [1]** 5/24
**instincts [1]** 3/18
**instructive [1]** 13/16
**intended [3]** 9/10 11/25 16/8
**intending [1]** 12/4
**interaction [1]** 10/2
**interactions [1]** 19/3
**interactive [3]** 4/11 4/25 5/6
**interested [1]** 4/1
**interestingly [1]** 18/6
**internet [3]** 5/11 6/14 20/9
**interpretation [3]** 13/18 15/17
15/25
**interpreting [1]** 16/9
**intimately [1]** 19/14
**involve [1]** 10/24
**involved [4]** 8/11 8/12 19/11
21/1

**involves [2]** 14/1 14/11
**irrational [1]** 16/9
**is [117]**
**isn't [6]** 7/3 7/11 7/11 8/14 8/17
20/2
**issue [5]** 4/4 18/3 18/17 18/18
22/2
**it [39]**
**it's [35]**
**its [11]** 7/7 11/7 12/13 14/22
15/5 16/19 16/19 18/7 21/19
21/20 21/20
**itself [2]** 10/25 21/25

## J

**J.B [2]** 18/5 18/6
**January [1]** 11/14
**joint [1]** 23/12
**JUDGE [1]** 1/17
**judges [1]** 15/17
**just [26]**
**justifies [1]** 22/4

## K

**keep [2]** 6/2 22/1
**key [7]** 4/19 5/13 5/14 5/15
5/17 6/25 19/13
**Kimberlee [2]** 2/12 3/15
**kind [2]** 10/2 23/5
**knew [9]** 16/17 16/18 17/8
17/11 19/2 19/2 20/6 20/10
21/3
**know [28]**
**knowing [3]** 7/12 7/16 21/7
**knowledge [7]** 10/24 15/9
16/24 17/2 19/4 19/6 19/6
**knows [2]** 13/24 13/24

## L

**language [5]** 7/6 12/19 13/16
13/23 18/8
**last [1]** 8/16
**law [6]** 11/12 11/24 13/18 14/1
15/2 18/18
**laws [1]** 22/11
**Lay [2]** 2/12 3/14
**least [3]** 5/20 20/22 22/16
**led [1]** 6/20
**Leeds [2]** 2/4 3/9
**legislative [2]** 15/7 18/9
**Lemmon [17]** 5/14 6/10 6/12
6/22 6/24 7/6 7/24 8/4 8/9 8/9
8/15 8/18 8/18 8/19 8/22 9/7
10/13
**less [1]** 19/5

## L

let [1]  8/6
let's [4]  3/18 6/3 6/10 16/11
level [2]  10/2 15/19
liability [10]  4/7 4/9 4/14 5/7
 5/17 6/13 6/23 7/14 10/20
 10/20
life [1]  10/23
like [11]  5/18 5/25 6/2 6/8 7/23
 9/12 10/1 15/22 19/9 21/10
 22/16
limit [1]  12/4
limitations [1]  12/25
link [1]  15/7
litigate [1]  21/11
little [1]  3/20
lives [1]  9/18
LLC [2]  1/6 3/6
long [5]  2/8 2/8 3/8 12/24
 22/22
look [3]  6/19 6/20 11/3
looked [2]  5/9 7/25
looking [3]  7/6 11/19 19/7

## M

made [6]  6/8 7/24 8/6 13/6
 13/11 14/4
Main [1]  2/9
make [6]  5/1 5/8 6/2 16/6 16/9
 22/5
makes [1]  16/7
making [1]  16/5
many [1]  10/19
massive [1]  5/3
match [1]  9/10
matched [1]  9/9
matching [1]  9/16
matter [2]  4/22 15/16
may [7]  1/6 3/2 21/11 22/4
 22/25 23/6 24/9
maybe [2]  18/22 20/22
Mayhem [1]  20/11
me [5]  5/16 6/8 15/11 16/7 22/3
mean [7]  9/11 9/24 11/15 16/19
 18/1 18/17 20/12
measures [1]  7/8
mechanism [1]  18/23
meet [3]  16/20 16/21 16/23
mens [31]
mentioned [1]  13/2
mere [1]  5/5
methodology [1]  15/14
MG [1]  17/21
MICHAEL [1]  1/16

might [4]  3/22 5/10 5/11 18/16
Mindgeek [1]  19/9
minds [1]  18/1
minimum [1]  12/14
MO [2]  1/4 3/5
Model [1]  20/11
moderate [1]  21/20
modify [1]  7/12
moment [1]  7/1
monitor [3]  5/24 6/15 11/6
more [6]  7/7 7/8 7/23 19/8
 20/22 21/13
morning [1]  3/11
MOSMAN [1]  1/16
most [1]  13/16
motion [1]  18/19
moving [1]  22/21
Mr [1]  2/13
Mr. [3]  9/1 16/17 21/22
Mr. Fordyce [3]  9/1 16/17
 21/22
Ms [5]  2/4 2/4 2/8 2/12 2/12
much [8]  3/17 4/22 7/23 8/25
 13/20 14/10 16/18 19/11
murder [3]  15/2 15/3 15/5
must [1]  7/4
my [17]  3/22 5/21 6/1 6/2 6/4
 10/6 10/17 10/20 12/17 15/6
 15/9 15/20 20/6 20/16 20/16
 20/18 21/5

## N

name [7]  3/7 20/2 20/6 20/10
 21/17 21/21 21/23
names [1]  20/13
Naomi [2]  2/4 3/9
nature [2]  7/25 8/20
near [1]  5/3
need [11]  16/21 16/22 16/23
 17/14 17/22 19/5 20/20 22/9
 22/22 22/23 23/9
needs [1]  7/20
negligence [2]  4/7 6/14
negligently [1]  7/13
never [2]  11/25 12/3
nevertheless [1]  8/12
new [5]  11/14 11/16 11/17 12/2
 12/5
Ninth [3]  5/15 18/1 18/3
no [16]  1/4 3/5 4/12 9/7 9/12
 9/16 9/17 9/23 10/9 17/13
 21/22 22/12 22/14 23/7 23/7
 23/16
nonsensical [1]  16/1
not [39]

now [5]  12/17 15/13 15/22 23/2
 23/18
Nowhere [1]  22/9
number [1]  4/19
NY [1]  2/6

## O

o0o [1]  24/2
obligation [1]  7/7
obtaining [1]  9/24
obviously [1]  8/3
occur [1]  14/24
occurred [3]  12/22 12/22 14/5
offense [1]  11/17
offer [1]  11/21
offers [2]  11/20 12/6
Official [1]  24/11
Okay [2]  10/5 22/7
Omegle [11]  4/21 9/18 16/16
 16/18 16/23 17/8 17/11 17/13
 21/3 21/16 21/19
Omegle's [1]  9/16
OMEGLE.COM [2]  1/6 3/5
one [22]  4/10 4/15 4/19 5/10
 6/25 7/1 10/22 11/11 12/2
 12/12 12/14 12/14 13/6 13/9
 14/14 15/3 16/6 17/16 20/7
 21/13 22/9 22/13
only [5]  4/4 11/11 14/16 14/25
 15/6
operative [1]  11/23
opposed [1]  11/6
optimal [1]  15/21
oral [7]  1/14 3/4 3/19 3/24 4/1
 20/20 22/9
ord.uscourts.gov [1]  2/20
OREGON [5]  1/2 1/7 15/3 15/3
 15/5
original [1]  24/6
ORS [1]  22/8
other [13]  5/8 5/25 8/14 10/9
 11/3 11/3 12/16 14/6 15/10
 16/10 16/15 17/16 20/3
ought [2]  18/12 18/12
our [6]  9/6 9/9 11/7 11/13
 12/25 16/22
out [13]  4/2 5/3 5/3 5/12 10/23
 13/4 14/1 18/23 20/13 21/5
 21/9 21/18 22/10
outlier [1]  5/23
outside [5]  4/5 6/18 8/13 11/1
 22/17
over [8]  8/13 10/15 10/16
 10/21 10/25
overarching [1]  8/11

**own [1]** 11/7

**P**

**paragraph [2]** 5/22 7/1
**parsed [1]** 14/1
**part [1]** 11/10
**partially [1]** 11/10
**participating [1]** 7/21
**participation [1]** 19/8
**particular [7]** 7/3 8/20 10/17 14/4 20/3 21/4 21/7
**parties [2]** 5/14 9/19
**partly [1]** 5/20
**party [3]** 4/18 8/1 8/21
**PC [1]** 2/8
**pedophile [1]** 9/9
**permit [1]** 11/4
**person [1]** 21/23
**phone [1]** 9/24
**pick [1]** 22/17
**picks [1]** 15/13
**place [1]** 6/17
**plain [1]** 13/23
**plaintiff [19]** 1/4 2/4 3/8 3/9 3/10 4/15 4/20 5/18 8/9 11/20 11/22 12/17 14/15 16/12 16/23 19/1 19/2 21/9 22/23
**plaintiff's [2]** 18/4 19/2
**plaintiffs [1]** 7/19
**platform [12]** 7/21 7/22 7/22 8/5 8/6 9/16 11/7 19/11 20/5 20/10 21/6 21/21
**platforms [2]** 9/12 9/13
**please [1]** 3/7
**pled [1]** 22/15
**PLLC [2]** 2/5 2/13
**point [5]** 4/15 5/2 5/8 5/13 5/15
**points [3]** 6/8 6/25 16/10
**police [1]** 11/13
**policy [1]** 16/6
**Pornhub [4]** 19/10 19/12 19/25 20/1
**Portland [3]** 1/7 2/9 2/19
**position [3]** 17/17 17/19 18/25
**post [1]** 19/14
**posted [1]** 9/1
**posting [4]** 8/1 8/3 19/13 19/18
**posts [1]** 19/16
**preamble [1]** 12/3
**preclude [1]** 11/25
**precluded [1]** 4/14
**precludes [1]** 4/9
**predated [1]** 23/6

**predator [1]** 21/18
**predators [1]** 16/19
**preexisting [1]** 12/1
**prejudice [5]** 14/12 20/24 22/12 22/15 22/24
**presumably [1]** 20/1
**pretty [3]** 12/9 13/22 16/7
**prevent [1]** 8/3
**previous [1]** 18/7
**principle [2]** 14/2 15/24
**priori [1]** 5/20
**problem [1]** 20/2
**problems [1]** 22/13
**proceedings [3]** 1/15 23/19 24/5
**proclivities [1]** 16/17
**product [11]** 4/6 5/17 7/8 7/14 8/2 8/25 9/9 16/19 21/16 21/19 21/25
**products [3]** 6/13 10/20 10/20
**profit [4]** 16/11 20/20 20/25 21/11
**prong [2]** 4/19 4/20
**proposition [3]** 6/13 10/8 11/25
**protect [2]** 21/20 21/22
**prove [1]** 15/4
**provider [6]** 4/11 4/12 4/18 4/25 5/11 6/14
**provision [1]** 11/24
**publication [1]** 9/17
**publisher [2]** 4/16 4/21
**purposes [1]** 7/14

**Q**

**qualifies [1]** 4/15
**question [14]** 3/21 4/12 6/7 6/22 7/21 8/1 8/11 11/11 13/22 14/21 15/13 15/19 17/16 17/16
**questions [2]** 4/10 14/14
**quite [1]** 11/16
**quote [3]** 12/11 12/11 13/3

**R**

**raid [1]** 11/13
**raises [3]** 4/10 11/12 14/13
**rate [1]** 10/3
**rather [2]** 6/2 14/8
**rea [31]**
**read [3]** 13/3 13/12 13/17
**reading [2]** 13/1 13/4
**real [7]** 4/4 4/12 9/20 9/25 10/23 11/11 14/21
**realleged [1]** 20/25
**really [8]** 4/21 6/22 11/12 12/13

**reason [1]** 8/9
**reasonable [2]** 7/7 18/1
**reasons [1]** 7/19
**recess [2]** 23/17 23/18
**reconsidered [1]** 18/6
**record [2]** 3/7 24/5
**recorded [3]** 9/21 9/23 9/24
**recovery [1]** 11/18
**Reddit [1]** 18/4
**redo [1]** 6/16
**reference [1]** 14/22
**references [1]** 14/24
**refine [1]** 7/5
**regardless [4]** 11/7 12/21 13/12 14/5
**related [3]** 8/1 11/16 20/21
**relatedly [1]** 12/5
**relationship [2]** 22/15 22/20
**remarks [1]** 12/17
**renewed [1]** 22/18
**replead [1]** 22/23
**repled [1]** 22/22
**REPORTER [2]** 2/18 24/11
**request [2]** 23/13 23/14
**require [5]** 6/15 11/5 17/7 17/10 19/1
**required [2]** 17/15 18/8
**requirement [4]** 9/23 20/18 20/23 21/6
**requires [3]** 17/2 21/3 21/10
**respect [1]** 8/4
**respond [2]** 9/4 13/21
**result [4]** 15/15 15/21 16/2 16/8
**resulted [1]** 18/10
**retroactive [3]** 11/15 13/25 14/12
**retroactively [1]** 11/12
**retroactivity [2]** 11/20 14/2
**revised [2]** 22/18 23/14
**RICO [3]** 14/25 14/25 15/3
**ridiculous [1]** 16/1
**right [23]** 7/4 8/22 9/3 9/19 9/23 11/15 13/20 14/10 15/15 15/17 15/18 15/20 15/25 17/6 17/23 18/6 18/24 19/24 20/3 20/15 22/3 23/2 23/12
**RMR [2]** 2/18 24/10
**Room [1]** 2/19
**rubric [2]** 4/5 4/5
**ruling [1]** 21/2
**run [2]** 6/4 14/19
**running [1]** 23/2

**same [3]** 8/8 19/15 21/24
**sanctions [1]** 20/12
**sand [2]** 22/1
**satisfied [3]** 7/7 20/5 21/6
**satisfies [2]** 7/16 21/8
**satisfy [1]** 22/5
**satisfying [1]** 22/1
**say [9]** 4/1 4/23 15/1 15/2 15/6
15/17 18/21 19/25 21/4
**saying [5]** 8/14 13/4 15/20
15/22 17/7
**says [3]** 12/8 12/21 12/23
**seated [1]** 3/19
**Seattle [1]** 2/14
**second [4]** 4/14 4/20 5/13 14/3
**section [36]**
**see [6]** 15/8 16/4 16/4 18/21
18/22 22/18
**seek [1]** 6/15
**seeks [2]** 4/15 6/16
**seen [1]** 10/1
**sense [1]** 16/6
**sentence [1]** 14/3
**sentences [1]** 14/8
**separate [2]** 7/19 14/8
**separated [1]** 5/12
**service [7]** 4/11 4/25 5/6 5/11
6/14 22/14 22/19
**set [3]** 20/7 21/4 23/5
**sets [1]** 20/4
**setting [1]** 6/25
**several [2]** 14/1 16/6
**sex [1]** 12/1
**shall [4]** 12/9 12/21 13/7 13/12
**shield [1]** 5/6
**should [1]** 21/19
**show [3]** 3/25 15/10 15/12
**showing [2]** 19/20 20/5
**shumway [4]** 2/18 2/20 24/9
24/10
**side [2]** 7/1 12/14
**sides [1]** 23/11
**signature [2]** 24/7 24/7
**signing [1]** 24/4
**silly [1]** 16/9
**similar [2]** 19/8 19/10
**simply [1]** 6/16
**since [5]** 4/19 6/4 12/17 16/12
18/12
**situation [2]** 8/23 20/9
**small [1]** 20/22
**Snap [6]** 5/14 6/10 6/12 7/6 7/6
9/7

**sole [1]** 5/22
**some [9]** 3/25 5/2 5/18 11/19
16/1 20/22 22/21 22/22 23/4
**someone [1]** 4/14
**something [5]** 11/6 13/25
17/12 19/8 21/4
**sometimes [1]** 15/15
**somewhere [1]** 19/22
**soon [2]** 19/22 23/13
**sorry [1]** 8/16
**sort [13]** 3/25 5/2 5/18 5/22 6/4
8/12 11/23 12/2 12/13 14/17
14/21 15/7 19/25
**sorts [1]** 4/24
**South [1]** 2/14
**speaker [2]** 4/16 4/21
**special [2]** 22/14 22/20
**specific [10]** 6/7 16/24 17/2
17/22 19/4 19/15 19/15 19/16
19/20 20/13
**specifically [2]** 16/17 20/2
**Stacia [2]** 2/12 3/14
**standard [1]** 15/14
**standing [2]** 22/17 23/2
**stands [1]** 6/12
**start [3]** 6/5 16/11 19/22
**starts [1]** 13/4
**state [3]** 3/7 15/2 22/11
**STATES [3]** 1/1 1/17 2/18
**stating [1]** 12/15
**statute [4]** 12/16 12/25 14/11
18/8
**stay [2]** 3/18 18/16
**step [1]** 8/13
**stepping [1]** 11/1
**stop [1]** 10/4
**straightforward [2]** 10/19
12/10
**strangers [2]** 9/11 9/11
**strayed [1]** 15/21
**Street [2]** 2/5 2/9
**subgroup [1]** 4/3
**subgroups [1]** 4/2
**subject [1]** 20/12
**submit [1]** 18/5
**subreference [1]** 14/18
**subsection [4]** 12/11 13/11
13/12 13/14
**such [2]** 12/23 22/12
**sue [1]** 14/18
**suffice [1]** 19/7
**sufficient [1]** 18/19
**suggested [1]** 7/2
**suggesting [3]** 8/17 16/12

**suing [10]** 4/21 5/7 5/10 5/18
8/13 10/12 10/15 10/15 10/21
10/25
**Suite [2]** 2/9 2/14
**superficially [1]** 15/15
**supervise [3]** 5/24 6/16 11/5
**supplied [1]** 12/20
**support [1]** 11/24
**Sure [1]** 9/5
**survive [1]** 18/19

**T**

**take [5]** 7/7 7/10 12/11 13/7
22/6
**takes [1]** 6/18
**talk [2]** 9/11 16/10
**tap [1]** 9/24
**tell [1]** 13/24
**telling [2]** 14/3 22/3
**tentative [8]** 3/22 3/24 5/21 6/1
6/3 6/4 6/8 20/16
**terms [2]** 22/14 22/19
**text [8]** 11/21 11/21 12/15
12/16 15/22 15/22 16/7 16/9
**textual [4]** 11/19 15/14 15/16
15/24
**textually [1]** 16/8
**than [7]** 6/2 7/8 14/9 16/15
17/12 18/22 19/5
**thank [11]** 3/17 3/21 6/6 9/3
10/4 13/20 14/10 17/23 18/24
20/15 23/16
**that [160]**
**that's [22]** 5/12 6/1 6/1 6/22
6/25 8/3 10/16 11/7 11/15 12/9
12/10 13/8 15/15 15/21 16/8
17/1 17/4 17/15 17/16 18/2
18/16 18/20
**their [6]** 5/10 6/17 12/20 20/12
21/17 21/23
**them [6]** 5/6 5/7 5/10 6/16 7/15
20/14
**then [16]** 3/23 4/21 5/5 6/18
8/13 10/17 10/21 11/1 13/10
14/25 15/3 15/8 15/21 17/9
18/4 21/11
**there [25]**
**there's [13]** 4/12 9/7 9/16 9/17
9/23 10/2 10/9 13/18 14/2
15/23 22/11 22/14 23/7
**therefore [1]** 16/13
**these [6]** 4/2 7/24 8/23 14/23
19/13 20/11
**they [9]** 4/4 4/6 5/2 11/21 17/6

# T

**they...** [4]  20/13 20/13 20/23 21/23
**they're** [4]  7/14 12/24 17/6 20/21
**thing** [3]  6/22 14/24 15/9
**things** [3]  5/25 8/8 15/4
**think** [22]  4/10 5/21 6/11 6/21 7/1 7/18 7/23 9/6 10/13 11/4 11/22 13/1 13/17 13/22 14/11 15/14 17/4 17/13 18/20 21/25 22/16 23/6
**thinking** [2]  15/16 20/8
**third** [6]  2/19 4/17 4/18 8/1 8/21 9/18
**third-party** [2]  8/1 8/21
**this** [56]
**those** [7]  4/4 8/8 9/1 9/13 20/21 22/6 23/9
**thought** [6]  3/21 13/8 13/10 17/17 21/13 22/22
**thoughts** [7]  3/22 6/3 6/4 6/9 13/2 16/15 20/17
**three** [3]  4/10 14/14 18/2
**through** [6]  4/3 5/12 10/7 18/8 18/9 22/16
**tied** [1]  20/21
**time** [2]  9/20 9/25
**today** [2]  3/4 23/15
**took** [1]  14/7
**trafficking** [1]  12/1
**training** [1]  3/18
**transcript** [3]  1/15 24/5 24/6
**treat** [1]  4/15
**true** [6]  7/11 7/11 8/8 8/14 8/18 21/24
**try** [2]  21/9 22/5
**trying** [2]  5/1 13/3
**turn** [2]  13/10 16/12
**Twitter** [12]  7/23 8/18 9/12 15/13 16/3 17/18 17/20 18/4 19/16 19/16 19/19 19/24
**Twitter's** [1]  19/17
**two** [11]  4/6 4/7 12/5 12/15 13/2 16/10 20/21 22/13 22/14 22/25 23/14
**types** [1]  14/6
**typically** [2]  11/14 14/23

# U

**U.S.C** [1]  11/9
**ultimately** [2]  9/15 18/10
**uncommon** [1]  15/8
**under** [9]  4/5 4/15 5/1 11/9

14/13 14/17 14/18 15/10 15/11
**underlying** [1]  14/20
**understand** [1]  3/23
**unilaterally** [1]  11/6
**UNITED** [3]  1/1 1/17 2/18
**up** [6]  4/23 15/13 20/21 22/6 22/17 23/2
**uploaded** [1]  9/21
**us** [5]  12/1 12/12 12/23 13/25 14/3
**use** [1]  15/6
**used** [1]  16/19
**useful** [1]  7/8
**user** [1]  4/11
**users** [8]  7/9 8/24 9/14 10/3 21/17 21/21 21/22 21/23
**using** [2]  8/24 21/18
**usually** [1]  13/24

# V

**Venkat** [2]  2/13 3/12
**venture** [6]  16/11 19/8 20/1 20/20 20/25 21/10
**verification** [1]  21/18
**version** [1]  22/18
**versus** [1]  3/5
**very** [12]  3/17 8/22 8/25 10/9 13/20 14/10 16/10 16/18 18/3 18/5 19/11 19/22
**victim** [3]  19/20 20/3 21/7
**victim's** [2]  20/6 20/10
**victims** [2]  19/23 21/24
**view** [7]  10/6 10/17 10/20 15/20 20/16 20/18 21/5
**views** [1]  6/2
**violate** [2]  15/11 15/12
**violation** [1]  14/20
**violent** [1]  15/2
**Vogt** [1]  2/8

# W

**WA** [1]  2/14
**wait** [1]  23/12
**waiting** [1]  18/23
**waits** [1]  18/13
**walking** [2]  18/8 18/8
**want** [1]  3/24
**warn** [2]  8/5 20/13
**warning** [8]  4/8 5/25 7/20 8/13 10/21 10/22 10/24 11/1
**warnings** [10]  5/19 6/17 7/10 7/12 7/13 7/14 7/15 7/19 8/10 10/16
**warranted** [1]  18/16
**was** [14]  7/22 8/24 9/9 9/10

9/10 9/11 9/12 9/11 11/25 16/24 17/14 17/17 18/7 18/9
**wasn't** [1]  8/21
**way** [16]  4/9 7/2 7/15 8/3 11/3 11/23 14/25 15/23 15/24 16/1 16/9 18/4 18/11 21/2 21/18 21/22
**ways** [1]  10/22
**we** [13]  3/4 5/2 6/19 13/10 15/17 16/16 16/18 16/22 18/2 18/5 18/10 21/11 22/25
**we'll** [2]  22/6 23/17
**we're** [6]  3/23 3/25 17/20 18/12 22/21 23/2
**website** [1]  19/9 20/11
**weeks** [2]  22/25 23/14
**well** [10]  4/6 6/10 7/18 8/2 9/20 13/1 15/15 15/19 18/20 19/21
**went** [1]  18/4
**were** [9]  7/13 14/6 14/8 19/17 19/17 20/12 20/13 21/21 23/4
**what** [32]
**what's** [4]  7/16 10/16 16/8 19/14
**when** [7]  4/14 6/19 13/25 13/25 14/23 15/8 22/1
**where** [14]  3/23 4/22 6/1 6/24 9/14 10/2 10/14 10/14 12/4 17/21 19/9 19/10 20/9 21/5
**whereas** [2]  8/25 14/6
**whether** [8]  9/18 12/21 14/5 18/15 18/18 19/7 21/2 21/8
**which** [20]  5/22 7/1 7/6 7/20 7/24 7/24 10/7 11/9 11/10 11/22 12/12 12/25 13/2 13/11 15/14 18/4 18/6 18/9 19/10 20/4
**while** [1]  20/8
**who** [8]  4/15 7/21 7/21 7/22 8/5 8/6 8/7 8/11
**whole** [3]  8/9 14/24 15/9
**wholesale** [1]  16/4
**why** [8]  5/12 7/11 7/11 7/14 7/19 8/14 8/17 18/2
**will** [5]  10/24 10/24 15/1 21/4 23/11
**willful** [1]  21/20
**wins** [1]  12/16
**wish** [3]  9/4 13/21 17/24
**wishful** [1]  15/16
**within** [2]  12/24 18/16
**without** [12]  6/23 7/3 7/8 7/12 7/16 9/1 20/5 20/24 21/6 22/15 22/23 24/6
**word** [1]  3/24

**W**

**words [5]** 8/14 11/3 15/10
19/14 20/3
**work [1]** 7/15
**work: [1]** 9/10
**work: to [1]** 9/10
**working [1]** 9/10
**works [1]** 15/25
**would [19]** 3/23 6/7 6/23 8/8
8/10 11/5 11/24 15/11 15/12
16/6 17/7 17/10 17/13 17/25
18/5 19/1 19/5 19/6 21/22
**wouldn't [3]** 5/6 12/1 12/4
**wrong [1]** 22/14

**Y**

**year [1]** 18/22
**yes [6]** 4/13 5/21 6/19 17/20
21/12 21/15
**yet [1]** 13/18
**you [88]**
**you know [1]** 6/23
**you're [16]** 5/7 8/12 8/14 8/17
9/24 10/21 10/25 11/1 13/1
13/4 15/4 15/20 15/22 19/7
22/3 22/5
**you've [3]** 15/1 15/21 16/15
**your [20]** 3/7 3/18 6/3 6/6 6/8
6/25 7/1 16/20 17/2 17/11
17/17 17/17 17/19 18/25 19/1
21/13 22/25 23/4 23/11 23/16