Venkat Balasubramani, OSB #180446
venkat@focallaw.com
Stacia N. Lay, WSBA #30594 (*Pro Hac Vice*)
stacia@focallaw.com
Kimberlee Gunning, WSBA #35366 (*Pro Hac Vice*)
kim@focallaw.com
**FOCAL PLLC**
900 1st Avenue S., Suite 201
Seattle, Washington 98134
Telephone: (206) 529-4827

Clifford S. Davidson, OSB #125378
csdavidson@swlaw.com
**SNELL & WILMER, LLP**
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
Telephone: (503) 624-6800

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

|  |  |
|---|---|
| A.M., an individual, | Case No. 3:21-cv-01674-MO |
| Plaintiff, | |
| v. | **DEFENDANT OMEGLE.COM LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| OMEGLE.COM LLC, | |
| Defendant. | |

# TABLE OF CONTENTS

L.R. 7-1(a) Certification ..................................................................................... 1

MOTION........................................................................................................... 1

FACTUAL ALLEGATIONS .............................................................................. 2

DISCUSSION ................................................................................................... 3

I.    Rule 12(b)(6) And Plaintiff's FAC ............................................................. 3

    A.    Standard for Rule 12(b)(6) dismissal ..................................................... 3

    B.    The Rule 12(b)(6) motion to dismiss the FAC should be considered in its
          entirety notwithstanding Rule 12(g)(2)..................................................... 4

II.   The Amended TVPA Claim Fails To State A Plausible Claim For Relief........................ 7

    A.    The TVPA claim is still barred by Section 230 absent an exception..................... 7

    B.    The FAC fails to plausibly allege that Omegle knowingly violated § 1591......... 11

        1.    The FAC relies solely on generalized knowledge of prior unrelated
              incidents of alleged misuse of Omegle's chat service ............................. 11

        2.    Even under the more lenient constructive knowledge standard of
              § 1595, the TVPA claim fails ................................................................. 16

III.  Plaintiff's Product Liability Claims Should Be Dismissed As A Matter of Law ............ 22

    A.    The FAC does not plausibly allege that Omegle's online chat service is a
          "product" for purposes of Oregon's product liability law ................................... 23

    B.    Alternatively, the FAC has not plausibly alleged the physical harm
          required to recover the damages sought in the Product Liability Claims ............ 25

IV.   Dismissal Should Be With Prejudice As Any Amendment Would Be Futile ................. 29

CONCLUSION................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921 (D. Or. 2020) ..........................16, 17

*A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018 (D. Or. 2021) ...........................17

*Andersen v. Atl. Recording Corp.*, No. 07-CV-934-BR,
  2010 U.S. Dist. LEXIS 122743 (D. Or. Nov. 18, 2010) .....................................................27

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................3, 12

*Ass'n of Unit Owners of Bridgeview Condos. v. Dunning*,
  187 Or. App. 595, 69 P.3d 788 (2003) ..........................................................................23, 24

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................3

*Black v. Google Inc.*, No. 10-02381 CW,
  2010 U.S. Dist. LEXIS 82905 (N.D. Cal. Aug. 13, 2010) ..................................................9

*Bortz v. JPMorgan Chase Bank, N.A.*, No. 21-CV-618 TWR (DEB),
  2022 U.S. Dist. LEXIS 85070 (S.D. Cal. May 10, 2022) ..................................................29

*Cochran v. Burlington Coat Factory of Or., LLC*, No. 10-CV-6016-TC,
  2010 U.S. Dist. LEXIS 101268 (D. Or. Aug. 25, 2010) ....................................................26

*Daniel v. Armslist, LLC*, 926 N.W.2d 710 (Wis. 2019) ....................................................9

*Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242 (S.D. Fla. 2020) ....................................10, 11

*Doe v. MySpace Inc.*, 528 F.3d 413 (5th Cir. 2008) .........................................................9

*Doe v. Reddit, Inc.*, No. SACV 21-00768 JVS (KESx),
  2021 U.S. Dist. LEXIS 235993 (C.D. Cal. Oct. 7, 2021) ..................................................10

*Doe v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021) .....................................19, 20

*Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889 (N.D. Cal. 2021) .............................................15

*Doe v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016,
  2021 U.S. Dist. LEXIS 64565 (S.D. Tex. Mar. 30, 2021) ....................................17, 18, 20

*Dyroff v. Ultimate Software Group, Inc.*, No. 17-cv-05359-LB,
  2017 U.S. Dist. LEXIS 194524 (N.D. Cal. Nov. 26, 2017) ...............................................8, 9

*Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971 (D. Or. 2016) ........................................ 3

*E.S. v. Best Western Int'l, Inc.*, 510 F. Supp. 3d 420 (N.D. Tex. 2021) ........................................ 17

*Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116 (N.D. Cal. 2016) ........................................ 9

*Flynn v. Love*, No. 3:19-cv-00239-MMD-CLB,
    2021 U.S. Dist. LEXIS 60807 (D. Nev. Mar. 30, 2021) .................................................... 6

*Gartner v. United States*, No. 6:16-cv-01680-JR,
    2017 U.S. Dist. LEXIS 29015 (D. Or. Feb. 15, 2017) .................................................... 27, 28

*G.G. v. Salesforce.com, Inc.*, No. 20-cv-02335,
    2022 U.S. Dist. LEXIS 87616 (N.D. Ill. May 16, 2022) ........................................... passim

*Herrick v. Grindr LLC*, 765 F. App'x 586 (2d Cir. 2019) ............................................ 9

*H.G. v. Inter-Continental Hotels Corp.*, 489 F. Supp. 3d 697 (E.D. Mich. 2020) .................. 17, 18

*Holloway v. Clackamas River Water*, No. 3:13-cv-01787-AC,
    2020 U.S. Dist. LEXIS 166655 (D. Or. Apr. 24, 2020) .................................................... 5

*Intellect Art Multimedia, Inc. v. Milewski*, 899 N.Y.S.2d 60,
    2009 N.Y. Misc. LEXIS 2325 (N.Y. Sup. Ct. 2009) .................................................... 25

*James v. Meow Media, Inc.*, 300 F.3d 683 (6th Cir. 2002) ............................................ 25

*J.B. v G6 Hosp., LLC*, No. 19-cv-07848-HSG,
    2021 U.S. Dist. LEXIS 170338 (N.D. Cal. Sept. 8, 2021) ................................................ 11

*J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO,
    2020 U.S. Dist. LEXIS 201073 (N.D. Cal. Oct. 28, 2020) ................................................ 19

*J.L. v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048 (D. Colo. 2021) ........................................ 18

*Kambury v. Daimlerchrysler Corp.*, 185 Or. App. 635, 60 P.3d 1103 (2003) .............................. 22

*Kent v. Shiley, Inc.*, No. 87-6554-E,
    1989 U.S. Dist. LEXIS 8962 (D. Or. Jan. 24, 1989) .................................................... 26, 27

*Lowe v. Philip Morris USA, Inc.*, 207 Or. App. 532, 142 P.3d 1079 (2006) ................................ 27

*Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-00619-PAB-SKC,
    2021 U.S. Dist. LEXIS 228651 (D. Colo. Nov. 30, 2021) ................................................ 18

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019) ........................ 18

*Mason v. Mt. St. Joseph, Inc.*, 226 Or. App. 392, 203 P.3d 329 (2009) ........................................26

*M.H. v. Omegle.com LLC*, No. 8:21-cv-814-VMC-TGW,
2022 U.S. Dist. LEXIS 4543 (M.D. Fla. Jan. 10, 2022) ............................................ passim

*Nat'l City Bank, N.A. v. Prime Lending, Inc.*, No. CV-10-034-EFS,
2010 U.S. Dist. LEXIS 85888 (E.D. Wash. July 19, 2010) ................................................. 6

*Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018) ....................................................13, 15

*Pepper v. Apple Inc.*, 846 F.3d 313 (9th Cir. 2017) ....................................................................5, 6

*Reddy v. Litton Indus., Inc.*, 912 F.2d 291 (9th Cir. 1990) ............................................................29

*Reflex Media, Inc. v. Luxy Ltd.*, No. 2:20-cv-00423-RGK-KS,
2021 U.S. Dist. LEXIS 174980 (C.D. Cal. July 13, 2021) ............................................5, 6

*Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017) ..........................................................................19

*Russell v. Samec*, No. 2:20-cv-00263-RSM-JRC,
2020 U.S. Dist. LEXIS 176919 (W.D. Wash. Sept. 2, 2020) ............................................ 5

*Sease v. Taylor's Pets, Inc.*, 74 Or. App. 110, 700 P.2d 1054 (1985) ....................................24, 26

*Shannon v. Bayview Loan Servicing LLC*, No. 3:16-CV-1016-MO,
2018 U.S. Dist. LEXIS 66686 (D. Or. Apr. 20, 2018) ......................................................29

*S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147 (E.D.N.Y. 2020) ........................................21

*Smith v. Ethicon Inc.*, No. 3:20-cv-00851-AC,
2021 U.S. Dist. LEXIS 152495 (D. Or. May 13, 2021) ....................................................22

*Streit v. Matrix Absence Mgmt., Inc.*, No. 3:12-cv-01797-AC,
2014 U.S. Dist. LEXIS 20440 (D. Or. Feb. 18, 2014) ......................................................30

*United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016) ..........................................................13

*Watts v. Rubber Tree, Inc.*, 118 Or. App. 557, 848 P.2d 1210 (1993) ...........................................23

*Whitaker v. Mind Games, LLC*, No. 2:20-cv-11794-RSWL-MRWx,
2022 U.S. Dist. LEXIS 68778 (C.D. Cal. Apr. 13, 2022) .................................................30

## **Statutes and Rules**

18 U.S.C. § 1591.......................................................................................................... passim

18 U.S.C. § 1591(a) ....................................................................................................11

18 U.S.C. § 1591(a)(1) ..............................................................................................13

18 U.S.C. § 1591(a)(2) ..................................................................................13, 14, 15

18 U.S.C. § 1591(e)(4) ..............................................................................................11

18 U.S.C. § 1595 ..................................................................................................16, 21

18 U.S.C. § 1595(a) ............................................................................................passim

47 U.S.C. § 230 ..................................................................................................passim

47 U.S.C. § 230(e)(5)(A) ...............................................................................7, 11, 15

FED. R. CIV. P. 8(a)(2) ................................................................................................3

FED. R. CIV. P. 12(b)(6) ....................................................................................1, 3, 5

FED. R. CIV. P. 12(c) ......................................................................................4, 5, 6

FED. R. CIV. P. 12(g)(2) ......................................................................................passim

FED. R. CIV. P. 12(h)(2) ....................................................................................4, 5, 6

FED. R. CIV. P. 12(h)(2)(A) ........................................................................................4

FED. R. CIV. P. 12(h)(2)(B) ........................................................................................4

FED. R. CIV. P. 12(h)(2)(C) ........................................................................................4

FED. R. CIV. P. 12(h)(3) ............................................................................................4

ORS 30.900 ........................................................................................................passim

ORS 30.920 ..................................................................................................23, 26

ORS 30.920(1) ..............................................................................................23, 25

ORS 30.920(3) ........................................................................................................24

ORS 30.920(4) ........................................................................................................27

**<u>Other Authority</u>**

*Black's Law Dictionary* 215 (5th ed. 1981) ....................................................................24

RESTATEMENT (SECOND) OF TORTS § 402A ....................................................................24

RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 19........................................24

## L.R. 7-1(a) Certification

In compliance with Local Rule 7-1(a), undersigned counsel for Defendant Omegle.com LLC certifies that they conferred in good faith with Plaintiff's counsel via telephone conference prior to filing this Motion but the parties were unable to agree on the issues raised herein.

## MOTION

In this Motion, Defendant Omegle.com LLC ("Omegle") seeks dismissal of Plaintiff A.M.'s First Amended Complaint ("FAC") in its entirety for failure to state a claim upon which relief may be granted pursuant to FED. R. CIV. P. 12(b)(6). Furthermore, because any amendment would be futile, Omegle respectfully requests that dismissal be without leave to amend.

## MEMORANDUM OF LAW

As the Court held on Omegle's first motion to dismiss, to state a civil sex trafficking claim that is excluded from Section 230's bar, Plaintiff must satisfy the actual knowledge standard of Section 1591. However, the amendments to that claim in the FAC – which consist of general "upon information and belief" allegations that do not pertain to Plaintiff's alleged trafficking by Fordyce – fall far short of that knowledge standard. Additionally, in furtherance of the Federal Rules of Civil Procedure's goal of just, speedy, and efficient determination of civil actions, Omegle respectfully submits that the Court should reach the legal challenges to Plaintiff's product liability claims – the first four claims in the FAC. Those claims are subject to dismissal as a matter of law on at least two independent grounds: (1) Omegle's online chat service – made available via its website – is not a "product" under Oregon product liability law; and (2) the FAC does not plausibly allege the "physical harm" required to hold Omegle liable under Plaintiff's product liability claims. Moreover, because any further amendment of

Plaintiff's claims would be futile, Omegle respectfully requests that the FAC be dismissed in its entirety with prejudice.

## FACTUAL ALLEGATIONS

The FAC alleges that "[i]n or about 2014," Plaintiff – who was 11 years old and living in Michigan – used Omegle's online text chat service to chat with another user, who was later identified as Ryan Fordyce, for 15 minutes. (Dkt. 29 at ¶¶ 7, 39, 41.) Plaintiff alleges she had previously used Omegle's chat service "to have age-appropriate video chats at sleepovers." (Id. at ¶ 39.) The FAC alleges that during the chat, Fordyce asked for, and Plaintiff apparently provided, "her contact information" so they could be in contact after the chat on Omegle's website ended. (Id. at ¶ 42.) The FAC alleges that after the chat, Fordyce induced Plaintiff to send him photos of herself, including various parts of her body. (Id. at ¶¶ 43, 46.) The FAC does not allege that this later interaction occurred on Omegle's website. The FAC further alleges that Omegle "factor[ed] heavily into the abuse" perpetrated by Fordyce, including by Fordyce forcing Plaintiff "to go onto Omegle to recruit other children for him to exploit." (Id. at ¶ 48.) The FAC alleges that Fordyce "abuse[d] and traffick[ed]" Plaintiff "between the ages of eleven and fifteen." (Id. at ¶ 49.) But on January 12, 2018, when Plaintiff was 15, Canadian law enforcement contacted Plaintiff's parents, notifying them that they had raided Fordyce's home and recovered numerous files of child pornography, including images and videos of Plaintiff. (Id. at ¶ 50.) The FAC alleges that Fordyce pled guilty to possession of child pornography and is awaiting sentencing.[1] (Id. at ¶¶ 11, 51.)

---

[1] According to public news reports, Fordyce has since been sentenced to prison. *See* https://www.brandonsun.com/local/eight-and-a-half-year-sentence-575894042.html (last visited May 10, 2022).

MOTION TO DISMISS THE FAC            2

**DISCUSSION**

I.    **Rule 12(b)(6) And Plaintiff's FAC**

A.    **Standard for Rule 12(b)(6) dismissal**

Although FED. R. CIV. P. 8(a)(2) only requires that a pleading provide a "short and plain statement of the claim showing that the pleader is entitled to relief," that standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). *See also Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 974-75 (D. Or. 2016) (noting that the complaint must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation") (internal quotation marks omitted).

A complaint has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. But no such assumption of veracity applies to legal conclusions nor must a court "credit a complaint's conclusory statements without reference to its factual context." *Id.* at 678, 686; *see also Egbukichi*, 184 F. Supp. 3d at 974. Moreover, a complaint that merely contains "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is subject to dismissal. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B.    The Rule 12(b)(6) motion to dismiss the FAC should be considered in its entirety notwithstanding Rule 12(g)(2)

There is no dispute that this motion to dismiss Plaintiff's sex trafficking claim under the Trafficking Victims Protection Act ("TVPA")[2] is appropriately considered in light of the Court's dismissal and Plaintiff's attempted amendment of that claim. However, as this issue was discussed in the parties' meet and confer, to the extent Plaintiff maintains the argument that the Court should refuse to consider Omegle's motion with respect to the FAC's first four claims (the product liability claims) based on FED. R. CIV. P. 12(g)(2), Omegle submits that consideration of the motion in its entirety would further the Federal Rules of Civil Procedure's goal of the just, speedy, and efficient determination of this action.

Rule 12(g)(2) provides that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." FED. R. CIV. P. 12(g)(2). As relevant here, Rule 12(h)(2) provides that a failure to state a claim upon which relief can be granted challenge may be raised "in any pleading . . . under Rule 7(a)," "by a motion under Rule 12(c)," or at trial. FED. R. CIV. P. 12(h)(2)(A)-(C).

Although Rule 12(g)(2) uses prohibitive language regarding successive motions to dismiss in certain circumstances, the Ninth Circuit has cautioned against rigid adherence to the rule:

> We read Rule 12(g)(2) in light of the general policy of the Federal Rules of Civil Procedure, expressed in Rule 1. That rule directs that the Federal Rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Denying late-filed Rule 12(b)(6) motions and relegating defendants

---

[2] The TVPA is sometimes referred to as the Trafficking Victims Protection Reauthorization Act or the TVPRA.

to the three procedural avenues specified in Rule 12(h)(2) can produce
unnecessary and costly delays, contrary to the direction of Rule 1.

*Pepper v. Apple Inc.*, 846 F.3d 313, 318 (9th Cir. 2017), *aff'd*, 139 S. Ct. 1514 (2019).

This District, as well as its sister district courts, have heeded the Ninth Circuit's counsel

that Rule 12(g)(2) should be applied with due consideration to the Federal Rules of Civil

Procedure's goal of "just, speedy, and inexpensive determination" of cases. For example, in

*Holloway v. Clackamas River Water*, the court considered defendants' Rule 12(b)(6) motion

based on the statute of limitations despite the fact that defendants did not raise the issue in their

prior motion to dismiss. No. 3:13-cv-01787-AC, 2020 U.S. Dist. LEXIS 166655, *41 (D. Or.

Apr. 24, 2020), *findings & recommendations adopted by* 2020 U.S. Dist. LEXIS 165673 (D. Or.

Sept. 10, 2020). The court recognized the inefficiency consideration identified by the Ninth

Circuit in "requiring a defendant to file an answer admitting the allegations of the complaint and

then file a motion for judgment on the pleadings under Rule 12(c), when the same result would

occur if the court accepted the allegations of the complaint as true in considering the second

Rule 12(b)(6) motion[.]" *Id.* at *40-41.

In similar circumstances, other district courts in the Ninth Circuit have found that

consideration of "late" or successive motions to dismiss furthered judicial efficiency. *See, e.g.*,

*Reflex Media, Inc. v. Luxy Ltd.*, No. 2:20-cv-00423-RGK-KS, 2021 U.S. Dist. LEXIS 174980,

*4-5 (C.D. Cal. July 13, 2021) (concluding that "strict application of Rule 12(h)(2) would

produce unnecessary delay" as the defendant "would just have to answer and then move for

judgment on the pleadings"); *Russell v. Samec*, No. 2:20-cv-00263-RSM-JRC, 2020 U.S. Dist.

LEXIS 176919, *5-6 (W.D. Wash. Sept. 2, 2020) (considering second motion to dismiss where

no prejudice to plaintiff and defendant could "simply bring the same argument under Rule 12(c)

or at some later time"), *report & recommendation adopted by* 2020 U.S. Dist. LEXIS 175793

MOTION TO DISMISS THE FAC          5

(W.D. Wash. Sept. 24, 2020); *Nat'l City Bank, N.A. v. Prime Lending, Inc.*, No. CV-10-034-EFS, 2010 U.S. Dist. LEXIS 85888, *5-6 (E.D. Wash. July 19, 2010) (considering second motion to dismiss and "declin[ing] to pass on this opportunity to narrow the issues because Defendants are entitled to raise these defenses even if they already filed a motion to dismiss").

Here, assuming arguendo that the challenges to the FAC's first four claims fall within Rule 12(g)(2), the Court should exercise its discretion to consider those issues as doing so furthers the efficiency considerations identified by the Ninth Circuit in *Pepper*. For example, given the dismissal and subsequent amendment of the fifth claim under the TVPA, there is no dispute that Rule 12(g)(2) does not apply to Omegle's present challenge to that amended claim in this Motion. As a result, because the Court must consider that challenge to the FAC, it is most efficient to consider challenges to the FAC's first four claims at the same time. Comprehensively considering all of these challenges to the FAC at one time is much more likely to streamline the resolution of the claims in this case. In contrast, strictly applying Rule 12(g)(2) would likely result in piecemeal consideration of these issues should Omegle be required to answer the FAC's first four claims and then raise the identical challenges to those claims – subject to an identical standard of review – via a motion for judgment on the pleadings under Rule 12(c). *See Flynn v. Love*, No. 3:19-cv-00239-MMD-CLB, 2021 U.S. Dist. LEXIS 60807, *15 (D. Nev. Mar. 30, 2021) ("A strict application of Rule 12(g)(2) would merely delay the issues raised in Defendants' motion to dismiss to be reargued at a later date under Rule 12(h)(2)."); *Reflex Media*, 2021 U.S. Dist. LEXIS 174980 at *5 (stating in similar circumstances that the court saw "no need for Defendant to jump through an extra procedural hurdle to end up in the same place").

Nor is there any indication of prejudice to Plaintiff if the Court were to consider all challenges to the FAC now rather than carving out certain issues to be decided under the same

standard at a later time. This case is still in its very early stages; the deadline for the parties'

Rule 26(f) conference is more than a month away and therefore discovery has not begun, the

discovery deadline itself is not until January 3, 2023, and the deadline to amend the pleadings is

several months away (September 30, 2022). Moreover, addressing all the challenges to the FAC

at a single time is equally beneficial to Plaintiff from an efficiency standpoint.

 For these reasons, to the extent the Court finds that Omegle's challenges to the FAC's

first four claims fall within Rule 12(g)(2), Omegle respectfully submits that the speedy and

efficient determination of this action supports the consideration of Omegle's present Motion in

its entirety at this time.

## II. The Amended TVPA Claim Fails To State A Plausible Claim For Relief

 Notwithstanding an opportunity to amend her complaint, Plaintiff fails to offer any well-

pled factual allegations giving rise to a reasonable inference that Omegle knowingly violated

18 U.S.C. § 1591. Instead, the FAC again proffers only general knowledge of unrelated prior

incidents involving alleged misuse of Omegle's chat service by users. But such general

knowledge is insufficient to state a claim under the TVPA that would escape Section 230

immunity. Indeed, the allegations in the FAC are insufficient to state a claim even if Section 230

did not apply and the lower knowledge standard of Section 1595(a) governed. As a result,

Plaintiff's TVPA claim does not fall within the narrow carveout from CDA immunity in

Section 230(e)(5)(A) and should be dismissed.

### A. The TVPA claim is still barred by Section 230 absent an exception

 As an initial matter, Plaintiff's amendments to the original complaint do not alter the

conclusion that Section 230 bars the TVPA claim absent an applicable exception, namely,

Section 230(e)(5)(A). The allegations in the FAC with respect to the TVPA claim – as well as

most if not all of the other allegations in the FAC – remain focused on the content of, and the use and alleged misuse of Omegle's chat service by, users. Thus, the TVPA claim seeks to hold Omegle liable as the publisher or speaker of the content of, and misuse of its service by, a user, specifically, Fordyce.

The FAC's core allegations, including those on which the TVPA claim are based, again focus on assertions that Omegle failed to: (1) adequately act as gatekeeper with respect to who may use its chat service to communicate with other users; (2) enforce its policies against users who misuse its service; and (3) implement safety measures that allegedly would have prevented Fordyce's communications with Plaintiff. (*See, e.g.*, Dkt. 29 at ¶¶ 21, 29, 35-38, 72, 74, 79-82, 86-87, 99, 105, 107-109.) For example, the allegations focus on the users of Omegle's chat service, including allegations that users are anonymous to one another and are not required to create an account to use the service (id. at ¶¶ 21-22, 27, 79); that some users are allegedly children whose ages are not verified (id. at ¶¶ 27, 29, 79-80); that some users have misused the chat service to allegedly create CSAM (id. at ¶¶ 26, 29, 33, 79-82, 107); and that Fordyce misused the chat service with respect to Plaintiff (id. at ¶¶ 39-42, 48, 51-52, 109). Similarly, the FAC's allegations of Omegle's alleged conduct speak to its role as an editorial decisionmaker with respect to who can communicate using its service, its monitoring of users and enforcement actions against those who misuse the chat service, and safety measures to address users who cause harm to other users. (*See, e.g.*, id. at ¶¶ 21-22, 26-29, 37-38, 79-82, 105, 107.)

As demonstrated in Omegle's motion to dismiss the original complaint – the allegations of which are largely repeated in the FAC – courts have consistently held that similar allegations implicate editorial decisions or neutral tools that can be used for lawful or unlawful purposes, both of which are protected by Section 230. *See, e.g.*, *Dyroff v. Ultimate Software Grp., Inc.*,

MOTION TO DISMISS THE FAC                  8

No. 17-cv-05359-LB, 2017 U.S. Dist. LEXIS 194524, *28-29 (N.D. Cal. Nov. 26, 2017) (website's "policy about anonymity" and neutral tools that facilitated user communications "may have allowed illegal conduct" but were shielded by Section 230), *aff'd*, 934 F.3d 1093 (9th Cir. 2019); *Doe v. MySpace Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (allegations that MySpace failed "to implement measures that would have prevented [plaintiff] from communicating" with the user who assaulted her was "merely another way of claiming that MySpace was liable for publishing the communications"); *M.H. v. Omegle.com LLC*, No. 8:21-cv-814-VMC-TGW, 2022 U.S. Dist. LEXIS 4543, *13 (M.D. Fla. Jan. 10, 2022) (plaintiffs' "theories of liability against Omegle are rooted in the creation and maintenance of the platform" which recognize the distinction between Omegle as an ICS provider and the users "but nonetheless treat Omegle as the publisher responsible for the conduct at issue"), *appeal docketed*, No. 22-10338 (11th Cir. Jan. 31, 2022); *Herrick v. Grindr LLC*, 765 F. App'x 586, 590-91 (2d Cir. 2019) (alleged lack of safety features and warnings sought to hold Grindr liable for failing "to combat or remove offensive third-party content" and were shielded by Section 230, as were Grindr's neutral tools that facilitated communications between users); *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1123 (N.D. Cal. 2016) (stating that "providing accounts . . . is publishing activity, just like monitoring, reviewing, and editing content"), *aff'd on other grounds*, 881 F.3d 739 (9th Cir. 2018); *Black v. Google Inc.*, No. 10-02381 CW, 2010 U.S. Dist. LEXIS 82905, *7-8 (N.D. Cal. Aug. 13, 2010) (noting that "courts have considered and rejected theories that an [ICS] could be held liable merely because its programming facilitated the creation of the content at issue"), *aff'd*, 457 F. App'x 622 (9th Cir. 2011); *Daniel v. Armslist, LLC*, 926 N.W.2d 710, 722-23 (Wis. 2019) (holding that CDA 230 barred claims alleging website failed to offer an option to flag illegal activity, to require users to create accounts, and to create restrictions on who could post).

MOTION TO DISMISS THE FAC              9

Moreover, other courts have found that similar allegations sought to treat ICS providers as publishers or speakers of third-party content with respect to the same type of claim asserted here, namely, a civil claim under the TVPA. For example, in *Doe v. Reddit, Inc.*, the plaintiffs alleged violation of the TVPA. No. SACV 21-00768 JVS (KESx), 2021 U.S. Dist. LEXIS 235993, *6 (C.D. Cal. Oct. 7, 2021), *appeal docketed*, No. 21-56293 (9th Cir. Nov. 30, 2021). In support of that and other claims, plaintiffs relied on allegations regarding Reddit's alleged "'refusal to enforce its policies'", its "pseudonymous, private messaging", and its handling of user content that violated Reddit's content policy. *Id.* at *10-13. The court concluded that Section 230 applied to the TVPA claim and that the plaintiffs had failed to plausibly alleged that Reddit violated Section 1591. *Id.* at *20-22. *See also G.G. v. Salesforce.com, Inc.*, No. 20-cv-02335, 2022 U.S. Dist. LEXIS 87616, *23 (N.D. Ill. May 16, 2022) (finding that claim seeking to hold ICS provider liable for Backpage's use of the ICS's software "to cultivate sex traffickers . . . and grow the website's reach among sex traffickers" was a "quintessential claim covered by § 230"); *M.H.*, 2022 U.S. Dist. LEXIS 4543 at *16-18 (concluding that similar allegations against Omegle were barred by Section 230 and plaintiffs failed to plausibly allege the requisite knowledge under Section 1591 to overcome CDA immunity); *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1244, 1249 (S.D. Fla. 2020) (finding, in case alleging a claim under the TVPA, that allegations that the ICS provider failed "to enact policies that would have prevented [plaintiff] from being trafficked by fellow Kik users" was "exactly the type of claim that CDA immunity bars").

Therefore, Section 230 bars Plaintiff's TVPA claim, which seeks to hold Omegle liable for the content of a user, namely, Fordyce. Moreover, as discussed next, Plaintiff has not

plausibly alleged a claim for Omegle's violation of Section 1591 that would fall within Section 230(e)(5)(A)'s narrow carveout from immunity.

**B.    The FAC fails to plausibly allege that Omegle knowingly violated § 1591**

As the Court held, in order to state a TVPA claim that overcomes Section 230's bar, Plaintiff must plausibly allege that Omegle's own alleged conduct constitutes a violation of Section 1591. (*See* 5/3/2022 Tr. at 20:17-19.) Section 1591, in turn, requires actual knowledge of and participation in the alleged sex trafficking venture *by the defendant*. *See* 18 U.S.C. § 1591(a), (e)(4); *see also M.H.*, 2022 U.S. Dist. LEXIS 4543 at *8 (Section 1591 "require[s] actual knowledge and overt participation in a sex trafficking venture by the ICS provider – generalized knowledge without active participation is insufficient."); *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2021 U.S. Dist. LEXIS 170338, *37-38 (N.D. Cal. Sept. 8, 2021) ("*J.B. II*") (describing the "narrowed federal civil sex trafficking carveout" that "requires plaintiffs to show the civil defendant's knowing assistance, support, or facilitation"), *appeal docketed*, No. 22-15290 (9th Cir. Feb. 28, 2022); *Kik*, 482 F. Supp. 3d at 1251 (holding that "section 1591 requires knowing and active participation in sex trafficking by the defendants"). Additionally, as discussed in more detail below, the fact that Plaintiff's allegations are inadequate to satisfy even the lower knowledge standard of Section 1595(a) demonstrates conclusively that the allegations are insufficient to satisfy the actual knowledge standard of Section 1591.

### 1.    *The FAC relies solely on generalized knowledge of prior unrelated incidents of alleged misuse of Omegle's chat service*

In dismissing the TVPA claim as originally pled, the Court held that the original complaint inadequately alleged the applicable *mens rea* under Section 1591, including specifically as to both the venture and profit elements of the claim. (5/3/2022 Tr. at 20:17-21:1.)

In the FAC, Plaintiff made only three changes to the TVPA claim: (1) incorporated two additional, pre-existing paragraphs into the claim;[3] (2) in paragraph 104 (paragraph 127 in the original complaint), replaced "knows or should have known" language with a conclusory legal assertion that Omegle "knowingly introduces children to predators causing children to be victims of sex acts"; and (3) added a new paragraph (107) making a general allegation "upon information and belief." The FAC's modification to paragraph 104 is simply a conclusory legal assertion that contains no actual facts that can be said to plausibly allege actual knowledge on the part of Omegle with respect to the alleged sex trafficking of Plaintiff by Fordyce. Similarly, the incorporation of two pre-existing paragraphs into the claim, when the Court previously found that the original complaint did not allege the appropriate *mens rea*, does nothing to cure the deficiency in Plaintiff's allegations on the TVPA claim.

Therefore, the only amendment to the TVPA claim that Plaintiff could assert is intended to cure the deficiency in her original complaint is paragraph 107, which states in its entirety as follows:

> Upon information and belief, Omegle knew that predators frequented the website for the purpose of meeting children and engaging in child sexual exploitation. Upon information and belief, Omegle knew that children were using the website and being matched with predators. In light of this known risk, Omegle's active solicitation of predators and children constitutes active and knowing participation in the sex trafficking of children.

(Dkt. 29 at ¶ 107.) This assertion is insufficient for at least two reasons. First, it is conclusory and therefore not entitled to any presumption of truth. *See Iqbal*, 556 U.S. at 679 (allegations that "are no more than conclusions[] are not entitled to the assumption of truth"). Second, it is devoid of any facts alleging that Omegle knowingly sex trafficked Plaintiff (*e.g.*, a perpetrator violation

---

[3] The two pre-existing paragraphs incorporated into the TVPA claim in the FAC are paragraphs 81 and 82. In the original complaint, these paragraphs were numbered 82 and 83 but are otherwise unchanged in the FAC.

of Section 1591(a)(1)) or knowingly benefited financially from participating in the sex trafficking venture perpetrated by Fordyce against Plaintiff, which in turn requires "knowingly assisting, supporting, or facilitating" Fordyce's alleged sex trafficking violation (*e.g.*, a beneficiary claim under Section 1591(a)(2)).

As to the claim of perpetrator liability against Omegle (*see* Dkt. 29 at ¶ 102), the FAC – like the original complaint – is bereft of any factual allegations, plausible or otherwise, that Omegle itself had any knowledge of or contact with Plaintiff or engaged in any alleged sex trafficking activities as to Plaintiff (*e.g.*, recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting Plaintiff to engage in a commercial sex act knowing that she was under 18). *See* 18 U.S.C. § 1591(a)(1). Therefore, there has been and is no good faith basis to allege that Omegle is liable as a perpetrator of Plaintiff's alleged sex trafficking under Section 1591(a)(1).

As to the claim of beneficiary liability under Section 1591(a)(2), the FAC similarly fails to plausibly allege that Omegle knowingly benefitted from knowingly assisting, supporting, or facilitating the alleged sex trafficking of Plaintiff by Fordyce. To state a beneficiary claim under Section 1591(a)(2), the FAC must, but does not, plausibly allege facts supporting reasonable inferences that Omegle (i) knowingly benefitted (ii) from participating in a sex trafficking venture involving Plaintiff, (iii) knowing or in reckless disregard of the fact that Plaintiff was under 18 and would be caused to engage in a commercial sex act. 18 U.S.C. § 1591(a)(2); *see also United States v. Afyare*, 632 F. App'x 272, 283 (6th Cir. 2016); *G.G.*, 2022 U.S. Dist. LEXIS 87616 at *34-35; *Noble v. Weinstein*, 335 F. Supp. 3d 504, 523-24 (S.D.N.Y. 2018). Furthermore, "participation in a venture" is statutorily defined as "knowingly assisting, supporting, or facilitating" a primary sex trafficking violation under Section 1591(a)(1). Thus,

the statutory language is clear that to state a violation of Section 1591, Plaintiff must, but cannot, plausibly allege facts that Omegle "actively and knowingly" assisted the alleged sex trafficking of Plaintiff by Fordyce from which it knowingly benefitted. *See G.G.*, 2022 U.S. Dist. LEXIS 87616 at *34-35 (holding that "a secondary actor under § 1591(a)(2) must actively and knowingly assist or facilitate a primary trafficking violation, which is tied to a specific victim").

The relevant allegations in the FAC – which largely remain unchanged from the original complaint – fall far short of meeting this standard. Most telling is the complete absence of any factual allegations that Omegle had any knowledge of Plaintiff, Fordyce, or Fordyce's alleged actions with respect to Plaintiff. All of the factual allegations about Plaintiff's alleged sex trafficking speak solely of Fordyce's actions, only some of which are alleged to have occurred via Fordyce's misuse of Omegle's chat service. (*See, e.g.*, Dkt. 29 at ¶¶ 39-51, 108-109.) The only allegations with respect to Omegle's alleged knowledge relate to other alleged incidents involving the misuse of its chat service by users to exploit children,[4] or consist of conclusory assertions that are devoid of facts or that simply parrot the statutory language.

For example, a number of the allegations simply purport to describe how Omegle's chat service works. (*See, e.g.*, Dkt. 29 at ¶¶ 21-23.) Other allegations relate to a report by the BBC that allegedly detailed "the prevalence of child sexual abuse material and grooming" on the chat service. (*See, e.g.*, Dkt. 29 at ¶¶ 33-34.) Further, other allegations relate to alleged "design defects" in Omegle's chat service – the alleged "defects" being Omegle's policy allowing users

---

[4] Even if such alleged general knowledge of other incidents of users criminally misappropriating Omegle's chat service to target children were relevant, it is not clear that the incidents involved sex trafficking. This is not intended to minimize any such incidents where users have misused Omegle's chat service; rather, the point is that even if general knowledge of other alleged incidents were sufficient to state a sex trafficking violation of Section 1591 (which it is not), then it necessarily follows that those other incidents must involve sex trafficking, not some other crimes committed by users.

to be anonymous to one another and a purported absence of age restrictions. (*See, e.g.*, Dkt. 29 at ¶¶ 79-80.) Finally, the FAC merely parrots the statutory language of Section 1591(a)(2). (Dkt. 29 at ¶ 103.)

Absent from these allegations are any facts showing that Omegle knowingly benefitted from knowingly and actively participating in the alleged sex trafficking venture with Fordyce that violated the TVPA as to Plaintiff. In short, "[w]hat is missing are factual allegations that link [Omegle's] actions to [Fordyce's] conduct toward" Plaintiff. *Noble*, 335 F. Supp. 3d at 524; *see also G.G.*, 2022 U.S. Dist. LEXIS 87616 at *34-35 (similarly finding allegations insufficient to establish a link between the plaintiff's alleged sex trafficking and the knowledge and actions of the ICS provider); *M.H.*, 2022 U.S. Dist. LEXIS 4543 at *18 (finding allegations insufficient to "allege Omegle's actual knowledge or overt participation in the underlying incident" with the alleged trafficker and that "generalized knowledge of past instances of sex trafficking are not enough"). Even the *Twitter* court, although it reached the incorrect conclusion about the appropriate knowledge standard under Section 230(e)(5)(A), held that the plaintiffs had to "allege at least that Twitter knew or should have known that Plaintiffs were the victims of sex trafficking at the hands of users who posted the content on Twitter." *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 925 (N.D. Cal. 2021), *appeals docketed*, Nos. 22-15103 and 22-15104 (9th Cir. Jan. 25, 2022). The court found that the plaintiffs had plausibly alleged such knowledge (under the incorrect "knew or should have known" standard) by alleging in part that they had "alerted Twitter that the Videos were created under threat when Plaintiffs were children and provided evidence of John Doe #1's age in response to Twitter's request for further information." *Id.*

To find the allegations in the FAC sufficient to plausibly allege knowing participation in the sex trafficking venture for which Plaintiff seeks relief would be to effectively read out the

actual knowledge standard of Section 1591. Such a theory would lead to unlimited liability for ICS providers like Omegle as plaintiffs could recover for sex trafficking perpetrated by users who criminally misappropriate the ICS providers' services, despite a complete absence of the providers' knowledge of the particular plaintiff or the other user's actions toward that plaintiff. Such unfettered liability has no analogue of which Omegle is aware.

Moreover, as discussed in the next section, Plaintiff's allegations fail even under the lower knowledge standard of Section 1595(a), further demonstrating that they do not, and cannot, satisfy the higher knowledge standard of Section 1591.

> ### 2.    *Even under the more lenient constructive knowledge standard of § 1595, the TVPA claim fails*

As shown above, the FAC falls far short of plausibly alleging that Omegle engaged in conduct that violated Section 1591 with respect to Plaintiff. That conclusion is sufficient to compel dismissal of the TVPA claim. However, to further bolster that conclusion, even if the FAC's TVPA claim were assessed under the more lenient standard of a Section 1595(a) claim against a non-ICS provider defendant, it would still be subject to dismissal.

Courts in TVPA cases involving non-ICS providers (in other words, when Section 230 does not apply) have found that allegations similar or analogous to those in the FAC were insufficient to state a beneficiary claim even under the lenient constructive knowledge standard of Section 1595(a). For example, this Court (Judge Immergut) in *A.B. v. Hilton Worldwide Holdings Inc.* concluded that the plaintiff failed to plausibly allege a civil sex trafficking beneficiary claim under the TVPA against several hotel chains. 484 F. Supp. 3d 921, 938-39 (D. Or. 2020). Similar to the allegations here, the plaintiff relied in part on news reports and online reviews describing "sex trafficking occurrences" at the defendants' hotels across the U.S. The

plaintiff also alleged facts about her trafficking, including bottles of lubricant, boxes of condoms, and numerous used condoms visible to hotel employees entering the plaintiff's room, the plaintiff's physical appearance "showed signs of being trafficked," and a "constant and voluminous foot traffic of unregistered male guests entering and leaving" the plaintiff's room. *Id.* at 938. But the court concluded that these and other allegations were insufficient:

> [A]lthough Plaintiff's allegations indicate that Defendants had notice of sex trafficking generally occurring at their hotels, Plaintiff has not alleged facts which sufficiently link notice of Plaintiff A.B.'s sex trafficking to any of these Defendants. . . . General knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate Defendants participated in the trafficking of Plaintiff.

*Id.* Moreover, even after the plaintiff amended her complaint in response to that decision, the court concluded that she had still failed to plausibly allege a beneficiary claim under the TVPA. *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1025-28 (D. Or. 2021) (finding that new allegations "regarding Defendants' alleged ability to monitor and track activities at their branded hotel locations" did not cure the deficiencies in the original complaint).

The *A.B.* decisions are also consistent with the conclusions reached by a number of other courts involving similar allegations found to be insufficient to state a civil TVPA beneficiary claim against hotel defendants. *See, e.g.*, *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 U.S. Dist. LEXIS 64565, *5-6 (S.D. Tex. Mar. 30, 2021) (finding that plaintiff failed to plausibly allege any facts suggesting a "reasonable inference connecting [the hotel] Defendants specifically to Plaintiff's trafficking") (internal quotation marks omitted); *E.S. v. Best Western Int'l, Inc.*, 510 F. Supp. 3d 420, 427-29, 431 (N.D. Tex. 2021) (finding allegations insufficient to plead that defendants "directly participated in a specific venture that trafficked Plaintiff on specific occasions at the specific hotels"); *H.G. v. Inter-Continental Hotels Corp.*, 489 F. Supp. 3d 697, 704-06 (E.D. Mich. 2020) (finding that plaintiff failed to plausibly allege

that the hotel franchisors knew or should have known "of sex trafficking *by the particular venture in which they allegedly participated*," *i.e.*, the venture involving the plaintiff); *J.L. v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) (finding insufficient allegations that hotel franchisor was or should have been aware of plaintiff's trafficking based on "notice about the prevalence of sex trafficking generally at its hotel").

Notably, even these hotel cases, applying the lower constructive knowledge standard, recognize that "the complaint must contain facts sufficient to establish that the defendant knew or should have known ***about the trafficking of the plaintiff in particular – not about trafficking occurring on the premises in general***." *Wyndham*, 2021 U.S. Dist. LEXIS 64565 at *4 (emphasis added). For example, the Eastern District of Michigan disagreed with *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019) that general knowledge about the occurrence of sex trafficking at the defendant's hotels was sufficient to plead the requisite state of mind for a civil TVPA beneficiary claim;[5] instead, it concluded that a TVPA plaintiff "must allege . . . that the defendant knew or should have known of sex trafficking by the *particular* sex-trafficking venture in which the defendant is alleged to have participated." *H.G.*, 489 F. Supp. 3d at 707. *See also J.L.*, 521 F. Supp. 3d at 1064 (finding allegations of general knowledge that sex trafficking occurred at the hotels were not sufficient to show hotel "should have known about what happened to this plaintiff"); *Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-00619-PAB-SKC, 2021 U.S. Dist. LEXIS 228651, *23 (D. Colo. Nov. 30, 2021) (finding allegations of "the prevalence of sex trafficking generally at [defendant's] hotels and in the hotel industry" was "not sufficient to show that defendant should have known about what

---

[5] Even the *M.A.* court found that plaintiff had "allege[d] facts specific to her own sex trafficking, including a number of signs she allege[d] should have alerted staff to her situation", and, thus, did not solely rely on generalized knowledge of sex trafficking. 425 F. Supp. 3d at 968.

happened to plaintiff"). Moreover, even courts finding that plaintiffs *had* sufficiently alleged a civil TVPA beneficiary claim agree that "general allegations about sex trafficking problems" are not sufficient to put defendants "on notice about the sex trafficking of this plaintiff." *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 U.S. Dist. LEXIS 201073, *14-15 (N.D. Cal. Oct. 28, 2020) (finding that plaintiff had provided "plausible allegations to show that these defendants had actual and/or constructive knowledge about *her* sex trafficking").

These district court decisions are also consistent with the Eleventh Circuit's recent decision addressing the elements of a Section 1595(a) beneficiary claim involving such claims against hotel franchisors.[6] In *Doe v. Red Roof Inns, Inc.*, the Eleventh Circuit held that to state a Section 1595(a) beneficiary claim,

> a plaintiff must plausibly allege that the defendant (1) knowingly benefited,
> (2) from taking part in a common undertaking or enterprise involving risk and
> potential profit, (3) that undertaking or enterprise violated the TVPRA *as to the
> plaintiff*, and (4) the defendant had constructive or actual knowledge that the
> undertaking or enterprise violated the TVPRA *as to the plaintiff*.

21 F.4th 714, 726 (11th Cir. 2021) (emphasis added). However, even applying the constructive knowledge standard of Section 1595(a), the Eleventh Circuit concluded that the plaintiffs' allegations failed to plausibly allege that "the franchisors participated in an alleged common undertaking or enterprise with the Does' sex traffickers." *Id.* at 726-27.

The plaintiffs in *Red Roof*, like Plaintiff here, alleged that the venture the franchisors allegedly participated in were "sex trafficking ventures." *Id.* at 726-27. As a result, the plaintiffs were required to – but did not – plausibly allege that the "franchisors took part in the common undertaking of sex trafficking" with the plaintiffs' sex traffickers. *Id.* at 726. Allegations that the

---

[6] As the Eleventh Circuit noted, of its sister circuits, only the First Circuit has addressed a Section 1595(a) beneficiary claim in *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017). *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021).

franchisors licensed their brands to franchisees and received a royalty in return based on room revenue and were "inextricably connected" to the renting of rooms at the hotels were insufficient, as they did "nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA – i.e., the alleged sex trafficking ventures." *Id.* at 726-27. The Eleventh Circuit reached the same conclusion as to allegations that the franchisors investigated the hotels, took remedial action when revenue was down, and "read online reviews mentioning prostitution and crime occurring generally at the hotels." *Id.* at 727.

> In short, to participate in a venture under Section 1595(a), a defendant must take part in a common undertaking involving risk or profit. The Does chose to frame the ventures at issue as sex trafficking ventures in their amended complaints. Yet they have provided no plausible allegations that the franchisors took part in the common undertaking of sex trafficking. Their only allegations as to the franchisors' knowledge or participation in those sex trafficking ventures are that the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels. ***But observing something is not the same as participating in it.*** Accordingly, the Does' Section 1595(a) beneficiary claims against the franchisors fail.

*Id.* at 727 (emphasis added).

Here, the allegations in the FAC are similar or analogous to the allegations found to be deficient in these other cases involving hotel defendants. Plaintiff's TVPA claim asserts that Omegle participated in the alleged sex trafficking venture perpetrated against her by Fordyce. However, absent from that claim are any well-pled factual allegations that Omegle knew (or under the inapplicable standard, "should have known") "about the trafficking of the plaintiff in particular." *Wyndham*, 2021 U.S. Dist. LEXIS 64565 at *4. Rather, as discussed in more detail above, Plaintiff relies on general allegations about how Omegle's chat service works, Omegle's policies regarding who may use its chat service, Omegle's monitoring of users, and media reports about unrelated incidents in which other users allegedly misused the chat service. (*See, e.g.*, Dkt. 29 at ¶¶ 21-23, 27-29, 33, 38, 64, 79-80.) The only factual allegations relating

specifically to Plaintiff's alleged sex trafficking involve Fordyce's actions; there are no allegations that Omegle had any knowledge of Plaintiff, Fordyce, or Fordyce's actions toward her (nor could there be). (*See* Dkt. 29 at ¶¶ 39-51, 108-109.)

As the Eastern District of New York noted in another decision finding that the plaintiffs had failed to allege a Section 1595(a) beneficiary claim against hotel defendants:

> to conclude that franchisors . . . are liable under the TVPRA simply because they were generally aware that sex trafficking sometimes occurred on their franchisees' properties unjustifiably bridges the scienter gap between "should have known" and "might have been able to guess."

*S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020). The *S.J.* court went on to note that the real issue with respect to the insufficiency of the plaintiff's allegations was not "actual-versus-constructive knowledge but whether a defendant satisfies the knowledge element as to a *particular* sex trafficking venture." *Id.* It noted that Section 1595 "speaks in singular terms," i.e., "'participation in *a* venture which that person . . . should have known *has* engaged in *an* act in violation'" of the TVPA. *Id.* (quoting 18 U.S.C. § 1595(a)). Therefore, where, as here, a plaintiff "has not alleged that the . . . defendant[] had the requisite knowledge of *a specific sex trafficking venture*," she has not stated a beneficiary claim under the TVPA. *S.J.*, 473 F. Supp. 3d at 154 (emphasis added). Moreover, in this context, to conclude otherwise would mean that a website – which may have thousands or even millions of users on any given day – could be liable under the TVPA if it were aware that sex trafficking had occurred on its site, even if it had no knowledge (whether actual or constructive) about the specific alleged sex trafficking venture involving the plaintiff bringing the TVPA claim.

Therefore, Plaintiff cannot satisfy even the more lenient standard of Section 1595(a), reinforcing the conclusion that the allegations necessarily cannot satisfy the higher standard of

MOTION TO DISMISS THE FAC          21

Section 1591. As a result, the FAC fails to state a violation of Section 1591 and the TVPA claim is therefore barred by Section 230.

### III.    Plaintiff's Product Liability Claims Should Be Dismissed As A Matter of Law

"Oregon's product liability law is governed by statute." *Smith v. Ethicon Inc.*, No. 3:20-cv-00851-AC, 2021 U.S. Dist. LEXIS 152495, *5 (D. Or. May 13, 2021), *findings & recommendations adopted by* 2021 U.S. Dist. LEXIS 151954 (D. Or. Aug. 12, 2021).

ORS 30.900 defines a "product liability civil action" as

> a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of:
> (1) Any design, inspection, testing, manufacturing or other defect in a product;
> (2) Any failure to warn regarding a product; or (3) Any failure to properly instruct in the use of a product.

As this Court explained in *Smith,* "if the gravamen of a cause of action is a product defect, regardless of the theory of liability, then Oregon's product liability statutory framework, including its statute of limitations, statute of repose, and requirements relating to manufacturers and distributors, will govern the cause of action." 2021 U.S. Dist. LEXIS 152495 at *7 (internal quotation marks omitted); *see also Kambury v. Daimlerchrysler Corp.*, 185 Or. App. 635, 639, 60 P.3d 1103 (2003) (explaining that "nothing in the language of ORS 30.900 suggest[s] that the statute was intended to apply to defects that give rise to strict liability but not to defects or failures that result from negligence").

Therefore, notwithstanding that claim 1 ("Product Liability – Defect in design") and claim 2 ("Product Liability – Defect in Warning") are (apparently) pled as strict product liability claims,[7] and claims 3 and 4 are pled as negligence claims, labeled "Negligent Design" and "Negligence - Failure to Warn," respectively, all four claims (the "Product Liability Claims") are

---

[7] While the FAC does not reference strict liability, Plaintiff's characterization of claims 3 and 4 as negligence claims suggests that claims 1 and 2 are pled as strict liability claims.

governed by ORS 30.900. As detailed below, each of the Product Liability Claims suffers from the same two infirmities: (1) the FAC does not plausibly allege that Omegle's chat service is a "product"; and (2) even if the Court finds that Omegle *is* a "product" under Oregon's product liability law, the Product Liability Claims should be dismissed because Plaintiff has not plausibly alleged, and cannot plausibly allege, the physical harm required to recover the emotional distress damages she requests for these claims.

### A.    The FAC does not plausibly allege that Omegle's online chat service is a "product" for purposes of Oregon's product liability law

As noted above, a "product liability civil action" under Oregon law is "a civil action brought against a manufacturer, distributor, seller or lessor of a ***product***[.]" *See* ORS 30.900 (emphasis added). Similarly, the statute imposes strict liability on "[o]ne who sells or leases any ***product*** in a defective condition unreasonably dangerous to the user or consumer[.]" ORS 30.920(1) (emphasis added). The statute does ***not*** impose liability on defendants who provide ***services***, regardless of the nature of the service. *See generally* ORS 30.900, .920; *see also Watts v. Rubber Tree, Inc.*, 118 Or. App. 557, 563, 848 P.2d 1210 (1993) (ORS 30.920 "does not provide for strict liability of service providers. If the legislature had intended otherwise, it would have clearly said so.").

"Whether something is a 'product' within the meaning of [Oregon's product liability] statute is a question of law." *Ass'n of Unit Owners of Bridgeview Condos. v. Dunning*, 187 Or. App. 595, 615, 69 P.3d 788 (2003) ("*Dunning*"). "The scope of the product liability statute . . . is not determined as a matter of [the court's] judgment as to what is the best policy in response to perceived public needs." *Id.* at 617. Rather, "[t]he task of the courts is merely to determine the scope of the legislature's policy judgments ***as expressed in the statute***." *Id.* (emphasis added).

Accordingly, as ORS 30.920(3) instructs,[8] Oregon courts must construe the statute "in accordance with" Section 402A of the RESTATEMENT (SECOND) OF TORTS ("Section 402A") when determining whether something is a "product." *See Dunning*, 187 Or. App. at 616-17 (relying on comments a, c, and d of Section 402A and holding that a condominium is not a "product" for purposes of the plaintiff's product liability claim because condominiums are neither "chattels" nor "goods"); *Sease v. Taylor's Pets, Inc.*, 74 Or. App. 110, 116-17, 700 P.2d 1054 (1985) (relying on comment e to Section 402A and holding that "the live skunk which [one of the plaintiffs] purchased was a product" pursuant to ORS 30.900 *et seq.*). *Dunning* and *Sease* confirm that a "product" must not only be personal property but also something "movable." *See, e.g., Dunning*, 187 Or. App. at 616 (explaining that "[t]he term 'chattel,' in legal parlance, ordinarily refers to 'an article of personal property, as opposed to real property. ***A thing personal and moveable***'") (quoting *Black's Law Dictionary* 215 (5th ed. 1981)).[9]

Here, Omegle's chat service, provided via its website, is not a "product" within the meaning of Oregon's product liability law. The chat service is not a tangible, "moveable" thing and Plaintiff has provided no plausible allegations to the contrary. Indeed, the FAC describes Omegle as "a free online chat room," a "free online website," and "one of the largest and most popular chat sites" (*see* Dkt. 29 at ¶¶ 2, 17, 18), and alleges that "[u]nlike many other internet products, Omegle is accessible only through its own website" and is not an "application[] uploaded through a marketplace like the App Store or Google Play" (id. at ¶ 30). While the FAC

---

[8] In ORS 30.920(3), the Oregon legislature codified its intent that Section 30.920 "be construed in accordance with the *Restatement (Second) of Torts* sec. 402A, Comments a to m (1965)."

[9] While Oregon state courts have not adopted Section 19 of the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY, "Definition of Product," Oregon product liability law as set forth in *Dunning* and *Sease* is in accord with the definition of "product" in that section, namely, that "[a] product is tangible personal property distributed commercially for use or consumption" and that "[s]ervices, even when provided commercially, are not products."

is replete with generic references to "its [Omegle's] product" and "the product" (*see, e.g.,* id. at ¶¶ 4, 6, 26-27, 29, 32, 63, 67, 70, 72, 78-79, 82-83, 86, 98-99), the only **specific** Omegle "product" referenced is "the website" (*see* id. at ¶¶ 79, 86-87, 92-93, 96, 99, 107).[10]

While courts applying Oregon product liability law have not considered whether an online chat service that does not require a user to download an app is a "product," other courts have held that websites are not products for purposes of product liability law. *See, e.g.*, *James v. Meow Media, Inc.*, 300 F.3d 683, 701 (6th Cir. 2002) (affirming dismissal of product liability claims because plaintiff failed to demonstrate that "video games, movies, and internet sites are 'products' for purposes of strict liability"; explaining that "internet transmissions are not sufficiently 'tangible' to constitute products"); *Intellect Art Multimedia, Inc. v. Milewski*, 899 N.Y.S.2d 60, 2009 N.Y. Misc. LEXIS 2325, ***18 (N.Y. Sup. Ct. 2009) (dismissing product liability claim against website; noting that "[a]lthough plaintiff argues that the national trend is moving towards a more expansive definition of the term 'product' in products liability analysis, this court is not persuaded that this website in the context of plaintiff's claims is a 'product' which would otherwise trigger the imposition of strict liability"). This Court should similarly hold, as a matter of law, that Plaintiff has not and cannot meet her burden to plausibly allege that Omegle is a "product" and that the FAC's first four claims necessarily fail.

## B.    Alternatively, the FAC has not plausibly alleged the physical harm required to recover the damages sought in the Product Liability Claims

ORS 30.920(1) sets forth the elements of a strict product liability claim:

(1) One who sells or leases any product in a defective condition unreasonably

---

[10] Plaintiff's "Negligent Design" claim also includes references to Omegle's "server-side software." (Dkt. 29 at ¶¶ 94-96.) But the FAC does not explain what is meant by "server-side software"; whether, and how, the alleged "server-side software" was made available to Plaintiff and other users; and how and when Plaintiff allegedly used the "server-side software."

dangerous to the user or consumer or to the property of the user or consumer is subject to liability for ***physical harm*** or damage to property caused by that condition, if:

(a) The seller or lessor is engaged in the business of selling or leasing such a product; and

(b) The product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold or leased.

(emphasis added). While ORS 30.920 is titled "When seller or lessor of product liable", the "physical harm" requirement also applies to product liability claims against manufacturers (who are referenced in ORS 30.900), as well as to sellers or lessors of products, because "[t]he categories of culpable defendants in both statutes are congruous." *See Mason v. Mt. St. Joseph, Inc.*, 226 Or. App. 392, 399, 203 P.3d 329 (2009) (noting that ORS 30.900 and 30.920 "define the nature of a product liability claim and operate *in pari materia*" and explaining that "a 'manufacturer' or 'distributor' of a defective product under ORS 30.900 is the same type of person or entity that is culpable under ORS 30.920").

Accordingly, "Oregon courts have interpreted [ORS 30.920] to require that a product cause physical harm in order to subject the manufacture[r] or seller to strict liability for a defective condition." *Kent v. Shiley, Inc.*, No. 87-6554-E, 1989 U.S. Dist. LEXIS 8962, *2-3 (D. Or. Jan. 24, 1989); *see also Cochran v. Burlington Coat Factory of Or., LLC*, No. 10-CV-6016-TC, 2010 U.S. Dist. LEXIS 101268,*4 (D. Or. Aug. 25, 2010) ("Oregon's product liability statutes . . . prohibit recovery for mental distress where there is no ***physical harm*** or ***physical impact***.") (emphasis added), *findings & recommendations adopted by* 2010 U.S. Dist. LEXIS 101267 (D. Or. Sept. 19, 2010); *Sease*, 74 Or. App. at 117-18 (in product liability action for damages arising out of sale of rabid skunk, reversing judgment for plaintiff who did not "suffer illness or death from contact with the skunk's saliva" or "take the [rabies] injections" after contact with skunk "because [plaintiff] suffered no 'physical harm'", only emotional distress).

While ORS 30.920(4) provides, in pertinent part, that "[n]othing in this section shall be construed to limit the rights and liabilities of sellers and lessors under principles of common law negligence," Oregon courts have still required a plaintiff seeking to recover damages for emotional distress for a product liability claim sounding in negligence to prove a physical harm or physical impact directly from the product at issue. *See, e.g., Kent*, 1989 U.S. Dist. LEXIS 8962 at *4-5, 11 (explaining that the requirement of "physical harm caused by the product failure or malfunction" for "strict products liability" also applies to "products liability claims based on negligence" and dismissing plaintiff's claims against the manufacturer of an allegedly defective artificial heart valve as the valve did not physically harm the plaintiff). This is consistent with Oregon negligence law more generally, wherein "a plaintiff can recover 'for emotional distress caused by ordinary negligence, but only if the distress is accompanied by physical impact.'" *Gartner v. United States*, No. 6:16-cv-01680-JR, 2017 U.S. Dist. LEXIS 29015, *18 (D. Or. Feb. 15, 2017) (quoting *Lowe v. Philip Morris USA, Inc.*, 207 Or. App. 532, 551, 142 P.3d 1079 (2006), *aff'd*, 344 Or. 403, 183 P.3d 181 (2008)), *findings & recommendations adopted by* 2017 U.S. Dist. LEXIS 66372 (D. Or. May 1, 2017). "In other words, the plaintiff must plead some form of ***direct*** physical injury or ***direct*** physical contact as a prerequisite to recovering emotional distress damages under a negligence theory." *Gartner*, 2017 U.S. Dist. LEXIS 29015 at *19 (emphasis added).

Relying on this well-established Oregon law, courts have held a plaintiff cannot recover emotional distress damages for a negligence claim unless a "physical impact . . . caused [the plaintiff's] emotional distress." *See, e.g., Andersen v. Atl. Recording Corp.*, No. 07-CV-934-BR, 2010 U.S. Dist. LEXIS 122743, *16-18 (D. Or. Nov. 18, 2010) (noting that "the evidence indicates [the plaintiff] suffered emotional distress that increased and exacerbated her physical

suffering" but she did "not identify any evidence of the inverse (*i.e.*, that she suffered any kind of physical impact that caused her to suffer emotional distress"). For example, in *Gartner*, the plaintiff asserted a negligence claim relating to various workplace investigations involving the plaintiff. 2017 U.S. Dist. LEXIS 29015 at *1-5. However, in granting the motion to dismiss the negligence claim, the court found that the plaintiff did "not assert the existence of a physical injury or impact, perpetuated by defendant, which caused emotional distress." *Id.* at *20. Rather, it found "[t]he inverse is true: plaintiff alleges that he suffered stress and anxiety as a result of defendant's actions, which, in turn, led to the physical consequences of high blood pressure, more frequent migraines, and 'nausea, vomiting, and general physical pain.'" *Id.*

Here, Plaintiff does not allege any "direct physical contact" with Omegle, nor could she, given its intangible nature. Indeed, Plaintiff does not allege that she had any "direct physical contact" with Fordyce, whose unlawful actions were conducted virtually.[11] (*See* Dkt. 29 at ¶¶ 42-44, 46-48.) In each of the Product Liability Claims, Plaintiff includes the general (and conclusory) allegation that she "sustained permanent injuries and suffered extreme pain and agony." (Id. at ¶¶ 84, 90, 96, 100.) More specifically, Plaintiff alleges she "suffered and continues to suffer serious emotional pain and psychological distress" (id. at ¶ 52); "has symptoms of Post-Traumatic Stress Disorder, has suffered seizures, and has panic attacks that render her bedridden for several days" (id. at ¶ 54); has "trouble breathing and possibly experiencing a panic attack" when she hears the phone ring (id. at ¶ 55); and "is subject to fear and anxiety when she meets new people" (id. at ¶ 57). Elsewhere, in the "Damages" section of the FAC, Plaintiff enumerates her alleged "physical and psychological injuries" as "consisting of

---

[11] That the alleged actions were conducted virtually rather than in-person is not intended to minimize the reprehensible nature of Fordyce's actions.

depression, anxiety, post-traumatic stress disorder, sleep and eating disturbances, shame, lack of trust, issues with sexuality, and difficulty with intimate relationships." (Id. at ¶ 75.) But the "physical" conditions Plaintiff references – seizures, "trouble breathing," and "sleep and eating disturbances" – are all pled as symptoms of Plaintiff's alleged emotional distress, or, put another way, these alleged "physical injuries" are a result of emotional distress, rather than physical harm causing emotional distress.

Therefore, because Plaintiff has not plausibly alleged – and cannot so allege – cognizable damages, the Product Liability Claims fail on this independent ground.

## IV.    Dismissal Should Be With Prejudice As Any Amendment Would Be Futile

Although the Federal Rules of Civil Procedure generally embody a principle of liberally permitting amendment of pleadings, that principle does not require the Court to allow futile amendments. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (dismissal with prejudice appropriate where amendment would be futile); *Shannon v. Bayview Loan Servicing LLC*, No. 3:16-CV-1016-MO, 2018 U.S. Dist. LEXIS 66686, *4 (D. Or. Apr. 20, 2018) (same). Here, further amendment of the complaint would be futile and therefore Omegle requests that dismissal of all of the claims in the FAC be with prejudice.

As to the TVPA claim, as shown above, in order to plead the requisite knowledge, Plaintiff must plausibly allege that Omegle actively and knowingly assisted the alleged sex trafficking of Plaintiff by Fordyce; general knowledge of alleged prior, unrelated incidents involving other users is insufficient. There is no dispute that Plaintiff cannot plausibly allege that Omegle had any contemporaneous knowledge of Plaintiff or Fordyce, or his alleged trafficking of Plaintiff. Thus, because Plaintiff cannot plausibly allege the requisite knowledge, any further amendment of the TVPA claim necessarily would be futile. *See, e.g., Bortz v. JPMorgan Chase*

*Bank, N.A.*, No. 21-CV-618 TWR (DEB), 2022 U.S. Dist. LEXIS 85070, *23-24 (S.D. Cal. May 10, 2022) (finding further amendment futile where court previously held that plaintiffs were required to plead actual knowledge but failed to do so); *Whitaker v. Mind Games, LLC*, No. 2:20-cv-11794-RSWL-MRWx, 2022 U.S. Dist. LEXIS 68778, *9, 13 (C.D. Cal. Apr. 13, 2022) (concluding that amendment would be futile in part due to the plaintiff's inability to plead the actual knowledge required to establish standing under the ADA).

Similarly, amendment of the Product Liability Claims – claims 1 to 4 – would be futile. As discussed above, the Product Liability Claims fail as a matter of law because the FAC does not and cannot allege that Omegle's chat service is a "product" under Oregon's product liability law. No amendment can cure that fatal flaw in the FAC's first four claims. As an additional or alternative basis for the futility of amendment, there can be no dispute that Plaintiff has not alleged, and cannot allege, the necessary physical harm that allegedly caused the emotional distress alleged in the FAC. Accordingly, even if the Court finds as a matter of law that Omegle's chat service is a "product," the Product Liability Claims still should be dismissed with prejudice because Plaintiff cannot plead a cognizable claim for damages, regardless of whether the claims sound in strict liability or negligence. *See Streit v. Matrix Absence Mgmt., Inc.*, No. 3:12-cv-01797-AC, 2014 U.S. Dist. LEXIS 20440, *9 (D. Or. Feb. 18, 2014) ("Amendment to state a claim for damages that are unavailable as a matter of law would be futile.").

Therefore, because any further amendment would be futile, Omegle respectfully requests that the FAC be dismissed in its entirety with prejudice.

## CONCLUSION

Therefore, for the foregoing reasons, Omegle respectfully requests that the FAC be dismissed in its entirety with prejudice.

Dated this 26th day of May, 2022.        Respectfully submitted,

FOCAL PLLC                                      SNELL & WILMER, LLP

By: s/ *Stacia N. Lay*                          By: s/ *Clifford S. Davidson*
    s/ *Kimberlee Gunning*                           Clifford S. Davidson, OSB #125378
    Venkat Balasubramani, OSB #180446                1455 SW Broadway, Suite 1750
    Stacia N. Lay, WSBA #30594 (PHV)                 Portland, Oregon 97201
    Kimberlee Gunning, WSBA #35366 (PHV)             Telephone: (503) 624-6800
    900 1st Avenue S., Suite 201                     csdavidson@swlaw.com
    Seattle, Washington 98134
    Telephone: (206) 529-4827
    venkat@focallaw.com
    stacia@focallaw.com
    kim@focallaw.com

*Attorneys for Defendant Omegle.com LLC*