Barbara C. Long, OSB No. 122428
barb@vogtlong.com
VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
Telephone: (503) 228-9858

Carrie Goldberg (*pro hac vice*)
carrie@cagoldberglaw.com
Naomi Leeds (*pro hac vice*)
naomi@cagoldberglaw.com
C.A. GOLDBERG PLLC
16  Court Street
Brooklyn, NY 11241
Telephone: (646) 666-8908

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| A.M., an individual,<br><br>Plaintiff,<br><br>v.<br><br>OMEGLE.COM LLC,<br><br>Defendant. | Case No. 3:21-cv-01674-MO<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Michael W. Mosman<br>Date: June 9, 2022 |

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

## Table of Contents

INTRODUCTION ........................................................................................................... 6

FACTUAL ALLEGATIONS .......................................................................................... 6

LEGAL STANDARD ..................................................................................................... 8

    I.    A.M.'s claims are sufficiently pleaded and Omegle fails to show that Plaintiff's complaint cannot withstand Rule 12(b)(6) scrutiny. .......................................... 8

    II.    Defendant's motion to dismiss Plaintiff's first four claims based on Fed. R. Civ. P. 12(b)(6) should be denied because, not only are they improper, but also a meritless delay to these proceedings. ................................................................................. 10

ARGUMENT ................................................................................................................ 13

    I.    A.M.'s product liability claims are proper. ...................................................... 13

        A.    Omegle is a product under Oregon's product liability law. ......................... 14

        B.    Plaintiff has plausibly alleged that she suffered physical harm. .................. 18

            1.    Alternatively, Plaintiff is not required to allege a physical harm to prevail on her product liability claims based on negligence (Counts 3 and 4). .............................. 20

                a.    Oregon law allows claims for negligently inflicted emotional distress where a sufficiently important legally protected interest is violated. ................................ 20

                b.    This Court should recognize a legally protected interest in being free from negligent invasions of a child's right not to be coerced into performing sex acts.24

            2.    The cases cited by Omegle do not override the Philibert framework. ...................... 26

    II.    A.M.'s sex trafficking claim under the TVPA is proper because Omegle has demonstrated the requisite mens rea. .................................................................. 27

        A.    Defendants knowingly participated in a venture engaging in sex trafficking. .............. 28

        B.    Defendants knowingly received a benefit from their participation in the venture. ........ 32

CONCLUSION .............................................................................................................. 33

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Tables of Authorities**

<u>**Cases**</u>

*A.B. v. Marriott Int'l, Inc*., 455 F. Supp. 3d 171 (E.D. Pa. 2020) .............................................29

*A.B. v. Wyndham Hotels & Resorts, Inc.,* 532 F. Supp. 3d 1018 (D. Or. 2021) ...........28, 29, 31

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................9, 10

*Ass'n of Unit Owners of Bridgeview Condominiums v. Dunning* 187 Or. App. 595
(2003) .............................................................................................................................16, 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................9

*B.M. v. Wyndham Hotels*, No. 20-CV-00656-BLF,
2020 U.S. Dist. LEXIS 135494 (N.D. Cal. July 30, 2020) ...............................28, 29, 32

*Doe v. Mindgeek USA Inc*., 558 F. Supp. 3d 828 (C.D. Cal. 2021) ........................30, 31, 32, 33

*Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889 (N.D. Cal. 2021) .........................................30, 31, 32

*Edwards v. Talen Irrig. Dist.*, 280 Or 307 (1997) ....................................................................23

*F.T.C. v. Wellness Support Network, Inc., et al.* at 1:21-28, No. 30 (C-10-04879
JCS), 2014 WL 644749) ................................................................................................ 10-11

*G.G. v. Salesforce.com, Inc.*, No. 20-cv-02335, 2022 U.S. Dist. LEXIS 87616, 35
(N.D. Ill. May 16, 2022) ..............................................................................................30, 32

*Herrick v. Grindr, LLC,* 306 F. Supp. 3d 579 (S.D.N.Y. 2018), aff'd, 765 F.
App'x 586 (2d Cir. 2019) ...............................................................................................11, 12

*Hinish v. Meier & Frank Co.*, 166 Or 482 (1941) ...................................................................22

*Hovis v. Burns*, 243 Or 607 (1966) ....................................................................................22, 23

*I.K. v. Banana Republic*, LLC 317 Or App 249 (2022) ...........................................................24

*James v. Meow Media, Inc.*, 300 F 3d 683 (6th Cir. 2002) ...............................................16, 17

*Jewel v. NSA*, 673 F.3d 902 (9th Cir. 2011) ..............................................................................8

*Kent v. Shiley* 1989 U.S. Dist. LEXIS 8962 ......................................................................26, 27

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

*Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021) .................................................15, 15, 20

*Lowe v. Philip Morris USA, Inc.,* 207 Or App 532 (2006) ......................................................26

*M.A. v. Wyndham Hotels and Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019)...............29

*Macca v. Gen. Tel. Co. of N.W.*, 262 Or 414 (1972)..................................................................23

*McEvoy v. Helikson*, 277 Or 781 (1977)..............................................................................23, 24

*MT & M Gaming, Inc. v. City of Portland,* 360 Or 544 (2016) ...............................................21

*Nearing v. Weaver*, 295 Or 702 (1983)...............................................................................23, 24

*Northwest v. Presbyterian Intercommunity Hosp.*, 293 Or 543 (1982) ..............................21, 27

*Pepper v. Apple Inc.,* 846 F.3d 313 (9th Cir. 2017) ...........................................................12, 13

*Philibert v. Kluser*, 360 Or 698 (2016) ...........................................................................passim

*Sease v. Taylor Pets., Inc.*, 74 Or. App. at 110 (1985), *rev. den.* 299 Or 854 (1985)...17, 18, 19

*Sheppard v. David Evans & Assoc.*, 694 F.3d 1045 (9th Cir. 2012)...........................................9

*Tomlinson v. Metro Pediatrics.* 362 Or 431 (2018) ...........................................................22, 23

*Watters v. TSR*, 904 F2d 378 (6th Cir. 1990)...........................................................................17

*Williams v. Gerber Prods.*, 523 F.3d 934 (9th Cir. 2008)...........................................................9

## Statutes and Rules

18 U.S.C. § 1591 ...........................................................................................................27, 28, 29

18 U.S.C. § 1591(a) ....................................................................................................................27

18 U.S.C. § 1591(a)(2) ................................................................................................................28

18 U.S.C. § 1591(e)(4) ..........................................................................................................28, 29

18 U.S.C. § 1591(e)(6) ................................................................................................................30

18 U.S.C. § 1595 ...........................................................................................................27, 28, 29

Page iv –PLAINTIFF'S RESPONSE
IN OPPOSITION TO MOTION TO
DISMISS FIRST AMENDED
COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

18 U.S.C. § 1595(a)..............................................................................................32

47 U.S.C. § 230............................................................................................11, 13

CA. CIV. CODE § 1714.45(c) .................................................................... 14-15

FED. R. CIV. P. 8(a) ...............................................................................................8

FED. R. CIV. P. 12(b)(1)......................................................................................12

FED. R. CIV. P. 12(b)(6)...............................................................................passim

FED. R. CIV. P. 12(g)(2)...................................................................6, 8, 10, 33

FED. R. CIV. P. 12(h) ..........................................................................................12

FED. R. CIV. P. 12(h)(2).....................................................................................10

FED. R. CIV. P. 12(h)(3).....................................................................................10

OR. REV. STAT. 30.900 ......................................................................................14

OR. REV. STAT. 30.920 ......................................................................................19

OR. REV. STAT. 30.920(1)............................................................................20, 26

OR. REV. STAT. 30.920(4)..................................................................................20

OR. REV. STAT. 163.266 ..............................................................................18, 25

OR. REV. STAT. 163.275 ..............................................................................18, 25

OR. REV. STAT. 167.017 ..............................................................................18, 25

Trafficking Victims Protection Act.............................................................18, 25, 27

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

## INTRODUCTION

The Court should deny Defendant Omegle's second motion to dismiss. Plaintiff A.M. brings a civil action against Omegle based on the physical and psychological harms she sustained from its product defects and sex trafficking. Omegle seeks dismissal largely based on defenses and arguments it either did or could have alleged in its first motion to dismiss dated January 18, 2022. *See* Case 3:21-cv-01674-MO Document 17.

On May 3, 2022, both parties appeared before the Court for oral arguments on Defendant's motion to dismiss Plaintiff's Complaint. The Court denied Defendant's motion to dismiss Plaintiff's four product liability claims and granted Plaintiff leave to amend her Section 1595 claim—now Plaintiff's fifth claim [dkt. 28]. In accordance with the schedule set on the record on May 3, 2022, Plaintiff filed her First Amended Complaint ("FAC") on May 5, 2022. On May 12, 2022, the court informed all parties it was in the process of drafting a written opinion for the first motion to dismiss. Omegle now brings a second FED. R. CIV. P. 12(b)(6) motion to dismiss all of Plaintiff's claims in their entirety. The Court should again deny Omegle's motion to dismiss Plaintiff's first four claims for both procedural deficiency pursuant to 12(g)(2) and for failure to meet the 12(b)(6) standard. The Court should also deny Omegle's motion to dismiss Plaintiff's sex trafficking claim because Defendant fails to show that it cannot withstand 12(b)(6) scrutiny.

## FACTUAL ALLEGATIONS

Omegle is a free online website that randomly pairs strangers for livestream video chats (FAC at 17). Omegle's tag line is "Talk to strangers!" (FAC at 22). Omegle's primary use is for individuals seeking immediate online sexual connections with strangers. (FAC at 24).

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

Omegle receives an estimated 66 million monthly visits; and at any one time, there are about 50,000 individuals using the product (FAC at 18). Omegle's homepage admits that "[p]redators have been known to use Omegle." Omegle allows anybody to use its product and requires no registration, name, or age verification. (FAC at 27). Omegle also does not use the industry-standard verifiers that disincentivize abusive conduct by users, such as requiring users to provide name, email, phone number or social media accounts or that access of the product be through the App Store or Google Play. (FAC at 27, 30). Omegle's revenue comes from advertisements for pornography and adult cam sites displayed on its site (FAC at 31).

Omegle invites kids as young as thirteen to use its product (FAC at 29). Omegle knowingly pairs children and adults for online sex acts. A BBC investigation revealed that in ten hours, journalists were paired with dozens of minors, some appearing as young as seven or eight, and in a two-hour period Omegle also paired them with twelve masturbating men, eight naked men, and seven porn advertisements (FAC at 33). Twice journalists were paired with prepubescent boys masturbating (FAC at 33). Omegle simply has no mechanism to prevent children and adults from being paired with one another and thus it is a playground for predators to find children. (FAC at 4-5).

In about 2014, Omegle matched then 11-year-old A.M. with a predator ("Omegle Predator") (FAC at 39-43). On Omegle, the Omegle Predator gained A.M.'s trust and then went on to elicit intimate images of A.M. (FAC at 43). The Omegle Predator blackmailed A.M. for three years to send him more intimate images, masturbate for him, and be available at his beck and call for online sexual performances for him and his friends. (FAC at 44-47).

The Omegle Predator forced A.M. to sex traffic other children on Omegle by making her recruit other children for him to exploit (FAC at 48). A.M.'s abuse eventually ended when

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

in 2018 she was contacted by Canadian law enforcement after they had done a raid on the man's

home and found images of her and other children. (FAC at 50). A.M. suffers extreme emotional

distress and trauma as a result of Omegle's defective and dangerous product and the sex

trafficking she was coerced into. (FAC at 52-60).

A.M.'s injuries were the predictable consequences of the regular, intended, and known

use of Omegle. (FAC at 63-64, 71).

## LEGAL STANDARD

The Court's ruling on Defendant's instant motion to dismiss should rest on the legal

standards underpinning the following two Federal Rules of Civil Procedure: 12(g)(2) and

12(b)(6). Pursuant to 12(g)(2), Defendant fails to explain how a Rule 12(b)(6) motion is a proper

vehicle for reversal of the court's earlier ruling vis-à-vis the four product liability claims. Even

so, all five of Plaintiff's claims are sufficiently stated to withstand Rule 12(b)(6) based on the

standards.

I.    **A.M.'s claims are sufficiently pleaded and Omegle fails to show that Plaintiff's complaint cannot withstand Rule 12(b)(6) scrutiny.**

Plaintiff's claims are sufficiently stated to withstand Rule 12(b)(6) based on the standards

set forth in Defendant's Motion to Dismiss.

FED. R. CIV. P. 8(a) provides that a complaint must contain "a short and plain statement of

the claim showing that the pleader is entitled to relief," and that "[e]ach allegation must be

simple, concise, and direct." Fed. R. Civ. P. 8. Courts "must accept all factual allegations of the

complaint as true" and "draw all reasonable inferences in favor" of the complaint. *Jewel v. NSA*,

673 F.3d 902, 907 (9th Cir. 2011). As such, this Court must also "'presume that general

allegations embrace those specific facts that are necessary to support the claim.'" *Id.*

Page 8 –PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A.M. alleges that Defendant on its own created Omegle, a dangerous product, that was used as intended to cause her harm, and, as such, she is entitled to relief. A complaint is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. On the pleadings, A.M. has alleged that Defendant created Omegle, a defective and dangerous product, and that Defendant is liable for the harms caused by its technology that introduced her to a child predator. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The factual allegations within A.M.'s complaint do not rest on legal conclusions or conclusory statements, but instead focus on factual context and, as such, this Court should assume their veracity. *See id.* at 678-9, 686.

Defendant conflates its objection to liability with its argument that Plaintiff's complaint is insufficiently pled. "The motion to dismiss is not a procedure for resolving a contest between parties about the facts or the substantive merits of plaintiff's case." *Williams v. Gerber Prods.*, 523 F.3d 934, 938 (9th Cir. 2008) (internal citations and quotation marks omitted) (quoting 5 Fed. Prac. & Proc. 1356); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (noting that courts may not dismiss claims because they believe "the [claimant] will fail to find evidentiary support"). "[A] claim [need only] be 'plausible,'" and "even a 'short and plain' statement can state a claim." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1048-49 (9th Cir. 2012). Even allegations of "extravagantly fanciful nature" are entitled to "the presumption of truth." *Iqbal*, 556 U.S. at 681; *Twombly*, 550 U.S. at 556. Twombly does not require courts at the

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

motion-to-dismiss stage to consider the likelihood that the allegations are true; instead, it requires courts to proceed on the assumption that all facts alleged are true. *Iqbal*, 556 U.S. at 681.

Plaintiff's claims are based in fact and Defendant has not shown otherwise. Regardless of Defendant's position that it is immune to Plaintiff's claims, Omegle harms children by providing a safe haven for predators to meet their prey—an issue only a jury can resolve. At the core of its motion to dismiss, Omegle is disputing the allegations and seeking to skirt liability through a misapplication of 12(b)(6).

## II. Defendant's motion to dismiss Plaintiff's first four claims based on Fed. R. Civ. P. 12(b)(6) should be denied because, not only are they improper, but also a meritless delay to these proceedings.

As Defendant rightly admits, FED. R. CIV. P. 12(g)(2) prohibits a party from filing duplicative motions, including motions to dismiss, that raise defenses that were available to the party but omitted from the earlier motion. ("*Limitation on Further Motions*. Except as provided in Rule 12(h)(2) or (3), a party that a makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.")

Despite this, for a second time, Defendant moves this Court to dismiss Plaintiff's product liability claims for failure to state a claim under FED. R. CIV. P. 12(b)(6). Defendant's motion pursuant to the first four claims is defective and without merit. Sister district courts have upheld denials of second-bite motions to dismiss: in *FTC v. Wellness Support Network, Inc., et al.,* the Northern District of California granted Plaintiff leave to amend its complaint. *See* Order Denying First Motion to Dismiss First Amended Complaint Filed by Defendants at, *Federal Trade Commission v. Wellness Support Network, Inc., et al.* at 1:21-28, No. 30 (C-10-04879 JCS), 2014

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

WL 644749. The FTC's amended complaint was "virtually identical to the original, except that it included more specific allegations." *Id.* Defendant raised a motion to dismiss under 12(b)(6) that did not challenge the sufficiency of the new added facts in the complaint, but rather challenged the claims on other grounds that were not raised in previous motion to dismiss. *Id.* This successive motion to dismiss was denied because the "judicial economy [did] not favor an exercise of discretion to consider Defendants' Motion." *Id.* at 5:17-18.

Defendant cannot simply keep raising 12(b)(6) motions piecemeal after it loses. Defendant has not waived its defenses to claims 1-4 and may raise these very same grounds at appropriate later stages in the adversarial process such as in its Rule 7(a)(2) answer and in a Rule 12(c) motion. Moreover, it's disingenuous for Defendant's sophisticated lawyers who specialize in defending technology companies around the country and have lawyers admitted to practice in Oregon to claim an epiphany about the applicability of Oregon product liability laws to its Oregon-based client. The issue of whether software is a product, which as discussed below, has been resolved affirmatively throughout the country is not an obscure issue in the tech lawyering community about which Defendant's lawyers can convincingly claim naiveté or oversight. Defendant's decision to omit arguments about the applicability of product liability laws in its original motion to dismiss was just that, a decision, likely calculated to focus the court on Section 230 instead of the merits of the causes of action. This deliberate omission is evidenced by Defendant's excessive discussion (21 mentions!) of *Herrick v. Grindr* in its original motion to dismiss, (a case no doubt of particular intrigue to Defendant's counsel because Plaintiff's attorney in this matter represented Herrick) and in which the product designation was central to the 12(b)(6) briefing. *Herrick v. Grindr, LLC,* 306 F. Supp. 3d 579 (S.D.N.Y. 2018), aff'd, 765 F. App'x 586 (2d Cir. 2019).

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

Surely with such extensive citation of *Herrick,* Defendant's counsel could not have overlooked SDNY Judge Valerie Caproni's pointed footnote that the product-versus-service designation was of no interest to the court. Even less convincing is Defendant's boggling new argument that coerced sexual abuse is not a physical harm. Plaintiff's sexual abuse was not a hidden fact in this case or one that would have just dawned on Defendant. Instead, Defendant doesn't like the judge's ruling and feels entitled to another bite at the apple.

Defendant relies on *Pepper v. Apple Inc*. to analogize to the case at hand and justify the Court's entertainment of their motion to dismiss; however, the procedural facts of *Pepper* do not apply here. 846 F.3d 313. This case is dissimilar to *Pepper*, where Apple's successive motions to dismiss were either based on defenses waived by 12(h), or newly added facts in Plaintiffs' amended complaints. Apple's fourth motion to dismiss against Plaintiffs' third amended complaint "moved *for the first time* to dismiss Counts I and II, relying on Rules 12(b)(1) and 12(b)(6)" on the basis of lack of subject-matter jurisdiction and standing. *Id.* at 319 (emphasis added). The standing issue was not decided, as Plaintiffs had not yet alleged "sufficient injury to confer Article III standing" and "in the absence of an Article III case or controversy, a ruling on the motion would be an advisory opinion." *Id.* at 320. It was Apple's fourth motion to dismiss that actually culminated in the first instance of litigating on the 12(b)(6) issue. It is this important procedural history that Omegle neglects to present in their instant motion.

While the *Pepper* court concedes: "Even if we assume arguendo that Apple's motion to dismiss under Rule 12(b)(6), made in its fourth Rule 12 motion, was late, any error by the district court in considering the motion on the merits was harmless," it is imperative to recognize that the potential error at issue was already committed. *Id.* Unlike Omegle's second motion to dismiss, Apple's successive motions did "not appear to have been filed for any strategically abusive

purpose." *Id*. Conversely, Defendant blanketly moves to dismiss Plaintiff's FAC, which includes allegations that have not only prevailed against Defendant's first motion to dismiss under 12(b)(6), but were amended *at the Court's instruction,* and no language was altered as to Plaintiff's first four claims. Because Defendant's instant motion does not raise any de novo claims, nor does it rely on facts newly alleged in the FAC, their claims should be denied. And most importantly, these defenses are not waived. As this motion to dismiss effectively recycles failed arguments from their previous motion to dismiss, particularly regarding Section 230, this motion should be denied.

 Plaintiff is prejudiced by Omegle bringing a 12(b)(6) motion to reargue a 12(b)(6) motion on claims already resolved. Such dilatory efforts to deprive Plaintiff of a decision made in her favor before the Court even files its forthcoming decision can not be rewarded. It is of no consequence that the controversy arises in an early stage of litigation as 12(b)(6) motions do. The proper procedure for losing a 12(b)(6) motion is not to bring more 12(b)(6) motions. All in all, Defendant provides no explanation for its piecemeal approach to 12(b)(6) motions.

## ARGUMENT

### I. A.M.'s product liability claims are proper.

 Omegle attempts to dodge liability by inventing a rule that would immunize any websites or tech platforms that do not sell their own products from product liability law. Omegle cites to no controlling caselaw to come to this conclusion. Courts regularly regard interactive computer services and other online products as products for purposes of product liability cases. Furthermore, Defendants blanketly state that Plaintiff's complaint fails to allege that she suffered physical harm. However, Plaintiff properly alleges that she suffered severe physical harms of

Page 13 –PLAINTIFF'S RESPONSE
IN OPPOSITION TO MOTION TO
DISMISS FIRST AMENDED
COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

sexual exploitation and abuse as the result of Omegle's defective product. As such, the Court

should deny Defendant's motion to dismiss Plaintiff's product liability claims.

### A.  Omegle is a product under Oregon's product liability law.

Omegle is undoubtedly subject to Oregon's product liability law where Plaintiff's severe

harms arose out of Omegle's defective design and failure to warn that regularly causes children

to fall victim to sexual predation. Omegle is the manufacturer of its product: Omegle.com and is

thereby subject to the purview of Oregon's product liability statute which reads:

> '[P]roduct liability civil action' means a civil action brought against a
> manufacturer, distributor, seller or lessor of a product for damages for personal
> injury, death or property damage arising out of: (1) Any design, inspection, testing,
> manufacturing or other defect in a product; (2) Any failure to warn regarding a
> product; or (3) Any failure to properly instruct in the use of a product. Or. Rev. Stat.
> Ann. § 30.900.

The absence of a statutory definition of the word "product" does not work in favor of

Defendant's argument that Omegle is not a product. Instead, it supports Plaintiff's claims by

indicating that where something is manufactured, designed in a manner that could be deemed

defective, and labeled inadequately it falls under the jurisdiction of both the statute and the

Court.

The Ninth Circuit's decision in *Lemmon v. Snap, Inc*. is both consistent with the fact that

Omegle is a product manufacturer and controlling in the instant case. 995 F.3d at 1085. In

*Lemmon,* "Parents seek to hold Snap liable for its allegedly unreasonable and negligent design

decisions." *Id.* at 1087. The negligent design lawsuit treats Snap as a "***products manufacturer***,

accusing it of negligently designing a ***product*** (Snapchat) with a defect (the interplay between

Snapchat's reward system and the Speed Filter)." *Id.* at 1092 (emphasis added). The *Lemmon*

plaintiffs brought the action in the Central District of California meaning the California product

liability statute governs. Section 1714.45(c) of the California Civil Code provides:

Page 14 –PLAINTIFF'S RESPONSE
IN OPPOSITION TO MOTION TO
DISMISS FIRST AMENDED
COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

> For purposes of this section, the term "product liability action" means any action
> for injury or death caused by a product, except that the term does not include an
> action based on a manufacturing defect or breach of an express warranty.

Like Oregon's product liability statute, California's omits any limiting definition of the word

"product." Regardless of this fact, the Ninth Circuit ruled that the Parents' product liability

claims against Snap were proper and repeatedly referred to Snapchat as a product and Snap, Inc.

as a products manufacturer. Like the instant case, the Ninth Circuit recognizes in *Lemmon* that

the facts fit squarely under the category of product liability law and should be litigated on the

merits where a dangerous product occasioned unspeakably horrific yet foreseeable harms.

> Here, the Parents seek to hold Snap liable for its allegedly "unreasonable and
> negligent" design decisions regarding Snapchat. They allege that Snap created: (1)
> Snapchat; (2) Snapchat's Speed Filter; and (3) an incentive system within Snapchat
> that encouraged its users to pursue certain unknown achievements and rewards. The
> Speed Filter and the incentive system then supposedly worked in tandem to entice
> young Snapchat users to drive at speeds exceeding 100 MPH . . . In short, Snap "is
> being sued for the predictable consequences of" designing Snapchat in such a way
> that it allegedly encourages dangerous behavior. *Id.* at 1091-94.

Omegle could likewise have taken reasonable measures to design a product more useful than it

was foreseeably dangerous before releasing the product into the stream of commerce. Omegle

could have made sure to match adults with adults – not adults with children. This analysis, like

that of *Lemmon,* centers on the foreseeable consequences of the product's defective design, not

on illusory theories Defendant points to in hopes of escaping accountability for the damage

Omegle has caused children and specifically Plaintiff.

Defendant relies on another meaningless distinction with no basis in law to argue for the

dismissal of Plaintiff's product liability claims. Omegle suggests there may be significance in the

difference between a product that is housed on a website versus a downloadable app. This is

immaterial to the product liability analysis reflected by the lack of caselaw surrounding this

issue. In fact, the absence of a downloading third party (i.e., the App Store or Google Play) that

could verify users, de-anonymize abusers, and offer a locus for user reviews is simply another attribute of what makes Omegle such a foreseeably dangerous product. Omegle's absence on the lucrative App Store suggests it's too dangerous to meet Apple's safety standards.

Defendant next runs through an arbitrary set of cases where product liability claims were brought against things that were not viewed as products and which have no bearing on the instant case. For example, Omegle cites to *Ass'n of Unit Owners of Bridgeview Condominiums v. Dunning*, to argue that a condominium is not a product for purposes of product liability. 187 Or. App. 595 (2003). In *Dunning*, the association complains about the defective design and construction of an 18–unit condominium that consists of two buildings. *Id*. However, Defendant fails to mention that the *Dunning* court bases much of its reasoning on the fact that Oregon courts have been "reluctant to expand the scope of strict liability ***when consumer interests are adequately protected by contractual and related remedies***." *Id.* at 617 (emphasis added). The court concludes, "[i]n this case, as we have recognized, claims for breach of express and implied warranties already are available to [plaintiffs]." *Id.* By this very logic, Omegle's product should undoubtedly fall under the purview of Oregon product liability law not only because it is a product, but because there are virtually zero alternative claims available to hold Omegle liable for its defects.

In *James v. Meow Media, Inc.*, 300 F 3d 683 (6th Cir. 2002), the plaintiffs sought to impose liability on several video game, movie production, and internet content-provider firms, for allegedly "desensitizing" a boy to violence and causing him to shoot several of his fellow high school students. *Id.* at 687. Relying on a prior Sixth Circuit decision holding that words and pictures contained in a board game could not constitute "products" for purposes of maintaining a strict liability action, the court upheld the dismissal of the plaintiffs' complaint because they too

were seeking to hold the defendants liable for the "ideas conveyed by the video games, movie cassettes and internet transmissions." *Id.* at 701, citing *Watters v. TSR*, 904 F2d 378 (6th Cir. 1990).

Defendant contends that movability is a central aspect in deciding whether something is a product. However, this is misleading. Defendant cites to *Dunning* and *Sease v. Taylor's Pets, Inc.*, 74 Or. App. 110, 116-17, 700 P.2d 1054 (1985) to argue that a "product" must be personal property and something "movable." *Dunning* refers to movability only once citing to the Black's Law Dictionary definition of chattel. "The term 'chattel,' in legal parlance, ordinarily refers to '[a]n article of personal property, as opposed to real property. A thing personal and moveable.'" *Dunning*, 187 Or. App. at 616.

The evolution of product liability law does not just stop with the 1990's adoption of the internet. With the internet came virtual products that, like other products, are manufactured for the masses These products have fixed uses and properties by way of code. Like other products, applications and websites are personal and moveable -- they are designed to be accessed through personal and moveable items (i.e., laptops, computers, smartphones) and *within* those devices, they are personal and moveable. A person using an application and website can open and close it, see and hear it, move it around from screen to screen, and from device to device; they can decide when to use it and when to put it away. Applications and websites take up space on a device's memory and deplete battery life.

To deny that product liability law applies to virtual products puts us all at grave danger as the world veers further into products that have as their primary features internet and code-based properties while the tangible properties are comprised of, if anything, negligible shells – such as

self-driving cars, smart products that guard our homes and children, artificial intelligence, facial recognition, robotics, and even technology that edits genes.

**B.  Plaintiff has plausibly alleged that she suffered physical harm.**

Plaintiff acknowledges that ORS 30.920(1) requires a plaintiff to establish "physical harm or damage to property" to establish a claim for strict product liability. In arguing that Plaintiff has not made allegations of physical harm, Omegle completely ignores a key factual allegation from the FAC: that Fordyce coerced Plaintiff into committing sex acts upon herself, such as masturbating with her hands and objects. (FAC at 8). Rather than grapple with these allegations, Omegle offers the red-herring discussion of whether certain physical *symptoms* alleged were merely a result of emotional distress rather than physical harm. (Motion to Dismiss at 28-29). This discussion has no bearing on the issue of whether Plaintiff adequately alleged physical harm by a product.

Omegle's implicit suggestion that Plaintiff's forced sex acts upon herself do not constitute physical harm is not only offensive, but is also inconsistent with state and federal law criminalizing the act of adults coercing children into performing sex acts. *See e.g.,* ORS 163.266 "Trafficking in persons," ORS 163.275 "Coercion"; ORS 167.017 "Compelling prostitution"; Trafficking Victims Protection Act ("TVPA").

The argument is also inconsistent with *Sease v. Taylor Pets., Inc.*, a case upon which Omegle relies. 74 Or. App. at 110 (1985), *rev. den.* 299 Or 854 (1985). There, one of the plaintiffs bought a skunk from the defendant pet farm. *Id.* at 112. Some days after the purchase, the skunk attacked and bit people, lost fur, developed sores on its body, and died. *Id.* An autopsy revealed that the skunk had rabies. *Id.* Two of the plaintiffs who had been bitten or made contact

Page 18 –PLAINTIFF'S RESPONSE
IN OPPOSITION TO MOTION TO
DISMISS FIRST AMENDED
COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

with the skunk's saliva were ordered to take rabies vaccinations in the form of injections. *Id.* at
113.

    Among the issues for the court to determine in *Sease* was whether judgment should be
reversed for a third plaintiff's claim because he did not suffer physical harm as a result of his
contact with the skunk. *Id.* In ruling on this issue, the court agreed with the defendants that there
had been no "physical harm" under ORS 30.920 because that plaintiff had not taken the rabies
injections <u>or</u> suffered illness as a result of coming into contact with the skunk's saliva. *Id.* at 117-
118. In so doing—and important for present purposes—the court acknowledged that taking the
injections, even without being bitten, satisfied the "physical harm" requirement under the statute.
*Id.* at 118. The defendants had in fact conceded that point as to another one of the plaintiffs who
had taken injections but not been bitten. *Id.* In so ruling the court did not rely on the contact with
the skunk's saliva as the physical harm or impact—rather, the decision acknowledged that harm
was satisfied by the injections some days later. *Id.* at 118-119. The ruling shows that the harm
need not be directly from the product, but rather a consequence of the conditions that make it
defective.

    This Court should reject Omegle's suggestion that alleging a "direct" physical harm in
this case is impossible because of Omegle's "intangible nature." (Motion to Dismiss at 28). As
discussed in the previous section, the physicality of an app or website has no bearing on product
liability law. To begin with, the physical harm in this case is at least as "direct" as that at issue in
*Sease*, which involved physical harm by way of injections some days or weeks after contact with
the faulty product rather than "direct" contact with the product itself. In this case, Plaintiff
alleges a less attenuated harm—both in time and place—than that which was at issue in *Sease*.
Second, the statute at issue refers to "physical harm" not "*direct* physical harm." This court need

not add requirements that go above and beyond the statutory language and what might otherwise be required to show causation. *See* ORS 30.920(1). Third, and as discussed in the next section below, the "direct" requirement, as framed by Omegle, does not take into account recent Oregon precedent on negligent infliction of emotional distress claims.

Finally, the parties and the Court in *Lemmon v. Snap* allowed a claim to proceed against Snap where two boys were killed in a tragic car accident while using the Snapchat filter. In that case, the plaintiffs presumably faced the same issue of the boys being killed by a product of equal tangibility or intangibility as Omegle and no greater "direct physical harm." Interpreting the statute in the manner in which Omegle suggests is inconsistent with how harm is caused by the product at issue.

Plaintiff has plausibly alleged that she suffered physical harm as a result of her use of Omegle. Omegle's Motion to Dismiss on that basis therefore should be denied.

      **1.  Alternatively, Plaintiff is not required to allege a physical harm to prevail on her product liability claims based on negligence (Counts 3 and 4).**

ORS 30.920(4) provides in pertinent part that "[n]othing in this section shall be construed to limit the rights and liabilities of sellers and lessors under principles of common law negligence." Consistent with that provision and Oregon law regarding negligent infliction of emotional distress claims, Plaintiff disputes Omegle's contention that a physical impact or contact is a "prerequisite" to recovering emotional damages under a negligence theory. (Motion to Dismiss at 27). Because Omegle violated an important legally protected interest of Plaintiff, she should be permitted to recover emotional damages for any negligently inflicted violation.

          **a.  Oregon law allows claims for negligently inflicted emotional distress where a sufficiently important legally protected interest is violated.**

Plaintiff acknowledges that a plaintiff who has suffered emotional distress as a result of a

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

defendant's negligence ordinarily may not recover damages for such emotional harm in the absence of some sort of physical impact. *Northwest v. Presbyterian Intercommunity Hosp.*, 293 Or 543, 558-61 (1982). There is an exception to this general rule, however, where a defendant has violated a "legally protected interest." *Id.*

In *Philibert v. Kluser*, 360 Or 698 (2016), the Oregon Supreme Court set out the framework for determining whether a plaintiff may recover for negligently inflicted emotional distress damages absent a physical impact or harm, stating that such damages are available where "a defendant negligently causes foreseeable, serious emotional distress and also infringes upon some other legally protected interest." *Philibert v. Kluser*, 360 Or 698, 702 (2016). That legally protected interest must be "an independent basis of liability separate from the general duty to avoid foreseeable risk of harm," and only those interests that are of "sufficient importance as a matter of public policy" merit protection for emotional impact. *Id.* at 704.

Far from being the *sine qua non* of legally protected interests, Oregon courts have opined that a physical injury is but *one type* of legally protected interest. *See, e.g., Philibert*, 360 Or at 703 ("Perhaps the simplest legally protected interest is that to be 'free from physical harm at the hands of another.'") (simplified). Legally protected interests may be established not only through special relationships and heightened duties, but through the "historical and evolving common law." *MT & M Gaming, Inc. v. City of Portland,* 360 Or 544, 562 (2016) ("As a general proposition, legal recognition can come from many sources—[including] the historical and evolving common law"); *Philibert,* 360 Or. at 706 ("In addition to court order and statute, common law also can be the source of a legally protected interest capable of supporting a claim for recovery of emotional distress.") (simplified).

In *Philibert v. Kluser*, the Court considered whether two brothers could recover

emotional distress damages after witnessing a truck driver negligently kill their brother as he

crossed the street. 360 Or at 707. In considering whether these damages could be recovered

without a physical impact, the court noted that "legal recognition [of these interests] can come

from many sources—statutes, constitutional provisions, regulations, local ordinances, and the

historical and evolving common law." *Id.* at 705-706. The court also recognized that the court

has previously allowed claims for negligently inflicted emotional distress to proceed when "an

asserted common law interest is sufficiently important to support the imposition of liability." *Id.*

at 706.

Noting the court's acknowledgement of legally protected common law interests in

avoiding the emotional harm at issue in *Hovis v. Burns*, 243 Or 607 (1966) (negligent handling

of spouse's remains) and *Hinish v. Meier & Frank Co.*, 166 Or 482 (1941) (unauthorized

telegram falsely stating plaintiff's support for particular legislation), the *Philibert* court held that

"the interest in avoiding being a witness to the negligently caused traumatic injury or death of a

close family member is similarly important." *Id.* at 707. In so doing, the court noted that this type

of emotional distress "is a palpable and distinct harm," one that "might be described as the

emotional equivalent of a physical injury." The court ultimately held that that "[w]e have no

difficulty concluding that plaintiffs have alleged the violation of a legally protected interest to be

free from the kind of emotional distress injury caused by defendant's negligence here." *Id*. at

707-708.

The most recent pronouncement by the court addressing the recovery of emotional

damages absent physical impact is in *Tomlinson v. Metro Pediatrics.* 362 Or 431. There, the

plaintiffs were the parents of a child whose physician failed to diagnose him with a rare genetic

disorder such that the parents gave birth to another child with the disorder. *Id.* at 435. After

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

concluding that the plaintiffs had a viable cause of action against the physician even though there was not a direct physician-patient relationship, the court turned to whether emotional distress damages may be recovered.

Acknowledging the general proposition that damages are recoverable to the extent necessary to make a plaintiff whole, the court went on to set forth the specific standard by which emotional damages may be recovered, stating:

> "[A]lthough emotional distress is not always a sufficient injury to establish a negligence claim, if the plaintiff establishes a negligence claim based on physical injury *or the invasion of some other legally protected interest*, then, generally speaking, the pain for which recovery is allowed includes virtually any form of conscious suffering, both emotional and physical."

*Id.* at 452 (emphasis added) (internal citations and quotations omitted). Applying that standard, the court held that the plaintiffs had identified a legally protected interest in receiving information that implicated their reproductive choices and could therefore recover emotional damages. *Id.*

The Oregon Supreme Court has thus allowed negligence claims for emotional distress damages in a variety of circumstances, including:

- Negligent handling of a family member's remains. *Hovis*, 243 Or 607.

- Negligent invasion of the right to enjoy one's home. *Macca v. Gen. Tel. Co. of N.W.*, 262 Or 414 (1972); *Edwards v. Talen Irrig. Dist.*, 280 Or 307 (1997).

- Negligent violation of a court order affecting father's custody of his child. *McEvoy v. Helikson*, 277 Or 781 (1977).

- Negligent violation of a statutory duty to enforce a restraining order. *Nearing v. Weaver*, 295 Or 702 (1983).

- Negligent exposure to witnessing traumatic injury or death of a close family member. *Philibert*, 360 Or 698.

- Negligent failure of doctor to communicate a child's diagnosis of genetic disorder to non-patient parents. *Tomlinson v. Metro Pediatrics, LLC*, 362 Or 431 (2019).

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

In each of the above cases, the Court determined that there was an "independent basis of liability" arising from the common law (or, in *Nearing* and *McEvoy*, respectively, a court order and statute), and that the interest was of sufficient importance such that a legally protected interest should be recognized.

The Oregon Court of Appeals recently applied the *Philibert* framework in *I.K. v. Banana Republic*, LLC 317 Or App 249 (2022). There, the Court was asked to consider for the first time whether an employer could be held liable for negligently allowing an employee to secretly videorecord a co-worker using the restroom. Noting that the privacy interest at stake was "compelling" and acknowledging the right to be free of the violation was consistent with Oregon's criminal and civil statutes forbidding such activity by an individual, the court held that "employees have a legally protected interest in being free from the emotional trauma of being secretly recorded as a result of the employer taking no steps to prevent it from occuring." *Id.* at 258. In so holding, the court rejected the defendant's argument that such an interest should not be recognized because it was a third-party rather than the defendant itself who intentionally placed the recording device in the bathroom, stating that in so arguing, "defendants once again improperly conflate determining the importance of an interest and determining whether a given defendant violated it." *Id.* at 263. The court ultimately held that the plaintiff had successfully alleged all of the necessary elements of a claim for negligent infliction of emotional distress. *Id.* at 266.

           **b.** **This Court should recognize a legally protected interest in being free from negligent invasions of a child's right not to be coerced into performing sex acts.**

The interest at stake in this case is of sufficient importance to merit protection from negligent invasions. It cannot be disputed that Plaintiff has been a victim of crime. *See e.g.,*

ORS 163.266 "Trafficking in persons," ORS 163.275 "Coercion"; ORS 167.017 "Compelling prostitution"; TVPA. The conduct at issue is not merely a case of hurt feelings or boorish behavior such that recognizing a claim would open the floodgates—it is severe. State and federal law have already made a public policy determination that the conduct at issue is egregious enough to criminalize it. Fordyce himself pleaded guilty to possession of child pornography for the purpose of distribution or making available child pornography and communication with a person who is believed to be under the age of 18 years old. FAC at 51.

The *Philibert* case is again instructive. In *Philibert*, the court considered for the first time whether a bystander has a legally protected interest in avoiding observing the physical injury of a close family member. *Id.* at 707. In making its ruling, the court noted that "witnessing sudden physical injury or death is a palpable and distinct harm, different in kind even from the emotional distress that comes with the inevitable loss of our loved one," and that the injury is the "emotional equivalent of a physical injury." *Id.* at 707. Bearing this in mind, the court ultimately had "no difficulty" concluding that the plaintiffs had a legally protected common law interest in remaining free from the kind of emotional distress injuries they suffered as a result of the defendant's negligence." *Id.* at 708.

Much like the emotional injury suffered by the plaintiffs in *Philibert*, the emotional injuries suffered by a person who is coerced into performing sex acts on herself as a minor is severe enough to merit protection. Plaintiff has plausibly alleged that this caused her severe emotional distress and it cannot seriously be disputed that a reasonable person in her position would feel similarly. Thus, in the event this Court finds that Plaintiff did not suffer "physical harm," her claim should nonetheless survive because of the importance of the legally protected interest asserted.

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

### 2.   The cases cited by Omegle do not override the *Philibert* framework.

Omegle relies on several product liability cases for the proposition that physical harm is required even in product liability cases based on negligence, none of which dictate dismissal of Plaintiff's complaint.

The *Lowe v. Philip Morris USA, Inc*. case cited by Omegle is one such example. There, the plaintiff sued a manufacturer of cigarettes, maintaining that her accumulated exposure to cigarette smoke has increased her risk of contracting lunch cancer in the future. 207 Or App 532, 534 (2006). In considering whether the plaintiff had a cognizable claim, the court discussed that "one of the fundamental principles of tort law has been that liability may not be imposed in the absence of proof of physical injury" but that "in recent years, *courts have fashioned various exceptions to that general rule.*" *Id.* at 538 (emphasis added).

In declining to recognize the plaintiff's claim, the court noted that there was "no allegation of actual, present—*even nonphysical*—injury or harm at all"—i.e., not even an allegation of emotional harm. *Id.* at 554, 446 (emphasis added). And while not spelling it out in terms of a failure to allege a worthy "legally protected interest" as later set forth in *Philibert*, the court in *Lowe* essentially made such a determination that the harm at issue did not rise to the level of seriousness required to recognize a claim without physical injury. Notably, the *Lowe* decision does not rely on, or even reference the "physical harm" component of ORS 30.920(1) in ruling against the plaintiff.

The *Kent v. Shiley* 1989 U.S. Dist. LEXIS 8962 decision, which Omegle cites for the proposition that the physical harm element applies to strict liability claims and product liability claims sounding in negligence, is similarly unavailing. (Motion to Dismiss at 27). The plaintiff in *Kent* contended, among other things, that Oregon law allows recovery of damages for emotional

harm absent physical injury under particular circumstances, citing *Northwest v. Presbyterian Intercommunity Hospital*, 293 Or 543 (1982). Those particular circumstances, the plaintiff contended were: 1) Oregon product liability forms an independent basis of liability; 2) psychic injuries are permitted where ordinary negligence threatens physical harm; and 3) because the defendant's conduct was "intentional or equivalently reckless of another's feelings in a responsive relationship." *Id.* at 9-10. The Court ultimately rejected all of these arguments, finding that "Plaintiff's claims in this case do not fit within any of these limited exceptions" and declined to "extend the law of Oregon to include such claims." *Id.* at *10-11. This, like *Lowe*, is another situation where the legally protected interest at issue—or perhaps the plaintiff's framing of those interests—was not sufficiently important to gain protection from the court.

> *Kent* may have been decided differently post-*Philibert*, though the legally protected interest at issue in *Kent* is also not as compelling as the legally protected interest in the case at bar, which is the interest in being free from becoming a victim of sexual exploitation and trafficking. In any event, case law does not preclude—and in fact supports—the recognition of Plaintiff's interest in this case as worthy of legal protection from negligent invasion.

**II.    A.M.'s sex trafficking claim under the TVPA is proper because Omegle has demonstrated the requisite *mens rea*.**

Section 18 USC 1595(a) provides for a person who is the victim of sex trafficking under Section 1591:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever **knowingly** benefits, **financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter**) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.18 USC 1591(a) (emphasis added).

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

This civil statute provides trafficking survivors with a private right of action to pursue claims against those who perpetrate trafficking (direct liability) or those who knowingly benefit financially from trafficking (beneficiary liability). The Court has held that 1595 imports all of 1591, including the "knowingly" *mens rea* requirement. *See* Transcript of Proceedings at 22-23, A.M. v. Omegle.com LLC, No. 3:21-cv-01674-MO (*argued* May 3, 2022). Plaintiff's sex trafficking claims meets the requirements set forth by the TVPA. According to the Model Penal Code, a person acts knowingly with respect to a material element of an offense when:

> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

Model Penal Code § 2.02(b)(i-ii). Here, Omegle was aware that both: their conduct in both) 1) participating in a venture engaging in sex trafficking, and 2) they financially benefitted from participation in such a venture, was of that nature.

### A.  Defendants knowingly participated in a venture engaging in sex trafficking.

For purposes of § 1591(a)(2), "participation in a venture" is defined as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4). To participate in a venture, however 1595 does not require an overt of participation in the sex trafficking itself. *See A.B. v. Wyndham Hotels & Resorts, Inc.,* 532 F. Supp. 3d 1018, 1025 (D. Or. 2021) ("Plaintiff is not required to allege that Defendants had actual knowledge of a sex trafficking venture or performed an overt act in furtherance of the venture to satisfy the 'participation' element of a civil TVPRA claim"); *see also B.M. v. Wyndham Hotels & Resorts,* Inc., No. 20-cv-00656-BLF, 2020 U.S. Dist. LEXIS 135494, 11 (N.D. Cal. July 30, 2020)("B.M. is not required to allege an overt act in furtherance of or actual knowledge of a sex trafficking

venture in order to sufficiently plead her section 1595 civil liability claim."); *see also A.B. v. Marriott Int'l, Inc*., 455 F. Supp. 3d 171 (E.D. Pa. 2020)

To successfully litigate this element against a Defendant, Plaintiff must ensure that the Defendant themselves were the actors participating in the trafficking venture. For example, in *B.M. v. Wyndham Hotels & Resorts, Inc.,* Plaintiff was unable to prove this element, because the facts pled "might be sufficient to state a plausible claim against the specific hotels where Plaintiff was trafficked (who Plaintiff has not sued)," instead of making a plausible claim that parent companies Wyndham and Choice directly participated in a venture that **trafficked B.M** at the specific facilities she alleges her traffickers used. In other words, the Complaint is devoid of any facts linking **these Defendants (Wyndham and Choice)** to the sex trafficking of **this Plaintiff (B.M.)**, and thus fails to make a plausible claim for Wyndham's and Choice's direct participation in venture." No. 20-cv-00656 -BLF, 2020 U.S. Dist. LEXIS 135494, 16 (N.D. Cal. July 30, 2020) (internal quotations omitted).

General allegations that knowledge of sex trafficking's prevalence in a particular industry is insufficient to show that Defendant participated in a venture. *See A.B. v. Wyndham Hotels & Resorts, Inc*., 532 F. Supp. 3d 1018, 1026 ("This Court noted that general knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate Defendants participated in the trafficking of Plaintiff."). However, general allegations noting the prevalence of sex trafficking occurring on a particular company's property or platform are sufficient to demonstrate this element. *See M.A. v. Wyndham Hotels & Resorts, Inc.,* 425 F. Supp. 3d 959, 963 (S.D. Ohio 2019) ("Section 1591 defines participation in a venture as knowingly assisting, supporting, or facilitating a violation of subsection (a)(1), § 1591(e)(4), and defines venture as any group of two or more individuals associated in fact,

Page 29 –PLAINTIFF'S RESPONSE
IN OPPOSITION TO MOTION TO
DISMISS FIRST AMENDED
COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

whether or not a legal entity, § 1591(e)(6).") (internal quotations omitted); *see also Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 913 (N.D. Cal. 2021) (holding that "general allegations that Twitter enables sex trafficking on its platform" – that Twitter makes it hard for users to report child sexual abuse material; permits large amounts of human trafficking on its platform, despite having the ability to monitor it and at least constructive knowledge of its posting on the platform; provides hashtags to help users find child sexual abuse material; rarely removes hashtags that are associated with such material; and has a search suggestion feature that makes it easier for users to find the illicit content—combined with specific allegations about how Twitter failed to remove child pornography videos depicting the plaintiffs, made it plausible that Twitter and the sex traffickers had a "tacit agreement."); *see also Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828 (C.D. Cal. 2021) ("Defendants generally enable child sex trafficking on their platforms and failed to remove the child pornography depicting Plaintiff, sufficiently pleading that Defendants participated in a venture with traffickers."). When Defendant is a secondary actor, other district courts have held that they must "actively and knowingly assist or facilitate a primary trafficking violation, which is tied to a specific victim." *G.G. v. Salesforce.com, Inc.*, No. 20-cv-02335, 2022 U.S. Dist. LEXIS 87616, 35 (N.D. Ill. May 16, 2022); *see also Doe v. Twitter, Inc.,* 555 F. Supp. 3d 889, 913 (N.D. Cal. 2021).

Omegle has knowledge about the sex trafficking on its platform and knowingly participated in the venture to fulfill this element, like the defendants in *Doe v. Twitter, Inc.*, and *Doe v. Mindgeek USA Inc*. There have been multiple news articles and studies noting the prevalence of child sexual abuse and pornography on the site. *See* FAC at 33, 34 ("According to the BBC, in the past couple of years, schools, police forces, and government agencies have issued warnings about Omegle in the US, UK, Norway, France, Canada, and Australia.), 37

("Just in the last year, Omegle has continued to be the subject of warnings from cybercrime experts and law enforcement officers all over the world."), 64 No. 3:21-cv-01674-MO. Further, Omegle's recently removed warning that "Predators have been known to use Omegle, so please be careful" demonstrates their actual and specific knowledge of trafficking on their platform, and their engagement with the venture. (Compl. at 38). Unlike the plaintiff in *A.B. v. Wyndham Hotel & Resorts, Inc.,* who alleged "notice of sex trafficking generally occurring at their hotels" without sufficiently linking notice of A.B.'s sex trafficking to "any of the Defendants," the cited news articles demonstrate that Omegle is specifically aware of child sex trafficking occurring on their specific platform. 425 F. Supp. 3d 959, 1026 (S.D. Ohio 2019).

Generally, Omegle's participation in the venture is similar to those of Twitter and Mindgeek: Omegle allows users to enter tags, which the site then uses to "Find strangers with common interests." Exhibit 1. This feature has no filter and allows users to input any tags they wish: For example, a teenager looking to speak with other teenagers may enter the tag "teenager," "high school," "teen," etc., and be connected with a predator looking to obtain child pornography. This feature is similar to Twitter's hashtags and Mindgeek's video tags, which were sufficient to establish engagement in a venture. *See Doe v. Twitter,* at 929; *see also Doe v. Mindgeek*, at 838. Further, the knowledge of the pervasiveness of child pornography on their platform and intentional choice not to implement age verification technology or other meaningful action to stop it or aid law enforcement to locate traffickers furthers Omegle's engagement in a venture. *See Mindgeek* at 838. As there Omegle is directly providing a platform for users to interact with; there are no franchisee entities under Omegle's umbrella. Therefore, there is no other entity they can use to scapegoat their knowledge of trafficking occurring on their platform.

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

Defendant may argue that Omegle, as an ISP, is not a primary actor under these, circumstances, rather a secondary actor and should be held to the "actively and knowingly assist or facilitate a primary trafficking violation," as in *Doe v. Twitter* and *G.G. v. Salesforce*. However, this analogy is false, since Omegle is not a secondary actor where they actively connected A.M. and the Omegle Predator. But for Omegle's facilitation of the exchange, the trafficking would not have occurred. Further, Omegle's operating platform is fundamentally different from Backpage and Twitter, which provide a platform for people to post and others to engage with third party content. Omegle, on the other hand, actively connects individuals who otherwise would not have communicated with one another. Therefore, Omegle's role in connecting the parties and creating a chat room for them to interact anonymously aligns Defendant with the hotels responsible for facilitating sex trafficking.

### B.  Defendants knowingly received a benefit from their participation in the venture.

"To state a claim under section 1595(a) beneficiary theory," Plaintiff "must allege facts from which the Court can reasonably infer that" Defendants "knowingly benefit[ted] financially or by receiving anything of value" from their participation in the venture. *Doe v. Mindgeek* at 838-839 *citing B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 U.S. Dist. LEXIS 135494, 2020 WL 4368214, at *4 (N.D. Cal. Jul. 30, 2020) (internal quotation marks omitted). This element "merely requires that Defendant knowingly receive a financial benefit" from the venture. *B.M. v. Wyndham Hotels & Resorts, Inc.,* No. 20-cv-00656-BLF, 2020 U.S. Dist. LEXIS 135494 (N.D. Cal. July 30, 2020 ("the rental of a room (or Wyndham and Choice's receipt of royalties for that rental) constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element."). ISP Defendants may monetize the posting of child pornography through advertising

Page 32 –PLAINTIFF'S RESPONSE
IN OPPOSITION TO MOTION TO
DISMISS FIRST AMENDED
COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

revenue, fee-based subscription services, and selling user data. *See Doe v. Mindgeek USA Inc.,* at 839.

Omegle's revenue model appears to derive from selling user and usage data, plus the selling of advertisements on its website, like *Mindgeek*. (FAC at 31). This financial benefit from the venture satisfies the profit requirement set forth by the TVPA.

## CONCLUSION

For the foregoing reasons, Plaintiff A.M. respectfully requests that this Court deny Omegle's motion to dismiss Plaintiff's FAC pursuant to FRCP Rule 12(b)(6) and 12(g)(2) or, in the alternative, grant Plaintiff leave to amend its FAC and such other appropriate relief it deems just and proper.

DATED: June 9, 2022

Respectfully submitted,

*/s/ Carrie Goldberg*

Carrie Goldberg #4542411 (*Pro Hac Vice*)
Naomi Leeds #5835962 (*Pro Hac Vice*)
C.A. Goldberg, PLLC
16 Court Street, 33rd Fl.
Brooklyn, NY 11241
Tel: (646) 666-8908
carrie@goldberglaw.com
naomi@goldberglaw.com

*/s/ Barbara Long*

Barbara C. Long, OSB #122428
Vogt & Long PC
101 SW Main Street, Suite 1900
Portland, OR 97204
Tel: (503) 228-9858
barb@vogtlong.com

*Attorneys for Plaintiff A.M.*

Page 33 –PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858