Venkat Balasubramani, OSB #180446
venkat@focallaw.com
Stacia N. Lay, WSBA #30594 (*Pro Hac Vice*)
stacia@focallaw.com
Kimberlee Gunning, WSBA #35366 (*Pro Hac Vice*)
kim@focallaw.com
**FOCAL PLLC**
900 1st Avenue S., Suite 201
Seattle, Washington 98134
Telephone: (206) 529-4827

Clifford S. Davidson, OSB #125378
csdavidson@swlaw.com
**SNELL & WILMER, LLP**
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
Telephone: (503) 624-6800

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| A.M., an individual, | Case No. 3:21-cv-01674-MO |
| Plaintiff, | |
| v. | **DEFENDANT OMEGLE.COM LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| OMEGLE.COM LLC, | |
| Defendant. | |

# TABLE OF CONTENTS

DISCUSSION ........................................................................................................................ 2

I.     Plaintiff Implicitly Concedes That She Cannot Satisfy The Actual Knowledge
Standard Of Section 1591 And Therefore The TVPA Claim Should Be Dismissed .......... 2

     A.     Plaintiff Relies Entirely On General Knowledge Of Unrelated Alleged
Incidents Of Misuse Of Omegle's Chat Service ....................................................... 3

     B.     The FAC Fails To Plausibly Allege That Omegle Knowingly Benefitted
From Participating In Fordyce's Alleged Sex Trafficking Venture ...................... 8

II.     Plaintiff Does Not Demonstrate Improper Motive Or Prejudice, And The Court
Should Exercise Its Discretion And Consider The Motion In Its Entirety ...................... 10

III.     The FAC Fails To Plausibly Allege Product Liability Claims Under Oregon Law ......... 12

     A.     Plaintiff Fails To Show That Omegle's Chat Service Is A "Product As A
Matter Of Law .................................................................................................. 12

     B.     The FAC Does Not Plausibly Allege Direct Physical Harm, As Required
To Recover Emotional Distress Damages For Product Liability Claims ........... 18

          1.     Plaintiff's Strict Product Liability Claims Should Be Dismissed As
A Matter Of Law Because She Has Not Sufficiently Alleged
Physical Harm ......................................................................................... 18

          2.     The Negligence-Based Product Liability Claims Should Be
Dismissed Because They Do Not Sufficiently Allege Physical
Harm Or Any Recognized Exception To The "Impact Rule" ................. 20

CONCLUSION .................................................................................................................. 26

# TABLE OF AUTHORITIES

## Cases

*A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921 (D. Or. 2020) ................................. 6

*A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018 (D. Or. 2021) ............................. 5

*Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164 (C.D. Cal. 2011) ................... 11

*Ass'n of Unit Owners of Bridgeview Condos. v. Dunning*,
187 Or. App. 595, 69 P.3d 788 (2003) ....................................................................... *passim*

*Cochran v. Burlington Coat Factory of Or., LLC*, No. 10-CV-6016-TC,
2010 U.S. Dist. LEXIS 101268 (D. Or. Aug. 25, 2010) ..................................................... 19

*Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242 (S.D. Fla. 2020) ........................................ 3, 4

*Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828 (C.D. Cal. 2021) ................................................ 5

*Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889 (N.D. Cal. 2021) ........................................................ 5, 6

*Doe v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016,
2021 U.S. Dist. LEXIS 64565 (S.D. Tex. Mar. 30, 2021) ..................................................... 5

*Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044 (E.D. Cal. 2008) ......................................... 4

*FTC v. Wellness Support Network, Inc.*, No. C-10-04879 JCS,
2011 U.S. Dist. LEXIS 102301 (N.D. Cal. Sept. 12, 2011) ........................................... 11, 12

*Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019) ............................... 9

*G.G. v. Salesforce.com, Inc.*, No. 20-cv-02335,
2022 U.S. Dist. LEXIS 87616 (N.D. Ill. May 16, 2022) ............................................. 4, 6, 8

*Herrick v. Grindr LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018) ..................................................... 15

*I.K. v. Banana Republic, LLC*, 317 Or. App. 249, 505 P.3d 1078 (2022) ......................... 22, 23, 24

*Intellect Art Multimedia, Inc. v. Milewski*, 899 N.Y.S.2d 60,
2009 N.Y. Misc. LEXIS 2325 (N.Y. Sup. Ct. 2009) ......................................................... 17

*James v. Meow Media, Inc.*, 300 F.3d 683 (6th Cir. 2002) ........................................................... 17

*J.L. v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048 (D. Colo. 2021) ......................................... 6

*Kent v. Shiley, Inc.*, No. 87-6554-E,
    1989 U.S. Dist. LEXIS 8962 (D. Or. Jan. 24, 1989) ........................................................20

*Lemmon v. Snap, Inc.*, No. CV 19-4504-MWF (KSx),
    2022 U.S. Dist. LEXIS 83399 (C.D. Cal. Mar. 31, 2022) ..................................................16

*Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021).................................................2, 15, 16, 23

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019) ........................5

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009).....................10

*Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018) .................................................. 9

*Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or. 543, 652 P.2d 318 (1982)....................21

*Pepper v. Apple Inc.*, 846 F.3d 313 (9th Cir. 2017)..................................................10, 11

*Philibert v. Kluser*, 360 Or. 698, 385 P.3d 1038 (2016)..............................................21, 22, 23, 24

*Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194 (9th Cir. 1998)....................................4, 25

*Sease v. Taylor's Pets, Inc.*, 74 Or. App. 110, 700 P.2d 1054 (1985) ............................................20

*Smith v. Ethicon Inc.*, No. 3:20-cv-00851-AC,
    2021 U.S. Dist. LEXIS 152495 (D. Or. May 13, 2021) ...............................................12, 21

*Sparling v. Doyle*, No. EP-13-CV-00323-DCG,
    2014 U.S. Dist. LEXIS 151113 (W.D. Tex. Oct. 23, 2014) .............................................12

*Streit v. Matrix Absence Mgmt., Inc.*, No. 3:12-cv-01797-AC,
    2014 U.S. Dist. LEXIS 20440 (D. Or. Feb. 18, 2014).......................................................26

## **Statutes and Rules**

18 U.S.C. § 1591...........................................................................................................*passim*

18 U.S.C. § 1591(a) ................................................................................................................ 8

18 U.S.C. § 1591(a)(1)....................................................................................................3, 7, 8

18 U.S.C. § 1591(a)(2)......................................................................................................8, 9

18 U.S.C. § 1591(e)(4)......................................................................................................2, 3

18 U.S.C. § 1595 ........................................................................................................ 1, 3, 5, 6

18 U.S.C. § 1595(a) ................................................................................................5

47 U.S.C. § 230................................................................................................*passim*

FED. R. CIV. P. 12(b)(6) ............................................................... 1, 11, 12, 25

FED. R. CIV. P. 12(c) ................................................................................... 1, 11

FED. R. CIV. P. 12(g)(2) ...............................................................................10

ORS 30.920...................................................................................................19

ORS 30.920(3) .........................................................................................13, 18

ORS 30.920(4) .........................................................................................20, 21

## **Other Authorities**

*Black's Law Dictionary* 215 (5th ed. 1981)................................................13

RESTATEMENT (SECOND) OF TORTS § 402A ...................................13, 14, 18

Having been given the opportunity to amend her claim under the Trafficking Victims Protection Act ("TVPA"), Plaintiff's minor amendment to that claim – essentially a single paragraph making conclusory "upon information and belief" allegations (*see* Dkt. 33 at 19) – demonstrates that Plaintiff cannot plausibly allege that Omegle violated the criminal sex trafficking statute, which requires knowing and active participation in the sex trafficking venture allegedly perpetrated by Fordyce against Plaintiff. Fatal to the TVPA claim is Plaintiff's exclusive reliance on the constructive knowledge standard of Section 1595, which the Court has already held does not apply in this case in light of the applicability of Section 230. As a result, Plaintiff has not pled, and cannot plead, a TVPA claim that is not barred by Section 230. Therefore, that claim should be dismissed with prejudice.

Nor has Plaintiff demonstrated that it is either inefficient or prejudicial for the Court to consider Omegle's challenges to Plaintiff's product liability claims (claims 1 through 4 of the FAC) concurrently with Omegle's indisputably timely challenge to the TVPA claim. While Plaintiff spends considerable time attempting to denigrate or attribute a malicious strategy to counsel, she fails to offer any logical reason why it would be more efficient to address challenges to the FAC piecemeal – *i.e.*, to address the TVPA claim now but force Omegle to answer and then raise the same challenges to the product liability claims in a Rule 12(c) motion, which would be assessed under the same standard applicable to this Rule 12(b)(6) motion. To the contrary, judicial efficiency supports addressing all challenges to the FAC at one time, particularly while the case is still in an early stage and the pleadings are not yet final.

As shown herein and in Omegle's opening brief, when the product liability claims are examined, they fail as a matter of law on at least two independent grounds: (1) Omegle's web-based chat service is not a "product" under Oregon's product liability law; and (2) Plaintiff has

not pled, and cannot plead, the physical harm required to recover the emotional distress damages she seeks from her product liability claims. Plaintiff fails to meaningfully refute either of these two flaws in her product liability claims. As to her failure to demonstrate that Omegle's web-based chat service is a "product," she largely relies on a case that did not address much less decide the issue (*Lemmon v. Snap*), and imagines an implausible parade of horribles if the Court does not conclude that Omegle's website is a "product." Additionally, presumably recognizing that her failure (and inability) to plead the necessary physical harm to save her product liability claims, Plaintiff relies on a new claim that she did not plead and likely could not plead in a manner that would escape Section 230's bar.

In short, each of the claims in the FAC fails as a matter of law and Plaintiff has not shown that any (further) amendment could correct the fatal flaws. Therefore, Omegle respectfully requests that the FAC be dismissed in its entirety with prejudice.

## DISCUSSION

### I.    Plaintiff Implicitly Concedes That She Cannot Satisfy The Actual Knowledge Standard Of Section 1591 And Therefore The TVPA Claim Should Be Dismissed

Although Plaintiff superficially acknowledges the Court's ruling that she must satisfy the actual knowledge standard of the criminal sex trafficking statute – 18 U.S.C. § 1591 – to state a TVPA claim that is not barred by Section 230 (*see* Dkt. 34 at 28), her discussion in opposition to this Motion focuses exclusively on purported constructive knowledge (*see, e.g.*, Dkt. 34 at 27-33). Additionally, in a vain attempt save this claim from dismissal, Plaintiff tries to amend her FAC via her opposition, making new allegations that do not appear in the FAC (*see, e.g.*, Dkt. 34 at 31); even if such amendment by opposition were permissible, these new allegations do not plausibly allege that Omegle "knowingly assist[ed], support[ed], or facilitate[ed]" Fordyce's alleged sex trafficking of Plaintiff, 18 U.S.C. § 1591(e)(4), much less that Omegle had any

contemporaneous knowledge whatsoever of Plaintiff, Fordyce, or his alleged actions toward her. As a necessary result, Plaintiff's TPVA claim – the fifth claim in the FAC – should be dismissed. Moreover, as it is clear that Plaintiff cannot plausibly allege facts demonstrating a violation of Section 1591 by Omegle, any further amendment would be futile.

> **A.     Plaintiff Relies Entirely On General Knowledge Of Unrelated Alleged Incidents Of Misuse Of Omegle's Chat Service**

Plaintiff purports to acknowledge the Court's ruling that she must plausibly allege that Omegle violated the criminal sex trafficking statute, Section 1591, which requires "knowing and active participation in sex trafficking" by, as relevant here, the interactive computer service ("ICS") defendant. *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1251 (S.D. Fla. 2020). *See also* 18 U.S.C. § 1591(e)(4) (defining "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)," *i.e.*, a primary sex trafficking violation). However, all of the allegations Plaintiff relies on – some of which are included in the FAC, some of which are asserted only in her opposition to this Motion – allege only that Omegle purportedly had knowledge of prior, unrelated incidents where users have criminally misappropriated its chat service. Similarly, Plaintiff relies solely on cases applying the inapplicable "knew or should have known" standard of Section 1595.

For example, Plaintiff asserts that Omegle allegedly "has knowledge about the sex trafficking on its platform and knowingly participated in *the* venture," noting "multiple news articles and studies" about the alleged "prevalence of child sexual abuse and pornography on the site." (Dkt. 34 at 30 (emphasis added).) Plaintiff further asserts that the removal of a warning on the website "demonstrates their actual and specific knowledge of trafficking on their platform, and their engagement with *the* venture." (Dkt. 34 at 31 (emphasis added).) These assertions are quintessential examples of alleged constructive knowledge – e.g., Omegle allegedly had

knowledge "of trafficking" occurring on its website and therefore has knowledge of and participated in "the venture." But such purported knowledge is insufficient to state a violation of the criminal sex trafficking statute. *See, e.g.*, *Kik*, 482 F. Supp. 3d at 1251 (allegation that Kik "knew that other sex trafficking incidents occurred on Kik" did "not satisfy FOSTA's requirement that the conduct underlying the claim violate" Section 1591). Among other issues, such assertions fail to plausibly allege that Omegle "actively and knowingly assist[ed] or facilitate[d] a primary trafficking violation, ***which is tied to a specific victim***," *i.e.*, Plaintiff. *G.G. v. Salesforce.com, Inc.*, No. 20-cv-02335, 2022 U.S. Dist. LEXIS 87616, *35 (N.D. Ill. May 16, 2022) (emphasis added). Plaintiff's new allegations, asserted only in opposition to this Motion, regarding the "common interests" feature of Omegle's chat service are similarly flawed.[1] At most, these new allegations suggest only how some users may use (or misuse) Omegle's chat service;[2] they say nothing about sex trafficking generally, much less that Omegle knowingly and actively participated in the alleged sex trafficking venture involving Plaintiff and Fordyce. Thus, even assuming arguendo that Plaintiff could make such new allegations consistent with Rule 11 standards, they would not save the TVPA claim from dismissal.

Plaintiff also makes a number of assertions regarding the sufficiency of general knowledge to state a TVPA claim against an ICS provider like Omegle but mistakenly relies on

---

[1] Plaintiff of course cannot amend the FAC via an opposition to a motion to dismiss. *See Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (allegations in an opposition to a motion to dismiss "are irrelevant for Rule 12(b)(6) purposes"); *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050 (E.D. Cal. 2008) (statements in opposition brief cannot amend the complaint).

[2] Additionally, it is not clear that the alleged prior incidents of misuse of Omegle's chat service by users involved sex trafficking as opposed to other criminal activity of users. To be clear, that is not intended to minimize *any* criminal action of users; rather, the point is that even if general knowledge was sufficient (which it is not), the knowledge logically must pertain to sex trafficking specifically.

cases addressing the inapplicable "knew or should have known" standard of Section 1595(a). For example, Plaintiff argues that while general allegations about "sex trafficking's prevalence in a particular industry" are insufficient to demonstrate knowing participation in a venture, general allegations about "the prevalence of sex trafficking occurring on a particular company's property or platform" are sufficient to make such a demonstration. (Dkt. 34 at 29.) The only cases Plaintiff cites in purported support of this proposition are (1) hotel cases that applied the constructive knowledge standard of Section 1595[3] and (2) the two FOSTA cases that held – contrary to this Court's conclusion – that the constructive knowledge standard applied to TVPA claims against ICS providers.[4] But, even assuming that Plaintiff's assertions accurately reflect the courts' holdings, those cases were applying the constructive knowledge standard of Section 1595 and therefore do nothing to demonstrate that Plaintiff has plausibly alleged the knowing and active participation in *the* specific sex trafficking venture that is required by the criminal sex trafficking statute, Section 1591.

Moreover, Plaintiff is simply incorrect in asserting that these and other cases applying the (inapplicable) constructive knowledge standard of Section 1595 hold that general knowledge about other incidents of sex trafficking is sufficient to allege participation in a sex trafficking venture. To the contrary, as Omegle demonstrated in its opening brief on this Motion (*see* Dkt. 33 at 23-27), even these cases require "facts sufficient to establish that the defendant knew or should have known ***about the trafficking of the plaintiff in particular—not about trafficking occurring on the premises in general***." *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-

---

[3] *See* Dkt. 34 at 29 (citing *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018 (D. Or. 2021) and *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019)).
[4] *See* Dkt. 34 at 30 (citing *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828 (C.D. Cal. 2021) and *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889 (N.D. Cal. 2021)).

5016, 2021 U.S. Dist. LEXIS 64565, *4 (S.D. Tex. Mar. 30, 2021) (emphasis added); *see also J.L. v. Best Western Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) (allegation that hotel franchisor was on "notice about the prevalence of sex trafficking generally at its hotel" was insufficient to show it "should have known about what happened to this plaintiff"); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Or. 2020) (finding that plaintiff failed to allege "facts which sufficiently link notice of Plaintiff A.B.'s sex trafficking to any of these Defendants"). Even the *Twitter* court – although it reached the incorrect conclusion about the appropriate knowledge standard for TVPA claims against ICS providers – held that the plaintiffs had to "allege at least that Twitter knew or should have known that ***Plaintiffs*** were the victims of sex trafficking at the hands of users who posted the content on Twitter." *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 925 (N.D. Cal. 2021) (emphasis added), *appeals docketed*, Nos. 22-15103 and 22-15104 (9th Cir. Jan. 25, 2022). *See also G.G.*, 2022 U.S. Dist. LEXIS 87616 at *47-48 (alternatively concluding that plaintiffs failed to allege a TVPA claim under Section 1595's standards in part because plaintiffs did not plausibly allege that the ICS provider "had actual or constructive knowledge of [plaintiff's] trafficking").

   Plaintiff then confusingly attempts to distinguish these cases by asserting that the plaintiffs in those cases failed to link "'notice of sex trafficking generally occurring at [the defendants'] hotels'" to "notice of [the plaintiff's] sex trafficking." (Dkt. 34 at 31.) In contrast here, Plaintiff continues, the news articles of other alleged incidents of misuse of Omegle's chat service by users "demonstrate that Omegle is specifically aware of child sex trafficking occurring on their specific platform." (Dkt. 34 at 31.) But notwithstanding Plaintiff's repeated use of "specifically" or "specific," this assertion is again simply another way of asserting that Omegle purportedly "should have been" aware of Plaintiff's alleged sex trafficking by Fordyce

because it allegedly had knowledge of prior, unrelated incidents of users criminally misappropriating its website. Similarly deficient are Plaintiff's assertions that the alleged "pervasiveness of child pornography" on the website or Omegle's alleged failure to "aid law enforcement to locate traffickers" somehow "furthers" Omegle's "engagement in *a* venture." (Dkt. 34 at 31 (emphasis added).) In short, like all of Plaintiff's other allegations, these assertions fail to plausibly allege *any actual knowledge of Omegle* with respect to Plaintiff, Fordyce, or Fordyce's alleged actions toward Plaintiff, much less actual knowledge of *the* sex trafficking venture allegedly perpetrated by Fordyce against Plaintiff.

Nor can Plaintiff dismiss the import of the hotel cases by asserting that some of them involved hotel franchisors, who were arguably one step removed from the alleged sex trafficking occurring at their franchisees' hotels. As stated in those cases, the requirement that plaintiff must plausibly allege that the defendant had actual or constructive knowledge that the purported venture it participated in violated the TVPA as to the *particular plaintiff* did not rest on the fact that the particular defendants at issue were hotel franchisors. Thus, Omegle is not attempting to use another entity to "scapegoat" the "knowledge of trafficking" allegedly "occurring on [its] platform" (*see* Dkt. 34 at 31); rather, it is Plaintiff who has failed to plausibly allege the knowledge required to show a violation of the criminal sex trafficking statute *by Omegle* necessary to state a TVPA claim *as to Plaintiff.*

Plaintiff also confusingly asserts that Omegle is not a "secondary actor" and therefore she is not required to demonstrate that it "'actively and knowingly assist[ed] or facilitate[d] a primary trafficking violation.'" (Dkt. 34 at 32.) But that assertion lacks support in both the FAC and the law. The criminal sex trafficking statute, Section 1591, addresses two types of violations: (1) a primary violation under subsection (a)(1) by the perpetrator of the sex trafficking; and (2) a

secondary violation under subsection (a)(2) by those who knowingly benefit from participating

in a venture that has engaged in a primary violation (*i.e.*, a violation of subsection (a)(1)). *See*

*G.G.*, 2022 U.S. Dist. LEXIS 87616 at *34-35; *see also* 18 U.S.C. § 1591(a). Plaintiff does not,

and cannot, allege that Omegle itself sex trafficked Plaintiff (e.g., knowingly recruited, obtained,

provided, or maintained Plaintiff knowing that she was under 18 and would be caused to engage

in a commercial sex act). *See, e.g., G.G.*, 2022 U.S. Dist. LEXIS 87616 at *34 (stating that, as

here, the plaintiff's complaint alleged only that plaintiff's "trafficker engaged in . . . trafficking

violations" under Section 1591(a)(1), not the ICS provider). Rather, Plaintiff asserts (but does

not plausibly allege) that Omegle knowingly benefited from participating in the sex trafficking

venture allegedly perpetrated by Fordyce. Therefore, Plaintiff must, but cannot, plausibly allege

that Omegle "actively and knowingly assist[ed] or facilitate[d] a primary trafficking violation

[*i.e.*, by Fordyce], which is tied to a specific victim [*i.e.*, Plaintiff]." *G.G.*, 2022 U.S Dist. LEXIS

87616 at *35. But here, Plaintiff has "not alleged that [Omegle] knew of [Plaintiff's]

circumstances or in any way assisted, supported, or facilitated the primary trafficking violation

[by Fordyce]." *Id.* As a result, Plaintiff has "not pleaded that [Omegle] itself violated § 1591" *id.*,

and therefore her TVPA claim is barred by Section 230. Moreover, as Plaintiff has shown that

she cannot allege the requisite actual knowledge to state a TVPA claim against Omegle, further

amendment would be futile. Therefore, the TVPA claim should be dismissed with prejudice.

### B.    The FAC Fails To Plausibly Allege That Omegle Knowingly Benefitted From Participating In Fordyce's Alleged Sex Trafficking Venture

As a result of Plaintiff's failure (and inability) to plausibly allege that Omegle knowingly

participated in a sex trafficking venture that violated the TVPA with respect to Plaintiff, the

Court need go no further to dismiss the TVPA claim with prejudice. However, as an additional or

alternative ground for dismissal, the FAC does not, and cannot, plausibly allege that Omegle

knowingly received a benefit from the alleged sex trafficking venture perpetrated by Fordyce against Plaintiff.

Plaintiff asserts generally that "ISP Defendants may monetize the posting of child pornography through advertising revenue, fee-based subscription services, and selling user data." (Dkt. 34 at 32-33.) Setting aside that Omegle is not an ISP (internet service provider) and that "posting of child pornography" does not necessarily equate with sex trafficking, that general allegation does not plausibly allege any facts demonstrating that Omegle knowingly benefitted from participating in the specific alleged sex trafficking venture perpetrated by Fordyce. Nor does the conclusory assertion that Omegle generally "derive[s] [revenue] from selling user and usage data, plus the selling of advertisements on its website" (*id.* at 33) make such a showing.

Section 1591 requires Plaintiff to plausibly allege that Omegle "knowingly . . . benefit[ed] . . . ***from*** participation in ***a*** venture which has engaged in" sex trafficking. 18 U.S.C. § 1591(a)(2) (emphasis added). However, missing from any allegation Plaintiff has made or could make is any link between knowing participation in the specific sex trafficking venture and any "user and usage data" or "advertisement[]" sales from which Omegle knowingly benefitted. Courts have held that the "participation giving rise to the benefit must be participation *in a sex-trafficking venture*"; therefore, "there must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual . . . knowledge of that causal relationship." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169-70 (S.D.N.Y. 2019) (finding that the complaint failed to plausibly allege that the company defendants received any of the alleged benefits "because of" their "facilitation of H. Weinstein's sexual misconduct"); *see also Noble v. Weinstein*, 335 F. Supp. 3d 504, 524

(S.D.N.Y. 2018) (finding that allegations failed to link Harvey Weinstein's brother's actions and his alleged receipt of benefits to Weinstein's "conduct toward [the plaintiff]").

Similarly, here, Plaintiff only alleges a general benefit Omegle purportedly receives in connection with all activity on its website. But absent from that general allegation is any link between Omegle's knowing and active participation in the alleged sex trafficking venture perpetrated by Fordyce from which Omegle knowingly benefitted. As a result, the amended TVPA claim fails on this independent ground and is subject to dismissal.

## II.    Plaintiff Does Not Demonstrate Improper Motive Or Prejudice, And The Court Should Exercise Its Discretion And Consider The Motion In Its Entirety

The Ninth Circuit has agreed with the "very forgiving" approach of the Third and Tenth Circuits with respect to Rule 12(g)(2). *Pepper v. Apple Inc.*, 846 F.3d 313, 318-19 (9th Cir. 2017). The court generally focused on two considerations: (1) whether the later-filed motion was filed for an improper purpose; and (2) efficiency. *Id.* at 318-20. Plaintiff does not make a compelling argument on either point.

Plaintiff argues that Omegle "deliberate[ly]" chose to omit arguments based on Oregon product liability laws in its initial motion in order to "focus the [C]ourt on Section 230 instead of the merits." (Dkt. 34 at 11.) But there is nothing nefarious or improper about this. Section 230 has been described as "*immunity from suit* rather than a mere defense to liability." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009). As such, Omegle understandably raised this threshold issue – that would obviate consideration of the legal merits of the product liability claims – in its initial motion. This does not amount to improper motive or a "strategically abusive purpose." *Pepper*, 846 F.3d at 320.

Plaintiff also fails to identify any prejudice that would result from the Court's consideration of Omegle's arguments directed at claims 1 through 4 raised in the present Motion.

Plaintiff argues that considering Omegle's arguments would "deprive Plaintiff of a decision made in her favor[.]" (Dkt. 34 at 13.) However, this ignores that Omegle could, as numerous cases recognize, simply raise the same arguments in a Rule 12(c) motion. *Pepper*, 846 F.3d at 318-19 (citing, among other cases, *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1175 (C.D. Cal. 2011)). Indeed, as courts caution, such an approach – requiring a party to assert a defense via a Rule 12(c) motion rather than a second Rule 12(b)(6) motion – results in inefficiency in the form of delay and repetitive motion practice. *Pepper*, 846 F.3d at 318-19. The case is still in its early stages, and the deadline for the Rule 26(f) conference is still nearly two weeks away. (*See* Dkt. 31.) Plaintiff fails to identify any cognizable prejudice she would suffer if the Court were to consider a legal question that it would nevertheless have to address if Omegle were forced to raise it via a motion for judgment on the pleadings. Certainly Plaintiff's assertion that she would be "deprive[d]" of a favorable decision is not prejudice, as Plaintiff acknowledges that Omegle remains free to challenge the product liability claims, including via a Rule 12(c) motion. (*See* Dkt. 34 at 11, 13.) Further, Omegle's Motion addresses claims that the Court found deficient and which were amended (the TVPA claim). There is no dispute that Omegle's arguments as to that claim are timely, and therefore the Court already has to rule on at least a portion of Omegle's challenges to the FAC. If anything, efficiency considerations counsel that all of these arguments be addressed together, in the present Motion. *See, e.g.*, *Allstate*, 824 F. Supp. 2d at 1175 (exercising discretion to address arguments in second motion where doing so "will prejudice neither side and will promote the efficient and just resolution of this case").

Plaintiff cites to *FTC v. Wellness Support Network, Inc.*, for the proposition that courts decline to consider arguments raised in later motions brought under Rule 12(b)(6). (*See* Dkt. 34 at 10, 11.) However, in that case, the court decided to not exercise its discretion to consider the

arguments in the later Rule 12(b)(6) motion because the motion presented "fact questions that are properly addressed at the summary judgment stage of the case and *not* on the pleadings." *FTC v. Wellness Support Network, Inc.*, No. C-10-04879 JCS, 2011 U.S. Dist. LEXIS 102301, *10 (N.D. Cal. Sept. 12, 2011) ("*Wellness Support*"); *see also Sparling v. Doyle*, No. EP-13-CV-00323-DCG, 2014 U.S. Dist. LEXIS 151113, *9-10 (W.D. Tex. Oct. 23, 2014) (citing *Wellness Support* and observing that "[w]hen courts have declined to exercise discretion, it has been on the grounds that the arguments turned on a factual question, and were more appropriate in a Rule 56 motion"). Unlike in *Wellness Support*, here, Omegle's motion raises purely legal questions regarding the sufficiency of the pleadings and the scope of Oregon's product liability law. *Wellness Support* therefore is not helpful to Plaintiff.

In sum, Plaintiff fails to identify any improper motive or prejudice that would result from the Court's considerations of all of Omegle's challenges to the FAC at the present time. The Court should exercise its discretion and consider these arguments.

## III.    The FAC Fails To Plausibly Allege Product Liability Claims Under Oregon Law

### A.    Plaintiff Fails To Show That Omegle's Chat Service Is A "Product" As A Matter of Law

Plaintiff cannot dispute that Oregon's "product liability statutory framework" governs all of her product liability claims, regardless of whether the claims are pled as strict liability claims (claims 1 and 2) or negligence claims (claims 3 and 4). *See Smith v. Ethicon Inc.*, No. 3:20-cv-00851-AC, 2021 U.S. Dist. LEXIS 152495, *7 (D. Or. May 13, 2021), *findings & recommendations adopted by* 2021 U.S. Dist. LEXIS 151954 (D. Or. Aug. 12, 2021) (internal quotation marks omitted) (explaining that "if the gravamen of a cause of action is a product defect, regardless of the theory of liability, then Oregon's product liability statutory framework . . . will govern the cause of action"). Indeed, she argues that "Omegle is undoubtedly

subject to Oregon's product liability law" because Plaintiff's alleged "harms arose out of Omegle's defective design and failure to warn[.]" (Dkt. 34 at 14.) Accordingly, Plaintiff does not dispute that whether Omegle's chat service is a "product" for purposes of Oregon product liability law is a threshold requirement for all four product liability claims. (*See id.*).

Notwithstanding that admission, however, Plaintiff proceeds to ignore the test courts have applied to determine whether something is a "product" for purposes of Oregon product liability law. As the Oregon Court of Appeals has explained, "[w]hether something is a 'product' within the meaning of [Oregon's product liability] statute is a question of law." *Ass'n of Unit Owners of Bridgeview Condos. v. Dunning*, 187 Or. App. 595, 615, 69 P.3d 788 (2003) ("*Dunning*"). The Oregon legislature's intent was that the statute "***shall*** be construed in accordance with" Section 402A of the RESTATEMENT (SECOND) OF TORTS ("Section 402A") and the comments to that section. *See* ORS 30.920(3) (emphasis added). In *Dunning*, the court looked to three comments to Section 402A when it determined whether there was a "product" within the meaning of Oregon's product liability law. 187 Or. App. at 616-17 (relying on comments a, c, and d of Section 402A). Specifically, and as relevant to the issues here, the court noted that "comment a notes that the subject of [S]ection 402A is the liability of 'suppliers of chattels'" and that the "term 'chattel,' in legal parlance, ordinarily refers to 'an article of personal property, as opposed to real property. ***A thing personal and moveable***.'" *Id.* at 616 (quoting *Black's Law Dictionary* 215 (5th ed. 1981)) (emphasis added).

Plaintiff's response to *Dunning*'s holding that products are "thing[s] personal and movable," *see id.*, is that while reliance on "movability" in determining whether Omegle is a product is "misleading[,]" Omegle's chat service ***is*** movable because "it is designed to be accessed through . . . moveable items" like laptops and smartphones, and because a user "can

open and close it," "move it around from screen to screen, and from device to device" and "can decide when to use it and when to put it away." (Dkt. 34 at 17.) The fact that Omegle's web-based chat service can be accessed through a tangible item that is movable, however, does not render Omegle's service movable itself. Further, while it is up to the user to "decide when to use" Omegle, deciding whether to use something is a decision equally applicable to a service (which Omegle is) as well as a product. And, while Omegle's chat service, like any website, can be accessed via different types of devices, multiple means of access to a service does not mean that the service is a movable, tangible "chattel" as Section 402A requires.

Plaintiff ignores the general principles set forth in *Dunning*, informed by the court's legislatively mandated reliance on Section 402A, and characterizes it as an "arbitrary" case with "no bearing on the instant case[,]" focusing on the specific alleged "product" in *Dunning* (a condominium). (Dkt. 34 at 16.) Plaintiff also claims that "the *Dunning* court bases much of its reasoning" as to whether a condominium qualifies as a "product" for purposes of Oregon's product liability law on what the court perceived as the availability of other causes of action to hold the *Dunning* defendants liable. (*See id.*) However, she cites no authority to support the argument that this Court should ignore the decision of an Oregon state court that construed an Oregon statute in accordance with Section 402A as the Oregon legislature intended, and instead rely on Plaintiff's unsupported contention that Omegle's chat service is a "product" for purposes of Oregon's product liability law "not only because it is a product, but because there are virtually zero alternative claims available to hold Omegle liable for its defects." (*See* Dkt. 34 at 16.)[5]

---

[5] Plaintiff made the strategic decision to plead claims 1 through 4 as product liability claims. The fact that her 18 U.S.C. § 2421A, ORS 30.867, and negligent misrepresentation claims have been dismissed (*see* Dkt. 28), and that her TVPA claim should also be dismissed, are not viable reasons for the Court to hold as a matter of law that Omegle's chat service is a "product."

Plaintiff asserts that "[c]ourts regularly regard interactive computer services and other online products as products for purposes of product liability cases," but cites no case law or other authority to support this argument. (*See* Dkt. 34 at 13.) At the same time, contradicting herself, Plaintiff concludes, illogically, that "the ***lack*** of caselaw surrounding this issue" means that the "difference between a product that is housed on a website versus a downloadable app" is "immaterial to the product liability analysis[.]" (*Id.* at 15 (emphasis added).) Notwithstanding the inconsistency of Plaintiff's statements, the conclusion is the same: Plaintiff has not met her burden to plausibly allege that the Omegle web-based chat service is a product, pursuant to the standard set forth in *Dunning*.

The only case law[6] Plaintiff cites to support her argument that Omegle's chat service is a "product" is *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), which Plaintiff claims is "controlling in the instant case." (*See* Dkt. 34 at 14-15.) The Court should reject Plaintiff's attempt to conflate the applicable law and facts of *Lemmon* with the issue here, namely, whether Omegle's web-based chat service is a "product" for purposes of Oregon's product liability statutory scheme, on several grounds.

First, the question of whether Snapchat was a "product" was not before the Ninth Circuit in *Lemmon*. While the Ninth Circuit reversed the district court's dismissal of the plaintiffs' "negligent design" claim, the only legal issue on appeal was whether Section 230 barred that

---

[6] Plaintiff also implies that a "pointed footnote" in *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018), is dispositive of the "product-versus-service" issue. (Dkt. 34 at 12.) The *Herrick* footnote, however, merely explains that "[t]he Court does not address Grindr's argument that it is not a 'product' for purposes of products liability[,]" noting that "[i]t appears to be common ground between the parties that strict products liability may apply to standardized and mass-downloaded software but does not apply to information or 'expressive' content" and that because "the CDA applies" the court need not address whether Grindr is a "product." *Herrick*, 306 F. Supp. 3d at 592 n.9. Here, there is no "common ground between the parties" as to whether products liability law may apply to Omegle's web-based chat service.

claim, not whether the plaintiffs had stated a negligent design claim under California (or any other state's) product liability law. *See Lemmon*, 995 F.3d at 1094-95 (explaining that "the district court dismissed the [plaintiffs'] amended complaint based entirely on the CDA[,] and we refrain from deciding an issue that the district court has not had the opportunity to evaluate") (internal quotation marks omitted). The language from *Lemmon* Plaintiff cites merely refers to the Ninth Circuit's description of how the plaintiffs pled their negligent design claim. *See id.* at 1092 (noting that the plaintiffs' "amended complaint does not seek to hold Snap liable for its conduct as a publisher or speaker" but rather, it "treats Snap as a products manufacturer, accusing it of negligently designing a product"). Second, Plaintiff claims that the "California product liability statute" governs the *Lemmon* plaintiffs' claims, because the case was brought in the Central District of California, and argues that because the California statute, like Oregon's product liability statute, "omits any limiting definition of the word 'product'," Omegle must be a product. (*See* Dkt. 34 at 14-15.) Even if the Ninth Circuit (or the Central District of California) had addressed the question of whether Snapchat is a "product" – which they did not – Plaintiff's strained comparison fails as the district court ruled on remand that Wisconsin law applied with respect to issues where the states' laws were not identical. *See Lemmon v. Snap, Inc.*, No. CV 19-4504-MWF (KSx), 2022 U.S. Dist. LEXIS 83399, *12-13 (C.D. Cal. Mar. 31, 2022).[7] Finally, Plaintiff herself has previously distinguished Omegle's chat service from Snap's product, arguing that "[u]nlike platforms that would not exist without publishing user content, such as, Snap, . . . Omegle's main role is to facilitate matches between users[.]" (Dkt. 23 at 6.)[8]

---

[7] As with the prior *Lemmon* decisions, the Central District of California's decision on remand did not address the question of whether Snapchat was a product. *See generally Lemmon*, 2022 U.S. Dist. LEXIS 83399.

[8] In the same court filing, notwithstanding her current insistence that Omegle is a "product," Plaintiff characterized Omegle as a "service," referencing "the ***service's*** accessibility to both

Plaintiff fails to distinguish cases cited by Omegle in which courts held that websites are not products for purposes of product liability claims. In *Intellect Art Multimedia, Inc. v. Milewski*, 899 N.Y.S.2d 60, 2009 N.Y. Misc. LEXIS 2325 (N.Y. Sup. Ct. 2009), which Plaintiff does not even reference in her opposition, the court rejected the plaintiff's argument, similar to Plaintiff's argument here, that "the national trend is moving towards a more expansive definition of the term 'product' in products liability analysis" and held that the plaintiff "has failed to demonstrate that, as a matter of law, the [defendant's] website is a product so that [the defendant] should be held strictly liable for any 'injury' caused thereby." 2009 N.Y. Misc. LEXIS 2325 at ***18. With respect to *James v. Meow Media, Inc.*, Plaintiff does not dispute, nor can she, that the court affirmed the district court's dismissal of the plaintiff's product liability claims because the plaintiff failed to show that "video games, movies, and ***internet sites*** are 'products' for purposes of strict liability." 300 F.3d 683, 700-701 (6th Cir. 2002) (emphasis added).

Ultimately, in the absence of any authority to support her argument that Omegle is a "product," Plaintiff falls back on policy arguments, proclaiming that "[t]he evolution of product liability law does not just stop with the 1990's adoption of the internet" and warning that "[t]o deny that product liability law applies to virtual products puts us all at grave danger," placing Omegle in the same category as "self-driving cars," "robotics, and even technology that edits genes." (Dkt. 34 at 17-18.)[9] Setting aside Plaintiff's extreme and wholly improbable prognostication, Plaintiff ignores the admonition of the Oregon Court of Appeals in *Dunning*,

---

adults and children" and alleging that Omegle "has knowledge that its ***service*** is used for sex trafficking." (Dkt. 23 at 15, 30 (emphasis added).)

[9] Plaintiff also claims that "Omegle attempts to dodge liability by inventing a rule that would immunize any websites or tech platforms that do not sell their own products from product liability law." (Dkt. 34 at 13.) This argument is inapposite, as Omegle does not sell or offer for sale any products whatsoever, in contrast to websites like Amazon.com, whose business model relies on selling products manufactured by third parties.

that "[t]he scope of the product liability statute . . . is not determined as a matter of [the court's] judgment as to what is the best policy in response to perceived public needs." 187 Or. App. at 617. To the contrary, "[t]he task of the courts is merely to determine the scope of the legislature's policy judgments as expressed in the statute." *Id.* When viewed through the lens of Oregon's product liability law, construed, as ORS 30.920(3) requires, "in accordance with" Section 402A, Plaintiff's bare-bones allegations that "Omegle is a product" fall far short of what the pleading standard requires.

Therefore, Plaintiff's product liability claims – claims 1 through 4 of the FAC – should be dismissed on this ground alone. Moreover, given that no additional allegations can change the nature of Omegle's chat service (and Plaintiff does not suggest she can offer any further allegations to demonstrate that Omegle is a "product"), Plaintiff's claims should be dismissed with prejudice.

### B.    The FAC Does Not Plausibly Allege Direct Physical Harm, As Required To Recover Emotional Distress Damages For Product Liability Claims

#### 1.    *Plaintiff's Strict Product Liability Claims Should Be Dismissed As A Matter of Law Because She Has Not Sufficiently Alleged Physical Harm*

Plaintiff admits, as she must, that she must plausibly allege "physical harm" to state a claim for strict product liability. (Dkt. 34 at 18.) In the absence of any allegations in the FAC regarding physical contact with Omegle – not surprising since Omegle is a web-based service, not a tangible, movable chattel – and absent any claim that Plaintiff had direct physical contact with Fordyce, Plaintiff claims that the "physical harm" requirement is met because "***Fordyce*** coerced Plaintiff into committing sex acts upon herself[.]"[10] (*Id.* (emphasis added).) Omegle does

---

[10] Plaintiff's focus on Fordyce's actions as the alleged basis for Omegle's liability does, however, demonstrate that Plaintiff seeks to hold Omegle liable for Fordyce's conduct, thereby implicating Section 230.

not dispute that Fordyce's actions were reprehensible, or that his coercion of Plaintiff to perform

sexual acts subjects him to criminal and potentially civil liability. Indeed, Fordyce pled guilty for

sex offenses arising from his unlawful actions towards Plaintiff. (Dkt. 29 at ¶ 51.)

The question of whether allegations regarding Plaintiff's non-consensual self-touching

committed per Fordyce's virtual directives are sufficient to meet ORS 30.920's "physical harm"

requirement for a product liability claim against *Omegle* is a different legal inquiry, however.[11]

And it is a requirement the Court should determine Plaintiff has not satisfied as a "physical

impact" or contact with the defective product is required. *See, e.g., Cochran v. Burlington Coat

Factory of Or., LLC*, No. 10-CV-6016-TC, 2010 U.S. Dist. LEXIS 101268, *4-5 (D. Or. Aug.

25, 2010) ("Oregon's product liability statutes . . . prohibit recovery for mental distress when

there is no ***physical harm*** or ***physical impact***") (emphasis added), *findings & recommendations

adopted by* 2010 U.S. Dist. LEXIS 101267 (D. Or. Sept. 19, 2010). Here, in the FAC, Plaintiff

includes a list of the harms she attributes to Omegle, which she describes as her "physical and

psychological injuries," all of which are pled as symptoms of, and resulting from, her alleged

emotional distress, including the "physical" conditions she references: seizures, "trouble

breathing," and "sleep and eating disturbances." (Dkt. 29 at ¶¶ 54, 55, 75.) In other words, the

physical harms Plaintiff actually alleges are consequences of emotional distress, not the inverse.

Plaintiff characterizes this argument as a "red-herring discussion" (Dkt. 34 at 18), but she does

not dispute that the only "injuries [that] have caused and will cause Plaintiff non-economic

damages" are those ***symptoms*** (*see* Dkt. 29 at ¶ 75). Tellingly, the only damages Plaintiff

---

[11] It is also notable that the FAC suggests that some of this activity did not even occur on
Omegle's website. (*See, e.g.*, Dkt. 29 at ¶¶ 42-44, 46 (alleging that Plaintiff provided her
"contact information" to Fordyce so they could communicate after the video chat and alleging
that Plaintiff sent images to Fordyce).)

requests, apart from punitive damages, are non-economic damages, e.g., damages for emotional distress. (*Id.* at ¶¶ 75-76.).

Relying on *Sease v. Taylor's Pets, Inc.*, 74 Or. App. 110, 700 P.2d 1054 (1985), Plaintiff claims that the physical harm required to state a claim for strict product liability "need not be directly from the product, but rather a consequence of the conditions that make it defective." (Dkt. 34 at 19.). In *Sease*, however, where plaintiffs pled strict product liability claims, each of the plaintiffs *did have direct physical contact with the allegedly defective product* – a rabid skunk – albeit in varying degrees, with these direct physical contacts causing physical injury to some of the plaintiffs but not others. 74 Or. App. at 112-13. Further, the court did not find as a matter of law that "taking the injections, even without being bitten, satisfied the 'physical harm' requirement under the statute[,]" as Plaintiff claims (*see* Dkt. 34 at 19); rather, the *Sease* defendants "conceded" that point. 74 Or. App. at 117. Here, as noted above, Plaintiff had no physical contact with Omegle and consequently, none of the injuries she alleges in the FAC, or damages she requests, arise from a physical harm caused by Omegle.

> ### 2. The Negligence-Based Product Liability Claims Should Be Dismissed Because They Do Not Sufficiently Allege Physical Harm Or Any Recognized Exception To The "Impact Rule"

As with strict product liability claims, Oregon law requires plaintiffs seeking to recover emotional distress damages for negligence-based product liability claims to prove a physical harm directly from the alleged product. *See, e.g., Kent v. Shiley, Inc.*, No. 87-6554-E, 1989 U.S. Dist. LEXIS 8962, *4-5 (D. Or. Jan. 24, 1989) (explaining that the requirement of "physical harm caused by the product failure or malfunction" for "strict products liability" also applies to "products liability claims based on negligence"). Relying on an erroneous interpretation of ORS 30.920(4), Plaintiff "disputes" this legal standard. In pertinent part, that statutory provision provides that "[n]othing in this section shall be construed to limit the rights and liabilities of

sellers and lessors under principles of common law negligence[.]" ORS 30.920(4). The effect of

that language, however, is to confirm that "Oregon's product liability statute permits [p]laintiffs

to advance multiple theories of potential recovery[.]" *Smith*, 2021 U.S. Dist. LEXIS 152495 at

*8. In other words, "Oregon's product liability statute . . . does not preempt other common law

claims but merely embraces those claims such that the statutory framework applies to those

theories of liability." *Id.* at *6 (internal quotation marks omitted).

　　As Plaintiff acknowledges, citing *Norwest v. Presbyterian Intercommunity Hosp.*, 293

Or. 543, 558-61, 652 P.2d 318 (1982), "a plaintiff who has suffered emotional distress as a result

of a defendant's negligence ordinarily may not recover damages for such emotional harm in the

absence of some sort of physical impact." (Dkt. 34 at 20-21.) Oregon courts refer to this

principle as the "impact rule," which "allows a plaintiff to seek damages for negligently caused

emotional distress only if the plaintiff can show some physical impact to himself or herself." *See*

*Philibert v. Kluser*, 360 Or. 698, 700, 385 P.3d 1038 (2016). There are narrow exceptions to the

"impact rule," as detailed below, but the FAC does not include plausible allegations that any

such exceptions are satisfied with respect to Plaintiff's negligence-based product liability claims.

　　Two exceptions to the "impact rule" are when (1) a defendant acted intentionally; or

(2) "a defendant negligently causes foreseeable, serious emotional distress and ***also*** infringes

some other legally protected interest." *Philibert*, 360 Or. at 702 (emphasis added). The first

exception does not apply here, as Plaintiff's product liability claims are pled as sounding in

negligence, and not as intentional torts. With respect to the second exception, "[i]n the context of

emotional distress, a legally protected interest is an independent basis of liability ***separate from***

***the general duty to avoid foreseeable risk of harm***." *Id.* at 704 (internal quotation marks omitted

and emphasis added). Only those legally protected interests that are "of sufficient importance as

a matter of public policy to merit protection from emotional impact" give rise to a right to recover emotional distress damages. *Id.* at 705 (internal quotation marks omitted).

Plaintiff discusses *Philibert* at length, suggesting that it is dispositive of Omegle's arguments, but minimizes, or outright ignores, three important points. First, *Philibert* was not a product liability case, subject to the requirements of Oregon's product liability statute. Rather, the plaintiffs sought damages from defendant, a truck driver, for "negligently caused emotional distress"[12] they experienced after witnessing their younger brother's death when he was run over by the driver's truck. *Philibert*, 360 Or. at 700. Second, while the *Philibert* court discussed the "impact rule" and its exceptions more generally, its holding was more limited, and focused on situations where the plaintiff is a bystander seeking to recover emotional distress damages resulting from witnessing injury to another person. *Id.* at 710. The court adopted a test for "bystander recovery," wherein the bystander may only recover damages for emotional distress if he or she "witness[es] a sudden, *serious physical injury* to a *third person* negligently caused by the defendant" and "perceive[s] the events that caused injury to the third person as they occurred." *Id.* at 712-13. In other words, while *Philibert* formulated a test for bystander recovery for emotional distress that did not require the plaintiff-bystander to experience a physical impact, serious physical impact resulting in harm is still key to the liability analysis.

Third, Plaintiff ignores that to invoke an exception to the "impact test," including violation of a "legally protected interest," a plaintiff must actually "identify the invasion of an interest that is or should be legally protected" in her pleading. *Philibert*, 360 Or. at 704 n.3. As the Oregon Court of Appeals recently explained in *I.K. v. Banana Republic, LLC*, citing

---

[12] The Oregon Supreme Court also used the more common phrase "negligent infliction of emotional distress" to refer to the plaintiffs' claim. *See Philibert*, 360 Or. at 708.

*Philibert*, the first step in a court's analysis of a claim for negligent infliction of emotional distress ("NIED") (which again Plaintiff has not pled) is "determin[ing] ***whether the complaint alleges the violation of a legally protected interest***." 317 Or. App. 249, 255, 505 P.3d 1078 (2022) (emphasis added). It is only after that question is answered in the affirmative that the court can proceed to the next step and determine whether the legally protected interest alleged in the complaint "is of sufficient importance as a matter of public policy to merit protection from emotional impact." *Id.* Finally, the court "must determine ***whether the complaint alleges that the emotional distress was the foreseeable result of the violation of the legally protected interest***." *Id.* (emphasis added).

Here, Plaintiff assumes that the "legally protected interest" exception applies to her negligence-based claims as actually pled in the FAC: product liability claims for "Negligent Design" and "Negligence – Failure to Warn or to Provide Adequate Instruction." (*See* Dkt. 29 at ¶¶ 92-96, 98-100.) But these claims were *not* pled as NIED claims[13] and the FAC contains no allegations regarding any "legally protected interest," much less one of "significant importance" sufficient to overcome the general rule that emotional distress damages are not recoverable absent physical impact. Nor does the FAC allege that Plaintiff's emotional distress was "the foreseeable result" of the violation of a legally protected interest.

Rather than address how the allegations in the FAC plausibly allege an exception to the "impact rule" (much less that they plead an NIED claim), Plaintiff's argument focuses on the second step outlined in *I.K.*, arguing at length that this Court "should recognize a legally

---

[13] Undoubtedly, Plaintiff made a strategic decision to plead these claims as negligence-based product liability claims in the hope of avoiding Section 230's bar based on the Ninth Circuit's decision in *Lemmon*. While Omegle respectfully disagrees that the *Lemmon* decision applies to Plaintiff's product liability claims, having successfully argued that her product liability claims fall outside Section 230, she cannot now assert that these claims were actually NIED claims.

protected interest in being free from negligent invasions of a child's right not to be coerced into performing sex acts." (Dkt. 34 at 24-25 (emphasis omitted).) She provides multiple examples of when Oregon courts have recognized various legally protected interest of sufficient importance such that plaintiffs have stated a claim for *negligent infliction of emotional distress* in the absence of physical impact; notably, none of the cited cases involve product liability claims. (*Id.* at 22-24.) However, Plaintiff has ***not*** demonstrated that she has plausibly ***alleged*** a claim for negligent infliction of emotional distress. Her only reference to allegations supporting her new legal theory is the bald conclusion, unsupported by citation to the FAC, that "the emotional injuries suffered by a person who is coerced into performing sex acts on herself as a minor is severe enough to merit protection" and that she "has plausibly alleged that this caused her severe emotional distress." (Dkt. 34 at 25.)

The FAC's allegations supporting Plaintiff's negligence-based product liability claims, however, tell a different story. The FAC is devoid of any allegations regarding Omegle's violation of a legally protected interest. The FAC does not identify any such interest and its source, nor does the FAC include allegations explaining how Plaintiff's alleged emotional distress was the foreseeable result of that violation. *I.K.* and *Philibert* require more.

Instead, the allegations supporting Plaintiff's negligence-based product liability claims (claims 3 and 4) emphasize the Omegle "product." Specifically, with respect to the "Negligent Design" claim, the FAC alleges that Omegle had a duty "to design the website in such a way that made it safe for its intended use"; that Omegle "knew or should have known" that the alleged "product" "was designed defectively, creating an unreasonable risk of injury to its users;" and that the "proximate result" of the allegedly defective "product" design was Plaintiff's "permanent injuries[.]" (Dkt. 29 at ¶¶ 92-96.) Similarly, the "Negligence – Failure to Warn or to

Provide Adequate Instruction" claim alleges that "Omegle owed a duty to Plaintiff to only place in the stream of commerce a product containing adequate warning and instruction"; that "[t]he product was placed into the stream of commerce . . . in a defective and unreasonably dangerous condition in that it should have contained or been accompanied by [a] warning that the website permits only adults 18 and older" as well as a warning "that there is no method to report abusive users or to seek relief in the event that one witnesses misuse of the product"; and that this "negligent failure to provide adequate instruction and warning" was the proximate cause of Plaintiff's injuries. (Dkt. 29 at ¶¶ 98-100.)

As described in Plaintiff's opposition *brief*, however, as contrasted with the FAC, Omegle's alleged negligence is untethered to its purported duty as a manufacturer or seller of a "product." Plaintiff argues that "[b]ecause Omegle violated an important legally protected interest of Plaintiff, she should be permitted to recover emotional damages for *any negligently inflicted violation*." (Dkt. 34 at 20 (emphasis added).) This reframing of Plaintiff's negligence-based product liability claims in her opposition effectively erases the product liability aspect of those claims.

The Court should reject Plaintiff's attempt to reframe her negligence-based product liability claims to avoid dismissal. It is the actual allegations in the FAC that the Court reviews in ruling on Omegle's motion to dismiss, not Plaintiff's effort to amend her allegations in her opposition brief. *See, e.g., Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (allegations contained in an opposition to a motion to dismiss "are irrelevant for Rule 12(b)(6) purposes"). As with her strict product liability claims, Plaintiff has not sufficiently and plausibly alleged physical harm, a prerequisite for recovery of emotional distress damages. Nor does the FAC include allegations that support the Court applying any recognized exception to the

"impact rule" to Plaintiff's negligence-based product liability claims.

Therefore, Plaintiff's product liability claims should be dismissed on this independent ground, without leave to amend. *See Streit v. Matrix Absence Mgmt., Inc.*, No. 3:12-cv-01797-AC, 2014 U.S. Dist. LEXIS 20440, *9 (D. Or. Feb. 18, 2014) ("Amendment to state a claim for damages that are unavailable as a matter of law would be futile.").

## CONCLUSION

Thus, Omegle respectfully requests that the FAC be dismissed in its entirety. Moreover, notwithstanding Plaintiff's non-specific request that she be granted leave to amend (*see* Dkt. 34 at 33), amendment would be futile due to the fatal flaws described herein, including Plaintiff's failure to correct the deficiencies in the TVPA claim despite a prior opportunity to do so.

Dated this 23rd day of June, 2022.            Respectfully submitted,

FOCAL PLLC                                     SNELL & WILMER, LLP

By: s/ *Stacia N. Lay*                         By: s/ *Clifford S. Davidson*
    s/ *Kimberlee Gunning*                          Clifford S. Davidson, OSB #125378
    s/ *Venkat Balasubramani*                       1455 SW Broadway, Suite 1750
    Venkat Balasubramani, OSB #180446               Portland, Oregon 97201
    Stacia N. Lay, WSBA #30594 (PHV)                Telephone: (503) 624-6800
    Kimberlee Gunning, WSBA #35366 (PHV)            csdavidson@swlaw.com
    900 1st Avenue S., Suite 201
    Seattle, Washington 98134
    Telephone: (206) 529-4827
    venkat@focallaw.com
    stacia@focallaw.com
    kim@focallaw.com

*Attorneys for Defendant Omegle.com LLC*