# APPENDIX 1

Barbara C. Long, OSB No. 122428
barb@vogtlong.com
VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
Telephone: (503) 228-9858

Carrie Goldberg  (*pro hac vice*)
carrie@cagoldberglaw.com
Naomi Leeds (*pro hac vice*)
naomi@cagoldberglaw.com
C.A. GOLDBERG PLLC
16 Court Street 33rd Floor
Brooklyn, NY 11241
Telephone: (646) 666-8908

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | | |
|---|---|---|
| A.M., an individual, | ) | Case No. 3:21-cv-01674-MO |
| | ) | |
| Plaintiff, | ) | **SECOND AMENDED COMPLAINT** |
| | ) | |
| v. | ) | **[PROPOSED]** |
| | ) | |
| OMEGLE.COM LLC, | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Deleted: FIRST

PLAINTIFF, by and through her attorneys of record, and for her Second Amended

Complaint against Defendant, alleges as follows:

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

Deleted: FIRST

## PRELIMINARY STATEMENT

1.      This is a product liability case against a company that profits from procuring children for sexual predators.

2.      Omegle is a free online chat room that randomly pairs strangers from around the world for one-on-one video chats, inviting users to "Talk to Strangers!"

3.      As soon as two people are matched, they are immediately face-to-face with a stranger on their screens.

4.      Omegle markets its product to children as young as 13 and knowingly matches its child users with adults.

5.      Omegle's most regular and popular use is for live sexual activity, such as online masturbation. Omegle employs no mechanism to verify ages to prevent children from being matched with adults. Children cannot opt out of matching with adults. Nor can adults opt out of matching with children.

6.      Omegle is aware that users engage in sexual and masturbatory conduct on their platform. On its homepage, Omegle flouts the dangers of its product, acknowledging that Omegle users "may not behave appropriately" and that their moderation "is not perfect" enough to ban "misbehaving users."

7.      In approximately 2014, Omegle paired then eleven-year-old A.M. with Ryan Scott Fordyce ("Omegle Predator") who was in his late thirties at the time.

8.      Over the next three years, the Omegle Predator forced A.M. to take and send naked photos and videos of herself engaging in sex acts of his choosing. He coerced A.M. to record herself masturbating with her hands and objects, urinating, and engaging in other

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Deleted:** FIRST

sexual acts. Sometimes he made A.M. perform for him and his friends.

9.     The Omegle Predator also dispatched A.M. back onto Omegle to recruit other kids for him to abuse.

10.    The Omegle Predator regularly threatened A.M. that if she reported to police or told anybody about their activities, he would share his trove of pictures and videos and that she would get arrested.

11.    In January 2018, the Omegle Predator's home was raided by law enforcement, and 3,055 files of child pornography were found on his devices, including 220 images and videos of A.M. He currently awaits sentencing.

12.    Plaintiff seeks recovery against Omegle on her claims for:

    a.   Product liability arising out of defects in design and defects in warning;

    b.   Negligence in design, warning, and instruction; and

    c.   18 U.S.C. § 1595.

## PARTIES, JURISDICTION, AND VENUE

13.    Plaintiff A.M. is an American citizen currently residing in Christchurch, New Zealand. She was born in 2002 and at all times relevant to this action was a minor. Plaintiff wishes to proceed via the use of a pseudonym because of the sensitive and highly personal nature of the case, which involves allegations of a sexual nature for events that occurred while Plaintiff was a minor.

14.    Defendant Omegle.com LLC ("Omegle") is a Limited Liability Company organized in the State of Oregon with its principal place of business in Florida.

15.    Venue is proper under 28 U.S.C. § 1391(a) because Defendant resides in

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Deleted:** FIRST

Multnomah County, Oregon.

16.     Subject matter jurisdiction is proper under 28 U.S.C. § 1332 because the

amount in controversy is over $75,000.00 and there is complete diversity of the parties.

## FACTS

### Omegle's Product Design

17.     Omegle is a free online website that randomly pairs users so they can

livestream video chat with a stranger.

18.     Originally launched in 2009, Omegle is one of the largest and most popular

chat sites with users from countries all over the world and about 66,000,000 monthly visits.

At any given time, there are typically around 50,000 users online ready to chat.

19.     Leif K-Brooks founded Omegle and remains CEO today.

20.     According to data published by BBC, Omegle usage doubled during the

pandemic between January 2020 and January 2021.

21.     Omegle's innovation to the world of chatting apps is its complete user

anonymity, designed to make connections quick, convenient, and discreet. The random users

are identified as "You" and "Stranger."

22.     Omegle's anonymized stranger-matching is integral to its business model

encouraging its users to "Talk to strangers!"

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

Deleted: FIRST



23.     Omegle is designed for users to cycle quickly through strangers. As soon as users tire of a stranger Omegle connects them with, they can click a "stop" button and be transported to the screen of a different user, who likewise appears in their screen.

24.     Omegle is often used for individuals seeking an immediate online sexual connection with a stranger.

25.     Within seconds of using Omegle, users are likely to come face-to-face with nude users whether they want to or not.

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

Deleted: FIRST

26.    Omegle acknowledges that its product is home to predators but puts the onus on its users to not be preyed upon. Up through May 2021, its homepage read "Predators have been known to use Omegle, so please be careful."



27.    Omegle allows anybody to use its product and requires no registration, name, or age verification. Nor does it require users to register using other industry-standard verifiers such as an email, phone number, or social media account.

28.    Omegle's content moderation practices are reckless to the point of being altogether absent. Omegle's homepage provides that "Omegle video chat is moderated but no moderation is perfect." It provides in large lettering toward the bottom of the page: "Video is monitored. Keep it clean!" Despite its claim of not "perfect" moderation, the site also confusingly labels its Video chat button as the "Unmoderated section."

Deleted: FIRST



29.     Omegle knows kids use its product and allows kids as young as 13 to do so despite there being an extraordinarily high probability that within just a couple matches, a child is likely to be face to face with a masturbating adult. The sole warning for kids on Omegle's website states "[y]ou must be 18+ or 13+ with parental permission and supervision to use Omegle." Omegle does not actually require children to state their age or birth date to register for the product or confirm they have parental permission. The parental permission is legally deficient because parents cannot provide legal authorization for their children to become crime victims.

30.     Unlike many other internet products, Omegle is accessible only through its own website. In contrast, applications uploaded through a marketplace like the App Store or Google Play, where consumers are verified, provide an additional check and balance to prevent abuse.

31.     Omegle's revenue model appears to derive from selling user and usage data and by selling advertisements on its website. The advertisements are generally for pornographic and adult web cam sites. For example, below is a screenshot of an Omegle.com screen on July 7, 2021, that offers users the chance to "cum with strangers!"

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Deleted:** FIRST



32.     Ads for websites like heycum.com would be visible even to these 13-year-olds that Omegle says can use its product with parental permission.

33.     In February of 2021, BBC published an article detailing the prevalence of child sexual abuse material and grooming on Omegle. During the approximately 10 hours BBC journalists monitored Omegle, they reported being paired with dozens of minors, some appearing as young as seven or eight. Twice the journalists were paired with young prepubescent boys masturbating. In just one two-hour period, the BBC was connected at random with 12 masturbating men, eight naked males, and seven pornography advertisements. Joe Tidy, "Omegle: Children expose themselves on video chat site," BBC NEWS, (February 18, 2021), https://www.bbc.com/news/technology-56085499, (last visited October 24, 2021).

Page 8 – SECOND AMENDED COMPLAINT

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

Deleted: FIRST

34.     According to the BBC, in the past couple of years, schools, police forces, and government agencies have issued warnings about Omegle in the US, UK, Norway, France, Canada, and Australia.

35.     At all relevant times, Omegle represented to users in its privacy and community standards page that it protects users and values the web site's "safety, security and integrity."

36.     At all relevant times, Omegle represented its ability to ban or deny access to offending or unauthorized accounts in its Terms and Conditions of Service ("Terms of Service") dated July 1, 2014 (Wayback Machine, http://web.archive.org/web/20140701135308/http://www.omegle.com/. These Terms of Service provide in relevant part:

a.  By using the Omegle Web site, and/or related products and/or services ("**Omegle**", provided by Omegle.com LLC), **you agree to the following terms**: Do not use Omegle if you are under 13. If you are under 18, use it only with a parent/guardian's permission. Do not transmit nudity, sexually harass anyone, publicize other peoples' private information, make statements that defame or libel anyone, violate intellectual property rights, or behave in any other inappropriate or illegal way on Omegle. Understand that human behavior is fundamentally uncontrollable, that the people you encounter on Omegle may not behave appropriately, and that they are solely responsible for their own behavior. Use Omegle at your own peril. Disconnect if anyone makes you feel uncomfortable. You may be denied access to Omegle for inappropriate

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Deleted:** FIRST

behavior, or for any other reason. OMEGLE IS PROVIDED AS IS, AND TO THE MAXIMUM EXTENT ALLOWED BY APPLICABLE LAW, IT IS PROVIDED WITHOUT ANY WARRANTY, EXPRESS OR IMPLIED, NOT EVEN A WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. TO THE MAXIMUM EXTENT ALLOWED BY APPLICABLE LAW, THE PROVIDER OF OMEGLE, AND ANY OTHER PERSON OR ENTITY ASSOCIATED WITH OMEGLE'S OPERATION, SHALL NOT BE HELD LIABLE FOR ANY DIRECT OR INDIRECT DAMAGES ARISING FROM THE USE OF OMEGLE, OR ANY OTHER DAMAGES RELATED TO OMEGLE OF ANY KIND WHATSOEVER. By using Omegle, you accept the practices outlined in Omegle's <u>PRIVACY POLICY and INFORMATION ABOUT THE USE OF COOKIES</u> (updated 2014-06-03 – contains important information about video chat monitoring).

b. Parental control protections (such as computer hardware, software, or filtering services) are commercially available that may assist you in limiting access to material that is harmful to minors. If you are interested in learning more about these protections, information is available at <u>http://kids.getnetwise.org/tools/</u>as well as a number of other Internet sites that provide information on this form of protection.

c. * Omegle video chat is moderated. However, moderation is not perfect. You may still encounter people who misbehave. They are solely responsible for their own behavior.

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Deleted:** FIRST

37.    Although it sometimes represents that it will take a hard line against anyone who uses Omegle in abusive ways, Omegle does not actually do so. Just in the last year, Omegle has continued to be the subject of warnings from cybercrime experts and law enforcement officers all over the world. Omegle has taken no known action to mitigate the threat of child exploitation on Omegle. The failures of Omegle have been reported in numerous media outlets. (E.g., Christel Bell, "Cyber crime experts warn of Omegle chat site, growing in popularity with kids – and predators," Fox4 (November 10, 2020), https://fox4kc.com/news/cyber-crime-experts-warn-of-omegle-chat-site-growing-in-popularity-with-kids-and-predators/, (last visited July 7, 2021); Ashley Franklin, "Police warn Lincolnshire parents about website popular with children," Lincolnshire Live, (April 22, 2021), https://www.lincolnshirelive.co.uk/news/local-news/police-warn-lincolnshire-parents-website-5329461, (last visited July 7, 2021); Olivia Gantzer, "Thames Valley Police warning about new app, Omegle," Bracknell News (June 7, 2021), https://www.bracknellnews.co.uk/news/18501651.thames-valley-police-warning-new-app-omegle/, (last visited July 7, 2021).)

38.    Upon information and belief, Omegle's owners and operators make little to no effort to screen and monitor the activities of its members or to implement a report function that can flag abusive users. However, they are aware of the dangerous uses of their product given the recently removed warning stating: "Predators have been known to use Omegle, so please be careful." Omegle does not utilize proven and common software that would allow it to identify and block abusive users or identify and deny access to minors.

**Omegle matches a Predator to Plaintiff**

C.A. Goldberg, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

Vogt & Long PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Deleted:** FIRST

39.     In or about 2014, the Omegle Predator logged onto Omegle and was paired via text chat with A.M., an 11-year-old girl living with her family in Michigan. This was A.M.'s first time using Omegle alone. Other times, she and her friends had used it to have age-appropriate video chats at sleepovers.

40.     On the Omegle platform, the Omegle Predator asked A.M. her age to which she responded, "Eleven." The Omegle Predator continued the conversation and convinced A.M. that it was okay for them to keep communicating.

41.     By the end of this 15-minute chat, A.M. found herself believing the Omegle Predator and trusting that he would help her "feel better"—something he had promised her.

42.     The Omegle Predator asked A.M. for her contact information so they could stay in touch after the video chat ended.

43.     That same night, the Omegle Predator strategically gained A.M.'s trust and induced A.M. to send him photos of herself. First of her smile, and eventually, of her breasts, vagina, and other parts of her body. The Omegle Predator convinced A.M. that it was integral to her "healing" to trust him even if she felt uncomfortable.

44.     Within the first two weeks of their relationship, the Omegle Predator had groomed A.M. to become dependent on their communications. The Omegle Predator responded to A.M.'s reticence about sending him images by telling her she could stop at any time, but if she did, the images she had already sent would get leaked. He told her that if this happened, she would get in trouble with her family, school, and the police.

45.     A.M. feared that if she reported the man she had met on Omegle, she would go to jail. Not to mention the fact she never knew his full name.

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Deleted:** FIRST

46.     Over time, the Omegle Predator's abuse increased. He demanded A.M. include her face in all pictures and set deadlines for her to meet his demands for what poses, props, positions, and hairstyles he wanted in the pictures. At all hours of the day and night, she was required to be at his beck and call. Always, he threatened to disseminate the content to her family and friends who he said would disown her. Sometimes he threatened to kidnap A.M. or harm her family.

47.     As A.M. continued complying, the abuse became more severe, intricate, and sadistic. About 18 months in, the Omegle Predator forced A.M. to join him on group chats and watch him sell, trade, and otherwise traffic her pictures to his fellow pedophiles.

48.     Omegle continued to factor heavily into the abuse. The Omegle Predator forced A.M. into sex trafficking other children for him on Omegle. The Omegle Predator trained A.M. to go onto Omegle to recruit other children for him to exploit. On certain days of the week, he would assign Plaintiff to go back onto Omegle for a set number of hours and find other girls who "[he] would like." A.M.'s task would be to take screenshots of them, get their contact information, and relay everything to Fordyce.

49.     The abuse and trafficking continued for A.M. between the ages of eleven and fifteen. During these years the former A-student was frequently absent from school and withdrawn from friends and family.

50.     On January 12, 2018, when A.M. was 15, her parents were contacted by Canadian law enforcers who had identified her based on the high school sweatshirt she was wearing in a picture they saw of her. The Canadian law enforcers said they had raided the

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Deleted:** FIRST

home of a man name Ryan Fordyce and recovered 3,055 files of child pornography across his devices, including 220 images and videos of A.M.

51.    The Omegle Predator has pled guilty to possession of child pornography for the purpose of distribution or making available child pornography and communication with a person who is, or believed to be, under the age of 18 years old by means of telecommunication. In so doing, he admitted to meeting Plaintiff via Omegle when she was a minor, chatting with her on Omegle over a period of several years, possessing numerous graphic images of her in a state of nudity and performing sexual acts, and threatening to report Plaintiff to the police if she told anyone about their conversations.

52.    A.M. suffered and continues to suffer serious emotional pain and psychological distress as a result of Omegle's role first in facilitating her first encounter with a predator who abused her for roughly three years and then becoming the stomping grounds where she was forced to recruit more innocent victims for her abuser.

53.    Before this, A.M. was a young child developing in a healthy and gratifying way. She loved school and was a skilled horseback rider. After school and over the summers she used to make money working at her parents' ice cream shop scooping ice cream for her friends. All these childhood pleasures vanished because of one night on Omegle. A.M. stopped interacting with friends and doing things that once made her happy because she felt she did not deserve good things. She felt disgusted by her own face and body because she was convinced that all of this was her fault for going on Omegle that one night.

54.    A.M. has symptoms of Post-Traumatic Stress Disorder, has suffered seizures, and has panic attacks that render her bedridden for several days to follow.

Deleted: FIRST

Page 14 – SECOND AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

55.     A.M. is triggered by certain words and sounds. To this day, she cannot hear the phone ring without having trouble breathing and possibly experiencing a panic attack because of the phone call from law enforcement notifying her parents of the Omegle Predator. For example, A.M. can no longer wear her hair to one side because this was the Omegle Predator's preference when he gave her assignments.

56.     A.M. moved far away from Michigan in part because it was so unbearable to live near the darkness and fear from her adolescent and early teen years.

57.     A.M. is subject to fear and anxiety when she meets new people. She is in a constant state of hyper-vigilance, fearing that she might be triggered or, worse, develop a relationship with someone who will try to control her.

58.     A.M.'s relationship with her mother became incredibly strained as a result of her mother's secondary traumatic stress that has resulted from learning of her daughter's sexual exploitation by the Omegle Predator.

59.     The most difficult realization A.M. has had to come to terms with is that every person she becomes close with in the future will eventually learn of the abuse she suffered as a child. No amount of money spent, therapy, or time can erase the trauma or the abuse itself. Plaintiff feels that her future has become as tainted as her past.

60.     As a result of her trauma, A.M. sees her past in three compartments of time. The life she lived before the day she logged onto Omegle and met the Omegle Predator, the hell she experienced as his victim, and her current existence which is a struggle every day.

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Deleted:** FIRST

61.    Plaintiff is now in her second year of college where she is studying psychology in hopes of becoming a professional in children's mental health. She is currently volunteering with youth mental health organizations near her university.

62.    Plaintiff is dedicated to forming connections with the children and teenagers in her life to make sure that they know they can get help if they ever need it, and that they should never fear getting into trouble when asking for help. She is working tirelessly to become the ally that her eleven-year-old self was searching for that night on Omegle.

**PLAINTIFF'S HARM WAS THE PREDICTABLE CONSEQUENCE OF OMEGLE'S NEGLIGENT DESIGN AND MANUFACTURE**

63.    Omegle knew or should have known that predators use its product to groom and exploit children sexually. By failing to take action to prevent predators from carrying out these crimes against helpless children on Omegle and failing to cure its negligent design and manufacture, these predatory users felt empowered and incentivized to continue their abusive and malicious use of the product.

64.    Prior to 2014 when the Omegle Predator targeted Plaintiff, a series of news articles had been published to warn the public about the dangers of Omegle specific to child exploitation and abuse. E.g., Natasha Chen, "Parents Find Out Daughters Are Targeted Through Online Chat Site," News Channel 3 (October 18, 2012), https://www.wreg.com/news/parents-find-out-daughters-are-targeted-through-online-chat-site/, (last visited November 9, 2021); Brigida Mack, "Mom calls chat website a 'pedophile's paradise'," WBTV (July 16, 2011), https://www.wbtv.com/story/15091703/webiste-a-pedophiles-paradise/, (last visited November 9, 2021); "OK Mother Says Teen Was Sexually Assaulted By Man She Met Online," News9 (October 21, 2013),

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Deleted:** FIRST

https://www.news9.com/story/5e35a7af83eff40362be743b/ok-mother-says-teen-was-
sexually-assaulted-by-man-she-met-online, (last visited November 9, 2021).

65.     Between May of 2015 and May of 2021, the text on Omegle's homepage
included a sentence that read: "Predators have been known to use Omegle, so please be
careful." Instead of serving as a warning, though, the statement is an admission that Omegle
was well aware that crimes to children were occurring on its platform.

66.     Omegle's users, which they allow to be as young as thirteen, but in reality, are
often as young as Plaintiff when she was eleven years old, or even younger, have no cognitive
or judgment ability to evaluate the warnings or make informed decisions to consent to them.

67.     The warning further demonstrates that Omegle authorizes the use of its product
in an abusive manner.

68.     Despite years of child abuse and exploitation facilitated by Omegle, nothing
has been done to remove or restrict child access or to otherwise address the danger Omegle
created.

69.     In fact, the most recent change to the Omegle homepage occurred in June of
2021, shortly after Plaintiff's counsel sent a preservation letter to Omegle on April 9, 2021,
when the sentence, "Predators have been known to use Omegle, so please be careful," was
removed.

70.     Between its inception and today, Omegle's negligent design and manufacture
have created predictable consequences in a way that encourages dangerous behavior. No
reasonable measures have been taken to ensure that the product's design is more useful than it
is foreseeably dangerous.

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Deleted:** FIRST

71.     Omegle's product is designed perfectly to be used the way Fordyce used it – to procure children anonymously and without a trace.

72.     Omegle failed to take a number of ameliorative actions such as: identifying and banning predatory users through the language detected in chats or its video monitoring function it purports to employ, using common software that could be used to flag specific phrases used repeatedly by offenders, enabling users to report offending users by including a "Report" or "Abusive Content" button on the chat screen, changing its policy to only allow adults 18 and older to use the website, integrating an effective age verification mechanism to ensure that minors are not using the unmonitored video section of the site, requiring users to register their name or phone number with the site so that user misconduct can be traced by the site's administrators, making its product available through third party marketplaces like Apple and Google where customers are verified and downloads are recorded, and/or staffing a community standards and safety department with human beings.

73.     Industry standards, common practices, and common-sense measures all provide methods by which Omegle could mitigate the unsafe design of its software.

74.     Per its updated Privacy Policy, Omegle collects the very data that it would need to stop the abuse, including but not limited to mobile device identifiers, chat files, image files, location data, browser type, operating system information, IP addresses, cookies, and language data.

### DAMAGES

75.     As a result of Defendant's wrongful conduct, Plaintiff was sexually exploited by Fordyce, and suffered in the past and will suffer in the future, physical and psychological

Page 18 – SECOND AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

Deleted: FIRST

injuries consisting of depression, anxiety, post-traumatic stress disorder, sleep and eating

disturbances, shame, lack of trust, issues with sexuality, and difficulty with intimate

relationships. All of these injuries have caused and will cause Plaintiff non-economic

damages in the approximate amount of $22,000,000.00, the exact amount of which to be

determined by a jury at trial.

76.     Defendant acted with an outrageous indifference to a highly unreasonable risk

of harm and with a conscious indifference to the health, safety, and welfare of others,

including Plaintiff. Therefore, Plaintiff is entitled to punitive damages against Defendant in an

amount to be determined by a jury at trial.

### FIRST CLAIM FOR RELIEF

### Product Liability – Defect in design

77.     Plaintiff re-alleges and incorporates by reference the allegations contained in

the preceding paragraphs of this Complaint, including paragraphs 21-49, 52-59, 63-76.

78.     Omegle designed, coded, engineered, manufactured, produced, assembled, and

placed the product, Omegle, in the stream of commerce.

79.     Omegle is defectively designed. Namely, the combination of the website's user

anonymity and the absence of age restrictions amount to a design defect. This design defect

creates the predictable consequence of attracting both unsuspecting children and predatory

adults, thereby facilitating and encouraging dangerous behavior and harm to children using

the product.

80.     Omegle's defective design encourages sexual interactions among people of all

ages and by having no age restrictions, it creates a high probability that children will be

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Deleted:** FIRST

matched with predatory adults and violated by either exposing themselves or witnessing
adults exposing their genitals.

81.    Omegle's defective design and regular usage makes breaking the law
inevitable – underage users are statistically likely to be matched with nude adults and
pedophiles. And adult users, whether clothed or not are statistically likely to be matched with
nude children.

82.    Omegle's defective design is hospitable to child predators making it
foreseeable that the product will be used by predators for immediate sexual moments or to
lure children into abusive relationships as happened to A.M. Omegle is therefore a launchpad
for predators to target the children they then continue to abuse.

83.    Omegle's defective design renders the product unreasonably dangerous.

84.    As a direct and proximate cause of Defendant's design, coding, engineering,
manufacture, testing, inspection, production, assembly, and sale, Plaintiff sustained permanent
injuries and suffered extreme pain and agony.

**SECOND CLAIM FOR RELIEF**

**Product Liability – Defect in Warning**

85.    Plaintiff re-alleges and incorporates by reference the allegations contained in
the preceding paragraphs of this Complaint, including paragraphs 21-49, 52-59, 63-76.

86.    Omegle designed, coded, engineered, manufactured, produced, assembled, and
placed the website in the stream of commerce. Omegle contains a defective condition in that
use of the website should be permitted only to users 18 and older. Omegle should properly

Page 20 – SECOND AMENDED COMPLAINT          **C.A. GOLDBERG, PLLC**          **VOGT & LONG PC**
                                            16 Court Street                  1314 NW Irving St, Suite 207
                                            Brooklyn, NY 11241               Portland, OR 97209
                                            (646) 666-8908                   (503) 228-9858

**Deleted:** FIRST

warn users to notify them that children are strictly prohibited. Instead, Omegle specifically

permits children 13 and older to use the product and features an ineffectual and lighthearted

warning that understates the risk of using the website as a child.

87.    Additionally, Omegle fails to warn its users that there are no remedies to be

sought when one witnesses a user who misuses the website. Omegle fails to warn its users that

its operators do not and will not take action to ban abusive users.

88.    The warning defect makes Omegle unreasonably dangerous.

89.    Omegle was designed and manufactured by Defendant and has not been

changed and was in the same condition at the time of the injury.

90.    As a direct and proximate cause of Defendant's design, coding, engineering,

manufacture, production, assembly, and sale, Plaintiff sustained permanent injuries and

suffered extreme pain and agony.

## THIRD CLAIM FOR RELIEF

### Negligent Design

91.    Plaintiff re-alleges and incorporates by reference the allegations contained in

the preceding paragraphs of this Complaint, including paragraphs 19-49, 52-59, 63-76.

92.    Omegle designed, coded, engineered, manufactured, produced, assembled, and

placed the Omegle website in the stream of commerce despite its defective design. Omegle

owed a duty to Plaintiff to design the website in such a way that made it safe for its intended

use.

93.    Omegle knew or should have known when producing the website that it was

designed defectively, creating an unreasonable risk of injury to its users, including Plaintiff.

Page 21 – SECOND AMENDED COMPLAINT          **C.A. GOLDBERG, PLLC**          **VOGT & LONG PC**
                                            16 Court Street                   1314 NW Irving St, Suite 207
                                            Brooklyn, NY 11241                Portland, OR 97209
                                            (646) 666-8908                    (503) 228-9858

**Deleted:** FIRST

94.     Omegle designed, coded, engineered, manufactured, produced, assembled, and placed the Omegle server-side software in the stream of commerce. Omegle owed a duty to Plaintiff to design the server-side software in such a way that made it safe for its intended use.

95.     Omegle knew or should have known when producing the server-side software that it was designed defectively, creating an unreasonable risk of injury to its users, including Plaintiff.

96.     Omegle was negligent in failing to properly design, manufacture, and communicate the defect in the website and server-side software to Plaintiff and other users, creating a clear and immediate risk of serious injury to users such as Plaintiff. As a direct and proximate result, Plaintiff sustained permanent injuries and suffered extreme pain and agony.

## FOURTH CLAIM FOR RELIEF

### Negligence – Failure to Warn or to Provide Adequate Instruction

97.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint including paragraphs 21-49, 52-59, 63-76.

98.     Omegle owed a duty to Plaintiff to only place in the stream of commerce a product containing adequate warning and instruction. Without such warning or instruction, the product is unreasonably dangerous.

99.     The product was placed into the stream of commerce by Omegle and was used by Plaintiff and others in a defective and unreasonably dangerous condition in that it should have contained or been accompanied by warning that the website permits only adults 18 and older. Omegle also failed to warn users that there is no method to report abusive users or to seek relief in the event that one witnesses misuse of the product by another user.

Page 22 – SECOND AMENDED COMPLAINT

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Deleted:** FIRST

100.    As a direct and proximate cause of Defendant's negligent failure to provide adequate instruction and warning, Plaintiff sustained permanent injuries and suffered extreme pain and agony.

**FIFTH CLAIM FOR RELIEF**

**18 U.S.C. § 1595 Civil Remedy for § 1591 Sex Trafficking of Children or by Force, Fraud, or Coercion**

101.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint including paragraphs 21-26, 29, 31, 33, 39-50, 51-58, and 79-82.

102.    Omegle knowingly, in or affecting interstate or foreign commerce, recruits, entices, harbors, advertises, maintains, patronizes, and solicits persons under the age of 18 knowing and causing them to be used in commercial sex acts.

103.    Omegle knowingly benefits, financially and by increasing traffic to their site, from participation in a venture which recruits, entices, harbors, advertises, maintains, patronizes, and solicits persons under the age of 18 knowing and causing them to be used in commercial sex acts.

104.    Omegle knowingly introduces children to predators causing children to be victims of sex acts in violation of § 1591.

105.    Omegle allows both children and adults to use its product that randomly matches users and encourages users to "Talk to strangers!"

106.    Omegle, on its homepage, posted then removed the following phrase: "Predators have been known to use Omegle . . . "

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Deleted:** FIRST

107.    Upon information and belief, Omegle knew that predators frequented the website for the purpose of meeting children and engaging in child sexual exploitation. Upon information and belief, Omegle knew that children were using the website and being matched with predators. In light of this known risk, Omegle's active solicitation of predators and children constitutes active and knowing participation in the sex trafficking of children.

108.    Beginning at the age of 11, Plaintiff was forced to perform commercial sex activities for Fordyce. This continued for about three years during which Fordyce abused Plaintiff and threatened abuse of law or legal process. Plaintiff feared arrest if she stopped performing for him or told anybody.

109.    For about three years, Plaintiff was trafficked as a result of the abuse that started on Omegle. Today, Plaintiff continues to be trafficked. Pornographic images and videos depicting her as a child continue to circulate online among predators.

110.    Plaintiff suffers extreme harms as a result of Defendant's conduct.

111.    Pursuant to 18 U.S.C. § 2421 A(c), Plaintiff seeks compensatory and actual damages and reasonable attorney's fees.

### SIXTH CLAIM FOR RELIEF

#### Negligence

112.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint including paragraphs 17-76.

113.    In the alternative to Claims 1-5 above and pursuant to FRCP 8(d), where Omegle is not considered a "product" under Oregon law.

114.    Omegle failed to exercise reasonable care to provide a reasonably safe service.

Page 24 – SECOND AMENDED COMPLAINT

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Deleted:** FIRST

115.     Omegle failed to take reasonable measures to provide users with a service more useful than foreseeably dangerous.

116.     Omegle created a system that assisted or aided in child sexual exploitation, including the exploitation of Plaintiff by supplying an anonymous and sexual communication platform to children while it knew or had reason to know adult predators were likely to use the platform to target children.

117.     Omegle unreasonably created a foreseeable risk of harm that its platform would injure Plaintiff and was negligent.

118.     Omegle matches children with adult predators.

119.     Omegle is accessible and advertised to both adults and children.

120.     The random pairing function of adults and children and the service's accessibility to both adults and children work in tandem.

121.     Omegle could have satisfied its obligation to Plaintiff by providing a service that did not match minors and adults.

122.     Omegle's matching of adults and children was a substantial contributing causal factor to the abuse of Plaintiff.

123.     Plaintiff has a legally protected interest in being free from sexual exploitation and trafficking.

124.     Plaintiff's damages include sexual and emotional distress and physical harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment in her favor as follows:

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

Deleted: FIRST

1.  If successful on any of Plaintiff's claims for relief, non-economic damages in the amount of $22,000,000.00, the exact amount to be determined by the jury;

2.  On Plaintiff's Fifth Claim for Relief, awarding Plaintiff her reasonable attorney's fees and costs;

    **Deleted:** , Sixth, and Seventh Claims

3.  If successful on any of Plaintiff's claims for relief, punitive damages for Plaintiff in an amount to be determined by the jury;

4.  On All Claims for Relief, awarding plaintiff pre-judgment interest on all damages at the highest rate allowed by law;

5.  For Plaintiff's disbursements and incurred costs; and

6.  On All Claims for Relief, granting such other and further relief as the Court deems just and equitable.

**PLAINTIFF'S REQUEST FOR A JURY TRIAL**

Under Federal Rule of Civil Procedure 38(b), Plaintiff demands a jury trial in this action on all issues triable by a jury.

Dated: ____, 2022

**Deleted:** May

Respectfully submitted,

*/s/ Barbara Long*
Barbara Long, OSB #122428
Vogt & Long PC
1314 NW Irving St, Suite 207
Portland, Oregon 97209
Tel: (503) 228-9858
Fax: (503) 228-9860
Barb@vogtlong.com

Page 26 – SECOND AMENDED COMPLAINT

**Deleted:** FIRST

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

*/s/Carrie Goldberg*
Carrie Goldberg
(*pro hac vice*)

Naomi Leeds
(*pro hac vice*)

C.A. Goldberg, PLLC
16 Court Street, 33rd Fl.
Brooklyn, NY 11241
Tel:  (646) 666-8908
Fax: (718) 514-7436
carrie@cagoldberglaw.com
naomi@cagoldberglaw.com

*Attorneys for Plaintiff A. M.*

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
1314 NW Irving St, Suite 207
Portland, OR 97209
(503) 228-9858

**Deleted:** FIRST