Venkat Balasubramani, OSB #180446
venkat@focallaw.com
Stacia N. Lay, WSBA #30594 (*Pro Hac Vice*)
stacia@focallaw.com
Kimberlee Gunning, WSBA #35366 (*Pro Hac Vice*)
kim@focallaw.com
**FOCAL PLLC**
900 1st Avenue S., Suite 201
Seattle, Washington 98134
Telephone: (206) 529-4827

Clifford S. Davidson, OSB #125378
csdavidson@swlaw.com
**SNELL & WILMER, LLP**
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
Telephone: (503) 624-6800

Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| A.M., an individual, | Case No. 3:21-cv-01674-MO |
| Plaintiff, | |
| v. | **DEFENDANT OMEGLE.COM LLC'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| OMEGLE.COM LLC, | |
| Defendant. | |

# TABLE OF CONTENTS

L.R. 7-1(a) Certification ................................................................................................ 1

MOTION.......................................................................................................................... 1

FACTUAL ALLEGATIONS ........................................................................................... 1

DISCUSSION .................................................................................................................. 2

I.      Rule 12(b)(6) Standards For Dismissal................................................................ 2

II.     Section 230 Bars The Amended TVPA Claim And The New Negligence Claim............. 3

        A.      Section 230 still bars the amended TVPA claim .................................... 4

                1.      No dispute that Section 230 bars the TVPA claim absent an
                        exception ............................................................................... 4

                2.      The SAC does not and cannot plausibly allege that Omegle
                        knowingly violated Section 1591 ................................................ 6

                        a.      The SAC relies solely on generalized knowledge of prior
                                unrelated incidents of alleged misuse of Omegle's chat
                                service ....................................................................... 6

                        b.      The TVPA claim fails even under the less stringent
                                constructive knowledge standard of Section 1595....................... 10

        B.      The new negligence claim is inextricably linked with user content
                publisher functions and is therefore barred by Section 230................................. 13

III.    Plaintiff's Product Liability Claims Should Be Dismissed As A Matter Of Law ........... 20

        A.      This Motion should be considered in its entirety .................................... 21

        B.      The SAC does not plausibly allege that Omegle's online chat service is a
                "product" for purposes of Oregon's product liability law ..................................... 23

        C.      The SAC has not plausibly alleged the physical harm required to recover
                the damages sought for Plaintiff's strict product liability claims ....................... 25

        D.      The SAC has not plausibly alleged the physical harm required to recover
                the damages sought for the negligence-based product liability claims or
                any exception to the "impact rule"........................................................... 27

IV.     Plaintiff's Negligence Claim Should Be Dismissed As A Matter Of Law....................... 29

A.    The SAC does not plausibly allege that the harm caused by Fordyce's
intervening criminal conduct was reasonably foreseeable to Omegle ................. 30

B.    The SAC does not plausibly allege the necessary physical harm to recover
damages for the negligence claim or any exception to the "impact rule" ............. 33

V.    Having Been Afforded Ample Opportunity To State A Claim For Relief But
Failing To Do So, Plaintiff's SAC Should Be Dismissed With Prejudice ...................... 34

CONCLUSION ....................................................................................................................... 35

# TABLE OF AUTHORITIES

**Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921 (D. Or. 2020) .............................. 11

*A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018 (D. Or. 2021) .......................... 11

*Allstate Insurance Co. v. Tenant Screening Services, Inc.*,
    140 Or. App. 41, 914 P.2d 16 (1996).......................................................................... 31, 32

*Andersen v. Atl. Recording Corp.*, No. 07-CV-934-BR,
    2010 U.S. Dist. LEXIS 122743 (D. Or. Nov. 18, 2010)............................................ 27, 33

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 2, 3, 7

*Ass'n of Unit Owners of Bridgeview Condos. v. Dunning*,
    187 Or. App. 595, 69 P.3d 788 (2003)...................................................................... 23, 24

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009).................................................... 3, 4, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................... 3, 24

*Bortz v. JPMorgan Chase Bank, N.A.*, No. 21-CV-618 TWR (DEB),
    2022 U.S. Dist. LEXIS 85070 (S.D. Cal. May 10, 2022)................................................. 35

*Buchler v. State ex rel. Or. Corr. Div* , 316 Or. 499, 853 P.2d 798 (1993) ........................... 31, 32

*Chapman v. Mayfield*, 358 Or. 196, 361 P.3d 566 (2015) ..................................................... 30, 31

*Cochran v. Burlington Coat Factory of Or., LLC*, No. 10-CV-6016-TC,
    2010 U.S. Dist. LEXIS 101268 (D. Or. Aug. 25, 2010)................................................. 26

*Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140 (E.D.N.Y. 2017) ................................................. 19

*Daniel v. Armslist, LLC*, 926 N.W.2d 710 (Wis. 2019)................................................................. 17

*Doe v. Backpage.com, LLC*, 817 F.3d 12 (1st Cir. 2016) ............................................................. 16

*Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242 (S.D. Fla. 2020) ........................................... 16

*Doe v. MySpace Inc.*, 528 F.3d 413 (5th Cir. 2008) ............................................................... 5, 15

*Doe v. Reddit, Inc.*, No. SACV 21-00768 JVS (KESx),
    2021 U.S. Dist. LEXIS 235993 (C.D. Cal. Oct. 7, 2021)................................................. 5

*Doe v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021) .................................................... 12, 13

*Doe v. Snap, Inc.*, No. H-22-00590,
    2022 U.S. Dist. LEXIS 119560 (S.D. Tex. July 7, 2022) ........................................... 15, 16

*Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889 (N.D. Cal. 2021) .................................................... 3, 10

*Doe v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016,
    2021 U.S. Dist. LEXIS 64565 (S.D. Tex. Mar. 30, 2021) ......................................... 11, 13

*Dyroff v. Ultimate Software Group, Inc.*, No. 17-cv-05359-LB,
    2017 U.S. Dist. LEXIS 194524 (N.D. Cal. Nov. 26, 2017) .............................. 4, 16, 17, 30

*Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019) ................................... 30

*Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971 (D. Or. 2016) ..................................... 2

*E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420 (N.D. Tex. 2021) .......................................... 11, 13

*Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ........................ 23

*Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116 (N.D. Cal. 2016) ................................... 5, 17, 18, 19

*Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019) ................................................................ 18

*Gartner v. United States*, No. 6:16-cv-01680-JR,
    2017 U.S. Dist. LEXIS 29015 (D. Or. Feb. 15, 2017) ......................................... 27, 28, 33

*G.G. v. Salesforce.com, Inc.*, No. 20-cv-02335,
    2022 U.S. Dist. LEXIS 87616 (N.D. Ill. May 16, 2022) ........................................... *passim*

*Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150 (N.D. Cal. 2017) .............................................. 20

*Gonzalez v. Google, Inc.*, 335 F. Supp. 3d 1156 (N.D. Cal. 2018) ............................. 14, 17, 18, 19

*Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021) ....................................................... 3, 18, 19

*Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018) ................................................. 15

*Herrick v. Grindr LLC*, 765 F. App'x 586 (2d Cir. 2019) ....................................................... 3, 5

*H.G. v. Inter-Continental Hotels Corp.*, 489 F. Supp. 3d 697 (E.D. Mich. 2020) ...................... 12

*Holloway v. Clackamas River Water*, No. 3:13-cv-01787-AC,
    2020 U.S. Dist. LEXIS 166655 (D. Or. Apr. 24, 2020) ............................................. 21, 22

*I.K. v. Banana Republic, LLC*, 317 Or. App. 249, 505 P.3d 1078 (2022) ........................ 28, 29, 34

*In re Facebook, Inc.*, 625 S.W.3d 80 (Tex. 2021) ........................................................................ 16

*Intellect Art Multimedia, Inc. v. Milewski*, 899 N.Y.S.2d 60,
    2009 N.Y. Misc. LEXIS 2325 (N.Y. Sup. Ct. 2009) ........................................................ 24

*James v. Meow Media, Inc.*, 300 F.3d 683 (6th Cir. 2002) ........................................................ 24

*J.B. v G6 Hosp., LLC*, No. 19-cv-07848-HSG,
    2021 U.S. Dist. LEXIS 170338 (N.D. Cal. Sept. 8, 2021) ............................................. 3, 6

*J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO,
    2020 U.S. Dist. LEXIS 201073 (N.D. Cal. Oct. 28, 2020)............................................... 12

*J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048 (D. Colo. 2021).................................................. 11

*Kambury v. Daimlerchrysler Corp.*, 185 Or. App. 635, 60 P.3d 1103 (2003) ............................ 20

*Kent v. Shiley, Inc.*, No. 87-6554-E,
    1989 U.S. Dist. LEXIS 8962 (D. Or. Jan. 24, 1989) ................................................. 26, 27

*Legal Tender Servs. PLLC v. Bank of Am. Fork*, 2022 UT App. 26,
    506 P.3d 1211 (Utah Ct. App. 2022) .............................................................................. 25

*L.H. v. Marriott Int'l, Inc.*, No. 21-22894-Civ-Scola,
    2022 U.S. Dist. LEXIS 91756 (S.D. Fla. May 23, 2002) ................................................ 5, 9

*Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-00619-PAB-SKC,
    2021 U.S. Dist. LEXIS 228651 (D. Colo. Nov. 30, 2021) ............................................... 12

*Mason v. Mt. St. Joseph, Inc.*, 226 Or. App. 392, 203 P.3d 329 (2009) ...................................... 25

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995)........................................................... 17

*M.H. v. Omegle.com LLC*, No. 8:21-cv-814-VMC-TGW,
    2022 U.S. Dist. LEXIS 4543 (M.D. Fla. Jan. 10, 2022)................................... 5, 6, 10, 16

*Nat'l City Bank, N.A. v. Prime Lending, Inc.*, No. CV-10-034-EFS,
    2010 U.S. Dist. LEXIS 85888 (E.D. Wash. July 19, 2010)............................................. 22

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009)................... 23

*NetChoice, LLC v. Att'y Gen. of Fla.*, 34 F.4th 1196 (11th Cir. 2022) ....................................... 20

*Noble v. Weinstein*, 335 F. Supp. 504 (S.D.N.Y. 2018) ........................................................ 8, 9

*Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*,
    336 Or. 329, 83 P.3d 322 (2004) ................................................ 30

*Pepper v. Apple Inc.*, 846 F.3d 313 (9th Cir. 2017)................................. 21

*Philibert v. Kluser*, 360 Or. 698, 385 P.3d 1038 (2016).................. 28, 29, 34

*Quinteros v. Innogames*, No. C19-1402RSM,
    2022 U.S. Dist. LEXIS 55640 (W.D. Wash. Mar. 28, 2022) .......................... 25

*Reddy v. Litton Indus., Inc.*, 912 F.2d 291 (9th Cir. 1990) ......................... 34

*Reflex Media, Inc. v. Luxy Ltd.*, No. 2:20-cv-00423-RGK-KS,
    2021 U.S. Dist. LEXIS 174980 (C.D. Cal. July 13, 2021)........................... 22

*Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319 (D. N.J. 2015)...................... 17

*Sease v. Taylor's Pets, Inc.*, 74 Or. App. 110, 700 P.2d 1054 (1985) ............ 23, 24, 26

*Shannon v. Bayview Loan Servicing LLC*, No. 3:16-CV-1016-MO,
    2018 U.S. Dist. LEXIS 66686 (D. Or. Apr. 20, 2018) ............................. 34

*Smith v. Ethicon Inc.*, No. 3:20-cv-00851-AC,
    2021 U.S. Dist. LEXIS 152495 (D. Or. May 13, 2021) ............................. 20

*Stewart v. Kids Inc.*, 245 Or. App. 267, 261 P.3d 1272 (2011) ................. 30, 32

*Streit v. Matrix Absence Mgmt., Inc.*, No. 3:12-cv-01797-AC,
    2014 U.S. Dist. LEXIS 20440 (D. Or. Feb. 18, 2014)........................... 35

*Towe v. Sacagawea, Inc.*, 357 Or. 74, 347 P.3d 766 (2015)....................... 30

*United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016) ........................ 8

*Watts v. Rubber Tree, Inc.*, 118 Or. App. 557, 848 P.2d 1210 (1993) ............ 23

*Whitaker v. Mind Games, LLC*, No. 2:20-cv-11794-RSWL-MRWx,
    2022 U.S. Dist. LEXIS 68778 (C.D. Cal. Apr. 13, 2022) ........................ 35

## Statutes and Rules

18 U.S.C. § 1591.............................................................. *passim*

18 U.S.C. § 1591(a) ............................................................ 6

18 U.S.C. § 1591(a)(1)........................................................ 7, 8

18 U.S.C. § 1591(a)(2)......................................................................8, 9

18 U.S.C. § 1591(e)(4)......................................................................6, 8

18 U.S.C. § 1595..............................................................................10, 11

18 U.S.C. § 1595(a)..........................................................................12, 13

47 U.S.C. § 230............................................................................*passim*

47 U.S.C. § 230(c)(1)......................................................................3, 4, 18

47 U.S.C. § 230(e)(5)(A)..................................................................4, 6, 10

Fed. R. Civ. P. 1..............................................................................21

Fed. R. Civ. P. 8(a)(2)......................................................................2

Fed. R. Civ. P. 12(b)(6)..................................................................1, 2, 21, 22

Fed. R. Civ. P. 12(c)........................................................................21, 22

Fed. R. Civ. P. 12(g)(2)....................................................................21, 22

Fed. R. Civ. P. 12(h)(2)....................................................................21

Fed. R. Civ. P. 12(h)(2)(A)................................................................21

Fed. R. Civ. P. 12(h)(2)(B)................................................................21

Fed. R. Civ. P. 12(h)(2)(C)................................................................21

Fed. R. Civ. P. 12(h)(3)....................................................................21

ORS 30.900....................................................................................20, 23, 25

ORS 30.920....................................................................................23, 25

ORS 30.920(1)................................................................................23, 25

ORS 30.920(3)................................................................................23

ORS 30.920(4)................................................................................27

**<u>Other Authority</u>**

*Black's Law Dictionary* 215 (5th ed. 1981) ................................................................................ 24

RESTATEMENT (SECOND) OF TORTS § 402A ........................................................................ 23, 24

RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 19 ...................................................... 24

**L.R. 7-1(a) Certification**

In compliance with Local Rule 7-1(a), undersigned counsel for Defendant Omegle.com LLC certifies that they conferred in good faith with Plaintiff's counsel via telephone conference prior to filing this Motion but the parties were unable to agree on the issues raised herein.

**MOTION**

Defendant Omegle.com LLC seeks dismissal of Plaintiff A.M.'s Second Amended Complaint ("SAC") in its entirety for failure to state a claim upon which relief may be granted pursuant to FED. R. CIV. P. 12(b)(6). Furthermore, because any amendment would be futile, Omegle respectfully requests that dismissal be without leave to amend.

**MEMORANDUM OF LAW**

As the Court previously held, to state a sex trafficking claim that is excluded from Section 230's bar, Plaintiff must plausibly allege that Omegle itself violated Section 1591, including its actual knowledge standard. However, the minimal amendment to the SAC falls far short of making such a plausible showing and in fact continues to rely solely on purported constructive knowledge. Additionally, the product liability claims are subject to dismissal as a matter of law on at least two independent grounds: (1) Omegle's online chat service – available via its website – is not a "product"; and (2) the SAC does not plausibly allege the "physical harm" required to hold Omegle liable. The addition of the new negligence claim in the SAC does not save Plaintiff's case as the claim is barred by Section 230 and fails on its own merit as a matter of law. Finally, because Plaintiff has had ample opportunity to state a claim if she had one, any further amendment would be futile, and the SAC should be dismissed with prejudice.

**FACTUAL ALLEGATIONS**

The SAC alleges that "[i]n or about 2014," Plaintiff – who was 11 years old and living in Michigan – used Omegle's online text chat service to chat with another user, who was later identified as Ryan Fordyce, for 15 minutes. (Dkt. 43 at ¶¶ 7, 39, 41.) Plaintiff alleges she had previously used the chat service "to have age-appropriate video chats at sleepovers." (*Id.* at ¶ 39.) The SAC alleges that during the chat, Fordyce asked for, and Plaintiff apparently provided, "her

MOTION TO DISMISS THE SAC            1

contact information" so they could be in contact after the chat on Omegle's website ended. (*Id.* at ¶ 42.) The SAC alleges that after the chat, Fordyce induced Plaintiff to send him photos of herself, including various parts of her body. (*Id.* at ¶ 43.) The SAC does not allege that this later interaction occurred on Omegle's website. The SAC further alleges that Omegle "factor[ed] heavily into the abuse" perpetrated by Fordyce, including by Fordyce forcing Plaintiff "to go onto Omegle to recruit other children for him to exploit." (*Id.* at ¶ 48.) The SAC alleges that Fordyce "abuse[d] and traffick[ed]" Plaintiff "between the ages of eleven and fifteen." (*Id.* at ¶ 49.) On January 12, 2018, Canadian law enforcement contacted Plaintiff's parents, notifying them that they had raided Fordyce's home and recovered child pornography, including images and videos of Plaintiff. (*Id.* at ¶ 50.) The SAC alleges that Fordyce pled guilty to possession of child pornography.[1] (*Id.* at ¶ 51.)

## DISCUSSION

## I.     Rule 12(b)(6) Standards For Dismissal

Although FED. R. CIV. P. 8(a)(2) only requires that a pleading provide a "short and plain statement of the claim showing that the pleader is entitled to relief," that standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). *See also Egbukichi v. Wells Fargo Bank, NA*, 184 F. Supp. 3d 971, 974-75 (D. Or. 2016) (the complaint must "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation") (internal quotation marks omitted).

A complaint has facial plausibility only "when the plaintiff pleads factual content that

---

[1] According to news reports, Fordyce has since been sentenced to prison. *See* https://web.archive.org/web/20211210091920/https://www.brandonsun.com/local/eight-and-a-half-year-sentence-575894042.html (last visited August 22, 2022).

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. But no assumption of veracity applies to legal conclusions nor must a court "credit a complaint's conclusory statements without reference to its factual context." *Id.* at 678, 686. *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient to state a claim).

## II.    Section 230 Bars The Amended TVPA Claim And The New Negligence Claim

Section 230(c)(1) of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230") protects interactive computer service ("ICS") providers like Omegle[2] from liability for claims (a) that seek to treat them as the publisher or speaker (b) of information provided by another information content provider. "To avoid chilling speech, Congress made a policy choice [in Section 230] not to deter harmful online speech through . . . imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages." *Gonzalez v. Google LLC*, 2 F.4th 871, 886 (9th Cir. 2021) (internal quotation marks omitted).

Courts have applied Section 230 to a wide variety of claims, including Trafficking Victims Protection Act ("TVPA")[3], product liability, intentional and negligent infliction of emotional distress, and various negligence claims. *See, e.g.*, *Herrick v. Grindr LLC*, 765 F. App'x 586, 591 (2d Cir. 2019) (product liability, negligence, and intentional and negligent infliction of emotional distress claims); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102-06 (9th Cir. 2009) (amended) (negligent provision of services); *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2021 U.S. Dist. LEXIS 170338, *40-41 (N.D. Cal. Sept. 8, 2021) (TVPA claim), *appeal docketed*, No. 22-15290 (9th Cir. Feb. 28, 2022); *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 929-32 (N.D. Cal. 2021) (product liability, negligence, invasion of privacy, and other claims),

---

[2] As the Court held, there is no dispute that Omegle is an ICS provider. (*See* Dkt. 36 at 4.)
[3] The TVPA is sometimes referred to as the Trafficking Victims Protection Reauthorization Act or the TVPRA.

*appeals docketed*, Nos. 22-15103 and 22-15104 (9th Cir. Jan. 25, 2022); *Dyroff v. Ultimate Software Grp., Inc.*, No. 17-cv-05359-LB, 2017 U.S. Dist. LEXIS 194524, *1-2 (N.D. Cal. Nov. 26, 2017) (negligence, wrongful death, premises liability, and other claims), *aff'd*, 934 F.3d 1093 (9th Cir. 2019). Thus, rather than simply relying on a claim's label, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section 230(c)(1) precludes liability." *Barnes*, 570 F.3d at 1101-02. Here, the amended TVPA claim and the new negligence claim are inextricably intertwined with third-party content and Section 230 therefore bars both claims.

A.     **Section 230 still bars the amended TVPA claim**

1.     *No dispute that Section 230 bars the TVPA claim absent an exception*

The amendments to the original complaint do not alter the conclusion that Section 230 bars the TVPA claim absent an exception, specifically, Section 230(e)(5)(A). The SAC's allegations with respect to the TVPA claim continue to focus on the content of, and the use and alleged misuse of Omegle's chat service by, users. Thus, the claim seeks to hold Omegle liable as the publisher of the communications of Fordyce, a user of Omegle's chat service.

The SAC's core allegations again focus on assertions that Omegle failed to: (1) adequately act as gatekeeper with respect to who may use its chat service to communicate with other users; (2) enforce its policies against users who misuse its service; and (3) implement safety measures that allegedly would have prevented Fordyce's communications with Plaintiff. For example, the allegations focus on the users of Omegle's chat service, including allegations that users are anonymous to one another and are not required to create an account to use the service (Dkt. 43 at ¶¶ 21-22, 27); that some users are allegedly children whose ages are not verified (*id.* at ¶¶ 27, 29); that some users have allegedly misused the chat service to exploit minors (*id.* at ¶¶ 26, 33, 79-82, 107); and that Fordyce misused the chat service with respect to his communications with Plaintiff (*id.* at ¶¶ 39-42, 48, 51-52, 109). Similarly, the SAC's allegations of Omegle's alleged conduct speak to publisher functions with respect to who can communicate using its service, its monitoring of users and policing actions against those who

misuse the chat service, and safety measures to address users who cause harm to other users. (*See, e.g.*, *id.* at ¶¶ 21-22, 26-29, 36-38, 79-80, 82, 105, 107.)

Courts consistently find that similar allegations implicate editorial decisions or publisher functions that are protected by Section 230. *See, e.g.*, *Herrick*, 765 F. App'x at 590-91 (alleged lack of safety features and warnings sought to hold Grindr liable for failing "to combat or remove offensive third-party content" and were shielded by Section 230, as were its neutral tools that facilitated communications between users); *Doe v. MySpace Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (allegations that MySpace failed "to implement measures that would have prevented [plaintiff] from communicating" with the user who assaulted her was "merely another way of claiming that MySpace was liable for publishing the communications"); *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1123 (N.D. Cal. 2016) (finding that "providing accounts . . . is publishing activity, just like monitoring, reviewing, and editing content"), *aff'd on other grounds*, 881 F.3d 739 (9th Cir. 2018). Moreover, other courts have found that similar allegations sought to treat ICS providers as publishers of third-party content with respect to TVPA claims. *See, e.g.*, *L.H. v. Marriott Int'l, Inc.*, No. 21-22894-Civ-Scola, 2022 U.S. Dist. LEXIS 91756, 32-40 (S.D. Fla. May 23, 2002) (allegations regarding craigslist's creation of an "erotic services" section, its "embedded messaging system" that allowed for confidential communications, and its policy of accepting pre-paid credit cards and burner phone contact numbers fell within Section 230's bar); *G.G. v. Salesforce.com, Inc.*, No. 20-cv-02335, 2022 U.S. Dist. LEXIS 87616, *23 (N.D. Ill. May 16, 2022) (claim seeking to hold ICS provider liable for Backpage's use of the ICS's software "to cultivate sex traffickers . . . and grow the website's reach among sex traffickers" was a "quintessential claim covered by § 230"); *M.H. v. Omegle.com LLC*, No. 8:21-cv-814-VMC-TGW, 2022 U.S. Dist. LEXIS 4543, *16-18 (M.D. Fla. Jan. 10, 2022) (concluding that allegations of generalized knowledge regarding other users' misuse of Omegle's chat service were barred by Section 230), *appeal docketed*, No. 22-10338 (11th Cir. Jan. 31, 2022); *Doe v. Reddit, Inc.*, No. SACV 21-00768 JVS (KESx), 2021 U.S. Dist. LEXIS 235993, *10-13, 19-23 (C.D. Cal. Oct. 7, 2021) (TVPA claim relying on allegations regarding Reddit's alleged "'refusal

to enforce its policies,'" its "pseudonymous, private messaging," and its handling of user content that violated its content policy was barred by Section 230), *appeal docketed*, No. 21-56293 (9th Cir. Nov. 30, 2021).

Therefore, Section 230 bars the TVPA claim, which seeks to hold Omegle liable for the content of a user, namely, Fordyce. Moreover, as discussed next, Plaintiff has not plausibly alleged a claim that Omegle violated Section 1591 and therefore Section 230(e)(5)(A)'s narrow carveout from immunity does not apply.

### 2.    *The SAC does not and cannot plausibly allege that Omegle knowingly violated Section 1591*

As the Court held, in order to state a TVPA claim that escapes Section 230's bar, Plaintiff must plausibly allege that Omegle's own alleged conduct constitutes a violation of Section 1591. (*See* Dkt. 32 at 20:17-19; *see also* Dkt. 36 at 11-12.) Section 1591, in turn, requires actual knowledge of and participation in the alleged sex trafficking venture by the defendant. *See* 18 U.S.C. § 1591(a), (e)(4); *see also G.G.*, 2022 U.S. Dist. LEXIS 87616 at *33-35 (FOSTA's narrow carveout "requires plaintiffs to show the civil defendant's knowing assistance, support, or facilitation of sex trafficking") (internal quotation marks omitted); *M.H.*, 2022 U.S. Dist. LEXIS 4543 at *8 (Section 1591 "require[s] actual knowledge and overt participation in a sex trafficking venture by the ICS provider – generalized knowledge without active participation is insufficient."); *J.B.*, 2021 U.S. Dist. LEXIS 170338 at *37 (the "narrowed federal civil sex trafficking carveout . . . requires plaintiffs to show the civil defendant's knowing assistance, support or facilitation").

### a.    **The SAC relies solely on generalized knowledge of prior unrelated incidents of alleged misuse of Omegle's chat service**

In dismissing the TVPA claim, the Court held that the original complaint inadequately alleged the applicable *mens rea* under Section 1591 as to both the venture and profit elements of the claim. (Dkt. 32 at 20:17-21:1.) In the SAC, Plaintiff made only three changes to the TVPA

claim: (1) incorporated two additional, pre-existing paragraphs (81 and 82) into the claim;[4] (2) in paragraph 104 (paragraph 127 in the original complaint), replaced "knows or should have known" language with a conclusory legal assertion that Omegle "knowingly introduces children to predators causing children to be victims of sex acts"; and (3) added a new paragraph (107) making a general allegation "upon information and belief."

The modification to paragraph 104 is simply a conclusory legal assertion that contains no actual facts that can be said to plausibly allege actual knowledge on the part of Omegle with respect to Fordyce's alleged sex trafficking of Plaintiff. *See Iqbal*, 556 U.S. at 678 (the court is "not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks omitted). Similarly, the incorporation of two pre-existing paragraphs into the claim, when the Court previously found that the original complaint did not allege the appropriate *mens rea*, does nothing to cure the deficiency in the TVPA claim. And in any event, those two paragraphs purport to describe the "defective design" of Omegle's chat service, which says nothing about any actual knowledge relevant to the TVPA claim. Therefore, the only amendment to the TVPA claim that could be intended to cure the deficiency in the original complaint is paragraph 107, which states in its entirety as follows:

> Upon information and belief, Omegle knew that predators frequented the website for the purpose of meeting children and engaging in child sexual exploitation. Upon information and belief, Omegle knew that children were using the website and being matched with predators. In light of this known risk, Omegle's active solicitation of predators and children constitutes active and knowing participation in the sex trafficking of children.

(Dkt. 43 at ¶ 107.) This assertion is insufficient for at least two reasons. First, it is conclusory and therefore not entitled to any presumption of truth. *See Iqbal*, 556 U.S. at 679. Second, it is devoid of any facts alleging that Omegle knowingly sex trafficked Plaintiff (*e.g.*, a perpetrator violation under Section 1591(a)(1)), or knowingly benefited financially from participating in the alleged sex trafficking venture perpetrated by Fordyce against Plaintiff, which in turn requires

---

[4] In the original complaint, the paragraphs were numbered 82 and 83 but are otherwise unchanged in the SAC.

"knowingly assisting, supporting, or facilitating" Fordyce's alleged sex trafficking violation (*e.g.*, a beneficiary claim under Section 1591(a)(2)). In fact, this "upon information and belief" paragraph alleges nothing about any purported knowledge Omegle had with respect to Plaintiff, Fordyce, or Fordyce's alleged sex trafficking venture.

As to the claim of perpetrator liability (*see* Dkt. 43 at ¶ 102), the SAC is bereft of any factual allegations, plausible or otherwise, that Omegle itself had any knowledge of or contact with Plaintiff or engaged in any alleged sex trafficking activities as to Plaintiff (*e.g.*, recruiting, enticing, harboring, transporting, providing, obtaining, advertising, maintaining, patronizing, or soliciting Plaintiff to engage in a commercial sex act knowing that she was under 18). *See* 18 U.S.C. § 1591(a)(1). Therefore, there is no good faith basis to allege that Omegle is liable as a perpetrator of Plaintiff's alleged sex trafficking under Section 1591(a)(1).

As to the claim of beneficiary liability under Section 1591(a)(2), the SAC similarly fails to plausibly allege that Omegle knowingly benefitted from knowingly assisting, supporting, or facilitating the alleged sex trafficking of Plaintiff by Fordyce. To state a beneficiary claim under Section 1591(a)(2), the SAC must, but does not, plausibly allege facts supporting reasonable inferences that Omegle (i) knowingly benefitted (ii) from participating in Fordyce's sex trafficking venture involving Plaintiff, (iii) knowing or in reckless disregard of the fact that Plaintiff was under 18 and would be caused to engage in a commercial sex act. 18 U.S.C. § 1591(a)(2); *see also United States v. Afyare*, 632 F. App'x 272, 283 (6th Cir. 2016); *G.G.*, 2022 U.S. Dist. LEXIS 87616 at \*34-35; *Noble v. Weinstein*, 335 F. Supp. 3d 504, 523-24 (S.D.N.Y. 2018). Furthermore, "participation in a venture" is statutorily defined as "knowingly assisting, supporting, or facilitating" a primary sex trafficking violation under Section 1591(a)(1). 18 U.S.C. § 1591(e)(4). Thus, in order to state a violation of Section 1591, Plaintiff must, but cannot, plausibly allege facts that Omegle "actively and knowingly" assisted Fordyce's alleged sex trafficking of Plaintiff from which it knowingly benefitted. *See G.G.*, 2022 U.S. Dist. LEXIS 87616 at \*34-35 (holding that "a secondary actor under § 1591(a)(2) must actively and knowingly assist or facilitate a primary trafficking violation, which is tied to a

MOTION TO DISMISS THE SAC                 8

specific victim"); *see also L.H.*, 2022 U.S. Dist. LEXIS 91756 at \*41 (finding TVPA claim barred by Section 230 because plaintiff did not allege "that craigslist itself violated § 1591").

The SAC's allegations fall far short of meeting this standard. Fatal to the claim is the complete absence of any factual allegations that Omegle had ***any*** knowledge of Plaintiff, Fordyce, or Fordyce's alleged actions toward or communications with Plaintiff. All of the factual allegations about Plaintiff's alleged sex trafficking speak solely of Fordyce's actions, only some of which are alleged to have occurred via Fordyce's misuse of Omegle's chat service. (*See, e.g.*, Dkt. 43 at ¶¶ 39-51, 108-109.) The only allegations with respect to Omegle's alleged knowledge relate to other alleged incidents involving the misuse of its chat service by users to exploit minors,[5] consist of conclusory assertions that are devoid of facts, or simply parrot the statutory language. For example, a number of the allegations simply purport to describe how Omegle's chat service works. (*See, e.g.*, *id.* at ¶¶ 21-23.) Other allegations relate to a BBC report that allegedly detailed "the prevalence of child sexual abuse material and grooming" on the chat service. (*See, e.g.*, *id.* at ¶¶ 33-34.) And other allegations relate to alleged "design defects" in Omegle's chat service – the alleged "defects" being Omegle's policy allowing users to be anonymous to one another and a purported absence of age restrictions. (*See, e.g.*, *id.* at ¶¶ 79-80.) Finally, the SAC merely parrots the language of Section 1591(a)(2). (*Id.* at ¶ 103.)

In short, Plaintiff's TVPA claim is based solely on purported constructive knowledge – e.g., Omegle allegedly had general knowledge "of trafficking" occurring on its website and therefore purportedly has knowledge of and participated in "the venture" involving Plaintiff and Fordyce. But that is quintessential constructive knowledge. "What is missing are factual allegations that link [Omegle's alleged] actions to [Fordyce's] conduct toward" Plaintiff. *Noble*,

---

[5] Even if such alleged general knowledge of other incidents of users criminally misappropriating Omegle's chat service to target minors was relevant, it is not clear that the incidents involved sex trafficking. This is not intended to minimize any such incidents; rather, the point is that even if general knowledge of other alleged incidents was sufficient to state a sex trafficking violation under Section 1591 (which it is not), then it necessarily follows that those other incidents must involve sex trafficking, not some other crimes committed by users.

335 F. Supp. 3d at 524; *see also G.G.*, 2022 U.S. Dist. LEXIS 87616 at *35 (a TVPA beneficiary claim requires plaintiffs to plausibly allege that the defendant "actively and knowingly assist[ed] or facilitate[d] a primary trafficking violation, which is tied to a specific victim"); *M.H.*, 2022 U.S. Dist. LEXIS 4543 at *18 (finding allegations insufficient to "allege Omegle's actual knowledge or overt participation in the underlying incident" with the alleged trafficker and that "generalized knowledge of past instances of sex trafficking are not enough"). Even the *Twitter* court – although it reached the incorrect conclusion about the appropriate knowledge standard under Section 230(e)(5)(A) – held that the plaintiffs had to "allege at least that Twitter knew or should have known that *Plaintiffs* were the victims of sex trafficking at the hands of users who posted the content on Twitter." *Twitter*, 555 F. Supp. 3d at 925 (emphasis added). The court found that the plaintiffs had plausibly alleged such knowledge (under the incorrect constructive knowledge standard) by alleging in part that they had "alerted Twitter that the Videos were created under threat when Plaintiffs were children and provided evidence of John Doe #1's age in response to Twitter's request for further information." *Id.*

To find the SAC's allegations sufficient to plausibly allege knowing participation in the sex trafficking venture for which Plaintiff seeks relief would be to effectively read out the actual knowledge standard of Section 1591. Such a theory would lead to unlimited liability for ICS providers like Omegle as plaintiffs could recover for sex trafficking perpetrated by users who criminally misappropriate the ICS providers' services, despite a complete absence of the providers' knowledge of the particular plaintiff or the other user's actions toward that plaintiff.

>   **b.**   **The TVPA claim fails even under the less stringent constructive knowledge standard of Section 1595**

The SAC's failure to plausibly allege that Omegle engaged in conduct that violated Section 1591 with respect to Plaintiff is sufficient to compel dismissal of the TVPA claim. However, to further bolster that conclusion, even if the claim were judged under the inapplicable constructive knowledge standard, it would still be subject to dismissal.

Courts in TVPA cases that do not involve Section 230 have found that allegations similar

to those in the SAC were insufficient to state a beneficiary claim even under the constructive knowledge standard. For example, in *A.B. v. Hilton Worldwide Holdings Inc.*, similar to the allegations here, the plaintiff relied in part on news reports and online reviews describing "sex trafficking occurrences" at the defendants' hotels across the U.S. 484 F. Supp. 3d 921, 938-39 (D. Or. 2020). The plaintiff also alleged facts about her own trafficking. *Id.* at 938. But the court concluded that these and other allegations were insufficient to state a TVPA claim: "[A]lthough Plaintiff's allegations indicate that Defendants had notice of sex trafficking generally occurring at their hotels, Plaintiff has not alleged facts which sufficiently link notice of Plaintiff A.B.'s sex trafficking to any of these Defendants." *Id. See also A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1025-28 (D. Or. 2021) (finding that new allegations "regarding Defendants' alleged ability to monitor and track activities at their branded hotel locations" did not cure the deficiencies in the original complaint).

The *A.B.* decisions are consistent with the conclusions reached by numerous other courts involving similar allegations found to be insufficient to state a beneficiary claim against hotel defendants. *See, e.g., E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 427-28, 431 (N.D. Tex. 2021) (finding allegations insufficient to plead that defendants "directly participated in a specific venture that trafficked Plaintiff on specific occasions at the specific hotels"); *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) (finding insufficient allegations that hotel franchisor was or should have been aware of plaintiff's trafficking based on "notice about the prevalence of sex trafficking generally at its hotel"). *See also G.G.*, 2022 U.S. Dist. LEXIS 87616 at *47-49 (alternatively concluding that plaintiffs failed to allege a TVPA claim under Section 1595's standards in part because plaintiffs did not allege that the ICS provider "had actual or constructive knowledge of [plaintiff's] trafficking").

Even these hotel cases, applying the lower constructive knowledge standard, recognize that "the complaint must contain facts sufficient to establish that the defendant knew or should have known ***about the trafficking of the plaintiff in particular – not about trafficking occurring on the premises in general***." *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-

5016, 2021 U.S. Dist. LEXIS 64565, *4 (S.D. Tex. Mar. 30, 2021) (emphasis added). For example, the court in *H.G. v. Inter-Continental Hotels Corp.* concluded that general knowledge about the occurrence of sex trafficking at the hotels was insufficient to plead a TVPA beneficiary claim; rather, a plaintiff "must allege . . . that the defendant knew or should have known of sex trafficking by the *particular* sex-trafficking venture in which the defendant is alleged to have participated." 489 F. Supp. 3d 697, 707 (E.D. Mich. 2020). *See also Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-00619-PAB-SKC, 2021 U.S. Dist. LEXIS 228651, *23 (D. Colo. Nov. 30, 2021) (allegations of "the prevalence of sex trafficking generally at [defendant's] hotels and in the hotel industry" were "not sufficient to show that defendant should have known about what happened to plaintiff"). Moreover, even courts finding that plaintiffs *had* sufficiently alleged a TVPA beneficiary claim agree that "general allegations about sex trafficking problems" are insufficient to put defendants "on notice about the sex trafficking of *this* plaintiff." *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 U.S. Dist. LEXIS 201073, *14-15 (N.D. Cal. Oct. 28, 2020) (emphasis added).

These district court decisions are also consistent with the Eleventh Circuit's recent decision in *Doe v. Red Roof Inns, Inc.*, where the court outlined the elements of a Section 1595(a) beneficiary claim:

> a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA *as to the plaintiff*, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA *as to the plaintiff*.

21 F.4th 714, 726 (11th Cir. 2021) (emphasis added).[6] Even applying the constructive knowledge standard, the Eleventh Circuit concluded that the plaintiffs failed to plausibly allege that "the franchisors participated in an alleged common undertaking or enterprise with the Does' sex traffickers." *Id.* at 726-27. Allegations that the franchisors licensed their brands to franchisees

---

[6] As the Eleventh Circuit noted, of its sister circuits, only the First Circuit has addressed a Section 1595(a) beneficiary claim. *Red Roof*, 21 F.4th at 725.

and received a royalty in return based on room revenue and were "inextricably connected" to the renting of rooms at the hotels were insufficient, as they did "nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA – i.e., the alleged sex trafficking ventures." *Id.* The court reached the same conclusion as to allegations that the franchisors investigated the hotels, took remedial action when revenue was down, and "read online reviews mentioning prostitution and crime occurring generally at the hotels." *Id.* at 727 (noting also that "observing something is not the same as participating in it").

Here, the SAC's allegations are similarly deficient. Absent from the TVPA claim are any well-pled factual allegations that Omegle knew (or under the inapplicable standard, "should have known") "about the trafficking of the plaintiff in particular." *Wyndham*, 2021 U.S. Dist. LEXIS 64565 at *4; *see also E.S.*, 510 F. Supp. 3d at 429 (finding that plaintiff "failed to allege a reasonable inference connecting Movant Defendants specifically to Plaintiff's trafficking"). Rather, as discussed above, Plaintiff relies on general allegations about how Omegle's chat service works, Omegle's policies regarding who may use its chat service, Omegle's monitoring of users, and media reports about unrelated incidents in which other users allegedly misused the chat service. (*See, e.g.*, Dkt. 43 at ¶¶ 21-23, 27-29, 33, 36-38, 64, 79-80.) The only factual allegations relating specifically to Plaintiff's alleged sex trafficking involve Fordyce's actions; there are no allegations that Omegle had any knowledge of Plaintiff, Fordyce, or Fordyce's actions toward her (nor could there be). (*See id.* at ¶¶ 39-51, 108-109.)

Therefore, Plaintiff cannot satisfy even the less stringent constructive knowledge standard of Section 1595(a), reinforcing the conclusion that the allegations necessarily cannot satisfy the higher standard of Section 1591. As a result, the SAC fails to state a violation of Section 1591 and the TVPA claim is therefore barred by Section 230.

### B.    The new negligence claim is inextricably linked with user content and publisher functions and is therefore barred by Section 230

The SAC's new negligence claim is inextricably linked with third-party content, namely, the communications between Plaintiff and Fordyce that allegedly occurred via Omegle's chat

service and Omegle's role in publishing those alleged communications. Plaintiff attempts to plead around Section 230 by artificially divorcing the means of communications – Omegle's chat service – from the communications themselves. But that attempt fails as the claim still "require[s] recourse" to third-party content "to establish liability or implicate[s] [Omegle's] role . . . in publishing or excluding third party communications." *Gonzalez v. Google, Inc.*, 335 F. Supp. 3d 1156, 1170 (N.D. Cal. 2018) (internal quotation marks omitted), *aff'd*, 2 F.4th 871 (9th Cir. 2021). The new negligence claim is thus barred by Section 230 as it seeks to hold Omegle liable based on an alleged duty that "derives from [its] status or conduct as a 'publisher or speaker.'" *Barnes*, 570 F.3d at 1102.

The allegations on which the new negligence claim are based focus on: Plaintiff's communications with Fordyce via Omegle's website and the alleged harm caused by them (*see, e.g.*, Dkt. 43 at ¶¶ 39-42, 48, 51-52, 75, 116); the alleged unlawful communications of other users of Omegle's chat service (*see id.* at ¶¶ 24-25, 33, 37, 63-64, 116); Omegle's alleged deficient "content moderation practices," its "ability to ban or deny access to offending or unauthorized accounts," its alleged representation "that it will take a hard line against anyone who uses Omegle in abusive ways," its alleged failure "to screen and monitor the activities of its members or to implement a report function that can flag abusive users" (*see id.* at ¶¶ 28, 36-38); and its alleged failure to take "ameliorative actions" to address misuse of its site including:

> identifying and banning predatory users through the language detected in chats or its video monitoring function it purports to employ, using common software that could be used to flag specific phrases used repeatedly by offenders, enabling users to report offending users by including a "Report" or "Abusive Content" button on the chat screen, changing its policy to only allow adults 18 and older to use the website, integrating an effective age verification mechanism to ensure that minors are not using the unmonitored video section of the site, requiring users to register their name or phone number with the site so that user misconduct can be traced by the site's administrators, making its product available through third party marketplaces like Apple and Google where customers are verified and downloads are recorded, and/or staffing a community standards and safety department with human beings.

(*id.* at ¶ 72).

MOTION TO DISMISS THE SAC          14

But courts routinely find that similar allegations – regardless of the label placed on the claim – are barred by Section 230 as they inherently require resort to third-party content and implicate publisher functions. For example, the Fifth Circuit held that Section 230 barred negligence claims alleging that MySpace failed "to implement basic safety measures to protect minors" as the claims arose from its publication of user communications and therefore spoke "to MySpace's role as a publisher of online third-party-generated content." *MySpace*, 528 F.3d at 419-22. The allegation that MySpace failed "to implement measures that would have prevented Julie Doe from communicating with [the other user]" was "merely another way of claiming that [it] was liable for publishing the communications[.]" *Id.* Similarly, in *Herrick*, the court held that claims for negligence and negligent and intentional infliction of emotional distress that were based on "Grindr's neutral assistance and software architecture" or its "alleged obligation to police and remove content" were barred by Section 230. *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 593 (S.D.N.Y. 2018), *aff'd*, 765 F. App'x 586 (2d Cir. 2019).

And most recently, a court held that remarkably similar allegations made in connection with negligence claims – negligent undertaking, negligent design, and gross negligence – against Snap were barred by Section 230. In *Doe v. Snap, Inc.*, the plaintiff alleged that his high school science teacher engaged in a sexual relationship with him after luring him using Snapchat to send inappropriate messages and photos. No. H-22-00590, 2022 U.S. Dist. LEXIS 119560, *1-2, 4, 6-7 (S.D. Tex. July 7, 2022), *appeal docketed*, No. 22-20408 (5th Cir. Aug. 9, 2022). Similar to the allegations here, the plaintiff alleged in part that Snap (1) had undertaken a duty to protect young users by representing that it reported all instances of child sexual exploitation, (2) had "fostered an environment that draws in sexual predators and allows them to act with impunity," and (3) was consciously indifferent to the use of its app "to foster the exploitation of a minor by an adult." *Id.* at *36-38 (internal quotation marks omitted). The court found that the allegations demonstrated that each of the negligence claims sought "to hold Snap liable for messages and photos sent by [the teacher]":

MOTION TO DISMISS THE SAC          15

> Doe's negligent undertaking claim alleges that Snapchat has failed to monitor
> content and messages sent between parties on its platform. Doe's gross negligence
> claim alleges that Snap is indifferent to sexual predators' use of the platform to
> message minors "with apparent impunity." . . . The crux of Doe's negligent
> design claim, like his negligent undertaking and gross negligent claims, is that
> Snapchat designed its product with features that allegedly created the opportunity
> for [the teacher] to send illicit messages to Doe.

*Id.* at *42-43. *See also M.H.*, 2022 U.S. Dist. LEXIS 4543 at *13-15 (Section 230 barred

negligence and other claims alleging that Omegle "failed to ensure that minor children did not

fall prey to child predators that may use the website" as they treated it as the publisher of third-

party content); *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1244, 1249 (S.D. Fla. 2020)

(allegations that Kik failed "to enact policies that would have prevented [plaintiff] from being

trafficked by fellow Kik users" was "exactly the type of claim that CDA immunity bars").

In another case, the Supreme Court of Texas likewise found that negligence claims, based

on allegations very similar to Plaintiff's, were barred by Section 230. *In re Facebook, Inc.*, 625

S.W.3d 80, 93-94 (Tex. 2021), *cert. denied*, 142 S. Ct. 1087 (2022). For example, in support of

Facebook's alleged "duty to warn [plaintiffs] or otherwise protect them against recruitment into

sex trafficking by other users," plaintiffs relied on Facebook's alleged failures to "implement any

safeguards to prevent adults from contacting minors," "report suspicious messages," "warn[] of

the dangers posed by sex traffickers," or "identify[] sex traffickers on its [p]latforms." *Id.*

(internal quotation marks omitted). Though couched in terms of Facebook's omissions, the court

concluded that, "[u]nder the view of section 230 adopted in every published decision of which

[the court was] aware, the[] clams treat[] Facebook as the publisher or speaker of third-party

communication and are therefore barred." *Id.* (internal quotation marks omitted). *See also Doe v.*

*Backpage.com, LLC*, 817 F.3d 12, 20-22 (1st Cir. 2016) (a website's "structure and operation"

and "policies and practices" "reflect choices about what content can appear on the website and in

what form, are editorial choices that fall within the purview of traditional publisher functions"

and are therefore protected by Section 230); *Dyroff*, 2017 U.S. Dist. LEXIS 194524 at *26

(finding negligence and other claims barred by Section 230 when plaintiff challenged the

"website's alleged functionalities – including its user anonymity");[7] *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D. N.J. 2015) (claim of failure to monitor and supervise site users was an attempt to treat defendant as a publisher of information provided by a third party); *Daniel v. Armslist, LLC*, 926 N.W.2d 710, 722 (Wis. 2019) (finding negligence and negligent infliction of emotional distress claims barred by Section 230 when plaintiff alleged in part that the website failed to offer an option to flag illegal activity or to require uses to create accounts).

Plaintiff casts the negligence claim simplistically as challenging only the alleged "matching" of minors with adults for chats. However, it is not the purported "matching" that is alleged to cause the harm; rather, it is the content – e.g., the communications – that occur between the users. Nor can Plaintiff ignore the fact that the SAC's allegations focus on (1) her communications with Fordyce and (2) Omegle's alleged failure to adequately monitor or police its users or to act as a gatekeeper for who may communicate using its chat service. *See, e.g.*, *Fields*, 217 F. Supp. 3d at 1124-25 (declining to follow plaintiffs' urging that the court focus on only "five short paragraphs" of the complaint where "the majority of the SAC still focuses on ISIS's objectionable *use* of Twitter and Twitter's failure to prevent ISIS from using the site"). Therefore, Plaintiff's attempt to divorce the means of communicating from the communications themselves fails as it is the communications that are the source of the alleged harm.

Plaintiff's allegations are similar to those in *Gonzalez*. In *Gonzalez*, plaintiffs asserted that Google was liable under the Anti-Terrorism Act for the death of their family member in the 2015 attacks in Paris committed by ISIS. 335 F. Supp. 3d at 1160. Similar in kind to the SAC's allegations, the plaintiffs alleged in part that Google "knowingly provided its YouTube platform . . . to ISIS" which "embraced and used YouTube as a powerful tool for terrorism, allowing it to connect its members and to facilitate [its] ability to communicate, recruit members, [and] plan and carry out attacks[.]" *Id.* at 1170-71 (internal quotation marks omitted). They further alleged

---

[7] Anonymity, though presented as inherently nefarious, is (1) a website feature that courts, including *Dyroff*, have held falls within publisher functions protected by Section 230 and (2) a protected form of speech under the First Amendment. *See, e.g.*, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341-43 (1995) (discussing protections for anonymous speech).

that Google "refuse[d] to actively identify ISIS YouTube accounts or to make substantial or sustained efforts to ensure that ISIS would not re-establish the accounts using new identifiers." *Id.* at 1171 (internal quotation marks omitted).

The district court rejected the plaintiffs' argument that these, and other similar allegations, did not implicate Section 230 because their claims were "based upon Google's provision of the means for ISIS followers to self-publish content, rather than challenging the actual content itself." *Id.* at 1171-72 (internal quotation marks omitted). The court found that the allegations "were inconsistent with [plaintiffs'] attempt to avoid section 230 immunity by divorc[ing] ISIS's offensive content from the ability to post such content." *Id.* at 1171 (internal quotation marks omitted).

> Plaintiffs do not allege that they have been harmed by the mere provision of the YouTube platform to ISIS and its followers. Instead, they allege that ISIS uses YouTube as a tool and a weapon of terrorism, and that ISIS recruits, plans, incites, instructs, threatens, and communicates its terror message on YouTube.

*Id.* at 1171-72 (internal quotation marks omitted). The Ninth Circuit agreed with the district court, concluding that the claims sought to treat Google as a publisher because the plaintiffs asserted that "Google failed to prevent ISIS from using its platform, and thereby allowed ISIS to disseminate its message of terror." *Gonzalez*, 2 F.4th at 892.

The Second Circuit reached a similar conclusion in *Force v. Facebook, Inc.*, which involved similar claims with respect to Hamas's use of Facebook. 934 F.3d 53, 57 (2d Cir. 2019). The plaintiffs sought "to hold Facebook liable for giving Hamas a forum with which to communicate and for actively bringing Hamas' message to interested parties." *Id.* at 65 (internal quotation marks omitted). But the Second Circuit held that the "alleged conduct by Facebook falls within the heartland of what it means to be the 'publisher' of information under Section 230(c)(1)," as did Facebook's alleged failure to delete content posted to Hamas members' Facebook pages. *Id. See also Fields*, 217 F. Supp. 3d at 1120, 1123-26 (rejecting argument that claims were based on Twitter's provision of accounts to ISIS rather than any content, as the core allegations were "that Twitter knowingly failed to prevent ISIS from

MOTION TO DISMISS THE SAC          18

disseminating content through the Twitter platform, not its mere provision of accounts").

 The allegations in the SAC are similar in kind to these and other cases where the courts held that Section 230 barred the plaintiffs' claims. The core theory of Plaintiff's new negligence claim seeks to treat Omegle as a publisher by alleging that it "failed to prevent [child predators] from using its platform, and thereby allowed [child predators] to disseminate" harmful communications. *Gonzalez*, 2 F.4th at 892. For example, the SAC alleges that: "Omegle represented . . . that it protects users" and has the "ability to ban or deny access to offending or unauthorized accounts" (Dkt. 43 at ¶¶ 35-36); that it fails to "take a hard line against anyone who uses Omegle in abusive ways" and "make[s] little to no effort to screen and monitor the activities of its members or to implement a report function that can flag abusive users" (*id.* at ¶¶ 37-38); that it "knew or should have known that predators use its [chat service] to groom and exploit children" (*id.* at ¶ 63); that it "failed to take a number of ameliorative actions such as[] identifying and banning predatory users" or "enabling users to report offending users" (*id.* at ¶ 72); and that its platform "assisted or aided in child sexual exploitation, including the exploitation of Plaintiff by supplying [a platform that] adult predators were likely to use . . . to target children" (*id.* at ¶ 116). Similar to the cases discussed above, these allegations demonstrate that the new negligence claim is not simply based on the provision of a random online chat service or the alleged "matching" of minors and adults. Rather, Plaintiff's theory of liability necessarily "'requires recourse to [Fordyce's] content' to establish any causal connection between" Omegle and the alleged harm caused by Fordyce's communications, and therefore "'inherently requires the court to treat [Omegle] as the 'publisher or speaker'" of Fordyce's communications. *Gonzalez*, 335 F. Supp. 3d at 1175 (quoting *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 156 (E.D.N.Y. 2017), *aff'd sub nom*, *Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019)). *See also Fields*, 217 F. Supp. 3d at 1125 (finding claims to be "inherently tied up with ISIS's objectionable use of Twitter"; though the complaint "allege[d] that Twitter should not have provided *accounts* to ISIS, the unspoken" rationale for that allegation is that "*ISIS would*

*and has used those accounts to post objectionable content*").[8]

In short, Plaintiff's "parsing of means and content" is inconsistent with the SAC's core theory of liability – namely, that Omegle is liable for providing a platform that users allegedly have used to disseminate harmful communications and allegedly not doing more to prevent such dissemination by users. *Gonzalez v. Google, Inc.*, 282 F. Supp. 3d 1150, 1165 (N.D. Cal. 2017). Therefore, Section 230 bars the new negligence claim.

## III.    Plaintiff's Product Liability Claims Should Be Dismissed As A Matter Of Law

"Oregon's product liability law is governed by statute." *Smith v. Ethicon Inc.*, No. 3:20-cv-00851-AC, 2021 U.S. Dist. LEXIS 152495, *5 (D. Or. May 13, 2021), *findings & recommendations adopted by* 2021 U.S. Dist. LEXIS 151954 (D. Or. Aug. 12, 2021). ORS 30.900 defines a "product liability civil action" as

> a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of:
> (1) Any design, inspection, testing, manufacturing or other defect in a product;
> (2) Any failure to warn regarding a product; or (3) Any failure to properly instruct in the use of a product.

"[I]f the gravamen of a cause of action is a product defect, regardless of the theory of liability, then Oregon's product liability statutory framework . . . will govern the cause of action." *Smith*, 2021 U.S. Dist. LEXIS 152495 at *7 (internal quotation marks omitted); *see also Kambury v. Daimlerchrysler Corp.*, 185 Or. App. 635, 639, 60 P.3d 1103 (2003) ("[N]othing in the language of ORS 30.900 suggest[s] that the statute was intended to apply to defects that give rise to strict liability but not to defects or failures that result from negligence.").

Therefore, notwithstanding that claims 1 and 2 are pled as strict product liability claims, and claims 3 and 4 are pled as negligence claims, ORS 30.900 governs all four claims (the "Product Liability Claims"). As detailed below, each of the claims suffers from the same two

---

[8] Additionally, in the First Amendment context, the Eleventh Circuit recently held that a platform's decisions about who may use the platform may implicate First Amendment scrutiny. *See NetChoice, LLC v. Att'y Gen. of Fla.*, 34 F.4th 1196, 1213 (11th Cir. 2022) (platform's choice "to remove users or posts" is "First-Amendment-protected activity").

infirmities: (1) they do not plausibly allege that Omegle's chat service is a "product"; and (2) even if the Court concludes otherwise, the claims fail because Plaintiff does not, and cannot, plausibly allege the physical harm required to recover the emotional distress damages she seeks.

>        **A.      This Motion should be considered in its entirety**

In the parties' meet and confer, Plaintiff maintained the argument that the Court should refuse to consider this Motion with respect to the Product Liability Claims based on Rule 12(g)(2). But, consideration of the motion in its entirety would further the goal of the just, speedy, and efficient determination of this action. FED. R. CIV. P. 12(g)(2) provides that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Rule 12(h)(2) provides that a failure to state a claim upon which relief can be granted challenge may be raised "in any pleading . . . under Rule 7(a)," "by a motion under Rule 12(c)," or at trial. FED. R. CIV. P. 12(h)(2)(A)-(C).

Although Rule 12(g)(2) uses prohibitive language, the Ninth Circuit has tempered the rule "in light of the general policy of the Federal Rules of Civil Procedure," including Rule 1, which "directs that the Federal Rules be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action[.]" *Pepper v. Apple Inc.*, 846 F.3d 313, 318 (9th Cir. 2017), *aff'd*, 139 S. Ct. 1514 (2019). "Denying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1." *Id.* District courts have followed the Ninth Circuit's flexible approach to Rule 12(g)(2). For example, in *Holloway v. Clackamas River Water*, the court considered the Rule 12(b)(6) motion based on the statute of limitations despite the fact that defendants did not raise the issue in their prior motion. No. 3:13-cv-01787-AC, 2020 U.S. Dist. LEXIS 166655, *41 (D. Or. Apr. 24, 2020), *findings & recommendations adopted by* 2020 U.S. Dist. LEXIS 165673 (D. Or. Sept. 10, 2020). The court recognized the inefficiency in "requiring a defendant to file an answer admitting the allegations of the complaint and then file a motion for judgment on the pleadings

under Rule 12(c), when the same result would occur if the court accepted the allegations of the complaint as true in considering the second Rule 12(b)(6) motion[.]" *Id.* at *40-41. *See also Nat'l City Bank, N.A. v. Prime Lending, Inc.*, No. CV-10-034-EFS, 2010 U.S. Dist. LEXIS 85888, *5-6 (E.D. Wash. July 19, 2010) (considering second motion to dismiss and "declin[ing] to pass on this opportunity to narrow the issues because Defendants are entitled to raise these defenses even if they already filed a motion to dismiss").

Here, the Court should exercise its discretion to consider all of the challenges to the SAC raised in this Motion as doing so furthers the efficiency considerations identified by the Ninth Circuit and there is no evidence of prejudice to Plaintiff. Because the Court must consider the challenges to the amended TVPA claim and the new negligence claim added to the SAC, it is most efficient to consider all challenges at the same time. In contrast, strictly applying Rule 12(g)(2) would likely result in piecemeal consideration of the issues should Omegle be required to answer the SAC's first four claims and then raise identical challenges to those claims – subject to an identical standard of review – via a motion for judgment on the pleadings. *See Reflex Media, Inc. v. Luxy Ltd.*, No. 2:20-cv-00423-RGK-KS, 2021 U.S. Dist. LEXIS 174980, *5 (C.D. Cal. July 13, 2021) (stating in similar circumstances that the court saw "no need for Defendant to jump through an extra procedural hurdle to end up in the same place"). Moreover, this case is still in its very early stages; the parties have stipulated to a stay of all discovery as described in the Court's Order (*see* Dkt. 42), the discovery deadline itself is not until January 3, 2023, and the pleadings remain in flux (as demonstrated by Plaintiff's filing of the SAC).

There is also no evidence that Omegle strategically delayed this case by focusing on Section 230 in its motion to dismiss the original complaint. First, there has been no delay; to the contrary, because Omegle's challenge to the amended TVPA claim and the new negligence claim are timely, it is Plaintiff's suggestion that the challenges to the Product Liability Claims be carved out and addressed later that could cause delay. Second, because Section 230 is "immunity from suit rather than a mere defense to liability," there was nothing improper about focusing on

Section 230 – a threshold issue[9] – in the first motion. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (emphasis omitted); *see also Fair Housing Council v. Roommates.com, LLC*, 521 F.3d 1157, 1174-75 (9th Cir. 2008).

Therefore, Omegle respectfully submits that the speedy and efficient determination of this action supports considering this Motion in its entirety at this time.

**B.      The SAC does not plausibly allege that Omegle's online chat service is a "product" for purposes of Oregon's product liability law**

Under Oregon law, a product liability action – whether alleging strict liability or sounding in negligence – is limited to claims "brought against a manufacturer, distributor, seller or lessor of a ***product***[.]" ORS 30.900 (emphasis added); *see also* ORS 30.920(1) (a strict liability claim is limited to "[o]ne who sells or leases any ***product*** in a defective condition unreasonably dangerous to the user or consumer") (emphasis added). The statute does ***not*** impose liability on defendants who provide ***services***, regardless of the nature of the service. *See generally* ORS 30.900, .920; *see also Watts v. Rubber Tree, Inc.*, 118 Or. App. 557, 563, 848 P.2d 1210 (1993) (ORS 30.920 "does not provide for strict liability of service providers. If the legislature had intended otherwise, it would have clearly said so.").

"Whether something is a 'product' within the meaning of [Oregon's product liability] statute is a question of law." *Ass'n of Unit Owners of Bridgeview Condos. v. Dunning*, 187 Or. App. 595, 615, 69 P.3d 788 (2003) ("*Dunning*"). "The scope of the product liability statute . . . is not determined as a matter of [the court's] judgment as to what is the best policy in response to perceived public needs." *Id.* at 617. Rather, "[t]he task of the courts is merely to determine the scope of the legislature's policy judgments as expressed in the statute." *Id.* Accordingly, as ORS 30.920(3) instructs, courts must construe the statute "in accordance with" Section 402A of the RESTATEMENT (SECOND) OF TORTS ("Section 402A") when determining whether something is a "product." *See id.* at 616-17 (relying on comments a, c, and d of Section 402A and holding that a condo is not a "product" because condos are neither "chattels" nor "goods"); *Sease v.*

---

[9] The Court described Section 230 immunity as a "threshold matter." (Dkt. 36 at 3.)

*Taylor's Pets, Inc.*, 74 Or. App. 110, 116-17, 700 P.2d 1054 (1985) (relying on comment e to Section 402A and holding that a live skunk was a product). *Dunning* and *Sease* confirm that a "product" must not only be personal property but also something "movable." *See, e.g.*, *Dunning*, 187 Or. App. at 616 (explaining that "[t]he term 'chattel' . . . ordinarily refers to 'an article of personal property, as opposed to real property. ***A thing personal and moveable***'") (quoting *Black's Law Dictionary* 215 (5th ed. 1981)).[10]

Here, Omegle's chat service, provided via its website, is not a "product" within the meaning of Oregon's product liability law. The chat service is not a tangible, "moveable" thing and Plaintiff makes no plausible allegations to the contrary. Indeed, the SAC describes Omegle as "a free online chat room," a "free online website," and "one of the largest and most popular chat sites", and alleges that "Omegle is accessible only through its own website" and is not an "application[] uploaded through a marketplace like the App Store or Google Play." (Dkt. 43 at ¶¶ 2, 17-18, 30.) While the SAC is replete with generic references to Omegle's "product" and "the product" (*see, e.g., id.* at ¶¶ 4, 6, 26-27, 29, 32, 63, 67, 70, 72, 78-79, 82-83, 86, 98-99), the only "product" referenced is "the website" (*see id.* at ¶¶ 79, 86-87, 92-93, 96, 99, 107). While the SAC labels Omegle as a "product," the Court is "not bound to accept as true [that] legal conclusion." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

While courts applying Oregon product liability law have not considered whether an online chat service used via a website that does not require a user to download an app is a "product," other courts have held that websites are not products for purposes of product liability law. *See, e.g.*, *James v. Meow Media, Inc.*, 300 F.3d 683, 700-01 (6th Cir. 2002) (affirming dismissal of product liability claims because plaintiff failed to demonstrate that "video games, movies, and internet sites are 'products' for purposes of strict liability"; explaining that "internet transmissions are not sufficiently 'tangible' to constitute products"); *Intellect Art Multimedia,*

_____

[10] While Oregon courts have not adopted it, the definition of "product" in Section 19 of the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY – that a "product is tangible personal property distributed commercially for use or consumption" and that "[s]ervices, even when provided commercially, are not products" – is consistent with *Dunning*'s and *Sease*'s definition.

*Inc. v. Milewski*, 899 N.Y.S.2d 60, 2009 N.Y. Misc. LEXIS 2325, ***18 (N.Y. Sup. Ct. 2009) (dismissing product liability claim against website; noting that "[a]lthough plaintiff argues that the national trend is moving towards a more expansive definition of the term 'product' . . ., this court is not persuaded that this website in the context of plaintiff's claims is a 'product' which would otherwise trigger the imposition of strict liability"). Courts have also held that services accessed online are not subject to product liability laws. *See Quinteros v. Innogames*, No. C19-1402RSM, 2022 U.S. Dist. LEXIS 55640, *1-2, 19 (W.D. Wash. Mar. 28, 2022) (holding that game accessed via a website – SaaS or "software as a service" – is not a "product"); *Legal Tender Servs. PLLC v. Bank of Am. Fork*, 2022 UT App. 26, 506 P.3d 1211, 1220 (Utah Ct. App. 2022) (holding that bank's online payment portal is not a "product" for purposes of product liability law; "the portal isn't a movable good" or "an item of tangible personal property" but instead, "an online portal that is accessed by following the website link" and that "no separate hardware [or] software" is needed to access the portal) (internal quotation marks omitted).

This Court should similarly hold that (a) Plaintiff has not and cannot meet her burden to plausibly allege that Omegle is a "product" and (b) therefore the SAC's first four claims necessarily fail as a matter of law.

### C.    The SAC has not plausibly alleged the physical harm required to recover the damages sought for Plaintiff's strict product liability claims

ORS 30.920(1) explicitly provides that a strict product liability claim requires "physical harm" caused by an allegedly defective product: "One who sells or leases any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for ***physical harm*** . . . caused by that condition[.] (Emphasis added). The "physical harm" requirement applies to product liability claims against manufacturers (who are referenced in ORS 30.900), as well as to sellers or lessors of products, because "[t]he categories of culpable defendants in both statutes are congruous." *Mason v. Mt. St. Joseph, Inc.*, 226 Or. App. 392, 399, 203 P.3d 329 (2009).

Accordingly, "Oregon courts have interpreted [ORS 30.920] to require that a product

cause physical harm in order to subject the manufacture[r] or seller to strict liability for a defective condition." *Kent v. Shiley, Inc.*, No. 87-6554-E, 1989 U.S. Dist. LEXIS 8962, *2-3 (D. Or. Jan. 24, 1989); *see also Cochran v. Burlington Coat Factory of Or., LLC*, No. 10-CV-6016-TC, 2010 U.S. Dist. LEXIS 101268,*4 (D. Or. Aug. 25, 2010) ("Oregon's product liability statutes . . . prohibit recovery for mental distress where there is no ***physical harm*** or ***physical impact***.") (emphasis added), *findings & recommendations adopted by* 2010 U.S. Dist. LEXIS 101267 (D. Or. Sept. 19, 2010); *Sease*, 74 Or. App. at 117-18 (in product liability action arising out of the sale of a rabid skunk, reversing judgment for plaintiff who did not "suffer illness or death from contact with the skunk's saliva" or "take the [rabies] injections" after contact with the skunk "because [plaintiff] suffered no 'physical harm'", only emotional distress).

Here, Plaintiff does not allege any physical harm arising from Omegle's "physical impact", nor could she, given the intangible nature of Omegle's online chat service. Indeed, Plaintiff does not allege that she had any physical contact with Fordyce, whose unlawful actions were conducted virtually.[11] (*See* Dkt. 43 at ¶¶ 42-44, 46-48.) In the strict liability claims (claims 1 and 2) Plaintiff includes the general (and conclusory) allegation that she "sustained permanent injuries and suffered extreme pain and agony." (*Id.* at ¶¶ 84, 90.) More specifically, Plaintiff alleges she "suffered and continues to suffer serious emotional pain and psychological distress" (*id.* at ¶ 52); "has symptoms of Post-Traumatic Stress Disorder, has suffered seizures, and has panic attacks that render her bedridden for several days" (*id.* at ¶ 54); has "trouble breathing and possibly experienc[es] a panic attack" when she hears the phone ring (*id.* at ¶ 55); and "is subject to fear and anxiety when she meets new people" (*id.* at ¶ 57). Elsewhere, Plaintiff enumerates her alleged "physical and psychological injuries" as "consisting of depression, anxiety, post-traumatic stress disorder, sleep and eating disturbances, shame, lack of trust, issues with sexuality, and difficulty with intimate relationships." (*Id.* at ¶ 75.) But the "physical" conditions Plaintiff references – seizures, "trouble breathing," and "sleep and eating disturbances" – are all

---

[11] That the alleged actions were conducted virtually rather than in-person is not intended to minimize the reprehensible nature of Fordyce's actions.

pled as symptoms of the alleged emotional distress, or, put another way, these alleged "physical injuries" are a result of emotional distress, rather than physical harm causing emotional distress.

Therefore, because Plaintiff has not plausibly alleged – and cannot so allege – cognizable damages, the strict product liability claims fail on this independent ground.

### D.    The SAC has not plausibly alleged the physical harm required to recover the damages sought for the negligence-based product liability claims or any exception to the "impact rule"

While ORS 30.920(4) provides that "[n]othing in this section shall be construed to limit the rights and liabilities of sellers and lessors under principles of common law negligence," Oregon courts have still required a plaintiff seeking to recover damages for emotional distress for a product liability claim sounding in negligence to prove a physical harm or physical impact directly from the product. *See, e.g., Kent*, 1989 U.S. Dist. LEXIS 8962 at *4-5, 11 (explaining that the requirement of "physical harm caused by the product failure or malfunction" for strict products liability also applies to "products liability claims based on negligence" and dismissing claims against the manufacturer of a defective artificial heart valve as it did not physically harm the plaintiff). This is consistent with Oregon negligence law more generally, wherein, under the so-called "impact rule," "a plaintiff can recover for emotional distress caused by ordinary negligence, but only if the distress is accompanied by physical impact." *Gartner v. United States*, No. 6:16-cv-01680-JR, 2017 U.S. Dist. LEXIS 29015, *18 (D. Or. Feb. 15, 2017) (internal quotation marks omitted), *findings & recommendations adopted by* 2017 U.S. Dist. LEXIS 66372 (D. Or. May 1, 2017). "In other words, the plaintiff must plead some form of ***direct*** physical injury or ***direct*** physical contact as a prerequisite to recovering emotional distress damages under a negligence theory." *Id.* at *19 (emphasis added).

Relying on this well-established Oregon law, courts have held a plaintiff cannot recover emotional distress damages for a negligence claim unless a "physical impact . . . ***caused*** [the plaintiff's] emotional distress." *See, e.g., Andersen v. Atl. Recording Corp.*, No. 07-CV-934-BR, 2010 U.S. Dist. LEXIS 122743, *16-18 (D. Or. Nov. 18, 2010) (emphasis added) (noting that

"the evidence indicates [the plaintiff] suffered emotional distress that increased and exacerbated her physical suffering" but she did "not identify any evidence of the inverse (*i.e.*, that she suffered any kind of physical impact that caused her to suffer emotional distress. . .)"). For example, in *Gartner*, the plaintiff asserted a negligence claim relating to various workplace investigations. 2017 U.S. Dist. LEXIS 29015 at *1-5. However, in granting the motion to dismiss the negligence claim, the court found that the plaintiff did "not assert the existence of a physical injury or impact, perpetuated by defendant, which caused emotional distress." *Id.* at *20. Rather, it found "[t]he inverse is true: plaintiff alleges that he suffered stress and anxiety as a result of defendant's actions, which, in turn, led to the physical consequences of high blood pressure, more frequent migraines, and 'nausea, vomiting, and general physical pain.'" *Id.*

Two exceptions to the "impact rule" are when (1) a defendant acted intentionally; or (2) "a defendant negligently causes foreseeable, serious emotional distress and ***also*** infringes some other legally protected interest." *Philibert v. Kluser*, 360 Or. 698, 702, 385 P.3d 1038 (2016) (emphasis added). The first exception does not apply to the negligence-based product liability claims. With respect to the second exception, "[i]n the context of emotional distress, a legally protected interest is an independent basis of liability ***separate from the general duty to avoid foreseeable risk of harm***." *Id.* at 704 (internal quotation marks omitted and emphasis added). Only those legally protected interests that are "of sufficient importance as a matter of public policy to merit protection from emotional impact" give rise to a right to recover emotional distress damages. *Id.* at 705 (internal quotation marks omitted). Moreover, a plaintiff must actually "identify the invasion of an interest that is or should be legally protected" in her pleading. *Id.* at 704 n.3 (emphasis added). As recently explained in *I.K. v. Banana Republic, LLC*, the first step in a court's analysis of whether a plaintiff has sufficiently alleged an exception to the "impact rule" is "determin[ing] whether the complaint alleges the violation of a legally protected interest." 317 Or. App. 249, 255, 505 P.3d 1078 (2022) (emphasis added). It is only after that question is answered in the affirmative that the court can proceed to the next step and determine whether the legally protected interest alleged in the complaint "is of sufficient

MOTION TO DISMISS THE SAC         28

importance as a matter of public policy to merit protection from emotional impact." *Id.* Finally, the court "must determine ***whether the complaint alleges that the emotional distress was the foreseeable result of the violation of the legally protected interest***." *Id.* (emphasis added).

Here, as with the strict product liability claims, the product liability claims grounded in negligence (claims 3 and 4) are devoid of any allegations of "direct physical contact" with Omegle or even with Fordyce. Indeed, the claims rely on the same allegation regarding the alleged harm as the strict product liability claims: that Plaintiff "sustained permanent injuries and suffered extreme pain and agony[,]" (Dkt. 43 at ¶¶ 96, 100), and incorporate the same general allegations regarding harm and damages as do the strict product liability claims. As such, the "impact rule" is not satisfied. Nor has Plaintiff made any attempt to allege an exception to the "impact rule." The SAC's only allegation identifying, or even referencing, a "legally protected interest" is in the allegations in Plaintiff's new negligence claim. (Dkt. 43 at ¶ 123.) With respect to the negligence-based product liability claims, however, the Court need not reach the issue of whether the SAC plausibly alleges an exception to the "impact rule," as Plaintiff has made no attempt to satisfy even the threshold requirement of "identify[ing] the invasion of an interest that is or should be legally protected[.]" *See Philibert*, 360 Or. at 704 n.3.

Therefore, because Plaintiff has not plausibly alleged cognizable damages, the negligence-based product liability claims should be dismissed.

## IV.    Plaintiff's Negligence Claim Should Be Dismissed As A Matter Of Law

Plaintiff's new negligence claim should be dismissed as a matter of law on two grounds. First, the SAC does not plausibly allege that Omegle's conduct unreasonably "created a foreseeable risk" of the type of harm that Plaintiff experienced, namely, that Fordyce's intervening criminal conduct and Plaintiff as the unfortunate victim of that conduct were reasonably foreseeable to Omegle. Second, even if the Court finds that Plaintiff has plausibly alleged reasonable foreseeability, the negligence claim should be dismissed because Plaintiff does not and cannot allege the physical harm required to recover emotional distress damages under Oregon law, or any exception to that requirement.

## A.    The SAC does not plausibly allege that the harm caused by Fordyce's intervening criminal conduct was reasonably foreseeable to Omegle

Under Oregon law, courts generally analyze negligence claims in terms of "reasonable foreseeability." *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or. 329, 340, 83 P.3d 322 (2004). Under this approach, "the more traditional duty-breach analysis . . . is supplanted by the question [of] whether the defendant's conduct resulted in a foreseeable and unreasonable risk of harm of the kind that the plaintiff suffered." *Towe v. Sacagawea, Inc.*, 357 Or. 74, 86, 347 P.3d 766 (2015). The only exception to this rule is if a plaintiff "invokes a special status, relationship, or standard of conduct," in which case that status or relationship "may create, define, or limit the defendant's duty to the plaintiff." *Oregon Steel Mills*, 336 Or. at 341 (internal quotation marks omitted). When a plaintiff does not invoke such a status or relationship and "a claim for common-law negligence is premised on general principles of foreseeability, the plaintiff must plead and prove that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff." *Chapman v. Mayfield*, 358 Or. 196, 205, 361 P.3d 566 (2015). When a complaint for negligence "fail[s] to allege facts sufficient to establish that the harm suffered was reasonably foreseeable to [the] defendant[,]" dismissal for failure to state a claim is appropriate. *See Stewart v. Kids Inc.*, 245 Or. App. 267, 269, 286, 261 P.3d 1272 (2011) (affirming trial court's dismissal of negligence claim "on the basis that the harm that befell plaintiff's ward was unforeseeable to both defendants as a matter of law").

Here, the SAC does not allege that Omegle owed Plaintiff a particular duty based on "a status, a relationship, or a particular standard of conduct."[12] (*See* Dkt. 43 at ¶¶ 112-124.) Thus, the "general foreseeability" standard applies to the new negligence claim, as Plaintiff apparently

---

[12] Any attempt to allege that a website owes a general duty of care to its users would face significant hurdles as courts have rejected such a duty. *See Dyroff*, 2017 U.S. Dist. LEXIS 194524, *36-40 (finding no special relationship between a website and its users to support a duty to warn and no other ground to impose an ordinary duty of care). As the Ninth Circuit stated, "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content." *Dyroff*, 934 F.3d at 1101.

concedes since the negligence claim includes the conclusory allegation that "Omegle unreasonably created a foreseeable risk of harm that its platform would injure Plaintiff and was negligent." (*Id.* at ¶ 117.) Thus, the question is whether Plaintiff has plausibly alleged that Omegle's conduct has created a foreseeable *and* unreasonable risk of harm to the Plaintiff – which, as explained below, she has failed to do.

As the Oregon Supreme Court has explained, "being charged with responsibility for all intervening intentional criminal conduct that might conceivably occur" is not consistent with "a foreseeability analysis that requires that a defendant, to be liable, must have *unreasonably* created the risk of the sort of harm to plaintiff that befell him." *Buchler v. State ex rel. Or. Corr. Div*, 316 Or. 499, 511, 853 P.2d 798 (1993). In *Buchler*, where the issue was whether the state corrections department could be held liable for criminal acts committed by a prisoner who escaped from a work crew using a van in which the keys had been left, the court explained that:

> [w]hile it is generally foreseeable that criminals may commit crimes and that prisoners may escape and engage in criminal activity while at large, *that level of foreseeability does not make the criminal's acts the legal responsibility of everyone who may have contributed in some way to the criminal opportunity*. In other words, in our society it is foreseeable that crimes may occur and that the criminals perpetuating them may cause harm. Thus, in a general sense, it is foreseeable that anyone whose conduct may in any way facilitate the criminal in committing the crime has played some part in the resulting harm. *But, mere "facilitation" of an unintended adverse result, where intervening intentional criminality of another person is the harm-producing force, does not cause the harm so as to support liability for it.*

*Id.* at 502, 511-12 (emphasis added; footnote omitted). In cases where, as here, a third party is the "harm-producing force," Oregon courts have warned against describing a harm too generally when assessing whether the risk of that harm is reasonably foreseeable. *See, e.g., Chapman*, 358 Or. at 208-18 (urging courts to narrowly define "the type of harm at risk" in cases "involving third-party criminal conduct" and holding that knowledge of an intoxicated patron's impaired judgment did not make it foreseeable that the patron would become violent if served more alcohol); *Allstate Ins. Co. v. Tenant Screening Servs., Inc.*, 140 Or. App. 41, 43, 51-52, 914 P.2d 16 (1996) (holding that the risk of a new tenant sexually assaulting another tenant was not a

"reasonably foreseeable consequence" of a background check company's failure to report the tenant's history of property and violent crime, explaining that "although it may be generally foreseeable that criminals will commit crimes, nothing in [the assailant's] criminal record . . . foreshadowed his ***particular crimes*** against [the victim]") (emphasis added); *Stewart*, 245 Or. App. at 285-86 (affirming dismissal of negligence claim arising from minor's sexual assault by an adult while participating in a fundraiser and explaining that "the fact that sexual predators in the community may commit crimes does not make a ***particular*** crime reasonably foreseeable") (internal quotation marks omitted and emphasis added).

Here, the SAC is devoid of any plausible allegations that ***Fordyce's*** criminal conduct – which occurred after his 15-minute Omegle chat with Plaintiff ended (Dkt. 43 at ¶¶ 41-44) – was ***reasonably*** foreseeable to Omegle. To the contrary, the SAC includes only conclusory, generalized assertions, including that "Omegle unreasonably created a foreseeable risk of harm that its platform would injure Plaintiff" (*id.* at ¶ 117); it "suppl[ied] an anonymous and sexual communication platform to children while it knew or had reason to know adult predators were likely to use the platform to target children" (*id.* at ¶ 116); it "knew or should have known that predators use its product to groom and exploit children sexually" (*id.* at ¶ 63); and that "Omegle is often used for individuals seeking an immediate online sexual connection with a stranger" (*id.* at ¶ 24). The allegation regarding Omegle's purported "admission that [it] was well aware that crimes to children were occurring on its platform" is based on text on Omegle's website – "Predators have been known to use Omegle, so please be careful" – that the SAC alleges was posted "[b]etween May of 2015 and May of 2021[,]" long after Plaintiff's online chat with Fordyce, which allegedly occurred in 2014. (*See id.* at ¶¶ 39, 65.) In sum, there are no plausible allegations showing that Omegle had any reason to know that Fordyce was a sexual predator who would victimize Plaintiff in the manner and under the circumstances alleged in the SAC. This case is far removed from cases like *Tenant Screening Services* and *Buchler* where the third party whose criminal conduct was the "harm-producing force" was known to the defendant – and even in those cases, negligence claims against the defendants were dismissed.

Accordingly, the Court should dismiss Plaintiff's new negligence claim because the SAC has not plausibly alleged that the harm she experienced as a result of Fordyce's intervening criminal conduct was reasonably foreseeable to Omegle.

**B.      The SAC does not plausibly allege the necessary physical harm to recover damages for the negligence claim or any exception to the "impact rule"**

As explained above, the SAC has not plausibly alleged the physical harm required for Plaintiff to recover the emotional distress damages she seeks for her Product Liability Claims, including the negligence-based product liability claims which, like all negligence claims under Oregon law, are subject to the "impact rule." The same infirmity dooms her new negligence claim, as Plaintiff does not, and cannot, plausibly allege any "direct physical injury" or "direct physical contact" with Omegle, or, for that matter, with Fordyce. Specific to the negligence claim, the SAC alleges that "Plaintiff's damages include sexual and emotional distress and physical harm." (Dkt. 43 at ¶ 124.) But the only "physical" injuries alleged in the SAC are not alleged as arising from any "direct physical contact" with Omegle. (*See supra* pp. 25-29.) Rather, the SAC alleges physical conditions as the "physical consequences" of emotional distress, which does not satisfy the requirement of "direct physical injury." *See Gartner*, 2017 U.S. Dist. LEXIS 29015 at *20; *Andersen*, 2010 U.S. Dist. LEXIS 122743 at *17-18.

Nor does the new negligence claim plausibly and sufficiently allege an exception to the "impact rule" based on "violation of a legally protected interest" or otherwise. The SAC's only attempt to allege an exception to the "impact rule" so as to recover emotional distress damages is the general and conclusory allegation that "Plaintiff has a legally protected interest in being free from sexual exploitation and trafficking."[13] (Dkt. 43 at ¶ 123.) This allegation, standing alone, does not suffice to invoke the exception to the "impact rule" based on "violation of a legally protected interest." The SAC alleges no facts that permit the Court to determine whether this

---

[13] Omegle does not dispute that addressing sexual exploitation and trafficking is important. Omegle agrees that Fordyce's actions alleged herein were unlawful and inexcusable. But whether Plaintiff has met her burden to prove the "legally protected interest" exception to the "impact rule" as to her claim against Omegle is a different issue.

interest "is of sufficient importance as a matter of public policy to merit protection from emotional impact[,]" as Oregon law requires. *See I.K.*, 317 Or. App. at 255. The SAC does not allege the basis for the "legally protected interest" or the source from which it derives. *See id.* (explaining that legally protected interests may be created by court order, "may be reflected in a statute" or may arise from common law). Nor does the SAC allege, as it must, how Omegle – rather than Fordyce – "violated" this interest. *See id.* As explained in *Philibert*, alleging how the alleged "legally protected interest" was violated is important because "the nature and context of the invasion influences the extent to which [the interest] is legally protected and can be the basis for a successful emotional distress claim." 360 Or. at 705. Finally, the SAC makes no attempt to explain how the emotional distress for which Plaintiff seeks damages "was the foreseeable result of the violation of the legally protected interest." *See I.K.*, 317 Or. App. at 255.

The Court should dismiss Plaintiff's negligence claim as a matter of law, because she has not met her burden to plausibly allege that she is entitled to emotional distress damages.

## V.    Having Been Afforded Ample Opportunity To State A Claim For Relief But Failing To Do So, Plaintiff's SAC Should Be Dismissed With Prejudice

Although the Federal Rules generally embody a principle of liberally permitting amendment of pleadings, that principle does not require the Court to allow infinite amendment opportunities, particularly when amendment would be futile. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (dismissal with prejudice appropriate where amendment would be futile); *Shannon v. Bayview Loan Servicing LLC*, No. 3:16-CV-1016-MO, 2018 U.S. Dist. LEXIS 66686, *4 (D. Or. Apr. 20, 2018) (same). Here, further amendment would be futile and therefore Omegle requests that dismissal of the SAC be with prejudice.

As to the TVPA claim, as shown above, Plaintiff must plausibly allege that Omegle actively and knowingly assisted Fordyce's alleged sex trafficking of Plaintiff. But there is no dispute that Plaintiff cannot plausibly allege that Omegle had any contemporaneous knowledge of Plaintiff or Fordyce, or his alleged trafficking of Plaintiff. And, despite amending the complaint for a second time with the benefit of full briefing on Omegle's motion to dismiss the

FAC, Plaintiff made no changes to the allegations underlying the TVPA claim. Thus, because Plaintiff cannot plausibly allege the requisite knowledge, any further amendment of the TVPA claim would be futile. *See, e.g.*, *Bortz v. JPMorgan Chase Bank, N.A.*, No. 21-CV-618 TWR (DEB), 2022 U.S. Dist. LEXIS 85070, *23-24 (S.D. Cal. May 10, 2022) (finding further amendment futile where court previously held that plaintiffs were required to plead actual knowledge but failed to do so), *appeal docketed*, No. 22-55582 (9th Cir. June 13, 2022); *Whitaker v. Mind Games, LLC*, No. 2:20-cv-11794-RSWL-MRWx, 2022 U.S. Dist. LEXIS 68778, *9, 13 (C.D. Cal. Apr. 13, 2022) (concluding that amendment would be futile in part due to the plaintiff's inability to plead the required actual knowledge).

Similarly, amendment of the Product Liability Claims would be futile. As discussed above, the claims fail as a matter of law because the SAC does not and cannot allege that Omegle's chat service is a "product." No amendment can cure that fatal flaw. The SAC also does not and cannot allege the necessary physical harm that allegedly caused the emotional distress described in the SAC. *See Streit v. Matrix Absence Mgmt., Inc.*, No. 3:12-cv-01797-AC, 2014 U.S. Dist. LEXIS 20440, *9 (D. Or. Feb. 18, 2014) ("Amendment to state a claim for damages that are unavailable as a matter of law would be futile."). And again, Plaintiff had the benefit of full briefing on the motion to dismiss the FAC. Nonetheless, Plaintiff made no changes to the Product Liability Claims in the SAC, implicitly conceding that they represent her best attempt to state those claims. But as Omegle has demonstrated, those claims fail to state a claim for relief as a matter of law, and therefore any amendment would be futile.

Finally, as demonstrated above, the negligence claim added in the SAC is barred by Section 230. And because the claim is inextricably linked to and dependent on third-party content, any amendment would be futile. The failures of the claim on its merits only further cements this conclusion.

## CONCLUSION

Therefore, for the foregoing reasons, Omegle respectfully requests that the SAC be dismissed in its entirety with prejudice.

Dated this 22nd day of August, 2022.      Respectfully submitted,

FOCAL PLLC                                    SNELL & WILMER, LLP

By: s/ *Stacia N. Lay*                         By: s/ *Clifford S. Davidson*
    s/ *Kimberlee Gunning*                    Clifford S. Davidson, OSB #125378
    Venkat Balasubramani, OSB #180446          1455 SW Broadway, Suite 1750
    Stacia N. Lay, WSBA #30594 (PHV)           Portland, Oregon 97201
    Kimberlee Gunning, WSBA #35366 (PHV)       Telephone: (503) 624-6800
    900 1st Avenue S., Suite 201               csdavidson@swlaw.com
    Seattle, Washington 98134
    Telephone: (206) 529-4827
    venkat@focallaw.com
    stacia@focallaw.com
    kim@focallaw.com

*Attorneys for Defendant Omegle.com LLC*