Barbara C. Long, OSB No. 122428
barb@vogtlong.com
VOGT & LONG PC
1314 NW Irving St, Suite 207
Portland, OR 97209
Telephone: (503) 228-9858

Carrie Goldberg (*pro hac vice*)
carrie@cagoldberglaw.com
Naomi Leeds (*pro hac vice*)
naomi@cagoldberglaw.com
C.A. GOLDBERG PLLC
16 Court Street Brooklyn,
NY 11241
Telephone: (646) 666-8908

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| A.M., an individual,<br><br>    Plaintiff,<br><br>  v.<br><br>OMEGLE.COM LLC,<br><br>    Defendant. | Case No. 3:21-cv-01674-MO<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Judge: Hon. Michael W. Mosman<br>Date: September 12, 2022 |

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

# Table of Contents

INTRODUCTION ................................................................................................................ 1

FACTUAL ALLEGATIONS ............................................................................................... 2

LEGAL STANDARD .......................................................................................................... 4

I.   A.M.'s claims are sufficiently pleaded and Omegle fails to show that Plaintiff's complaint cannot withstand Rule 12(b)(6) scrutiny ................................................................. 4

II.  The Court already denied dismissal of Plaintiff's four product liability claims. .................. 6

ARGUMENT ...................................................................................................................... 8

I.   A.M.'s product liability claims are proper. ................................................................... 8

A.  Plaintiff has plausibly alleged that Omegle is a product. .................................................. 9

B.  Plaintiff has plausibly alleged that she suffered physical harm for the purposes of maintaining a claim for strict product liability. ................................................................ 16

C.  Plaintiff's product liability claim based on negligence survives because she plausibly alleged physical harm and because alleging physical harm is not required to maintain a claim (Counts 3 and 4). ................................................................................................... 18

   1.  Oregon law allows claims for negligently inflicted emotional distress where a sufficiently important legally protected interest is violated. .................................... 19

   2.  This Court should recognize a legally protected interest in being free from negligent invasions of a child's right not to be coerced into performing sex acts. ................ 23

   3.  Plaintiff has adequately identified the legally protected interest at stake. .............. 24

II.  A.M.'s sex trafficking claim under the TVPA is proper because Omegle has demonstrated the requisite mens rea. ................................................................................................. 25

A.  Defendants knowingly participated in a venture engaging in sex trafficking. ................ 26

B.  Defendants knowingly received a benefit from their participation in the venture. .......... 30

III. A.M.'s Negligence Claim is Proper. .............................................................................. 31

A.  Plaintiff properly alleges that Omegle's own negligence unreasonably created the foreseeable harm she suffered and continues to suffer. .................................................. 31

   1.  Oregon's law on foreseeability ..................................................................................... 31

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

2.   The Omegle Predator's sexual exploitation and trafficking of Plaintiff was foreseeable to Defendant. .......................................................................................... 32

3.   Third-party criminality does not cut off foreseeability under Oregon law, and Defendant need not have particular knowledge of the criminal and victim. .......... 33

B.   Plaintiff has plausibly alleged that she suffered physical harm as a result of Omegle or that she falls within an exception to the "physical impact rule." .................................... 38

C.   Omegle is not entitled to Section 230 immunity where its negligence is unrelated to a publication tort or third-party content. .............................................................................. 39

CONCLUSION ...................................................................................................................... 41

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

**Tables of Authorities**

<u>**Cases**</u>

*A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171 (E.D. Pa. 2020) ...........................................26

*A.B. v. Wyndham Hotels & Resorts, Inc.,* 532 F. Supp. 3d 1018 (D. Or. 2021) ...........26, 27, 29


*Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670 (3rd Cir. 1991) ........................................10, 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................4, 5

*Ass'n of Unit Owners of Bridgeview Condominiums v. Dunning*187 Or. App. 595,
        69 P.3d 788 (2003) ..................................................................................................9, 10, 14

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) .............................................................40

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................5

*B.M. v. Wyndham Hotels & Resorts*, Inc., No. 20-cv-00656-BLF,
        (N.D. Cal. July 30, 2020) ....................................................................................26, 27, 30

*Bryant v. Tri-County Elec. Membership Corp.*, 844 F. Supp. 347 (W.D. Ky. 1994) ..............11

*Buchler v. State*, 316 Or. 499, 853 P.2d 798 (Or. 1993) .........................................33, 34, 35, 36

*Chandler v. Bunick*, 279 Or. 353, 569 P.2d 1037 (1977).........................................................10

*Chapman v. Mayfield*, 358 Or. 196, 361 P.3d 566, 573 (2015) ................................................32

*Cunningham v. Happy Palace, Inc.*, 157 Or. App. 334,
        970 P.2d 669 (1998), *rev. den.*, 328 Or. 365, 987 P.2d 510 (1999) ..............................37

*Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828 (C.D. Cal. 2021) ..............................28, 29, 30

*Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889 (N.D. Cal. 2021) ........................................27, 28, 29

*Edwards v. Talent Irrig. Dist.*, 280 Or. 307, 570 P.2d 1169 (1997) ........................................22

*Fazzolari v. Portland School Dist. No. 1J,* 303 Or. 1, 734 P.2d 1326 (1987) ...................31, 37

*F.T.C. v. Wellness Support Network, Inc., et al.* at 1:21-28,
        No. 30 (C-10-04879 JCS), 2014 WL 644749) ................................................................6

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

*Fraker v. Benton County Sheriff's Office*, 214 Or. App. 473,
    166 P.3d 1137, <u>opinion adhered to on reconsideration,</u> 217 Or. App. 159,
    174 P.3d 1111 (2007) ..................................................................................37

*F.T. v. West Linn-Wilsonville Sch. Dist.*, 318 Or. App. 692,
    509 P.3d 655 (Or. Ct. App. 2022) ..............................................................32

*G.G. v. Salesforce.com, Inc.*, No. 20-cv-02335 (N.D. Ill. May 16, 2022) .........28, 29

*Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021) ..............................................40

*Herrick v. Grindr, LLC,* 306 F. Supp. 3d 579 (S.D.N.Y. 2018), aff'd, 765 F.
    App'x 586 (2d Cir. 2019) ...........................................................................12

*Hinish v. Meier & Frank Co.*, 166 Or. 482, 113 P.2d 438 (1941) ............................21

*Hovis v. City of Burns*, 243 Or. 607, 415 P.2d 29 (1966) ...................................20, 22

*I.K. v. Banana Republic*, LLC 317 Or. App 249,
    505 P.3d 1078 (Or. Ct. App. 2022) ......................................................22, 38

*James v. Meow Media, Inc.*, 300 F 3d 683 (6th Cir. 2002) ......................................13

*Jennewein v. MCIMetro Access Transmission Servs., LLC*, 308 Or. App. 396,
    481 P.3d 939 (2021) ..............................................................................31, 32

*Jewel v. NSA*, 673 F.3d 902 (9th Cir. 2011) ..............................................................4

*Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021) ..........................2, 12, 13, 16

*M.A. v. Wyndham Hotels and Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019)...............27

*Macca v. Gen. Tel. Co. of N.W.*, 262 Or. 414, 495 P.2d 1193 (1972)....................22t

*Maynard v. Snapchat, Inc.*, 870 S.E.2d 739 (Ga. 2022) ..........................................12

*McEvoy v. Helikson*, 277 Or. 781, 562 P.2d 540 (1977).........................................22

*McPherson v. Oregon Dept. of Corrections*, 210 Or. App. 602,
    152 P.3d 918 (Or. Ct. App. 2007) .......................................................32, 37

*MT & M Gaming, Inc. v. City of Portland,* 360 Or. 544, 383 P.3d 800 (2016) ......................20

*Nearing v. Weaver*, 295 Or. 702, 670 P.2d 137 (1983)...........................................22

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

*Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or. 543, 652 P.2d 318 (1982) ..............19

*Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856 (9th Cir. 2011)...................................................11

*Pepper v. Apple Inc.,* 846 F.3d 313 (9th Cir. 2017)...............................................................7, 8

*Philibert v. Kluser*, 360 Or. 698, 395 P.3d 1038 (2016) ....................................................passim

*Piazza v. Kellim*, 360 Or. 58, 377 P.3d 492 (2016)........................................................31, 35, 36

*Pierce v. Pacific Gas & Elec. Co*., 166 Cal. App. 3d 68,
    212 Cal. Rptr. 283 (Cal. App. 1985) ..................................................................................11

*Ransome v. Wisconsin Electric Power Co.*, 87 Wis.2d 605,
    275 N.W.2d 641 (Wis. 1979) ..............................................................................................10

*Schafer v. State Farm Fire & Cas. Co*., 507 F. Supp. 2d 587 (E.D. La. 2007) .................10, 12

*Sease v. Taylor Pets., Inc.*, 74 Or. App. at 110, 700 P.2d 1054 (1985),
    *rev. den.* 299 Or. 854 (1985) .......................................................................................9, 17, 18

*Scheffel v. Or. Beta Chapter of Phi Kappa Psi Fraternity*, 273 Or. App. 390,
    359 P.3d 436, 449 (2015) ....................................................................................................36

*Sheppard v. David Evans & Assoc.*, 694 F.3d 1045 (9th Cir. 2012).........................................5

*Simulados Software, LTD v. Photon Infotech Private, LTD*, 40 F. Supp. 3d 1191
    (N.D. Cal. 2014)...........................................................................................................10, 11

*Stewart v. Jefferson Plywood Co.*, 255 Or. 603, 469 P.2d 783 (1970) ...................................32

*Tomlinson v. Metro Pediatrics.* 362 Or. 431, 412 P.3d 133 (2018)...................................21, 22

*Torres v. United States Nat. Bank.*, 65 Or. App. 207,
    670 P.2d 230 (Or. Ct. App. 1983) ......................................................................................37

*Washa v. Oregon Department of* Corrections, 159 Or. App. 207 (1999),
    aff'd, 335 Or. 403, 69 P.3d 1232 (2003).............................................................................36

*Watters v. TSR*, 904 F2d 378 (6th Cir. 1990).........................................................................14

*Williams v. Apple Inc*., 2019 WL 2057960, (S.D. Tex. May 9, 2019)....................................12

*Williams v. Gerber Prods.*, 523 F.3d 934 (9th Cir. 2008)..........................................................5

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

## Statutes and Rules

18 U.S.C. § 1591 ..................................................................................................25, 27

18 U.S.C. § 1591(a)(2) .................................................................................................26

18 U.S.C. § 1591(e)(4) ...........................................................................................26, 27

18 U.S.C. § 1591(e)(6) .................................................................................................27

18 U.S.C. § 1595 ..............................................................................................1, 25, 26

18 U.S.C. § 1595(a) ................................................................................................25, 30

18 U.S.C. § 2251 ...........................................................................................................17

47 U.S.C. § 230 ....................................................................................................passim

FED. R. CIV. P. 8(a) ........................................................................................................4

FED. R. CIV. P. 12(b)(1) .................................................................................................7

FED. R. CIV. P. 12(b)(6) ........................................................................................passim

FED. R. CIV. P. 12(g)(2) ................................................................................1, 4, 6, 41

FED. R. CIV. P. 12(h) ......................................................................................................7

FED. R. CIV. P. 12(h)(2) .................................................................................................6

FED. R. CIV. P. 12(h)(3) .................................................................................................6

Model Penal Code § 30(b)(i-ii) ....................................................................................26

OR. REV. STAT. 30.900 ...................................................................................................9

OR. REV. STAT. 30.920 ..............................................................................................9, 17

OR. REV. STAT. 30.920(1) ........................................................................................16, 18

OR. REV. STAT. 30.920(4) .............................................................................................19

OR. REV. STAT. 163.266 ..........................................................................................17, 23

OR. REV. STAT. 163.275 ..........................................................................................17, 23

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

OR. REV. STAT. 163.684 ...................................................................................................17

OR. REV. STAT. 163.670 ...................................................................................................17

OR. REV. STAT. 167.017 ...........................................................................................17, 23

OR. REV. STAT. 419B.005 ...............................................................................................17

Trafficking Victims Protection Act .................................................................17, 23, 25, 30

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

## INTRODUCTION

Defendant Omegle's second Motion to Dismiss asks the Court to countermand previously litigated principles in this case. The Court should deny Defendant Omegle's motion to dismiss Plaintiff's Second Amended Complaint ("SAC"). Plaintiff A.M. brings a civil action against Omegle based on the physical and psychological harms she sustained from its product defects, negligence, and sex trafficking. Tellingly, Omegle's current motion also seeks dismissal based largely on defenses and arguments it either could have or did allege in its first motion to dismiss dated January 18, 2022. (*See* Dkt. 17.)

On May 3, 2022, both parties appeared before the Court for oral arguments on Defendant's motion to dismiss Plaintiff's Complaint. The Court denied Defendant's motion to dismiss Plaintiff's four product liability claims and granted Plaintiff leave to amend her Section 1595 claim—now Plaintiff's fifth claim (Dkt. 28). In accordance with the schedule set on the record on May 3, 2022, Plaintiff filed her First Amended Complaint ("FAC") on May 5, 2022. On May 13, 2022, Omegle brought a second FED. R. CIV. P. 12(b)(6) motion to dismiss all of Plaintiff's claims in their entirety. On July 29, 2022, the Court granted the parties' stipulated motion to Plaintiff's filing of a SAC which was filed on August 1, 2022. Defendant brings the instant motion to dismiss Plaintiff's SAC.

The Court should deny Omegle's motion to dismiss Plaintiff's four product liability claims for both procedural deficiency pursuant to Rule 12(g)(2) and for failure to meet the Rule 12(b)(6) standard. The Court should also deny Omegle's motion to dismiss Plaintiff's sex trafficking claim because Omegle fails to show that it cannot withstand Rule 12(b)(6) scrutiny. The Court should deny Omegle's motion to dismiss Plaintiff's negligence claim because Defendant has failed to prove that the pleadings are insufficient under Rule 12(b)(6).

Page 1 –PLAINTIFF'S RESPONSE IN
OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

The Court has already made its position clear on all but the sex trafficking claim. In the May 3, 2022, oral argument denying dismissal of the product liability claims, unprompted, the Court extended its analysis to negligence claims. The Court asked Omegle's counsel if they agree that *Lemmon v. Snap* stands for the proposition that product liability *and negligence* claims against internet service providers that don't seek to require defendant to monitor or supervise content fall outside 47 U.S.C. § 230. (*See* Dkt. 32 at 6:10-18.) Defendant's counsel responded in the affirmative and, on July 13, 2022, the Court issued its decision in accordance with *Lemmon*. *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021). Now, Defendant expects this Court to countermand previously litigated principles of this case.

## FACTUAL ALLEGATIONS

Omegle advertises itself as a "free" online website that randomly pairs strangers for livestream video chats. (SAC at ¶ 17.) Omegle's tag line is "Talk to strangers!" (SAC at ¶ 22), and its primary use is for individuals seeking immediate online sexual connections with strangers. (SAC at ¶ 24.)

Omegle receives an estimated 66 million monthly visits; and at any one time, there are about 50,000 individuals using the product. (SAC at ¶ 18.) Omegle's homepage, until recently, admitted that "[p]redators have been known to use Omegle." (SAC at ¶ 106.) Omegle allows anybody to use its product and has chosen to not require registration, name, or age verification. (SAC at ¶ 27.) Omegle also has chosen to not use the types of industry-standard verifiers that can disincentivize abusive conduct, for example, by requiring users' name, email, phone number, and/or social media account information or that access of its product be through the App Store or Google Play. (SAC at ¶¶ 27, 30.) Omegle's revenue comes from advertisements for pornography and adult cam sites, which Omegle displays on its site to all of its users. (SAC at ¶ 31.)

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

Omegle invites kids as young as thirteen to use its product. (SAC at ¶ 29.) And does not take any steps to prevent or discourage kids under the age of thirteen from such use. (SAC at ¶¶ 29-30.) Omegle knowingly pairs children and adults for online sex acts. A BBC investigation revealed that in ten hours, journalists were paired with dozens of minors, some appearing as young as seven or eight, and in a two-hour period Omegle also paired them with twelve masturbating men, eight naked men, and seven porn advertisements. (SAC at ¶ 33.) Twice journalists were paired with prepubescent boys masturbating. (SAC at ¶ 33.) Omegle simply has no mechanism to prevent children and adults from being paired with one another and thus it is a playground for predators to find children. (SAC at ¶¶ 4-5.) More to the point, Omegle affirmatively pairs all users – irrespective of age – with other users actively engaged in sexual acts.

In about 2014, Omegle matched then 11-year-old A.M. with a child sex predator ("Omegle Predator"). (SAC at ¶¶ 39-43.) On Omegle, the Omegle Predator gained A.M.'s trust and then went on to elicit intimate images of A.M. (SAC at ¶ 43.) The Omegle Predator blackmailed A.M. for three years to send him more intimate images, masturbate for him, and be available at his beck and call for online sexual performances for him and his friends. (SAC at ¶¶ 44-47.)

The Omegle Predator also forced A.M. to sex traffic other children on Omegle by making her recruit other children on Omegle for him to exploit. (SAC at ¶ 48.) A.M.'s abuse eventually ended when in 2018 she was contacted by Canadian law enforcement after they had done a raid on the man's home and found images of her and other children. (SAC at ¶ 50.) A.M. suffers extreme emotional distress and physical trauma as a result of Omegle's defective and dangerous product and the sex trafficking she was coerced into. (SAC at ¶¶ 52-60.)

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

A.M.'s injuries were the predictable consequences of the regular, intended, and known use of Omegle. (SAC at ¶¶ 63-64, 71.)

## LEGAL STANDARD

The Court's ruling on Defendant's current motion to dismiss should rest on the legal standards underpinning the following two Federal Rules of Civil Procedure: 12(g)(2) and 12(b)(6). Pursuant to Rule 12(g)(2), Defendant fails to explain how a Rule 12(b)(6) motion is a proper vehicle for reversal of the court's earlier ruling vis-à-vis the four product liability claims. All six of Plaintiff's claims are sufficiently stated to withstand Rule 12(b)(6).

## I. A.M.'s claims are sufficiently pleaded and Omegle fails to show that Plaintiff's complaint cannot withstand Rule 12(b)(6) scrutiny.

Plaintiff's claims are sufficiently stated to withstand Rule 12(b)(6) based on the standards set forth in Defendant's motion to dismiss.

FED. R. CIV. P. 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8. Courts "must accept all factual allegations of the complaint as true" and "draw all reasonable inferences in favor" of the complaint. *Jewel v. NSA*, 673 F.3d 902, 907 (9th Cir. 2011). As such, this Court must also "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.*

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A.M. alleges that Defendant, through its own negligent conduct, created Omegle, a dangerous product that was used as intended to cause her harm, and, as such, she is entitled to relief. A complaint is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

alleged." *Id.* at 678. In the pleadings, A.M. has alleged that Defendant was negligent, it created Omegle, a defective and dangerous product, and that Defendant is liable for the harms caused by its technology that introduced her to a child predator. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The factual allegations within A.M.'s complaint do not rest on legal conclusions or conclusory statements, but instead focus on factual context and, as such, this Court should assume their veracity. *See id.* at 678-9, 686.

Defendant conflates its objection to liability with its argument that Plaintiff's complaint is insufficiently pled. "The motion to dismiss is not a procedure for resolving a contest between parties about the facts or the substantive merits of plaintiff's case." *Williams v. Gerber Prods.*, 523 F.3d 934, 938 (9th Cir. 2008) (internal citations and quotation marks omitted) (quoting 5 Fed. Prac. & Proc. 1356); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (noting that courts may not dismiss claims because they believe "the [claimant] will fail to find evidentiary support"). "[A] claim [need only] be 'plausible,'" and "even a 'short and plain' statement can state a claim." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1048-49 (9th Cir. 2012). Even allegations of "extravagantly fanciful nature" are entitled to "the presumption of truth." *Iqbal*, 556 U.S. at 681; *Twombly*, 550 U.S. at 556. Twombly does not require courts at the motion-to-dismiss stage to consider the likelihood that the allegations are true; instead, it requires courts to proceed on the assumption that all facts alleged are true. *Iqbal*, 556 U.S. at 681.

Plaintiff's claims are based in fact, and Defendant has not shown otherwise. Omegle harms children by designing its product in a manner that encourages and provides a safe haven for predators to find new prey—an issue only a jury can resolve. At the core of its motion to

Page 5 –PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

dismiss, Omegle is disputing the allegations of the SAC and asking this Court to apply an unreasonably broad interpretation of Section 230 to skirt liability for harms it knowingly and routinely causes.

## II.    The Court already denied dismissal of Plaintiff's four product liability claims.

As Defendant rightly admits, FED. R. CIV. P. 12(g)(2) prohibits a party from filing duplicative motions, including motions to dismiss, that raise defenses that were available to the party but omitted from the earlier motion. ("*Limitation on Further Motions*. Except as provided in Rule 12(h)(2) or (3), a party that a makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.")

Despite this, Defendant moves this Court again to dismiss Plaintiff's product liability claims for failure to state a claim under FED. R. CIV. P. 12(b)(6). Defendant's motion as to the first four claims is defective and without merit. Plaintiff added no new facts pertaining to the product liability claims in the FAC or the SAC. Sister district courts have upheld denials of second-bite motions to dismiss: in *FTC v. Wellness Support Network, Inc., et al.,* the Northern District of California granted Plaintiff leave to amend its complaint. *See* Order Denying First Motion to Dismiss First Amended Complaint Filed by Defendants at, *Federal Trade Commission v. Wellness Support Network, Inc., et al.* at 1:21-28, No. 30 (C-10-04879 JCS), 2014 WL 644749. The FTC's amended complaint was "virtually identical to the original, except that it included more specific allegations." *Id.* The defendant in that case raised a motion to dismiss under Rule 12(b)(6) that did not challenge the sufficiency of the new added facts in the complaint, but rather challenged the claims on other grounds that were not raised in previous motion to dismiss. *Id.* This successive motion to dismiss was denied because the "judicial

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

economy [did] not favor an exercise of discretion to consider Defendants' Motion." *Id.* at 5:17-18.

Defendant cannot simply keep raising Rule 12(b)(6) motions each time it loses. Defendant has not waived its defenses to claims 1-4 and may raise these very same grounds at appropriate later stages in the adversarial process such as in its Rule 7(a)(2) answer and in a Rule 12(c) motion.

Defendant relies on *Pepper v. Apple Inc*. to analogize to the case at hand and justify the Court's entertainment of their motion to dismiss; however, the procedural facts of *Pepper* do not apply here. *Pepper v. Apple Inc.,* 846 F.3d 313. This case is dissimilar to *Pepper* where Apple's successive motions to dismiss were either based on defenses waived by Rule 12(h), or newly added facts in Plaintiffs' amended complaints. Apple's fourth motion to dismiss against Plaintiffs' third amended complaint "moved *for the first time* to dismiss Counts I and II, relying on Rules 12(b)(1) and 12(b)(6)" on the basis of lack of subject-matter jurisdiction and standing. *Id.* at 319 (emphasis added). The standing issue was not decided, as Plaintiffs had not yet alleged "sufficient injury to confer Article III standing" and "in the absence of an Article III case or controversy, a ruling on the motion would be an advisory opinion." *Id.* at 320. It was Apple's fourth motion to dismiss that actually culminated in the first instance of litigating on the Rule 12(b)(6) issue. This is the relevant procedural history that Omegle neglects to present in their instant motion.

Unlike the defendant in *Pepper*, Omegle is asking the Court to dismiss all of Plaintiff's claims, including the four product liability claims that this Court already upheld and that remained unchanged through amendment of the Complaint. Because Defendant's instant motion as it relates to those four claims does not raise any de novo claims, or rely on facts newly alleged

in the SAC, those requests for dismissal should be denied. *See also Pepper*, 846 F3d at 321 (unlike Omegle's motion, the Court in *Pepper* found that Apple's successive motions did "not appear to have been filed for any strategically abusive purpose.").

Plaintiff is prejudiced by Omegle bringing a Rule 12(b)(6) motion to reargue claims already resolved, and these efforts to deprive Plaintiff of a decision made in her favor should not be rewarded. It is of no consequence that the controversy arises in an early stage of litigation, as it is Omegle's filing of serial motions to dismiss that has kept the case in this stage. Cases would routinely stall in Rule 12(b)(6) if defendants could simply bring another Rule 12(b)(6) after each loss, to the detriment of plaintiffs and the judicial system as a whole. Omegle has no justification or explanation as to why the Court should permit multiple Rule 12(b)(6) motions on identical claims that have already been determined and Plaintiff has been denied the certainty and finality of a judicial decision that was in her favor—a delay that only benefits Omegle, who has already won an additional six months of not being responsible to Plaintiff for the harms it caused.

## ARGUMENT

### I.    A.M.'s product liability claims are proper.

Defendant has essentially asked the court to freeze the law in time and make inferences in its own favor rather than accept Plaintiff's well-pled allegations regarding a somewhat recent technological innovation. Plaintiff has plausibly alleged that Omegle is a product and that Plaintiff suffered physical harm as a result of Omegle's dangerous and defective product. Plaintiff has also plausibly alleged that she suffered a violation of her legally protected interest in being free from sexual exploitation and trafficking, so her claims survive even if the court determines the physical harm element has not been met.

Page 8 –PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

**A.      Plaintiff has plausibly alleged that Omegle is a product.**

Plaintiff's SAC contains well-pled allegations setting forth the elements of product liability claims.[1] Omegle nevertheless argues that Plaintiff has not plausibly alleged a product liability claim under Oregon law, despite statutory interpretation, policy, common sense, and the fact that references to itself as "product" are embedded in its own Terms of Use. (SAC at ¶36.[2])

The Oregon Product Liability Act defines a "product liability civil action" as "a civil action brought against a manufacturer, distributor, seller or lessor . . . for personal injury . . . arising out of [a]ny design, inspection, testing, manufacturing or other defect in a product." O.R.S. § 30.900, *et seq*. Oregon's product liability statute does not define the term "product" and no Oregon court has addressed the question of whether social media platforms are products.[3] Without a doubt, Omegle is the manufacturer and distributor of Omegle and Plaintiff's allegations that she suffered physical and mental harm from Omegle's "defective design," (SAC at ¶¶ 63, 96), and "negligent design and manufacture," (SAC at ¶ 86), clearly fall within Oregon's statutory definition of a "product liability civil action."[4]

---

[1] *See, e.g.,* SAC at ¶¶ 67 ("Omegle authorizes the use of its product"), 63 (Omegle failed "to cure its negligent design and manufacture."), 83, 79 (user anonymity and lack of age restriction "amount to a design defect"), 83 (Omegle's "defective design renders the product unreasonably dangerous"), 86 ("Omegle designed, coded, engineered, manufactured, produced, assembled, and placed the website in the stream of commerce.").

[2] Omegle's terms of use provide: "By using the Omegle Web site, and/or *related products* and/or services ("Omegle", provided by Omegle.com LLC), you agree to the following terms:" SAC at ¶ 36.

[3] And although there are a few Oregon cases addressing whether something is a "product," none has determined the issue as it relates to social media. *See Ass'n of Unit Owners of Bridgeview Condos. v. Dunning*, 187 Or. App. 595, 69 P.3d 788, 800, (2003) (holding that an 18-unit condominium consisting of two buildings was not a "product" within the meaning of O.R.S. § 30.920); *Sease v. Taylor's Pets, Inc*., 74 Or. App. 110, 700 P.2d 1054, 1058, (1985) (holding that a live animal is a product).

[4] *See also* SAC at ¶ 96 ("Omegle designed, coded, engineered, manufactured, produced, assembled, and placed the Omegle website in the stream of commerce despite its defective design.").

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

Omegle's assertion that only chattels may be subject to product liability claims also is unsupported by Oregon law. In *Ass'n of Unit Owners of Bridgeview Condominiums v. Dunning*, 187 Or. App. 595, 616, 69 P.3d 788, 800 (2003), the Court of Appeals of Oregon explained that the focus of the authors of the Second Restatement in their commentary on the scope of Section 402A was on items that are either "chattels" or "goods." *Id.* Such an approach, the Court of Appeals noted, was consistent with longstanding Oregon case law discussing products liability as being focused on "the seller of goods." *Chandler v. Bunick*, 279 Or. 353, 356, 569 P.2d 1037, 1039 (1977). Omegle's brief almost entirely ignores the question of whether Omegle is a "good," focusing solely on whether it is a "chattel."

The weight of out-of-state authority demonstrates that software can be a "good," rather than a "service" under the Uniform Commercial Code. *See, e.g.*, *Schafer v. State Farm Fire & Cas. Co.*, 507 F. Supp. 2d 587, 601 (E.D. La. 2007) (finding that defendant's computer software program could be a product for purposes of Louisiana's product liability law and allowing plaintiffs leave to add such a claim); *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 675–76 (3rd Cir. 1991) (noting that "the majority" of "academic commentary . . . espous[es] the view that software fits within the definition of a 'good' in the U.C.C."); *see generally Simulados Software, LTD v. Photon Infotech Private, LTD*, 40 F. Supp. 3d 1191, 1199 (N.D. Cal. 2014) ("Generally, courts have found that mass-produced, standardized, or generally available software, even with modifications and ancillary services included in the agreement, is a good that is covered by the UCC."); *see also id.* at 1199–1202 (discussing case law on this issue).

Additionally, many courts have found that electricity is a "product" for strict liability purposes. *See, e.g.*, *Ransome v. Wisconsin Electric Power Co.*, 87 Wis.2d 605, 620, 275 N.W.2d 641 (Wis. 1979) (holding that "electricity can be a product within the meaning of [Restatement

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

(Second)] sec. 402A and therefore subject to principles of strict liability in tort in appropriate cases."); *Pierce v. Pacific Gas & Elec. Co*., 166 Cal. App. 3d 68, 83–84, 212 Cal. Rptr. 283 (Cal. App. 1985) (holding that electricity is a product for strict liability purposes); *Bryant v. Tri-County Elec. Membership Corp*., 844 F. Supp. 347, 349, 352 (W.D. Ky. 1994) (holding that electricity is a product for strict liability purposes and noting that "majority of the state courts considering this issue have encountered little difficulty deciding that electricity is a product.") (footnote omitted). If Omegle's theories were correct, then these authorities would be in error. These cases, which predate the Third Restatement of Torts, undermine Omegle's argument that "a 'product' must not only be personal property but also something 'movable.'" (Dkt. 49 at ¶ 24.)

Whether something is "tangible" is not determinative of whether it is subject to product liability laws. In product liability cases, the Ninth Circuit looks to the *Restatement (Third) of Torts* ("*Restatement Third*") for guidance. *See, e.g.*, *Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 860 (9th Cir. 2011). Under the *Restatement Third*, items that are not "tangible personal property" nonetheless "are products when the context of their distribution and use is sufficiently analogous to the distribution or use of tangible personal property." *Restatement Third* § 19(a). Courts have *rejected* the narrow interpretation Omegle urges here, holding, for example, that electricity is a product for strict liability purposes,[5] and that software can be a product or good rather than a service.[6] Not surprisingly, then, many courts—including the Ninth Circuit itself in

---

[5] *E.g.*, *Bryant v. Tri-County Elec. Membership Corp*., 844 F. Supp. 347, 349-52 (W.D. Ky. 1994) (majority of state courts have found electricity to be a product for strict liability purposes).

[6] *E.g.*, *Advent Sys. Ltd. v. Unisys Corp*., 925 F.2d 670, 675-76 & n.2 (3d Cir. 1991) (noting that "the majority" of "academic commentary ... espous[es] the view that software fits within the definition of a 'good' in the U.C.C."); *Simulados Software, LTD v. Photon Infotech Private, LTD*, 40 F. Supp. 3d 1191, 1199 (N.D. Cal. 2014) ("Generally, courts have found that mass-produced,

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

*Lemmon*— have assumed, without deciding, that social media and software are within the purview of product liability law.[7]

The Ninth Circuit decision in *Lemmon v. Snap, Inc*., 995 F.3d 1085 (9th Cir. 2021) is both consistent with the fact that Omegle is a product manufacturer and controlling in the instant case. In *Lemmon,* the plaintiff sought "to hold Snap liable for its allegedly unreasonable and negligent design decisions." *Id.* at 1087. The negligent design lawsuit treats Snap as a "*products manufacturer*, accusing it of negligently designing a *product* (Snapchat) with a defect (the interplay between Snapchat's reward system and the Speed Filter)." *Id.* at 1092 (emphasis added). The *Lemmon* plaintiffs brought the action under California law which, like Oregon, defines a "product liability action" as "any action for injury or death caused by a product" but without defining a product. Nevertheless, the Ninth Circuit ruled that the Parents' product liability claims against Snap were proper and repeatedly referred to Snapchat as a product and Snap, Inc. as a product manufacturer. Like the instant case, the Ninth Circuit in *Lemmon* recognized that social media products fit squarely under the category of product liability law and that these types of disputes – where a dangerous product occasioned unspeakably horrific yet foreseeable harms – should be litigated on the merits,

> Here, the Parents seek to hold Snap liable for its allegedly "unreasonable and negligent" design decisions regarding Snapchat. They allege that Snap created:

---

standardized, or generally available software, even with modifications and ancillary services included in the agreement, is a good that is covered by the UCC."); *Schafer v. State Farm Fire & Cas. Co*., 507 F. Supp. 2d 587, 601 (E.D. La. 2007) (defendant's computer software program could be a product for purposes of Louisiana's product liability law).

[7] *E.g.*, *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 592 n.9 (S.D.N.Y. 2018) (noting that strict product liability law "may apply to standardized and mass-downloaded software"), *aff'd*, 765 F. App'x 586 (2d Cir. 2019); *Williams v. Apple Inc*., 2019 WL 2057960, at *3-4 (S.D. Tex. May 9, 2019) (analyzing strict liability claim alleging that Apple's iOS 12.1 software was defective); *Maynard v. Snapchat, Inc*., 870 S.E.2d 739, 744-56 (Ga. 2022) (applying Georgia product liability law to Snapchat).

Page 12 –PLAINTIFF'S RESPONSE IN
OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

> (1) Snapchat; (2) Snapchat's Speed Filter; and (3) an incentive system within
> Snapchat that encouraged its users to pursue certain unknown achievements and
> rewards. The Speed Filter and the incentive system then supposedly worked in
> tandem to entice young Snapchat users to drive at speeds exceeding 100 MPH . . .
> In short, Snap "is being sued for the predictable consequences of" designing
> Snapchat in such a way that it allegedly encourages dangerous behavior.

*Id.* at 1091-94. In the instant case, knowing its product is used regularly for sexual

activities, Omegle could have unilaterally ensured that adults would be matched with

adults – not with children. Plaintiff's claims, like those in *Lemmon,* center on the

foreseeable consequences of a product's defective design, not on the illusory theories to

which Omegle points in hopes of escaping accountability for horrific damages it has

caused to children and, specifically, to Plaintiff.

Omegle suggests that there may be significance in the difference between a product that

is housed on a website versus a downloadable app. This difference is immaterial to a product

liability analysis, as confirmed by the lack of case law surrounding the issue. In fact, the absence

of a downloading third party (*i.e.*, the App Store or Google Play) that could verify users, de-

anonymize abusers, and offer a locus for user reviews is simply another attribute of what makes

Omegle all the more foreseeably dangerous. Omegle's absence on the lucrative App Store

suggests that it is so dangerous an app that it fails to meet even Google's and Apple's low safety

standards and thus should not be a variable that transports it beyond the scope of product liability

law.

Omegle then runs through an arbitrary set of cases where product liability claims were

brought against things that were not viewed as products, all of which have no bearing on the

instant case. In *James v. Meow Media, Inc.*, 300 F 3d 683 (6th Cir. 2002), the plaintiffs sought to

impose liability on several video game, movie production, and internet content-provider firms,

for allegedly "desensitizing" a boy to violence resulting in him going on a shooting rampage. *Id.*

at 687. Relying on a prior Sixth Circuit decision holding that words and pictures contained in a board game could not constitute "products" for purposes of maintaining a strict liability action, the court upheld dismissal of the plaintiffs' complaint because they too were seeking to hold the defendants liable for the "ideas conveyed by the video games, movie cassettes and internet transmissions." *Id.* at 701, *citing Watters v. TSR*, 904 F2d 378 (6th Cir. 1990).

Omegle cites to *Ass'n of Unit Owners of Bridgeview Condominiums v. Dunning*, to argue that a condominium is not a product for purposes of product liability. 187 Or. App. 595, 615 (2003). In *Dunning*, the association complains about the defective design and construction of an 18–unit condominium that consists of two buildings. *Id*. Throughout its reasoning, the court acknowledges that courts have been split as to "whether section 402A extends to entire buildings." *Id.* at 618. Omegle's contention that movability is a central aspect in deciding whether something is a product is likewise misled. *Dunning* refers to movability only once while citing to the Black's Law Dictionary definition of chattel. "The term 'chattel,' in legal parlance, ordinarily refers to '[a]n article of personal property, as opposed to real property. A thing personal and moveable.'" *Id.* at 616. To further evaluate whether a building should fit into the "chattels" or "goods" categories, the *Dunning* court transitions quickly into the importance of Comment C of Section 402A of the Restatement (Second) of Torts (which Oregon has adopted).

Although the condominium structures in *Dunning* were not considered products causing those plaintiffs' case to instead proceed on claims for breach of express and implied warranties, public policy and common-sense argue for the courts to consider Omegle a product. Like other products, Omegle is an invention that has a uniform and fixed appearance and properties, is used by millions of people, and causes injury. Like other products, applications and websites are personal and moveable -- they are designed to be accessed through personal and moveable items

(i.e., laptops, computers, smartphones) and *within* those devices, they are personal and moveable. A person using an application and website can open and close it, see and hear it, move it around from screen to screen, and from device to device; they can decide when to use it and when to put it away. Applications and websites take up space on a device's memory and deplete battery life. For all these reasons, Omegle is tangible. It is visual and auditory. It lives on servers, and functions in tandem with devices, consuming energy and space within those. Several social media manufacturers, including ones that operate other products, like Omegle and that involve direct messaging (which is essentially what Omegle is – a direct messaging product), obtain patents for these technologies as well – which they could not do if these products were abstract thoughts or speech.

Moreover, Omegle is even more positioned than most products to protect its users because Omegle is not only its own manufacturer and distributor, but unlike many products that are distributed through brick-and-mortar retail, Omegle retains control. Omegle's ongoing control over its own product is important for three reasons. First, Omegle has the ability to itself observe harms firsthand, which it claims to do via its own monitoring of users engaged with Omegle. Second, Omegle, like other internet-accessed software, has the unique ability to protect its users by unilaterally changing its product's infrastructure and issuing warnings, without the burden of expensive recalls. Third, Omegle could, if it wanted to, make immediate and swift changes to its product – as opposed to its moderation tactics – to respond to known patterns of abuse.

The evolution of product liability law does not just stop with the 1990's adoption of the internet. With the internet came virtual products that, like other products, are manufactured for the masses. To deny that product liability law applies to virtual products puts us all at grave

danger as the world veers further into products that have, as their primary features, internet and code-based properties – such as self-driving cars, smart products that guard our homes and children, artificial intelligence, facial recognition, robotics, airplanes that rely on MCAS, medical devices operated remotely, and even technology that edits genes.

At this stage, Defendant has not met its burden to show that Omegle is not a product or outside the scope of product liability jurisprudence.

**B.  Plaintiff has plausibly alleged that she suffered physical harm for the purposes of maintaining a claim for strict product liability.**

Plaintiff acknowledges that ORS 30.920(1) requires a plaintiff to establish "physical harm or damage to property" to establish claims for strict product liability. Plaintiff has adequately pled such physical harm, including: that the Omegle Predator coerced Plaintiff into committing sex acts upon herself, such as masturbating with her hands and objects. (SAC at ¶ 8.) The Ninth Circuit recognizes that apps can be liable for physical injuries regardless of whether the app itself is causing "direct physical harm." In *Lemmon v. Snap*, which is controlling precedent here, the court allowed a claim to proceed against Snap where two boys were killed in a tragic car accident while using the Snapchat filter. The plaintiffs, the surviving parents of two boys, argued the app had induced the reckless speeding that led to the fatal crash. In that case, the plaintiffs faced the same issue where liability was alleged against an app that resulted in a foreseeable physical harm. In *Lemmon*, the harm was undisputed even though like here, strictly speaking the use of the app – accessing the platform, seeing its screen – did not itself result in the harm.

Rather than address the Complaint as pled, Omegle suggests that certain physical *symptoms* alleged were merely the result of emotional distress rather than physical harm. (Dkt.

49 at ¶¶ 26-27). This discussion has no bearing on the issue of whether Plaintiff adequately alleged physical harm by a product.

Omegle posits a bewildering theory that the sex acts that Plaintiff, then 11 years old, was forced to do to herself do not constitute physical harm. This theory is inconsistent with state and federal law criminalizing the act of adults coercing children into performing sex acts, as well as the common sense understanding of child sexual abuse which accepts that sexual harm *is* physical harm, and that it's still a physical harm when a child is forced under threat of blackmail to abuse themselves for the illegal entertainment of adults. *See e.g.,* ORS 163.266 "Trafficking in persons," ORS 163.275 "Coercion"; ORS 167.017 "Compelling prostitution"; ORS 419B.005 "Types of Abuse"; ORS 163.684 "Encouraging child sexual abuse in the first degree"' ORS 163.670 "Using child in display of sexually explicit conduct"; Trafficking Victims Protection Act ("TVPA"); 18 U.S. Code 2251 "Sexual exploitation of children".

Omegle's grasp of physical harm is also inconsistent with *Sease v. Taylor Pets., Inc.*, a case upon which Omegle relies. 74 Or. App. at 110 (1985), *rev. den.* 299 Or. 854 (1985). There, one of the plaintiffs bought a skunk from the defendant pet farm. *Id.* at 112. Some days after the purchase, the skunk attacked and bit people, lost fur, developed sores on its body, and died. *Id.* An autopsy revealed that the skunk had rabies. *Id.* Two of the plaintiffs who had been bitten or made contact with the skunk's saliva were ordered to take rabies vaccinations in the form of injections. *Id.* at 113. Among the issues for the court to determine in *Sease* was whether judgment should be reversed for a third plaintiff's claim because he did not suffer physical harm as a result of his contact with the skunk. *Id.* In ruling on this issue, the court agreed with the defendants that there had been no "physical harm" under ORS 30.920 because that plaintiff had not taken the rabies injections <u>or</u> suffered illness as a result of coming into contact with the

skunk's saliva. *Id.* at 117-118. In so doing—and important for present purposes—the court acknowledged that taking the injections, even without being bitten, would have satisfied the "physical harm" requirement under the statute. *Id.* at 118. In so ruling the court did not rely on the contact with the skunk's saliva as the physical harm or impact—rather, the decision acknowledged that harm was satisfied by the injections some days later. *Id.* at 118-119. The ruling shows that the harm need not be directly from the product, but rather a consequence of the conditions that make it defective.

This Court should reject Omegle's suggestion that alleging a "direct" physical harm in this case is impossible because of Omegle's "intangible nature." (Dkt. 49 at ¶ 27). As discussed throughout, Omegle is not intangible. The physical harm in this case is at least as "direct" as that at issue in *Sease*, which involved physical harm by way of injections some days or weeks after contact with the faulty product rather than "direct" contact with the product itself. In this case, Plaintiff alleges a less attenuated harm—both in time and place—than that which was at issue in *Sease*. Moreover, the statute at issue refers to "physical harm" not "*direct* physical harm." This court should not add requirements that go above and beyond the plain meaning of the words in the ORS 30.920(1) statute.

Plaintiff has plausibly alleged that she suffered physical harm as a result of her use of Omegle. Omegle's Motion to Dismiss on that basis therefore should be denied.

### C. Plaintiff's product liability claim based on negligence survives because she plausibly alleged physical harm <u>and</u> because alleging physical harm is not required to maintain a claim (Counts 3 and 4).

As discussed in Section I(B) above with respect to her strict products liability claim, Plaintiff has adequately alleged a physical harm caused by Omegle because Fordyce coerced Plaintiff into committing sex acts upon herself, such as masturbating with her hands and objects.

Page 18 –PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

(SAC at ¶ 8.) These same allegations are sufficient to maintain her claim for product liability based on negligence, and Plaintiff incorporates her arguments in that regard into this section.

However, even if this Court determines that Plaintiff has not plausibly alleged physical harm, her claims for products liability based on negligence survive because physical harm is not required for such claims. ORS 30.920(4) provides in pertinent part that "[n]othing in this section shall be construed to limit the rights and liabilities of sellers and lessors under principles of common law negligence." Consistent with that provision and Oregon law regarding negligent infliction of emotional distress claims, Plaintiff disputes Omegle's contention that a physical impact or contact is a "prerequisite" to recovering emotional damages under a negligence theory. (Dkt. 49 at ¶ 27). Because Omegle violated an important legally protected interest of Plaintiff, she should be permitted to recover emotional damages for any negligently inflicted violation.

   1.   *Oregon law allows claims for negligently inflicted emotional distress where a sufficiently important legally protected interest is violated.*

The parties agree that a plaintiff who has suffered emotional distress as a result of a defendant's negligence ordinarily may not recover damages for such emotional harm in the absence of some sort of physical impact. *See Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or. 543, 558-61, 652 P.2d 318 (1982). Defendant also acknowledges that there is an exception to this general rule where a defendant has violated a "legally protected interest." *Id.* The parties very much dispute what this line of case law requires and how it impacts the case.

In *Philibert v. Kluser*, 360 Or. 698, 395 P.3d 1038 (2016), the Oregon Supreme Court set out the framework for determining whether a plaintiff may recover for negligently inflicted emotional distress damages absent a physical impact or harm, stating that such damages are available where "a defendant negligently causes foreseeable, serious emotional distress and also infringes upon some other legally protected interest." *Id.* at 702. That legally protected interest

must be "an independent basis of liability separate from the general duty to avoid foreseeable risk of harm," and only those interests that are of "sufficient importance as a matter of public policy" merit protection for emotional impact. *Id.* at 704.

Far from being the *sine qua non* of legally protected interests, Oregon courts have opined that a physical injury is but *one type* of legally protected interest. *See, e.g., Philibert*, 360 Or. at 703 ("Perhaps the simplest legally protected interest is that to be 'free from physical harm at the hands of another.'") (simplified). Legally protected interests may be established not only through special relationships and heightened duties, but through the "historical and evolving common law." *MT & M Gaming, Inc. v. City of Portland,* 360 Or. 544, 562, 383 P3.d 800 (2016) ("As a general proposition, legal recognition can come from many sources—[including] the historical and evolving common law"); *Philibert,* 360 Or. at 706 ("In addition to court order and statute, common law also can be the source of a legally protected interest capable of supporting a claim for recovery of emotional distress.") (simplified).

In *Philibert v. Kluser*, the Court considered whether two brothers could recover emotional distress damages after witnessing a truck driver negligently kill their brother as he crossed the street. *Id.* at 707. In considering whether these damages could be recovered without a physical impact, the court noted that "legal recognition [of these interests] can come from many sources—statutes, constitutional provisions, regulations, local ordinances, and the historical and evolving common law." *Id.* at 705-706. The court also recognized that the court has previously allowed claims for negligently inflicted emotional distress to proceed when "an asserted common law interest is sufficiently important to support the imposition of liability." *Id.* at 706.

Noting the court's acknowledgement of legally protected common law interests in avoiding the emotional harm at issue in *Hovis v. City of Burns*, 243 Or. 607, 415 P.2d 29 (1966)

(negligent handling of spouse's remains) and *Hinish v. Meier & Frank Co.*, 166 Or. 482, 113

P.2d 438 (1941) (unauthorized telegram falsely stating plaintiff's support for particular

legislation), the *Philibert* court held that "the interest in avoiding being a witness to the

negligently caused traumatic injury or death of a close family member is similarly important."

*Philibert,* 360 Or. at  707. In so doing, the court noted that this type of emotional distress "is a

palpable and distinct harm," one that "might be described as the emotional equivalent of a

physical injury." The court ultimately held that that "[w]e have no difficulty concluding that

plaintiffs have alleged the violation of a legally protected interest to be free from the kind of

emotional distress injury caused by defendant's negligence here." *Id*. at 707-708.

    The most recent pronouncement by the court addressing the recovery of emotional

damages absent physical impact is in *Tomlinson v. Metro Pediatrics.* 362 Or. 431, 412 P.3d 133.

There, the plaintiffs were the parents of a child whose physician failed to diagnose him with a

rare genetic disorder such that the parents gave birth to another child with the disorder. *Id.* at

435. After concluding that the plaintiffs had a viable cause of action against the physician even

though there was not a direct physician-patient relationship, the court turned to whether

emotional distress damages may be recovered.

    Acknowledging the general proposition that damages are recoverable to the extent

necessary to make a plaintiff whole, the court went on to set forth the specific standard by which

emotional damages may be recovered, stating:

> "[A]lthough emotional distress is not always a sufficient injury to establish a
> negligence claim, if the plaintiff establishes a negligence claim based on physical
> injury *or the invasion of some other legally protected interest*, then, generally
> speaking, the pain for which recovery is allowed includes virtually any form of
> conscious suffering, both emotional and physical."

*Id.* at 452 (emphasis added) (internal citations and quotations omitted). Applying that standard,

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

the court held that the plaintiffs had identified a legally protected interest in receiving information that implicated their reproductive choices and could therefore recover emotional damages. *Id.*

The Oregon Supreme Court has thus allowed negligence claims for emotional distress damages in a variety of circumstances, including:

- Negligent handling of a family member's remains. *Hovis*, 243 Or. 607.

- Negligent invasion of the right to enjoy one's home. *Macca v. Gen. Tel. Co. of N.W.*, 262 Or. 414, 495 P.2d 1193 (1972); *Edwards v. Talent Irrig. Dist.*, 280 Or. 307, 590 P.2d 1169 (1997).

- Negligent violation of a court order affecting father's custody of his child. *McEvoy v. Helikson*, 277 Or. 781, 562 P.2d 540 (1977).

- Negligent violation of a statutory duty to enforce a restraining order. *Nearing v. Weaver*, 295 Or. 702, 670 P.2d 137 (1983).

- Negligent exposure to witnessing traumatic injury or death of a close family member. *Philibert*, 360 Or. 698.

- Negligent failure of doctor to communicate a child's diagnosis of genetic disorder to non-patient parents. *Tomlinson v. Metro Pediatrics, LLC*, 362 Or. 431 (2019).

In each of the above cases, the Court determined that there was an "independent basis of liability" arising from the common law (or, in *Nearing* and *McEvoy*, respectively, a court order and statute), and that the interest was of sufficient importance such that a legally protected interest should be recognized.

The Oregon Court of Appeals recently applied the *Philibert* framework in *I.K. v. Banana Republic*, LLC 317 Or. App. 249, 505 P.3d 1078 (Or. Ct. App. 2022). There, the Court was asked to consider for the first time whether an employer could be held liable for negligently allowing an employee to secretly videorecord a co-worker using the restroom. Noting that the privacy interest at stake was "compelling" and acknowledging the right to be free of the violation

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

was consistent with Oregon's criminal and civil statutes forbidding such activity by an individual, the court held that "employees have a legally protected interest in being free from the emotional trauma of being secretly recorded as a result of the employer taking no steps to prevent it from occurring." *Id.* at 258. In so holding, the court rejected the defendant's argument that such an interest should not be recognized because it was a third-party rather than the defendant itself who intentionally placed the recording device in the bathroom, stating that in so arguing, "defendants once again improperly conflate determining the importance of an interest and determining whether a given defendant violated it." *Id.* at 263. The court ultimately held that the plaintiff had successfully alleged all of the necessary elements of a claim for negligent infliction of emotional distress. *Id.* at 266.

  2. *This Court should recognize a legally protected interest in being free from negligent invasions of a child's right not to be coerced into performing sex acts.*

  The interest at stake in this case is of sufficient importance to merit protection from negligent invasions. It cannot be disputed that Plaintiff has been a victim of crime. *See e.g.,* ORS 163.266 "Trafficking in persons," ORS 163.275 "Coercion"; ORS 167.017 "Compelling prostitution"; TVPA. The conduct at issue is not merely a case of hurt feelings or boorish behavior such that recognizing a claim would open the floodgates—it is severe. State and federal law have already made a public policy determination that the conduct at issue is egregious enough to criminalize it. The Omegle Predator himself pleaded guilty to possession of child pornography for the purpose of distribution or making available child pornography and communication with a person who is believed to be under the age of 18 years old. (SAC at ¶ 51.)

  The *Philibert* case is again instructive. In *Philibert*, the court considered for the first time

Page 23 –PLAINTIFF'S RESPONSE IN
OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

whether a bystander has a legally protected interest in avoiding observing the physical injury of a close family member. *Id.* at 707. In making its ruling, the court noted that "witnessing sudden physical injury or death is a palpable and distinct harm, different in kind even from the emotional distress that comes with the inevitable loss of our loved one," and that the injury is the "emotional equivalent of a physical injury." *Id.* at 707. Bearing this in mind, the court ultimately had "no difficulty" concluding that the plaintiffs had a legally protected common law interest in remaining free from the kind of emotional distress injuries they suffered as a result of the defendant's negligence." *Id.* at 708.

Much like the emotional injury suffered by the plaintiffs in *Philibert*, the emotional injuries suffered by a person who is coerced into performing sex acts on herself as a minor is severe enough to merit protection. Plaintiff has plausibly alleged that this caused her severe emotional distress, and it cannot seriously be disputed that a reasonable person in her position would feel similarly. Thus, in the event this Court finds that Plaintiff did not suffer "physical harm," her claim should nonetheless survive because of the importance of the legally protected interest asserted.

### 3.   *Plaintiff has adequately identified the legally protected interest at stake.*

Defendant claims that Plaintiff has failed to identify the legally protected interest at risk. (Dkt. 49 at ¶¶ 28-29). Plaintiff disagrees.. Plaintiff describes in piercing and uncomfortable detail throughout the complaint the legally protected interest that was stolen from her – her legal interest in not being sexually exploited and trafficked because of and by Omegle. (See, e.g., SAC at ¶¶ 7-10, 39-53, 63, 75-100.) Where she goes into the greatest detail (SAC at ¶¶ 46-49, 52, 63, and 68), those paragraphs are specifically re-alleged and incorporated by reference into the respective claims for relief. (SAC at ¶¶ 77, 85, 91, 97, 112). Assuming these factual

allegations are true, and drawing reasonable inferences in favor of Plaintiff as this Court is required to do, Plaintiff has adequately alleged a legally protected interest in being free from sexual exploitation and trafficking.

At most, Plaintiff's failure to expressly connect the dots by stating a specific legally protected interest is a pleading defect that may be corrected by adding in one sentence –as Plaintiff did in Paragraph 123 with respect to her negligence claim—that she had a legally protected interest in being free from sexual exploitation and trafficking. But Plaintiff's complaint should not be dismissed with prejudice because she failed to do so. Defendant's Motion should be denied.

## II.    A.M.'s sex trafficking claim under the TVPA is proper because Omegle has demonstrated the requisite *mens rea*.

Section 18 USC 1595(a) provides a civil remedy for a person who is the victim of sex trafficking under Section 1591:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever **knowingly** benefits, **financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter**) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

This civil statute provides trafficking survivors with a private right of action to pursue claims against those who perpetrate trafficking (direct liability) or those who knowingly benefit financially from trafficking (beneficiary liability). The Court has held that 1595 imports all of 1591, including the "knowingly" *mens rea* requirement. (*See* Dkt. 32 at 22-23.) Plaintiff's sex trafficking claims meets the requirements set forth by the TVPA. According to the Model Penal Code, a person acts knowingly with respect to a material element of an offense when:

Page 25 –PLAINTIFF'S RESPONSE IN
OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

(i) if the element involves the nature of his conduct or the attendant
circumstances, he is aware that his conduct is of that nature or that such
circumstances exist; and
(ii) if the element involves a result of his conduct, he is aware that it is practically
certain that his conduct will cause such a result.

Model Penal Code § 30(b)(i-ii). Here, Omegle acted knowingly of: 1) its own conduct in
perpetrating trafficking with full awareness of the circumstances of the trafficking on its site and
2) financially benefiting from the trafficking by attracting more people to the site and generating
more ad revenue from the traffic of trafficking. Omegle was aware of the trafficking and also
that it was practically certain that its conduct would cause interactions between children using its
site and sexual predators, as ultimately befell Plaintiff.

### A. Defendants knowingly participated in a venture engaging in sex trafficking.

For purposes of § 1591(a)(2), "participation in a venture" is defined as "knowingly
assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4). To
participate in a venture, however 1595 does not require an overt act of participation in the sex
trafficking itself. *See A.B. v. Wyndham Hotels & Resorts, Inc.,* 532 F. Supp. 3d 1018, 1025 (D.
Or. 2021) ("Plaintiff is not required to allege that Defendants had actual knowledge of a sex
trafficking venture or performed an overt act in furtherance of the venture to satisfy the
'participation' element of a civil TVPRA claim"); *see also B.M. v. Wyndham Hotels & Resorts*,
Inc., No. 20-cv-00656-BLF (N.D. Cal. July 30, 2020)("B.M. is not required to allege an overt act
in furtherance of or actual knowledge of a sex trafficking venture in order to sufficiently plead
her section 1595 civil liability claim."); *see also A.B. v. Marriott Int'l, Inc*., 455 F. Supp. 3d 171
(E.D. Pa. 2020).

To successfully litigate this element against a Defendant, Plaintiff must ensure that the
Defendant themselves were the actors participating in the trafficking venture. For example, in

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

*B.M. v. Wyndham Hotels & Resorts, Inc.,* Plaintiff was unable to prove this element, because the facts pled "might be sufficient to state a plausible claim against the specific hotels where Plaintiff was trafficked (who Plaintiff has not sued)," instead of making a plausible claim that parent companies Wyndham and Choice directly participated in a venture that ***trafficked B.M*** at the specific facilities she alleges her traffickers used. In other words, the Complaint is devoid of any facts linking ***these Defendants (Wyndham and Choice)*** to the sex trafficking of ***this Plaintiff (B.M.)***, and thus fails to make a plausible claim for Wyndham's and Choice's direct participation in venture." No. 20-cv-00656 -BLF, 16 (N.D. Cal. July 30, 2020) (internal quotations omitted).

General allegations that knowledge of sex trafficking's prevalence in a particular industry is insufficient to show that Defendant participated in a venture. *See A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1026 ("This Court noted that general knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate Defendants participated in the trafficking of Plaintiff."). However, general allegations noting the prevalence of sex trafficking occurring on a particular company's property or platform are sufficient to demonstrate this element. *See M.A. v. Wyndham Hotels & Resorts, Inc.,* 425 F. Supp. 3d 959, 963 (S.D. Ohio 2019) ("Section 1591 defines participation in a venture as knowingly assisting, supporting, or facilitating a violation of subsection (a)(1), § 1591(e)(4), and defines venture as any group of two or more individuals associated in fact, whether or not a legal entity, § 1591(e)(6).") (internal quotations omitted); *see also Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 913 (N.D. Cal. 2021) (holding that "general allegations that Twitter enables sex trafficking on its platform" – that Twitter makes it hard for users to report child sexual abuse material; permits large amounts of human trafficking on its platform, despite

Page 27 –PLAINTIFF'S RESPONSE IN
OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

having the ability to monitor it and at least constructive knowledge of its posting on the platform; provides hashtags to help users find child sexual abuse material; rarely removes hashtags that are associated with such material; and has a search suggestion feature that makes it easier for users to find the illicit content—combined with specific allegations about how Twitter failed to remove child pornography videos depicting the plaintiffs, made it plausible that Twitter and the sex traffickers had a "tacit agreement."); *see also Doe v. Mindgeek USA Inc*., 558 F. Supp. 3d 828 (C.D. Cal. 2021) ("Defendants generally enable child sex trafficking on their platforms and failed to remove the child pornography depicting Plaintiff, sufficiently pleading that Defendants participated in a venture with traffickers."). When Defendant is a secondary actor, other district courts have held that they must "actively and knowingly assist or facilitate a primary trafficking violation, which is tied to a specific victim." *G.G. v. Salesforce.com, Inc.*, No. 20-cv-02335, 35 (N.D. Ill. May 16, 2022); *see also Doe v. Twitter, Inc.,* 555 F. Supp. 3d 889, 913 (N.D. Cal. 2021).

Omegle has knowledge about the sex trafficking on its platform and knowingly participated in the venture to fulfill this element, like the defendants in *Doe v. Twitter, Inc.*, and *Doe v. Mindgeek USA Inc*. There have been multiple news articles and studies noting the prevalence of child sexual abuse and pornography on the site. (*See* SAC at ¶¶ 33, 34 ("According to the BBC, in the past couple of years, schools, police forces, and government agencies have issued warnings about Omegle in the US, UK, Norway, France, Canada, and Australia."), ¶ 37 ("Just in the last year, Omegle has continued to be the subject of warnings from cybercrime experts and law enforcement officers all over the world.").) Further, Omegle's recently removed warning that "Predators have been known to use Omegle, so please be careful" demonstrates their actual and specific knowledge of trafficking on their platform, and their engagement with

Page 28 –PLAINTIFF'S RESPONSE IN
OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

the venture. (SAC at ¶ 38.) Unlike the plaintiff in *A.B. v. Wyndham Hotel & Resorts, Inc.,* who alleged "notice of sex trafficking generally occurring at their hotels" without sufficiently linking notice of A.B.'s sex trafficking to "any of the Defendants," the cited news articles demonstrate that Omegle is specifically aware of child sex trafficking occurring on their specific platform. *A.B. v. Wyndham Hotels and Resorts, Inc.,* 532 F. Supp. 3d 1018, 1026 (D. Or. 2021).

Generally, Omegle's participation in the venture is similar to those of Twitter and Mindgeek: Omegle allows users to enter tags, which the site then uses to "Find strangers with common interests." This feature has no filter and allows users to input any tags they wish: For example, a teenager looking to speak with other teenagers may enter the tag "teenager," "high school," "teen," etc., and be connected with a predator looking to obtain child pornography. This feature is similar to Twitter's hashtags and Mindgeek's video tags, which were sufficient to establish engagement in a venture. *See Doe v. Twitter,* at 929; *see also Doe v. Mindgeek*, at 838. Further, the knowledge of the pervasiveness of child pornography on their platform and intentional choice not to implement age verification technology or other meaningful action to stop it or aid law enforcement to locate traffickers furthers Omegle's engagement in a venture. *See Mindgeek* at 838. As there Omegle is directly providing a platform for users to interact with; there are no franchisee entities under Omegle's umbrella. Therefore, there is no other entity they can use to scapegoat their knowledge of trafficking occurring on their platform.

Defendant may argue that Omegle, as an Internet Service Provider ("ISP"), is not a primary actor under these circumstances, and is rather a secondary actor and should be held to the "actively and knowingly assist or facilitate a primary trafficking violation," as in *Doe v. Twitter* and *G.G. v. Salesforce*. However, this analogy is false, since Omegle is not a secondary actor. They actively connected A.M. and the Omegle Predator. But for Omegle's facilitation of

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

the exchange, the trafficking would not have occurred. Further, Omegle's operating platform is fundamentally different from Backpage and Twitter, which provide a platform for people to post and others to engage with third party content. Omegle, on the other hand, actively connects individuals who otherwise would not have communicated with one another. Therefore, Omegle's role in connecting the parties and creating a chat room for them to interact anonymously aligns Defendant with the hotels responsible for facilitating sex trafficking.

**B.  Defendants knowingly received a benefit from their participation in the venture.**

"To state a claim under section 1595(a) beneficiary theory," Plaintiff "must allege facts from which the Court can reasonably infer that" Defendants "knowingly benefit[ted] financially or by receiving anything of value" from their participation in the venture. *Doe v. Mindgeek* at 838-839 *citing B.M. v. Wyndham Hotels & Resorts, Inc.*, 2020 U.S. Dist. LEXIS 135494, 2020 WL 4368214, at *4 (N.D. Cal. Jul. 30, 2020) (internal quotation marks omitted). This element "merely requires that Defendant knowingly receive a financial benefit" from the venture. *B.M. v. Wyndham Hotels & Resorts, Inc.,* No. 20-cv-00656-BLF (N.D. Cal. July 30, 2020 ("the rental of a room (or Wyndham and Choice's receipt of royalties for that rental) constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element."). ISP Defendants may monetize the posting of child pornography through advertising revenue, fee-based subscription services, and selling user data. *See Mindgeek* at 839.

Omegle's revenue model appears to derive from selling user and usage data, plus the selling of advertisements on its website, like *Mindgeek*. (SAC at ¶ 31.) This financial benefit from the venture satisfies the profit requirement set forth by the TVPA.

Page 30 –PLAINTIFF'S RESPONSE IN
OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11201
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

III.    **A.M.'s Negligence Claim is Proper.**

Plaintiff's negligence claim, which is pled in the alternative as a non-products liability claim, also focuses entirely on Omegle's matching function. Defendant has sought dismissal of this claim on three grounds: 1) failure to adequately plead foreseeability; 2) failure to plead a physical harm caused by the conduct; and 3) Section 230 immunity. All of these arguments should be rejected.

A.    **Plaintiff properly alleges that Omegle's own negligence unreasonably created the foreseeable harm she suffered and continues to suffer.**

1.    *Oregon's law on foreseeability*

As the Oregon Supreme Court set forth in *Fazzolari v. Portland School Dist. No. 1J* – and Oregon courts have honored since – the limits of liability for negligence are determined by the concept of foreseeability in cases where a special relationship or duty is not alleged:

> In short, unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff."

*Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 17, 734 P.2d 1326 (1987). Foreseeability is thus made up of two common-law principles. First, "whether the defendant's conduct unreasonably created a foreseeable risk of harm to a protected interest of the plaintiff such that the defendant may be held liable"—also known as duty and breach. *Jennewein v. MCIMetro Access Transmission Servs., LLC*, 308 Or. App. 396, 403, 481 P.3d 939, 943–44 (2021) citing *Piazza v. Kellim*, 360 Or. 58, 70, 377 P.3d 492, 500 (2016). And second, "whether, because the risk of harm was reasonably foreseeable, the defendant may be held liable to the plaintiff for the particular harm that befell the plaintiff." *See id.*

In making this determination, the court is to "view defendants' conduct through the lens

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

of the circumstances of the case, looking particularly to what a trier of fact could find the

defendants knew, or should have known about the risks of harm." *Jennewein v. MCImetro*

*Access Transmission Servs*. The court in *Chapman v. Mayfield* elaborated on the suitability of

this approach:

> That approach, which views the defendant's conduct through the lens of the
> particular factual circumstances of the case—with emphasis on what the
> defendant knew or should have known about the risk of harm to a particular class
> of plaintiffs—has been this court's practice in cases that address foreseeability as
> a limit on liability." *Chapman*, 358 Or. at 207-08, 361 P.3d 566. (Citing *Stewart
> v. Jefferson Plywood Co.*, 255 Or. 603, 609, 469 P2d 783 (1970).

This determination involves a "blended factual and normative" assessment which, as the Court of

Appeals recently noted, means that "[the court] generally commit[s] the question of

foreseeability to the jury." *F.T. v. West Linn-Wilsonville Sch. Dist.*, 318 Or. App 692, 702, 509

P.3d 655 (Or. Ct. App. 2022). Indeed, "unforeseeability as a matter of law should rarely be

found." *Id.* (citing *See McPherson v. Oregon Dept. of Corrections ,* 210 Or. App. 602, 609, 152

P.3d 918 (2007)*. See also Stewart v. Jefferson Plywood Co.*, 255 Or. 603, 609 (1970) (holding

that unforeseeability as a matter of law should only be found in extreme cases such as when the

harm results from a "concatenation of highly unusual circumstances.").

> 2.  *The Omegle Predator's sexual exploitation and trafficking of Plaintiff was
>     foreseeable to Defendant.*

Even at this pre-discovery stage, Plaintiff has adequately alleged the high rate of

incidence of child sexual exploitation through Omegle, the frequency with which predators use

Omegle to procure their victims, investigative media reports showing the regularity of Omegle

matching children and predators, criminal prosecutions against child abusers who used Omegle

to initially match with the children they want on to abuse, and that children are at high risk of

harm on Omegle. (SAC at ¶¶ 5, 6, 26, 29, 32, 33, 34, 37, 38 63-65, 79-82.)

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

This case therefore does not come close to being the "highly unusual" case meriting

dismissal as a matter of law on foreseeability. Here, Plaintiff plausibly alleges that Defendant's

conduct created a foreseeable risk of harm that a third-party would communicate with a child

using the platform for improper sexual purposes. She also alleges that Plaintiff was a foreseeable

user of the platform because there were no safeguards, verification measures, warnings, or other

controls to prevent minors from communicating with adults anonymously. That Plaintiff came

into contact with a sexual predator is an instance of the platform essentially working in its

expected manner. Plaintiff's well-pled allegations and inferences derived therefrom adequately

allege a claim for negligence.

> 3.  *Third-party criminality does not cut off foreseeability under Oregon law, and
>     Defendant need not have particular knowledge of the criminal and victim.*

Relying on *Buchler v. State*, 316 Or. 499, 511-12, 853 P.2d 798 (Or. 1993), Defendant

argues that Plaintiff's complaint must be dismissed because "there are no plausible allegations

showing that Omegle had any reason to know that Fordyce was a sexual predator who would

victimize Plaintiff in the manner and under the circumstances alleged"—i.e., that a plaintiff is

required to show prior knowledge of a particular criminal and a particular victim in order to

establish foreseeability. (Dkt. 49 at ¶ 32). This is not the holding of *Buchler* or an otherwise

accurate statement of Oregon law.

Far from controlling the outcome of this case, *Buchler* is an example of the kind of

extreme case subject to dismissal on summary judgment. There, the court found that it was not

reasonably foreseeable that a prisoner on a work crew would: 1) escape using the state's van, in

which the keys had been left in the ignition by the crew supervisor; 2) use the van to burglarize

his mother's residence and steal a gun; and 3) shoot two people 50 miles from the point of escape

two days after escaping. *Buchler* at 502. The court held that "the facts established . . . do not

Page 33 –PLAINTIFF'S RESPONSE IN
OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

create liability under the scope of a custodian's duty to the public concerning a prisoner who

escapes . . . " stating that "the State of Oregon is not an insurer to all." *Id.* at 504. The court noted

that its conclusion might be different if the "plaintiffs had been other prisoners, or even perhaps

guards, injured in the course of an escape." *Id.* at 504-505.

Thus, the *Buchler* court was concerned primarily with whether the plaintiffs were

foreseeable victims rather than whether the criminal conduct itself was foreseeable – in fact, the

court specifically avoided reaching that issue, stating, "[w]e express no opinion whether a

reasonable jury conceivably could conclude that a prisoner with a non-violent history would be

'likely to cause bodily harm'[.]" *Id.* at 507. Contrary to Defendant's assertions, the decision in

this case focuses not on a prisoner's propensity for violence, but on the scope of who comprises

the general class of persons that one reasonably would anticipate might be threatened by the

defendant's conduct.

The *Buchler* court adds to its analysis of the lack of foreseeability in that case lending

even greater legitimacy to Plaintiff's negligence claim in the instant case:

> [*Buchler*] is not a case where the vehicle, with keys left in it, was the mechanism
> by which the escaped prisoner inflicted the harm; rather, it was merely one of the
> means by which an escape was possible and, even at that, one occurring in a
> situation where other means of escape were equally possible. For example, in this
> case, the prisoner could have escaped from custody on foot and, likewise, arrived
> at his mother's house after a few days, stolen the gun, and caused the very same
> harm of which plaintiffs complain. *Buchler v. State*, 316 Or. 499, 512, 853 P.2d
> 798, 805 (Or. 1993).

Omegle is the mechanism by which the predator inflicted the harm against A.M. Without

Omegle, A.M. would have never been introduced to the man who would go on to torture her for

most of her adolescence. The matching that introduced A.M. to her predator was not exceptional,

nor was it done in error. It was entirely consistent with the function of the website. It was – and

continues to be – foreseeable that children will meet their abusers on Omegle. And the creation

Page 34 –PLAINTIFF'S RESPONSE IN
OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

of this risk is entirely unreasonable. And unlike the plaintiffs who were 50 miles from the escape

site in *Buchler*, the minor Plaintiff in this case was part of a class of known and expected users of

Omegle, and thus well within the general class of people who would be threatened by

Defendant's conduct. Plaintiff has gone far above merely alleging that "criminals may commit

crimes."

Defendant also ignores more recent precedent by the Oregon Supreme Court in *Piazza v.

Kellim*, 360 Or. 58, 61, 377 P.3d 492 (2016), which clarified the holding of *Buchler* and the law

regarding foreseeability of intervening intentional criminality. In *Piazza*, the court considered the

liability of a nightclub and other entities for the death of a nightclub patron who was shot and

killed by an assailant while standing in line on a public sidewalk outside of the nightclub. Citing

*Buchler* among other cases, the defendants argued that the plaintiff had failed to allege that the

death was a foreseeable result of the defendant's conduct, and was rather the result of a random

shooting by a criminal. *Id.* For its part, the plaintiff argued that the dangerous character of the

nightclub, its location, and its violent history would allow a jury to conclude that the harm was

foreseeable. *Id.* at 67. The trial court agreed with the defendants, as did the Court of Appeals. *Id.*

The Supreme Court of Oregon reversed the dismissal of the claim, noting that where the

claim arises from third-party criminal acts, "a trier of fact must be able to find from concrete

facts that a reasonable person in the position of the defendant reasonably would have foreseen

that the person or location and circumstances posed a risk of criminal harm to persons such as

the plaintiff." *Id.* at 81. Applying that standard, the court found that prior notice regarding a

specific perpetrator was not required, and that the allegations were sufficient to permit a

reasonable trier of fact to find that the conduct and harm at issue was foreseeable. *Id.* at 84. In so

doing, the court clarified that the defect in *Buchler* was describing the type of harm at risk too

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

generally, "such as stating that criminals commit crimes of that escaped prisoners may commit crimes while at large." 360 Or. 58, 75-76. This sort of general allegation stood in stark contrast the facts in *Piazza*, where plaintiff had alleged that there was a history of violent assaults, including gun violence, in the vicinity of the nightclub, and a known risk of such violence in the future. *Id.* at 83.

Like the plaintiff in *Piazza*, Plaintiff here has provided an ample record that predators were known to use Omegle, that minors were using the platform, and that their interactions could cause harm. Defendant's characterizations of these plausible allegations as "conclusory, generalized assertions" does not make them so. (Dkt. 49 at ¶ 32.)

The *Buchler* holding is limited in its language that "mere 'facilitation' of an unintended adverse result, where intervening intentional criminality of another person is the harm-producing force" does not support a finding of liability. However, this is not the case where the resulting criminality is the natural function of defendant's negligence and cannot be viewed as intervening. Predators use Omegle in exactly the way it was designed. The harm-producing force is the matching. And the matching is the negligence. One need not ruminate too strenuously to find that child sexual exploitation is the direct result of Omegle's negligence.

Other Oregon cases have clarified *Buchler* and held that criminal conduct of a third-person does not cut off liability. *See, e.g.*, *Washa v. Oregon Department of Corrections*, 159 Or. App. 207 (1999), aff'd, 335 Or. 403, 69 P.3d 1232 (2003) (stating that where "the defendant can reasonably foresee likelihood of specific criminal conduct by a third party . . . the realization of that foreseeable likelihood cannot be deemed "intervening" or "supervening" causation that somehow precludes liability."); *Scheffel v. Oregon Beta Chapter of Phi Kappa Psi Fraternity*, 273 Or. App 390, 411, 359 P3d 436, 449 (2015) (concluding that where "there is a relatively

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

straightforward connection between [defendant's] allegedly negligent conduct and the risk of harm that befell the plaintiff" there is no foreseeability problem); *Fraker v. Benton County Sheriff's Office,* 214 Or. App. 473, 490, 166 P.3d 1137, 1146, *opinion adhered to on reconsideration,* 217 Or. App. 159, 174 P.3d 1111 (2007) (ruling that "intentional intervening criminal acts of a third person do not necessarily make the harm suffered by the plaintiff unforeseeable to the defendant.").

Several Oregon cases have also specifically held that criminal acts by third parties are foreseeable without the defendant having specific knowledge of a specific offender's propensity. *See e.g.*, *Fazzolari*, 303 Or. 1 (foreseeable that student would be sexually assaulted before school hours); *McPherson v. Oregon Dept. of Corrections*, 210 Or. App. 602, 609, 152 P.3d 918 (Or. Ct. App. 2007) (foreseeable that escaped convict would rape tenant in laundry room that was dimly lit and lacked a security chain, peephole, or door-side window); *Torres v. United States Nat. Bank*, 65 Or. App. at 207, 670 P2d 230 (Or. Ct. App. 1983) (foreseeable that robber would shoot plaintiff where bank deposit was located in dimly lit area and visibility is known to deter criminal activity); *Cunningham v. Happy Palace*, *Inc.,* 157 Or. App. 334, 970 P2d 669 (1998) (foreseeable that forcing an intoxicated woman to leave a bar prior to calling her daughter for a ride could lead to a sexual assault outside of a bar). Again, the Defendant's attempt to raise the bar for what is required should be rejected.

This case is not a "concatenation of highly unusual circumstances" requiring dismissal, nor is it a story of "mere facilitation" that resulted in the one-off sexual exploitation of a child, but rather a sequence of events that was uncomplicated and foreseeable. It is statistically unlikely that a minor will use Omegle for any period of time and not be matched with a predatory user. But despite actual knowledge of this fact, Omegle manipulates and encourages children to use its

product by telling them that it monitors its product and that its product is suitable for anyone aged 13 or older. (SAC at ¶¶ 35-37.) Omegle knows that neither of these promises is true and, instead, that it provides frictionless, free, convenient, and anonymous matching for predators.

The elements needed to plausibly allege a negligence claim under Oregon law are met here. Omegle's conduct was unreasonable (creating an anonymous and private chat site for adults and children) and A.M. falls within the protected class of plaintiffs (children). As such, this Court should deny Defendants motion to dismiss Plaintiff's negligence claim.

**B. Plaintiff has plausibly alleged that she suffered physical harm as a result of Omegle or that she falls within an exception to the "physical impact rule."**

Omegle's argument that Plaintiff suffered no physical harm fails. For the reasons set forth in Section I(B) above, Plaintiff has plausibly alleged that she suffered physical harm as a result of Omegle's negligence and, accordingly, *Philibert* does not require her to avail herself of any exception to the "physical impact rule." Moreover, and for the reasons set forth in Section I(C) above, Plaintiff's negligence claim would survive even in the absence of physical harm. Plaintiff has alleged that she "has a legally protected interest in being free from sexual exploitation and trafficking" such that her claim is entitled to legal protection. For either reason, Omegle's argument fails.

The importance of the legal interest at stake—children being free from sexual exploitation and trafficking—is self-evident, but also, explicitly spelled out in the Complaint. Omegle's request to add extra pleading requirements – such as requiring Plaintiff to allege the "source" of the legally protected interest or describe "how" the emotional distress was foreseeable – is unsupported. (*See* Dkt. 49 at ¶¶ 33-34.) Neither *Philibert*, *I.K.,* nor any other case that Plaintiff is aware of requires the level of detail in pleading suggested by Omegle and, for this reason too, its Motion should be denied.

C.A. GOLDBERG, PLLC
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

VOGT & LONG PC
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

**C. Omegle is not entitled to Section 230 immunity where its negligence is unrelated to a publication tort or third-party content.**

Plaintiff properly alleges under Oregon law that Omegle is negligent where it unilaterally created a platform that regularly matches predators with children—both of whom are invited to use the site. Regardless of whether Omegle is a product or service, the Court already said that Omegle could have satisfied its obligations to Plaintiff in ways that don't implicate its role as a publisher ("Omegle could have satisfied its alleged obligation to Plaintiff by designing its product differently – for example, by designing a product so that it did not match minors and adults. Plaintiff is not claiming that Omegle needed to review, edit, or withdraw any third-party content to meet this obligation.") (Dkt. 36, Opinion and Order, at p. 6.) In this respect, Omegle's argument that this conduct is protected by Section 230 is doomed for the same reason that its Section 230 arguments are doomed with respect to the products claims: Plaintiff is not suing for anything related to publication or content. Rather, Plaintiff is suing for Omegle's unreasonable conduct which resulted in a foreseeable harm —namely, matching predators with children for private and anonymous conversations on a site that sexual in nature – to a legally protected interest. Omegle created a platform that is known to attract children and to attract adults interested in sexually harming children; and regularly and routinely matches these two groups for private online experiences. As a result of Omegle matching one such adult with Plaintiff, Plaintiff unsurprisingly suffered irreparable physical and sexual harms. Omegle has long known its platform harms children and has elected to never institute changes to its platform to inhibit or stop the harms to children. As such, this Court should deny Defendant's motion to dismiss Plaintiff's negligence claim where Omegle's own negligent conduct unreasonably created a highly foreseeable risk of child sexual exploitation.

Page 39 –PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

This Court's ruling on Omegle's motion to dismiss Plaintiff's FAC controls here. (*See* Dkt. 36.) It is undisputed that publisher immunity under Section 230 "precludes liability for (1) a provider or user of an interactive computer service (2) whom plaintiff seeks to treat as a publisher or speaker (3) of information provided by another information content provider." (Dkt. 36 at p. 4.) (Citing *Gonzalez v. Google LLC*, 2 F.4th 871, 891 (9th Cir. 2021) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009)). Under the first prong, the Court determined that Omegle is a provider of an interactive computer service. *Id.* Critically, however, the Court also previously (and correctly) determined – based on the same factual allegations at issue – that Plaintiff's claims do not seek to treat Omegle as a publisher of information under Section 230:

> Omegle could have satisfied its alleged obligation to Plaintiff by designing its product differently—for example, by designing a product so that it did not match minors and adults. Plaintiff is not claiming that Omegle needed to review, edit, or withdraw any third-party content to meet this obligation. . . . [T]he content sent between Plaintiff and Fordyce does not negate this finding or require that I find Omegle act as a publisher . . . What matters for purposes of those claims is that the warnings or design of the product at issue led to the interaction between an eleven-year-old girl and a sexual predator in his late thirties. *Id.* at pp. 6-7 (internal quotation marks and citations omitted).

This logic applies with equal force to Plaintiff's recently added negligence claim, which turns on the same facts and allegations supporting Plaintiff's product liability claims. Once again, the operative facts are that Omegle created a platform that encourages use by children as young as 13 (while knowing that children even younger can and will and do use it) and fails to implement safeguards to prohibit use by children even younger, then matches children with complete strangers (primarily adults) for private and anonymous contact. Whether or not Omegle's product is determined to be a "product" – though it is – the allegations are the same and so must be the outcome. As with Plaintiff's product liability claims, the relevant allegations are that

Defendant is liable (for the purposes of negligence, it breached its duty of reasonable care) for developing a platform that foreseeably led to the interactions between eleven-year-old A.M. and an adult predator. Third-party content is irrelevant to Plaintiff's claims, as evidenced by the fact that Omegle could have made its product safer through unilateral actions on its platform at a macro level and unrelated to content management. As this Court explained during the oral argument, Section 230 does not permit a "claim that to answer it or to avoid it would require a defendant to supervise or monitor content as opposed to do something it can unilaterally do to its own platform regardless of content." (Dkt. 32 at p. 11)

Lastly, and as relevant to the third prong, in its written decision this Court found that Plaintiff's claims do not rest on Defendant's publication of third-party content. (*Id.* at p. 8.) In another attempt to misstate Plaintiff's allegations, Omegle claims that this case is about communications between a child and a predator. This Court denied Defendant's identical argument in its first motion to dismiss, and should do so again. As already determined by this Court, Plaintiff's case "does not rest on third party content . . . [P]laintiff's contention is that the product is designed in a way that connects individuals who should not be connected (minor children and adult men) and that it does so before any content is exchanged between them." (*Id.* at 8.)

**CONCLUSION**

For the foregoing reasons, Plaintiff A.M. respectfully requests that this Court deny Omegle's motion to dismiss Plaintiff's SAC pursuant to FRCP Rule 12(b)(6) and 12(g)(2) as to all of Plaintiff's claims or, in the alternative, grant Plaintiff leave to amend its SAC and such other appropriate relief it deems just and proper.

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858

DATED: September 12, 2022

Respectfully submitted,

*/s/ Carrie Goldberg*

Carrie Goldberg #4542411 (*Pro Hac Vice*)
Naomi Leeds #5835962 (*Pro Hac Vice*)
C.A. Goldberg, PLLC
16 Court Street, 33rd Fl.
Brooklyn, NY 11241
Tel: (646) 666-8908
carrie@goldberglaw.com
naomi@goldberglaw.com


*/s/ Barbara Long*

Barbara C. Long, OSB #122428
Vogt & Long PC
101 SW Main Street, Suite 1900
Portland, OR 97204
Tel: (503) 228-9858
barb@vogtlong.com

*Attorneys for Plaintiff A.M.*

Page 42 –PLAINTIFF'S RESPONSE IN
OPPOSITION TO MOTION TO DISMISS
SECOND AMENDED COMPLAINT

**C.A. GOLDBERG, PLLC**
16 Court Street
Brooklyn, NY 11241
(646) 666-8908

**VOGT & LONG PC**
101 SW Main St, Suite 1900
Portland, OR 97204
(503) 228-9858