Venkat Balasubramani, OSB #180446
venkat@focallaw.com
Stacia N. Lay, WSBA #30594 (*Pro Hac Vice*)
stacia@focallaw.com
Kimberlee Gunning, WSBA #35366 (*Pro Hac Vice*)
kim@focallaw.com
**FOCAL PLLC**
900 1st Avenue S., Suite 201
Seattle, Washington 98134
Telephone: (206) 529-4827

Clifford S. Davidson, OSB #125378
csdavidson@swlaw.com
**SNELL & WILMER, LLP**
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
Telephone: (503) 624-6800

Attorneys for Defendant

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| A.M., an individual, | Case No. 3:21-cv-01674-MO |
| Plaintiff, | |
| v. | **DEFENDANT OMEGLE.COM LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| OMEGLE.COM LLC, | |
| Defendant. | |

# TABLE OF CONTENTS

DISCUSSION ....................................................................................................................... 2

I.  Plaintiff Implicitly Concedes That She Cannot Satisfy The Actual Knowledge
    Standard Of Section 1591 And Therefore The TVPA Claim Should Be Dismissed ......... 2

    A.  Plaintiff relies entirely on general knowledge of unrelated alleged
        incidents of misuse of Omegle's chat service by users ........................................... 2

    B.  The SAC fails to plausibly allege that Omegle knowingly benefitted from
        participating in Fordyce's alleged sex trafficking venture ..................................... 7

II. Plaintiff Ignores Omegle's Showing That Section 230 Bars The New Negligence
    Claim, An Issue The Court Necessarily Has Not Ruled Upon ........................................... 9

    A.  Plaintiff cannot plead around Section 230 by parsing means and content
        where the alleged harm arose from Fordyce's communications ......................... 10

    B.  Amicus curiae's invitation to ignore the language of Section 230 and
        Ninth Circuit authority applying it should be rejected ......................................... 14

III. Plaintiff's Product Liability Claims Should Be Dismissed As A Matter Of Law ........... 14

    A.  Given the absence of improper motive and prejudice, the Court should
        exercise its discretion and consider the motion in its entirety ............................ 14

    B.  The product liability claims should be dismissed because Omegle's online
        chat service is not a "product" as a matter of Oregon law ................................... 16

        1.  Plaintiff relies upon the wrong body of law ............................................... 16

        2.  Omegle, an online chat service, is not a "product" because it is not
            movable and therefore is not a "good" or "chattel" under Oregon
            law .................................................................................................................. 18

        3.  Plaintiff's primary case – *Lemmon* – is not controlling here ................... 22

        4.  Plaintiff fails to distinguish cases holding websites and online
            services are not "products" and instead relies upon conjecture ............... 23

        5.  Plaintiff's and amicus curiae's last-resort policy arguments fail ............. 25

    C.  The SAC has not plausibly alleged the physical harm required to recover
        the damages sought for Plaintiff's strict product liability claims ....................... 26

DEFENDANT'S REPLY IN SUPPORT                      i
OF MOTION TO DISMISS

D.      The negligence-based product liability claims should be dismissed as they do not sufficiently allege physical harm or an exception to the "impact rule" .......................................................................................................... 29

IV.     Plaintiff's New Negligence Claim Should Be Dismissed As A Matter Of Law .............. 31

A.      The negligence claim fails to plausibly allege that Omegle could reasonably foresee the harms caused by Fordyce's intervening criminal conduct ........................................................................................................ 31

B.      The negligence claim should be dismissed because it does not sufficiently allege physical harm or any recognized exception to the "impact rule" ............... 36

CONCLUSION .......................................................................................................................... 39

# TABLE OF AUTHORITIES

## **Cases**

*A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921 (D. Or. 2020) ............................... 5

*AdTrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF,
    2019 U.S. Dist. LEXIS 68151 (N.D. Cal. Apr. 22, 2019) ................................ 24

*Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670 (3d Cir. 1991) ............................................. 19, 20

*Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164 (C.D. Cal. 2011) ................ 15

*Allstate Ins. Co. v. Tenant Screening Services, Inc.*,
    140 Or. App. 41, 914 P.2d 16 (1996) ................................................................. 32

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 33

*Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035 (9th Cir. 2018) ...................................... 13

*Ass'n of Unit Owners of Bridgeview Condos. v. Dunning*,
    187 Or. App. 595, 69 P.3d 788 (2003) ...................................................................... *passim*

*Bryant v. Tri-County Elec. Membership Corp.*, 844 F. Supp. 347 (W. D. Ky. 1994) ................. 22

*Buchler v. State ex rel. Or. Corr. Div* , 316 Or. 499, 853 P.2d 798 (1993) ................................. 35

*Chapman v. Mayfield*, 358 Or. 196, 361 P.3d 566 (2015) ............................................................ 32

*Chaves v. Amazon.com Servs. LLC*, No. C21-1213-TL-BAT,
    2022 U.S. Dist. LEXIS 94386 (W.D. Wash. May 23, 2022) ............................................ 20

*Citrix Sys., Inc. v. Comm'r of Revenue*, 484 Mass. 87, 139 N.E.3d 293 (Mass. 2020) ............... 20

*Cochran v. Burlington Coat Factory of Or., LLC*, No. 10-CV-6016-TC,
    2010 U.S. Dist. LEXIS 101268 (D. Or. Aug. 25, 2010) ................................................... 27

*Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242 (S.D. Fla. 2020) ......................................... 2, 3

*Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828 (C.D. Cal. 2021) ............................................... 4

*Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889 (N.D. Cal. 2021) ...................................................... 4, 5

*Doe v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016,
    2021 U.S. Dist. LEXIS 64565 (S.D. Tex. Mar. 30, 2021) ................................................. 4

*Dyroff v. Ultimate Software Group, Inc.*, No. 17-cv-05359-LB,
    2017 U.S. Dist. LEXIS 194524 (N.D. Cal. Nov. 26, 2017)........................................ 34, 37

*Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019) .................................... 12

*Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044 (E.D. Cal. 2008)........................................ 3

*Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992) ........................................................ 13

*Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116 (N.D. Cal. 2016)...................................................... 11

*Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019) ...................................................... 11

*F.T. v. W. Linn-Wilsonville Sch. Dist.*, 318 Or. App. 692, 509 P.3d 655 (2022).............. 32, 33, 34

*FTC v. Wellness Support Network, Inc.*, No. C-10-04879
    JCS, 2011 U.S. Dist. LEXIS 102301 (N.D. Cal. Sept. 12, 2011)...................................... 16

*Gavra v. Google Inc.*, No. 5:12-CV-06547-PSG,
    2013 U.S. Dist. LEXIS 100127 (N.D. Cal. July 17, 2013)................................................ 12

*Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019)............................ 8

*G.G. v. Salesforce.com, Inc.*, No. 20-cv-02335,
    2022 U.S. Dist. LEXIS 87616 (N.D. Ill. May 16, 2022) ........................................... 3, 5, 7

*Gibson v. craigslist, Inc.*, No. 08 Civ. 7735 (RMB),
    2009 U.S. Dist. LEXIS 53246 (S.D.N.Y. June 15, 2009)................................................. 10

*Ginsberg v. Google Inc.*, No. 21-cv-00570-BLF,
    2022 U.S. Dist. LEXIS 30166 (N.D. Cal. Feb. 18, 2022) ........................................... 37, 38

*Gonzalez v. Google LLC*, 2 F.4th 871 (9th Cir. 2021).................................................. 11

*Huynh v. Quora, Inc.*, No. 18-cv-07597-BLF,
    2020 U.S. Dist. LEXIS 240388 (N.D. Cal. June 1, 2020) ................................................ 13

*I.K. v. Banana Republic, LLC*, 317 Or. App. 249, 505 P.3d 1078 (2022) ................. 30, 31, 37, 39

*Intellect Art Multimedia, Inc. v. Milewski*, 899 N.Y.S.2d 60,
    2009 N.Y. Misc. LEXIS 2325 (N.Y. Sup. Ct. 2009) ....................................................... 24

*James v. Meow Media, Inc.*, 300 F.3d 683 (6th Cir. 2002).................................................. 24, 25

*J.B. v. G6 Hosp., LLC*, No. 19-cv-7848-HSG,
    2020 U.S. Dist. LEXIS 151213 (N.D. Cal. Aug. 20, 2020)............................................. 12

*J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048 (D. Colo. 2021) ..................................................... 4

*Kent v. Shiley, Inc.*, No. 87-6554-E,
    1989 U.S. Dist. LEXIS 8962 (D. Or. Jan. 24, 1989) ....................................................... 29

*Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014) ............................................................. 9

*Legal Tender Servs. PLLC v. Bank of Am. Fork*, 2022 UT App. 26,
    506 P.3d 1211 (Utah Ct. App. 2022) ............................................................... 25

*Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021) ..................................................... 22, 23, 28

*Lemmon v. Snap, Inc.*, No. CV 19-4504-MWF (KSx),
    2022 U.S. Dist. LEXIS 83399 (C.D. Cal. Mar. 31, 2022) ......................................... 23, 28

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019) ........................ 4

*Maeda v. Kennedy Endeavors, Inc.*, 407 F. Supp. 3d 953 (D. Haw. 2019) .................................. 13

*M.L. v. craigslist Inc.*, No. C19-6153-BHS-TLF,
    2020 U.S. Dist. LEXIS 166836 (W.D. Wash. Apr. 17, 2020) .............................. 11, 12, 38

*M.L. v. craigslist Inc.*, No. 3:19-cv-06153-BHS-TLF,
    2021 U.S. Dist. LEXIS 223297 (W.D. Wash. Sept. 16, 2021) ......................................... 12

*M.L. v. craigslist Inc.*, No. 3:19-cv-06153-BHS-TLF,
    2022 U.S. Dist. LEXIS 74884 (W.D. Wash. Apr. 25, 2022) ............................................ 12

*Nearing v. Weaver*, 295 Or. 702, 670 P.2d 137 (1983) ......................................................... 38

*Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018) ......................................................... 8

*Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or. 543, 652 P.2d 318 (1982).................. 29

*Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856 (9th Cir. 2011)................................................. 17, 18

*PASCO Sci. v. Vernier Software & Tech. LLC*, No. 3:21-cv-01523-IM,
    2022 U.S. Dist. LEXIS 101325 (D. Or. June 7, 2022) ..................................................... 24

*Pepper v. Apple Inc.*, 846 F.3d 313 (9th Cir. 2017)................................................................. 14, 15

*Philibert v. Kluser*, 360 Or. 698, 385 P.3d 1038 (2016)............................................. 30, 36, 37, 38

*Piazza v. Kellim*, 360 Or. 58, 377 P.3d 492 (2016) ...................................................................... 32

*Quinteros v. Innogames*, No. C19-1402RSM,
  2022 U.S. Dist. LEXIS 55640 (W.D. Wash. Mar. 28, 2022) ........................... 25

*Ransome v. Wis. Elec. Power Co.*, 87 Wis.2d 605, 275 N.W.2d 641 (Wis. 1979)..................... 22

*Schafer v. State Farm Fire & Cas. Co.*, 507 F. Supp. 2d 587 (E.D. La. 2007) ........................... 20

*Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194 (9th Cir. 1998)........................................ 3

*Sease v. Taylor's Pets, Inc.*, 74 Or. App. 110, 700 P.2d 1054 (1985) ........................................ 28

*Simulados Software, LTD v. Photon Infotech Private, LTD*,
  40 F. Supp. 3d 1191 (N.D. Cal. 2014) ............................................................... 20

*Smith v. Ethicon Inc.*, No. 3:20-cv-00851-AC,
  2021 U.S. Dist. LEXIS 152495 (D. Or. May 13, 2021) ........................... 16, 29

*Sparling v. Doyle*, No. EP-13-CV-00323-DCG,
  2014 U.S. Dist. LEXIS 151113 (W.D. Tex. Oct. 23, 2014) ........................... 16

*Stewart v. Kids Inc.*, 245 Or. App. 267, 261 P.3d 1272 (2011) ..................................... 32

*Washa v. Or. Dep't of Corr.*, 159 Or. App. 207, 979 P.2d 273 (1999) ........................................ 35

## Statutes and Rules

18 U.S.C. § 1591.................................................................................................*passim*

18 U.S.C. § 1591(a) ........................................................................................................ 7

18 U.S.C. § 1591(a)(1)........................................................................................... 2, 6, 7

18 U.S.C. § 1591(a)(2)................................................................................................ 7, 8

18 U.S.C. § 1591(e)(4).............................................................................................. 2, 7

18 U.S.C. § 1595 ................................................................................................... 2, 4, 5

47 U.S.C. § 230................................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 15, 16

Fed. R. Civ. P. 12(c) ......................................................................................... 1, 14, 15

Fed. R. Civ. P. 12(g)(2) ............................................................................................... 14

ORS 30.920 ................................................................................................... 18, 26, 27

ORS 30.920(3) ................................................................................................... 17, 26

ORS 30.920(4) ........................................................................................................... 29

ORS 72.1050(1) ......................................................................................................... 19

## **Other Authority**

*Black's Law Dictionary* 215 (5th ed. 1981) ............................................................. 18

Bryan A. Garner, *A Dictionary of Modern Legal Usage* (2nd ed. 1995) .................... 19

RESTATEMENT (SECOND) OF TORTS § 402A ............................................... 17, 18, 21, 26

RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 19 .................................... 18

U.C.C. § 2-105(1) ..................................................................................................... 19

Notwithstanding the Court's unambiguous ruling that Plaintiff was required to satisfy the actual knowledge standard of Section 1591 to state a TVPA claim that escapes Section 230's bar, Plaintiff continues to rely solely on a constructive knowledge standard in the SAC and in opposition to this Motion. Plaintiff therefore does not, and cannot, plausibly state a TVPA claim. Moreover, because Plaintiff effectively has had two opportunities to correct this fatal defect in the TVPA claim (*i.e.*, in the FAC and then the SAC) but has been unable to do so, dismissal should be with prejudice.

Nor has Plaintiff demonstrated that it is either inefficient or prejudicial for the Court to consider Omegle's challenges to Plaintiff's four product liability claims concurrently with its timely challenges to the TVPA claim and the new negligence claim added in the SAC. Plaintiff fails to offer any logical reason why it would be more efficient to address challenges to the SAC piecemeal – *i.e.*, to address the TVPA claim and the new negligence claim now but force Omegle to raise the same challenges to the product liability claims in a Rule 12(c) motion, which would be assessed under the same standard applicable to this Motion. To the contrary, requiring such bifurcation of the challenges to the pleadings would cause the delay Plaintiff inaccurately accuses Omegle of causing.

When the product liability claims are examined, they fail as a matter of law on at least two independent grounds: (1) Omegle's web-based chat service is not a "product" under Oregon's product liability law; and (2) Plaintiff has not pled, and cannot plead, the physical harm required to recover the emotional distress damages she seeks in her product liability claims. Plaintiff fails to refute either of these two flaws, nor does amicus curiae assist Plaintiff in her attempt to cast Omegle's chat service – available via its website – as a product rather than a service. Moreover, Plaintiff's new negligence claim does not save her case as the claim is barred by Section 230 – an issue that Plaintiff does not meaningfully engage with notwithstanding Omegle's extensive discussion in its opening brief – and fails on its own merit as a matter of law.

As a result, the SAC should be dismissed with prejudice.

**DISCUSSION**

I.    **Plaintiff Implicitly Concedes That She Cannot Satisfy The Actual Knowledge Standard Of Section 1591 And Therefore The TVPA Claim Should Be Dismissed**

Plaintiff superficially acknowledges the Court's ruling that Section 1595 "imports all of [Section] 1591, including the 'knowingly' *mens rea* requirement." (Dkt. 50 at 33.) Nonetheless, Plaintiff's argument in support of the TVPA claim relies entirely on alleged constructive knowledge and cases applying that less stringent standard. But the SAC – and Plaintiff's arguments in support of it – fail to plausibly allege that Omegle "***knowingly*** assist[ed], support[ed], or facilitat[ed]" Fordyce's alleged sex trafficking of Plaintiff. 18 U.S.C. § 1591(e)(4) (emphasis added). In fact, the SAC fails to satisfy even the constructive knowledge standard of Section 1595. As a necessary result, Plaintiff's TVPA claim should be dismissed. Moreover, as it is clear that Plaintiff cannot plausibly allege facts demonstrating a violation of Section 1591 by Omegle, any further amendment would be futile.

A.    **Plaintiff relies entirely on general knowledge of unrelated alleged incidents of misuse of Omegle's chat service by users**

Plaintiff acknowledges that she must plausibly allege that Omegle violated the criminal sex trafficking statute, Section 1591, which requires "knowing and active participation in sex trafficking" by, as relevant here, the interactive computer service ("ICS") defendant. *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1251 (S.D. Fla. 2020). *See also* 18 U.S.C. § 1591(e)(4) (defining "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)," *i.e.*, a primary sex trafficking violation). However, Plaintiff relies solely on allegations that Omegle purportedly had knowledge of prior, unrelated incidents where users have criminally misappropriated its chat service. Similarly, Plaintiff relies solely on cases applying the inapplicable constructive knowledge standard of Section 1595.

For example, Plaintiff asserts that Omegle allegedly "has knowledge about the sex trafficking on its platform and knowingly participated in the venture," noting "multiple news articles and studies" about the alleged "prevalence of child sexual abuse and pornography on the

site." (Dkt. 50 at 36.) Plaintiff further asserts that the removal of a warning on the website "demonstrates their actual and specific knowledge of trafficking on their platform, and their engagement with the venture." (*Id.* at 36-37.) These assertions are quintessential examples of alleged constructive knowledge – e.g., Omegle allegedly had knowledge generally "of trafficking" occurring on its website and therefore has knowledge of and participated in "the venture." But such purported general knowledge is insufficient to state a violation of the criminal sex trafficking statute. *See, e.g.*, *Kik*, 482 F. Supp. 3d at 1251 (allegation that Kik "knew that other sex trafficking incidents occurred on Kik" did "not satisfy FOSTA's requirement that the conduct underlying the claim violate" Section 1591). Among other issues, such assertions fail to plausibly allege that Omegle "actively and knowingly assist[ed] or facilitate[d] a primary trafficking violation, **which is tied to a specific victim**," *i.e.*, Plaintiff. *G.G. v. Salesforce.com, Inc.*, No. 20-cv-02335, 2022 U.S. Dist. LEXIS 87616, *35 (N.D. Ill. May 16, 2022) (emphasis added), *appeal docketed*, No. 22-2621 (7th Cir. Sept. 15, 2022). Plaintiff's new allegations, asserted only in opposition to this Motion, regarding the "common interests" feature of Omegle's chat service (*see* Dkt. 50 at 37) are similarly flawed.[1] At most, these new allegations suggest only how some users may misuse the chat service;[2] they say nothing about sex trafficking generally, much less that Omegle knowingly and actively participated in **the** alleged sex trafficking venture involving Plaintiff and Fordyce, for which Plaintiff seeks to hold Omegle liable. Thus, even assuming that Plaintiff could make such new allegations consistent with Rule 11, they would not save the TVPA claim from dismissal.

---

[1] Plaintiff of course cannot amend the SAC via an opposition to a motion to dismiss. *See Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (allegations in an opposition to a motion to dismiss "are irrelevant for Rule 12(b)(6) purposes"); *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050 (E.D. Cal. 2008) (statements in opposition brief cannot amend the complaint). However, even the new allegations do not save the TVPA claim.

[2] Additionally, it is not clear that the alleged prior incidents of misuse of the chat service by users involved sex trafficking as opposed to other criminal activity of users. To be clear, that is not intended to minimize *any* criminal action of users; rather, the point is that even if general knowledge was sufficient (which it is not), the knowledge logically must pertain to sex trafficking specifically.

DEFENDANT'S REPLY IN SUPPORT
OF MOTION TO DISMISS

3

Plaintiff also makes a number of assertions regarding the sufficiency of general knowledge to state a TVPA claim against an ICS provider like Omegle but mistakenly relies on cases addressing the inapplicable constructive knowledge standard of Section 1595. For example, Plaintiff argues that while general allegations about "sex trafficking's prevalence in a particular industry" are insufficient to demonstrate knowing participation in a venture, "general allegations" about "the prevalence of sex trafficking occurring on a particular company's property or platform" are sufficient to make such a demonstration. (Dkt. 50 at 35.) The only cases Plaintiff cites in purported support of this proposition are (1) a hotel case that applied the constructive knowledge standard of Section 1595[3] and (2) the two FOSTA cases that held – contrary to this Court's conclusion – that the constructive knowledge standard applied to TVPA claims against ICS providers.[4] Thus, even assuming that Plaintiff's assertions accurately reflect those courts' holdings, those cases were applying the constructive knowledge standard of Section 1595 and therefore do nothing to demonstrate that Plaintiff has plausibly alleged the *knowing and active participation* in *the* specific sex trafficking venture allegedly involving Plaintiff and Fordyce that is required by the criminal sex trafficking statute, Section 1591.

Moreover, Plaintiff is simply incorrect in asserting that these and other cases applying the (inapplicable) constructive knowledge standard hold that general knowledge about other incidents of sex trafficking is sufficient to allege participation in *the* sex trafficking venture involved in the case. To the contrary, as Omegle demonstrated in its opening brief on this Motion (*see* Dkt. 49 at 19-22), even these cases require "facts sufficient to establish that the defendant knew or should have known ***about the trafficking of the plaintiff in particular—not about trafficking occurring on the premises in general***." *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 U.S. Dist. LEXIS 64565, *4 (S.D. Tex. Mar. 30, 2021) (emphasis added); *see also J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021)

---

[3] *See* Dkt. 50 at 35 (citing *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019)).
[4] *See* Dkt. 50 at 35-36 (citing *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828 (C.D. Cal. 2021) and *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889 (N.D. Cal. 2021)).

DEFENDANT'S REPLY IN SUPPORT
OF MOTION TO DISMISS

4

(allegation that hotel franchisor was on "notice about the prevalence of sex trafficking generally at its hotels" was insufficient to show it "should have known about what happened to this plaintiff"); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Or. 2020) (finding that, although plaintiff alleged that defendants "had notice of sex trafficking generally occurring at their hotels," she failed to allege "facts which sufficiently link notice of Plaintiff A.B.'s sex trafficking to any of these Defendants"). Even the *Twitter* court – although it reached the incorrect conclusion about the appropriate knowledge standard for TVPA claims against ICS providers – held that the plaintiffs had to "allege at least that Twitter knew or should have known that ***Plaintiffs*** were the victims of sex trafficking at the hands of users who posted the content on Twitter." *Doe v. Twitter, Inc.*, 555 F. Supp. 3d 889, 925 (N.D. Cal. 2021) (emphasis added), *appeals docketed*, Nos. 22-15103 & 22-15104 (9th Cir. Jan. 25, 2022). *See also G.G.*, 2022 U.S. Dist. LEXIS 87616 at \*47-48 (alternatively concluding that plaintiffs failed to allege a TVPA claim under Section 1595's standards in part because they did not plausibly allege that the ICS provider "had actual or constructive knowledge of G.G.'s trafficking"). Indeed, Plaintiff even acknowledges (but then ignores) that a beneficiary claim, like that asserted here, requires the plaintiff to plausibly allege that the defendant "'actively and knowingly assist[ed] or facilitate[d] a primary trafficking violation, which is tied to a specific victim.'" (Dkt. 50 at 36 (quoting *G.G.*, 2022 U.S. Dist. LEXIS 87616 at \*35).)

Plaintiff confusingly attempts to distinguish the constructive knowledge cases by asserting that the plaintiffs in those cases failed to link "'notice of sex trafficking generally occurring at [the defendants'] hotels'" to "notice of [the plaintiff's] sex trafficking." (Dkt. 50 at 37.) In contrast here, Plaintiff continues, the news articles of other alleged incidents of misuse of Omegle's chat service by users "demonstrate that Omegle is specifically aware of child sex trafficking occurring on their specific platform." (*Id.*) But notwithstanding Plaintiff's use of "specifically" or "specific," this assertion is again simply another way of asserting that Omegle purportedly "should have known" about Plaintiff's alleged sex trafficking by Fordyce because it allegedly had knowledge of prior, unrelated incidents of users criminally misappropriating its

website. Similarly deficient are Plaintiff's assertions that the alleged "pervasiveness of child pornography" on the website, the alleged removal of a warning, or Omegle's alleged failure to "aid law enforcement to locate traffickers," somehow "furthers" Omegle's "engagement in *a* venture." (Dkt. 50 at 36-37 (emphasis added).) In short, like all of Plaintiff's other allegations, these assertions fail to plausibly allege *any actual knowledge of Omegle* with respect to Plaintiff and Fordyce, much less actual knowledge of *the* sex trafficking venture allegedly perpetrated by Fordyce against Plaintiff.

Nor can Plaintiff dismiss the import of the hotel cases[5] by asserting that some of them involved hotel franchisors, who were arguably one step removed from the alleged sex trafficking occurring at their franchisees' hotels. As stated in those cases, the requirement that plaintiff must plausibly allege that the defendant had actual or constructive knowledge that the purported venture it participated in violated the TVPA as to the *particular plaintiff* did not rest on the fact that the particular defendants at issue were hotel franchisors. Thus, Omegle is not attempting to use another entity to "scapegoat" the "knowledge of trafficking" allegedly "occurring on [its] platform" (*see* Dkt. 50 at 37); rather, it is Plaintiff who has failed to plausibly allege the knowledge required to show a violation of the criminal sex trafficking statute *by Omegle* necessary to state a TVPA claim *as to Plaintiff*.

Plaintiff also confusingly asserts that Omegle is not a "secondary actor" and therefore she is not required to demonstrate that it "'actively and knowingly assist[ed] or facilitate[d] a primary trafficking violation.'" (Dkt. 50 at 37.) But that assertion lacks support in both the SAC and the law, and is inconsistent with Plaintiff's own acknowledgement of this as the applicable standard. (*See* Dkt. 50 at 33-34 (stating that for purposes of Section 1591 – which Plaintiff acknowledges supplies the applicable standard – "'participation in a venture' is defined as 'knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)'") (quoting

---

[5] To be clear, the only import for our purposes being that Plaintiff's inability to satisfy even the less stringent constructive knowledge standard applied in those cases necessarily demonstrates that she cannot satisfy the applicable actual knowledge standard of Section 1591.

18 U.S.C. § 1591(e)(4)).) The criminal sex trafficking statute, Section 1591, addresses two types of violations: (1) a primary violation under subsection (a)(1) by the perpetrator of the sex trafficking; and (2) a secondary violation under subsection (a)(2) by those who knowingly benefit from participating in a venture that has engaged in a primary violation (*i.e.*, a violation of subsection (a)(1)). *See G.G.*, 2022 U.S. Dist. LEXIS 87616 at *34-35; *see also* 18 U.S.C. § 1591(a). Plaintiff does not, and cannot, allege that Omegle itself sex trafficked Plaintiff (*i.e.*, knowingly recruited, obtained, provided, or maintained Plaintiff knowing that she was under 18 and would be caused to engage in a commercial sex act). *See, e.g., G.G.*, 2022 U.S. Dist. LEXIS 87616 at *34 (stating that, like here, the plaintiff's complaint alleged only that plaintiff's "trafficker engaged in . . . trafficking violations" under Section 1591(a)(1), not the ICS provider). Rather, Plaintiff asserts (but does not plausibly allege) that Omegle knowingly benefited from participating in the sex trafficking venture allegedly perpetrated by Fordyce. Therefore, Plaintiff must, but cannot, plausibly allege that Omegle "actively and knowingly assist[ed] or facilitate[d] a primary trafficking violation [*i.e.*, by Fordyce], which is tied to a specific victim [*i.e.*, Plaintiff]." *G.G.*, 2022 U.S. Dist. LEXIS 87616 at *35 (similar to here, finding that plaintiffs had "not alleged that [the ICS provider] knew of G.G.'s circumstances or in any way assisted, supported, or facilitated the primary trafficking violation").

Plaintiff has "not pleaded that [Omegle] itself violated § 1591" *id.*, and therefore her TVPA claim is barred by Section 230. Moreover, as Plaintiff – who has had two opportunities to amend her complaint – has shown that she cannot allege the requisite actual knowledge to state a TVPA claim against Omegle, further amendment would be futile. Therefore, the TVPA claim should be dismissed with prejudice.

### B.    The SAC fails to plausibly allege that Omegle knowingly benefitted from participating in Fordyce's alleged sex trafficking venture

As a result of Plaintiff's inability to plausibly allege that Omegle knowingly participated in a sex trafficking venture that violated the TVPA with respect to Plaintiff, the Court need go no further to dismiss the claim with prejudice. However, as an additional ground for dismissal, the

SAC does not, and cannot, plausibly allege that Omegle knowingly received a benefit from the alleged sex trafficking venture perpetrated by Fordyce against Plaintiff.

Plaintiff asserts generally that "ISP Defendants may monetize the posting of child pornography through advertising revenue, fee-based subscription services, and selling user data." (Dkt. 50 at 38.) Setting aside that Omegle is not an ISP (internet service provider) and that "posting of child pornography" does not necessarily equate with sex trafficking, that general allegation does not plausibly allege any facts demonstrating that *Omegle* knowingly benefitted from participating in the specific alleged sex trafficking venture perpetrated by Fordyce. Nor does the conclusory assertion that Omegle generally "derive[s] [revenue] from selling user and usage data, plus the selling of advertisements on its website" (*id.*), make such a showing.

Section 1591 requires Plaintiff to plausibly allege that Omegle "knowingly . . . benefit[ed] . . . *from* participation in a venture which has engaged in" sex trafficking. 18 U.S.C. § 1591(a)(2) (emphasis added). But, missing from any allegation Plaintiff has made or could make is any link between knowing participation in the specific sex trafficking venture and any "user and usage data" or "advertisement[]" sales from which Omegle knowingly benefitted. Courts have held that the "participation giving rise to the benefit must be participation *in a sex-trafficking venture*"; therefore, "there must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual . . . knowledge of that causal relationship." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169-70 (S.D.N.Y. 2019) (finding that the complaint failed to plausibly allege that the company defendants received any of the alleged benefits "because of" their "facilitation of H. Weinstein's sexual misconduct"); *see also Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018) (finding that allegations failed to link Harvey Weinstein's brother's actions and his alleged receipt of benefits to Weinstein's "conduct toward [the plaintiff]").

Similarly, here, Plaintiff only alleges a general benefit Omegle purportedly receives in connection with all activity on its website. But absent from that general allegation is any link between Omegle's knowing and active participation in the alleged sex trafficking venture

perpetrated by Fordyce from which Omegle knowingly benefitted. As a result, the amended

TVPA claim fails on this independent ground and is subject to dismissal with prejudice.

**II.    Plaintiff Ignores Omegle's Showing That Section 230 Bars The New Negligence Claim, An Issue The Court Necessarily Has Not Ruled Upon**

Despite Omegle's extensive discussion of cases showing that the negligence claim added

in the SAC is inextricably connected with third-party content (e.g., Fordyce's communications)

and editorial/publisher functions (*see* Dkt. 49 at 22-29), Plaintiff fails to offer any challenge to

that showing. Instead, Plaintiff relies solely on the incorrect assertion that the Court's decision on

other claims with respect to Section 230 "controls" the decision on the new claim added in the

SAC. (*See* Dkt. 50 at 48.) Plaintiff also asserts that "[t]hird-party content is irrelevant to [her]

claims," (Dkt. 50 at 49), despite the fact that, as Omegle demonstrated (*see* Dkt. 49 at 23, 26, 28-

29), the new negligence claim – which must rise or fall on its own merit or lack thereof –

inherently requires resort to such content. Indeed, even in opposition to this Motion, Plaintiff

explicitly states that she is seeking to hold Omegle liable for "matching" minors with adults "for

private and anonymous conversations" (Dkt. 50 at 47),[6] reinforcing the conclusion that those

alleged communications are at the core of, at least, Plaintiff's negligence claim. Plaintiff also

engages in circular logic in appearing to argue that because Omegle is allegedly negligent in

failing to prevent Fordyce's communications with Plaintiff, Section 230 does not apply.[7]

In the end, Plaintiff's core theory of liability in the new negligence claim is that Omegle

is liable for providing a service that Fordyce used to disseminate harmful communications.

Based on clear Ninth Circuit precedent, such a theory of liability is barred by Section 230, and

Plaintiff offers no response demonstrating to the contrary. Finally, the brief of amicus curiae "in

---

[6] *See also* Dkt. 50 at 48 (referencing the "private and anonymous contact", *i.e.*, chats, on Omegle's chat service).

[7] *See, e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359-60 (D.C. Cir. 2014) (rejecting argument that Facebook's terms allocating rights and responsibilities between Facebook and its users gave rise to a "heightened state-law duty of care in publishing" as "[s]tate law cannot predicate liability for publishing decisions on the mere existence of the very relationship that Congress immunized from suit").

DEFENDANT'S REPLY IN SUPPORT          9
OF MOTION TO DISMISS

support of the plaintiffs' [sic] second amended complaint," (Dkt. 54 at 1), lends no support to Plaintiff's assertion that Section 230 does not apply to the new negligence claim.

### A.    Plaintiff cannot plead around Section 230 by parsing means and content where the alleged harm arose from Fordyce's communications

Although Plaintiff attempts to present her new negligence claim as based solely on the alleged "matching" of minors with adults for chats, the harm for which she seeks to hold Omegle liable arises from the communications that allegedly occurred with Fordyce, not simply the alleged "matching." But Plaintiff cannot selectively rely on a single allegation – the alleged "matching" – while asking the Court to turn a blind eye to all of the other allegations upon which the new negligence claim is based. The SAC demonstrates this inextricable link to third-party content and Omegle's alleged failure to monitor, police, or prevent the publication of such content. For example, the SAC's allegations focus at length on the content of Fordyce's communications with Plaintiff and the harm they allegedly caused (*see* Dkt. 43 at ¶¶ 39-42, 48, 51-52, 75, 116), Omegle's alleged deficient "***content*** moderation practices", its ability to ban users who engage in harmful communications, and its alleged failure "***to screen and monitor*** the activities of its [users]", or to implement a report function to "flag abusive users" (*id.* at ¶¶ 28, 36, 38 (emphasis added)), among numerous other allegations that focus on Omegle's role in policing, monitoring, and taking action against users for their harmful communications (*see, e.g.*, Dkt. 49 at 23, 28). Therefore, far from being irrelevant, third-party content – specifically, Fordyce's communications with Plaintiff – and Omegle's alleged role in failing to police or prevent that content, are central to Plaintiff's new negligence claim. *See, e.g.*, *Gibson v. craigslist, Inc.*, No. 08 Civ. 7735 (RMB), 2009 U.S. Dist. LEXIS 53246, *11-12 (S.D.N.Y. June 15, 2009) (finding that a claim that sought to hold craigslist "liable for its alleged failure to block, screen, or otherwise prevent the dissemination of a third party's content" was barred by Section 230). Indeed, as discussed below in connection with Plaintiff's new negligence claim, Plaintiff herself concedes that the harm she relies on is the risk "that a third-party would ***communicate*** with a child using the platform." (Dkt. 50 at 41 (emphasis added); *see also id.*

DEFENDANT'S REPLY IN SUPPORT         10
OF MOTION TO DISMISS

at 44 (asserting that minors were using Omegle's chat service and that their "interactions", *i.e.*, communications, on the platform "could cause harm").) Thus, Plaintiff acknowledges that it is the communications that are the source of the alleged harm not the matching itself, whether between minors and adults or otherwise.[8]

As in *Gonzalez*, *Force*, and *Fields* – cases that Omegle discussed at length in its Motion (*see* Dkt. 49 at 26-29) and which Plaintiff ignores – Plaintiff cannot escape Section 230's bar by purportedly challenging only the "matching" of minors with adults for chats when the harm Plaintiff alleges arises from the communications that occur. In *Gonzalez*, the Ninth Circuit rejected a similar attempt to focus on the means of the communications rather than the content itself in order to try to plead around Section 230. *See Gonzalez v. Google LLC*, 2 F.4th 871, 892 (9th Cir. 2021) (finding that claims treated Google as a publisher because they alleged that "Google failed to prevent ISIS from using its platform, and thereby allowed ISIS to disseminate its message of terror"); *see also Force v. Facebook, Inc.*, 934 F.3d 53, 65 (2d Cir. 2019) (finding that Facebook's alleged conduct fell "within the heartland of what it means to be the publisher of information" under Section 230, where plaintiffs sought "to hold Facebook liable for giving Hamas a forum with which to communicate") (internal quotation marks omitted); *Fields v. Twitter, Inc.*, 217 F. Supp. 3d 1116, 1125 (N.D. Cal. 2016) (finding claims to be "inherently tied up with ISIS's objectionable use of Twitter"; though the complaint "allege[d] that Twitter should not have provided *accounts* to ISIS, the unspoken" rationale for that allegation is that "*ISIS would and has used those accounts to post objectionable content*"), *aff'd on other grounds*, 881 F.3d 739 (9th Cir. 2018).

The court in *M.L. v. craigslist Inc.* also rejected similar attempts to plead around Section 230 in connection with a negligence claim where plaintiff argued that the claim alleged "craigslist breached [its] duty because [it] knew or should have known that traffickers were using

---

[8] Although in her opposition Plaintiff attempts to cast the chat service as *only* matching minors with adults (or, taking it to extremes, only minors with "predators"), Plaintiff herself admits that she previously used the service "to have age-appropriate video chats." (Dkt. 43 at ¶ 39.)

DEFENDANT'S REPLY IN SUPPORT          11
OF MOTION TO DISMISS

[its] website and took no steps to protect children." No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166836, *39 (W.D. Wash. Apr. 17, 2020), *report & recommendation adopted by* 2020 U.S. Dist. LEXIS 166334 (W.D. Wash. Sept. 11, 2020). But the *M.L.* court concluded that the "Ninth Circuit has determined that failing to monitor third party content and failing to remove third-party content when the website knows that it is illegal, is immune under the CDA, because monitoring and removing content is the function of a publisher[.]" *Id. See also M.L. v. craigslist Inc.*, No. 3:19-cv-06153-BHS-TLF, 2021 U.S. Dist. LEXIS 223297, *11-12 (W.D. Wash. Sept. 16, 2021) (finding amended negligence claim barred by Section 230 where it alleged in part that craigslist knew or should have known that traffickers were using the website to facilitate plaintiff's trafficking and "took no steps to protect or warn" plaintiff, as claim sought to hold craiglist liable "for failing to monitor third party content" or "take steps to prevent or remove third party content"), *report & recommendation adopted in relevant part by* 2022 U.S. Dist. LEXIS 74884 (W.D. Wash. Apr. 25, 2022); *Gavra v. Google Inc.*, No. 5:12-CV-06547-PSG, 2013 U.S. Dist. LEXIS 100127, *10 (N.D. Cal. July 17, 2013) ("Google has assumed no affirmative duty to protect Plaintiffs from extortion and to remove the videos, and, even if it had, any such duty would have arisen from its role as a publisher. The CDA protects Google in all these instances."). And in adopting the recommendation to dismiss with prejudice the plaintiff's negligence and strict liability claims against craigslist as barred by Section 230, the *M.L.* court also noted that the alleged failure to "verify identities" was also insufficient to take a claim outside of Section 230. 2022 U.S. Dist. LEXIS 74884 at *46-47 (citing *Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093, 1099-1100 (9th Cir. 2019)). Similarly, the court cited with approval the decision in *J.B. v. G6 Hosp., LLC*, where that court:

> faced with almost identical facts, . . . held that craigslist was entitled to § 230 immunity because craigslist only acted as a publisher by providing subsections titled "adult services" or "erotic services" and by failing to verify the age of the person being advertised or the identity of the poster.

*M.L.*, 2022 U.S. Dist. LEXIS 74884 at *47 (citing *J.B. v. G6 Hosp., LLC*, No. 19-cv-7848-HSG, 2020 U.S. Dist. LEXIS 151213 (N.D. Cal. Aug. 20, 2020)).

Moreover, notwithstanding Plaintiff's (sole) reliance on the Court's decision on the product liability claims and Section 230, the Court necessarily could not have decided the applicability of Section 230 to a claim that was not pled at the time. Nor can Plaintiff have it both ways – arguing that her new negligence claim is akin to a mutant product liability claim (*i.e.*, for a service instead of a product) for purposes of Section 230 but at the same time is distinct from a product liability claim for purposes of pleading a claim should her product liability claims fail as a result of the defects discussed later in this Motion.

Additionally, to the extent Plaintiff is asserting that Omegle is precluded from arguing that the new negligence claim is barred by Section 230 based on the order on the motion to dismiss the original complaint, that assertion is unsupportable. Such an assertion ignores "the well-established doctrine" that "after amendment[,] the original pleading no longer performs any function and is treated thereafter as non-existent." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (internal quotation marks omitted); *see also Huynh v. Quora, Inc.*, No. 18-cv-07597-BLF, 2020 U.S. Dist. LEXIS 240388, *14 (N.D. Cal. June 1, 2020) (finding that "because [defendant was] responding to Plaintiffs' new complaint," it could "challenge any claim in the Third Amended Complaint, including claims that were found sufficient under prior complaints").

Here, regardless of Plaintiff's attempt to tie the fate of her new negligence claim to her product liability claims (though only for Section 230 purposes), the fact remains that the SAC is the operative complaint and Omegle remains free to challenge the new negligence claim that Plaintiff elected to add in the SAC. To the extent Plaintiff is attempting to rely on the law of the case doctrine, any such implicit reliance is misplaced as that doctrine does not apply here. As the Ninth Circuit has stated, "when an original complaint is dismissed without prejudice, the filing of an amended complaint does not ask the court to reconsider its analysis of the initial complaint." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018); *see also Maeda v. Kennedy Endeavors, Inc.*, 407 F. Supp. 3d 953, 964 (D. Haw. 2019) (same).

**B.    Amicus curiae's invitation to ignore the language of Section 230 and Ninth Circuit authority applying it should be rejected**

Amicus curiae "draw[s] the [C]ourt's attention to the fact that the Defendant seeks protection . . . from the Good Samaritan provision" of Section 230. (Dkt. 54 at 15.) However, it fails to explain how its assertion in any way demonstrates that Plaintiff's new negligence claim escapes Section 230's bar based on the actual language of the statute and clear Ninth Circuit precedent applying the statutory language. Nor is there any indication that amicus curiae has any specific expertise that would assist the Court in applying Section 230 in light of such unambiguous Ninth Circuit authority. Thus, amicus curiae's cursory mention of Section 230 does nothing to bolster Plaintiff's argument with respect to Section 230 and her new negligence claim.

**III.    Plaintiff's Product Liability Claims Should Be Dismissed As A Matter Of Law**

**A.    Given the absence of improper motive and prejudice, the Court should exercise its discretion and consider the motion in its entirety**

The Ninth Circuit has agreed with the "very forgiving" approach of the Third and Tenth Circuits with respect to Rule 12(g)(2). *Pepper v. Apple Inc.*, 846 F.3d 313, 318-19 (9th Cir. 2017). The court generally focused on two considerations: (1) whether the later-filed motion was filed for an improper purpose; and (2) efficiency. *Id.* at 318-20. Plaintiff does not make a compelling showing on either point.

As to the first point, Plaintiff tellingly does not assert that Omegle had any improper purpose in filing its motions to dismiss. Although Plaintiff implies – in a parenthetical citation to *Pepper* – that Omegle's motion purportedly was filed for a "strategically abusive purpose," (*see* Dkt. 50 at 16), she fails to identify any such purpose or otherwise support the implicit accusation.

Plaintiff also fails to identify any prejudice that would result if the Court considers Omegle's arguments directed at the product liability claims raised in this Motion. Plaintiff argues that considering Omegle's arguments would "deprive Plaintiff of a decision made in her favor[.]" (Dkt. 50 at 16.) But such a possibility is not prejudice, as Plaintiff acknowledges that Omegle remains free to challenge the product liability claims, including via a Rule 12(c) motion (*see id.* at 15), which could also "deprive" her of a (partially) favorable decision on the motion to dismiss

the original complaint. *Pepper*, 846 F.3d at 318-19 (citing, among other cases, *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1175 (C.D. Cal. 2011)). Indeed, as courts caution, such an approach – requiring a party to assert a defense via a Rule 12(c) motion rather than a second Rule 12(b)(6) motion – results in inefficiency in the form of delay and repetitive motion practice. *Pepper*, 846 F.3d at 318-19. Plaintiff fails to identify any cognizable prejudice she would suffer if the Court were to consider legal questions that it would nevertheless have to address if Omegle were forced to raise it via a motion for judgment on the pleadings.

Further, Omegle's Motion also addresses a claim that the Court found deficient and which was amended (the TVPA claim), as well as an entirely new claim that Plaintiff chose to add in the SAC. There is no dispute that Omegle's arguments as to both of those claims are timely, and therefore the Court already has to rule on at least a portion of Omegle's challenges to the SAC. Additionally, Plaintiff's newly-added negligence claim suffers from some of the same flaws as the negligence-based product liability claims (*i.e.*, with respect to the "impact" rule). As a result, if anything, efficiency considerations counsel that all of these arguments be addressed together in the present Motion. *See, e.g.*, *Allstate*, 824 F. Supp. 2d at 1175 (exercising discretion to address arguments in second motion where doing so "will prejudice neither side and will promote the efficient and just resolution of this case").

Nor is there any support for Plaintiff's assertion that it is the filing of "serial motions to dismiss" that has kept the case in its early stages. (*See* Dkt. 50 at 16.) Although Plaintiff accuses Omegle of keeping this case in its early stages, it is Plaintiff who waited until after Omegle's motion to dismiss the FAC had been fully briefed and oral argument on the motion scheduled to propose the SAC. That in turn required the motion to be fully re-briefed and new argument made in connection with Plaintiff's new negligence claim. Thus, it is deficiencies in Plaintiff's original complaint and the addition of a new claim that led to the filing of amended complaints that in turn resulted in motions to dismiss. And in any event, Plaintiff does not explain how it would efficiently advance the case to address only certain challenges to the SAC at this time while carving out other challenges to be addressed in a later-filed Rule 12(c) motion.

Plaintiff cites to *FTC v. Wellness Support Network, Inc.*, for the proposition that courts decline to consider arguments raised in later motions brought under Rule 12(b)(6). (*See* Dkt. 50 at 14-15.) However, in that case, the court decided to not exercise its discretion to consider the arguments in the later Rule 12(b)(6) motion because the motion presented "fact questions that are properly addressed at the summary judgment stage of the case and *not* on the pleadings." *FTC v. Wellness Support Network, Inc.*, No. C-10-04879 JCS, 2011 U.S. Dist. LEXIS 102301, *10 (N.D. Cal. Sept. 12, 2011) ("*Wellness Support*"); *see also Sparling v. Doyle*, No. EP-13-CV-00323-DCG, 2014 U.S. Dist. LEXIS 151113, *9-10 (W.D. Tex. Oct. 23, 2014) (citing *Wellness Support* and observing that "[w]hen courts have declined to exercise discretion, it has been on the grounds that the arguments turned on a factual question, and were more appropriate in a Rule 56 motion"). Unlike in *Wellness Support*, here, Omegle's Motion raises purely legal questions regarding the sufficiency of the pleadings and the scope of Oregon's product liability law. *Wellness Support* therefore is not helpful to Plaintiff.

In sum, Plaintiff fails to identify any improper motive, inefficiency, or prejudice that would result from the Court's considerations of all of Omegle's challenges to the SAC at the present time. The Court should exercise its discretion and consider these arguments.

**B.    The product liability claims should be dismissed because Omegle's online chat service is not a "product" as a matter of Oregon law**

**1.    *Plaintiff relies upon the wrong body of law***

Plaintiff cannot dispute that Oregon's product liability statute governs all of her product liability claims, regardless of whether those claims are pled as strict liability claims (claims 1 and 2) or negligence claims (claims 3 and 4). *See Smith v. Ethicon Inc.*, No. 3:20-cv-00851-AC, 2021 U.S. Dist. LEXIS 152495, *7 (D. Or. May 13, 2021), *findings & recommendations adopted by* 2021 U.S. Dist. LEXIS 151954 (D. Or. Aug. 12, 2021) (explaining that "if the gravamen of a cause of action is a product defect, regardless of the theory of liability, then Oregon's product liability statutory framework . . . will govern the cause of action") (internal quotation marks omitted). Nor does Plaintiff dispute that whether Omegle's chat service is a "product" for

purposes of Oregon product liability law is a threshold requirement for all four product liability claims. (Dkt. 50 at 17.) Indeed, Plaintiff admits that her allegations that she was harmed by Omegle's purported defects, including the product liability claims grounded in negligence, "clearly fall within Oregon's statutory definition of a 'product liability civil action.'" (*See id.*)

Notwithstanding that admission, however, Plaintiff proceeds to misconstrue, or in some cases ignore, the standards courts have applied to determine whether something is a "product" for purposes of Oregon product liability law, relying instead on inapposite case law from other jurisdictions and what Plaintiff describes as "policy" and "common sense." As detailed below, the Court should reject Plaintiff's arguments and dismiss the product liability claims because Plaintiff does not, and cannot, plausibly allege that Omegle's online chat service is a "product."

As an initial matter, Plaintiff suggests that whether Omegle's chat service is a "product" is a factual question and that the Court need only determine if "Plaintiff has plausibly alleged that Omegle is a product." (Dkt. 50 at 16.) As Oregon courts have explained, however, "[w]hether something is a 'product' within the meaning of [Oregon's product liability] statute is a ***question of law***." *Ass'n of Unit Owners of Bridgeview Condos. v. Dunning*, 187 Or. App. 595, 615, 69 P.3d 788 (2003) ("*Dunning*") (emphasis added). Whether Plaintiff can satisfy the threshold requirement applicable to all four of the product liability claims is appropriately decided as a matter of law on this motion to dismiss.

Plaintiff also mischaracterizes the legal principles Oregon courts apply when considering whether something is a "product" for purposes of Oregon's product liability law. She disregards the Oregon legislature's express intent that the product liability statute "***shall*** be construed in accordance with" Section 402A of the RESTATEMENT (SECOND) OF TORTS ("Section 402A") and its comments. ORS 30.920(3) (emphasis added). Rather, Plaintiff argues that "[i]n product liability cases, the Ninth Circuit looks to the *Restatement (Third) of* Torts . . . for guidance[,]" citing *Oswalt v. Resolute Indus., Inc.*, 642 F.3d 856, 860 (9th Cir. 2011). (Dkt. 50 at 19.) Her claims arise under Oregon state law, however, so she cannot rely on *Oswalt*, a case where the product liability claims were "controlled by the ***federal common law of maritime torts***" and the

court concluded that it, like other courts in admiralty and maritime cases, would rely on the RESTATEMENT (THIRD) OF TORTS. *See Oswalt*, 642 F.3d at 860 (emphasis added).[9]

### 2.    *Omegle, an online chat service, is not a "product" because it is not movable and therefore is not a "good" or "chattel" under Oregon law*

In *Dunning*, the Oregon Court of Appeals looked to three comments to Section 402A when it determined whether there was a "product" within the meaning of Oregon's product liability law. 187 Or. App. at 616-17 (relying on comments a, c, and d of Section 402A). Specifically, and as relevant to the issues here, the court noted that "comment a notes that the subject of [S]ection 402A is the liability of 'suppliers of chattels'" and that the "term 'chattel,' in legal parlance, ordinarily refers to 'an article of personal property, as opposed to real property. *A thing personal and moveable*.'" *Id.* at 616 (quoting *Black's Law Dictionary* 215 (5th ed. 1981)) (emphasis added). *Dunning* ultimately held that a condo is not a "product" because condos are "not 'chattels,' nor are they 'goods' within any reasonable definition of the term," and as such, they "are not 'products' within the meaning of ORS 30.920." *Id.* at 617.

Plaintiff acknowledges *Dunning*, noting that it is one of the "Oregon cases addressing whether something is a 'product'" and citing language from the decision referring to "chattels" and "goods." (Dkt. 50 at 17 n.3, 18.) Plaintiff then argues that Omegle misreads *Dunning* because Omegle "assert[s] that only chattels may be subject to product liability claims" and "ignores the question of whether Omegle is a 'good,' focusing solely on whether [Omegle] is a 'chattel.'" (*Id.* at 18.) This supposed distinction between "goods" and "chattels" is significant,

---

[9] Amicus curiae acknowledges that Omegle "is correct" that the Oregon legislature adopted Section 402A, and that it "is the governing authority to use when construing a products liability action under Oregon law[,]" but argues that "because the Third Restatement is more recent," it "may provide more useful guidance." (Dkt. 54 at 7.) Amicus curiae then proceeds to ignore the relevant language in Section 19 of the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY, which defines "product" as "***tangible personal property*** distributed commercially for use or consumption" and explains that "[s]ervices, even when provided commercially, are not products." (Emphasis added). In any case, as detailed below, that definition is consistent with *Dunning*'s definition of "product."

according to Plaintiff, because "[t]he weight of out-of-state authority demonstrates that software can be a 'good,' rather than a 'service' under the Uniform Commercial Code." (*Id.*)

Plaintiff's argument fails for several reasons. First, any distinction between "chattels" and "goods" is the proverbial distinction without a difference.[10] Indeed, Plaintiff does not dispute *Dunning*'s definition of "chattel," i.e., "[a] thing personal and moveable." *Dunning*, 187 Or. App. at 616 (internal quotation marks omitted). Second, even if courts used the Uniform Commercial Code's definition of "goods" to determine whether something was a "product" for purposes of Oregon's product liability statute – and Plaintiff cites no authority to support that proposition – Omegle's online chat service, provided via its website, does not satisfy the U.C.C.'s definition of "goods." *See* ORS 72.1050(1) (codifying U.C.C. § 2-105(1) and defining "goods," in pertinent part, as "all things (including specially manufactured goods) which are *movable* at the time of identification to the contract for sale") (emphasis added).

Plaintiff's reliance on U.C.C. cases is also misplaced because those cases discuss whether "*software* can be a 'good,' rather than a 'service' under the [U.C.C.]." (Dkt. 50 at 18 (emphasis added).) The SAC's allegations that Omegle is a "product" repeatedly and overwhelmingly refer to Omegle as a "website," not software. (*See, e.g.,* Dkt. 43 at ¶¶ 79, 86-87, 92-93, 96, 99, 107.) Elsewhere, the SAC describes Omegle as "a free online chat room," a "free online website," and "one of the largest and most popular chat sites," that is "accessible only through its own website" and *is not* an "application[] uploaded through a marketplace like the App Store or Google Play." (Dkt. 43 at ¶¶ 2, 17-18, 30.) In contrast, the U.C.C. cases Plaintiff cites refer to software as that term is commonly understood. For example, in *Advent Sys. Ltd. v. Unisys Corp.*, a case involving breach of a contract for the sale of plaintiff's "software for computers" that included "an electronic document management system," the court explained that:

> Generally speaking, "software" refers to the medium that stores input and output data as well as computer programs. . . . In simplistic terms, programs are codes

---

[10] Indeed, "goods and chattels," or the more archaic term *bona et catalla*, is a well-known example of a legal "doublet," whereby lawyers use two words to "[a]mplif[y] by synonym." *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 292-93, 388 (2nd ed. 1995).

> prepared by a programmer that instruct the computer to perform certain functions. When the program is transposed on a medium compatible with the computer's needs, it becomes software.

925 F.2d 670, 672, 674 (3d Cir. 1991). The program is "tangible" and "moveable" once it is in the form of a medium such as, at that time, "a floppy disc." *Id.* at 675. Similarly, *Simulados Software, LTD v. Photon Infotech Private, LTD*, another breach of contract case, involved a test simulation program used by teachers. 40 F. Supp. 3d 1191, 1194, 1196 (N.D. Cal. 2014). Neither of these cases is a product liability case, much less a case where product liability claims were brought under Oregon law. The remaining case Plaintiff cites to support her argument that "software can be a 'good'" under the U.C.C., *Schafer v. State Farm Fire & Cas. Co.*, which involved a "computer software program" an insurer used "to calculate the replacement value of damaged property," *is* a product liability case, but was brought under Louisiana's product liability statute, which, unlike Oregon's statute, defines "product." *See* 507 F. Supp. 2d 587, 589, 600-01 (E.D. La. 2007). The court held that the defendant's software program "*may* be a product for the purposes of the [Louisiana Product Liability Act]" but did not rule on that issue because a product liability claim "ha[d] not been adequately alleged in the Complaint[.]" *Id.* at 601 (emphasis added). And in any event, Plaintiff fails to explain how Omegle's website is akin to the "computer software program" in *Schafer*.

Amicus curiae echoes Plaintiff's arguments, claiming that "products liability likely would apply to software" and similarly relying on U.C.C. cases as well as "tax cases, [where] courts have found the sale of software to be a taxable sale of goods." (*See* Dkt. 54 at 12-13.) However, whether "sales of subscriptions for [] online products constitute[] sales of tangible personal property" under Massachusetts law, as the Massachusetts Supreme Judicial Court held in *Citrix Sys., Inc. v. Comm'r of Revenue*, 484 Mass. 87, 95, 139 N.E.3d 293 (Mass. 2020), or whether "PlayStation Membership Cards qualify as 'digital goods' or 'virtual goods' exempt from state sales tax[,]" (the issue before the court in *Chaves v. Amazon.com Servs. LLC*, No. C21-1213-TL-BAT, 2022 U.S. Dist. LEXIS 94386, *16 (W.D. Wash. May 23, 2022)), have no bearing on

whether Omegle's online chat service offered via its website is a "product" for purposes of Oregon's product liability law.

Plaintiff's remaining arguments are similarly unavailing. She confusingly argues both that "Omegle's contention that movability is a central aspect in deciding whether something is a product" is "misled" and also that Omegle *is* movable because it is "designed to be accessed through . . . moveable items" like laptops and smartphones, and because a user "can open and close it," "move it around from screen to screen, and from device to device," and "can decide when to use it and when to put it away." (Dkt. 50 at 22-23.) But Plaintiff's claim of movability is itself misleading as she is describing, variably, the computer or device or web browser through which a user accesses the Omegle website (and the chat service offered via the website) that is allegedly being moved. The fact that Omegle's web-based chat service can be accessed through a tangible item that is movable, however, does not render Omegle's service movable itself. Further, while it is up to the user to "decide when to use" Omegle, deciding whether to use something is a decision equally applicable to a service (which Omegle is) as well as a product. And, while Omegle's chat service, like any website, can be accessed via different types of devices, multiple means of access to a service does not mean that the service is a movable, tangible "chattel" as *Dunning* and Section 402A require.[11]

Plaintiff also notes that "many courts have found that electricity is a 'product' for strict liability purposes" and concludes that the cases she cites "undermine Omegle's argument that 'a 'product' must not only be personal property but also something 'movable.'" (Dkt. 50 at 18-19 (quoting Dkt. 49 at 33).) Setting aside the obvious point that Omegle's online chat service and the website through which the service is offered are not "electricity," the cases Plaintiff cites are inapposite, as the electricity *had* "moved" – from the defendant utility company's control to the consumer's property – and had caused harm via its *tangible*, *physical* contact with the

---

[11] By Plaintiff's logic, a subscription car radio service such as Sirius XM would be a "good" because the subscriber uses the service in a movable vehicle. The Court should reject the reasoning leading to this absurd result.

DEFENDANT'S REPLY IN SUPPORT         21
OF MOTION TO DISMISS

consumer's person or property. *See, e.g.*, *Bryant v. Tri-County Elec. Membership Corp.*, 844
F. Supp. 347, 348-350 (W.D. Ky. 1994) (applying Kentucky law in case where "voltage surges"
that "passed through [plaintiffs'] electric meter" caused fire at a sawmill; explaining that
"electricity is subject to product liability rules . . . when it passes through the customer's
meter[,]" when "the seller relinquishes control over its product"); *Ransome v. Wis. Elec. Power
Co.*, 87 Wis.2d 605, 609-10, 619-20, 275 N.W.2d 641 (Wis. 1979) (applying Wisconsin law and
holding that where homeowners brought product liability claims against electric power company
alleging that electricity had "left the defendant company's control" and thus had physical contact
with homeowners' property, causing fire damage, was an "appropriate" case where "electricity
can be a product" but that "[t]he distribution [of electricity] might well be a service").

### 3.    Plaintiff's primary case – *Lemmon* – is not controlling here

Plaintiff leans heavily on *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), a case
involving Snapchat, which she claims is "controlling in the instant case." (*See* Dkt. 50 at 20-21.)
The Court should reject Plaintiff's attempt to conflate the applicable law and facts of *Lemmon*
with the issue here, namely, whether Omegle's web-based chat service is a "product" for
purposes of Oregon's product liability statutory scheme, on several grounds.

First, Plaintiff repeatedly claims the Ninth Circuit decided issues that were not raised,
much less decided, on appeal. As relevant here, the question of whether Snapchat was a
"product" was not before the Ninth Circuit in *Lemmon*. While the court reversed the dismissal of
the plaintiffs' "negligent design" claim, the only legal issue on appeal was whether Section 230
barred that claim, not whether the plaintiffs had stated a negligent design claim under California
(or any other state's) product liability law. *See Lemmon*, 995 F.3d at 1094-95 (explaining that
"the district court dismissed . . . the amended complaint based entirely on the CDA[,] and we
refrain from deciding an issue that the district court has not had the opportunity to evaluate")
(internal quotation marks omitted). The language from *Lemmon* Plaintiff cites merely refers to
the Ninth Circuit's description of how the plaintiffs pled their negligent design claim. *See id.* at

1092. Second, Plaintiff claims that "California law" governs the *Lemmon* plaintiffs' claims and argues that because California law, like Oregon's product liability statute, "defines a 'product liability action' . . . without defining a product[,]" Omegle must be a product. (*See* Dkt. 50 at 20-21.) Even if the *Lemmon* court had addressed the question of whether Snapchat is a "product" – which it did not – Plaintiff's strained comparison fails as the district court ruled on remand that Wisconsin law applied with respect to issues where the states' laws were not identical. *See Lemmon v. Snap, Inc.*, No. CV 19-4504-MWF (KSx), 2022 U.S. Dist. LEXIS 83399, *12-13 (C.D. Cal. Mar. 31, 2022).[12] Finally, Plaintiff herself has previously distinguished Omegle's chat service from Snap's product, arguing that "[u]nlike platforms that would not exist without publishing user content, such as, Snap, . . . Omegle's main role is to facilitate matches between users[.]" (Dkt. 23 at 6.) Indeed, in the same court filing, notwithstanding her current insistence that Omegle is a "product," Plaintiff characterized Omegle as a "service," referencing "the *service's* accessibility to both adults and children" and alleging that Omegle "has knowledge that its *service* is used for sex trafficking." (Dkt. 23 at 15, 30 (emphasis added).)

### 4. *Plaintiff fails to distinguish cases holding websites and online services are not "products" and instead relies upon conjecture*

Plaintiff urges the Court to find that Omegle is a "product" because "many courts . . . have assumed, without deciding, that social media and software are within the purview of product liability law[,]" an argument amicus curiae echoes. (*See* Dkt. 50 at 19-20; Dkt. 54 at 12.) The Court should reject this dual invitation to rely on cases that did not address the legal question at issue here, presumably because the defendants in those cases, for whatever reason, chose not to challenge the plaintiffs' characterization of the "social media or software" at issue as a "product." Plaintiff's other miscellaneous arguments similarly are without merit. For example, Plaintiff makes a cursory argument that a reference to "related products" in Omegle's terms of service undermines its argument that its website is not a product for purposes of Oregon

---

[12] As with prior decisions, the district court's decision on remand did not address the question of whether Snapchat was a product. *See generally Lemmon*, 2022 U.S. Dist. LEXIS 83399.

product liability law. (Dkt. 50 at 17 and n.2.) However, as Plaintiff's quote from the terms demonstrate, they do not refer to Omegle's website as a product.[13] (Dkt. 43 at ¶ 36 ("the Omegle Web site, *and/or* related products *and/or* services") (emphasis added).) Plaintiff also points to other, unspecified "social media manufacturers, including ones that operate other products, like Omegle" who have "obtain[ed] patents for [their] technologies," which Plaintiff claims "they could not do if those products were abstract thoughts or speech." (Dkt. 50 at 23.) Even if other companies' "technologies" were relevant to the question of whether Omegle's online chat service is a product under Oregon's product liability law, Plaintiff's argument is not tied to any allegations in the SAC. Further, Plaintiff's apparent assumption that anything patentable is a "product" is inconsistent with a basic principle of patent law: a "process" can be patentable just as a "machine" is. *See PASCO Sci. v. Vernier Software & Tech. LLC*, No. 3:21-cv-01523-IM, 2022 U.S. Dist. LEXIS 101325, *6 (D. Or. June 7, 2022) (explaining that "an invention is generally patentable if it is a new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof") (internal quotation marks omitted).

Plaintiff fails to distinguish cases cited by Omegle in which courts held that websites are not products for purposes of product liability claims. In *Intellect Art Multimedia, Inc. v. Milewski*, which Plaintiff does not even reference in her opposition, the court rejected the plaintiff's argument, similar to Plaintiff's argument here, that "the national trend is moving towards a more expansive definition of the term 'product' in products liability analysis" and held that the plaintiff "has failed to demonstrate that, as a matter of law, the [defendant's] website is a product so that [the defendant] should be held strictly liable for any 'injury' caused thereby." 899 N.Y.S.2d 60, 2009 N.Y. Misc. LEXIS 2325, ***18 (N.Y. Sup. Ct. 2009). With respect to *James v. Meow Media, Inc.*, Plaintiff does not dispute, nor can she, that the court affirmed the district court's dismissal of the plaintiff's product liability claims because the plaintiff failed to show

---

[13] Moreover, even if this statement were a purported admission, it would not be binding on Omegle. *See AdTrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF, 2019 U.S. Dist. LEXIS 68151, *11 (N.D. Cal. Apr. 22, 2019) ("To the extent Plaintiffs' 'admission' was to a legal question—such as contract interpretation—that admission is not binding on Plaintiffs.").

that "video games, movies, and ***internet sites*** are 'products' for purposes of strict liability." 300

F.3d 683, 700-01 (6th Cir. 2002) (emphasis added).

Nor does Plaintiff distinguish, or even reference, cases cited by Omegle in which courts

held that services accessed online are not subject to product liability laws. *Quinteros v.*

*Innogames*, involved an online game, Forge of Empires, which was "played via an internet

browser or mobile app" with "significant interaction between online players within the game

over chat and other message systems[,]" interaction which the plaintiff alleged included gender-

based harassment by other online players. No. C19-1402RSM, 2022 U.S. Dist. LEXIS 55640, *2

(W.D. Wash. Mar. 28, 2022). The *Quinteros* plaintiff alleged that the gender-based harassment

she experienced from other users "occurred, at least in part, because [the game's creator]

advertised the game in a manner which 'created an unsafe environment for women players.'" *Id.*

at *5. The court dismissed plaintiff's product liability claim, holding that Forge of Empires, as a

game accessed via a website – SaaS or "software as a service" – is not a product. *Id.* at *19-20.

Plaintiff also fails to distinguish *Legal Tender Servs. PLLC v. Bank of Am. Fork*, another recent

case where a court rejected a plaintiff's argument that a service accessed online is a product. In

*Legal Tender*, the purported product was a bank's online payment portal. 2022 UT App. 26, 506

P.3d 1211, 1220 (Utah Ct. App. 2022). The court explained that "the portal isn't a movable

good" or "an item of tangible personal property" but rather, "an online portal that is accessed by

following the website link" and that "no separate hardware [or] software" is needed to access the

portal. *Id.* (internal quotation marks omitted). In other words, the payment portal was an online

service very similar to Omegle's online chat service: a service accessed via a website without the

need to download software.

### 5.    *Plaintiff's and amicus curiae's last-resort policy arguments fail*

Ultimately, in the absence of any authority to support her argument that Omegle is a

"product," Plaintiff falls back on policy arguments, proclaiming that "[t]he evolution of product

liability law does not just stop with the 1990's adoption of the internet" and warning that "[t]o

deny that product liability law applies to virtual products puts us all at grave danger," placing Omegle in the same category as "self-driving cars," "smart products that guard our homes and children," "robotics," and "even technology that edits genes." (Dkt. 50 at 23-24.) Amicus curiae similarly urges the Court to "treat[] Omegle as a product [to] comport[] with" its view of public policy. (Dkt. 54 at 11.)

Even if the Court were to agree with these doomsday prognostications, the Oregon Court of Appeals has made clear that such concerns cannot affect the outcome:

> The scope of the product liability statute . . . is not determined as a matter of [the court's] judgment as to what is the best policy in response to perceived public needs. The legislature already has accomplished that in enacting ORS 30.920.

*Dunning*, 187 Or. App. at 617. To the contrary, "[t]he task of the courts is merely to determine the scope of the legislature's policy judgments as expressed in the statute." *Id.* When viewed through the lens of Oregon's product liability law, construed, as ORS 30.920(3) requires, "in accordance with" Section 402A, Plaintiff's bald declaration that "Omegle is a product" is insufficient to demonstrate that Oregon law supports her legal conclusion. Plaintiff's product liability claims should be dismissed on this ground alone. Moreover, given that no additional allegations can change the nature of Omegle's chat service (and Plaintiff does not suggest she can offer any further allegations to demonstrate that Omegle is a "product" even assuming such allegations would be relevant to this question of law), Plaintiff's product liability claims should be dismissed with prejudice.

### C. The SAC has not plausibly alleged the physical harm required to recover the damages sought for Plaintiff's strict product liability claims

Plaintiff admits that she must plausibly allege "physical harm" to state a claim for strict product liability. (Dkt. 50 at 24.) In the absence of any allegations in the SAC regarding physical contact with Omegle – not surprising since Omegle is a web-based service, not a tangible, movable good – and absent any claim that Plaintiff had direct physical contact with Fordyce, Plaintiff claims that the "physical harm" requirement is met because *Fordyce* "coerced Plaintiff into committing sex acts upon herself[.]" (*Id.*) Omegle does not dispute that Fordyce's actions

were reprehensible, or that his coercion of Plaintiff to perform sexual acts subjects him to criminal and potentially civil liability. Indeed, Fordyce pled guilty for sex offenses arising from his unlawful actions towards Plaintiff. (Dkt. 43 at ¶ 51.)

The question of whether allegations regarding Plaintiff's non-consensual self-touching committed per Fordyce's virtual directives are sufficient to meet ORS 30.920's "physical harm" requirement for a product liability claim against *Omegle* is a different legal inquiry, however.[14] And it is a requirement the Court should conclude Plaintiff has not satisfied, as a "physical impact" or contact with the defective product is required. *See, e.g., Cochran v. Burlington Coat Factory of Or., LLC*, No. 10-CV-6016-TC, 2010 U.S. Dist. LEXIS 101268, *4 (D. Or. Aug. 25, 2010) ("Oregon's product liability statutes . . . prohibit recovery for mental distress where there is no ***physical harm*** or ***physical impact***") (emphasis added), *findings & recommendations adopted by* 2010 U.S. Dist. LEXIS 101267 (D. Or. Sept. 19, 2010).

Here, in the SAC, Plaintiff includes a list of the harms she attributes to Omegle, which she describes as her "physical and psychological injuries," all of which are pled as symptoms of, and resulting from, her alleged emotional distress, including the "physical" conditions she references: seizures, "trouble breathing," and "sleep and eating disturbances." (Dkt. 43 at ¶¶ 54-55, 75.) In other words, the physical harms Plaintiff actually alleges are consequences of emotional distress, not the inverse. Plaintiff characterizes this argument as a "discussion [that] has no bearing on the issue of whether Plaintiff adequately alleged physical harm by a product[,]" (Dkt. 50 at 25), but she does not dispute that the only "injuries [that] have caused and will cause Plaintiff non-economic damages" are those ***symptoms*** (*see* Dkt. 43 at ¶ 75). Tellingly, the only damages Plaintiff requests, apart from punitive damages, are non-economic damages, e.g., damages for emotional distress. (*Id.* at ¶¶ 75-76.)

---

[14] It is also notable that the SAC suggests that some of this activity did not even occur on Omegle's website. (*See, e.g.*, Dkt. 43 at ¶¶ 42-44, 46 (alleging that Plaintiff provided her "contact information" to Fordyce so they could communicate after the video chat and alleging that Plaintiff sent images to Fordyce).)

DEFENDANT'S REPLY IN SUPPORT          27
OF MOTION TO DISMISS

Relying on *Sease v. Taylor's Pets, Inc.*, 74 Or. App. 110, 700 P.2d 1054 (1985), Plaintiff claims that the physical harm required to state a claim for strict product liability "need not be directly from the product, but rather a consequence of the conditions that make it defective." (Dkt. 50 at 26.) In *Sease*, however, where plaintiffs pled strict product liability claims, each of the prevailing plaintiffs ***did have direct physical contact with the allegedly defective product***, albeit in varying degrees, with these direct physical contacts causing physical injury to some of the plaintiffs but not others. 74 Or. App. at 112-13.

In a final attempt to avoid dismissal of her strict product liability claims, Plaintiff again argues that *Lemmon* "is controlling precedent" because the Ninth Circuit held that "apps can be liable for physical injuries" even when the app does not cause a plaintiff physical harm. (Dkt. 50 at 24.) Plaintiff's failure to cite to specific language – or even a specific page – in *Lemmon* for this alleged holding, or as to what type of injury suffices for recovery of emotional distress damages in a strict product liability case, is telling; *Lemmon* did not address whether physical impact with a product was required to recover under Oregon's product liability statute or any other state's law for that matter. Rather, the *only* substantive issue the Ninth Circuit decided was whether the plaintiffs' claims were subject to Section 230 immunity. *See Lemmon*, 995 F.3d at 1087 (explaining that the issue before the court was "whether the district court correctly dismissed [the] action when it concluded that [Section 230] barred the [plaintiffs'] claim").[15]

Here, Plaintiff had no physical contact with Omegle (or with Fordyce, for that matter). She has not plausibly alleged any physical harm that is not a consequence of emotional distress rather than the inverse, and therefore the Court should dismiss her claims for strict product liability as a matter of law.

---

[15] Nor did the district court on remand address the question of whether physical impact is required for a plaintiff to recover emotional damages on a strict product liability claim, or on any type of product liability claim for that matter. *See generally Lemmon*, 2022 U.S. Dist. LEXIS 83399. Indeed, the bulk of the court's decision addressed whether Wisconsin or California law applied to the plaintiffs' claims. *See id.* at *5-13.

DEFENDANT'S REPLY IN SUPPORT     28
OF MOTION TO DISMISS

**D.**  **The negligence-based product liability claims should be dismissed as they do not sufficiently allege physical harm or an exception to the "impact rule"**

As with strict product liability claims, Oregon law requires plaintiffs seeking to recover emotional distress damages for negligence-based product liability claims to prove a physical harm directly from the alleged product. *See, e.g., Kent v. Shiley, Inc.*, No. 87-6554-E, 1989 U.S. Dist. LEXIS 8962, *2-5 (D. Or. Jan. 24, 1989) (explaining that the requirement of "physical harm caused by the product failure or malfunction" for strict product liability also applies to "products liability claims based on negligence"). Relying on an erroneous interpretation of ORS 30.920(4), Plaintiff "disputes" this legal standard. (*See* Dkt. 50 at 27.) In pertinent part, that statutory provision provides that "[n]othing in this section shall be construed to limit the rights and liabilities of sellers and lessors under principles of common law negligence[.]" ORS 30.920(4). The effect of that language, however, is simply to confirm that "Oregon's product liability statute permits [p]laintiffs to advance multiple theories of potential recovery[.]" *Smith*, 2021 U.S. Dist. LEXIS 152495 at *8. In other words, "Oregon's product liability statute . . . does not preempt other common law claims but merely embraces those claims such that the statutory framework applies to those theories of liability." *Id.* at *6 (internal quotation marks omitted). That statutory language does not, however, do away with the so-called "impact rule" for Plaintiff's negligence-based product liability claims.

As with the strict product liability claims, the negligence-based product liability claims (claims 3 and 4) fail to plausibly allege any direct physical injury caused by, or direct physical contact with, Omegle. The Court should reject Plaintiff's assertion that the same allegations she argues meet the standard for recovery of emotional distress damages for strict product liability claims "are sufficient to maintain her claim[s] for product liability based on negligence[.]" (Dkt. 50 at 26-27.)

As Plaintiff acknowledges, citing *Norwest v. Presbyterian Intercommunity Hosp.*, 293 Or. 543, 558-61, 652 P.2d 318 (1982), "a plaintiff who has suffered emotional distress as a result of a defendant's negligence ordinarily may not recover damages for such emotional harm in the

absence of some sort of physical impact." (Dkt. 50 at 27.) Oregon courts refer to this principle as the "impact rule," which "allows a plaintiff to seek damages for negligently caused emotional distress only if the plaintiff can show some physical impact to himself or herself." *Philibert v. Kluser*, 360 Or. 698, 700, 385 P.3d 1038 (2016). There are narrow exceptions to the "impact rule," as detailed below, but the SAC does not include plausible allegations that any such exceptions are satisfied with respect to Plaintiff's negligence-based product liability claims.[16]

Here, Plaintiff relies on the exception to the "impact rule" whereby a plaintiff alleging a negligence-based claim may recover emotional distress damages in the absence of physical harm when "a defendant negligently causes foreseeable, serious emotional distress and ***also*** infringes some other legally protected interest." *Philibert*, 360 Or. at 702 (emphasis added). When deciding whether a plaintiff has sufficiently alleged this exception to the "impact rule," such that the claim can survive a motion to dismiss, a court conducts a three-step analysis. *See I.K. v. Banana Republic, LLC*, 317 Or. App. 249, 255, 505 P.3d 1078 (2022). The court must determine whether (1) "the complaint alleges the violation of a legally protected interest;" (2) "such interest is of sufficient importance as a matter of public policy to merit protection from emotional impact;" and (3) "the complaint alleges that the emotional distress was the foreseeable result of the violation of the legally protected interest." *Id.*

Plaintiff's negligence-based product liability claims as actually pled in the SAC include no allegations regarding any legally protected interest allegedly violated by Omegle (as opposed to Fordyce), much less one of "significant importance" sufficient to overcome the general rule that emotional distress damages are not recoverable absent physical impact. (*See* Dkt. 43 at ¶¶ 92-96, 98-100.) Nor do the negligence-based product liability claims, as pled, allege that Plaintiff's emotional distress was "the foreseeable result" of the violation of a legally protected

---

[16] In contrast with the negligence-based product liability claims (claims 3 and 4), the new negligence claim (claim 6) does attempt to invoke an exception to the "impact rule" by including a general and conclusory reference to a "legally protected interest" (*see* Dkt. 43 at ¶ 123), but, as discussed below, this statement, standing alone, does not suffice to plausibly allege any exception to the "impact rule."

interest by Omegle. (*See id.*) Plaintiff argues that other allegations in the SAC that are "re-alleged and incorporated by reference into the respective claims for relief" sufficiently "identify the legally protected interest" that would support recovery of emotional distress damages for the negligence-based product liability claims. (Dkt. 50 at 32.) However, none of the "incorporated" allegations Plaintiff references specifically identify a "legally protected interest," much less that Omegle (as opposed to Fordyce) violated such an interest. Rather, the referenced allegations are either factual allegations as to Fordyce's unlawful and inexcusable conduct and Plaintiff's alleged emotional distress and damages caused by his actions (Dkt. 43 at ¶¶ 7-10, 39-53, 75-76); allegations regarding what "Omegle knew or should have known" with respect to use of its online chat service (*id.* at ¶ 63); or allegations included in the product liability claims that make no reference to any "legally protected interest" (*id.* at ¶¶ 77-100). The negligence-based product liability claims should be dismissed with prejudice based on Plaintiff's failure to meet even the threshold requirement for pleading an exception to the "impact rule" for those claims, much less the other pleading requirements set forth in *I.K.*

Plaintiff acknowledges her "failure to expressly connect the dots by stating a specific legally protected interest" for the negligence-based product liability claims, but characterizes this as "a pleading defect that may be corrected" and argues that her "complaint should not be dismissed with prejudice because she failed to do so." (Dkt. 50 at 33.) However, notwithstanding that Plaintiff had the benefit of full briefing on the motion to dismiss the FAC in which Omegle addressed this same issue, as well as the opportunity to amend her complaint again without seeking leave of court, Plaintiff made no attempt to correct this or any other defect in the product liability claims. The Court should dismiss these claims with prejudice.

## IV.    Plaintiff's New Negligence Claim Should Be Dismissed As A Matter Of Law

### A.    The negligence claim fails to plausibly allege that Omegle could reasonably foresee the harms caused by Fordyce's intervening criminal conduct

A plaintiff whose claim for negligence "is premised on general principles of foreseeability," as Plaintiff's new negligence claim is, must plausibly allege that "the defendant's

conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff[.]" *Chapman v. Mayfield*, 358 Or. 196, 205, 361 P.3d 566 (2015). "***[R]easonable*** foreseeability [is] a legal limit on the scope of defendants' liability" in negligence cases. *See Piazza v. Kellim*, 360 Or. 58, 73, 86, 377 P.3d 492 (2016) (emphasis added). As detailed below, Plaintiff has failed to meet her legal burden to allege the harm caused by Fordyce's intervening conduct was ***reasonably*** foreseeable to Omegle.

As an initial matter, Plaintiff argues that "[the court] generally commit[s] the question of foreseeability to the jury[,]" citing the Oregon Court of Appeals' recent decision in *F.T. v. W. Linn-Wilsonville Sch. Dist.*, 318 Or. App. 692, 701, 509 P.3d 655 (2022). (Dkt. 50 at 40.) *F.T.*, however, confirms that "legal liability for negligent acts is not without limits[.]" 318 Or. App. at 702. Citing *Piazza*, a case upon which Plaintiff heavily relies, the *F.T.* court explained that "the process of factually and normatively discerning foreseeability in any given case requires a broader focus than simply reviewing the predictability of the sequence of events that actually occurred." *F.T.*, 318 Or. App. at 702 (citing *Piazza*, 360 Or. at 81-82).

Accordingly, Oregon courts can, and do, dismiss negligence claims at the motion to dismiss stage after determining that the plaintiff has not plausibly alleged that the criminal acts of a third party were ***reasonably*** foreseeable to the defendant. For example, in *Stewart v. Kids Inc.*, the court affirmed the dismissal of a negligence claim arising from a minor's sexual assault by an adult at a fundraising event sponsored by the defendant. 245 Or. App. 267, 269, 261 P.3d 1272 (2011). The court held that "the harm that befell [the minor] was unforeseeable . . . as a matter of law," notwithstanding plaintiff's allegations that defendant "fail[ed] to have any system, or an adequate system, of control for the whereabouts of the children" attending the event and the allegation that "there was a 'reasonable probability' that sexual predators would come to the [event] to harm children." *Id.* at 270-71, 286. *See also Allstate Ins. Co. v. Tenant Screening Servs., Inc.*, 140 Or. App. 41, 51, 914 P.2d 16 (1996) (holding, in case where a landlord's new tenant sexually assaulted another tenant, that the complaint "failed to allege facts showing that [the assailant's] sexual attack" on his co-tenant was a "reasonably foreseeable

consequence of the [defendant background screening service's] alleged negligent representation that [the assailant] had a clear criminal record").

The facts of *F.T.* are instructive. The plaintiff sued a school district in which her minor son was enrolled, alleging that the district was liable "for harm caused by a teacher who sexually assaulted [the child] in [his] home." *F.T.*, 318 Or. App. at 694. The plaintiff alleged that "the district created a foreseeable risk" that the teacher "would sexually abuse minor high school males," including the plaintiff's son. *Id.* at 698 (internal quotation marks omitted). The court concluded that "[t]he record would permit a jury to conclude"[17] that, among other things, the teacher "exercised poor judgment in taking students to lunch" off-campus, "posting off-campus photos of students in his classroom," "being physically affectionate with his students," and "spen[ding] time with [plaintiff's son] and his friends outside of school," sometimes consuming alcohol "on those occasions." *Id.* at 695, 702-03. The plaintiff also argued that "the district had enough information to conclude that [the teacher] was grooming [plaintiff's son] for abuse, that [the district] did nothing to interrupt that grooming behavior, and that it was, thus, reasonably foreseeable that [the teacher] would sexually assault" the plaintiff's son. *Id.* at 704. The court nonetheless concluded that the teacher's "criminal assault" was not foreseeable, noting that "[i]t is significant that the assault" by the teacher "occurred away from school, at night, and in the home to which [the child's] parents had entrusted [him]" while he attended the school, and that the district was otherwise not involved in the circumstances that led to the assault outside school premises. *Id.* at 705-07.

In *F.T.*, the teacher's inappropriate relationships and "grooming" conduct with students were known to the school district and took place in the "real world," not online. Here, however,

---

[17] The court affirmed the summary judgment dismissal, rather than dismissing the case at the motion to dismiss stage. *F.T.*, 318 Or. App. at 694. However, since the Court may "assume [the] veracity" of "well-pleaded factual allegations" in the SAC, *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), *i.e.*, assume that there is "record evidence" supporting the facts as alleged by Plaintiff, *F.T.* is still informative here. Omegle, of course, does not concede that any allegations in the SAC, including the factual allegations, are well-pleaded or true.

DEFENDANT'S REPLY IN SUPPORT        33
OF MOTION TO DISMISS

Fordyce's contact with Plaintiff allegedly occurred online on a website that can have thousands (or more) users each day. Courts have questioned whether "a bricks-and-mortar business . . . is a good analogue to a social-network website that fosters connections online." *Dyroff v. Ultimate Software Group, Inc.*, No. 17-05359-LB, 2017 U.S. Dist. LEXIS 194524, *37 (N.D. Cal. Nov. 26, 2017), *aff'd*, 934 F.3d 1093 (9th Cir. 2019). This is because "[r]isk can be more apparent in the real world than in the virtual social-network world." *Dyroff*, 2017 U.S. Dist. LEXIS 194524 at *37. Nonetheless, even in the "real world" context of *F.T.* where the district was aware of the teacher's conduct, the court ***still*** held that the district could not reasonably foresee the unlawful sexual assault. *See generally F.T.*, 318 Or. App. at 695-707. Applying a broader standard of "reasonable foreseeability" to Omegle than the *F.T.* court applied to events that occurred in the "real world" is contrary to the principles that underlie Oregon negligence law, as set forth in *F.T.* The scope of foreseeable harms for which a defendant can potentially be liable is limited to ***reasonably*** foreseeable harms.

Plaintiff agrees that foreseeability must be "reasonable," (*see* Dkt. 50 at 39, 43), but provides no details as to why Omegle's conduct was "reasonably foreseeable," arguing only by "creating an anonymous and private chat site for adults and children[,]" "Omegle's conduct was "unreasonable." (Dkt. 50 at 46.) With respect to foreseeability, the SAC's allegation specific to the new negligence claim is conclusory: "Omegle unreasonably created a foreseeable risk of harm that its platform would injure Plaintiff and was negligent." (Dkt. 43 at ¶ 117.) This bare-bones allegation is insufficient to plausibly allege that Fordyce's criminal actions were ***reasonably*** foreseeable. Further, the exact nature of the purportedly foreseeable conduct is unclear. In one interest, Plaintiff argues that "[t]he harm-producing force is the ***matching***. And the ***matching*** is the negligence." (Dkt. 50 at 44 (emphasis added).) Elsewhere, however, Plaintiff argues that the SAC "alleges that [Omegle's] conduct created a foreseeable risk of harm that a

third-party would ***communicate*** with a child using the platform for improper sexual purposes."[18] (Dkt. 50 at 41 (emphasis added).)

"[B]eing charged with responsibility for all intervening intentional criminal conduct that might conceivably occur" is incompatible with "a foreseeability analysis that requires that a defendant, to be liable, must have *unreasonably* created the risk of the sort of harm to plaintiff that befell him." *Buchler v. State ex rel. Or. Corr. Div*, 316 Or. 499, 511, 853 P.2d 798 (1993). Plaintiff's response as to the legal effect of a third party's "intervening" criminal actions is that this legal principle does not apply "where the resulting criminality is the natural function of defendant's negligence and cannot be viewed as intervening." (Dkt. 50 at 44.) Plaintiff relies on *Washa v. Or. Dep't of Corr.*, 159 Or. App. 207, 979 P.2d 273 (1999), representing that the Oregon Court of Appeals held in *Washa* that where "the defendant can reasonably foresee likelihood of specific criminal conduct by a third party . . . the realization of that foreseeable likelihood cannot be deemed 'intervening' or 'supervening' causation that somehow precludes liability." (Dkt. 50 at 44.) The language Plaintiff omits from the *Washa* decision is telling; the court made clear that in cases where "the defendant can reasonably foresee likelihood of specific criminal conduct by a third party ***in light of the third party's criminal history and the defendant's knowledge of that history***, the realization of that foreseeable likelihood cannot be deemed 'intervening' or 'supervening' causation that somehow precludes liability." *See Washa*, 159 Or. App. at 224-25 (emphasis added). Here, Plaintiff makes no attempt to allege that Omegle had knowledge of "specific criminal conduct" by Fordyce, much less any knowledge of Fordyce's criminal history or Fordyce himself.

As detailed above, there is no bright-line rule that harm caused by a third party's criminal conduct can ***never*** be reasonably foreseeable to a defendant. But to avoid dismissal of a negligence claim, a plaintiff must plausibly allege that the third party's criminal acts were not

---

[18] Plaintiff's focus on the foreseeability of third parties' "communications" with children for "improper sexual purposes" is notable, considering that with respect to Omegle's argument that the new negligence claim is barred by Section 230, Plaintiff argues that her negligence claim is ***not*** "about communications between a child and a predator." (*See* Dkt. 50 at 49.)

only foreseeable to the defendant, but reasonably foreseeable, and Plaintiff has not met that pleading standard here.

**B.    The negligence claim should be dismissed because it does not sufficiently allege physical harm or any recognized exception to the "impact rule"**

Plaintiff's new negligence claim suffers from the same infirmity as her negligence-based product liability claims and her attempt to rehabilitate the negligence claim also fails. As detailed above, Plaintiff has not plausibly alleged that she has satisfied Oregon's well-established "impact rule," a prerequisite to recovery of emotional distress damages.

With respect to pleading a recognized exception to the "impact rule" specific to the negligence claim, the SAC alleges that "Plaintiff has a legally protected interest in being free from sexual exploitation and trafficking." (Dkt. 43 at ¶ 123.) Omegle does not dispute that children should not be sexually exploited or trafficked. Nor does Omegle dispute that Fordyce's actions were illegal or that he should have been, and was, held accountable for his criminal acts. However, the question before the Court is whether the SAC has met the pleading standard for invoking the "legally protected interest" exception to the "impact rule" with respect to the negligence claim *against Omegle*, a question that must be answered in the negative.

First, while the negligence claim includes an allegation identifying a general "legally protected interest," it does not allege how ***Omegle***, rather than Fordyce, violated that interest. (*See* Dkt. 43 at ¶¶ 113-124.) While Plaintiff argues that the importance of the interest is grounded in criminal law and in public policy, and that Fordyce "himself pleaded guilty" to offenses related to sexual exploitation of minors (Dkt. 50 at 31), whether an interest is "important" is different than the question of whether it is "legally protected" such that it supports a determination that it can be the basis for recovery of emotional distress damages against a particular defendant when the "impact rule" is not satisfied. *See Philibert*, 360 Or. at 705 (explaining that alleging how the alleged legally protected interest was violated is important because "***the nature and context*** of the invasion influences the extent to which [the interest] is legally protected and can be the basis for a successful emotional distress claim") (emphasis

added). Plaintiff argues that in *I.K.*, "the court rejected the defendant's argument" that the purported interest "should not be recognized because it was a third-party rather than the defendant itself" who allegedly violated that interest. (Dkt. 50 at 31.) Plaintiff ignores, however, that the *I.K.* court expressly stated that "[its] holding in this case is limited, as *Philibert* instructs, to the 'nature and context' . . . of the circumstances of this case[,]" specifically, "an employee's legally protected interest in being free from an employer's negligence in failing to take appropriate steps" to ensure its employees did not experience "the emotional trauma of being secretly video recorded in a state of undress while using a supposedly private employee restroom." *See I.K.*, 317 Or. App. at 264. An employer's duty to its employees is well-grounded in Oregon law which "already recognizes an employer's liability for negligent hiring and retention based on the sexual misconduct of its employees." *See id.* The Oregon Court of Appeals concluded that its decision in *I.K.* would not result in "indeterminate liability" because it was recognizing a "narrowly prescribed legally protected interest" in a specific context, the employer-employee relationship. *Id.*

The "legally protected interest" Plaintiff urges the Court to recognize is not "narrowly prescribed" as *I.K.* requires in light of the "nature and context" of this case. For example, although Plaintiff alleges a legally protected interest "in being free from sexual exploitation and trafficking," as the discussion of Plaintiff's fatally flawed TVPA claim demonstrates, she fails to plausibly allege that ***Omegle*** violated that interest (as opposed to Fordyce). Rather, her assertion, more accurately stated, appears to be akin to an alleged legally protected interest in being protected from sexual exploitation and trafficking by others. But there is no authority suggesting such an interest giving rise to a duty owed by websites to their users. To the contrary, caselaw indicates that no such duty exists. Unlike the well-established law governing the employer-employee relationship at issue in *I.K.*, Plaintiff points to no authority supporting a more general duty by websites to their users. *See Dyroff*, 2017 U.S. Dist. LEXIS 194524 at *36-40 (finding no special relationship between a website and its users to support a duty to warn and no other ground to impose an ordinary duty of care); *see also Ginsberg v. Google Inc.*, No. 21-cv-00570-

BLF, 2022 U.S. Dist. LEXIS 30166, *21-22 (N.D. Cal. Feb. 18, 2022) (finding that Google did not owe a general duty of care for hosting the Telegram app on the Google Play Store that was allegedly used to incite violence against African Americans and Jews); *M.L.*, 2020 U.S. Dist. LEXIS 166836 at *38 (finding, in recommending dismissal of negligence claim against craigslist, that there was no authority for "the proposition that craigslist has a general duty to ensure that [its] website does not endanger minors").[19] Thus, the SAC does not sufficiently allege how Omegle – as opposed to Fordyce – violated the legally protected interest Plaintiff alleges. *See also Philibert*, 360 Or. at 704 (explaining that "foreseeable emotional damages" may be available "when ***the defendant's conduct*** infringed some legally protected interest") (emphasis added and internal quotation marks omitted); *Nearing v. Weaver*, 295 Or. 702, 707, 670 P.2d 137 (1983) (characterizing the question the court decided as "whether plaintiffs pleaded ***an infringement by defendants*** of a legal right arising independently of the ordinary tort elements of a negligence action") (emphasis added).

Second, while the SAC alleges that Omegle "unreasonably created a foreseeable risk of harm that its platform would injure Plaintiff and was negligent" and that "Omegle failed to take reasonable measures to provide users with a service more useful than foreseeably dangerous" (Dkt. 43 at ¶¶ 115, 117), Oregon law is clear that for the "legally protected interest" exception to apply, the interest must be "***separate from the general duty to avoid foreseeable risk of harm***." *Philibert*, 360 Or. at 704 (internal quotation marks omitted and emphasis added). Even assuming the negligence claim sufficiently alleged how *Omegle* violated the legally protected interest – which it does not – the claim does not delineate how that interest is distinct from the "general duty to avoid foreseeable risk of harm" that is an element of every negligence claim.

---

[19] Notably, the court also concluded that (1) the TVPA did not create a statutory duty for websites to "take the affirmative step to ensure that third parties are not using their websites for sex trafficking" and (2) in any event, such a negligence claim based on such an alleged duty under the TVPA would be barred by Section 230 because the claim alleged that "craigslist breached [its] duty because [it] knew or should have known that traffickers were using [its] website and took no steps to protect children." *M.L.*, 2020 U.S. Dist. LEXIS 166836 at *39.

Finally, the SAC does not sufficiently allege that Plaintiff's emotional distress "was the foreseeable result of the violation of the legally protected interest[,]" separate and apart from emotional distress allegedly resulting from Omegle's purported creation of a foreseeable and unreasonable risk of legally cognizable harm to Plaintiff. *See I.K.*, 317 Or. App. at 255 (explaining that a plaintiff attempting to establish an exemption from the "impact rule" must not only "alleg[e] the violation of a legally protected interest" of "sufficient importance" but the court "must determine whether the complaint alleges that the emotional distress was the foreseeable result of the violation of the legally protected interest").

For these reasons, Plaintiff's new negligence claim should be dismissed as a matter of law because she has not met her burden to plausibly allege she is entitled to recover emotional distress damages.

## CONCLUSION

Omegle respectfully requests that the SAC be dismissed in its entirety. Moreover, notwithstanding Plaintiff's non-specific request for leave to amend (*see* Dkt. 50 at 49), amendment would be futile due to the fatal flaws described herein, including Plaintiff's failure to correct the deficiencies in the TVPA claim despite effectively two opportunities to do so.

Dated this 30th day of September, 2022.    Respectfully submitted,

FOCAL PLLC    SNELL & WILMER, LLP

By: s/ *Stacia N. Lay*    By: s/ *Clifford S. Davidson*
    s/ *Kimberlee Gunning*    Clifford S. Davidson, OSB #125378
    Venkat Balasubramani, OSB #180446    1455 SW Broadway, Suite 1750
    Stacia N. Lay, WSBA #30594 (PHV)    Portland, Oregon 97201
    Kimberlee Gunning, WSBA #35366 (PHV)    Telephone: (503) 624-6800
    900 1st Avenue S., Suite 201    csdavidson@swlaw.com
    Seattle, Washington 98134
    Telephone: (206) 529-4827
    venkat@focallaw.com
    stacia@focallaw.com
    kim@focallaw.com

*Attorneys for Defendant Omegle.com LLC*

DEFENDANT'S REPLY IN SUPPORT    39
OF MOTION TO DISMISS