IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**A.M.,**

                Plaintiff,                              No. 3:21-cv-01674-MO

v.

**OMEGLE.COM LLC,**                               **OPINION AND ORDER**

                Defendant.

**MOSMAN, J.,**

      Harassed and blackmailed as a pre-teen into three years of sending a predator obscene content, Plaintiff A.M. brings this products liability case against Defendant Omegle.com, a video-chat website primarily used for online sexual rendezvous. Defendant moved to dismiss Plaintiff's Second Amended Complaint ("SAC") [ECF 43]. Motion to Dismiss [ECF 49]. At oral argument, I denied the motion as to Claims One, Two, Three, and Four. I took Claims Five and Six under advisement. Mins. of Proceeding [ECF 62]. For the reasons below, I DENY the Motion to Dismiss as to Claim Five and GRANT it as to Claim Six. I also further expand on my oral ruling as to Claims One, Two, Three, and Four.

1 – OPINION AND ORDER

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading that offers only "labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). While the plaintiff does not need to make detailed factual allegations at the pleading stage, the allegations must be sufficiently specific to give the defendant fair notice of the claim and the grounds on which it rests. *Id.*

## DISCUSSION

### I. Claims One, Two, Three, and Four

Claims One, Two, Three, and Four of the SAC are identical to the original complaint. They allege product liability claims for defective design (Claim One), defective warning (Claim Two), negligent design (Claim Three), and failure to warn or provide adequate instruction (Claim Four). Defendant moved to dismiss these same claims as part of the original complaint, contending they were barred by immunity under 47 U.S.C. § 230. *See* Mot. to Dismiss [ECF 17]. I denied Defendant's motion as to these claims. Op. and Order [ECF 36]. Defendant now moves to dismiss these claims again based on § 230 and also adds arguments about the substance of Oregon product liability law.

Given that Defendant made the same § 230 arguments about the same claims before and lost, no different result is achieved here. As to Defendant's new arguments, Plaintiff contends that Federal Rule of Civil Procedure 12(g)(2) bars any new objections as to these claims. Rule 12(g)(2) forbids a party from making a subsequent Rule 12 motion that raises a defense or objection that "was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). Here,

Defendant could have made these product liability law arguments in its first motion to dismiss. So on its face, Rule 12(g)(2) would appear to immediately bar Defendant's successive motion on these claims.

However, the Ninth Circuit has interpreted Rule 12(g)(2) in the light Rule 1. *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 317–20 (9th Cir. 2017). Rule 1 directs that all of the Federal Rules be construed to secure the "just" and "speedy" determination of every action and proceeding. Fed. R. Civ. P. 1. I must therefore also weigh whether applying Rule 12(g)(2) in this case would enhance the efficiency and fairness of this proceeding.

Here, both efficiency and fairness counsel in favor of applying Rule 12(g)(2). Defendant had the opportunity to raise its new objections to these claims in its initial motion to dismiss. Allowing these arguments in a subsequent motion would encourage defendants to raise only one set of arguments at a time, hoping to find one that succeeded. This would give defendants multiple chances to dismiss a complaint on different grounds. Such gamesmanship would be unfair to plaintiffs. It would also be inefficient. Two rounds of briefing and arguments are less time- and cost-effective than one. Furthermore, Defendant's arguments are not waived; they can be raised again later in the action. *See* Fed. R. Civ. P. 12(h)(2). For these reasons, and those given at oral argument, I DENY the Motion to Dismiss as to Claims One, Two, Three, and Four.

## II. Claim Five

### A. Plaintiff's Modifications

Plaintiff's Claim Five alleges a violation of 18 U.S.C. § 1595. Section 1595 provides a civil remedy for violations of 18 U.S.C. § 1591, Sex Trafficking of Children by Force, Fraud, or Coercion. This claim was Claim Six in Plaintiff's first complaint. Previously, I had ruled that this claim needed to be re-pled to adequately reflect the necessary mens rea: "actual knowledge" was

required. Op. and Order [ECF 36] at 10. In addition, I found Plaintiff's allegations as to venture and profit to be inadequate. *Id.* at 11–12. Plaintiff re-pled this claim in the SAC. She added new language stating that Defendant "knowingly introduces children to predators causing children to be victims of sex acts." SAC ¶ 104. She also now alleges that "[u]pon information and belief," Defendant Omegle:

> knew that predators frequented the website for the purpose of meeting children and engaging in child sexual exploitation. . . . [Defendant] knew that children were using the website and being matched with predators. In light of this known risk, Omegle's active solicitation of predators and children constitutes active and knowing participation in the sex trafficking of children.

*Id.* ¶ 107.

### B. Analysis

Since my earlier opinion on this claim, the Ninth Circuit decided *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137 (9th Cir. 2022). That decision requires a plaintiff to allege that a website's own conduct violated § 1591 in order for her claims to overcome § 230 immunity. *Id.* at 1141. *Reddit* analyzed § 1591(a)(2), which punishes anyone who "*knowingly* . . . benefits, financially or by receiving anything of value, from participation in a venture which has engaged in [a sex trafficking act under (a)(1)], *knowing* . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." *Reddit, Inc.*, 51 F.4th at 1145 (quoting 18 U.S.C. § 1591(a)(2)) (emphasis added). "Participation in a venture" is further defined to mean "*knowingly* assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4) (emphasis added).

4 – OPINION AND ORDER

As is evident from the statutory language, a claim under (a)(2) requires knowledge by the beneficiary. The *Reddit* court stressed this element. It noted that the defendant "must have actually engaged in some aspect of the sex trafficking." *Reddit, Inc.*, 51 F.4th at 1145. "[A]ssociation with sex traffickers is insufficient absent some knowing 'participation' in the form of assistance, support, or facilitation." *Id.* Companies that merely "turn a blind eye to the source of their revenue" cannot be held liable under (a)(2). *Id.* Instead, they must be "knowingly benefitting from participation in such a venture," which requires "actual knowledge." *Id.*

The *Reddit* court concluded that Reddit did not actively participate in sex trafficking because those plaintiffs did not "allege a connection between the child pornography posted on Reddit and the revenue Reddit generates, other than the fact that Reddit makes money from advertising all popular subreddits." *Id.* at 1145–46. To successfully plead liability for sex trafficking, plaintiffs must allege "far more active forms of participation" than merely having some users share and sell child pornography. *Id.* at 1146.

However, what plaintiffs pled in *Reddit* is somewhat different from what Plaintiff pleads here. As counsel for Plaintiff noted at oral argument, § 1591 provides for two types of liability. Tr. [ECF 63] at 7–8. And she argued that Defendant "actually actively engaged in sex trafficking"—that Defendant itself violated (a)(1)—in addition to being an (a)(2) beneficiary. *See id.* ("In our claim which we pled, we are seeking direct liability, not just beneficiary liability like we saw in *Reddit*. We're saying not just that Omegle benefited from the trafficking in terms of users being attracted to the website and them making advertising revenue off of that, but they actually actively engaged in sex trafficking.").

As described above, § 1591(a)(2) requires a separate violation of (a)(1), which then the defendant violating (a)(2) knowingly benefits from. In *Reddit*, the users who sold child

5 – OPINION AND ORDER

pornography were engaging in the (a)(1) violation. Reddit was alleged to have violated (a)(2) by knowingly participated in those sales. Here, Plaintiff alleges that Defendant itself violated (a)(1) as well as (a)(2). I must therefore decide if Plaintiff has pled sufficient facts to allege that Defendant "knowingly . . . recruits, entices, . . . provides, obtains, . . . or solicits by any means a person . . . knowing, or . . . in reckless disregard of the fact[,] . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act[.]" 18 U.S.C. 1591(a)(1). Because this language was not interpreted in *Reddit*, I must engage in statutory interpretation to determine if Plaintiff has carried her burden.

The statute contains two mens rea elements. *See generally United States v. Collazo*, 984 F.3d 1308, 1324–25 (9th Cir. 2021) (describing how to apply mens rea elements in statutes). First, Defendant here must have "knowingly" recruited, enticed, provided, obtained, or solicited "by any means" a person. This element is met in this case. Plaintiff alleges that Defendant invites users to "Talk to Strangers!" and "markets its product to children as young as 13." SAC ¶¶ 2, 4. It is a global video chat site with about 66 million monthly visits. *Id.* ¶ 18. The SAC also alleges that Defendant's revenue model appears to be based on selling user data, *id.* ¶ 31, so the more users it can "recruit," "entice," "obtain," or "solicit," the better. Furthermore, since these terms are broadened by the language "by any means," Defendant's actions certainly qualify. *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 516 (S.D.N.Y. 2018) (citing *United States v. Todd*, 627 F.3d 329, 336 (9th Cir. 2010) (Smith, M., concurring)).

The statute, as pled here, also requires that this recruiting of persons must take place "knowing[]" or "in reckless disregard of" two facts. First, that the person recruited is under 18 years old. Second, that the person "will be caused to engage in a commercial sex act." Plaintiff alleges throughout the SAC that Defendant allows those 13 years old and older to use its website.

6 – OPINION AND ORDER

*See, e.g.*, SAC ¶¶ 4, 29, 32. Defendant therefore clearly knows that some of the persons it recruits or solicits are under 18. So all that is left is whether the SAC alleges that Defendant knew—or was "in reckless disregard of the fact"—that some of the under-18 persons it recruits or solicits "will be caused to engage in a commercial sex act."

"Omegle's most regular and popular use is for live sexual activity . . . [and it] is aware that users engage in sexual and masturbatory conduct on their platform." SAC ¶¶ 5–6. *See also id.* ¶¶ 25, 31, 33. So the SAC clearly alleges that Defendant knows that its website is frequently used for sex acts. It also alleges that some of the under-18 persons it solicits have been caused to engage in sex acts. For example, the SAC cites to multiple news articles detailing stories of minors being exploited or abused through Omegle. *See, e.g., id.* ¶ 64. These stories took place even before the horrific events involving Plaintiff occurred. Defendant also had a warning on its website for over half a decade that declared: "Predators have been known to use Omegle." *Id.* ¶ 65. This warning alone is sufficient to allege that Defendant knew or was in reckless disregard of the fact that some of the minors it solicited would be caused to engage in sex acts.

However, the statute also requires the sex acts to be "commercial," which it defines as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C § 1591(e)(3). Every court to have considered this definition in depth has found that it should be read broadly. *See, e.g., United States v. Raniere*, 55 F.4th 354, 361 (2d Cir. 2022) (noting that the use of the word "any" three times in the definition compels the broadest possible meaning). So here, although the predators who have used Omegle have not paid Omegle to abuse children (as would be typical of a standard sex trafficking case), the SAC does allege that Omegle receives compensation from advertisers, who chose to advertise on Omegle because of the sexual activity they know occurs on the site. SAC ¶¶ 31–32. Omegle receives this compensation while at the

7 – OPINION AND ORDER

same time engaging in a series of business practices that it recklessly disregards, or knows, will result in minors being exposed to sexual harm.

These practices are fully alleged in the SAC. Children as young as 13 are allowed to use Defendant's website. But Omegle does not use any typical social media safety measures such as requiring registration, names, or age verification. They also distribute their product directly (i.e., via its website) rather than by a downloaded app. These two features of the product make it difficult to trace users. The SAC alleges that this enables those younger than 13 to use Omegle, and it also allows predators—who know that Omegle can and is used by minors—to use Omegle with lessened fear of detection. In addition, Omegle, by not seeking age verification information, matches minors and adults for video chats and does not separate these two groups. On top of all this, the SAC alleges that Omegle encourages users to talk to strangers, advertises pornography to all its users (children and adults), and then tells users that their video streaming is unmoderated. *See* Tr. [ECF 63] at 8–9 (counsel for Plaintiff accurately summarizing the allegations in the SAC).

Defendant could make changes that would minimize predators' access to children. For example, Omegle could require age verification and forbid minors from use, separate minors and adults, or more thoroughly track and monitor its users. It does not. Given the very structure of the platform, and Omegle's business model, I find that Plaintiff has sufficiently alleged that Omegle knew or recklessly disregarded the fact that it was receiving compensation from advertisers on account of the sex acts taking place on its website, some of which involved minors.

To draw a comparison, imagine a hotel that randomly pairs its guests into shared rooms. Its rooms are free. It receives numerous guests, advertises, and is known worldwide. But it asks for no identification from any of its guests and does not verify even their ages. And it pays its bills

by advertising sex shops and strip clubs throughout its facilities. It also receives not-infrequent reports of child exploitation taking place on its premises.

If a plaintiff pled the existence of such an establishment, or a similar one, it would be sufficient to make out a claim for relief under § 1591(a) and § 1595 and survive dismissal. *See, e.g., Ricchio v. McLean*, 853 F.3d 553, 558 (1st Cir. 2017) (Souter, J., sitting by designation) (denying a hotel's motion to dismiss such claims against it); *S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1258 (M.D. Fla. 2020) (same); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 974 (S.D. Ohio 2019) (same). There is no reason the same should not be true of a virtual establishment.

In sum, I find that Plaintiff has alleged enough facts at this stage to deny dismissal of her claim that Defendant knowingly solicits persons knowing, or in reckless disregard of the fact, that some of those persons are under 18 and will be caused to engage in a commercial sex acts. *See* 18 U.S.C. § 1591(a)(1); *id.* § 1595.

I further find that Plaintiff's claim under 18 U.S.C. § 1591(a)(2) also states a claim upon which relief can be granted and therefore survives Defendant's motion to dismiss, even accounting for *Reddit*. Unlike Reddit's website, Plaintiff has alleged that Omegle's primary use is for online sexual content. Indeed, the products are highly dissimilar. Reddit is used to create groups and threads, while Omegle pairs users one-on-one. Omegle sets up video calls with other users, rather than the asynchronous communication possible via messaging on Reddit. These two differences between the products create a massive gap in their use by predators. Video is inherently more intimate than text messaging, and one-on-one calls present a much great opportunity for coercion than group communications not in real time. Plaintiff's contentions regarding the lack of safeguards and the ease of use by both minors and sexual predators detailed in the discussion above

further differentiate this case from *Reddit*. *See generally Doe #1 v. MG Freesites*, LTD, No. 7:21-CV-00220-LSC, 2022 WL 407147 (N.D. Ala. Feb. 9, 2022) (making similar determinations regarding PornHub).

In short, I find that Plaintiff has alleged that Omegle did knowingly facilitate sexual encounters between minors and adults, and that it benefited in that venture through receiving advertising revenue. Plaintiff successfully contends that Defendant did more than "turn a blind eye to the source of their revenue." *Reddit, Inc.*, 51 F.4th at 1145. Defendant's entire business model, according to Plaintiff, is based on this source of revenue. These allegations meet the "far more active form of participation," *id.* at 1146, required to survive this stage of the proceedings. *See also Canosa v. Ziff*, No. 18 CIV. 4115 (PAE), 2019 WL 498865, at *24 (S.D.N.Y. Jan. 28, 2019) (denying a motion to dismiss claims against companies associated with Harvey Weinstein because of a "symbiotic relationship" between Weinstein, a predator, and the related companies)

## III. Claim Six

Plaintiff also brings a new negligence claim against Defendant, Claim Six. The claim is in the alternative, if Omegle is not a "product" under Oregon law. Plaintiff contends that Defendant failed to exercise reasonable care to provide a safe service. SAC ¶¶ 114–15. By advertising the product to both children and adults and randomly pairing users, Defendant unreasonably created a foreseeable risk of harm to Plaintiff. *Id.* ¶¶ 116–120. In particular, by matching minors with adults and knowing or having reason to know that predators were likely to use the platform, Omegle caused Plaintiff's abuse. *Id.* ¶¶ 121–24.

Defendant moves to dismiss this claim base on § 230 immunity. 47 U.S.C. § 230(e)(3) ("No cause of action may be brought . . . under any State . . . law that is inconsistent with this section."). I previously found that Plaintiff's *product liability* claims do not rest on treating

10 – OPINION AND ORDER

Defendant as the publisher or speaker of third-party content. Op. and Order [ECF 36] at 5–8; *Gonzalez v. Google LLC*, 2 F.4th 871, 891 (9th Cir. 2021) (noting this is an element of a § 230 defense). There is also an exception to § 230 immunity for claims under § 1591. 47 U.S.C. § 230(e)(5)(A).

In Claim Six, Plaintiff seeks to hold Defendant responsible for the service of "matching" and "pairing" adults with children. SAC ¶¶ 118, 120. But of course, it is not just that Defendant matches these sets of persons and leaves it up to them to figure out a way to communicate with each other. Defendant also provides a means for them to communicate with each other by publishing their communications to each other. *See, e.g.*, Pl.'s Resp. to Mot. to Dismiss [ECF 50] at 33 ("Defendant's conduct [the service] created a foreseeable risk of harm that a third-party would communicate with a child using the platform [the product] for improper sexual purposes."). The service of matching people would be useless if they could not communicate.

In short, the service that Defendant provides is twofold: both matching and publishing. Seeking to hold an interactive computer service provider liable for publishing information provided by a user of the product falls directly into § 230's ambit. *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016). So while Plaintiff's product liability claims may move forward, her negligent service claims may not. *See also Two Two v. Fujitec Am., Inc.*, 355 Or. 319, 334 (2014) (drawing a line between negligent service and product liability claims in Oregon law).

## CONCLUSION

For the reasons discussed above and on the record at oral argument on December 6, 2022, I DENY Defendant's Motion to Dismiss [ECF 49] as to Claim Five and GRANT it as to Claim Six.

IT IS SO ORDERED.

DATED this 2d day of February, 2023.

_____
MICHAEL W. MOSMAN
Senior United States District Judge