Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
Lea K. Schneider, OSB No. 145154
lschneider@swlaw.com
SNELL & WILMER L.L.P.
601 SW 2nd Ave, Suite 2000
Portland, Oregon 97204
Telephone: 503.624.6800
Facsimile:  503.624.6888

Attorneys for Defendant Omegle.com LLC

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| A.M., an individual,<br><br>   Plaintiff,<br><br>vs.<br><br>OMEGLE.COM LLC,<br><br>   Defendant. | Case No. 3:21-CV-01674-MO<br><br>DEFENDANT OMEGLE.COM LLC'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT |

### L.R. 7-1 CERTIFICATION

Defendant certifies that the parties conferred by telephone and did not resolve this motion.

### MOTION

Defendant Omegle.com LLC hereby moves for summary judgment, or partial summary judgment, as follows: (1) Michigan law applies to Plaintiff's product liability claims and, pursuant to Michigan law, (a) those claims are time-barred, (b) non-economic damages are capped at $280,000, and (c) punitive damages are unavailable; and (2) the trafficking claim should be dismissed. This motion is based on the following Memorandum, the Declarations of Leif K-Brooks and Lea K. Schneider, the Court's files, matters subject to judicial notice, and

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

such further evidence or argument as Defendant might offer in reply or at any hearing on this

Motion.

Page 2 - DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. SUMMARY JUDGMENT STANDARD ............................................................ 2

III. THE COURT SHOULD DISMISS THE PRODUCT LIABILITY CLAIM, OR
LIMIT DAMAGES THAT PLAINTIFF MAY RECOVER THROUGH IT ........................ 2

    A.    Oregon conflict-of-law/choice-of-law principles require application of
Michigan product liability law in this case. ........................................ 3

        1.    Michigan law and Oregon law conflict in material respects ..................... 3

        2.    Oregon's choice-of-law statutes require applying Michigan law to
Plaintiff's product liability claims. ............................................. 7

            a.    ORS 15.435(1) does not require application of Oregon
product liability law. ................................................ 8

            b.    Because ORS 15.435(1) does not require applying Oregon
law, the Court applies ORS 15.445. ............................... 8

            c.    Pursuant to ORS 15.445, Michigan law applies to
Plaintiff's product liability claim. .................................. 9

    B.    Plaintiff's product liability claim is time-barred pursuant to Michigan law ........ 11

    C.    Plaintiff's damages are capped at $280,000 pursuant to Michigan law. ............. 12

    D.    Pursuant to Michigan law, Plaintiff cannot recover punitive damages. .............. 12

IV. THE COURT SHOULD DISMISS THE TRAFFICKING CLAIM. .................................. 13

    A.    Statutory background for civil liability under 18 U.S.C. §§ 1591 and 1595. ...... 13

    B.    Plaintiff's Section 1595 claim fails under either a direct or beneficiary
liability theory. ..................................................................... 15

        1.    Omegle did not commit federal sex trafficking under Section
1591(a)(1), nor could a rational jury conclude that it did. ...................... 16

        2.    Omegle did not knowingly benefit from knowingly participating in
child sex trafficking and so did not violate Section 1591(a)(2). ................. 19

V. CONCLUSION ................................................................................................ 22

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

# TABLE OF AUTHORITIES

**Page(s)**

## OTHER AUTHORITIES

*Banuelos Rios v. Ford Motor Co.*,
  No. 05-0019 CO, 2006 WL 2950474 (D. Or. Oct. 16, 2006) .................................................. 10

*Canosa v. Ziff,*
  2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ................................................................. 20, 21

*Casey v. Auto Owners Ins. Co.,*
  273 Mich. App. 388, 729 N.W.2d 277 (2006) ....................................................................... 7

*Celotex Corp. v Catrett,*
  477 U.S. 317 (1986) ................................................................................................................. 2

*Danziger v. Ford Motor Co.*,
  402 F. Supp. 2d 236 (D.D.C. 2005) ..................................................................................... 10

*Doe #1 v. Twitter,*
  2023 WL 3220912 (9th Cir. May 3, 2023) ..................................................................... 15, 18

*Doe v. Backpage,*
  817 F.3d 12 (1st Cir. 2016) ................................................................................................... 13

*Doe v. Jayark Corp.,*
  84 F. Supp. 3d 609 (E.D. Mich. 2015) ................................................................................... 7

*Does 1–6 v. Reddit, Inc.,*
  51 F. 4th 1137 (9th Cir. 2022) ...................................................................................... passim

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC,*
  521 F.3d 1157 (9th Cir. 2008) .............................................................................................. 13

*Geiss v. Weinstein Company Holdings, LLC,*
  383 F.Supp.3d 156 (S.D.N.Y. 2019) .................................................................................... 21

*Gilbert v. DaimlerChrysler Corp.,*
  470 Mich. 749, 685 N.W.2d 391 (2004) ............................................................................... 12

*Greene v. A.P. Products, Ltd.*,
  475 Mich. 502 (Mich. 2006) ................................................................................................... 6

*Gregory v. Cincinnati Inc.*,
  538 N.W.2d 325 (Mich. 1995) ........................................................................................... 5, 12

*Hammons v. Icon Health & Fitness,*
  616 F. Supp. 2d 674 (E.D. Mich. 2009) ................................................................................. 5

*In re FCA USA LLC Monostable Electronic Gearshift Litigation,*
  598 F. Supp. 3d 639 (E.D. Mich. 2022) ............................................................................ 9, 10

*J.B. v G6 Hosp., LLC,*
  2021 WL 4079207 (N.D. Cal. Sept. 8, 2021) ...................................................................... 18

*J.B. v. Craiglist, Inc.,*
  2023 WL 3220913 (9th Cir. May 3, 2023) ........................................................................... 15

*Jilson v. Elrod*,
  No. 21-cv-11878, 2022 WL 17683111 (E.D. Mich. Dec. 12, 2022) ...................................... 10

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*M.H. v. Omegle.com, LLC,*
  2022 WL 93575 (M.D. Fla. Jan. 10, 2022) ............................................................. 13

*Mason v. Mt. St. Joseph, Inc.,*
  226 Or. App. 392 (2009) ............................................................................................ 5

*Noble v. Weinstein,*
  335 F.Supp.3d 504 (S.D.N.Y. 2018) ................................................................. 20, 21

*Parkinson v. Novartis Pharms. Corp.,*
  5 F. Supp. 3d 1265 (D. Or. 2014) ............................................................................. 6

*Peter v. Stryker Orthopaedics, Inc.,*
  581 F. Supp. 2d 813 (E.D. Mich. 2008) ................................................................. 11

*Peterson v. C R Bard Inc.,*
  No. 3:19-CV-01701-MO, 2021 WL 799305 (D. Or. Mar. 2, 2021) ...................... 4, 9

*Portfolio Recovery Assocs., LLC v. Sanders,*
  292 Or. App. 463 (2018) ............................................................................................ 4

*Powell v. Equitable Sav. and Loan Ass'n,*
  57 Or. App. 110 (1982) ........................................................................................... 10

*Purdy v. Deere & Co.,*
  311 Or. App. 244 (2021) ............................................................................................ 5

*Rice v. United Parcel Serv. Gen. Servs. Co.,*
  43 F. Supp. 2d 1134 (D. Or. 1999) ......................................................................... 10

*Russell v. Deere & Co.,*
  186 Or. App. 78 (2003) .............................................................................................. 6

*Sierra Med. Servs. All. v. Kent,*
  883 F.3d 1216 (9th Cir. 2018) ................................................................................... 2

*Smith v. Ethicon, Inc.,*
  No. 3:20-cv-00851-MO, 2022 WL 1799807 (D. Or. June 2, 2022) ...................... 3, 4

*Sylvania v. Ford Motor Co.,*
  2008 Mich. App. LEXIS 2071 (Mich. App. Oct. 21, 2008) ...................................... 5

*Trentadue v. Gorton,*
  479 Mich. 378 (2007) .............................................................................................. 11

*Twitter v. Taamneh,*
  143 S.Ct. 1206 (2023) .............................................................................................. 15

*United States v. Afyare,*
  632 F.App'x 272 (6th Cir. 2016) ............................................................................. 20

*United States v. Brooks,*
  610 F.3d 1186 (9th Cir. 2010) ........................................................................... 16, 17

*United States v. Hung,*
  2019 WL 5862393 (E.D. Cal. Nov. 8, 2019) .......................................................... 17

*United States v. Todd,*
  627 F.3d 329 (9th Cir. 2010) ................................................................................... 17

*United States v. Wearing,*
  865 F.3d 553 (7th Cir. 2017) ................................................................................... 17

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

# TABLE OF AUTHORITIES
(continued)

Page(s)

*W. Helicopter Servs., Inc. v. Rogerson Aircraft Corp.*,
  728 F. Supp. 1506 (D. Or. 1990) ................................................................... 10

## STATUTES

18 U.S.C. § 1591 ........................................................................................ passim
18 U.S.C. § 1591(a) ........................................................................................ 15
18 U.S.C. § 1591(a)(1) ............................................................................... passim
18 U.S.C. § 1591(a)(2) ............................................................................... passim
18 U.S.C. § 1591(e)(3) .................................................................................... 17
18 U.S.C. § 1591(e)(4) .................................................................................... 13
18 U.S.C. § 1595 ........................................................................................ passim
18 U.S.C. § 1595(a) ........................................................................................ 12
18 U.S.C. § 1595(b) ........................................................................................ 16
18 U.S.C. § 2251 ............................................................................................ 17
18 U.S.C. § 2252 ............................................................................................ 17
18 U.S.C. § 2333(d)(2) .................................................................................... 14
18 U.S.C. § 2423 ............................................................................................ 15
18 U.S.C. § 2423(a) ................................................................................... 15, 17
18 U.S.C. § 2423(b) and (c) ............................................................................. 17
47 U.S.C. § 230 ........................................................................... 12, 13, 17, 20
47 U.S.C. § 230(c)(5) ................................................................................ 12, 13
47 U.S.C. § 230(e)(5)(A) ................................................................................. 13
M.C.L. § 600.2946a ................................................................................... 6, 11
M.C.L. § 600.2959 ........................................................................................... 6
M.C.L. § 600.5805(12) .................................................................................... 10
M.C.L. § 600.5805(6) ...................................................................................... 10
M.C.L. § 600.5827 .......................................................................................... 10
M.C.L. § 600.5851(1) ................................................................................ 10, 11
M.C.L. § 600.5805(13) ...................................................................................... 6

## RULES

Fed. R. Civ. P. 56(a) ........................................................................................ 2

## OTHER AUTHORITIES

11 Mich. Pl. & Pr. § 81A:29 (2d ed.) ................................................................ 5
20 Mich. Civ. Jur. Products Liability § 17 .......................................................... 4
7 Mich. Civ. Jur. Damages § 160 ...................................................................... 6
*An Overview of the Legal Standard Regarding Product Liability Design Defect Claims and A
  Fifty State Survey on the Applicable Law in Each Jurisdiction*,
  82 Def. Couns. J. 80 (2015) .......................................................................... 4

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

Ninth Circuit Model Criminal Jury Instruction 20.25 ................................................................. 15

*Too Far and Not Enough: Understanding the Impact of FOSTA,*
   94 NYULR 1623.................................................................................................................. 12

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

# I.

## **INTRODUCTION**

Omegle's conduct as it relates to Plaintiff's claims is limited to its random pairing, once, of Plaintiff with Scott Fordyce ("Fordyce") in 2014, when Plaintiff was a minor. During their only communication on Omegle, Plaintiff exchanged written messages with Fordyce for approximately fifteen minutes. Unfortunately, during that brief exchange of text only, Plaintiff disclosed her contact information so that Fordyce could contact Plaintiff directly—something Fordyce otherwise could not have done because Omegle users are anonymous. In the ensuing years, and as Canadian prosecutors demonstrated, Fordyce obtained from Plaintiff illegal photographs and videos of herself using platforms outside of Omegle. To Omegle's knowledge, Plaintiff has not pursued claims against either Fordyce or the Internet platforms through which he demanded and received illegal materials.

Again: Plaintiff did not use Omegle to send photographs or videos to Fordyce, nor did Fordyce use Omegle to request them from Plaintiff. And Plaintiff did not use Omegle's video chat function with Fordyce.

Plaintiff has framed her lawsuit as sounding in product liability and trafficking. Both such theories fail. Regarding her product liability theory: even assuming for the sake of argument that Plaintiff can establish Omegle is a product, Michigan product liability law governs under Oregon choice-of-law principles. Applying Michigan law, Plaintiff's product liability claim is time-barred.[1] Alternatively, under Michigan law and with respect to the product liability claim, Plaintiff's noneconomic damages are capped at $280,000 and punitive damages are unavailable.

Further, Plaintiff's trafficking claim under 18 U.S.C. § 1591 fails because there is no evidence that Omegle recruited Plaintiff to engage in a commercial sex act; knew another user would cause her to engage in a commercial sex act; or knowingly benefitted from knowing participation in sex trafficking. Plaintiff aims to redirect the harm caused by Fordyce—and

---

[1] Omegle timely raised the Michigan statute of limitation as its Fifth Affirmative Defense. (ECF 76 at 12.)

Page 1 - DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

overlooked for years by her parents—at Omegle. However, even if Plaintiff's allegations are accepted as true and viewed in the most favorable light, for the limited purposes of this motion, her claims against Omegle fail as a matter of law and should be dismissed.

## II.

## <u>SUMMARY JUDGMENT STANDARD</u>

A party may move for summary judgment as to any claim or defense, or part of a claim or defense. Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* As the moving party, Omegle "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Sierra Med. Servs. All. v. Kent*, 883 F.3d 1216, 1222 (9th Cir. 2018).

## III.

## <u>THE COURT SHOULD DISMISS THE PRODUCT LIABILITY CLAIM, OR LIMIT DAMAGES THAT PLAINTIFF MAY RECOVER THROUGH IT.</u>

There is only one connection between Oregon and Plaintiff's allegations: at the time of Plaintiff's alleged injury, Omegle's founder resided in Oregon and formed Omegle as an Oregon LLC. (Second Amended Complaint ("SAC"), ¶ 14; K-Brooks Decl., ¶ 3.) Other than that, relevant events occurred elsewhere. Plaintiff was domiciled in Michigan when she accessed Omegle for fifteen minutes and chatted with Fordyce. (SAC ¶¶ 39, 41.) Plaintiff was domiciled in Michigan when Fordyce exploited her over the course of several years (on platforms other than Omegle). (SAC, ¶ 56.) Omegle was not designed in Oregon; it was designed in Vermont.

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

(K-Brooks Decl., ¶ 2.) Omegle's servers have never been located in Oregon. (K-Brooks Decl., ¶ 4.) If Plaintiff is suffering ongoing damages, they are not being suffered in Oregon. (*See* SAC ¶ 13 [Plaintiff resides in New Zealand].)

Moreover, the basic functionality of the text chat feature, which is what Plaintiff used to communicate with Fordyce during her January 2014 visit to Omegle's website, did not change between 2009, when Mr. K-Brooks designed and launched Omegle, and January 2014, when she accessed the website and was paired with Fordyce. (K-Brooks Decl., ¶ 4.)[2] That is, assuming for the sake of argument that Omegle is a "product," it was not manufactured in Oregon in any relevant respect.

As set forth below, the Court should hold that (1) there are material differences between Oregon and Michigan law such that there is a conflict of laws, and (2) pursuant to Oregon's choice-of-law principles, Michigan law governs Plaintiff's product liability claims. Applying Michigan law, the Court should dismiss Plaintiff's product liability claims as time-barred. Alternatively, the Court should hold, with respect to the product liability claims, that (1) Plaintiff's noneconomic damages are capped at $280,000, and (2) punitive damages are unavailable.

**A.**     <u>Oregon conflict-of-law/choice-of-law principles require application of Michigan product liability law in this case.</u>

    **1.**     **Michigan law and Oregon law conflict in material respects.**

This Court applies Oregon law, including Oregon choice-of-law/conflict-of-law principles, to Plaintiff's state law product liability claims. *See Smith v. Ethicon, Inc.*, No. 3:20-cv-00851-MO, 2022 WL 1799807, at *1 (D. Or. June 2, 2022). Pursuant to Oregon law, "[t]he threshold question in a choice-of-law problem is whether the laws of the different states actually

---

[2] As of January 2014, a user visiting Omegle.com had the option to click "text" or "video" to be randomly paired with another user. If the user selected text, the user's browser would submit a request to the Omegle server. The text request the would be processed by another Omegle server to find someone who was available to be connected to the user. At no point have the servers been located in Oregon. (K-Brooks, ¶ 4.)

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

conflict." *Portfolio Recovery Assocs., LLC v. Sanders*, 292 Or. App. 463, 467–68 (2018), *aff'd*, 366 Or. 355 (2020). Courts applying Oregon law have identified "material" conflicts in product liability laws where, for example, relevant states cap or bar certain types of damages, or bar strict liability. *E.g., Smith*, 2022 WL 1799807, at *1 (material conflict where New Jersey law capped punitive damages); *Peterson v. C R Bard Inc.*, No. 3:19-CV-01701-MO, 2021 WL 799305, at *1 (D. Or. Mar. 2, 2021) (material conflict where Pennsylvania law barred strict-liability product claim).

Likewise, a conflict of laws exists where, as here, states connected to the claims have different statutes of limitation. *Portfolio Recovery Assoc.*, 292 Or. App. at 468 ("[A] conflict in the states' statute of limitation period, such that the action would be barred by application of one of the state's statute of limitation, creates an actual conflict that must be resolved by applying Oregon's conflict-of-law principles.")

The laws of Michigan and Oregon materially conflict in respects relevant to Plaintiff's product liability claim, including statute of limitation. Those conflicts are summarized in the following chart:

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

|  | **Oregon** | **Michigan** |
|---|---|---|
| **Design Defect Analysis** | Consumer expectation test.<br><br>*See* ORS 30.920(1); *Purdy v. Deere & Co.*, 311 Or. App. 244, 248 (2021), *rev. denied sub nom.*, *Purdy for Norton v. Deere & Co.*, 369 Or. 110 (2021). | Risk-utility test.<br><br>Claimant must demonstrate a feasible alternative design. *See Gregory v. Cincinnati Inc.*, 538 N.W.2d 325, 333 (Mich. 1995); *Sylvania v. Ford Motor Co.*, 2008 Mich. App. LEXIS 2071, *6-7 (Mich. App. Oct. 21, 2008); McWilliams et al., *An Overview of the Legal Standard Regarding Product Liability Design Defect Claims and A Fifty State Survey on the Applicable Law in Each Jurisdiction,* 82 Def. Couns. J. 80, 88 (2015).<br><br>A prima facie case for a design defect claim requires "data or other factual evidence concerning" both the magnitude of the risks involved and the reasonableness of any proposed alternative design. *See Hammons v. Icon Health & Fitness*, 616 F. Supp. 2d 674, 679–80 (E.D. Mich. 2009). |
| **Liability Standard** | Negligence, strict liability, warranty. *See Mason v. Mt. St. Joseph, Inc.*, 226 Or. App. 392 (2009). | Negligence and implied warranty.<br><br>"Michigan law recognizes two distinct causes of action for product failures, negligence and implied warranty. The theory of strict liability has not been directly endorsed by the Michigan Supreme Court." 20 Mich. Civ. Jur. Products Liability § 17. |

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

|  | **Oregon** | **Michigan** |
|---|---|---|
| **Failure to Warn Standard** | Plaintiff must establish not only that there was a failure to warn or failure to properly instruct, but also that doing so rendered the product unreasonably dangerous. *Russell v. Deere & Co.*, 186 Or. App. 78, 83 (2003). | The duty of a manufacturer to warn of a product's danger only extends to material risks that are not obvious to a reasonably prudent product user as well as material risks that are not, nor should be, a matter of common knowledge to persons in the same or a similar position as the plaintiff. *Greene v. A.P. Products, Ltd.*, 475 Mich. 502, 515 (Mich. 2006). |
| **Inadequate Warning Standard** | Required to establish that [the alleged inadequate warning] proximately caused plaintiff's injuries or damages.<br><br>Oregon courts have held that an inadequate warning must be a substantial cause of the person's injuries." *Parkinson v. Novartis Pharms. Corp.*, 5 F. Supp. 3d 1265, 1272 (D. Or. 2014) (internal citations omitted). | To establish a prima facie case of failure to warn, a product liability plaintiff must show that the defendant owed the plaintiff a duty to warn of the danger; the defendant breached that duty; the defendant's breach was the cause in fact and proximate cause of the plaintiff's harm; and the plaintiff suffered damages as a result.<br><br>To prevail on a failure to warn claim, plaintiff must present evidence that the product would have been used differently had the suggested warnings been given. 11 Mich. Pl. & Pr. § 81A:29 (2d ed.). |

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

|  | **Oregon** | **Michigan** |
|---|---|---|
| **Punitive Damages** | Punitive damages are allowed without caps. ORS 30.925. | Not permitted.<br><br>"Punitive damages are generally not recoverable, except if they are expressly authorized by statute." 7 Mich. Civ. Jur. Damages § 160, *citing Casey v. Auto Owners Ins. Co.,* 273 Mich. App. 388, 729 N.W.2d 277 (2006). |
| **Non-Economic Damages Caps** | None, as applicable to this case. | Caps on noneconomic damages not to exceed $280,000. *See* M.C.L. § 600.2946a. |
| **Fault Allocation** | Modified comparative. *See* ORS 31.600. | Pure comparative negligence. *See* M.C.L. § 600.2959. |
| **Statute of Limitations/Tolling** | 2 years. *See* ORS 30.905.<br><br>The statute of limitations is tolled until the person is 18; however, it may not be extended more than five years or until one year after the person turns 18, whichever comes first. ORS 12.160. | 3 years. *See* M.C.L. § 600.5805(13).<br><br>The statute is extended for minors for a period of one year after the plaintiff turns 18. *Doe v. Jayark Corp.*, 84 F. Supp. 3d 609, 613–14 (E.D. Mich. 2015). |

As demonstrated above, the laws of Oregon and Michigan conflict in material respects. The differences affect the analyses related to liability, causation, damages, and statute of limitation, which would lead to different outcomes. The Court therefore should engage in a choice-of-law analysis pursuant to ORS 15.300-.460.

**2.      Oregon's choice-of-law statutes require applying Michigan law to Plaintiff's product liability claims.**

Accepting solely for the sake of argument Plaintiff's assertion that the Omegle website is a "product," Plaintiff's state-law claim is a "product liability civil action" within the meaning of

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

ORS 30.900 because it is "a civil action brough against a manufacturer, distributor, seller or lessor of a produce for damages for personal injury . . . arising out of (1) [a]ny design . . , manufacturing or other defect in a product; (2) [a]ny failure to warn regarding a product; or (3) [a]ny failure to properly instruct in the use of a product." (*See* SAC, ¶¶ 79-83, 86-99, 92-96, 98-99.) Oregon's product liability choice-of-law statute, ORS 15.435, therefore applies.

> **a.     ORS 15.435(1) does not require application of Oregon product liability law.**

Oregon has enacted a choice-of-law statute specific to product liability civil actions, ORS 15.435. Pursuant to ORS 15.435(1), the Court applies Oregon law to Plaintiff's product liability claim if:

> "(a) [she] was domiciled in Oregon and the injury occurred in Oregon; or
>
> (b) [she] was domiciled in Oregon or the injury occurred in Oregon and the product:
>
>> (A) Was manufactured or produced in Oregon; or
>> (B) Was delivered when new for use or consumption in Oregon."

None of these criteria is satisfied because Plaintiff has never been domiciled in Oregon, Plaintiff's injury occurred in Michigan (not Oregon), and to the extent Omegle was "manufactured or produced," that occurred in Vermont and not Oregon.

> **b.     Because ORS 15.435(1) does not require applying Oregon law, the Court applies ORS 15.445.**

If, as here, a plaintiff files a product liability civil action, and if, as here, ORS 15.435(1) does not require applying Oregon law, then the Court looks to ORS 15.445, otherwise known as the "general and residual approach" for determining choice of law. ORS 15.435(3) ("If a party demonstrates that the application of the law of a state other than Oregon to a disputed issue is substantially more appropriate under the principles of ORS 15.445, that issue shall be governed by the law of the other state."); ORS 15.435(4) ("All noncontractual claims or issues in product liability civil actions not provided for or not disposed of under this section are governed by the

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

law of the state determined under ORS 15.445.")

      **c.**    **Pursuant to ORS 15.445, Michigan law applies to Plaintiff's product liability claim.**

ORS 15.445 provides that disputed issues in noncontractual claims "are governed by the law of the state whose contacts with the parties and the dispute and whose policies on the disputed issues make application of the state's law the most appropriate for those issues." The Court determines which law is most appropriate by:

> "(1) Identifying the states that have a relevant contact with the dispute, such as the place of the injurious conduct, the place of the resulting injury, the domicile, habitual residence or pertinent place of business of each person, or the place in which the relationship between the parties was centered;
>
> (2) Identifying the policies embodied in the laws of these states on the disputed issues; and
>
> (3) Evaluating the relative strength and pertinence of these policies with due regard to:
>
> > (a) The policies of encouraging responsible conduct, deterring injurious conduct and providing adequate remedies for the conduct; and
> >
> > (b) The needs and policies of the interstate and international systems, including the policy of minimizing adverse effects on strongly held policies of other states."

ORS 15.445(1)-(3); *see Peterson*, 2021 WL 799305 at *4 ("According to the Oregon Law Commission, the court should choose the law of the state which, in light of its relationship to the parties and the dispute—and its policies rendered pertinent by that relationship—would sustain the most serious legal, social, economic, and other consequences of the choice-of-law-decision.").

Undisputed record evidence demonstrates that the Court should apply Michigan law to Plaintiff's product liability claims. Plaintiff admits that, from 2014 through 2018, she was domiciled in Michigan, paired with Fordyce while residing in Michigan (during the sole time she used Omegle to communicate with him), and suffered injuries while domiciled in Michigan. (SAC, ¶¶ 39, 50 and 56). Thus, Michigan has the most significant relationship to the occurrence and the

Page 9 - DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

parties. *See In re FCA USA LLC Monostable Electronic Gearshift Litigation*, 598 F. Supp. 3d 639, 653 (E.D. Mich. 2022) (holding that the interest of the injury forum outweighed interest of defendant's home forum because, among other things, the product "was bought and used exclusively there [in home forum] by the plaintiff"); *accord Jilson v. Elrod*, No. 21-cv-11878, 2022 WL 17683111, at *7 n.4 (E.D. Mich. Dec. 12, 2022); *see also  Banuelos Rios v. Ford Motor Co.*, No. 05-0019 CO, 2006 WL 2950474, at *8 (D. Or. Oct. 16, 2006) (holding that the harm will be felt principally in the state of plaintiff's domicile and where the vehicle was purchased, garaged, maintained, repaired and insured) (internal citations omitted); *Rice v. United Parcel Serv. Gen. Servs. Co.,* 43 F. Supp. 2d 1134, 1141 (D. Or. 1999) (holding Oregon did not have the most significant relationship to the claims, as no Oregon drivers were before the court, none of the plaintiffs were residents of Oregon, and plaintiffs were not injured while working in Oregon.); *W. Helicopter Servs., Inc. v. Rogerson Aircraft Corp.*, 728 F. Supp. 1506, 1512 (D. Or. 1990) ("[T]he court gives greater weight to the state where the accident occurred rather than to any of the states where the tortious behavior may have occurred.").

Further, Michigan law is appropriate here because Michigan has a significant interest in "draw[ing] corporations to transact business in the state." *In re FCA USA*, 598 F. Supp. 3d at 654 (citing *Danziger v. Ford Motor Co.*, 402 F. Supp. 2d 236, 240 (D.D.C. 2005)).

By contrast, Plaintiff has no relationship with Oregon and Omegle's only relationship with Oregon is its formation as an Oregon LLC. Omegle was created in Vermont in 2009 and its servers were located in New York and/or New Jersey at the time of Plaintiff's alleged injury in 2014. (K-Brooks Decl., ¶ 4.) Omegle's core chat function remained unchanged between Omegle's creation in Vermont and both its incorporation in Oregon and Plaintiff's use of the site. (*Id.*) Incorporation in Oregon alone is insufficient to create a significant relationship with the litigation when all other factors point to another state. *See Powell v. Equitable Sav. and Loan Ass'n*, 57 Or. App. 110, 114 (1982) ("[T]he analysis is simple, because all of the pertinent considerations weigh on one side: . . . the contracts were negotiated in Idaho, the individual plaintiffs in this portion of the class live in Idaho, and the property involved is located in Idaho. Oregon's only significant relationship—if

it can be said to be "significant" is that defendant was incorporated in Oregon. On the balance, Idaho's interests do not merely preponderate—they dominate.").

Plaintiff used Omegle in Michigan and was harmed by Fordyce while domiciled in Michigan. (SAC, ¶¶ 39-49.) Michigan's interest dominates Oregon's only relationship with Omegle—the fact Omegle was incorporated in Oregon, after being created in Vermont and operating as an LLP from Vermont between 2009-2010. (K-Brooks Decl., ¶¶ 2-3.) As a result, under the Oregon choice-of-law analysis, Michigan product liability law is the most appropriate under these circumstances—again, assuming solely for the sake of argument that Omegle is a "product."

**B.    Plaintiff's product liability claim is time-barred pursuant to Michigan law.**

Product liability actions in Michigan are subject to a three-year statute of limitation. M.C.L. § 600.5805(12). If a plaintiff is a minor when her claim accrues, then the statute of limitation is extended for one year after the plaintiff turns 18 "although the period of limitations has run." M.C.L. § 600.5851(1).[3] Under Michigan law, a products liability claim accrues at the time the wrong upon which the claim is based was done irrespective of when damage results. *Peter v. Stryker Orthopaedics, Inc.*, 581 F. Supp. 2d 813, 816 (E.D. Mich. 2008) (applying and quoting M.C.L. § 600.5827). The common law discovery rule does not apply. *Id.* (citing *Trentadue v. Gorton*, 479 Mich. 378, 389 (2007)).

Plaintiff's product liability claims are untimely. Plaintiff was born on January 8, 2002. (Schneider Decl. ¶ 2.) Her product liability claims are based on her being matched with Fordyce when she accessed Omegle as an 11-year-old in 2014. (SAC, ¶ 39; Schneider Decl. Ex. 1 [Interrog. Nos. 5 and 6].). That access must have occurred sometime between January 1 and 7,

---

[3] Michigan extends the statute of limitation for "an individual who, while a minor, is the victim of criminal sexual conduct." M.C.L. § 600.5805(6). Undersigned counsel has not located any authority applying this extension to parties beyond the perpetrator of such conduct. Further, the statute does not appear to apply to Plaintiff's situation as the criminal statutes referenced in the definition of "criminal sexual conduct" involve physical touching by the accused. *See* M.C.L. § 600.5805(16)(b).

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

2014, otherwise she would have been 12 years old when she accessed Omegle.

According to Plaintiff, the alleged wrong Omegle committed for purposes of her product liability claim was designing a defective product, having inadequate safeguards, and failing to warn. (SAC, ¶¶ 79-83, 86-99, 92-96, 98-99.) Plaintiff therefore suffered injury, so the products claims accrued, no later than January 7, 2014. Thus, when she turned 18 on January 8, 2020, she had an additional year, until January 8, 2021, to sue pursuant to M.C.L. § 600.5851(1).

Because Plaintiff did not file her lawsuit until November 19, 2021, ten months after the statutory deadline, her product liability claim is time-barred.[4]

**C.      Plaintiff's damages are capped at $280,000 pursuant to Michigan law.**

Plaintiff seeks "non-economic damages in the amount of $22,000,000.00" on "any of Plaintiff's claims for relief." (SAC, p. 26 § 1.) However, in the product liability context, Michigan caps non-economic damages at $280,000. M.C.L. § 600.2946a. The Court therefore should hold that if Plaintiff establishes liability on her product liability claims, then non-economic damages may not exceed $280,000.

**D.      Pursuant to Michigan law, Plaintiff cannot recover punitive damages.**

Plaintiff also seeks "punitive damages for Plaintiff in an amount to be determined by the jury." (SAC, p. 26 § 3.) However, under Michigan law, punitive damages are unavailable unless otherwise provided by statute. *Gilbert v. DaimlerChrysler Corp.*, 470 Mich. 749, 765 (Mich. 2004). Because no statute provides for punitive damages in the product liability context, the Court should hold that they are unavailable in this action. ) *See Gregory v. Cincinnati Inc.*, 450 Mich. 1, 23 n.31 (Mich. 1995) (noting, in context of product liability action, that punitive damages are not available). !

---

[4] Plaintiff's claim also would have been time-barred under Oregon law were it not for the COVID emergency. The Oregon legislature tolled applicable statutes of limitation until 90 days after the end of the declared COVID emergency, which spanned from March 8, 2020 to April 1, 2022.

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

# IV.

## THE COURT SHOULD DISMISS THE TRAFFICKING CLAIM.

Plaintiff's trafficking claim under 18 U.S.C. §§ 1591, 1595 fails because there is no evidence that Omegle recruited Plaintiff to engage in a commercial sex act; knew another user would cause her to engage in a commercial sex act; or knowingly benefitted from knowing participation in sex trafficking.

### A.      Statutory background for civil liability under 18 U.S.C. §§ 1591 and 1595.

Section 1591 of Title 18 criminalizes sex trafficking of children or adults by force, fraud, or coercion. The statute criminalizes both direct trafficking, § 1591(a)(1), and benefiting from participation in a venture that engaged in a direct violation, § 1591(a)(2). Section 1595 of Title 18 permits victims of federal sex trafficking to sue the perpetrator and those who knowingly benefit from direct sex trafficking violations. 18 USC § 1595(a).

Prior to 2018, interactive computer services ("ICS") were immune from civil sex trafficking claims arising from content created by third parties even if the ICS directly participated in the alleged trafficking. That is because Section 230 of the Communications Decency Act grants to ICS's "robust" protection against liability arising from content created by third parties unless the ICS is also a developer of the offending content.  *Does 1–6 v. Reddit, Inc.*, 51 4th 1137 (9th Cir. 2022); *Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162–63 (9th Cir. 2008) (explaining that Section 230's grant of immunity does not apply to ICS that is also an "information content provider" of the offending content).[5]

---

[5] Plaintiff has never contended that Section 230 immunity does not apply to her sex-trafficking claim, only that FOSTA's exemption to Section 230 immunity does. Thus, the portion of this Court's order on Omegle's motion to dismiss addressing the sex-trafficking claim assumed that Omegle enjoyed Section 230 immunity from this claim unless the exemption recognized in 47 USC § 230(c)(5) applies.  ECF No. 70 at 4.  Because Omegle is an ICS provider under the CDA and Plaintiff's sex-trafficking claim seeks to treat Omegle as a publisher or speaker of content provided by Fordyce, Section 230 applies. *See M.H. v. Omegle.com, LLC*, 2022 WL 93575, *4–6 (M.D. Fla. Jan. 10, 2022), *appeal filed*, No. 22-10338 (Jan. 31, 2022) (Hernandez Covington, J.) (explaining that Section 230 immunity applied to claims based on conduct by "cappers," who trick users into committing sexual acts over live web feeds while simultaneously recording the

In 2017, Congress enacted the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 ("FOSTA"). FOSTA largely was a response to repeated court holdings that Section 230 shielded the online marketplace from both state criminal prosecution and civil suits even if the site actively participated in sex trafficking. *See Doe v. Backpage*, 817 F.3d 12, 21 (1st Cir. 2016) ("even if we assume, for argument's sake, that Backpage's conduct amounts to 'participation in a [sex trafficking] venture," Section 230 would still provide immunity); Emily J. Born, *Too Far and Not Enough: Understanding the Impact of FOSTA*, 94 NYULR 1623 (summarizing backlash from *Backpage* litigation); *Does 1–6 v. Reddit, Inc.*, 51 F. 4th 1137, 1137 (9th Cir. 2022) (describing legislative backdrop to FOSTA).

FOSTA made two statutory changes relevant here. First, FOSTA established that Section 230 does not bar a civil claim or state criminal prosecution "if the conduct underlying the claim [or the charge] constitutes a violation of section 1591," the federal criminal sex-trafficking statute. 47 USC § 230(c)(5). Second, FOSTA defined "participation in a venture" under the federal criminal sex-trafficking statute to mean "knowingly assisting, supporting, or facilitating a violation" of Section 1591(a)(1). 18 USC § 1591(e)(4).

In the years after FOSTA—and when this case was filed—courts were split as to whether a civil plaintiff suing an ICS for beneficiary liability under Section 1595 had to satisfy the more stringent requirements for criminal beneficiary liability under Section 1591(a)(2). In *Does 1-6 v. Reddit, Inc.*, the Ninth Circuit held that the ICS must have itself violated Section 1591 for FOSTA's exemption to apply. 51 F. 4th at 1142.

The *Reddit* Court stressed: "In a sex trafficking beneficiary suit against a defendant-website, the most important component is the defendant website's own conduct—its 'participation in the venture.'" *Id.* at 1152 (emphasis added). Because the "gravamen of a section 1595 beneficiary claim is the defendant's participation in and benefit from the trafficking scheme," a "defendant-website's own conduct must underlie the claim" and "must violate 18

encounters, because such claims sought to redirect liability onto Omegle for the ultimate actions of its users).

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

USC § 1591 for the immunity exception to apply." *Id.* at 1143 (cleaned up). The *Reddit* Court reasoned that the civil immunity exception was enacted with the new criminal immunity exceptions, which further supported a construction under which an ICS could be prosecuted or sued only for its own actions. *Id.* ("[W]e presume these provisions authorize criminal prosecutions only for a defendant's own crimes. Because section 230(e)(5)(A) uses the same language, we read it to include the same limitation.").

    In the months since, the Ninth Circuit has applied *Reddit* in only unpublished dispositions. In *J.B. v. Craigslist, Inc.*, the panel explained that *Reddit* confirmed that FOSTA's immunity exception applies "if, but only if, the defendant's conduct amounts to a violation of" Section 1591. 2023 WL 3220913 (9th Cir. May 3, 2023). In *Doe #1 v. Twitter*, which was published after this Court's ruling on the motion to dismiss, the same panel reiterated that beneficiary liability requires "a more active degree of 'participation in the venture' than a 'continuous business relationship' between a platform and its users." 2023 WL 3220912, *2 (9th Cir. May 3, 2023). As to the plaintiff's direct liability claim, the *Twitter* panel affirmed the district court's conclusion that the plaintiffs failed to state a claim because they did not allege that Twitter "'provided,' 'obtained,' or 'maintained,' *a person*" as "Twitter's alleged conduct relate[d] only to CSAM [Child Sexual Abuse Material] depicting Plaintiffs, not to their persons (as required to implicate a direct violation of the [Section 1591])." *Id.* (emphasis in original).[6]

**B.    Plaintiff's Section 1595 claim fails under either a direct or beneficiary liability theory.**

    To be liable under Section 1595, Plaintiff must prove conduct by Omegle that itself violates Section 1591. *Reddit, Inc.*, 51 F. 4th at 1142. There is no evidence that Omegle solicited

---

[6] The panel noted that the Supreme Court then had two cases before it that might affect the Court's holding in *Reddit*. 2023 WL 3220912, *2. *Gonzalez v. Google, LLC* and *Twitter, Inc. v. Taamneh*, have since been decided but involved aiding and abetting liability under 18 USC § 2333(d)(2), which imposes civil liability "on any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." Because the cases turned on interpretation of Section 2333(d)(2), neither directly affected the Ninth Circuit's decision in *Reddit*. *Twitter v. Taamneh*, 143 S.Ct. 1206, 1214 (2023).

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

Plaintiff to engage in a commercial sex act, knew (or recklessly disregarded) that she would be caused to engage in commercial sex acts, and did not knowingly assist, support, or facilitate Fordyce in committing any direct violation against Plaintiff. Because she lacks evidence that Omegle either committed a direct violation of Section 1591(a)(1) or that Omegle participated in such a venture under Section 1591(a)(2), she cannot prevail on her Section 1595 claim under either a direct or beneficiary liability theory and Omegle is entitled to summary judgment.

### 1.    Omegle did not commit federal sex trafficking under Section 1591(a)(1), nor could a rational jury conclude that it did.

To prove a violation of sex trafficking of children under Section 1591(a)(1), Plaintiff must show: (1) Omegle knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited *a person* [Plaintiff] *to engage in a commercial sex act*; and (2) Omegle knew or was in reckless disregard of the fact that *the person* [Plaintiff] had not attained the age of 18 years *and would be caused to engage in a commercial sex act. See* Ninth Circuit Model Criminal Jury Instruction 20.25.

As the model criminal jury instruction makes clear, the relevant inquiry under the first element is not whether Omegle knowingly recruited Plaintiff to use its website, but whether Omegle recruited Plaintiff "to engage in a commercial sex act." This is distinct from the second element, under which Plaintiff must show that, at the time Omegle recruited her, it knew or recklessly disregarded that she was under 18 and that she would be caused to engage in a commercial sex act. Plaintiff has not alleged, and lacks evidence to show, that Omegle recruited her *to engage in a commercial sex act* versus recruiting her *to use its website*, much less that Omegle did so knowing or recklessly disregarding that she would be caused to so engage.

To be sure, a conviction under Section 1591(a)(1) does not require specific intent. As the Ninth Circuit explained in *United States v. Brooks*, "if a sex trafficker arranged for a minor victim to be transported to a pimp in another state, the trafficker might know that the victim would be caused to engage in a commercial sex act without actually having any specific intent that the victim do so. In that case, the sex trafficker could be convicted of violating § 1591(a) but

not § 2423(a)."[7] 610 F.3d 1186 (9th Cir. 2010). However, the statue does require that the
defendant knowingly recruit the victim for prostitution *and* that he know the prohibited
prostitution (either by force fraud or coercion or with a person under 18) is sufficiently likely to
occur, though it need not ultimately come to pass, and the defendant need not directly participate
in or cause it if it does. These requirements make particular sense and provide an appropriate
backstop for criminal liability when viewed alongside what the government need *not* prove yet
still obtain a conviction. They are also understandable when considered in context of the stiff
criminal penalties upon conviction. *See* 18 USC § 1595(b) (providing mandatory minimum
sentences of ten to fifteen years in prison and a maximum sentence of life).

In *United States v. Todd*, the Ninth Circuit explained that the defendant must "know in
the sense of being aware of an established modus operandi that will in the future cause a person
to engage in prostitution." 627 F.3d 329, 334 (9th Cir. 2010) (en banc). Put differently, "[t]he
knowledge required of the defendant is such that if things go as he has planned," the victim will
be caused "to engage in a commercial sex transaction." *Id.*[8] Thus, not only must the defendant
knowingly recruit the victim to engage in a commercial sex act, but it must be sufficiently
predictable that the victim will be caused to so engage. *United States v. Wearing*, 865 F.3d 553,
556 (7th Cir. 2017) (explaining that the phrase knowing the person will be caused to engage in a
commercial sex act "describes the acts that the defendant intends to take—that is, that he means
to cause' the minor to engage in commercial sex acts. That is the interpretation other circuits
have adopted; they have concluded that the statute uses the future tense to describe the
defendant's plan for the victim at the time he recruits her"). The record is devoid of evidence that

---

[7] 18 USC § 2423 creates a trio of offenses for transportation of minors: (a) transportation with
intent to engage in criminal sexual activity; (b) travel with intent to engage in illicit sexual
conduct; (c) engaging in illicit sexual conduct in foreign places.

[8] Although *Todd and Brooks* were decided under a prior version of § 1591, subsequent
amendments have not undermined their rationale. *United States v. Hung*, 2019 WL 5862393, at
*11 n. 4 (E.D. Cal. Nov. 8, 2019) (acknowledging that *Todd* was decided pursuant to pre-2008
version of § 1591 but noting that subsequent amendments have only strengthened and not
undermined its rationale).

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

Omegle either knowingly recruited Plaintiff to engage in a commercial sex act or that it knew (or recklessly disregarded) another user would cause her to engage in a commercial sex act.

But Even if Omegle knowingly recruited Plaintiff to make and transmit child-pornographic images knowing that another user would cause her to do so (it did not), summary judgment would be required because (1) Omegle's alleged conduct relates only to CSAM depicting Plaintiff (sent through another platform that is not party to this lawsuit), not to her person; and (2) there is no evidence that Omegle knew or intended such CSAM (exchanged with Fordyce on a different platform) to be commercial in nature. Section 1591(a)(1) prohibits recruiting, enticing, etc., "*a person*" to engage in "a *commercial* sex act," meaning "any sex act, on account of which anything of value is given to or received by any person." 18 USC § 1591(e)(3) (emphasis added).

Although child pornography is abhorrent, federal law treats it differently than trafficking. *See* 18 USC §§ 2251, 2252 (criminalizing sexual exploitation of minors i.e., production, receipt, and distribution of child pornography); 18 USC § 2423(a) (defining criminal sexual activity); 18 USC § 2423(b) and (c) (distinguishing between a commercial sex act as defined in Section 1591 and production of child pornography). These offenses are not interchangeable under FOSTA. Indeed, Congress considered including child-pornography offenses in FOSTA's exemption but ultimately limited the exception to sex trafficking of persons. *Reddit, Inc.*, 51 F. 4th at 1144 ("As first introduced in the House, FOSTA simply stated that section 230 did not 'impair the enforcement of, or limit availability of victim restitution or civil remedies under … civil laws *relating to sexual exploitation of children or* sex trafficking") (emphasis added); *J.B. v G6 Hosp., LLC*, 2021 WL 4079207, *8 (N.D. Cal. Sept. 8, 2021) (Gilliam, Jr., J.) (explaining that, as originally enacted, FOSTA exempted from § 230 immunity causes of action or other civil remedies to victims of sexual exploitation of children as well as sex-trafficking offenses).

As in *Twitter*, Omegle's "alleged conduct relates only to CSAM depicting Plaintiff[], not to [her] person[]" and is thus insufficient to implicate a direct sex-trafficking violation. *Twitter*, 2023 WL 3220912, *2. Further, even if conduct relating only to CSAM could constitute sex

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

trafficking, and even if Plaintiff had actually sent CSAM to Fordyce using the Omegle platform (again, she did not), there is no evidence that Omegle knew or intended any such sex acts to be commercial in nature. Thus, even if Omegle had knowingly recruited Plaintiff to make and transmit child-pornographic images knowing that another user would cause her to do so (it did not), this is not sex trafficking under Section 1591(a)(1).

In sum, the Section 1595 claim fails as a matter of law because Plaintiff lacks evidence to support either element for a direct violation of Section 1591(a)(1).

### 2. Omegle did not knowingly benefit from knowingly participating in child sex trafficking and so did not violate Section 1591(a)(2).

To prevail under a beneficiary liability theory, Plaintiff must show that Omegle (1) benefitted financially or by receiving anything of value from knowingly participating in a venture that recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, or solicited her to engage in a commercial sex act *and* (2) knew or was in reckless disregard of the fact that she had not attained the age of 18 years and would be caused to engage in a commercial sex act. Ninth Circuit Model Criminal Jury Instruction 20.26. "Accordingly, establishing criminal liability requires that a defendant knowingly benefit from knowingly participating in child sex trafficking." *Reddit*, 51 F. 4th at 1145.

In *Reddit*, the plaintiffs alleged that they collectively contacted Reddit hundreds of times to report sexually explicit images of themselves (or their children) on the site. *Id.* 1139. Reddit would sometimes remove the content, only for it to be re-posted a short time later. According to plaintiffs, Reddit did little to prevent or remove such unlawful content because it derived traffic and substantial advertising revenue from subreddits featuring child pornography. *Id.* at 1139–40. For that reason, Reddit did not implement even basic security measures to prevent the posting of child pornography. *Id.* at 1140. The *Reddit* Court explained that these allegations suggested only that Reddit "turned a blind eye to the unlawful content posted on its platform, not that it actively participated in sex trafficking." *Id.* at 1145. Moreover, the *Reddit* Court explained, plaintiffs failed to allege "a connection between the pornography posted on Reddit and the revenue Reddit

Page 19 - DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

generates, other than the fact that Reddit makes money from advertising on all popular subreddits." *Id.* at 1145–46.

Similar to the *Reddit* plaintiff, Plaintiff alleges that Omegle failed to take adequate safety measures despite knowing that predators use its platform to sexually exploit minors because Omegle is popular, and thus receives substantial advertising revenue, due to the sexual activity on its site, some of which involves minors. Discovery has not supported these allegations. Regardless, *Reddit* makes clear that such failing to take safety measures and receiving advertising revenues—even where the ICS is aware of specific exploitative conduct involving particular plaintiffs, which Omegle was not—is insufficient to show actual participation in a sex trafficking venture.

The cases cited in *Reddit* as illustrative further support that Omegle cannot be liable under a beneficiary liability theory on our facts, even when viewed in the light most favorable to Plaintiff In *United States v. Afyare*, 632 F. App'x 272, 28 (6th Cir. 2016), the court gave this example: a defendant who joins a soccer team with some sex traffickers who sponsor the team financially (i.e., pay for travel accommodations, uniforms, equipment, training, etc.) using the money they generate from sex trafficking and the defendant knows that his teammate-sex-trafficker-sponsors are engaged in sex trafficking would not be liable because "§ 1591(a)(2) targets those who participate in sex trafficking; it does not target soccer players who turn a blind eye to the source of their financial sponsorship." 632 F. App'x at 286. By that same token, Omegle cannot be liable under Section 1591(a)(2) even if it knowingly received advertising money from the sex traffickers themselves (it did not).

The *Reddit* Court's citations to *Noble v. Weinstein*, 335 F.Supp.3d 504, 524 (S.D.N.Y. 2018) and *Canosa v. Ziff*, 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019), both involving others' liability for assaults perpetrated by Harvey Weinstein, are likewise instructive. Noble, an aspiring actress, sued Harvey Weinstein's brother and the co-founder of their production company, Robert Weinstein, in relation to a 2014 assault by Harvey at the Cannes film festival. The *Noble* Court explained that to hold Roger Weinstein liable as a beneficiary, "factual

Page 20 - DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

allegations implicating Robert as a participant in Harvey's 2014 conduct toward Noble are required." 335 F. Supp. 3d at 524. It was not enough that Robert allegedly knew of, and facilitated, settlement payments to other women or benefitted from his role at the production company; what was missing were "factual allegations of participation that render[ed] a violation of Section 1591(a)(2) *by Robert* plausible on its face." *Id.* (emphasis added). Similarly, in *Canosa*, the plaintiff-producer's sex-trafficking claims were allowed to proceed against Harvey Weinstein himself and against the Weinstein Company, but not against Robert. The sex-trafficking claim against the Company survived because the plaintiff alleged "specific means and methods used by multiple company employees to facilitate Weinstein's sexual assaults and to cover them up afterwards," including entering into strict non-disclosure agreements with victims. 2019 WL 4988865, *23–24. Here, like *Noble* and unlike *Canosa*, Plaintiff has alleged that, at most, Omegle generally knew of and facilitated sex trafficking on its website by failing to take adequate safety precautions—not that it directly participated in her sex trafficking through specific means and methods.

Moreover, as in *Reddit*, there is no causal connection between conduct by Omegle in furtherance of the sex-trafficking venture and Omegle's receipt of advertising revenue or any other benefit. The *Reddit* Court cited yet another case involving Weinstein, *Geiss v. Weinstein Company Holdings, LLC*, to make this point. 383 F.Supp.3d 156 (S.D.N.Y. 2019). The *Geiss* court explained that while the production-company defendants "undoubtedly benefited from H. Weinstein's continued employment at TWC" the "controlling question" was "whether H. Weinstein provided any of those benefits to TWC *because of* TWC's facilitation of H Weinstein's sexual misconduct." 383 F.Supp.3d at 169–70 (emphasis added). Plaintiff does not allege, nor is there any evidence, that Omegle received advertising funds or any other thing of value "because of" Omegle's facilitation of sex trafficking. Even if Omegle attracts users or advertisers "because of the sexual *activity* they know occurs on the site," that is not the same as the receipt of a benefit because of its facilitation of sex trafficking of minors.

* * * *

Page 21 - DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800

At bottom, this lawsuit seeks to do precisely what Section 230 forbids: hold Omegle responsible for a user's actions.[9] FOSTA left Section 230's broad immunity intact, opening the door to liability against ICS providers only where their own conduct is a federal criminal sex-trafficking violation. Plaintiff's Section 1595 claim is one against Fordyce, not Omegle. To the extent that Plaintiff's inability to pursue Omegle leaves a goal of FOSTA unfulfilled, "this is a flaw, or perhaps a feature, that Congress wrote into the statute, and is not one [that can be rewritten] by judicial fiat" notwithstanding the terrible circumstances of this case. *Reddit*, 51 F. 4th at 1145.

## V.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should:

    1.  Hold that Michigan law applies to the product liability claims, and

        a.  Dismiss those claims with prejudice as time-barred; or

        b.  Hold that, in this case, non-economic damages are capped at $280,000, and punitive damages are unavailable.

    2.  Dismiss the trafficking claim with prejudice.

DATED this 20th day of July, 2023.

SNELL & WILMER L.L.P.

/s/ Clifford S. Davidson
Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
Lea K. Schneider, OSB No. 145154
lschneider@swlaw.com

Attorneys for Defendant Omegle.com LLC

4876-9092-0302

---

[9] Omegle timely raised Section 230 immunity as its Twelfth Affirmative Defense. (ECF 76 at 13.)

Snell & Wilmer
601 SW Second Ave, Suite 2000
Portland, Oregon 97204
503.624.6800